# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

Miami Division

| | |
|---|---|
| EN MAY MARITIME LLC,<br><br>        Plaintiff,<br><br>   - against -<br><br>PROIOS S.A.,<br><br>        Defendant. | Civil Case No. _____ |

**DECLARATION OF ADAM B. COOKE IN SUPPORT OF**
**APPLICATION FOR RULE B ATTACHMENT AND SUBSTITUTE PROCESS SERVER**

I, Adam B. Cooke, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am a partner in the law firm of Fowler, White, Burnett P.A., counsel for Plaintiff, En May Maritime LLC ("En May").

2.  I am familiar with the facts and circumstances underlying this dispute as set forth in the Verified Complaint being filed contemporaneously herewith, and I submit this declaration in support of En May's application for the issuance and execution of a Writ of Maritime Attachment against Defendant Proios, S.A. ("Proios") in the above-styled action.

### _Prois Cannot be "Found" within this District for Rule B Purposes_

3.  As counsel for En May, I hereby certify to the Court and the Clerk of the Court that the undersigned has made a diligent and reasonable search and inquiry to ascertain the name and address of a person or party within this District upon whom/which process _in personam_ can be served which will bind Defendant Proios.

616378.1

4.      In preparing En May's application for the issuance and execution of a Writ of Maritime Attachment against Proios, I have been unable to find any entity named "Proios S.A." formed in or registered to do business in the State of Florida, either as a business entity or a DBA. I checked the Florida Division of Corporations Search Database, accessible at https://dos.fl.gov/sunbiz/search/, for "Proios, S.A.", which search returned no results. I then searched the same database for any entry containing the word "Proios", which returned results for one inactive entity containing that word, which is Proios Painting, Inc. and not related to Defendant Proios. Attached as **Exhibit A** to this Declaration is a printout of the Entity Search Results.

5.      I have also conducted a search for Proios using the Yellow Pages telephone directory, accessible at https://www.yellowpages.com/, and determined that there are no telephone listings or addresses for Proios within this District.

6.      Further, I have conducted a Google search as to whether Proios can be located within this District, and the search results did not provide any information indicating that Proios is located in this District.

7.      I am unaware of and my thorough search has not disclosed any general or managing agent(s) within this District for Proios.

8.      I have been able to determine that Proios has not appointed an agent for service of process within the state of Florida and I have found no indication that Proios can be "found" within this District for the purposes of Rule B.  I have formed a good faith belief based on my investigation that Proios does not have sufficient contacts or business activities within this District and does not have any offices or agents within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set forth in the Federal Rules of Civil Procedure.

616378.1

### *Proios has Property in this District for Rule B Purposes*

9.      Upon information and belief, the Defendant has tangible or intangible property which belong to it or are maintained for its benefit within this District by third party garnishees and which are subject to attachment pursuant to Rule B.

10.     Specifically, under the parties' Contract, a copy of which is attached to the Verified Complaint as Exhibit 2, payment of funds due Proios under the Contract was to be made by En May to "Contractors' Bank Account," which was identified as an account at Interaudi Bank. (*See* Ex. 2 to Verified Complaint, at p. 2, Box 15).  The account appears to be held in the name of non-party, Axion Management Ship LLC ("Axion"), which is identified in the Contract as an agent of Proios. (*See* Ex. 2 to Verified Complaint, at p. 1, Box 3).

11.     Based on information provided to me by En May, funds have been paid to Proios under the Contract in line with the banking details specified in the Contract.  As such, Proios is utilizing Axion as its paying agent in relation to the Contract and may be doing so with respect to other contracts as well.

12.     Interaudi Bank has two locations. A headquarters in New York City located at 19 East 54th Street, New York, NY 10022, and a branch in Miami located at Two Brickell City Centre, 78 SW 7th Street, Suite 1100, Miami, Florida 33130. *See* Printout of Interaudi's locations from its "Contact Us" page, a copy of which is annexed hereto as **Exhibit B**.

13.     As indicated in Exhibit B, the ABA routing number associated with Interaudi's New York location is 026006237, while the ABA routing number associated with Interaudi's Miami location is 066015440.  We have confirmed, by searching these routing numbers via the ABA routing number lookup tool available online at https://routingnumber.aba.com/default1.aspx

616378.1

that the routing number 026006237 (as utilized in the Contract) is indeed associated with Interaudi's New York address and routing number 066015440 is associated with Interaudi's Miami address.  Attached hereto as **Exhibit C** are printouts of the ABA routine search results for both routing numbers, indicating the respective bank branches with which those numbers are associated.

14.    While the payment details in the Contract reference the Miami address, the ABA routing number given in the payment details, 026006237, matches the ABA routing number associated with Interaudi's New York location, as noted above.  This indicates that funds paid to Proios utilizing the payment details in the Contract are destined for an account in New York, as opposed to in Florida.

15.    While En May verily believes that funds belonging to Proios are being paid to Proios via its paying agent, Axion, into an account located in New York,  given the information in the Contract pointing to both New York and Miami as the location of the account (and thus the location of funds sought to be attached), and in full transparency to the Court, Rule B applications are simultaneously being filed in both the Southern District of New York and the Southern District of Florida in an effort to attach funds belonging to Proios in the subject account as security for En May's claim, whether the account be located in Miami or New York.

### *Request to Authorize Substitute Service*

16.    This Declaration is further made in support of En May's application for an order to appoint a special process server to serve by verifiable electronic means the Writ and Order of Attachment and Garnishment, Verified Complaint, and this Declaration on any garnishees within the District that may be in possession of Defendant's property, including Interaudi Bank. The granting of this request will result in a material savings in process and travel expenses.

616378.1

17.   In view of the foregoing, En May respectfully requests that the application for a writ of maritime attachment and garnishment and appointment of a special process server be granted.

Dated:  September 5, 2024

_____
Adam B. Cooke

# EXHIBIT "A"



Department of State  /  Division of Corporations  /  Search Records  /  Search By Entity Name  /

| | PROIOS |
| --- | --- |
| Next List | Search |

## Entity Name List

| Corporate Name | Document Number | Status |
| --- | --- | --- |
| PROIOS PAINTING, INC. | P93000071063 | INACT |
| PROIQ, LLC | L13000082680 | INACT |
| PROIQ LLC | L23000310222 | Active |
| PRO IQ SOLUTIONS, LLC | L13000082680 | NAME HS |
| PROIRB PLUS, INC. | P00000053928 | INACT |
| PRO IRRIGATION INC | P07000048010 | INACT |
| THE PRO IRRIGATION CONNECTION LLC | L23000523955 | Active |
| PRO IRRIGATION INSTALL, INC. | P00000067497 | INACT |
| PRO IRRIGATION SERVICES CORP | P04000122099 | INACT |
| PRO IRRIGATION SOLUTIONS CORP | P23000021027 | Active |
| PRO IRRIGATION SYSTEMS, INC. | 843067 | INACT |
| PRO IRRIGATION SYSTEMS LLC | L18000049256 | Active |
| PRO IS, INC. | F13000002524 | Active |
| PROISA, INC. | L68145 | INACT |
| PRO ISLAND PAINTING, INC. | P06000108294 | Active |
| PRO ISLAND WATERSPORTS, INC. | P99000052598 | INACT |
| THE PROISM LLC | L21000140547 | Active |
| PRO-ISM SOLUTIONS, INC. | P17000016263 | INACT |
| PROIS PRESERVATION GROUP LLC | L20000187423 | INACT |
| PRO IS SOLUTIONS, LLC | L12000021534 | INACT |

| | PROIOS |
| --- | --- |
| Next List | Search |

# EXHIBIT "B"



INTERAUDI BANK

## New York Headquarters

19 East 54th Street
New York, NY 10022
Phone 1 (212) 833-1000
Fax 1 (212) 833-1033
Member F.D.I.C.
ATM Locator

**New York ABA#:**
026006237

**Interaudi Bank SWIFT Address:**
AUSAUS33

## Miami Branch

Two Brickell City Centre
78 SW 7th Street,
Suite 1100
Miami, Florida 33130
Phone 1 (305) 373-0200
Fax 1 (305) 373-0870
Member F.D.I.C.
ATM Locator

**Miami ABA#:**
066015440

BANKING   INVESTMENTS   ABOUT US   CONTACT US   LANGUAGE   SIGN IN





Google — This page can't load Google Maps correctly. Do you own this website? OK

# EXHIBIT "C"



## ABA Routing Number Lookup

This website allows for single lookups of routing numbers. It is intended for use by individuals who need to look up their financial institution's routing number. Users of this service are allowed no more than two lookups per day and are limited to ten lookups per month. Users who need additional lookups or need a more robust tool for accessing the ABA Routing Number database should contact LexisNexis Risk Solutions, the Official Routing Number registrar.

New financial institutions, mergers/acquisitions, name changes, and closings, result in an ever-changing list of participants in the US payment system. Using a look-up service other than the ABA Routing Number lookup or a LexisNexis Risk Solutions product could result in retrieving inaccurate or outdated information.

If you have any questions concerning this site, please call 1-800-BANKERS (800-226-5377) or e-mail support@aba.com.

<div>Back to Search</div>   Powered By |   

| Bank Name | Address | City | State | Zip Code | Routing Number |
|---|---|---|---|---|---|
| Interaudi Bank (Head Office) | 19 E 54th St | New York | New York | 10022 | 026006237 |



**American Bankers Association**
1333 New Hampshire Ave NW
Washington, DC 20036

**Questions?**
E-mail ABA Customer Support
Call 1-800-BANKERS (800-226-5377)

Reprint Request | Privacy Policy | Site Sponsor

© 2022 American Bankers Association



## ABA Routing Number Lookup

This website allows for single lookups of routing numbers. It is intended for use by individuals who need to look up their financial institution's routing number. Users of this service are allowed no more than two lookups per day and are limited to ten lookups per month. Users who need additional lookups or need a more robust tool for accessing the ABA Routing Number database should contact LexisNexis Risk Solutions, the Official Routing Number registrar.

New financial institutions, mergers/acquisitions, name changes, and closings, result in an ever-changing list of participants in the US payment system. Using a look-up service other than the ABA Routing Number lookup or a LexisNexis Risk Solutions product could result in retrieving inaccurate or outdated information.

If you have any questions concerning this site, please call 1-800-BANKERS (800-226-5377) or e-mail support@aba.com.

 Back to Search

Powered By |



| Bank Name | Address | City | State | Zip Code | Routing Number |
|---|---|---|---|---|---|
| Interaudi Bank (Branch) | 78 SW 7th St, Ste 1100 | Miami | Florida | 33130-3783 | 066015440 |

**American Bankers Association**
1333 New Hampshire Ave NW
Washington, DC 20036

© 2022 American Bankers Association

**Questions?**
E-mail ABA Customer Support
Call 1-800-BANKERS (800-226-5377)

Reprint Request | Privacy Policy | Site Sponsor

# EXHIBIT "2"

# REPAIRCON 2018



BIMCO
STANDARD FORM

## STANDARD SHIP REPAIR CONTRACT

PART I

| | | | |
|---|---|---|---|
| 1. | Place and Date<br><br>Buenos Aries<br><br>February 27, 2024 | | |
| 2. | Owners (full style and address) (Cl. 1)<br><br>En May Maritime LLC<br><br>Owners warrant that they are*/are not* bareboat charterers (*delete as applicable) | 3. | Contractors (full style and address) (Cl. 1)<br><br>Axion Management Ship LLC 16/9 Dupont Highway, Suite 100.<br>Dover, Delaware (19901), United States of America<br>www.axionmanagement.us as Proios S.A.'s Agents |
| 4. | Vessel's Name (Cl. 1)<br><br>MV En May | 5. | Contractors' Yard (Cl. 1)<br><br>PIAPSA BERTH |
| 6. | Contract Period (Cl. 1 and Cl. 2(a)(iii))<br><br>90 calendar days, weather permitting. | | |
| 7. | Vessel's Description (Cl. 1) | | |

| | |
|---|---|
| Vessel type:<br><br>BULK CARRIER | DWT mts (summer):<br><br>85001 |
| IMO number:<br><br>9789829 | GT/NT:<br><br>46990/ 27488 |
| Flag/Year built:<br><br>LIBERIA/ 2017 | LOA/LBP:<br><br>228.41m/ 223m |
| Classification Society:<br><br>Bureau Veritas | Breadth/Depth moulded:<br><br>36.5m/ 19.89m |

| | | | |
|---|---|---|---|
| 8. | Delivery Date (Cl. 5(a)(i))<br><br>February 27,2024 subject to CG authorization and court | 9. | Cancellation Date (Cl. 5(b)(i))<br><br>March 4, 2024 |
| 10. | Contract Price and Currency (Cl. 1 and 6(a)(i), 6(b)(i))<br><br>USD2,280,889.92 | 11. | Overtime Periods and Rates (Cl. 2(a)(ii))<br><br>LUMPSUM PRICE |
| 12. | Owners' Representatives (Cl. 3(a))<br><br>Capt. Miguel jardiel and/or the master and/or one more representative to be nominated by the owners | 13. | Guarantee Period in Months (Cl. 10(b))<br><br>9 months |

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes please visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

| 14. | Payment Terms (Cl. 6(b)) | 15. | Contractors' Bank Account (Cl. 6(b)(ii)) |
|---|---|---|---|
| | 25% payment in advance for materials, 20% in the first 30 days with verification of work progress according to repair plan, 20% at 60 days with verification of work progress according to repair plan and 35% with final repairs and Class and CG approbation. | | Interaudi Bank<br>Two Brickell City Centre 78 SW 7th Street, Suite 1100   Miami, FL 33130<br>United States of America ABA: 066015440 SWIFT: AUSAUS33<br>Account Name: Axion Management Ship LLC<br>Account Number:643973-401-01 ACH INSTRUCTIONS —————————<br>Routing Number: 026006237 Account number: 643973 |

| 16. | Total Liability | 17. | Liability for Late Redelivery (Cl. 7) |
|---|---|---|---|
| | (a) Contractors (Cl. 9(a)) | | (a) Daily rate |
| | | | USD 12,000 |
| | (b) Owners (Cl. 9(b)) | | (b) Maximum liability |
| | | | 25% of contract price |

| 18. | Interest Rate (Cl. 5(b)(ii), 6(b)(iii) and 6(b)(iv)) |
|---|---|
| | Euribor |

| 19. | Dispute Resolution (state Cl. 16(a), 16(b), 16(c) or 16(d), as agreed; if Cl. 16(d) agreed state place of arbitration) (if not filled in Cl. 16(a) shall apply) (Cl. 16) |
|---|---|
| | (a) English law; London arbitration |

| 20. | Redelivery Termination Date (Cl. 2(a)(iii) and 12(a)(iii)) |
|---|---|
| | One week after scheduled redelivery |

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

**21.** Numbers of Additional Clauses Attached, if any (to be listed here and set out in full in Part II)

i)High tensile steel will be provided by the contractor per the original drawing and when substitutions are made due to availability, thicker high tensile steel will be used. The contractor will make modules and transport to the vessel, the modules will then be fitted while afloat with the assistance of a crane. Crane via owners account.

ii)All welders used by the contractor are certified by Bureau Veritas. All the welding materials and test equipment used by the contractor are certified by BV.

iii)The contractors will complete cleaning of scrap and materials. The disposal of garbage and contaminated waters will be via Piapsa Terminal.

iv) The contractors will confirm the PO of the steel plate within 48 hours after receipt of the initial payment. Thereafter, the contractors will keep owners posted of the shipping status of the steel plates on daily basis till the steel plates are in the contractor's premise. It is understood by both parties that time spent on shipping the steel plates from Netherland to the contractors' premise is included in the 90 calendar days contract period.

v)USD 5,000 bonus per day pro rata is payable to the contractor if the repair completes less than 90 calendar days.

vi) The contractors will provide work insurance as per the local regulation including "Cláusulas de no Repetición" for all workers".

vii) It is hereby understood that the Contractor shall indemnify the Owners against any and all claims made by the Terminal (Piapsa), due to damages and/or losses caused (howsoever caused) by the Contractor and/or their subcontractors, employees, agents or anyone acting pursuant to their instructions, directions and/or on their behalf. The indemnifying party shall bear the expense of investigations and defenses of all claims against which the other party is indemnified under this clause and all legal proceedings arising therefrom including the legal costs of the indemnified party.

viii) A joint "repair inspection" to be arranged with Class, the repair company, our representative and/or superintendent and H&M surveyor within 48 hours after the vessel is delivered to the contractors, during which the outlines of the steel to be cropped are spray painted.

-

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that this Contract consisting of PART I and PART II as well as Annex A (Scope of Work), Annex B (Work Variation Form) and, if applicable, Annex C (Tariff Rates) shall be performed subject to the conditions contained herein. In the event of a conflict of conditions, the provisions of PART I and Annexes A and B and, if applicable, Annex C, shall prevail over those of PART II to the extent of such conflict, but no further.

| Signature (Owners) | Signature (Contractors) | |
|---|---|---|
| | | Proios Eva<br>Operations Dept.<br>Proios S.A. |

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

**1.   Definitions**

"Additional Works" means all work, if any, in addition to or modification of the Scope of Work (including any changes required by changes in the rules of the Owners' regulatory bodies after the date of the Contract), which are to be described on a Work Variation Form attached as Annex B hereto.

"Completion" means the completion of the Works.

"Contract Period" means the period (commencing on the first working day after the date of delivery) agreed between the Parties as stated in Box 6 for the performance of the Scope of Work as may be amended as a consequence of Additional Works and/or Reductions and/or pursuant to Clause 11 (Disruptions).

"Contract Price" means the agreed price for the Scope of Work as stated in Box 10, as may be adjusted by the value of any Additional Works less any Reductions.

"Contractors" means the entity stated in Box 3.

"Contractors' Yard" means the premises of the Contractors stated in Box 5.

"Delivery" means delivery of the Vessel to the Contractors at the Contractors' Yard or elsewhere as may have been agreed between the Parties.

"Owners" means the entity stated in Box 2.

"Parties" means the Owners and the Contractors.

"Redelivery" means redelivery of the Vessel to the Owners at the Contractors' Yard or elsewhere as may have been agreed between the Parties.

"Reductions" means all deletions, if any, to the Scope of Work, which are to be recorded on a Work Variation Form.

"Scope of Work" means the work to be carried out under this Contract as described in Annex A attached hereto.

"Subcontractors" means all persons engaged by the Contractors to do work, supply materials or equipment, or provide accommodation or services in connection with the Works.

"Tariff" means the rates agreed, if any, in Annex C attached hereto.

"Vessel" means the vessel described in Boxes 4 and 7.

"Works" means the Scope of Work, as may be amended by any Additional Works and/or Reductions.

**2.   Performance and Approval of the Work**

(a)   Performance of Works

(i) The Contractors shall perform the Works in accordance with the provisions of this Contract, the requirements of the Contractors' regulatory bodies, the Vessel's Flag State, Classification Society and any other regulatory bodies stated in the Scope of Work (Annex A), and to the reasonable satisfaction of the Owners.

(ii) The Works shall be performed within normal working hours. Any overtime carried out by the Contractors to complete the Works within the Contract Period shall be for their account, but any overtime carried out at the Owners' written request shall be subject to extra cost as stated in Box 11.

(iii) The Contractors shall make all reasonable endeavours to perform Additional Works as requested by the Owners and recorded in the Work Variation Form. The Contractors shall, wherever possible, perform Additional Works within the Contract Period stated in Box 6. However, where the Parties agree that Additional Works will extend, or Reductions shorten, the Contract Period, the increase or decrease shall be recorded on a Work Variation Form and the Redelivery Termination Date in Box 20 will automatically be extended or shortened by the same period.

(iv) In the event of Additional Works or Reductions, the Contract Price shall be adjusted by agreement between the Parties and recorded on a Work Variation Form.

(v) If any specified material or equipment is not available at the time required for use in the Vessel, the Contractors shall have the right to use other suitable material or equipment of equivalent standard, subject to the Classification Society's agreement and the Owners' approval which shall not be unreasonably withheld or delayed.

(b)   Contractors' Right to Subcontract

The Contractors shall have the right to employ subcontractors to perform any part of the Works subject to the Owners' right to object on reasonable grounds. The Contractors shall be responsible for the Subcontractors' actions and remain liable for the due performance of

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

their obligations under this Contract.

(c)    Approvals and Certificates

(i) The Contractors shall be responsible for obtaining and maintaining all necessary approvals and certificates of whatsoever nature relating to the Works as required by the Contractors' regulatory bodies. The Owners shall provide any reasonable assistance that may be required in this respect.

(ii) The Owners shall be responsible for obtaining and maintaining any approvals or certificates relating to the Vessel and the Works as required by the Owners' regulatory bodies, the Vessel's Flag State and Classification Society. The Contractors shall provide any reasonable assistance that may be required in this respect.

**3.     Owners' and Contractors' Representatives**

(a)    Owners' Representatives

(i) The supervision of the Works shall be carried out by the Owners' Representative as stated in Box 12 or such other persons as the Owners may from time to time appoint as Owners' Representative and notify to the Contractors in writing. The Owners' Representative shall be present at the Contractors' Yard throughout the Works and authorised to act on behalf of the Owners in respect of all matters relating to the Contract including, but not limited to, the approval of plans, drawings, calculations and documents and agreeing and signing Work Variation Forms and invoices.

(ii) The Owners' Representative shall at all times provide reasonable assistance to facilitate timely and efficient completion of the Works.

(iii) The Vessel's Master shall be the Owners' Representative unless stated otherwise in Box 12.

(iv) The Contractors shall, at their own expense, provide the Owners' Representative with reasonable office accommodation and facilities (including communication facilities) as the Owners may reasonably require, provided the Owners shall bear the costs of all such communication expenses.

(v) The Contractors shall grant the Owners' Representative reasonable access to the Contractors' workshops whenever work on the Vessel or parts of the Vessel is being carried out and shall ensure such reasonable access to any other premises or site where work is being carried out in connection with the Vessel.

(b)    Contractors' Representative

The Contractors shall, prior to Delivery, appoint a Contractors' Representative who shall be the primary point of contact with the Owners' Representative available throughout the Works. The Contractors' Representative shall be authorised to act on behalf of the Contractors in respect of all matters relating to the Contract including, but not limited to, the approval of plans, drawings, calculations and documents, and agreeing and signing Work Variation Forms and invoices.

(c)    Daily meetings between the Contractors' and the Owners' Representatives shall be held on board the Vessel during the Contract Period.

**4.    Owners' Work**

Subject to prior written agreement with the Contractors, whose consent shall not be unreasonably withheld, the Owners, or the Master and crew, or any subcontractor employed or engaged by the Owners, shall be permitted to carry out the Owners' own work on the Vessel, provided they comply at all times with the Contractors' safety and environmental rules, and provided the Owners remain liable for all of their actions. Any such work shall not interfere with or delay the Works.

**5.    Delivery, Redelivery and Acceptance of the Vessel**

(a)    Delivery

(i) The Vessel shall be delivered at a safe place nominated by the Contractors on the Delivery Date stated in Box 8, safely afloat and, unless otherwise agreed, gas free and/or inerted, free of cargo, slops, sludge, dirty ballast and of any substances in the structure of the Vessel in way of the Works which are dangerous or harmful to health.

(ii) The Owners shall keep the Contractors promptly advised of any changes to the Vessel's Delivery Date.

(iii) A protocol of delivery shall be signed by the Parties confirming the time of Delivery.

(b)    Cancellation

(i) Contractors' Cancellation

If, for any reason, the Vessel is not delivered to the Contractors on or before 1500 hours local time on the Cancellation Date stated in Box 9, the Contractors shall have the right, exercisable no later than 1700 hours local time the same day, to cancel this Contract and to recover any costs and expenses which they have reasonably incurred in the performance of the Contract up to the date of cancellation (including sums payable to Subcontractors provided they were incurred with the Owners' prior written agreement) to the extent that such sums are not otherwise excluded under this Contract, and thereafter the Parties' obligations under this Contract shall be at an end.

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

(ii) Owners' Cancellation

If, for any reason, the Contractors fail to commence the Works in accordance with the Scope of Work within forty-eight (48) hours of the date on which the Vessel is delivered in the condition stipulated in Clause 5(a)(i) (Delivery), the Owners shall have the right to cancel this Contract within twenty-four (24) hours, whereupon the Owners shall be entitled to demand immediate redelivery of the Vessel without compensation to the Contractors, and to recover (A) any sums already paid to the Contractors together with interest at the rate stated in Box 18, and (B) all other expenses which the Owners have reasonably incurred in connection with this Contract, to the extent that those sums are not otherwise excluded under this Contract, but in any event excluding the Owners' cost of taking the Vessel to the Contractors' Yard, and thereafter the Parties' obligations under this Contract shall be at an end.

(c)   Redelivery

(i) Redelivery of the Vessel to the Owners shall take place within the Contract Period.

(ii) Without prejudice to Clause 10 (Guarantee), such inspections, tests and/or trials as are necessary for the purpose of determining whether the Vessel at Redelivery complies with the terms of this Contract shall be carried out prior to Redelivery in the presence of the Owners' Representative. The Contractors shall keep the Owners advised of progress and the expected dates for Redelivery and Completion.

(iii) Defects and defaults in the performance of the Works shall be listed in a protocol prepared by the Parties. The Contractors shall at their cost rectify any such defects and defaults before Redelivery, unless the Owners can agree that completion of certain of the Works can take place after Redelivery.

(iv) Without prejudice to the provisions of Clause 10 (Guarantee), at the date of Redelivery a protocol of redelivery and acceptance shall be signed by the Parties which shall identify any Works to be completed after Redelivery.

**6.   Financial Provisions**

(a)   Price

(i) The Contract Price, as stated in Box 10, covers all items in the Scope of Work for which a fixed price has been agreed.

(ii) Where a fixed price has not been quoted for any item in the Scope of Work and/or Additional Works, the price shall be calculated by reference to the Tariff or, if there is no Tariff, reasonable rates applying in the location of the Contractors' Yard.

(b)   Payment

(i) The Contract Price shall be payable by the Owners free of all taxes, bank charges, exchange control regulations and in the currency stated in Box 10, in accordance with the payment terms agreed in Box 14 or, if no such terms are agreed, before Redelivery.

(ii) Payment shall be made into the Contractors' bank account stated in Box 15. Any change to the account details and number must be in writing signed by or on behalf of the Parties.

(iii) If the payment terms agreed in Box 14 require interim payments prior to Redelivery and the Owners fail to pay any such sums on the dates agreed, the Owners shall pay interest at the rate stated in Box 18 on such outstanding sums. In the event that such sums (together with accrued interest) are not paid within three (3) working days of their due date, the Contractors shall have the right to suspend work on this Contract without thereby incurring liability to the Owners until payment of outstanding sums (including accrued interest). The Contractors shall also have the right to recover from the Owners all reasonable costs arising from such suspension of work to the extent not otherwise contractually excluded.

(iv) If the payment terms agreed in Box 14 require payments to be made after Redelivery and the Owners fail to make any such payments, the Owners shall pay interest at the rate stated in Box 18 and, failing payment of such outstanding sums (together with accrued interest) within three (3) working days of their due date, any other payment instalments agreed to be payable at any later date shall become due immediately.

(c)   Title to the Vessel

(i) Title to the Vessel shall remain at all times with the Owners.

(ii) Except as provided in Subclause 6(c)(iii) (Financial Provisions – Title to the Vessel), the Contractors shall not permit nor suffer any lien to be created on the Vessel as a consequence of their work or that of the Subcontractors.

(iii) The Contractors shall be entitled to exercise a possessory lien on the Vessel before Redelivery for all sums due to the Contractors on or before Redelivery.

**7.   Liquidated Damages for Delay**

In the event that Redelivery is delayed beyond the Contract Period, the Contractors accept liability for liquidated damages in the sums stated in Box 17(a) for each day of delay, subject to any maximum amount stated in Box 17(b). If Box 17(b) is not filled in then ten (10) per cent of the Contract Price shall apply.

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

**8.    Liabilities and Indemnities**

(a)    Liability for Loss or Damage

(i) The Contractors shall only be liable to the Owners under this Contract when proven loss or damage has been caused by the negligence or wilful misconduct of the Contractors or that of those for whom they are responsible.

(ii) The Contractors' liabilities arising out of or in connection with this Contract of whatsoever nature and howsoever arising shall cease upon Redelivery or, if later, Completion, except as provided in Subclause 5(b) (Cancellation), Clause 10 (Guarantee), Clause 12 (Termination) and Subclause 14(e) (Sundry Provisions – Intellectual Property).

(iii) The Owners shall only be liable to the Contractors under this Contract when proven loss or damage has been caused by the negligence or wilful misconduct of the Owners or that of those for whom they are responsible.

(iv) Any tests, trials or movements of the Vessel shall be at the Owners' sole risk and responsibility, and the Contractors shall not be under any liability whatsoever to the Owners for any loss, damage or expense resulting from such tests, trials or movements, unless caused by the intervention, act or omission of the Contractors.

(b)    Liability for Death or Personal Injury

Each party accepts responsibility and liability for the death or personal injury of its own personnel, and the personnel of those entities for whom they are responsible under this Contract, irrespective of the cause of death or personal injury, and whether or not caused by the negligence of the other party, or those entities for whom the other party is responsible under this Contract.

Each party further agrees to indemnify and hold harmless the other party, as regards both liability and legal costs, in the event that the aforesaid personnel or their dependants pursue claims for death or personal injury against the party who is not responsible for them under this Contract. The party not responsible shall notify the other responsible party of such claims. The party who is responsible for the claim(s) under this Contract shall take over the conduct of the claim(s) whether or not such claim(s) is made against it or the other party.

(c)    Third Parties

(i) Each party agrees to indemnify the other party against all claims made against the other party by third parties (being those individuals and entities for whom neither party is responsible under this Contract) in any way related to this Contract where such claims are caused, or to the extent that they are contributed to, by the indemnifying party's negligence or wilful misconduct or that of those for whom it is responsible under the terms of this Contract.

(ii) The indemnifying party shall bear the expense of investigations and defences of all claims against which the other party is indemnified under Subclause (c)(i) (Liabilities and Indemnities – Third Parties) above and all legal proceedings arising therefrom including the legal costs of the indemnified party.

**9.    Limitation**

(a)    The Contractors' liability howsoever arising out of or in connection with this Contract (even in the event of negligence) shall be limited to the Contractors' Total Liability as stated in Box 16(a).

(b)    The Owners' liability howsoever arising out of or in connection with this Contract (even in the event of negligence) shall be limited to the Owners' Total Liability as stated in Box 16(b).

(c)    Employees, Servants, Agents and Subcontractors

The limitations on each party's liability in Subclauses 9(a) and (b) (Limitation) shall also apply to the liability of those for whom that party is responsible under this Contract. Each party further agrees that it will not, and will ensure that those for whom it is responsible do not, circumvent the aforesaid limitations and allocation of responsibility by taking legal proceedings against the employees, servants or agents of the other party, and to this extent each party shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all such persons.

(d)    Exclusions of Liability

Except as provided in Clause 7 (Liquidated Damages for Delay), in no circumstances whatsoever shall either Party's liability to the other Party include any sum in respect of:

(i) loss of hire, loss of profit, loss of use or business, or any similar direct or indirect losses; or

(ii) any consequential losses whatsoever

arising out of or in connection with the performance or non-performance of this Contract whether or not the same is due to any breach of contract, negligence, wilful misconduct, or any other fault on the part of either Party, or those for whom they are responsible.

(e)    Limitation

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

Nothing herein contained shall affect any right that the Parties may have to limit their liability under any statutory enactment for the time being in force.

**10.    Guarantee**

(a)    The guarantee shall apply to the Works performed and materials and equipment supplied by the Contractors.

(b)    The Contractors shall be responsible for rectifying defects in materials, equipment and workmanship existing at the time of Redelivery or, if later, Completion, provided always that notice of complaint in respect of such defects is received in writing by the Contractors within the number of months stated in Box 13 from the date of Completion. If the defect has led to damage to the Vessel or any part thereof, this obligation shall extend to repair or renewal of the Vessel's part(s) that have been damaged as a direct consequence of the defect.

(c)    In cases where the Contractors are liable for defects as provided in this Clause 10 (Guarantee), the Owners shall be entitled to have the work and the replacements carried out at any yard or workshop, other than the Contractors' yard if, in the reasonable opinion of the Owners, such work and the replacements need to be effected promptly and it is not practicable or cost effective for the Owners to bring the Vessel to the Contractors' Yard. The Contractors' liability in such cases shall solely be to pay directly or reimburse the actual cost incurred for such work and the replacements provided always that before committing the Vessel to another yard or workshop the Owners shall:

(i) Notify the Contractors of their intention to do so and request such assistance as the Contractors may be able to offer in order to minimise the cost;

(ii) Use reasonable endeavours to ensure that the cost does not exceed the cost of having the same work carried out at the Contractors' Yard.

(d)    In any case the Vessel shall be taken at the Owners' cost and responsibility to the place elected, ready in all respects for the guarantee work to be commenced.

(e)    When repairs or renewals are performed by the Contractors pursuant to this Clause 10 (Guarantee), the Contractors shall guarantee such repairs or renewals on the same terms as this Clause 10 (Guarantee).

**11.    Disruptions**

(a)    The Contract Period shall be extended when any of the following events cause delay to the Contractors' performance of the Works, provided always that the Contractors shall have complied with Clause 11(b) (Disruptions) hereunder and shall have made all reasonable efforts to avoid or minimise the effects such events may have on the performance of the Works:

(i) Force Majeure events

(1)    acts of God;

(2)    any Government requisition, control, intervention, requirement or interference;

(3)    any circumstances arising out of war, threatened act of war or warlike operations, acts of terrorists or the consequences thereof;

(4)    riots, civil commotions, blockades or embargoes;

(5)    epidemics;

(6)    earthquakes, landslides, floods or other extraordinary weather conditions;

(7)    strikes, lockouts or other industrial action, but only if of a general nature and not limited to the Contractors and/or the Subcontractors; or

(8)    fire, accident, explosion (whether in the Contractors' Yard or elsewhere) except where caused by the proven negligence of the Contractors and/or the Subcontractors.

(ii) Other events

(1)    failure of the Owners and/or Owners' regulatory bodies to review/approve technical information within a reasonable time;

(2)    suspension of the Works pursuant to Subclause 6(b)(iii) (Payment);

(3)    failure of the Owners to deliver the Vessel in the condition stipulated in Subclause 5(a)(i) (Delivery);

(4)    breach of Subclause 3(a)(ii) (Owners' Representatives);

(5)    disruption of the Works in breach of Clause 4 (Owners' Work); or

(6)    late delivery of any items to be supplied by the Owners.

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

(b)    The Contractors shall notify the Owners in writing within two (2) working days of the occurrence of any event of delay, on account of which the Contractors assert that they are entitled to claim an extension of the Contract Period. A failure to so notify shall bar the Contractors from claiming any extension to the Contract Period. The Contractors shall also advise the Owners in writing (A) within two (2) working days of the ending of any event notified under this Clause that the event has ended, and (B) as soon as reasonably possible after (A), the length of extension of the Contract Period claimed by the Contractors.

**12.    Termination**

(a)    Contractors' Default

The Owners shall be entitled to terminate the Contract by notice in writing to the Contractors in the event that:

(i) the Contractors are deemed insolvent pursuant to Clause 12(d) (Termination – Deemed Insolvency); or

(ii) without lawful excuse, the Contractors (A) fail to perform the Works or any substantial part of them for a running period of at least five (5) days, provided that thereafter the Owners give the Contractors at least two (2) days' written notice of their intention to terminate under this Clause 12(a) (Termination – Contractors' Default), and within that period the Contractors fail to remedy their breach, or (B) clearly indicate their intention not to perform the Contract; or

(iii) the Contractors fail to redeliver the Vessel in the condition required by the Contract by the Redelivery Termination Date (if any) stated in Box 20, as may be adjusted pursuant to Subclauses 2(a)(iii) (Performance and Approval of the Work – Performance of Works) and 11(a)(ii) (Disruptions – Other events); or

(iv) there is damage to the Vessel in the course of the Works for which the Contractors are liable under the terms of the Contract and the reasonable estimated cost of repairing such damage exceeds the Contractors' Total Liability.

On termination the Owners shall pay any part of the Contract Price that relates to the Works performed up to the date of termination. However, the Owners may set-off against such payment (A) any sums payable pursuant to Clause 7 (Liquidated Damages for Delay), and (B) any losses and/or claims not otherwise excluded which they may suffer by reason of the termination. To the extent that (A) and (B) exceed the Contractors' Total Liability, the Owners shall be discharged from their obligation to pay an equivalent sum out of any unpaid part of the Contract Price. Thereafter, notwithstanding the provisions of Subclause 6(c)(iii) (Financial Provisions – Title to the Vessel), the Owners shall have the right to remove the Vessel from the Contractors' Yard without hindrance or interference by the Contractors or those for whom they are responsible.

(b)    Owners' Default

The Contractors shall be entitled to terminate the Contract by notice in writing to the Owners in the event that:

(i) the Owners are deemed insolvent pursuant to Clause 12(d) (Termination – Deemed Insolvency); or

(ii) without lawful excuse, the Owners (A) fail to pay any sums due under the Contract for a period of five (5) days provided that thereafter the Contractors give the Owners at least two (2) days' written notice of their intention to terminate under this Subclause 12(b) (Termination – Owners' Default), and within that period Owners fail to remedy the breach, or (B) clearly indicate their intention not to perform the Contract; or

(iii) there is damage to the Contractors' property in the course of the Works for which the Owners are liable under the terms of the Contract and the reasonably estimated cost of repairing the damage exceeds the Owners' Total Liability.

On termination the Contractors shall be entitled to recover any unpaid part of the Contract Price that relates to the Works performed up to the date of termination, together with (A) any losses they may suffer, or liability to Subcontractors and others they may incur, by reason of the termination except as otherwise excluded, and (B), pending payment of (A), their reasonable costs of accommodating the Vessel, but (A) and (B) being subject always to Owners' Total Liability.

(c)    Termination shall be without prejudice to any other claims that the Parties may have against each other.

(d)    Deemed Insolvency

Either party shall be deemed insolvent (the "Insolvent Party") if it (A) makes any voluntary arrangement with its creditors or becomes subject to an administration order or goes into liquidation (otherwise than for the purposes of amalgamation or reconstruction); or (B) an encumbrancer takes possession of, or a receiver is appointed in respect of any of the Insolvent Party's property or assets; or (C) the other party reasonably apprehends that any of the events mentioned in (A) or (B) above is about to occur in relation to the Insolvent Party and, after notification to the Insolvent Party, is not reasonably satisfied as to its continuing creditworthiness and/or is not provided with suitable guarantees.

**13.    Insurance**

(a)    Contractors' Insurances

The Contractors shall effect and maintain, at no cost to the Owners, ship repairers' liability insurance providing coverage for such loss and damage for which the Contractors may be held liable to the Owners under this Contract and shall, at the Owners' request, make

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

immediately available to the Owners copies of insurance certificates and policies to provide evidence and details of cover.

(b)   Owners' Insurances

The Owners shall effect and maintain, at no cost to the Contractors, Protection and Indemnity Insurance, Hull and Machinery Insurance and War Risks Insurance and providing full coverage for such loss and damage for which the Owners may be held liable to the Contractors under this Contract and shall, at the Contractors' request, make immediately available to the Contractors copies of insurance certificates and policies to provide evidence and details of the cover.

**14.   Sundry Provisions**

(a)   Assignment

Neither party shall have the right to assign this Contract or any rights thereunder to a third party without the written consent of the other party, which consent shall not be unreasonably withheld.

(b)   Severance

If by reason of any enactment or judgment any provision of this Contract shall be deemed or held to be illegal, void or unenforceable in whole or in part, all other provisions of this Contract shall be unaffected thereby and shall remain in full force and effect.

(c)   No Waiver

No failure or delay by a Party to exercise any right or remedy provided under this Contract or by law shall constitute a waiver of that or any other right or remedy nor shall it prevent or restrict the further exercise of that or any other right or remedy.

(d)   Entire Agreement

This Contract constitutes the entire agreement between the Parties and no promise, undertaking, representation, warranty or statement by either party prior to the date of this Contract shall affect the Contract nor shall any modification of this Contract be of any effect unless in writing signed by or on behalf of the Parties.

(e)   Intellectual Property

(i) The Contractors have ownership of drawings, casting patterns, data regarding weights and volumes, information regarding prices and any other data which they have prepared or produced in connection with this Contract. The Owners may at all times use the same in subsequent work on the Vessel or sister vessels. Subject to payment of the copying expenses, the Owners may require the Contractors to supply copies of this material. The Contractors may not make any of this material available to third parties without the prior written consent of the Owners, such consent not to be unreasonably withheld where disclosure is necessary for the completion of the Works.

(ii) The Owners shall ensure that the manufacturing and/or supplying according to drawings, models or other instructions supplied by them shall not infringe any trademark, patent or similar rights of third parties. Should claims nevertheless be made against the Contractors in this respect the Owners shall keep the Contractors indemnified against the cost to the Contractors of such claims, including any legal costs incurred by them in connection therewith.

(iii) Except as provided for in Subclause 14(e)(ii) (Sundry Provisions – Intellectual Property), the Contractors hereby agree to indemnify the Owners against the cost to the Owners of any claims, including legal costs incurred by the Owners in connection therewith, based on any alleged infringement of trademarks, patents or any other protected rights arising out of or in any way related to the Contractors' performance of the Works.

(f)   Scrap Materials

Scrap metal materials removed from the Vessel pursuant to the Works shall become the Contractors' property except for propellers, tailshafts and heavy machinery parts.

**15.   Anti-Corruption Clause**

(a)   The Parties agree that in connection with the performance of this Contract they shall each:

(i) comply at all times with all applicable anti-corruption legislation and have procedures in place that are, to the best of their knowledge and belief, designed to prevent the commission of any offence under such legislation by any member of their organisation or by any person providing services for them or on their behalf; and

(ii) make and keep books, records, and accounts which in reasonable detail accurately and fairly reflect the transactions in connection with this Contract.

(b)   If a demand for payment, goods or any other thing of value ("Demand") is made to either Party by any official, any contractor or subcontractor engaged by or acting on behalf of either Party or any other person not employed by either Party and it appears that meeting such Demand would breach any applicable anti-corruption legislation, then the Party receiving the Demand shall notify the other Party as soon as practicable and the Parties shall cooperate in taking reasonable steps to resist the Demand.

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

PART II

(c)   If either party fails to comply with any applicable anti-corruption legislation it shall defend and indemnify the other party against any fine, penalty, liability, loss or damage and for any related costs (including, without limitation, court costs and legal fees) arising from such breach.

(d)   Without prejudice to any of its other rights under this Contract, either party may terminate this Contract without incurring any liability to the other party if:

(i) at any time the other party or any member of its organisation has committed a breach of any applicable anti-corruption legislation in connection with this Contract; and

(ii) such breach causes the non-breaching party to be in breach of any applicable anti-corruption legislation.

Any such right to terminate must be exercised without undue delay.

(e)   Each Party represents and warrants that in connection with the negotiation of this Contract neither it nor any member of its organisation has committed any breach of applicable anti-corruption legislation. Breach of this Subclause 15(e) (Anti-Corruption Clause) shall entitle the other party to terminate the Contract without incurring any liability to the other.

**16.   BIMCO Dispute Resolution Clause 2017**

(a)*   This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within fourteen (14) calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the fourteen (14) days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of the sole arbitrator shall be binding on both Parties as if he had been appointed by agreement.

Nothing herein shall prevent the Parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 100,000 (or such other sum as the Parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

In cases where the claim or any counterclaim exceeds the sum agreed for the LMAA Small Claims Procedure and neither the claim nor any counterclaim exceeds the sum of USD 400,000 (or such other sum as the Parties may agree) the arbitration shall be conducted in accordance with the LMAA Intermediate Claims Procedure current at the time when the arbitration proceedings are commenced.

(b)*   This Contract shall be governed by U.S. maritime law or, if this Contract is not a maritime contract under U.S. law, by the laws of the State of New York. Any dispute arising out of or in connection with this Contract shall be referred to three (3) persons at New York, one to be appointed by each of the Parties hereto, and the third by the two so chosen. The decision of the arbitrators or any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the SMA Rules current as of the date of this Contract.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 100,000 (or such other sum as the Parties may agree) the arbitration shall be conducted in accordance with the SMA Rules for Shortened Arbitration Procedure current as of the date of this Contract.

(c)*   This Contract shall be governed by and construed in accordance with Singapore**/English** law.

Any dispute arising out of or in connection with this Contract, including any question regarding its existence, validity or termination shall be referred to and finally resolved by arbitration in Singapore in accordance with the Singapore International Arbitration Act (Chapter 143A) and any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the Arbitration Rules of the Singapore Chamber of Maritime Arbitration (SCMA) current at the time when the arbitration proceedings are commenced.

The reference to arbitration of disputes under this Clause shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator and give notice that it has done so within fourteen (14) calendar days of that notice and stating that it will appoint its own arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the other party does not give notice that it has done so within the fourteen (14) days specified, the party referring a

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both Parties as if he had been appointed by agreement.

Nothing herein shall prevent the Parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 150,000 (or such other sum as the Parties may agree) the arbitration shall be conducted before a single arbitrator in accordance with the SCMA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

\*\*Delete whichever does not apply. If neither or both are deleted, then English law shall apply by default.

(d)\*   This Contract shall be governed by and construed in accordance with the laws of the place mutually agreed by the Parties and any dispute arising out of or in connection with this Contract shall be referred to arbitration at a mutually agreed place, subject to the procedures applicable there.

(e)    The Parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract. In the case of any dispute in respect of which arbitration has been commenced under Subclause (a), (c) or (d), the following shall apply:

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within fourteen (14) calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the Parties shall thereafter agree a mediator within a further fourteen (14) calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the Parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the Parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the Parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

(Note: The Parties should be aware that the mediation process may not necessarily interrupt time limits.)

\*Subclauses (a), (b), (c) and (d) are alternatives; indicate alternative agreed in Box 19.

If Box 19 in Part I is not appropriately filled in, Subclause (a) of this Clause shall apply. Subclause (e) shall apply in all cases except for alternative (b).

**17.   BIMCO Notices Clause**

All notices, requests and other communications required or permitted by any clause of this Contract shall be given in writing and shall be sufficiently given or transmitted if delivered by hand, email, express courier service or registered mail and addressed if to the Owners as stated in Box 2 or such other address or email address as the Owners may hereafter designate in writing and if to the Contractors as stated in Box 3 or such other address or email address as the Contractors may hereafter designate in writing. Any such communication shall be deemed to have been given on the date of actual receipt by the party to which it is addressed.

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

ANNEX A

**ANNEX A (SCOPE OF WORK)**

**BIMCO STANDARD SHIP REPAIR CONTRACTCODE NAME: REPAIRCON**

Note: Annex A will be a list identifying by date and description the various documents and correspondence exchanged between the Parties which together comprise the Scope of Work. Any individual general terms and conditions of the Owners and the Contractors should not be incorporated into Annex A. Any specifically agreed clauses which are to be incorporated should be listed in Box 21 and set out in Part II.

1. Owners' technical specification, dated:

February 23, 2024

2. Contractors' tender, dated:

February 7, 2024

3. Correspondence, dated:

From February 7, 2024 to February 26, 2024

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

ANNEX B

**ANNEX B (WORK VARIATION FORM)**

**BIMCO STANDARD SHIP REPAIR CONTRACTCODE NAME: REPAIRCON**

| Vessel's Name: | Work Variation Form Number: | Date issued for Signature: | |
|---|---|---|---|
| Description of Additional Works/Reductions: | | | |
| (a) Adjustment to Contract Price: | (b) Time for payment of Adjustment: | (c) Adjustment to Contract Period: | |
| For Contractors | | For Owners | |
| Name: | Date: | Name: | Date: |
| | | | |
| Signature: | | Signature: | |

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.

ANNEX C

**ANNEX C (TARIFF RATES)**

**BIMCO STANDARD SHIP REPAIR CONTRACTCODE NAME: REPAIRCON**

Copyright © 2018 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. For Explanatory notes visit BIMCO at www.bimco.org. First published in 2002, revised in 2018.



**www.proios.com**

Buenos Aires, February 7th 2024.

**TO:  BMT GLOBAL**
**Mr. Arjan van Aalst**

**REF: ANNEX M/V EN MAY TENDER**

Dear Sir,

Reference is made to your invitation to quote; we have pleasure in offering our workshop services without engagement and subject to availability as follows:

**Background:**

**About us:**

Proios S.A. is an Argentine company that has been offering comprehensive maritime services since 1989.

With Greek roots, founded by Jorge Proios, grandson of the Greek Captain Giorgos Proios, reflects through his work the tradition and customs of its Mediterranean origins.

Today, it offers its services in all the ports of the Republic of Argentina and the Oriental Republic of Uruguay, with the service capacity and efficiency that you need.

With the quality and responsiveness expected in a modern world of work.

We provide engineering services, ship design, certification of design, certification by important national and international classification societies national and international classification societies.

Tests and works according to ISO and I.A.C.S. (International Association Classification Society).

We are registered as shipyard and ship repair shop, granted by the workshop, granted by the P.N.A (Prefectura Naval Argentina).

**Relevant experience in previous projects.**

We know the importance of the times in this industry, that's why we always try to offer efficient and final solutions to our clients. Repairs afloat are one of our distinctions, offering a final repair with quality standards and ready for your vessel to set sail ready to resume commercial operations and avoiding off hired.



**www.proios.com**

BULB REPAIRS AFLOAT AT SAN LORENZO












**www.proios.com**












**www.proios.com**

**SHAFT DISMOUNTED AFLOAT**












**www.proios.com**












**www.proios.com**

**Project Understanding:**

Overview of the project: Our intention is to make a final repair between 90 days (final, not normal days) with two shifts. One from 07 to 19 hrs and another one from 19 to 07 hrs. Including holidays and weekends.

If your company decide to continue with the proposal we will present in 24 hrs all the repair plan and drawings for Class and Coast Guard. (This plan, calculations and drawings are already done). Our Naval Engineers count with more than 40 years of experience in the naval industry.

The intention of our lumpsum proposal is to avoid any inconvenient to the owner/operator asking only for the paint at the end of the repairs.

Regarding the materials and consumables, we offer all the materials certified according to vessel drawings using the same quality material in and dimensions in each case. We count with certified high tension steel plate. (certificate attached)

Our price includes all the facilities for the workers, lodging and meals, portable toilets, accommodation facilities, ambulance assistance 24/7 in case of any emergency or problem due the high temperatures and of course insurances.

**Terms and conditions:**

If you decide to proceed with our proposal, we will formalize it via contract and we request 30% payment in advance for materials, 20% in the first 30 days  with verification of work progress according to repair plan, 30% at 60 days  with verification of work progress according to repair plan and 20% with final repairs and Class and CG approbation.

We trust this offer is to your satisfaction and we are looking forward to your reply. If any question, please do not hesitate to contact undersigned.

Eva Proios



**www.proios.com**

## <u>ATTACHMENTS</u>



®

THE INTERNATIONAL CERTIFICATION NETWORK

# CERTIFICATE

*CISQ /RINA has issued an IQNet recognized certificate that the organization:*

## PROIOS S.A.

WENCESLAO VILLAFAÑE 31 CP 1158, Ciudad de Buenos Aires, ARGENTINA

*in the following operative units:*

GRAL RIVAS 175, CP 1871, Buenos Aires (CF) ARGENTINA

*has implemented and maintains a*

## Quality Management System

*for the following scope:*

SHIP AND INDUSTRIAL REPAIRS SERVICE

*which fulfills the requirements of the following standard:*

**ISO 9001:2015**

*Issued on:* 2022-01-11
*First Issued on:* 2015-12-30
*Expires on:* 2024-12-29

*This attestation is directly linked to the IQNet Partner's original certificate and shall not be used as a stand-alone document*
CISQ/RINA original certificate no.: **33143/15/ANS**

*Registration Number:* **IT-104332**

*Alex Stoichitoiu*
*President of IQNET*

**CISQ**

*Ing. Mario Romersi*
*President of CISQ*

IQNet Partners*:
AENOR *Spain* AFNOR Certification *France* APCER *Portugal* CCC *Cyprus* CISQ *Italy*
CQC *China* CQM *China* CQS *Czech Republic* Cro Cert *Croatia* DQS Holding GmbH *Germany* EAGLE Certification Group *USA*
FCAV *Brazil* FONDONORMA *Venezuela* ICONTEC *Colombia* Inspecta Sertifiointi Oy *Finland* INTECO *Costa Rica*
IRAM *Argentina* JQA *Japan* KFQ *Korea* MIRTEC *Greece* MSZT *Hungary* Nemko AS *Norway* NSAI *Ireland*
NYCE-SIGE *México* PCBC *Poland* Quality Austria *Austria* RR *Russia* SII *Israel* SIQ *Slovenia*
SIRIM QAS International *Malaysia* SQS *Switzerland* SRAC *Romania* TEST St Petersburg *Russia* TSE *Turkey* YUQS *Serbia*

* The list of IQNet partners is valid at the time of issue of this certificate. Updated information is available under www.iqnet-certification.com



**www.proios.com**



CISQ is a member of

**IQNet**

THE INTERNATIONAL CERTIFICATION NETWORK
**www.iqnet-certification.com**

*IQNet, the association of the world's first class certification bodies, is the largest provider of management System Certification in the world. IQNet is composed of more than 30 bodies and counts over 150 subsidiaries all over the globe.*

# CERTIFICADO N°   33143/15/ANS
# *CERTIFICATE No.*

Se certifica que el Sistema de Gestión de Calidad de
*It is hereby certified that the Quality Management System of*

# PROIOS S.A.

WENCESLAO VILLAFAÑE 31 CP 1158, Ciudad de Buenos Aires, ARGENTINA

en las siguientes unidades operativas / *in the following operational units*

GRAL RIVAS 175, CP 1871, Buenos Aires (CF) ARGENTINA

cumple con la norma / *is in compliance with the standard*

## ISO 9001:2015

para el siguiente campo de actividades / *for the following field of activities*

PRESTACIÓN SERVICIOS DE REPARACIÓN NAVALES E INDUSTRIALES.

*SHIP AND INDUSTRIAL REPAIRS SERVICE*

Para información relacionada
con la validez del certificado,
puede consultarse el sitio
www.rina.org

*For information concerning
validity of the certificate, you
can visit the site
www.rina.org*

Referirse a la documentación con
la información correspondiente a
los requisitos de la norma que no
se aplican al alcance del sistema
de gestión

*Reference is to be made to the
relevant documented information
for the requirements of the
standard that cannot be applied to
the Organization's management
system scope*

IAF:17
IAF:18
IAF:20

La validez de este certificado depende de las auditorías semestrales / anuales y revisión completa cada tres años del Sistema de Gestión
*The validity of this certificate is dependent on an annual / six monthly audit and on a complete review, every three years, of the management system*

El uso y validez de este certificado está sujeto al cumplimiento de los documentos RINA: Reglamento para la Certificación de Sistemas de Gestión de Calidad
*The use and validity of this certificate are subject to compliance with the RINA document : Rules for the certification of Quality Management Systems*

| | | |
|---|---|---|
| Primera emisión<br>*First Issue* | 30.12.2015 | Fecha de renovación<br>de la decisión<br>*Renewal decision date* 11.01.2022 |
| Fecha de vencimiento<br>*Expiry Date* | 29.12.2024 | Fecha de revisión<br>*Revision date* 11.01.2022 |

Fecha de vencimiento del ciclo previo de certificación el
29/12/2021 y auditoría de renovación finalizada el 08/11/2021
*Previous certification cycle expiry date 29/12/2021 and renewal
audit ended on 08/11/2021*

Simone Farinelli
Certification Americas
Region, Director

**RINA Services S.p.A.**
Via Corsica 12 - 16128 Genova Italy







**www.cisq.com**

CISQ es la Federación Italiana de Entes
de Certificación del Sistema de Gestión
CISQ is the Italian Federation of
management system Certification Bodies

---

Carlos Pellegrini 651 7th floor  - Buenos Aires (1009) Argentina
Tel: +54  911 5726-5031 (24 HRS.) E-mail: info@proios.com (General)
WWW.PROIOS.COM



**www.proios.com**



República Argentina

Prefectura Naval Argentina



REGISTRO DE EMPRESAS CERTIFICADO DE REINSCRIPCION Nº AP-16

Por cuanto la firma: **PROIOS S.A.**

Sita en: CALLE RIVAS N° 175 – DOCK SUD – PROVINCIA DE BUENOS AIRES.-

De propiedad de: PROIOS S.A.-

ha comprobado por exptes: P-6626 c.c./2004, EXP PNA-S02: 884/2011, EXPPNA-S02:

8408/2013,  EXPPNA-S02: 26049/2014, EX-2018-66207792-APN-DPSN#PNA Y EX -2021-

35170094-APN-DPSN#PNA.-

haber cumplido los requisitos exigidos en la Ordenanza Nº 06/94 - Art.1º, Inciso "A"

se la reinscribe en calidad de: **ASTILLERO (Reparaciones en Acero).**

**VALIDO PARA OPERAR EN TODA LA JURISDICCION DE P.N.A.**

Representante/Apoderado de la Empresa Sra.: **Eva PROIOS (D.N.I.N°40.731.658).-**

El presente Certificado de Registro de Empresas es Válido hasta él: **15/06/2024 (**), a** reserva de la oportuna presentación anual (ver al dorso).-

Expedido en: BUENOS AIRES, 29 DE JUNIO DE 2021.-

**   "Independientemente de la vigencia del plazo fijado como de inscripción/reinscripción en el certificado respectivo, se deberán mantener actualizadas las habilitaciones/inscripciones municipales, provinciales y/o nacionales como así también todas aquellas acreditaciones, certificaciones, permisos, constancias y/o disposiciones que oportunamente dieron origen al presente registro".-



DIVISION
REGISTRO DE
EMPRESAS



LUIS MARIA MOREYRA
PREFECTO MAYOR
JEFE DEPARTAMENTO TECNICO DE HABILITACION

NAC   303282

Scanned with CamScanner



**www.proios.com**



República Argentina

Prefectura Naval Argentina



REGISTRO DE EMPRESAS CERTIFICADO DE REINSCRIPCION Nº P-07

Por cuanto la firma: **PROIOS S.A.-**

Sita en: CARLOS PELLEGRINI Nº651 Piso 7 – CIUDAD AUTONOMA DE BUENOS AIRES.-

De propiedad de: **PROIOS S.A.**

ha comprobado por Exptes: P-20832 c.b./98, P-5768 c.b./04, S02: 30046/16, S02: 30955/17

Y EX -2022-68599156-APN-DPSN#PNA

Haber cumplido los requisitos exigidos en la Ordenanza Nº 06/94 - Art.1º, Inciso **"D"**

se la reinscribe en calidad de: **REPARACIONES NAVALES.-(*)**

**VALIDO PARA OPERAR EN AMBITO JURISDICCIONAL PREFECTURA NAVAL**

**ARGENTINA (P.N.A.) (ART. 4 LEY GENERAL P.N.A. Nº 18.398).-**

Representante/Apoderado de la Empresa Sra.: **PROIOS EVA.**
**(D.N.I.Nº 40.731.658).-**

El presente Certificado de Registro de Empresas es Válido hasta él: **27/07/2025 (**), a** reserva de la oportuna presentación anual **(ver dorso). (*).**

Expedido en: BUENOS AIRES, 27 DE JULIO DE 2022.-

**\*\*** "Independientemente de la vigencia del plazo fijado como de inscripción/reinscripción en el certificado respectivo, se deberán mantener actualizadas las habilitaciones/inscripciones municipales, provinciales y/o nacionales como así también todas aquellas acreditaciones, certificaciones, permisos, constancias y/o disposiciones que oportunamente dieron origen al presente registro".-



DIVISION
REGISTRO DE
EMPRESAS

J. U.
L. W

HUGO ALBERTO CACERES
PREFECTO MAYOR
JEFE DEL DEPARTAMENTO TECNICO DE LA NAVEGACION

NAC 330591



JFE スチール 株式会社 東日本製鉄所(京浜地区)
JFE Steel Corporation East Japan Works(Keihin)

# 検査証明書
# INSPECTION CERTIFICATE

需要家 Customer :EUROPE STEEL CENTER
需要家管理番号 Customer's Control No. :
注文者 Shipper :MARUBENI-ITOCHU STEEL INC.
注文者照合番号 Reference No. :BJE7 -YX294915
品名 Commodity & 規格 Specification : HOT ROLLED STEEL PLATE LR GRADE DH36

証明書番号 Certificate No. :230501-ALREX-1263-001 CONTINUED
日付 Date :2023-05-01
船番 Ship No. :
工事番号 Construction No. :
注文番号 Order No. :3E10289

S726 N X04

| 鋼番 Heat No. / #1 製品番号 Roll No. | 行番 Item No. | 寸法 Size (MM) T X W X L | 員数 Quantity | 質量 Mass (CAL) | C ×100 | Si ×100 | Mn ×100 | P ×1000 | S ×1000 | V / Cu ×100 | Nb / Ni ×100 | Ti / Mo ×100 | Cr ×100 | S.Al ×1000 | CEQ3 #3 ×100 | #4 | Y.P./Y.S. N/MM2 | T.S. N/MM2 | El % #5 | YR % / BT / UST | #4 | Impact 1 / 3 | Impact 2 / AVE | Notch / Temp. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SPECIFIED VALUE (STANDARD) LADLE : | | | | MIN. | | | | | | V - | Nb - | Ti - | | | | | 355 | 490 | 17 | | | MIN. | 24 | 2MM V |
| | | | | MAX. | | | | | | V 10 | Nb 5 | Ti 2 | | | | | - | 630 | - | | 1J | MIN. | 34 | -20°C |
| | | | | MIN. | - | - | 90 | - | - | - | - | - | - | 15 | - | | | | | | | | | IPS |
| | | | | MAX. | 18 | 50 | 160 | 35 | 35 | 35 | 35 | 40 | 8 | 20 | 38 | | | | | | | | | 2PS & AVE. |
| | | | | | NB+V+TI=MAX.12(X100) | | | | | | | | | | | | | | | | | | | |
| JG33802 11002 | 021 | 18 X 3000 X 12000 | 1 | 5087 | 15 | 21 | 115 | 18 | 4 | 0 / 2 | 1 / 2 | 0 / 1 | 6 | 25 | 36 | TC | 451 | 539 | 22 | A | TL 1J | 200 / 239 | 233 / 224 | 2MM V -20°C |
| | | | | | NB+V+TI= 1(X100) | | | | | | | | | | | | | | | | | | | |
| JG33803 11002 | 021 | 18 X 3000 X 12000 | 1 | 5087 | | | | | | | | | | | | | | | | | | | | |
| KA14902 11133 | 021 | 18 X 3000 X 12000 | 1 | 5087 | 14 | 20 | 113 | 20 | 5 | 0 / 2 | 1 / 1 | 0 / 1 | 4 | 24 | 34 | TC | 449 | 529 | 21 | A | TL 1J | 214 / 215 | 221 / 217 | 2MM V -20°C |
| | | | | | NB+V+TI= 1(X100) | | | | | | | | | | | | | | | | | | | |
| JM45302 11134 | 021 | 18 X 3000 X 12000 | 1 | 5087 | 14 | 21 | 115 | 13 | 4 | 0 / 2 | 1 / 1 | 0 / 1 | 5 | 28 | 34 | TC | 441 | 534 | 22 | A | TL 1J | 228 / 212 | 234 / 225 | 2MM V -20°C |
| | | | | | NB+V+TI= 1(X100) | | | | | | | | | | | | | | | | | | | |

(注) (Notes)
#1 厚板製品番号の表示方法 Indication of Plate Roll Number
:上5桁:圧延番号, 2 letters&the 1st 3 figures:mother Plate Numbers
:下2桁:分割番号, the last 2 figures:divided Plate Numbers
#2 DG:脱ガス, Degassed

#4 位置 Position
T:頂部 Top M:中部 Middle
B:底部 Bottom
方向 Direction
L:縦 Longitudinal
C:横 Transverse
Z:厚 Through-thickness

衝撃試験片寸法 Size of Impact Test Specimen
1:10X10mm 2:7.5X10mm 3:2/3X10mm 4:5X10mm
5:1/3X10mm 6:2.5X10mm 7:ThicknessX10mm
衝撃試験値特性単位 Unit of Impact Test Property
吸収エネルギー Absorbed Energy:K:kgf.m C:kgf.m/cm², J:Joule,
U:J/cm², F:ft. lbf, L:ft. lbf/cm²
破面率 Fracture: S:延性 Shear B:脆性 Brittle
横膨出量 Lateral Expansion: M:mm I:mil

#5 標点距離 Gauge Length
A:200mm (■) D:50mm (■)
E:50mm (●) H:8" (■)
J:2" (●) K:5D (●)
M:5.65√A (●) P:5.65√A (■)
R:4D (●) S:80mm (■)
U:100mm (■) Y:2" (■)
T:70mm (●)

#6 BT :曲げ試験 Bend Test
UST:超音波探傷 Ultrasonic Examination
G :合格 Good

#3 CEQ3=C+MN/6+(CU+NI)/15+(CR+MO+V)/5

上記商品は検査の結果指定の規格に合格していることを証明いたします。 (BE3306A ) (KB07430031AA) 1 A03

APPROVED LR MATERIALS QUALITY SCHEME

WE HEREBY CERTIFY THAT THE MATERIAL HAS BEEN MADE BY AN APPROVED PROCESS AND SATISFACTORILY TESTED IN ACCORDANCE WITH THE RULES OF LLOYD'S REGISTER.
THIS CERTIFICATE IS ISSUED UNDER THE ARRANGEMENTS AUTHORISED BY LLOYD'S REGISTER IN ACCORDANCE WITH THE REQUIREMENTS OF THE MATERIALS QUALITY SCHEME AND CERTIFICATE NUMBER MQS034.

東日本製鉄所（京浜地区）：〒210−0868神奈川県川崎市川崎区扇島1番地1 East Japan Works(Keihin):1-1, OHGISHIMA, KAWASAKI 210-0868 JAPAN

D. Yuasa
DAIJIRO YUASA
東日本製鉄所(京浜地区)品質保証室
Quality Assurance Section
East Japan Works(Keihin)

This Inspection Certificate is printed with special forgery proof technology.
このミルシートは特殊偽造防止技術を使用しております。





PROIOS S.A.

## Object description

| Field | Value |
|---|---|
| Vessel: | EN MAY |
| Type: | Bulk carrier with 7 centre cargo holds |
| Owners / managers: | Foremost Group |
| Dimensions (LxBxD): | 228.41 x 36.50 x 19.89 m |
| GT / NT: | 46,990 / 27,490 |
| Loading condition: | In ballast |
| Present draughts: | Approx. 0.5 m forward and 7.8 m aft. |
| Damage: | PS hull holed |
| | Collision bulkhead ripped open |
| | DB WB tank no. 1 PS ripped open |

**TENDER**

Please fill in the yellow marked cells, at least for one of the repair options: temporary or permanent repairs. If cells are left blind, the associated costs are assumed to be included in the steel kilo price. Working hours including night and weekend shifts to be discussed with owners after receipt of quotation

| Option | | Temporary repairs | Permanent repairs | Remarks |
|---|---|---|---|---|
| Company / contractors name | | PROIOS S.A. | PIAPSA | |
| Company address | | CARLOS PELLEGRINI 651 FLOOR 7TH - BUENOS AIRES 1009 ARGENTINA | | |

### GENERAL &M

| Option | unit | Temporary repairs | Permanent repairs | Remarks |
|---|---|---|---|---|
| Repair facility / location | | | | Name of repair berth |
| Shifting of the vessel astern required | m | NULL | m | Please state how many meters vessel needs to be shifted (if allowed by pier owner) |
| Time needed to commence repairs | days | 2 NORMAL | days | After awarding the contract (estimated at 8 February 2024) |
| Estimated repair time | days | | 57 days | |
| Working hours for weekdays | hrs | 07 TO 19 HRS | hrs | Please state working hours per day; from xx hrs to xx hrs |
| Nightshift possible | | from 19 to 07 hrs | | Please state working hours |
| Weekend work possible | | TWO SHIFTS / FROM 07-19 AND 19-07 | | If yes: please state working hours |
| Estimated amount of steel to be replaced | kg | 76820 (subject to Class recommendations) | kg | |
| Quantity of available certified high tensile steel | kg | INCLUDED IN LUMPSUM PRICE | kg | Please state yes or no (to be provided at a later stage) |
| Quantity of available normal grade steel | kg | INCLUDED IN LUMPSUM PRICE | kg | |
| Welders' certificates available | | yes | | Please state type of certification |
| Company ISO certification | | ISO 9001:2015 by RINA | | |
| Limiting meteorological conditions, if any | m | HIGH TEMPERATURE | m | For example maximum wave height when working with a pontoon |
| Other limiting weather conditions | | NULL | | |
| Craneage on the berth | | | | To be arranged by owners |
| Electricity | | | | To be arranged by owners |

### COSTS

| Option | unit | Costs in USD | Costs in USD | Remarks |
|---|---|---|---|---|
| Costs for towage to repair facility | | Costs in USD | | Including tugs, pilot, etc. |
| Preparation of damage areas (cleaning) | | NULL | | Including disposal of mud, sand, contaminated water etc. |
| Steel repairs per kg, based on an estimated amount of 50 - 75 mt steel | kg | COMPULSORY BY PORT | kg | Figure includes cutting, cropping and welding of new steel, as well as equipment and materials and disposal of all damaged steel, including all plate types, shapes, railings, etc. (no uplift for specials) |
| Nightshift | night | INCLUDED IN LUMPSUM PRICE | night | Please state additional costs per shift |
| Weekend work | day | INCLUDED IN LUMPSUM PRICE | day | Please state additional costs per shift |
| Weekend work | night | INCLUDED IN LUMPSUM PRICE | night | Please state additional costs per shift |
| Staging | day | INCLUDED IN LUMPSUM PRICE | day | Please state additional costs per shift |
| Additional | day | INCLUDED IN LUMPSUM PRICE | day | |
| Barge or pontoon | day | INCLUDED IN LUMPSUM PRICE | day | No additional costs for mob/demob to be charged |
| Crane on pontoon | day | NULL | day | No additional costs for mob/demob to be charged |
| Cherrypicker | day | NULL | day | No additional costs for mob/demob to be charged |

| Item | Unit | Status | Notes |
|---|---|---|---|
| Accommodation of crew (if any) | day | INCLUDED IN LUMPSUM PRICE | |
| Transportation of crew | day | INCLUDED IN LUMPSUM PRICE | |
| Lighting and ventilation | day | INCLUDED | |
| Painting according vessel's paint schedule | | INCLUDED IN LUMPSUM PRICE | Owners to supply paint |
| NDT checks | | INCLUDED IN LUMPSUM PRICE | |
| ISPS, gate entry passes, etc. | | COMPULSORY BY PORT | Please provide an estimate for the entire repair duration |
| Permits (hotwork, etc) | | COMPULSORY BY PORT | Please provide an estimate for the entire repair duration |
| Cleaning of repair areas after completion | | COMPULSORY BY PORT | Including disposal of garbage, contaminated water etc. |
| Class surveys | | OWNERS ACCOUNT | To be discussed with owners who will arrange for this |
| Additional costs? | | NULL | Please advise |

**Temporary repair plan**

From our 35 years of experience, we do not recommend temporary repairs due the high cost and to avoid to loose hires. We can make final repair with as per Class requisition. If our proposal is approved we already make the detail plans and drawings as per Class requisition to send as soon as we have the P.O. The idea is to offer a lumpsum price for final repairs, including all the procedures, and plans. The intention is to not bother the vessel, we will prepare an operative base with consumables, toilets , meals , beverages and everything in order to dont disturb the vessel and dont asked for anything. We will need for your side only the paint.

| | | | |
|---|---|---|---|
| **Lumpsum** | One lumpsum figure for repairs | USD $ | 2,280,889.92 USD | Including costs for all actions necessary for the repairs |

**Addendum No.1 of BIMCO REPAIRCON 2018 Dated February 27, 2024**

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that Clause ii) under Box 21 is revised as follows:

ii)All welders used by the contractor are certified by IACS. All the welding materials and test equipment used by the contractor are certified by IACS and inspected by BV.

Signature (Owners)

Signature (Contractors)

Eva Proios
Ops. Department
Proios S.A.

_____                    _____ 03/01/2024

# EXHIBIT "3"

# Protocol of Delivery

En May Maritime LLC ("the Owners") have delivered to and Axion Management Ship LLC 16/9 Dupont Highway, Suite 100. Dover, Delaware (19901). United States of America www.axionmanagement.us as Proios S.A.'s Agents ("the contractor") have accepted delivery of the bulk carrier 46,990 GRT, 27,488 NRT motor vessel "En May" registered under Liberian flag in the port of Monrovia with IMO number 9789829 , at ___16:50___ Hours local time on March 1, 2024 or ___19:50___ hours GMT on March 1, 2024 at Piapsa Berth, Zarate, Argentia, pursuant to the terms of BIMCO REPAIRCON 2018 made between the Owners and the Contractors dated February 27th, 2024.

The Owners:
For and on behalf of En May Maritime LLC

The Contractors:
For and on behalf of Axion Management Ship LLC as Proios S.A.'s Agents

By      : ..............................................

By      : ..............................................

Name  : Captain Miguel Jardiel

Name  : Mr. Jorge Proios

The Funds were credited to our Account on March, 4. 2024