**<u>Exhibit A – Spanish (Original)</u>**



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

## EXTERIOR Y CAMBIOS

**-Última comunicación incorporada: A 8191-**

# Texto ordenado al 10/02/2025



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | TEXTO ORDENADO DE LAS NORMAS SOBRE<br>"EXTERIOR Y CAMBIOS". |
|---|---|

- Índice -

**Sección 1.** Disposiciones generales.


**Sección 2.** Disposiciones específicas para los ingresos por el mercado de cambios.

    2.1.    Cobros de exportaciones de bienes.
    2.2.    Cobros de exportaciones de servicios.
    2.3.    Enajenación de activos no financieros no producidos.
    2.4.    Títulos de deuda suscriptos en el exterior y endeudamientos financieros con el exterior.
    2.5.    Títulos de deuda u otros valores representativos de deuda denominados y pagaderos en moneda extranjera en el país.
    2.6.    Excepción de liquidación de cobros de exportaciones de bienes y servicios para los beneficiarios del "Régimen de fomento para las exportaciones de la economía del conocimiento".
    2.7.    Otras excepciones a la obligación de liquidación.
    2.8.    Canjes y arbitrajes con clientes asociados a ingresos de divisas del exterior.
    2.9.    Operaciones comprendidas en el artículo 3° del Decreto 616/05.


**Sección 3.** Disposiciones específicas para los egresos por el mercado de cambios.

    3.1.    Pagos de importaciones y otras compras de bienes al exterior.
    3.2.    Pagos de servicios prestados por no residentes.
    3.3.    Pagos de intereses de deudas por importaciones de bienes y servicios.
    3.4.    Pagos de utilidades y dividendos.
    3.5.    Pagos de títulos de deuda suscriptos en el exterior y endeudamientos financieros con el exterior.
    3.6.    Pagos de títulos de deuda u otros valores representativos de deuda denominados y pagaderos en moneda extranjera en el país y obligaciones en moneda extranjera entre residentes.
    3.7.    Pagos de endeudamientos en moneda extranjera de residentes por parte de fideicomisos constituidos en el país para garantizar la atención de los servicios.
    3.8.    Compra de moneda extranjera por parte de personas humanas residentes para la formación de activos externos, la remisión de ayuda familiar y por operaciones con derivados.
    3.9.    Compra de moneda extranjera por parte de personas humanas residentes para ser aplicados simultáneamente a la compra de inmuebles en el país con créditos hipotecarios.
    3.10.   Compra de moneda extranjera por parte de otros residentes –excluidas las entidades– para la formación de activos externos y por operaciones con derivados.
    3.11.   Otras compras de moneda extranjera por parte de residentes con aplicación específica.
    3.12.   Compra de moneda extranjera para operaciones con derivados financieros.
    3.13.   Repatriaciones de inversiones directas y otras compras de moneda extranjera por parte de no residentes.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | TEXTO ORDENADO DE LAS NORMAS SOBRE "EXTERIOR Y CAMBIOS". |
|---|---|

- Índice -

3.14.  Canjes y arbitrajes con clientes no asociados a ingresos de divisas del exterior.

3.15.  Cancelación por parte de entidades financieras de líneas de crédito del exterior aplicadas a la financiación de operaciones de comercio exterior y garantías financieras otorgadas.

3.16.  Requisitos complementarios para los egresos por el mercado de cambios.

3.17.  Acceso con "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)".

3.18.  Acceso con "Certificación de aumento de las exportaciones de bienes".


Sección 4.  Otras disposiciones específicas.

4.1.  Operaciones con tarjetas de crédito, compra, débito y prepagas.

4.2.  Operaciones cursadas a través del Sistema de Monedas Locales (SML).

4.3.  Operaciones con títulos valores.

4.4.  Suscripción de bonos BOPREAL por parte de deudores de importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23.

4.5.  Suscripción de bonos BOPREAL por parte de deudores de servicios de no residentes prestados o devengados hasta el 12/12/23.

4.6.  Suscripción de bonos BOPREAL por utilidades y dividendos de accionistas no residentes pendientes de pago o ya percibidas en el país.

4.7.  Disposiciones complementarias asociadas a los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL).


Sección 5.  Pautas operativas.

5.1.  Horario de funcionamiento del mercado de cambios.

5.2.  Tipo de cambio minorista.

5.3.  Boletos de cambio.

5.4.  Identificación del cliente.

5.5.  Información mínima en las transferencias de fondos desde y hacia el exterior.

5.6.  Notificación al cliente de acreditación de fondos en cuentas de corresponsalía.

5.7.  Registro de las operaciones con clientes ante el BCRA.

5.8.  Boletos globales diarios.

5.9.  Posición general de cambios y tenencias en moneda extranjera de las entidades.

5.10.  Operaciones propias de las entidades.

5.11.  Operaciones de cambio entre entidades.

5.12.  Operaciones de arbitrajes y canjes en el exterior de las entidades.

5.13.  Operaciones que impliquen importación y/o exportación de moneda nacional.

5.14.  Liquidación de financiaciones en moneda extranjera otorgadas por entidades financieras locales.

5.15.  Suspensión de operaciones por incumplimiento en el registro ante el BCRA.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | TEXTO ORDENADO DE LAS NORMAS SOBRE "EXTERIOR Y CAMBIOS". |
|---|---|

- Índice -

Sección 6.  Definiciones.

    6.1.    Instrumentos operados en el mercado de cambios.
    6.2.    Tipo de operaciones cursadas en el mercado de cambios.
    6.3.    Operaciones al contado.
    6.4.    Operaciones a término.
    6.5.    Residente.
    6.6.    Operaciones con contrapartes vinculadas.
    6.7.    Posición general de cambios (PGC).
    6.8.    Servicios.
    6.9.    Rentas (ingreso primario).
    6.10.    Transferencias corrientes (ingreso secundario).
    6.11.    Activos no financieros no producidos.
    6.12.    Gobiernos locales.


Sección 7.  Cobros de exportaciones de bienes.

    7.1.    Obligación de ingreso y liquidación en los plazos establecidos.
    7.2.    Liquidaciones y otros ingresos imputables al cumplimiento de un permiso de embarque.
    7.3.    Aplicación de divisas de cobros de exportaciones.
    7.4.    Otras imputaciones admitidas en el cumplimiento de la obligación de ingreso y liquidación.
    7.5.    Ampliaciones del plazo para el ingreso y liquidación de divisas.
    7.6.    Incumplidos en gestión de cobro.
    7.7.    Cancelación de anticipos u otras financiaciones de exportación sin aplicación de divisas por cobros de exportaciones de bienes.
    7.8.    Otras disposiciones.
    7.9.    Operaciones financieras habilitadas para aplicar cobros de exportaciones de bienes y servicios.
    7.10.    Operaciones habilitadas para la aplicación de cobros de exportaciones de bienes en el marco del régimen de fomento de inversión para las exportaciones (Decreto N° 234/21).
    7.11.    Financiaciones asociadas a importaciones de bienes habilitadas para la aplicación de cobros de exportaciones de bienes.


Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO).

    8.1.    Operaciones comprendidas.
    8.2.    Entidad nominada por el exportador.
    8.3.    Información de las destinaciones de exportación a disposición de las entidades.
    8.4.    Responsabilidades de la entidad nominada para el seguimiento del permiso.
    8.5.    Otras imputaciones admitidas en el cumplimiento del seguimiento.
    8.6.    Reportes de las entidades en el seguimiento.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | TEXTO ORDENADO DE LAS NORMAS SOBRE "EXTERIOR Y CAMBIOS". |
|---|---|

- Índice -

Sección 9.   Seguimiento de anticipos y otras financiaciones de exportación de bienes.

9.1.   Operaciones comprendidas.
9.2.   Entidad nominada por el exportador.
9.3.   Certificaciones de aplicación de cobros de exportaciones.
9.4.   Fecha de aplicación de divisas.
9.5.   Datos mínimos que conforman la certificación.
9.6.   Otras circunstancias que reduzcan el monto pendiente de aplicación.
9.7.   Operaciones cursadas por el Sistema de Monedas Locales (SML).
9.8.   Cumplimiento del régimen informativo del BCRA.

Sección 10.  Pagos de importaciones y otras compras de bienes en el exterior.

10.1.   Disposiciones generales.
10.2.   Definiciones.
10.3.   Pagos de importaciones de bienes que cuentan con registro de ingreso aduanero.
10.4.   Pagos de importaciones de bienes con registro de ingreso aduanero pendiente.
10.5.   Seguimiento de pagos de importaciones con registro de ingreso aduanero pendiente.
10.6.   Otras disposiciones.
10.7.   Líneas de crédito de entidades financieras aplicadas a la financiación de importaciones.
10.8.   Cancelación al exterior de deudas originadas en la importación argentina de bienes que no encuadran como deudas comerciales.
10.9.   Otras compras de bienes al exterior.
10.10.  Disposiciones complementarias para importaciones de bienes con registro de ingreso aduanero a partir del 13.12.23.
10.11.  Disposiciones complementarias para importaciones de bienes con registro de ingreso aduanero hasta el 12.12.23.

Sección 11.  Sistema de seguimiento de pagos de importaciones (SEPAIMPO).

11.1.   Seguimiento de oficializaciones de importación.
11.2.   Seguimiento de pagos de importaciones realizados con anterioridad al registro de ingreso aduanero.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | TEXTO ORDENADO DE LAS NORMAS SOBRE "EXTERIOR Y CAMBIOS". |
|---|---|

- Índice –

Sección 12. Posiciones arancelarias de la NCM con tratamiento específico en las normas de importaciones de bienes.

12.1. Posiciones arancelarias referidas en el punto 10.10.2.10.

Sección 13. Pagos de servicios prestados por no residentes.

13.1. Disposiciones generales.
13.2. Pagos de servicios que fueron o serán prestados o devengados a partir del 13/12/23.
13.3. Pagos de servicios que fueron o serán prestados o devengados a partir del 13/12/23 con anterioridad a lo previsto en los puntos 13.2.3. a 13.2.6.
13.4. Pagos de servicios de no residentes prestados o devengados hasta el 12/12/23.
13.5. Cancelación de cartas de crédito o letras avaladas emitidas u otorgadas por entidades financieras para garantizar importaciones de servicios.
13.6. Líneas de crédito de entidades financieras aplicadas a la financiación de importaciones de servicios.

Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivos a las Grandes Inversiones (RIGI).

14.1. Beneficios relacionados con el ingreso y/o liquidación de cobros de exportaciones de bienes y servicios.
14.2. Beneficios relacionados con el acceso al mercado de cambios para operaciones de egreso.
14.3. Otros beneficios.
14.4. Requisito complementario para egresos para un VPU que prevé hacer uso de los beneficios en materia de cobros de exportaciones de bienes y servicios.
14.5. Otras disposiciones.
14.6. Estabilidad cambiaria.

Sección 15. Disposiciones legales que determinan la estructura general del mercado de cambios.

15.1. Artículos 1° y 2° del Decreto 260/02.
15.2. Artículos 1°, 2° y 3° del Decreto 609/19.
15.3. Artículo 1° del Decreto 28/23.

Tabla de correlaciones.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|--------------------|
|          | Sección 1. Disposiciones generales. |

1.1.   En todas las operaciones de cambio, canje y/o arbitraje que se cursen por el mercado libre de cambios, establecido por el artículo 1° del Decreto N° 260/02 según el texto establecido por el artículo 132 de la Ley 27444, en adelante "mercado de cambios", deberán intervenir entidades financieras o cambiarias autorizadas a operar en cambios por el Banco Central de la República Argentina (BCRA), en adelante "entidades".

1.2.   Las entidades podrán dar acceso al mercado de cambios a las personas humanas o jurídicas y los patrimonios y otras universalidades, en adelante "clientes", cuando verifiquen el cumplimiento de las disposiciones generales y, en caso de corresponder, aquellas específicas previstas para el concepto pertinente en el presente texto ordenado.

En todos los casos, la entidad deberá contar con los elementos que le permitan constatar el carácter genuino de la operación a cursar y su correcto encuadramiento en el concepto declarado.

1.3.   Las operaciones de cambio serán realizadas al tipo de cambio que sea libremente pactado entre las partes.

1.4.   Por cada operación de cambio, canje y/o arbitraje, las entidades deberán realizar un boleto de compra y/o venta de cambio, según corresponda, conforme a lo estipulado en el punto 5.3.

1.5.   Los incumplimientos a esta normativa se encontrarán alcanzados por la Ley del Régimen Penal Cambiario.

1.6.   Las entidades deberán dar cumplimiento a los requisitos de identificación de sus clientes y registro de las operaciones ante el BCRA según el régimen informativo correspondiente. Los incumplimientos en el envío de la información estarán sujetos a la aplicación del artículo 41 de la Ley de Entidades Financieras.

1.7.   Las entidades deberán cumplir con las normas sobre "Prevención del lavado de activos, del financiamiento del terrorismo y otras actividades ilícitas".

1.8.   Las distintas consultas o pedidos de conformidad previa que realicen los clientes por operaciones a cursar en el mercado de cambios deberán indefectiblemente efectuarse a través de una entidad que esté autorizada a cursar el tipo de operación contenida en ella, las que deben ser presentadas en la mesa de entrada del BCRA, dirigidas a la Gerencia Principal de Exterior y Cambios.

En las mismas deberá constar un análisis de la entidad interviniente del encuadre de la operación, nota original del cliente y los datos necesarios para identificar la operación para poder proceder a su análisis de acuerdo con el tipo de consulta o pedido que se realiza, acompañando la documentación que entienda relevante para el análisis de lo solicitado.

1.9.   Los sujetos alcanzados deberán cumplimentar el "Relevamiento de activos y pasivos externos" por las operaciones que corresponde declarar, incluso cuando no se haya producido un ingreso de fondos al mercado de cambios y/o no se prevea acceder en el futuro a ese mercado.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

**2.1. Cobros de exportaciones de bienes.**

En las Secciones 7., 8. y 9. se detallan las normas asociadas a la operatoria de exportaciones de bienes, las disposiciones relacionadas al seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO) y del seguimiento de anticipos y otras financiaciones de exportación de bienes, respectivamente.

**2.2. Cobros de exportaciones de servicios.**

2.2.1. Los cobros por la prestación de servicios por parte de residentes a no residentes deberán ser ingresados y liquidados en el mercado de cambios en un plazo no mayor a los 20 (veinte) días hábiles a partir de la fecha de su percepción en el exterior o en el país o de su acreditación en cuentas del exterior.

En la medida que la exportación de servicios encuadre en lo dispuesto por el Decreto 28/23, lo indicado precedentemente se considerará cumplimentado cuando en los plazos indicados el exportador haya ingresado y liquidado en el mercado de cambios un monto no menor al 80% (ochenta por ciento) del contravalor cobrado y por la porción no liquidada haya concretado operaciones de compraventa con títulos valores, en las cuales los títulos valores son adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local en el país.

En el caso de que el cliente sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que haya declarado ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 será aplicable la excepción prevista en el punto 14.1.3.

En el caso de fondos percibidos o acreditados en el exterior, se podrá considerar cumplimentado el ingreso y liquidación por el monto equivalente a los gastos habituales debitados por las entidades financieras del exterior por la transferencia de fondos al país.

2.2.2. Quedarán exceptuados de la obligación de liquidación los cobros de exportaciones de servicios que ingresen en los plazos normativos previstos y encuadren en las siguientes situaciones:

2.2.2.1. Se trata de cobros de exportaciones de servicios prestados por personas humanas y se cumplen la totalidad de las siguientes condiciones:

i) Las operaciones correspondan a los siguientes códigos de concepto:

S01     Mantenimiento y reparaciones.
S07     Servicios de construcción.
S12     Servicios de telecomunicaciones.
S13     Servicios de informática.
S14     Servicios de información.
S15     Cargos por el uso de la propiedad intelectual.
S16     Servicios de investigación y desarrollo.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

S17   Servicios jurídicos, contables y gerenciales.

S18   Servicios de publicidad, investigación de mercado y encuestas de opinión pública.

S19   Servicios arquitectónicos, de ingeniería y otros servicios técnicos.

S21   Servicios relacionados con el comercio.

S22   Otros servicios empresariales.

S23   Servicios audiovisuales y conexos.

S24   Otros servicios personales, culturales y recreativos.

S27   Otros servicios de salud.

S28   Enseñanzas educativas.

ii) Los fondos sean acreditados en cuentas en moneda extranjera de titularidad del cliente en entidades financieras locales.

iii) El cliente no ha utilizado este mecanismo por un monto superior al equivalente de USD 36.000 (dólares estadounidenses treinta y seis mil) en el año calendario, en el conjunto de las entidades y por el conjunto de los conceptos comprendidos.

iv) La entidad interviniente cuenta con una declaración jurada del exportador en la que deje constancia de que:

a) no supera el límite anual establecido en el conjunto de las entidades y por el conjunto de los conceptos comprendidos.

b) cumple lo previsto en el punto 3.16.3.1. tomando como referencia el día en que solicita la utilización de este mecanismo en reemplazo del día de acceso al mercado de cambios.

c) se compromete a cumplir lo previsto en el punto 3.16.3.2. tomando como referencia el día en que solicita la utilización de este mecanismo, en reemplazo del día de acceso al mercado de cambios.

v) La utilización de este mecanismo deberá resultar neutra en materia fiscal.

A los efectos del registro de estas operaciones se deberán confeccionar dos boletos sin movimiento de pesos, el boleto de compra se realizará por el concepto de servicios que corresponda y el boleto de venta deberá registrarse bajo el código de concepto "A22. Acreditación de cobros de exportaciones de bienes y servicios".

2.2.2.2.   Se trata de cobros de exportaciones de servicios prestados por personas jurídicas que sean beneficiarias del Régimen de fomento para las exportaciones de la economía del conocimiento (Capítulo II del Decreto 679/22) y se cumplen la totalidad de las siguientes condiciones:

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

i) las operaciones corresponden a los códigos de concepto enunciados en el punto 2.2.2.1.i).

La entidad interviniente deberá adicionalmente contar con una declaración jurada del cliente en la que conste que los cobros que dejan de liquidarse corresponden a exportaciones de servicios que están relacionadas con actividades vinculadas a la economía del conocimiento.

ii) el cliente cuente por el equivalente del monto que se pretende no liquidar con una "Certificación de incremento de exportaciones asociadas a la economía del conocimiento (Decreto 679/22)" emitida en los términos previstos en el punto 2.6.2.

iii) los fondos en moneda extranjera deberán ser acreditados en una "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto 679/22" de titularidad del cliente hasta que sean destinados al pago en moneda extranjera de las remuneraciones de personal en relación de dependencia, debidamente registrado, afectado a las actividades de la economía del conocimiento, conforme los criterios establecidos en el Decreto 679/22 y la Resolución 234/22 del Ministerio de Economía.

A los efectos del registro de estas operaciones se deberán confeccionar dos boletos sin movimiento de pesos, el boleto de compra se realizará por el concepto de servicios que corresponda y el boleto de venta deberá registrarse bajo el código de concepto "A22. Acreditación de cobros de exportaciones de bienes y servicios".

2.2.2.3. Se trata de cobros de exportaciones de servicios que correspondan a las siguientes operaciones asociadas al turismo internacional en el país:

i) los cobros por consumos en el país efectuados por no residentes mediante tarjetas de débito, crédito, compra o prepagas emitidas en el exterior.

ii) los cobros por consumos en el país efectuados por no residentes mediante billeteras electrónicas o cualquier otra modalidad de pago que implique un debito inmediato en una cuenta en una entidad financiera en el exterior o en una cuenta virtual en una empresa en el exterior.

En el caso de que la modalidad por la cual se canaliza el consumo contemple la posibilidad de utilizar cuentas virtuales, quien ingresa los fondos deberá demostrar que el mecanismo de pago utilizado prevé que tales cuentas se encuentren abiertas en instituciones cuya operatoria esté autorizada por la autoridad monetaria o equivalente de su país de radicación y que la tenencia de una clave fiscal de ese país es condición para la apertura de la cuenta.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

iii) los cobros por cualquier tipo de servicio turístico en el país contratado por no residentes, incluyendo aquellos servicios contratados a través de agencias mayoristas y/o minoristas de viajes y turismo del país.

iv) los cobros por servicios de transporte de pasajeros no residentes con destino en el país por vía terrestre, aérea o acuática.

A los efectos del registro de estas operaciones se deberán confeccionar dos boletos sin movimiento de pesos, el boleto de compra se realizará por el concepto de servicios al que corresponda el ingreso y el boleto de venta bajo el concepto "A10. Débito/crédito de moneda extranjera en cuentas locales por transferencias con el exterior".

2.2.3. En el caso de que los cobros sean ingresados a través del sistema de monedas locales se considerará cumplimentada la liquidación por el monto acreditado en moneda nacional en la cuenta del exportador. En caso de que se trate de servicios prestados a residentes paraguayos o uruguayos facturados en la moneda del país de destino de la exportación se computará el equivalente en dicha moneda del monto acreditado.

2.2.4. Se admitirá la aplicación de cobros de exportaciones de servicios a la cancelación de capital e intereses de endeudamientos financieros comprendidos el punto 3.5. o de títulos de deuda con registro público en el país que encuadren en el punto 3.6.1.3. o a la repatriación de aportes de inversiones directas, en la medida que se cumplan los requisitos previstos en el punto 7.9.

2.2.5. Asimismo, en la medida que se cumplan los requisitos previstos en los puntos 3.11.3. y 7.9.5., se admitirá que los cobros de exportaciones de servicios sean acumulados en cuentas abiertas en entidades financieras locales o en el exterior, por los montos exigibles en los contratos de endeudamiento, con el objeto de garantizar la cancelación de los servicios de capital e intereses de endeudamientos financieros comprendidos el punto 3.5. y/o de títulos de deuda con registro público en el país que encuadren en el punto 3.6.1.3.

2.3. Enajenación de activos no financieros no producidos.

El contravalor percibido por parte de residentes por la enajenación a no residentes de activos no financieros no producidos deberá ingresarse en divisas y liquidarse en el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de percepción en el exterior o en el país o de su acreditación en cuentas del exterior.

En el caso de fondos percibidos o acreditados en el exterior, se podrá considerar cumplimentado el ingreso y liquidación por el monto equivalente a los gastos habituales debitados por las entidades financieras del exterior por la transferencia de fondos al país.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

2.4. **Títulos de deuda suscriptos en el exterior y endeudamientos financieros con el exterior.**

Los títulos de deuda con registro público en el exterior, otros endeudamientos de carácter financiero con el exterior y los títulos de deuda con registro público en el país denominados en moneda extranjera íntegramente suscriptos en el exterior, desembolsados a partir de 01/09/19, deberán ser ingresadas y liquidadas en el mercado de cambios como requisito para el posterior acceso al mismo a los efectos de atender sus servicios de capital e intereses en el marco de lo dispuesto en el punto 3.5.

2.5. **Títulos de deuda u otros valores representativos de deuda denominados y pagaderos en moneda extranjera en el país.**

Las emisiones de residentes de títulos de deuda con registro público en el país no comprendidas en el punto 3.5. y/o de pagarés con oferta pública emitidos en el marco de la Resolución General 1.003/24 de la Comisión Nacional de Valores (CNV) y concordantes y/o de valores de deuda fiduciaria de fiduciarios de fideicomisos fiduciarios con oferta pública concretadas con la disposiciones de la CNV en la materia, denominados y suscriptos en moneda extranjera, deberán ser liquidadas en el mercado de cambios como requisito para el posterior acceso a éste a los efectos de atender sus servicios de capital y/o intereses con moneda extranjera en el país en el marco de lo dispuesto en el punto 3.6.

2.6. **Excepción de liquidación de cobros de exportaciones de bienes y servicios para los beneficiarios del "Régimen de fomento para las exportaciones de la economía del conocimiento".**

2.6.1. Las personas jurídicas inscriptas en el Registro Nacional de Beneficiarios del Régimen de Promoción de la Economía del Conocimiento y que sean beneficiarios de lo dispuesto en el Capítulo II del Decreto 679/22 quedarán exceptuados de la obligación de liquidación de los cobros de exportaciones de bienes y servicios que correspondan a actividades de la economía del conocimiento, en la medida que se cumpla la totalidad de las siguientes condiciones:

2.6.1.1. hayan ingresado por el mercado de cambios en los plazos establecidos en cada caso;

2.6.1.2. cuenten con una "Certificación de incremento de exportaciones asociadas a la economía del conocimiento (Decreto 679/22)" en los términos previstos en el punto 2.6.2.;

2.6.1.3. se den cumplimiento a los restantes requisitos establecidos en los puntos 2.2.2.2. o 7.8.4., según corresponda.

Los montos de las divisas a ser afectadas en el marco de lo dispuesto en el Capítulo II del Decreto 679/22 no pueden resultar alcanzadas por ningún otro tratamiento cambiario diferencial que no sea aquel previsto en dicho capítulo.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

2.6.2. El beneficiario deberá nominar una única entidad financiera local que será la responsable de emitir las "Certificaciones de incremento de exportaciones asociadas a la economía del conocimiento (Decreto 679/22)" y remitirlas a las entidades por las cuales el cliente desee concretar los ingresos de sus cobros de exportaciones de bienes o servicios.

La entidad nominada podrá emitir estas certificaciones para cada periodo trimestral de referencia posterior a la inscripción del cliente en el registro, cuando se verifiquen la totalidad de los siguientes requisitos:

2.6.2.1. el monto de las certificaciones obtenidas para el periodo trimestral de referencia, incluyendo la que se solicita emitir, no supera el equivalente en dólares estadounidenses al 30% (treinta por ciento) del incremento de los cobros de exportaciones de bienes y servicios ingresados por el mercado de cambios en el trimestre de referencia respecto a aquellos en igual trimestre del 2021.

La entidad deberá, antes de la emisión de cada certificación, constatar el valor del monto indicado en la información suministrada por el BCRA.

En caso de que el trimestre de referencia sea el cuarto de 2022, del monto disponible deberá deducirse la suma de las certificaciones que se hubieran emitido oportunamente por operaciones posteriores al 30/09/22 en el marco de lo dispuesto en el punto 3.18. y/o en el punto 3. de la Comunicación A 7518.

A los efectos del cómputo de los cobros de exportaciones de servicios se tomarán en consideración las operaciones que correspondan a los conceptos detallados en el punto 2.2.2.1.i).

2.6.2.2. la entidad cuente con una declaración jurada del exportador en la que se deja constancia que:

i) el monto de las certificaciones solicitadas para el periodo trimestral de referencia, incluyendo la que se solicita emitir, corresponde al incremento de los cobros de exportaciones por actividades relacionadas con la economía del conocimiento.

ii) se compromete a que los fondos no liquidados en virtud de este mecanismo serán utilizados para el pago en moneda extranjera de las remuneraciones de personal en relación de dependencia, debidamente registrado y afectado a las actividades de la economía del conocimiento, conforme los criterios establecidos en el Decreto 679/22 y la Resolución 234/22 del Ministerio de Economía.

iii) a la fecha de emisión no registra incumplimientos en materia de ingreso y liquidación de cobros de exportaciones de bienes o servicios.

iv) cumple lo previsto en el punto 3.16.3.1. tomando como referencia el día en que solicita la certificación en reemplazo del día de acceso al mercado de cambios.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

v) se compromete a cumplir lo previsto en el punto 3.16.3.2. tomando como referencia el día en que solicita la certificación en reemplazo del día de acceso al mercado de cambios.

2.6.2.3. Los cobros de exportaciones que pretenden enmarcarse en este mecanismo no fueron alcanzados por ningún otro tratamiento cambiario diferencial.

2.6.3. El BCRA considerará inicialmente como entidad nominada por el exportador a aquella entidad que haya acumulado el mayor monto de liquidaciones por los conceptos de servicios comprendidos entre el 02/01/22 y el 31/05/22.

Si el exportador realizó su primer ingreso de cobros de exportaciones computables a partir de esa última fecha se seleccionará a la entidad por la cual se hizo ese ingreso.

Cuando el exportador desee modificar la entidad nominada para la emisión de las certificaciones, la entidad a cargo del seguimiento deberá notificarle la voluntad del exportador a la nueva entidad. En el caso de aceptar, la nueva entidad quedará habilitada para emitir nuevas certificaciones una vez que el cambio de entidad haya quedado registrado en el BCRA y la entidad previa le haya remitido el detalle de las certificaciones emitidas a nombre del exportador hasta ese momento.

2.7. Otras excepciones a la obligación de liquidación.

En adición a las excepciones enunciadas precedentemente, tampoco resultará exigible la liquidación en el mercado de cambios de los fondos en moneda extranjera que reciban los residentes por las operaciones previstas en los puntos 2.1. a 2.5., en la medida que se cumpla la totalidad de las siguientes condiciones:

2.7.1. El ejercicio de la excepción se efectúe dentro del plazo para la liquidación de los fondos en el mercado de cambios que sea aplicable a la operación.

2.7.2. Los fondos hayan permanecido hasta el ejercicio de la excepción acreditados en cuentas en moneda extranjera de titularidad del cliente en entidades financieras locales o, en el caso de fondos percibidos en el exterior, ingresados a nombre del cliente en cuentas de corresponsalía de una entidad local.

2.7.3. Los fondos en moneda extranjera sean aplicados de manera simultánea con el ejercicio de la excepción a operaciones por las cuales la normativa cambiaria vigente permite el acceso al mercado de cambios contra moneda local, considerando los límites previstos para cada concepto involucrado.

2.7.4. La utilización de este mecanismo deberá resultar neutral en materia fiscal.

A los efectos del registro de estas operaciones se deberán confeccionar dos boletos sin movimiento de pesos, por los conceptos de compra y venta que correspondan, computándose el monto por el cual se utiliza este mecanismo a los efectos de los límites mensuales que pudieran ser aplicables según el caso.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 2. Disposiciones específicas para los ingresos por el mercado de cambios. |

En todos los casos se deberá contar con una declaración jurada del cliente en la que deja constancia de tener conocimiento de que los fondos que se aplican bajo esta modalidad serán computados a los efectos del cálculo de los límites que normativamente correspondan al concepto de venta de cambio que corresponda y que no los excede.

### 2.8. Canjes y arbitrajes con clientes asociados a ingresos de divisas del exterior.

Las entidades podrán dar curso a estas operaciones con clientes en la medida que no correspondan a operaciones alcanzadas por la obligación de liquidación en el mercado de cambios.

Por estas operaciones las entidades financieras deberán permitir la acreditación de ingresos de divisas del exterior a las cuentas abiertas por el cliente en moneda extranjera.

En caso de que la transferencia corresponda a la misma moneda en la que está denominada la cuenta, la entidad deberá acreditar el mismo monto recibido del exterior.

Cuando la entidad decida el cobro de una comisión y/o cargo por estas operaciones, ésta deberá instrumentarse a través de un concepto individualizado específicamente.

### 2.9. Operaciones comprendidas en el artículo 3° del Decreto 616/05.

El resultado de la liquidación de cambios deberá acreditarse en una cuenta local. En caso de que la operación sea concertada en una entidad que no sea aquella en la que el cliente tiene abierta su cuenta, los movimientos de fondos a la cuenta local del cliente podrán ser instrumentados mediante una transferencia directa desde una cuenta operativa de la entidad o un cheque no a la orden, emitido por la propia entidad.

Con relación a los restantes requisitos previstos en el artículo 4° del mencionado decreto, resulta aplicable lo dispuesto por la Resolución 3/15 del ex Ministerio de Hacienda y Finanzas Públicas y la Resolución 1/17 del Ministerio de Hacienda.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Las entidades previamente a dar acceso al mercado de cambio por las operaciones comprendidas en los puntos 3.1. a 3.15. –incluyendo aquellas que se concreten a través de canjes o arbitrajes–, adicionalmente a los requisitos y condiciones específicas detalladas en cada punto, deberán cumplimentar los requisitos complementarios que constan en el punto 3.16. que resulten aplicables.

### 3.1.  Pagos de importaciones y otras compras de bienes al exterior.

Las normas asociadas a la operatoria de importaciones argentinas de bienes y otras compras de bienes al exterior y las disposiciones relacionadas con el sistema de seguimiento de pagos de importaciones (SEPAIMPO) se detallan en las Secciones 10. y 11., respectivamente.

### 3.2.  Pagos de servicios prestados por no residentes.

Las normas asociadas al pago de servicios prestados por no residentes se detallan en la Sección 13.

### 3.3.  Pagos de intereses de deudas por importaciones de bienes y servicios.

Las entidades para dar acceso al mercado de cambios para cursar pagos de intereses de deudas comerciales por importaciones de bienes o servicios deberán verificar que se cumplan las condiciones especificadas a continuación:

3.3.1.  La operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

3.3.2.  El acceso al mercado de cambios tiene lugar a partir de la fecha de vencimiento del interés a pagar.

Este requisito no resultará aplicable si el cliente es un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que concreta el pago en el marco de lo previsto en el punto 14.2.1.

En los restantes casos se requerirá la conformidad previa del BCRA para acceder al mercado de cambios para precancelar los servicios de intereses de deudas comerciales por importaciones de bienes y servicios.

3.3.3.  Se requerirá la conformidad previa del BCRA cuando el acreedor sea una contraparte vinculada al deudor y el vencimiento de los intereses a pagar haya tenido lugar hasta el 04/07/24.

Este requisito no resultará aplicable cuando la operación encuadre en alguna de las siguientes situaciones:

3.3.3.1.  se trate de operaciones propias de las entidades financieras locales.

3.3.3.2.  el cliente cuente con una "Certificación de aumento de las exportaciones de bienes" para los años 2021 a 2023, en los términos previstos en el punto 3.18., por el equivalente al valor que se abona, o



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.3.3.3.   el cliente cuente con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)", emitida en el marco de lo dispuesto en el punto 3.17., por el equivalente al valor que se abona.

3.3.3.4.   el pago se concrete de manera simultánea con la liquidación por un importe no menor al monto de intereses por el cual que se accede al mercado de cambios de:

i)   nuevos endeudamientos financieros comprendidos en el punto 3.5. con una vida promedio no inferior a 2 (dos) años y que contemplen como mínimo 1 (un) año de gracia para el pago de capital, en ambos casos contados desde la fecha en que se concreta el acceso al mercado.

ii)   nuevos aportes de inversión directa de no residentes.

Los endeudamientos financieros y/o los aportes de inversión extranjera directa, que no podrán ser computados a los efectos de otros mecanismos considerados en la normativa cambiaria, podrán ser ingresados y liquidados por el deudor que cancela los intereses o por otra empresa residente perteneciente a su grupo económico.

La entidad deberá verificar el cumplimiento de la totalidad de los restantes requisitos normativos aplicables a la operación previamente a realizar el pedido al BCRA.

3.4.   Pagos de utilidades y dividendos.

Las entidades podrán dar acceso al mercado de cambios para girar divisas al exterior en concepto de utilidades y dividendos a accionistas no residentes, en la medida que se cumpla la totalidad de las siguientes condiciones:

3.4.1.   Las utilidades y dividendos correspondan a balances cerrados y auditados.

3.4.2.   El monto total abonado por este concepto a accionistas no residentes, incluido el pago cuyo curso se está solicitando, no supere el monto en moneda local que les corresponda según la distribución determinada por la asamblea de accionistas.

La entidad deberá contar con una declaración jurada firmada por el representante legal de la empresa residente o un apoderado con facultades suficientes para asumir este compromiso en nombre de la empresa.

3.4.3.   La entidad deberá verificar que el cliente haya dado cumplimiento en caso de corresponder, a la declaración de la última presentación vencida del "Relevamiento de activos y pasivos externos" por las operaciones involucradas.

**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.4.4. El cliente encuadra en algunas de las siguientes situaciones y cumple la totalidad de las condiciones estipuladas en cada caso:

3.4.4.1.   Registra aportes de inversión directa liquidados a partir del 17/01/20.

i) El monto total de transferencias por el concepto de utilidades y dividendos cursadas a través del mercado de cambios desde el 17/01/20, incluido el pago cuyo curso se está solicitando, no supere el 30% (treinta por ciento) del valor de los nuevos aportes de inversión extranjera directa en empresas residentes ingresados y liquidados a través del mercado de cambios a partir de la mencionada fecha.

A tal efecto, la entidad deberá contar con una certificación emitida por la entidad que dio curso a la liquidación respecto a que no ha emitido certificaciones a los efectos previstos en este punto por un monto superior al 30% (treinta por ciento) del monto liquidado.

Si el cliente es beneficiario directo del Decreto 277/22, el valor de los beneficios del decreto utilizados por el cliente, en forma directa o indirecta, deberán ser deducidos del monto indicado en el primer párrafo.

Por ello, la entidad interviniente deberá contar con una certificación de la entidad encargada de la emisión de las "certificaciones por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" en el marco de lo dispuesto en el punto 3.17., en la que conste el monto de los beneficios utilizados en forma directa o indirecta por el cliente.

ii) El acceso se produce en un plazo no menor a los 30 (treinta) días corridos desde la liquidación del último aporte que se computa a efectos del requisito previsto en el punto 3.4.4.1.i).

iii) El cliente deberá presentar la documentación que avale la capitalización definitiva del aporte. En caso de no disponerla, deberá presentar constancia del inicio del trámite de inscripción ante el Registro Público de Comercio de la decisión de capitalización definitiva de los aportes de capital computados de acuerdo con los requisitos legales correspondientes y comprometerse a presentar la documentación de la capitalización definitiva del aporte dentro de los 365 (trescientos sesenta y cinco) días corridos desde el inicio del trámite.

3.4.4.2.   Utilidades generadas en proyectos enmarcados en el "PLAN GAS".

i) Las utilidades generadas por los aportes de inversión extranjera directa ingresados y liquidados por el mercado de cambios a partir del 16/11/20, destinados a la financiación de proyectos enmarcados en el "Plan de promoción de la producción del gas natural argentino – Esquema de oferta y demanda 2020-2024" establecido en el artículo 2° del Decreto 892/20.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Si el cliente es beneficiario directo del Decreto 277/22, el valor de los beneficios del decreto utilizados por el cliente, en forma directa o indirecta, deberán ser deducidos del monto que se habilita en el párrafo precedente.

Por ello la entidad interviniente deberá contar con una certificación de la entidad encargada de la emisión de las "certificaciones por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" en el marco de lo dispuesto en el punto 3.17., en la que conste el monto de los beneficios utilizados en forma directa o indirecta por el cliente.

ii) El acceso al mercado de cambios se produce no antes de los 2 (dos) años corridos contados desde la fecha de la liquidación en el mercado de cambios del aporte que permite el encuadre en el presente punto.

iii) El cliente deberá presentar la documentación que avale la capitalización definitiva del aporte.

3.4.4.3.  Cuente con una certificación de incremento de exportaciones de bienes.

El cliente cuenta con una "Certificación de aumento de exportaciones de bienes" para los años 2021 a 2023 emitida en el marco del punto 3.18., por el equivalente al valor de utilidades y dividendos que se abona.

3.4.4.4.  Cuente con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)".

El cliente cuenta con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)", emitida en el marco de lo dispuesto en el punto 3.17., por el equivalente al valor de utilidades y dividendos que se abona.

3.4.4.5.  Canje y/o arbitraje con fondos percibidos en el país por capital o intereses de los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL).

El cliente realiza una operación de canje y/o arbitraje con fondos depositados en una cuenta local y originados en cobros en moneda extranjera de capital o intereses de los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL).

3.4.4.6.  Utilidades y dividendos por aportes a un VPU adherido al RIGI.

El cliente es un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) y las utilidades corresponden a aportes de inversión extranjera directa que encuadran en lo previsto en el punto 14.2.2.

El cliente deberá presentar la documentación que avale la capitalización definitiva del aporte.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Los casos que no encuadren en lo expuesto precedentemente requerirán la conformidad previa del BCRA para acceder al mercado de cambios.

Los clientes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el equivalente al monto en moneda local de las utilidades y dividendos pendientes de pago a accionistas no residentes según la distribución determinada por la asamblea de accionistas, en la medida que se cumplan los requisitos previstos en el punto 4.6.1.

3.5. **Pagos de títulos de deuda suscriptos en el exterior y endeudamientos financieros con el exterior.**

Las entidades podrán dar acceso al mercado de cambios para realizar pagos de capital o intereses de títulos de deuda con registro público en el exterior, otros endeudamientos financieros con el exterior y títulos de deuda con registro público en el país denominados en moneda extranjera íntegramente suscriptos en el exterior, en la medida que se verifiquen las siguientes condiciones:

3.5.1. El deudor demuestre el ingreso y liquidación de divisas en el mercado de cambios por un monto equivalente al valor nominal del endeudamiento financiero.

Este requisito se considerará cumplimentado en los siguientes casos:

3.5.1.1. los endeudamientos desembolsados con anterioridad al 01/09/19.

3.5.1.2. los endeudamientos originados a partir del 01/09/19 que no generen desembolsos por ser refinanciaciones de capital y/o intereses de deudas financieras con el exterior que hubieran tenido acceso en virtud de la normativa aplicable, en la medida que las refinanciaciones no anticipen el vencimiento de la deuda original.

3.5.1.3. por el monto de los gastos de otorgamiento y/o emisión que resulten aplicables y otros gastos debitados en el exterior por las operaciones bancarias involucradas.

3.5.1.4. por la diferencia entre el valor efectivo y el valor nominal en emisiones de títulos de deuda con registro público colocados bajo la par.

3.5.1.5. por la porción que corresponda a una capitalización de intereses prevista en el contrato de endeudamiento.

3.5.1.6. por la porción de las emisiones de títulos de deuda con registro público realizadas entre el 09/10/20 y el 31/12/23 con una vida promedio no inferior a 2 (dos) años que fueron entregadas a acreedores de endeudamientos financieros con el exterior y/o títulos de deuda con registro público denominados en moneda extranjera con vencimientos entre el 15/10/20 y el 31/12/23, como parte del plan de refinanciación oportunamente requerido en el punto 7. de la Comunicación A 7106 y concordantes (disposiciones receptadas en el punto 3.17. del Anexo de la Comunicación A 7914), en base a los siguientes parámetros:

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

    i) el monto de capital por el cual se accedió al mercado de cambios hasta el 31/12/23 no superó el 40% (cuarenta por ciento) del monto del capital que vencía, excepto cuando por un monto igual o superior al excedente el deudor:

        a) registraba liquidaciones en el mercado de cambios a partir del 09/10/20 por emisiones de títulos de deuda con registro público en el exterior u otros endeudamientos financieros con el exterior; o

        b) registraba liquidaciones en el mercado de cambios a partir del 09/10/20 por emisiones de títulos de deuda con registro público en el país denominadas y suscriptas en moneda extranjera y cuyos servicios sean pagaderos en moneda extranjera en el país; o

        c) contaba con una "Certificación de aumento de exportaciones de bienes" para los años 2021 a 2023 emitida en el marco del punto 3.18.; o

        d) contaba con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.

    ii) el resto del capital que vencía fue, como mínimo, refinanciado con un nuevo endeudamiento con el exterior con una vida promedio de 2 (dos) años mayor a la vida promedio remanente del capital refinanciado.

3.5.1.7. por la porción de las emisiones de títulos de deuda con registro público realizadas a partir del 07/01/21 que fueron entregadas a acreedores para refinanciar deudas financieras preexistentes con una extensión de la vida promedio, cuando corresponda al monto de capital refinanciado, los intereses devengados hasta la fecha de refinanciación y, en la medida que los nuevos títulos de deuda no registren vencimientos de capital durante los primeros 2 (dos) años, el monto equivalente a los intereses que se devengarían en los primeros 2 (dos) años por el endeudamiento que se refinancia anticipadamente y/o por la postergación del capital refinanciado y/o por los intereses que se devengarían sobre los montos así refinanciados.

3.5.1.8. por la porción suscripta con moneda extranjera en el país de emisiones de títulos de deuda con registro público en el exterior realizadas a partir del 05/02/21, en la medida que se cumplan la totalidad de las siguientes condiciones:

    i) el deudor demuestre haber registrado exportaciones con anterioridad a la emisión de los títulos de deuda o que los fondos de la colocación fueron destinados a afrontar compromisos con el exterior. Si no se cumple al menos una de las dos condiciones señaladas, la emisión debe contar con la conformidad previa del BCRA;

    ii) la vida promedio de los títulos de deuda no sea menor a los 5 (cinco) años;

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

      iii) el primer pago de capital no se registre antes de los 3 (tres) años de la fecha de emisión;

      iv) la suscripción local no supere el 25% (veinticinco por ciento) de la suscripción total; y

      v) la totalidad de los fondos suscriptos en el país ha sido liquidado en el mercado de cambios.

3.5.1.9.   por los endeudamientos con el exterior originados a partir del 01/09/19 en una refinanciación del capital y/o intereses de deudas comerciales con el acreedor del exterior, en la medida que la nueva deuda financiera no anticipe vencimientos respecto de la deuda comercial refinanciada ni implique la realización de pagos antes de la fecha en que el cliente hubiera podido acceder por la deuda comercial en virtud de la normativa aplicable.

      Estas condiciones se podrán considerar cumplimentadas para los endeudamientos con una vida promedio no inferior a los 2 (dos) años originados entre 27/08/21 y el 12/12/23 en una refinanciación encuadrada en el punto 20. de la Comunicación A 7626 y concordantes (disposiciones receptadas oportunamente en el punto 3.20. del Anexo de la Comunicación A 7914); en la medida que la entidad cuente con una certificación para el acceso al mercado de cambios emitida, dentro de los 5 (cinco) días hábiles previos, por la entidad que concretó el registro ante el BCRA con el código de concepto "P17. Registro de refinanciación de deuda comercial en el marco del punto 20. de la Comunicación A 7626".

3.5.1.10.   los endeudamientos financieros comprendidos en este punto 3.5. que encuadren en los puntos 7.11.1.3. y 7.11.1.5. en la medida que se demuestre el registro de ingreso aduanero de bienes por un valor equivalente a la financiación recibida.

      También se podrá computar el valor de los fletes que conste en la documentación de transporte asociada al registro de ingreso aduanero de los bienes, en la medida que los fondos de las operaciones contempladas en los puntos 7.11.1.3. y 7.11.1.5. hayan sido destinados al pago en forma directa al proveedor de servicios de fletes de importaciones no incluidos en su condición de compra pactada.

3.5.1.11.   los endeudamientos financieros comprendidos en este punto 3.5. que hayan sido encuadrados en el punto 7.10.2.2.ii) en la medida que se demuestre el registro de ingreso aduanero de bienes por un valor equivalente a la financiación recibida.

3.5.1.12.   por la porción de los nuevos títulos de deuda que sean entregadas por un residente a sus acreedores como prima de participación, recompra, rescate anticipado o similar en el marco de una operación de canje, recompra y/o rescate anticipado de endeudamientos financieros comprendidos en este punto 3.5., en la medida que:



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

     i) el valor nominal de los nuevos títulos entregados, en concepto de prima de participación, recompra o rescate anticipado o similar, no supere el equivalente al 5% (cinco por ciento) del valor de capital de la deuda efectivamente canjeada o recomprada; y

     ii) los nuevos títulos de deuda contemplen como mínimo 1 (un) año de gracia para el pago de capital e impliquen una extensión mínima de 2 (dos) años respecto de la vida promedio del capital remanente de la deuda canjeada o recomprada.

3.5.2. La operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

3.5.3. El acceso al mercado de cambios se produce con una anterioridad no mayor a los 3 (tres) días hábiles a la fecha de vencimiento del servicio de capital o interés a pagar.

En el caso de que se trate de un pago de capital de títulos de deuda emitidos a partir del 08/11/24 que se concreta con una transferencia al exterior, adicionalmente el acceso al mercado de cambios deberá producirse una vez transcurridos, como mínimo, 365 (trescientos sesenta y cinco) días corridos desde su fecha de emisión.

El acceso al mercado de cambios antes de lo indicado requerirá la conformidad previa del BCRA excepto que el deudor encuadre en alguna de las siguientes situaciones y se cumplan la totalidad de las condiciones estipuladas en cada caso:

3.5.3.1. Precancelación de capital e intereses con la liquidación de fondos ingresados desde el exterior por la emisión de un nuevo título de deuda comprendido en este punto 3.5.

     i) la precancelación de capital sea efectuada en manera simultánea con la liquidación de los fondos ingresados desde el exterior por la emisión de un nuevo título de deuda comprendido en este punto 3.5. emitido en el marco de una operación de refinanciación, recompra y/o rescate anticipado de deuda.

       a) el nuevo título de deuda contempla un (1) año de gracia para el pago de capital y su vida promedio es al menos 2 (dos) años mayor a la vida promedio remanente de la deuda que se precancela; y

       b) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento podrá superar, hasta la fecha de vencimiento de la deuda que se cancela, el monto que hubieran acumulado los vencimientos de capital de la deuda que se cancela.

     ii) la precancelación de intereses corresponde a los intereses devengados por la deuda refinanciada hasta la fecha de cierre de la operación de recompra y/o rescate, sin necesidad de que exista una liquidación de fondos por el monto equivalente;



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Adicionalmente, la entidad podrá darle acceso al mercado de cambios al cliente para:

iii) pagar en concepto de prima de recompra, de rescate anticipado o similar hasta el equivalente del 5% (cinco por ciento) del monto del capital de la deuda recomprada y/o rescatada, en la medida que el pago se concrete de manera simultánea con una liquidación de fondos ingresados desde el exterior por el nuevo título de deuda que exceda al monto de capital que se precancela, como mínimo, por un monto equivalente al monto de la prima abonada.

iv) pagar a la fecha de cierre de la operación de recompra y/o rescate, sin necesidad de que exista una liquidación de fondos por el monto equivalente, los gastos de emisión u otros servicios prestados por no residentes en el marco de la emisión de los nuevos títulos de deuda emitidos y/o la operación de recompra y/o rescate.

3.5.3.2. Precancelación de capital e intereses con la liquidación simultánea de otros endeudamientos financieros comprendidos en este punto 3.5.

i) La precancelación de capital e intereses sea efectuada en manera simultánea con los fondos liquidados de un nuevo endeudamiento financiero comprendido en este punto 3.5.;

ii) la vida promedio del nuevo endeudamiento sea mayor a la vida promedio remanente de la deuda que se precancela; y

iii) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento podrá superar, hasta la fecha de vencimiento de la deuda que se cancela, el monto que hubieran acumulado los vencimientos de capital de la deuda que se cancela.

3.5.3.3. Precancelación de intereses en el marco de un proceso de canje de títulos de deuda comprendidos en el punto 3.5.

i) La precancelación de intereses se concreta en el marco de un proceso de canje de títulos de deuda emitidos por el cliente;

ii) el monto abonado antes del vencimiento corresponde a los intereses devengados a la fecha de cierre del canje;

iii) la vida promedio de los nuevos títulos de deuda es mayor a la vida promedio remanente del título canjeado; y

iv) el monto acumulado de los vencimientos de capital de los nuevos títulos en ningún momento, hasta la fecha de vencimiento final del título canjeado, podrá superar el monto que hubieran acumulado los vencimientos de capital del título canjeado.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.5.3.4. Precancelación de capital e intereses en forma simultánea con la liquidación de un nuevo endeudamiento financiero otorgado por una entidad financiera local a partir de una línea de crédito del exterior.

    i) la precancelación de capital e intereses sea efectuada de manera simultánea con los fondos liquidados de un nuevo endeudamiento financiero otorgado por una entidad financiera local a partir de una línea de crédito del exterior;

    ii) la vida promedio del nuevo endeudamiento sea mayor a la vida promedio remanente de la deuda que se precancela; y

    iii) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento, hasta la fecha de vencimiento de la deuda que se cancela, podrá superar el monto que hubieran acumulado los vencimientos de capital de la deuda que se cancela.

3.5.3.5. Precancelación de capital e intereses por parte de un VPU adherido al RIGI.

El cliente es un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que precancela capital o intereses devengados por endeudamientos financieros comprendidos en este punto 3.5. en el marco de lo previsto en el punto 14.2.1.

3.5.4. En la medida que se encuentre vigente el requisito de conformidad previa del BCRA para el acceso al mercado de cambios para la cancelación al vencimiento de capital e intereses de los endeudamientos financieros comprendidos en este punto 3.5., este requisito no resultará aplicable cuando se cumpla la totalidad de las siguientes condiciones:

3.5.4.1. el destino de los fondos haya sido la financiación de proyectos enmarcados en el "Plan de promoción de la producción del gas natural argentino – Esquema de oferta y demanda 2020-2024" establecido en el artículo 2° del Decreto 892/20 ("PLAN GAS");

3.5.4.2. los fondos hayan sido ingresados y liquidados por el mercado de cambios a partir del 16/11/20; y

3.5.4.3. el endeudamiento tenga una vida promedio no inferior a los 2 (dos) años.

3.5.5. Los endeudamientos financieros comprendidos en este punto 3.5. quedarán habilitados a cancelar sus servicios de capital e intereses a partir de su vencimiento mediante la aplicación de cobros de exportaciones de bienes y servicios, en la medida que se cumplan los requisitos previstos en el punto 7.9.

Asimismo, en los términos previstos en el punto 7.9.5., se admitirán que los mencionados cobros sean acumulados, por los montos exigidos en los contratos de endeudamiento, en cuentas del exterior y/o el país con el objeto de garantizar la cancelación de los servicios de los endeudamientos financieros con el exterior.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.5.6. Se requerirá la conformidad previa del BCRA para el acceso al mercado de cambios para la cancelación de capital e intereses de endeudamientos financieros comprendidos en este punto 3.5. cuando el acreedor sea una contraparte vinculada al deudor.

Este requisito no resultará aplicable cuando la operación encuadre en alguna de las siguientes situaciones:

3.5.6.1. se trate de operaciones propias de las entidades financieras locales.

3.5.6.2. se trate de un endeudamiento financiero comprendido en este punto 3.5. que tenga una vida promedio no inferior a los 2 (dos) años y los fondos hayan sido ingresados y liquidados por el mercado de cambios a partir del 02/10/20.

3.5.6.3. se trate de un pago de intereses compensatorios que se devenguen a partir del 01/01/25 sobre el valor original remanente de deudas financieras con contrapartes vinculadas del exterior.

Los punitorios u otros equivalentes que se devenguen desde el 01/01/25 continuarán alcanzados por el requisito de conformidad previa.

3.5.6.4. se trate de un pago de intereses que se concreta simultáneamente con la liquidación por el importe al menos equivalente de:

i) nuevos endeudamientos financieros comprendidos en este punto 3.5. con una vida promedio no inferior a 2 (dos) años y que contemplen como mínimo 1 (un) año de gracia para el pago de capital, en ambos casos contados desde la fecha en que se concreta el acceso al mercado.

ii) nuevos aportes de inversión directa de no residentes.

Los endeudamientos financieros y/o los aportes de inversión extranjera directa, que no podrán ser computados a los efectos de otros mecanismos considerados en la normativa cambiaria, podrán ser ingresados y liquidados por el deudor que cancela los intereses o por otra empresa residente perteneciente a su grupo económico.

3.5.6.5. se trate de un endeudamiento financiero comprendido en este punto 3.5. con una vida promedio no inferior a los 2 (dos) años liquidado entre el 27/08/21 y el 12/12/23 y que fue utilizado para pagar deudas comerciales por la importación de bienes y servicios a partir de la emisión de una "Certificación de ingreso de nuevo endeudamiento financiero con el exterior" en el marco del punto 1. de la Comunicación A 7348 y concordantes (disposiciones receptadas oportunamente en el punto 3.19. del Anexo de la Comunicación A 7914).

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.5.6.6.   se trate de un endeudamiento financiero comprendido en este punto 3.5. con una vida promedio no inferior a los 2 (dos) años originado entre el 27/08/21 y el 12/12/23, a partir de una refinanciación de deudas comerciales por la importación de bienes y servicios con el propio acreedor encuadrada en el punto 20. de la Comunicación A 7626 y concordantes (disposiciones receptadas oportunamente en el punto 3.20. del Anexo de la Comunicación A 7914).

La entidad deberá contar con una certificación para el acceso al mercado de cambios emitida, dentro de los 5 (cinco) días hábiles previos, por la entidad que concretó el registro ante el BCRA con el código de concepto "P17. Registro de refinanciación de deuda comercial en el marco del punto 20. de la Comunicación A 7626".

3.5.6.7.   el cliente cuente con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)", emitida en el marco de lo dispuesto en el punto 3.17., por el equivalente del monto de capital que se abona.

3.5.6.8   se trate de un endeudamiento financiero comprendido en este punto 3.5. que encuadra en el mecanismo del punto 7.11. y la fecha de acceso sea consistente con las condiciones requeridas para encuadrar en tal mecanismo.

3.5.6.9.   el cliente cuente con una "Certificación de aumento de exportaciones de bienes" para los años 2021 a 2023 emitida en el marco de lo dispuesto en el punto 3.18. por el equivalente del monto de capital que se abona.

3.5.6.10.   el cliente es un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que cancela capital o intereses de endeudamientos financieros comprendidos en este punto 3.5. en el marco de lo previsto en el punto 14.2.1.

Las deudas comprendidas en este punto continuarán sujetas a la conformidad previa aun cuando existiese una modificación del acreedor o del deudor que conlleve a que ya no exista una vinculación entre el acreedor y el deudor residente.

3.6.   Pagos de títulos de deuda u otros valores representativos de deuda denominados y pagaderos en moneda extranjera en el país y obligaciones en moneda extranjera entre residentes.

3.6.1.   Se prohíbe el acceso al mercado de cambios para el pago de deudas y otras obligaciones en moneda extranjera entre residentes concertadas a partir del 01/09/19, excepto para la cancelación en el país a partir de su vencimiento de capital e intereses de:

3.6.1.1.   las financiaciones en moneda extranjera otorgadas por entidades financieras locales, incluyendo los pagos por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.6.1.2. las emisiones de títulos de deuda realizadas a partir del 01/09/19 con el objeto de refinanciar deudas comprendidas en el punto 3.6.2. y conlleven un incremento de la vida promedio de las obligaciones.

3.6.1.3. las emisiones realizadas a partir del 29/11/19 de títulos de deuda con registro público en el país no comprendidas en el punto 3.5., que estén denominadas y suscriptas en moneda extranjera y cuyos servicios de capital e intereses sean pagaderos en moneda extranjera, en la medida que la totalidad de los fondos obtenidos hayan sido liquidados en el mercado de cambios.

3.6.1.4. pagarés con oferta pública emitidos en el marco de la Resolución General 1003/24 de la Comisión Nacional de Valores (CNV) y concordantes, denominados y suscriptos en moneda extranjera y cuyos servicios de capital e intereses sean pagaderos en moneda extranjera en el país, en la medida que la totalidad de los fondos obtenidos hayan sido liquidados en el mercado de cambios.

3.6.1.5. valores de deuda fiduciaria emitidos por fiduciarios de fideicomisos financieros con oferta pública concretadas en concordancia con las disposiciones de la CNV en la materia, denominados y suscriptos en moneda extranjera y cuyos servicios de capital e intereses sean pagaderos en moneda extranjera en el país, en la medida que la totalidad de los fondos obtenidos hayan sido liquidados en el mercado de cambios.

3.6.2. Las entidades podrán dar acceso al mercado de cambios para la cancelación a partir de su vencimiento de obligaciones en moneda extranjera entre residentes instrumentadas mediante registros o escrituras públicos al 30/08/19.

3.6.3. Las entidades también podrán dar acceso al mercado de cambios para la cancelación a partir de su vencimiento de financiaciones en moneda extranjera otorgadas por entidades financieras locales pendientes al 30/08/19.

3.6.4. El acceso al mercado de cambios con anterioridad al vencimiento requerirá la conformidad previa del BCRA excepto que la operación encuadre en alguna de las siguientes situaciones y se cumplan la totalidad de las condiciones estipuladas en cada caso:

3.6.4.1. Financiaciones de entidades locales por consumos en moneda extranjera mediante tarjetas de crédito o de compra.

La deuda se origina en financiaciones en moneda extranjera otorgadas por entidades financieras locales por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra.

3.6.4.2. Otras financiaciones en moneda extranjera de entidades financieras locales canceladas en forma simultánea con la liquidación de fondos desde el exterior por nuevos endeudamientos.

i) La precancelación sea efectuada en manera simultánea con los fondos liquidados de un nuevo endeudamiento financiero comprendido en el punto 3.5. y/o una nueva prefinanciación de exportaciones del exterior;

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

ii) la vida promedio del nuevo endeudamiento sea mayor a la vida promedio remanente de la deuda que se precancela;

iii) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento, hasta la fecha de vencimiento de la deuda que se cancela, podrá superar el monto que hubieran acumulado los vencimientos de capital de la financiación a precancelar; y

iv) en caso de que el nuevo endeudamiento sea una prefinanciación de exportaciones del exterior, la entidad deberá contar con una declaración jurada del cliente dejando constancia de que será necesaria la conformidad previa del BCRA para la aplicación de divisas de cobros de exportaciones a la cancelación del capital con anterioridad a los vencimientos computados a los efectos del cumplimiento de las condiciones indicadas.

Si la financiación precancelada por el cliente hubiese sido otorgada a partir de una línea de crédito del exterior, la entidad financiera podrá a su vez precancelar el capital y los intereses devengados de la línea de crédito por la parte proporcional a la deuda cobrada anticipadamente.

3.6.4.3. Precancelación de intereses en el marco de un proceso de canje de títulos de deuda.

i) La precancelación de intereses se concreta en el marco de un proceso de canje de títulos de deuda emitidos por el cliente, en el cual se entrega al acreedor un nuevo título con registro público en el país no comprendido en el punto 3.5.

ii) el monto abonado antes del vencimiento corresponde a los intereses devengados a la fecha de cierre del canje;

iii) la vida promedio de los nuevos títulos de deuda es mayor a la vida promedio remanente del título canjeado; y

iv) el monto acumulado de los vencimientos de capital de los nuevos títulos en ningún momento, hasta la fecha de vencimiento de la deuda que se cancela, podrá superar el monto que hubieran acumulado los vencimientos de capital del título canjeado.

3.6.4.4. Precancelación de capital e intereses de un título de deuda comprendido en este punto 3.6. con la liquidación de fondos ingresados desde el exterior por la emisión de un nuevo título de deuda comprendido en este punto 3.5.

i) la precancelación de capital sea efectuada en manera simultánea con la liquidación de los fondos ingresados desde el exterior por la emisión de un nuevo título de deuda comprendido en este punto 3.5. emitido en el marco de una operación de refinanciación, recompra y/o rescate anticipado del título de deuda.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

a) el nuevo título de deuda contempla un (1) año de gracia para el pago de capital y su vida promedio es al menos 2 (dos) años mayor a la vida promedio remanente del título de deuda que se precancela; y

b) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento podrá superar, hasta la fecha de vencimiento de la deuda que se cancela, el monto que hubieran acumulado los vencimientos de capital de la deuda que se cancela.

ii) la precancelación de intereses corresponde a los intereses devengados por la deuda refinanciada hasta la fecha de cierre de la operación de recompra y/o rescate, sin necesidad de que exista una liquidación de fondos por el monto equivalente;

Adicionalmente, la entidad podrá darle acceso al mercado de cambios al cliente para:

iii) pagar en concepto de prima de recompra, de rescate anticipado o similar hasta el equivalente del 5% (cinco por ciento) del monto del capital del título de deuda recomprado y/o rescatado, en la medida que el pago se concrete de manera simultánea con una liquidación de fondos ingresados desde el exterior por el nuevo título de deuda que exceda al monto de capital que se precancela, como mínimo, por un monto equivalente al monto de la prima abonada.

iv) pagar a la fecha de cierre de la operación de recompra y/o rescate, sin necesidad de que exista una liquidación de fondos por el monto equivalente, los gastos de emisión u otros servicios prestados por no residentes en el marco de la emisión de los nuevos títulos de deuda emitidos y/o la operación de recompra y/o rescate.

3.6.4.5. Precancelación de capital e intereses de un título de deuda comprendido en este punto 3.6. en forma simultánea con la liquidación de otros endeudamientos financieros comprendidos en el punto 3.5.

i) La precancelación de capital e intereses sea efectuada en manera simultánea con los fondos liquidados de un nuevo endeudamiento financiero comprendido en el punto 3.5.; y

ii) la vida promedio del nuevo endeudamiento sea mayor a la vida promedio remanente del título de deuda que se precancela; y

iii) el monto acumulado de los vencimientos de capital del nuevo endeudamiento en ningún momento, hasta la fecha de vencimiento de la deuda que se cancela, podrá superar el monto que hubieran acumulado los vencimientos de capital del título de deuda que se cancela.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.6.4.6.   Precancelación de capital e intereses de un título de deuda comprendido en este punto 3.6. en forma simultánea con la liquidación de un nuevo título de deuda del mismo tipo.

i) La precancelación de capital e intereses de un título de deuda comprendido en este punto 3.6. sea efectuada en manera simultánea con los fondos liquidados por la emisión de un nuevo título de deuda con registro público en el país no comprendido en el punto 3.5., denominado y suscripto en moneda extranjera y cuyos servicios sean pagaderos en moneda extranjera, y

ii) la vida promedio del nuevo título sea mayor a la vida promedio remanente del título de deuda que se precancela; y

iii) el monto acumulado de los vencimientos de capital del nuevo título de deuda en ningún momento, hasta la fecha de vencimiento de la deuda que se cancela, podrá superar el monto que hubieran acumulado los vencimientos de capital del título de deuda que se cancela.

3.6.4.7.   Precancelación de capital e intereses por parte de un VPU adherido al RIGI.

El cliente es un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que precancela capital o intereses devengados por deudas comprendidas en este punto 3.6. en el marco de lo previsto en el punto 14.2.1.

3.6.5.   El monto de las compras de moneda extranjera realizadas por personas humanas con el objeto de cancelar deudas comprendidas en este punto 3.6., incluyendo la cancelación de financiaciones otorgadas por entidades financieras locales por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra, a partir del mes calendario siguiente y por los meses subsiguientes que resultasen necesarios hasta completar el monto adquirido desde el 01/09/20, serán deducidos del límite establecido en el punto 3.8. para la compra de moneda extranjera por parte de personas humanas para la formación de activos externos, la remisión de ayuda familiar y por operaciones con derivados.

Independientemente de lo anterior, en la medida que se cumplan las condiciones previstas, la persona humana podrá continuar accediendo al mercado de cambios para la cancelación de financiaciones en moneda extranjera comprendidas en el punto 3.6.

3.6.6.   Las emisiones de títulos de deuda con registro público en el país que cumplen las condiciones previstas en este punto 3.6. para el acceso al mercado de cambios quedarán habilitados a cancelar sus servicios de capital e intereses a partir de su vencimiento mediante la aplicación en el país de cobros de exportaciones de bienes y servicios, en la medida que se cumplan los requisitos previstos en el punto 7.9.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

**3.7. Pagos de endeudamientos en moneda extranjera de residentes por parte de fideicomisos constituidos en el país para garantizar la atención de los servicios.**

Las entidades podrán dar acceso al mercado de cambios para realizar pagos de capital y/o intereses a los fideicomisos constituidos en el país por un residente para garantizar la atención de los servicios de capital e intereses de su obligación, en la medida que verifique que el deudor hubiese tenido acceso para realizar el pago a su nombre por cumplimentar las disposiciones normativas aplicables.

**3.8. Compra de moneda extranjera por parte de personas humanas residentes para la formación de activos externos, la remisión de ayuda familiar y por operaciones con derivados.**

Las entidades podrán dar acceso al mercado de cambios a las personas humanas residentes para la formación de activos externos (códigos de conceptos A01, A02, A03, A04, A06, A07, A08, A09, y A14), la remisión de ayuda familiar y para la operatoria con derivados (código de concepto A05) en la medida que no encuadre en el punto 3.12.1., sin la conformidad previa del BCRA, en la medida que se cumplan la totalidad de los siguientes requisitos:

3.8.1. El cliente no supere, en el mes calendario en el conjunto de las entidades y por el conjunto de los conceptos señalados, el equivalente a USD 200 (dólares estadounidenses doscientos) neto de las deducciones que corresponda aplicar por las siguientes operaciones:

3.8.1.1. la cancelación de obligaciones entre residentes en el marco de lo dispuesto en el punto 3.6., incluyendo las financiaciones otorgadas por entidades financieras locales por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra;

3.8.1.2. la compra de moneda extranjera para ser aplicada simultáneamente a la compra de inmuebles en el país con créditos hipotecarios en el marco de lo previsto en el punto 3.9.;

3.8.1.3. los retiros de efectivo con tarjetas de débito realizados en el exterior con débito en cuentas locales en pesos del cliente según lo previsto en el punto 4.1.1.;

3.8.1.4. los consumos efectuados con tarjeta de débito en el exterior con débito en cuenta local en pesos según lo previsto en el punto 4.1.2.

3.8.2. La operación se curse con débito en cuenta del cliente en entidades financieras locales o el uso de efectivo de moneda local por parte del cliente no supere el equivalente a USD 100 (dólares estadounidenses cien) en el mes calendario en el conjunto de las entidades y por el conjunto de los conceptos señalados.

3.8.3. El cliente no haya excedido en el mes calendario anterior los límites mencionados precedentemente.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.8.4. El cliente se compromete a no concertar en el país, de manera directa o indirecta o por cuenta y orden de terceros, operaciones de títulos valores con liquidación en moneda extranjera a partir del momento en que requiere el acceso y por los 90 (noventa) días corridos subsiguientes.

3.8.5. El cliente no registre financiaciones pendientes de cancelación que correspondan a:

3.8.5.1. refinanciaciones oportunamente previstas en el punto 1.1.1. de las normas sobre "Servicios financieros en el marco de la emergencia sanitaria dispuesta por el Decreto 260/20 Coronavirus (COVID-19)".

3.8.5.2. "Créditos a Tasa Cero", "Créditos a Tasa Cero 2021", "Créditos a Tasa Cero Cultura" o "Créditos a Tasa Subsidiada para Empresas", oportunamente previstas en los puntos 1.1.2. y 1.1.3. de las normas sobre "Servicios financieros en el marco de la emergencia sanitaria dispuesta por el Decreto 260/20 Coronavirus (COVID-19)".

3.8.5.3. financiaciones en pesos oportunamente previstas en el punto 2. de la Comunicación A 6937, en los puntos 2. y 3. de la Comunicación A 7006 y normas complementarias.

3.8.6. El cliente no es beneficiario en materia de actualización del valor de la cuota en el marco de lo dispuesto en el artículo 2° del Decreto 319/20 y normas complementarias y reglamentarias.

3.8.7. El cliente no reviste el carácter de funcionario público nacional a partir del rango de Subsecretario de Estado (o rango equivalente) ni es miembro de los directorios de los bancos públicos nacionales o del BCRA.

3.8.8. El cliente no se encuentra alcanzado por la Resolución Conjunta 12/20 de la Presidenta del Honorable Senado de la Nación y del Presidente de la Honorable Cámara de Diputados de la Nación del 1° de octubre de 2020.

3.8.9. El cliente no es una persona usuaria de servicios públicos que sea beneficiaria del subsidio en las tarifas de suministro de gas natural por red y/o energía eléctrica, ya sea que lo hubiera obtenido por solicitarlo o de manera automática, y/o del subsidio en las tarifas de agua potable.

3.8.10. El cliente no mantiene deuda pendiente de cancelación como beneficiario del "Plan de pago de deuda previsional" previsto en la Ley 27.705 u otro plan de regularización de deuda previsional.

3.8.11. El cliente no mantiene deuda pendiente de cancelación como beneficiario de los "CRÉDITOS ANSES" previstos en la Resolución 144/23 de la Administración Nacional de la Seguridad Social (ANSES).

3.8.12. El cliente no mantiene deuda pendiente de cancelación de la financiación prevista en el Decreto 463/23 para los beneficiarios del Sistema Integrado Previsional Argentino (SIPA) y las trabajadoras y los trabajadores aportantes al referido SIPA.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.8.13. La entidad cuenta con una declaración jurada del cliente en la que consta que el cliente cumple con los requisitos mencionados precedentemente.

3.8.14. La entidad ha constatado en el sistema online implementado a tal efecto que lo declarado por el cliente resulta compatible con los datos existentes en el BCRA.

Toda solicitud de rectificación o actualización de la información incluida en dicho sistema deberá ser cursada a la Superintendencia de Entidades Financieras y Cambiarias (SEFyC) a través de una entidad mediante una nota suscripta por el interesado, explicando los motivos por los cuales entiende que es inadecuada la información. Junto con esa presentación deberá acompañar todos los elementos demostrativos de las circunstancias invocadas.

3.8.15. En el caso de que la operación corresponda a conceptos incluidos en la formación de activos externos del cliente, la entidad vendedora deberá entregar los billetes o cheques de viajero en moneda extranjera o acreditar los fondos en una cuenta en moneda extranjera de titularidad del cliente en entidades financieras locales o en una cuenta bancaria de titularidad del cliente en el exterior, según corresponda.

En todos los casos, la entidad deberá obtener evidencia de que el cliente posee ingresos y/o activos consistentes con el ahorro en moneda extranjera, no siendo admisible que sea beneficiario de algún plan o programa caracterizado como de ayuda social -incluyendo los subsidios de carácter alimentario-, sin perjuicio de que podrán percibir prestaciones de la seguridad social derivadas de la relación laboral –tales como las asignaciones familiares–.

3.9. Compra de moneda extranjera por parte de personas humanas residentes para ser aplicados simultáneamente a la compra de inmuebles en el país con créditos hipotecarios.

Las entidades podrán dar acceso al mercado de cambios a las personas humanas residentes para la compra de moneda extranjera a ser aplicados simultáneamente a la compra de inmuebles en el país destinados a vivienda única, familiar y de ocupación permanente, en la medida que:

3.9.1. se trate de fondos provenientes de préstamos hipotecarios otorgados por entidades financieras locales. En el caso de que la operación de compra se concrete en el marco del Programa Procrear, también se podrán utilizar los fondos provenientes de subsidios de dicho programa;

3.9.2. en caso de existir codeudores, el acceso se registrará en forma individual a nombre de cada persona humana por hasta el monto prorrateado que les corresponda;

3.9.3. considerando el total de los codeudores el acceso se realizará por hasta el monto del préstamo o el equivalente a USD 100.000 (dólares estadounidenses cien mil), el monto que resulte menor;

3.9.4. cada codeudor firme una declaración jurada en la cual se compromete a no acceder al mercado de cambios por las operaciones correspondientes a formación de activos externos, remisión de ayuda familiar y la operatoria con derivados, enunciadas en el punto 3.8., dentro de los límites que le resulten aplicables, por el tiempo que resulte necesario hasta completar el monto adquirido bajo el presente régimen; y



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.9.5.  el total de los fondos destinados a la compra, tanto en moneda local como en moneda extranjera sean depositados o transferidos simultáneamente a una cuenta en una entidad financiera a nombre del vendedor de la propiedad.

Se considerará cumplido el requisito previsto en el punto 3.9.5. para los pagos imputados a la compra que se demuestre que fueron realizados con anterioridad al 19/09/19 o que correspondan a pagos de hasta el equivalente a USD 1.000 (dólares estadounidenses mil) realizado en concepto de reserva de la propiedad.

La vigencia de este punto se encuentra suspendida desde el 24/11/23.

3.10. Compra de moneda extranjera por parte de otros residentes –excluidas las entidades– para la formación de activos externos y por operaciones con derivados.

El acceso al mercado de cambios por parte de personas jurídicas que no sean entidades autorizadas a operar en cambios, gobiernos locales, Fondos Comunes de Inversión, Fideicomisos y otras universalidades constituidas en el país, requerirá la conformidad previa del BCRA para la formación de activos externos (códigos de conceptos A01, A02, A03, A04, A06, A07, A08, A09 y A14) y para la operatoria con derivados (código de concepto A05) en la medida que no encuadre en el punto 3.12.1.

3.11. Otras compras de moneda extranjera por parte de residentes con aplicación específica.

3.11.1.  Las entidades podrán dar acceso al mercado de cambios a los residentes con endeudamientos o los fideicomisos constituidos en el país para garantizar la atención de los servicios de capital e intereses de tales endeudamientos, para la compra de moneda extranjera para la constitución de las garantías por los montos exigibles en los contratos de endeudamiento en las siguientes condiciones:

3.11.1.1.  se trate de deudas comerciales por importaciones de bienes y/o servicios con una entidad financiera del exterior o agencia oficial de crédito a la exportación o endeudamientos financieros comprendidos en el punto 3.5. con acreedores no vinculados, que normativamente tengan acceso al mercado de cambios para su repago, en cuyos contratos se prevea la acreditación de fondos en cuentas de garantía de futuros servicios de las deudas con el exterior;

3.11.1.2.  los fondos adquiridos sean depositados en cuentas abiertas en entidades financieras locales en el marco de las condiciones establecidas en los contratos. Únicamente se admitirá la constitución de las garantías en cuentas abiertas en entidades financieras del exterior cuando aquella sea la única y exclusiva opción prevista en los contratos de endeudamiento contraídos con anterioridad al 31/08/19;

3.11.1.3.  las garantías acumuladas en moneda extranjera, que podrán ser utilizadas para el pago de servicios, no superen el valor a pagar en el próximo vencimiento de servicios;

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.11.1.4. el monto diario de acceso no supere el 20% (veinte por ciento) del monto previsto en el punto anterior; y

3.11.1.5. la entidad interviniente haya verificado la documentación del endeudamiento y cuente con los elementos que le permita avalar que el acceso se realiza en las condiciones establecidas en estas disposiciones.

3.11.2. Las entidades podrán dar acceso al mercado de cambios a los residentes que deban realizar pagos de servicios de deudas financieras comprendidas en el punto 3.5. o de títulos de deuda con registro público en el país con acceso al mercado de cambios en función de lo dispuesto en el punto 3.6.1.3., para la compra de moneda extranjera con anterioridad al plazo admitido por la normativa para cada caso, en las siguientes condiciones:

3.11.2.1. los fondos adquiridos sean depositados en cuentas en moneda extranjera de su titularidad abiertas en entidades financieras locales;

3.11.2.2. la entidad interviniente haya verificado que el endeudamiento, cuyo servicio será cancelado con estos fondos, cumple con la normativa cambiaria vigente por la que se admite dicho acceso; y

3.11.2.3. el acceso del cliente encuadra dentro alguna de las siguientes situaciones:

i) se concreta dentro de los 60 (sesenta) días corridos previos a la fecha de vencimiento por un monto diario que no supere el 10% (diez por ciento) del monto que se cancelará; o

ii) se concreta dentro de los 5 (cinco) días hábiles previos al plazo normativo admitido en cada caso por un monto diario que no supere el 20% (veinte por ciento) del monto que se cancelará.

3.11.3. Las entidades podrán dar acceso al mercado de cambios a los residentes con endeudamientos originados a partir del 07/01/21 que queden comprendidos en el punto 7.9. o a los fideicomisos constituidos en el país para garantizar la atención de los servicios de capital e intereses de tales endeudamientos, para la compra de moneda extranjera para la constitución de las garantías en cuentas en moneda extranjera abiertas en entidades financieras locales o en el exterior –cuando se trate de un endeudamiento financiero comprendido en el punto 3.5.–, por los montos exigibles en los contratos de endeudamiento, en las siguientes condiciones:

3.11.3.1. las compras se realicen en forma simultánea con la liquidación de divisas y/o a partir de fondos ingresados a nombre del exportador en una cuenta de corresponsalía en el exterior de una entidad local; y

3.11.3.2. las garantías acumuladas en moneda extranjera no superen el equivalente al 125% (ciento veinticinco por ciento) de los servicios por capital e intereses a abonar en el mes corriente y los siguientes seis meses calendario, de acuerdo con el cronograma de vencimientos de los servicios acordados con los acreedores.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.11.4. En todos los casos los fondos en moneda extranjera que no se utilicen en la cancelación del servicio de deuda y/o el mantenimiento del monto de la garantía exigido deberán ser liquidados en el mercado de cambios dentro de los 5 (cinco) días hábiles posteriores a la fecha del vencimiento.

3.11.5. A los efectos del registro de las operaciones admitidas en los puntos 3.11.1., 3.11.2. y 3.11.3., la entidad interviniente deberá confeccionar un boleto de cambio bajo el concepto "A19. Constitución de depósitos en moneda extranjera para aplicar al pago de servicios de deuda", y al momento de la aplicación de los fondos adquiridos se deberá efectuar un boleto de compra bajo el mismo concepto y otro de venta por el concepto correspondiente a la cancelación del servicio de deuda.

Por las operaciones del punto 3.11.3., la entidad deberá confeccionar el boleto por el concepto de cobro de exportaciones de bienes o servicios, según corresponda.

3.11.6. Las entidades podrán dar acceso al mercado de cambios a todas las organizaciones empresariales, cualquiera sea su forma societaria, en donde el Estado Nacional tenga participación mayoritaria en el capital o en la formación de las decisiones societarias, para efectuar formación de activos externos con aplicación específica al pago de importaciones de combustibles o energía cuando se cumplan las condiciones previstas en el punto 10.6.7.

3.12. Compra de moneda extranjera para operaciones con derivados financieros.

3.12.1. Las entidades podrán dar acceso al mercado de cambios para el pago de primas, constitución de garantías y cancelaciones que correspondan a operaciones de contratos de cobertura de tasa de interés por las obligaciones de residentes con el exterior declaradas y validadas, en caso de corresponder, en el "Relevamiento de activos y pasivos externos", en tanto no se cubran riesgos superiores a los pasivos externos que efectivamente registre el deudor en la tasa de interés cuyo riesgo se está cubriendo con la celebración de los mismos.

El cliente que acceda al mercado de cambios usando este mecanismo deberá nominar a una entidad para que realice el seguimiento de la operación y firmar una declaración jurada en la que se compromete a ingresar y liquidar los fondos que resulten a favor del cliente local como resultado de dicha operación, o como resultado de la liberación de los fondos de las garantías constituidas, dentro de los 5 (cinco) días hábiles siguientes.

3.12.2. Las restantes operaciones de derivados financieros que quieran ser cursadas con acceso al mercado de cambios por parte de residentes que no sean entidades autorizadas a operar en cambios se regirán por lo dispuesto en los puntos 3.8. y 3.10., según corresponda.

3.12.3. Todas las liquidaciones de las operaciones de futuros en mercados regulados, "forwards", opciones y cualquier otro tipo de derivados concertados en el país que realicen las entidades a partir del 11/09/19 deberán efectuarse en moneda local.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
|  | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

**3.13. Repatriaciones de inversiones directas y otras compras de moneda extranjera por parte de no residentes.**

3.13.1. El acceso al mercado de cambios para la repatriación de inversiones de no residentes y otras compras de moneda extranjera por parte de clientes no residentes requerirá la conformidad previa del BCRA, excepto para las operaciones de:

3.13.1.1. Organismos internacionales e instituciones que cumplan funciones de agencias oficiales de crédito.

3.13.1.2. Representaciones diplomáticas y consulares y personal diplomático acreditado en el país por transferencias que efectúen en ejercicio de sus funciones.

3.13.1.3. Representaciones en el país de Tribunales, Autoridades u Oficinas, Misiones Especiales, Comisiones u Órganos Bilaterales establecidos por Tratados o Convenios Internacionales, en los cuales la República Argentina es parte, en la medida que las transferencias se realicen en ejercicio de sus funciones.

3.13.1.4. Transferencias al exterior a nombre de personas humanas que sean beneficiarias de jubilaciones y/o pensiones abonadas por la Administración Nacional de la Seguridad Social (ANSES) u otros organismos previsionales y/o rentas vitalicias previsionales previstas por el art. 101 de la Ley 24.241, por hasta el monto percibido por tales conceptos en los últimos 30 días corridos y en la medida que la transferencia se efectúe a una cuenta bancaria de titularidad del beneficiario en su país de residencia registrado.

3.13.1.5. Compra de billetes en moneda extranjera de personas humanas no residentes en concepto de turismo y viajes por hasta un monto máximo equivalente a USD 100 (dólares estadounidenses cien) en el conjunto de las entidades, en la medida que la entidad haya verificado en el sistema online implementado por el BCRA que el cliente ha liquidado un monto mayor o igual al que desea adquirir dentro de los 90 (noventa) días corridos anteriores.

Esta operatoria quedará habilitada a partir de que la venta de moneda extranjera liquidada por el cliente haya sido registrada ante el BCRA por la entidad interviniente de acuerdo con las pautas habituales.

Las liquidaciones encuadradas, durante su vigencia, en la operatoria con títulos valores por cuenta y orden de turistas no residentes no serán tomadas en cuenta a los efectos de lo establecido en este punto.

3.13.1.6. Transferencias a cuentas bancarias en el exterior de personas humanas por los fondos que percibieron en el país asociados a los beneficios otorgados por el Estado Nacional en el marco de las Leyes 24.043, 24.411 y 25.914 y concordantes.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.13.1.7. Repatriaciones de inversiones directas de no residentes en empresas que no sean controlantes de entidades financieras locales, en la medida que el aporte de capital haya sido ingresado y liquidado por el mercado de cambios a partir del 02/10/20 y la repatriación tenga lugar como mínimo 2 (dos) años después de su ingreso.

3.13.1.8. Repatriaciones de inversiones directas de no residentes hasta el monto de los aportes de inversión ingresados y liquidados por el mercado de cambios a partir del 16/11/20 en la medida que se cumplan la totalidad de las siguientes condiciones:

   i) el destino de los fondos haya sido la financiación de proyectos enmarcados en el "Plan de promoción de la producción del gas natural argentino – Esquema de oferta y demanda 2020-2024" establecido el artículo 2° del Decreto 892/20;

   ii) la entidad cuente con documentación que acredite el efectivo ingreso de la inversión directa en la empresa residente; y

   iii) el acceso se produce no antes de los 2 (dos) años corridos desde la fecha de liquidación en el mercado de cambios de la operación que permite el encuadre en el presente punto.

3.13.1.9. Repatriaciones de inversiones directas de no residentes en empresas que no sean controlantes de entidades financieras locales, en la medida que cuente con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)", emitida en el marco de lo dispuesto en el punto 3.17., por el equivalente del monto a repatriar.

3.13.1.10. Repatriaciones de inversiones de portafolio de no residentes originadas en utilidades y dividendos cobrados en el país desde el 01/09/19, a partir de la distribución determinada por la asamblea de accionistas por balances cerrados y auditados, en la medida que la operación se concrete mediante la realización de un canje y/o arbitraje con fondos depositados en una cuenta local y originados en cobros en moneda extranjera de capital o intereses de los bonos BOPREAL.

3.13.1.11. Repatriaciones de inversiones directas de no residentes en empresas a través del acceso del residente que adquirió su participación en el capital en una empresa residente en la medida que:

   i) el acceso se concrete en forma simultánea con la liquidación de fondos ingresados desde el exterior por endeudamientos financieros comprendidos en el punto 3.5. o fondos provenientes de un préstamo financiero en moneda extranjera otorgada por una entidad financiera local a partir de una línea de crédito de entidad financiera del exterior, que tengan una vida promedio no inferior a 4 (cuatro) años y que contemplen como mínimo 3 (tres) años de gracia para el pago de capital;

**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

ii) la empresa residente cuyo capital se transfiere quede comprendida entre los siguientes sectores: la forestoindustria, el turismo, la infraestructura, la minería, la tecnología, la siderurgia, la energía, el petróleo y el gas; y

iii) la operación implique la transferencia de, como mínimo, el 10% (diez por ciento) del capital de la empresa residente.

En caso de que al momento de concretarse el acceso el cliente no cuente con la documentación que demuestre que ha tomado posesión de la participación en el capital que se abona, deberá realizar una declaración jurada en la que se compromete a presentarla dentro de los 60 (sesenta) días corridos de concretado el acceso al mercado de cambios.

3.13.1.12   Repatriaciones de aportes de inversión directa de no residentes en una Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) encuadradas en el punto 14.2.3.

Si una repatriación de una inversión directa de no residentes consiste en una reducción de capital y/o devolución de aportes irrevocables realizadas por la empresa local, adicionalmente a los requisitos previstos en cada caso, la entidad deberá contar con la documentación que demuestre que se han cumplimentado los mecanismos legales previstos y haber verificado que se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos" el pasivo en pesos con el exterior generado a partir de la fecha de la no aceptación del aporte irrevocable o de la reducción de capital según corresponda.

3.13.2.   La repatriación de aportes de inversión directa mediante la aplicación de divisas provenientes de cobros de exportaciones de bienes y servicios estará admitida en la medida que se verifiquen los requisitos previstos en el punto 7.9.

3.13.3.   Los clientes no residentes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el equivalente al monto en moneda local de las utilidades y dividendos cobrados a partir del 01/09/19 según la distribución determinada por la asamblea de accionistas, ajustado por el último Índice de Precios al Consumidor (IPC) disponible a la fecha de suscripción, en la medida que se cumplan los requisitos previstos en el punto 4.6.2.

3.14. Canjes y arbitrajes con clientes no asociados a ingresos de divisas del exterior.

Las entidades podrán realizar con sus clientes operaciones de canje y arbitrajes no asociadas a un ingreso de divisas desde el exterior en los siguientes casos:

3.14.1.   Transferencia de divisas al exterior de las personas humanas desde sus cuentas locales en moneda extranjera a cuentas bancarias propias en el exterior.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.14.2. Transferencia de divisas al exterior por parte de centrales locales de depósito colectivo de valores por los fondos percibidos en moneda extranjera por los servicios de capital y renta de títulos del Tesoro Nacional o del BCRA, cuya operación forma parte del proceso de pago a solicitud de las centrales de depósito colectivo del exterior.

3.14.3. Transferencia de divisas al exterior para realizar pago de importaciones de bienes y servicios en el marco de lo previsto en los puntos 10.10.2.12., 10.10.2.13. y 13.3.9. a partir de fondos en moneda extranjera depositados en entidades financieras locales.

3.14.4. Las operaciones de arbitraje que no impliquen transferencias al exterior podrán realizarse sin restricciones en la medida que los fondos se debiten de una cuenta en moneda extranjera del cliente en una entidad financiera local.

En la medida que los fondos no sean debitados de una cuenta en moneda extranjera del cliente, estas operaciones solo podrán ser realizadas, sin conformidad previa del BCRA, por personas humanas hasta el monto admitido para el uso de efectivo en los puntos 3.8. y 3.13.

3.14.5. Las operaciones de canje y arbitraje con fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los bonos BOPREAL, en la medida que se cumplan los requisitos aplicables, destinadas a:

3.14.5.1. el pago de deudas comerciales por importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23, elegibles de acuerdo con lo dispuesto en el punto 4.4.

3.14.5.2. el pago de deudas comerciales por importaciones de servicios prestados o devengados hasta el 12/12/23, elegibles de acuerdo con lo dispuesto en el punto 4.5.

3.14.5.3. el pago de deudas con accionistas no residentes por utilidades y dividendos elegibles de acuerdo con lo dispuesto en el punto 4.6.1.

3.14.5.4. la repatriación de inversiones de portafolio de no residentes originadas en utilidades y dividendos cobrados en el país desde el 01/09/19, a partir de la distribución determinada por la asamblea de accionistas por balances cerrados y auditados, elegibles de acuerdo con lo dispuesto en el punto 4.6.2.

3.14.6. Transferencia de divisas al exterior de un gobierno local a partir de sus tenencias de moneda extranjera depositadas en entidades financieras locales, incluyendo aquellas que constituyen un excedente según lo previsto en el punto 3.16.2., en la medida que se verifiquen los requisitos normativos que resultarían aplicables al tipo de operación a realizarse en el caso de que se cursase contra pesos.

3.14.7. Las restantes operaciones de canje y arbitraje podrán realizarse con clientes sin la conformidad previa del BCRA en la medida que, de instrumentarse como operaciones individuales pasando por pesos, puedan realizarse sin dicha conformidad de acuerdo con las normas cambiarias vigentes.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Ello también resulta aplicable a las centrales locales de depósito colectivo de valores por los fondos percibidos en moneda extranjera por los servicios de capital y renta de títulos en moneda extranjera abonados en el país.

En caso de que la transferencia corresponda a la misma moneda en la que está denominada la cuenta, la entidad deberá debitar el monto enviado al exterior.

Cuando la entidad decida el cobro de una comisión y/o cargo por estas operaciones, ésta deberá instrumentarse a través de un concepto individualizado específicamente.

3.15. Cancelación por parte de entidades financieras de líneas de crédito del exterior aplicadas a la financiación de operaciones de comercio exterior y garantías financieras otorgadas.

3.15.1. Cancelación de líneas de crédito del exterior aplicadas por las entidades a la financiación de operaciones de comercio exterior.

Las entidades financieras tendrán acceso al mercado de cambios a partir del vencimiento para la cancelación de líneas de crédito otorgadas por entidades financieras del exterior y aplicadas a la financiación de operaciones de exportación o importación de residentes.

La cancelación de las líneas destinadas a la financiación de operaciones de importación de bienes y servicios quedará adicionalmente alcanzada por las condiciones específicas previstas en los puntos 10.7. y 13.6., respectivamente.

También podrán acceder para precancelar dichas líneas de crédito en la medida que la financiación otorgada por la entidad local haya sido precancelada por el deudor. El acceso al mercado de cambios por parte de los clientes para la precancelación de estas financiaciones requerirá la conformidad previa del BCRA.

La entidad deberá contar con la validación de la declaración del "Relevamiento de activos y pasivos externos" de la entidad, en la medida que sea aplicable.

3.15.2. Cancelación de garantías financieras otorgadas por entidades financieras locales.

Las entidades financieras locales podrán acceder al mercado de cambios para hacer frente a sus obligaciones con no residentes por garantías financieras otorgadas a partir del 01/10/21, en la medida que se reúnan la totalidad de las siguientes condiciones:

3.15.2.1. El otorgamiento de la garantía fue un requisito para la concreción de un contrato de obras o provisión de bienes y/o servicios que implicaba, en forma directa o indirecta, la realización de exportaciones de bienes y/o servicios de residentes argentinos.

3.15.2.2. La garantía se emite por pedido del residente que proporcionará los bienes o servicios y está asociada al cumplimiento de los contratos de obras o provisión de bienes y/o servicios por su parte o por una empresa no residente bajo su control que tendrá a su cargo la ejecución del contrato.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.15.2.3. La contraparte del mencionado contrato es un no residente no vinculado con el residente que exportará los bienes y/o servicios.

3.15.2.4. El beneficiario del pago es la contraparte no residente o una entidad financiera del exterior que haya otorgado garantías por el fiel cumplimiento de contratos de obras o provisión de bienes y/o servicios por parte del exportador o una empresa no residente que controla.

3.15.2.5. El monto de la garantía que otorga la entidad financiera local no supera el valor de las exportaciones de bienes y/o servicios que realizará el residente a partir de la ejecución del contrato de obras o provisión de bienes y/o servicios.

3.15.2.6. El plazo de vigencia de la garantía no excede los 180 (ciento ochenta) días corridos de la fecha de embarque de bienes locales o finalización de la prestación de servicios, relacionados con el contrato objeto de la garantía.

3.16. Requisitos complementarios para los egresos por el mercado de cambios.

3.16.1. Régimen informativo de "Anticipo de operaciones cambiarias".

Las entidades deberán remitir al BCRA, al cierre de cada jornada y con una antelación de 2 (dos) días hábiles, la información sobre operaciones a realizar por solicitud de clientes u operaciones propias de la entidad en carácter de cliente, que impliquen un acceso al mercado de cambios por un monto diario que sea igual o superior al equivalente a USD 100.000 (dólares estadounidenses cien mil), para cada uno de los 3 (tres) días hábiles contados a partir del primer día informado. No deberán tenerse en cuenta los accesos para la cancelación de financiaciones de entidades locales por consumos en moneda extranjera mediante tarjetas de crédito o de compra.

Es decir, que en T = 1 informarán las operaciones de T = 3, T = 4 y T = 5, en T = 2 informarán las operaciones de T = 4, T = 5 y T = 6 y así sucesivamente.

Los clientes de las entidades autorizadas deberán informar a las mismas con la antelación necesaria para que las entidades puedan dar cumplimiento al requisito establecido en el punto precedente, para que éstas puedan dar curso a la operación de cambio, en la medida que simultáneamente se cumplan los restantes requisitos vigentes en la normativa.

El día de la operación u operaciones, el cliente podrá optar por cursar las operaciones informadas por cualquier entidad autorizada. En estos casos, la entidad interviniente deberá contar con una constancia de la entidad informante de que la operación ha sido debidamente informada.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.16.2. Declaración jurada del cliente respecto a sus tenencias de activos externos líquidos y/o certificados de depósitos argentinos representativos de acciones extranjeras.

La entidad deberá contar con la conformidad previa del BCRA excepto que cuente al momento de acceso al mercado de cambios con una declaración jurada del cliente en la que deje constancia de que:

3.16.2.1. La totalidad de sus tenencias de moneda extranjera en el país se encuentran depositadas en cuentas en entidades financieras y que no poseía, al inicio del día en que solicita el acceso al mercado, certificados de depósitos argentinos representativos de acciones extranjeras (CEDEARs) y/o activos externos líquidos disponibles que conjuntamente tengan un valor superior al equivalente de USD 100.000 (dólares estadounidenses cien mil).

Serán considerados activos externos líquidos, entre otros: las tenencias de billetes y monedas en moneda extranjera, disponibilidades en oro amonedado o en barras de buena entrega, depósitos a la vista en entidades financieras del exterior y otras inversiones que permitan obtener disponibilidad inmediata de moneda extranjera (por ejemplo, inversiones en títulos públicos externos con custodia en el país o en el exterior, fondos en cuentas de inversión en administradores de inversiones radicados en el exterior, criptoactivos, fondos en cuentas de proveedores de servicios de pago, etc.).

No deben considerarse activos externos líquidos disponibles a aquellos fondos depositados en el exterior que no pudiesen ser utilizados por el cliente por tratarse de fondos de reserva o de garantía constituidos en virtud de las exigencias previstas en contratos de endeudamiento con el exterior o de fondos constituidos como garantía de operaciones con derivados concertadas en el exterior.

En el caso de que el cliente tuviera activos externos líquidos disponibles y/o CEDEARs por un monto superior al establecido en el primer párrafo, la entidad también podrá aceptar una declaración jurada del cliente en la que deje constancia que no se excede tal monto al considerar que, parcial o totalmente, los activos externos líquidos:

i) fueron utilizados durante esa jornada para realizar pagos que hubieran tenido acceso al mercado local de cambios;

ii) fueron transferidos a favor del cliente a una cuenta de corresponsalía de una entidad local autorizada a operar en cambios;

iii) son fondos depositados en cuentas bancarias en el exterior a su nombre que se originan en cobros de exportaciones de bienes y/o servicios o anticipos, prefinanciaciones o posfinanciaciones de exportaciones de bienes otorgados por no residentes, o en la enajenación de activos no financieros no producidos para los cuales no ha transcurrido el plazo de 20 (veinte) días hábiles desde su percepción.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

iv) son fondos depositados en cuentas bancarias en el exterior a su nombre originados en endeudamientos financieros comprendidos en el punto 3.5. y su monto no supera el equivalente a pagar por capital e intereses en los próximos 365 (trescientos sesenta y cinco) días corridos.

v) son fondos depositados en cuentas bancarias del exterior a su nombre originados en los últimos 180 (ciento ochenta) días corridos por desembolsos en el exterior recibidos a partir del 29/11/24 de endeudamientos financieros comprendidos en el punto 3.5.

vi) son fondos depositados en cuentas bancarias del exterior a su nombre originados en las ventas de títulos valores con liquidación en moneda extranjera contempladas en el punto 3.16.3.6.iii).

vii) son fondos depositados en cuentas bancarias en el exterior a su nombre originados en emisiones de títulos de deuda concretadas en los 120 (ciento veinte) días corridos previos y susceptibles de ser encuadradas en lo previsto en los puntos 7.11.1.5. y 7.11.1.6.

En esta última declaración jurada del cliente deberá constar expresamente el valor de sus activos externos líquidos disponibles al inicio del día y los montos que asigna a cada una de las situaciones descriptas en los incisos i) a vii) que sean aplicables.

3.16.2.2. Se compromete a liquidar en el mercado de cambios, dentro de los 5 (cinco) días hábiles de su puesta a disposición, aquellos fondos que reciba en el exterior originados en el cobro de préstamos otorgados a terceros, el cobro de un depósito a plazo o de la venta de cualquier tipo de activo, cuando el activo hubiera sido adquirido, el depósito constituido o el préstamo otorgado con posterioridad al 28/05/20.

Este requisito no resultará a aplicación para aquellas operaciones de egresos que correspondan a:

i) operaciones de clientes realizadas en el marco de los puntos 3.8., 3.13. y 3.14.1. a 3.14.3;

ii) operaciones propias de una entidad en carácter de cliente;

iii) cancelaciones de financiaciones en moneda extranjera otorgadas por entidades financieras locales por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra; o

iv) pagos al exterior de las empresas no financieras emisoras de tarjetas por el uso de tarjetas de crédito, de compra, de débito o prepagas emitidas en el país.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.16.3.  Declaración jurada del cliente respecto a operaciones con títulos valores y otros activos.

La entidad deberá contar con la conformidad previa del BCRA excepto que cuente con una declaración jurada del cliente en la que deje constancia de que:

3.16.3.1.  en el día en que solicita el acceso al mercado y en los 90 (noventa) días corridos anteriores, de manera directa o indirecta o por cuenta y orden de terceros:

   i)   no ha concertado ventas en el país de títulos valores con liquidación en moneda extranjera;

   ii)  no ha realizado canjes de títulos valores emitidos por residentes por activos externos;

   iii) no ha realizado transferencias de títulos valores a entidades depositarias del exterior;

   iv)  no ha adquirido en el país títulos valores emitidos por no residentes con liquidación en pesos;

   v)   no ha adquirido certificados de depósitos argentinos representativos de acciones extranjeras;

   vi)  no ha adquirido títulos valores representativos de deuda privada emitida en jurisdicción extranjera;

   vii) no ha entregado fondos en moneda local ni otros activos locales (excepto fondos en moneda extranjera depositados en entidades financieras locales) a cualquier persona humana o jurídica, residente o no residente, vinculada o no, recibiendo como contraprestación previa o posterior, de manera directa o indirecta, por sí misma o a través de una entidad vinculada, controlada o controlante, activos externos, criptoactivos o títulos valores depositados en el exterior.

3.16.3.2.  se compromete a que desde el momento en que requiere el acceso al mercado de cambios y por los 90 (noventa) días corridos subsiguientes, de manera directa o indirecta o por cuenta y orden de terceros:

   i)   no concertará ventas en el país de títulos valores con liquidación en moneda extranjera;

   ii)  no realizará canjes de títulos valores emitidos por residentes por activos externos;

   iii) no realizará transferencias de títulos valores a entidades depositarias del exterior;

   iv)  no adquirirá en el país títulos valores emitidos por no residentes con liquidación en pesos;

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

v)   no adquirirá certificados de depósitos argentinos representativos de acciones extranjeras;

vi)  no adquirirá títulos valores representativos de deuda privada emitida en jurisdicción extranjera;

vii) no entregará fondos en moneda local ni otros activos locales (excepto fondos en moneda extranjera depositados en entidades financieras locales) a cualquier persona humana o jurídica, residente o no residente, vinculada o no, para recibir como contraprestación previa o posterior, de manera directa o indirecta, por sí misma o a través de una entidad vinculada, controlada o controlante, activos externos, criptoactivos o títulos valores depositados en el exterior.

En caso de que el cliente sea una persona jurídica, para que la operación no quede comprendida por el requisito de conformidad previa, la entidad deberá contar adicionalmente con una declaración jurada en la que conste:

3.16.3.3.  el detalle de las personas humanas o jurídicas que ejercen una relación de control directo sobre el cliente y de otras personas jurídicas con las que integra un mismo grupo económico.

A los efectos de determinar la existencia de una relación de control directo deberán considerarse los tipos de relaciones descriptos en el punto 1.2.2.1. de las normas de "Grandes exposiciones al riesgo de crédito".

Deben ser considerados como integrantes de un mismo grupo económico las empresas que compartan una relación de control del tipo definido en los puntos 1.2.1.1. y 1.2.2.1. de las normas de "Grandes exposiciones al riesgo de crédito".

3.16.3.4.  que en el día en que solicita el acceso al mercado y en los 90 (noventa) días corridos anteriores no ha entregado en el país fondos en moneda local ni otros activos locales líquidos -excepto fondos en moneda extranjera depositados en entidades financieras locales-, a ninguna persona humana o jurídica que ejerza una relación de control directo sobre ella, o a otras empresas con las que integre un mismo grupo económico, salvo aquellos directamente asociados a operaciones habituales entre residentes de adquisición de bienes y/o servicios.

3.16.3.5.  Lo previsto en los puntos 3.16.3.1. al 3.16.3.4. no resultará aplicable para aquellas operaciones de egresos que correspondan a:

i)   operaciones de clientes realizadas en el marco de los puntos 3.14.2. a 3.14.3.;

ii)  cancelaciones de financiaciones en moneda extranjera otorgadas por entidades financieras locales, incluyendo los pagos por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra;

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

iii) operaciones comprendidas en el punto 3.13.1.4. en la medida que las mismas sean cursadas en forma automática por la entidad en su carácter de apoderada del beneficiario no residente.

Las entidades por sus operaciones propias en carácter de cliente deberán dar cumplimiento sólo a lo previsto en los puntos 3.16.3.3. y 3.16.3.4.

3.16.3.6. En las declaraciones juradas elaboradas para dar cumplimiento a los puntos 3.16.3.1. y 3.16.3.2. no deberán tenerse en cuenta:

i) las transferencias de títulos valores a entidades depositarias del exterior realizadas o a realizar por el cliente con el objeto de participar de un canje o una operación de recompra de títulos de deuda emitidos por el Gobierno Nacional, gobiernos locales u otros emisores residentes del sector privado. El cliente deberá comprometerse a presentar la correspondiente certificación por los títulos de deuda canjeados.

ii) la entrega de activos locales con el objeto de cancelar una deuda con una agencia oficial de crédito o una entidad financiera del exterior, en la medida que se produzca a partir del vencimiento como consecuencia de una cláusula de garantía prevista en el contrato de endeudamiento.

iii) las ventas de títulos valores con liquidación en moneda extranjera en el país o en el exterior cuando la totalidad de los fondos obtenidos de tales liquidaciones se haya utilizado o será utilizada dentro de los 10 (diez) días corridos a las siguientes operaciones:

a) Pagos a partir del vencimiento de capital o intereses de nuevos endeudamientos financieros comprendidos en el punto 3.5., desembolsados a partir del 02/10/23 y que contemplen como mínimo 1 (un) año de gracia para el pago de capital.

b) Repatriaciones del capital y rentas asociadas a las inversiones directas de no residentes recibidas a partir del 02/10/23, en la medida que la repatriación se produzca como mínimo 1 (un) año después de la concreción del aporte de capital y se haya dado cumplimiento a los mecanismos legales previstos en tales casos.

c) Pagos a partir del vencimiento de capital o intereses de títulos de deuda emitidos a partir del 02/10/23 con registro público en el país no comprendidos en el punto 3.5., denominados y suscriptos en moneda extranjera, con servicios pagaderos en moneda extranjera y que contemplen como mínimo 2 (dos) años de gracia para el pago de capital.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|-------------------|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

d) Pagos a partir del vencimiento de capital o intereses de endeudamientos financieros comprendidos en el punto 3.5. que no generen desembolsos por ser refinanciaciones de capital y/o intereses de operaciones contempladas en los incisos a) y c) precedentes, en la medida que las refinanciaciones no anticipen el vencimiento de la deuda original.

e) Pagos a partir del vencimiento de capital o intereses de títulos de emitidos con registro público en el país no comprendidos en el punto 3.5., denominados en moneda extranjera, con servicios pagaderos en moneda extranjera y que no generen desembolsos por ser refinanciaciones de capital y/o intereses de operaciones contempladas en el inciso c) precedente en la medida que las refinanciaciones no anticipen el vencimiento de la deuda original.

En todos los casos el cliente deberá presentar una declaración jurada dejando constancia de que los fondos oportunamente recibidos por las operaciones detalladas en los incisos a) a c) precedentes se utilizaron en su totalidad para concretar pagos en el país relacionados con la concreción de inversiones en la República Argentina.

iv) las ventas con liquidación en moneda extranjera en el país o en el exterior de los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) o las transferencias de estos bonos a depositarios en el exterior, cuando sean realizados por hasta el monto adquirido en la suscripción primaria por aquellos que participaron en dicha instancia.

v) las ventas con liquidación en moneda extranjera en el exterior o las transferencias a depositarios del exterior que concreten, a partir del 01/04/24, los importadores de bienes y servicios que hayan adquirido en una suscripción primaria Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por deudas de importaciones de bienes y servicios elegibles en los puntos 4.4. y 4.5., cuando el valor de mercado de estas operaciones no supere a la diferencia entre el valor obtenido por la venta con liquidación en moneda extranjera en el exterior de bonos BOPREAL adquiridos en las suscripciones primarias citadas y su valor nominal, si el primero resultase menor.

3.16.3.7. La entidad también podrá considerar cumplimentado lo indicado en los puntos 3.16.3.3. y 3.16.3.4. cuando:

i) el cliente haya presentado una declaración jurada dejando constancia de que en el plazo previsto en el punto 3.16.3.4., salvo por aquellos directamente asociados a operaciones habituales en el marco del desarrollo de su actividad, no ha entregado en el país fondos en moneda local ni otros activos locales líquidos -excepto fondos en moneda extranjera depositados en entidades financieras locales- a ninguna persona humana o jurídica,

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

ii) el cliente haya presentado una declaración jurada rubricada por cada persona humana o jurídica detallada en el punto 3.16.3.3. a la cual el cliente le haya entregado fondos en los términos previstos en el punto 3.16.3.4., dejando constancia de lo requerido en los puntos 3.16.3.1., 3.16.3.2. y 3.16.3.4.

iii) el cliente haya presentado una declaración jurada rubricada por cada persona humana o jurídica detallada en el punto 3.16.3.3., en la cual deje constancia de que:

    a) que cumple lo requerido en los puntos 3.16.3.1. y 3.16.3.2.; o

    b) que en el plazo previsto en el punto 3.16.3.4., salvo por aquellos directamente asociados a operaciones habituales entre residentes de adquisición de bienes y/o servicios, no ha recibido en el país fondos en moneda local ni otros activos locales líquidos -excepto fondos en moneda extranjera depositados en entidades financieras locales- que hayan provenido del cliente o de alguna persona detallada en el punto 3.16.3.3. a la cual el cliente le haya entregado fondos en los términos previstos en el punto 3.16.3.4.

En caso de que alguna de las personas detallada en el punto 3.16.3.3. sea un ente perteneciente al sector público nacional, no será necesaria la presentación por parte de ese ente de la declaración jurada requerida en los puntos ii) o iii) precedentes para considerar cumplimentado lo requerido.

3.16.4. Clientes incluidos en base de facturas o documentos apócrifos de la ARCA.

La entidad deberá contar con la conformidad previa del BCRA en el caso de que el cliente sea una persona humana o jurídica incluida por la Agencia de Recaudación y Control Aduanero (ARCA) en la base de facturas o documentos equivalentes calificados como apócrifos.

El listado de personas humanas o jurídicas incluidas en dicha base por la ARCA se encuentra disponible en la siguiente dirección de Internet: https://servicioscf.afip.gob.ar/Facturacion/facturasApocrifas/default.aspx.

Este requisito no resultará aplicable para el acceso al mercado para las cancelaciones de financiaciones en moneda extranjera otorgadas por entidades financieras locales, incluyendo los pagos por los consumos en moneda extranjera efectuados mediante tarjetas de crédito o de compra.

3.16.5. Listado de CUITs con operaciones inconsistentes.

La entidad deberá verificar previamente a dar curso a operaciones de egresos de fondos al exterior si el cliente está incluido en el listado de CUITs con operaciones inconsistentes en el sistema online implementado por el BCRA a tal efecto y, en caso afirmativo, deberá reforzar las medidas de control para determinar la razonabilidad y genuinidad de las operaciones. Las entidades conservarán la copia de las tareas realizadas en el legajo del cliente.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

Ante la detección de inconsistencias en la documentación presentada por un cliente que pretende cursar una operación, las entidades deberán abstenerse de cursar la operación e incorporar los datos de identificación del cliente en el sistema online.

En todos los casos en que se detectaren indicios de un fraude cambiario, las entidades deberán instrumentar las correspondientes denuncias ante el BCRA en los términos de la Ley de Régimen Penal Cambiario.

3.16.6. VPU adherido al RIGI con beneficios en materia de cobros de exportaciones de bienes y servicios.

Si el cliente fuese un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que haya declarado ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 en materia de cobro de exportaciones de bienes y servicios, deberá darse cumplimiento al requisito complementario previsto en el punto 14.4.

3.17. Acceso con "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)".

3.17.1. El cliente que cuente con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" podrá acceder al mercado de cambios por hasta el monto de la certificación para realizar:

3.17.1.1. Pagos de capital de deudas originadas en la importación de bienes con registro de ingreso aduanero a partir del 13/12/23 antes del plazo previsto en el punto 10.10.1.1. y/o con registro de ingreso aduanero hasta el 12/12/23.

3.17.1.2. Pagos de capital de deudas originadas en la importación de servicios prestados o devengados a partir del 13/12/23 antes del plazo previsto en el punto 13.2. y/o prestados o devengados hasta el 12/12/23.

3.17.1.3. Pagos de intereses de deudas comerciales por la importación de bienes y servicios cuyo acreedor sea una contraparte vinculada al deudor sin la conformidad previa requerida en el punto 3.3.3.

3.17.1.4. Pagos de utilidades y dividendos a accionistas no residentes en la medida que se verifiquen los requisitos previstos en los puntos 3.4.1. a 3.4.3.

3.17.1.5. Pagos de capital e intereses de endeudamientos financieros con el exterior cuyo acreedor sea una contraparte vinculada al deudor sin la conformidad previa requerida en el punto 3.5.6.

3.17.1.6. Repatriaciones de inversiones directas de no residentes en empresas que no sean controlantes de entidades financieras locales en el marco de lo dispuesto en el punto 3.13.

En todos los casos, se deberá acreditar el cumplimiento de los restantes requisitos generales y específicos que sean aplicables a la operación en virtud de la normativa cambiaria vigente.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

En caso de que el cliente haya obtenido el beneficio en virtud de una cesión del beneficiario original en el marco del Decreto 277/22, la entidad deberá contar con una certificación de la entidad encargada del seguimiento de los beneficios del Decreto 277/22 para el beneficiario original en la cual deje constancia de que ha tomado conocimiento de la cesión y que ésta es consistente con lo previsto en el punto 3.17.3.

3.17.2. Los beneficiarios del Régimen de acceso a divisas para la producción incremental de petróleo (RADPIP) y/o Régimen de acceso a divisas para la producción incremental de gas natural (RADPIGN) deberán nominar una única entidad financiera local que será la responsable de emitir las "certificaciones por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" y remitirlas a las entidades por las cuales el cliente desee acceder al mercado de cambios.

En caso de que el cliente sea un beneficiario directo del Decreto 277/22, para quedar habilitada para emitir las certificaciones la entidad también deberá estar nominada por el cliente como responsable de:

3.17.2.1. la emisión de las "Certificaciones de aumento de las exportaciones de bienes" en el marco del punto 3.18.

3.17.2.2. el seguimiento de todas las operaciones que queden comprendidas en los puntos 7.9. y 7.10.

Si fuese necesario modificar la entidad nominada responsable de lo indicado en los puntos 3.17.2.1. y/o 3.17.2.2., la nueva entidad será considerada responsable una vez que el cambio de entidad haya quedado registrado en el BCRA y la entidad previa le haya remitido el detalle de las certificaciones emitidas a nombre del cliente hasta ese momento.

3.17.3. La entidad nominada deberá tomar registro de los montos de los beneficios reconocidos por la Secretaría de Energía en el marco del Decreto 277/22 a favor del cliente, dejando constancia del período al que corresponde el beneficio y el monto total del beneficio en dólares estadounidenses obtenido para el período.

En el caso de que el cliente sea un beneficiario directo del Decreto 277/22, la entidad podrá emitir "certificaciones de los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" por hasta el monto que surge de considerar el monto acumulado de los beneficios totales reconocidos al cliente por la Secretaría de Energía neto de los montos acumulados por los conceptos detallados a continuación:

3.17.3.1. los beneficios obtenidos por el cliente en el marco del Decreto 277/22 que hayan sido cedidos a proveedores directos con la convalidación de la Secretaría de Energía.

3.17.3.2. el monto de las aplicaciones de divisas de cobros de exportaciones de bienes a la cancelación de capital de endeudamientos financieros comprendidos en el punto 3.5. y/o la repatriación de inversiones directas, contempladas en el marco de lo dispuesto en los puntos 7.9. y/o 7.10., registradas a partir del 01/07/22.

| Versión: 4a. | COMUNICACIÓN "A" 8191 | Vigencia: 11/02/2025 | Página 37 |
| --- | --- | --- | --- |



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.17.3.3. el monto de los vencimientos de capital que, registrarán en los siguientes 365 (trescientos sesenta y cinco) días corridos, aquellos endeudamientos financieros comprendidos en el punto 3.5. que deban ser atendidos con la aplicación de cobros de exportaciones de bienes en el marco de lo dispuesto en los puntos 7.9. y/o 7.10.

3.17.3.4. el monto de las "Certificaciones de aumento de exportaciones de bienes", emitidas a nombre del beneficiario en el marco del punto 3.18. a partir del 01/07/22.

3.17.3.5 el monto equivalente de los pagos realizados desde el 01/07/22 por el beneficiario en el marco de lo dispuesto en los puntos 3.4.4.1. y/o 3.4.4.2., por utilidades y dividendos generados por aportes de inversión directa liquidados a partir del 17/01/20 y/o por proyectos enmarcados en el "PLAN GAS", respectivamente.

3.17.4. La entidad financiera designada por el beneficiario para la emisión de las "certificaciones por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" deberá:

3.17.4.1. notificar su nombramiento a la Gerencia Principal de Exterior y Cambios del BCRA dentro de los 10 (diez) días corridos de ocurrido.

3.17.4.2. mantener a disposición de la SEFyC un registro de los beneficios obtenidos por el cliente, las certificaciones emitidas y los montos que correspondan a lo previsto en los puntos 3.17.3.1. a 3.17.3.5.

3.17.4.3. cumplimentar los requerimientos de información que establezca el BCRA respecto a este mecanismo.

3.17.5. Cuando el beneficiario desee modificar la entidad nominada para la emisión de las certificaciones, la entidad a cargo del seguimiento deberá notificarle la voluntad del beneficiario a la nueva entidad.

En el caso de aceptar, la nueva entidad quedará habilitada para emitir nuevas certificaciones una vez que el cambio de entidad haya sido notificado al BCRA y la entidad previa le haya remitido el detalle de las certificaciones emitidas a nombre del beneficiario hasta ese momento.

3.18. Acceso con "Certificación de aumento de las exportaciones de bienes".

3.18.1. Los clientes que cuenten con una "Certificación de aumento de las exportaciones de bienes en el año 2021" o "Certificación de aumento de las exportaciones de bienes en el año 2022" o "Certificación de aumento de las exportaciones de bienes en el año 2023" podrá acceder al mercado de cambios por hasta el monto de la certificación para realizar:

3.18.1.1. Pagos de intereses de deudas comerciales por la importación de bienes y servicios cuyo acreedor sea una contraparte vinculada al deudor sin la conformidad previa requerida en el punto 3.3.3.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.18.1.2. Pagos de utilidades y dividendos a accionistas no residentes en la medida que se verifiquen los requisitos previstos en los puntos 3.4.1. a 3.4.3.

3.18.1.3. Pagos de capital e intereses de endeudamientos financieros comprendidos en el punto 3.5. cuyo acreedor sea una contraparte vinculada al deudor sin la conformidad previa requerida en el punto 3.5.6.

En todos los casos, se deberá acreditar el cumplimiento de los restantes requisitos generales y específicos que sean aplicables a la operación en virtud de la normativa cambiaria vigente.

Este mecanismo no podrá ser utilizado por los aumentos de exportaciones de bienes del año 2023 por las personas jurídicas que sean beneficiarias del régimen de fomento para las exportaciones de la economía del conocimiento (Capítulo II del Decreto 679/22).

3.18.2. Para tramitar una "Certificación de aumento de las exportaciones de bienes" el exportador deberá nominar una única entidad financiera local que será la responsable de emitir las correspondientes certificaciones y remitirlas a las entidades por las cuales el cliente desee acceder al mercado.

La entidad nominada podrá emitir una "Certificación de aumento de las exportaciones de bienes en el año t" cuando se verifiquen la totalidad de los siguientes requisitos:

3.18.2.1. El valor FOB de las exportaciones de bienes comprendidos en los puntos 7.1.1.2. a 7.1.1.5. embarcados en el año t y que cuenten con una certificación de cumplido en el marco del SECOEXPO, es superior al valor FOB de sus exportaciones para ese mismo conjunto de bienes embarcadas en todo el año t-1.

A los efectos de este cómputo no deberán considerarse los bienes exportados a través de operaciones exceptuadas del seguimiento en virtud de lo dispuesto en el punto 8.5.17., las exportaciones a consumo con despacho de importación temporaria (DIT) o aquellos que cuenten con las ventajas aduaneras "EXPONOTITONEROSO" o "PROMOEXPO".

3.18.2.2. El exportador no registra a la fecha de emisión permisos con plazo vencido para el ingreso y liquidación de las divisas en situación de incumplimiento. Los permisos que revistan la condición de "incumplido en gestión de cobro" no serán considerados a estos efectos.

3.18.2.3. El exportador registró exportaciones de bienes en el año t-1.

3.18.2.4. El monto de las certificaciones emitidas, incluyendo la que se solicita emitir, no supera el equivalente en moneda extranjera al monto máximo establecido para el exportador por lo dispuesto en el punto 3.18.3.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

3.18.2.5. La entidad cuenta con una declaración jurada del exportador en la que deje constancia de que el aumento de las exportaciones corresponde a nuevas operaciones comerciales de carácter genuino y no a exportaciones de bienes previamente realizadas por terceros que se registran a su nombre en virtud de acuerdos con el tercero u otros.

3.18.2.6. La entidad cuenta con una declaración jurada del exportador en la que deje constancia de que, en caso de haber sido convocados tanto él como su grupo económico a un acuerdo de precios por el Gobierno Nacional, no han rechazado participar en tales acuerdos ni han incumplido lo acordado en caso de poseer un programa vigente.

3.18.3. El monto máximo de las certificaciones para cada año será calculado a partir de considerar aquel que resulte menor entre el aumento total que surge del cómputo dispuesto en el punto 3.18.2.1. y el equivalente al 30% (treinta por ciento) del valor FOB de las exportaciones computables para el año t-1.

El monto máximo de las certificaciones para el exportador, que será informado a las entidades por el BCRA, quedará determinado a partir de asignar los siguientes coeficientes según el tipo de bien en que se registró el aumento:

3.18.3.1. 5% (cinco por ciento) cuando corresponda a bienes que tienen asignado un plazo de 30 (treinta) días corridos en virtud de lo dispuesto en el punto 7.1.1.2.

3.18.3.2. 10% (diez por ciento) cuando corresponda a bienes que tienen asignado un plazo de 60 (sesenta) días corridos en virtud de lo dispuesto en el punto 7.1.1.3.

3.18.3.3. 15% (quince por ciento) cuando corresponda a bienes que tienen asignado un plazo de 180 (ciento ochenta) o más días corridos en virtud de lo dispuesto en los puntos 7.1.1.4. y 7.1.1.5.

En el caso de que el exportador combine aumentos y disminuciones en los distintos tipos de bienes y/o el aumento total supere el equivalente al 30% (treinta por ciento) del monto computable para el año t-1 a partir de aumentos registrados en distintos tipos de bienes, el cómputo se hará en base a una distribución entre las distintas categorías en las cuales hubo aumento.

Cuando el cliente sea beneficiario directo del Decreto 277/22, los montos de las "certificaciones por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitidas en el marco de lo dispuesto en el punto 3.17., deberán ser deducidas del monto de "Certificación de aumento de las exportaciones de bienes" que pueden ser emitidas.

3.18.4. La entidad nominada por el exportador para el seguimiento de este mecanismo, antes de la emisión de cada certificación, deberá constatar en la información suministrada por el BCRA a tal efecto: el monto máximo total que pueden acumular las certificaciones emitidas a favor de un exportador y que el exportador no tiene permisos en situación de incumplimiento.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|-------------------|
|          | Sección 3. Disposiciones específicas para los egresos por el mercado de cambios |

El BCRA considerará inicialmente como entidad nominada por el exportador para la emisión de la "Certificación de aumento de las exportaciones de bienes" a aquella entidad que al 04/06/21 constaba como entidad nominada en una mayor cantidad de permisos embarcados por el exportador en el año 2021. En caso de que el exportador realizase su primera exportación computable con posterioridad a esa fecha se seleccionará a la entidad nominada para la misma.

Cuando el exportador desee modificar la entidad nominada para la emisión de las certificaciones, la entidad a cargo del seguimiento deberá notificarle la voluntad del exportador a la nueva entidad. En el caso de aceptar, la nueva entidad quedará habilitada para emitir nuevas certificaciones una vez que el cambio de entidad haya quedado registrado en el BCRA y la entidad previa le haya remitido el detalle de las certificaciones emitidas a nombre del exportador hasta ese momento.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

**4.1.** Operaciones con tarjetas de crédito, compra, débito y prepagas.

4.1.1. Retiros de efectivo desde el exterior.

Los retiros de efectivo en el exterior con tarjetas de débito locales podrán ser efectuados con débito en cuentas locales del cliente en pesos o en moneda extranjera.

Las entidades financieras deberán ofrecer a sus clientes la posibilidad de seleccionar y modificar, en forma remota, la cuenta asociada a su tarjeta de débito sobre la cual se efectuarán los débitos, debiendo tomar por defecto como cuenta primaria en estos casos, la cuenta en moneda extranjera del cliente, en caso de que fuera titular de una cuenta en moneda extranjera.

Una extracción con una tarjeta de débito que utiliza saldos en una cuenta local en pesos o con una tarjeta prepaga emitida en el país con saldo en pesos será considerada una formación de activos externos por parte del residente computable a los efectos de los límites establecidos en el punto 3.8., debiendo cumplirse con los demás requisitos aplicables a esos conceptos. La entidad deberá realizar previamente la correspondiente constatación en el sistema online y registrar la operación como una compra de billetes de moneda extranjera (código de concepto A09).

Las entidades financieras y otras emisoras de tarjetas locales de crédito y/o compra podrán otorgar como adelanto en efectivo a los tarjetahabientes en el exterior, un monto máximo de USD 50 (cincuenta dólares estadounidenses) por operación.

Dicho límite se incrementa a USD 200 (doscientos dólares estadounidenses) por operación por los retiros de efectivo que se realicen en países no limítrofes.

4.1.2. Consumos en el exterior con tarjetas de débito o tarjetas prepagas.

Los consumos en el exterior con tarjeta de débito pueden ser efectuados con débito en cuentas locales del cliente en pesos o en moneda extranjera.

Las entidades financieras deberán ofrecer a sus clientes la posibilidad de seleccionar y modificar la cuenta asociada a su tarjeta de débito sobre la cual se efectuarán los débitos, debiendo tomar por defecto como cuenta primaria en estos casos a la cuenta en moneda extranjera del cliente en caso de que la tuviera.

Los consumos en el exterior con una tarjeta de débito que utiliza saldos en una cuenta local en pesos o con tarjetas prepagas emitidas en el país con saldo en pesos, a partir del mes calendario siguiente y por los meses subsiguientes que resultasen necesarios hasta completar el monto total consumido desde el 1.9.2020, serán deducidos del límite establecido en el punto 3.8. para la compra de moneda extranjera por parte de personas humanas para la formación de activos externos, remisión de ayuda familiar y por operaciones con derivados.

Independientemente de lo anterior, en la medida que se cumplan las condiciones previstas, la persona humana podrá continuar realizando consumos en el exterior con tarjeta de débito que utilice saldos de su cuenta local en pesos o con tarjetas prepagas emitidas en el país con saldo en pesos.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.1.3. Cancelación de consumos en moneda extranjera efectuados con tarjeta de crédito y/o de compra.

4.1.3.1. Cuando el emisor de la tarjeta sea una entidad financiera, el titular podrá cancelar los consumos realizados en moneda extranjera en esta última moneda o en pesos, debiendo aplicar como máximo en este caso el tipo de cambio vendedor (aplicable para operaciones efectuadas por ventanilla o a través de medios electrónicos, según corresponda) de la entidad emisora de la tarjeta del momento de cancelación –o día hábil inmediato anterior cuando el pago se efectúe un día inhábil–.

En los casos donde los clientes hayan pactado el débito automático del resumen de la tarjeta en cuentas de la propia entidad emisora, aplicará el tipo de cambio vendedor para operaciones efectuadas a través de medios electrónicos de pago del cierre del mismo día hábil del pago.

4.1.3.2. Cuando se trate de empresas no financieras emisoras de tarjetas de crédito y/o compra, el titular podrá cancelar los consumos realizados en moneda extranjera en esta última moneda o en pesos –siendo de aplicación el tipo de cambio vendedor por canales electrónicos publicado por el Banco de la Nación Argentina el mismo día hábil de la fecha de pago o hábil inmediato anterior cuando el pago se efectúe un día inhábil–.

Las cancelaciones en pesos de las financiaciones otorgadas por los consumos en moneda extranjera efectuados mediante tarjetas de crédito y/o de compra, a partir del mes calendario siguiente y por los meses subsiguientes que resultasen necesarios hasta completar el monto cancelado desde el 1.9.2020, serán deducidas del límite establecido en el punto 3.8. para la compra de moneda extranjera por parte de personas humanas para la formación de activos externos, remisión de ayuda familiar y por operaciones con derivados.

Independientemente de lo anterior, la persona humana podrá continuar realizando consumos en moneda extranjera con tarjeta de crédito y/o de compra y, en la medida que se cumplan las condiciones previstas, accediendo al mercado de cambios para la cancelación de financiaciones en moneda extranjera otorgadas por tales consumos.

4.1.4. Pagos al exterior por el uso de tarjetas de crédito, compra, débito o prepagas emitidas en el país.

Las entidades financieras y las empresas no financieras emisoras de tarjetas locales deberán contar con la conformidad previa del BCRA para acceder al mercado de cambios para realizar pagos al exterior por el uso de dichas tarjetas, cuando tales pagos se originen, en forma directa o indirecta a través del uso de redes de pagos internacionales, en las siguientes operaciones:

4.1.4.1. la participación en juegos de azar y apuestas de distinto tipo, y/o

4.1.4.2. la transferencia de fondos a cuentas en Proveedores de Servicios de Pago, y/o



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.1.4.3.   la transferencia de fondos a cuentas de inversión en administradores de inversiones radicados el exterior, y/o

4.1.4.4.   la realización de operaciones cambiarias en el exterior, y/o

4.1.4.5.   la adquisición de criptoactivos en sus distintas modalidades, y/o

4.1.4.6.   la adquisición de joyas, piedras preciosas y metales preciosos (oro, plata, platino, etc.), y/o

4.1.4.7.   la adquisición de tarjetas de regalo o equivalentes de tiendas o locales radicados en el exterior.


4.2.   Operaciones cursadas a través del Sistema de Monedas Locales (SML).

Los clientes residentes podrán canalizar a través del SML implementado por el BCRA con los bancos centrales de la República Federativa del Brasil, la República Oriental del Uruguay y la República del Paraguay, las siguientes operaciones:

4.2.1.   Anticipos y cobros de exportaciones argentinas de bienes y servicios conexos a los países indicados que se documenten en pesos argentinos.

4.2.2.   Pagos de importaciones argentinas de bienes y servicios conexos desde los países indicados que se documenten en la moneda de curso legal del país de la contraparte.

4.2.3.   Pagos de jubilaciones y otros beneficios previsionales a cargo de las instituciones previsionales de los países cuando exista un acuerdo bilateral suscripto entre las instituciones.

4.2.4.   Devoluciones de operaciones cursadas previamente por este sistema.

En el caso de la República del Paraguay y de la República Oriental del Uruguay, adicionalmente podrán ser cursadas las siguientes operaciones y sus devoluciones:

4.2.5.   Anticipos y cobros de exportaciones argentinas de bienes y servicios conexos a dicho país que se documenten en la moneda del país de destino de la exportación.

4.2.6.   Pagos de importaciones argentinas de bienes y servicios conexos desde dicho país que se documenten en pesos argentinos.

4.2.7.   Cobros de servicios no conexos al comercio exterior de bienes, excepto servicios financieros, prestados por residentes argentinos a residentes paraguayos y uruguayos y que se documenten en pesos argentinos o en la moneda del país de destino de la exportación.

4.2.8.   Pagos de servicios no conexos al comercio exterior de bienes, excepto servicios financieros, prestados por residentes paraguayos o uruguayos a residentes argentinos y que se documenten en pesos argentinos o en la moneda del país del prestador del servicio.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.2.9.  Ingreso y remisión de transferencias en concepto de ayuda familiar, éstas últimas sujetas al cumplimiento de lo dispuesto en el punto 3.8.

En el caso de la República Federativa del Brasil, las operaciones comerciales no podrán tener un plazo de pago que exceda a los 360 (trescientos sesenta) días corridos.

En todos los casos, la entidad deberá requerir una declaración jurada del cliente respecto a que la operación corresponde a aquellas comprendidas en este sistema y que se cumplen las disposiciones específicas y generales que le resulten normativamente aplicables.

La entidad deberá realizar un boleto de compra y/o venta de cambio, según corresponda, conforme a lo estipulado en el punto 5.3.

4.3.  Operaciones con títulos valores.

4.3.1.  Las transacciones de títulos valores concertadas en el exterior no podrán liquidarse en pesos en el país, pudiéndose liquidar en pesos en el país solamente aquellas operaciones concertadas en el país.

4.3.2.  Las operaciones de compraventa de títulos valores que se realicen con liquidación en moneda extranjera deberán abonarse por alguno de los siguientes mecanismos:

4.3.2.1.  mediante transferencia de fondos desde y hacia cuentas a la vista a nombre del cliente en entidades financieras locales; o

4.3.2.2.  contra cable sobre cuentas bancarias a nombre del cliente en una entidad del exterior que no esté constituida en países o territorios donde no se aplican o no se aplican suficientemente las Recomendaciones del Grupo de Acción Financiera Internacional.

4.3.2.3.  contra cable sobre una cuenta de terceros en el exterior que no se encuentre radicada en países o territorios donde no se aplican o no se aplican suficientemente las Recomendaciones del Grupo de Acción Financiera Internacional, cuando se trate de la venta de bonos BOPREAL adquiridos por el vendedor en una suscripción primaria por operaciones elegibles en los puntos 4.4., 4.5. y 4.6.1.

También se podrán liquidar en las condiciones indicadas otras ventas de títulos valores concretadas a partir del 01/04/24 en la medida que el valor de mercado de estas operaciones no supere a la diferencia entre el valor obtenido por la venta con liquidación en moneda extranjera en el exterior de los bonos BOPREAL adquiridos por el vendedor en una suscripción primaria por deudas de importaciones de bienes y servicios elegibles en los puntos 4.4. y 4.5. y su valor nominal, si el primero resultase menor.

En ningún caso se permite la liquidación de estas operaciones mediante el pago en billetes en moneda extranjera o mediante su depósito en cuentas custodia o en cuentas de terceros, excepto que se trate de operaciones contra cable que utilicen cuentas de terceros en el marco de lo contemplado en el punto 4.3.2.3. o en el Decreto 28/23.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 4. Otras disposiciones específicas. |

Los requisitos previstos en los puntos 4.3.2.1. y 4.3.2.2. no resultarán aplicables en las compras de títulos valores que:

   i)   sean concretadas por los clientes con fondos en moneda extranjera recibidos en los 15 (quince) días hábiles previos a partir del cobro de capital y/o intereses de títulos de deuda emitidos por residentes; y

   ii)   la reinversión de los fondos por parte del beneficiario resulte neutra en materia impositiva respecto de la operatoria de acreditación de los fondos en una cuenta a la vista del beneficiario en una entidad financiera y su posterior débito para la compra de valores.

**4.4.** **Suscripción de bonos BOPREAL por parte de deudores de importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23.**

Los importadores de bienes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el monto de la deuda pendiente de pago por sus importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23.

La entidad que concrete la oferta de suscripción en nombre del cliente deberá contar con las respectivas certificaciones sobre el monto pendiente de pago emitidas por la/s entidad/es encargada/s del seguimiento de las oficializaciones involucradas en el Seguimiento de Pagos de Importaciones de Bienes (SEPAIMPO), las cuales deberán verificar que:

4.4.1.  la obligación califica como una deuda por importaciones de bienes según lo indicado en el punto 10.2.4.

4.4.2.  la operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

4.4.3.  se cumplen las condiciones previstas en el punto 10.3.2.1. para el acceso al mercado de cambios excepto aquella prevista en el inciso viii).

4.4.4.  el cliente cumple los requisitos complementarios previstos en los puntos 3.16.2. a 3.16.5.
.
4.4.5.  se cuenta con una declaración jurada del cliente en la que deja constancia que la deuda por la cual solicita la suscripción se encuentra pendiente de pago.

En caso de que la importación de bienes encuadre en los puntos 10.3.3., 10.9.1., 10.9.2. y 10.9.3., la entidad que concrete la oferta de suscripción en nombre del cliente deberá verificar en forma directa lo previsto en los puntos 4.4.1. a 4.4.5. y, adicionalmente, contar con una declaración jurada del cliente en la que deja constancia de que no ha solicitado la utilización de este mecanismo en otra entidad por esa deuda. La entidad también deberá realizar la correspondiente intervención de la documentación aduanera.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

Adicionalmente, la mencionada entidad deberá realizar un boleto de venta de cambio a nombre del importador por el código de concepto "B26. Registro de importaciones de bienes por adjudicación de bonos BOPREAL"; consignando el valor nominal en moneda extranjera de bonos BOPREAL adjudicado al importador y el número de oficialización al que corresponde.

4.5. Suscripción de bonos BOPREAL por parte de deudores de servicios de no residentes prestados o devengados hasta el 12/12/23.

Los importadores de servicios podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el monto de la deuda pendiente de pago por sus importaciones de servicios en las que la prestación o devengamiento del servicio por parte del no residente haya tenido lugar hasta el 12/12/23.

La entidad que concrete la oferta de suscripción en nombre del cliente deberá contar con la documentación que permite avalar la existencia del servicio, el monto adeudado a la fecha de suscripción y verificar que:

4.5.1. la obligación califica como una deuda por importaciones de servicios según lo indicado en el segundo párrafo del punto 13.1.2.

4.5.2. la operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

4.5.3. el cliente cumple los requisitos complementarios previstos en los puntos 3.16.2. a 3.16.5.

4.5.4. cuenta con una declaración jurada del cliente en la que deja constancia de que la deuda por la cual solicita la suscripción se encuentra pendiente de pago y de que no ha solicitado la utilización de este mecanismo en otra entidad por esta deuda.

Adicionalmente, la mencionada entidad deberá realizar un boleto de venta de cambio a nombre del importador por el código de concepto "S33. Registro de importaciones de servicios por adjudicación de bonos BOPREAL"; consignando el valor nominal en moneda extranjera de bonos BOPREAL adjudicado al importador.

4.6. Suscripción de bonos BOPREAL por utilidades y dividendos de accionistas no residentes pendientes de pago o ya percibidas en el país.

4.6.1. Suscripción de bonos BOPREAL por utilidades y dividendos pendientes de pago a no residentes a partir de la distribución determinada por la asamblea de accionistas.

Los clientes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el equivalente al monto en moneda local de las utilidades y dividendos pendientes de pago a accionistas no residentes a partir de la distribución determinada por la asamblea de accionistas.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

La entidad que concrete la oferta de suscripción en nombre del cliente deberá verificar el cumplimiento de los siguientes requisitos:

4.6.1.1.    Cuenta con la documentación que le permite avalar que la deuda pendiente corresponde a utilidades y dividendos de balances cerrados y auditados.

4.6.1.2.    La operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

4.6.1.3.    El cliente cumple los requisitos complementarios previstos en los puntos 3.16.2. a 3.16.5.

4.6.1.4.    Cuenta con una declaración jurada del cliente en la que deja constancia de que:

i)    las utilidades y dividendos por las cuales solicita la suscripción se encuentran pendientes de pago,

ii)   no ha solicitado la utilización de este mecanismo en otra entidad por esta deuda y

iii)  toma conocimiento de que no tendrá acceso al mercado de cambios para pagar el equivalente de la deuda por la cual se suscribió excepto que el pago se concrete a partir de un canje y arbitraje con los fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los bonos BOPREAL.

La declaración jurada deberá estar firmada por el representante legal de la empresa residente o un apoderado con facultades suficientes para asumir este compromiso en nombre de la empresa.

Adicionalmente, la mencionada entidad deberá realizar un boleto de venta de cambio a nombre del cliente por el código de concepto "I09. Registro de utilidades y dividendos por adjudicación de bonos BOPREAL"; consignando el valor nominal en moneda extranjera de los bonos BOPREAL adjudicado al cliente.

4.6.2.  Suscripción de bonos BOPREAL por parte de clientes no residentes por las utilidades y dividendos cobrados desde el 01/09/19.

Los clientes no residentes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el equivalente al monto en moneda local de las utilidades y dividendos cobrados desde el 01/09/19 a partir la distribución determinada por la asamblea de accionistas, ajustado por el último Índice de Precios al Consumidor (IPC) disponible a la fecha de suscripción.

La entidad que concrete la oferta de suscripción en nombre del cliente deberá verificar los siguientes requisitos:

4.6.2.1.    Cuenta con documentación que le permite avalar que el monto en pesos percibido por el no residente tiene origen en el cobro en el país a partir del 01/09/19 de utilidades y dividendos por balances cerrados y auditados.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.6.2.2.   El residente que abonó las utilidades y dividendos cumple los requisitos complementarios previstos en los puntos 3.16.2. a 3.16.5.

4.6.2.3.   Cuenta con una declaración jurada del cliente en la que deja constancia de que:

i)   el monto por el cual solicita la suscripción proviene de fondos percibidos en una cuenta local a su nombre a partir del 01/09/19 por utilidades y dividendos cobrados en el país, y que tales fondos no han sido remitidos al exterior desde su fecha de cobro hasta la fecha de suscripción del bono BOPREAL, y

ii)   no ha solicitado la utilización de este mecanismo en otra entidad por estos fondos cobrados en el país, y

iii)   toma conocimiento de que no tendrá acceso al mercado de cambios para repatriar el equivalente de estos fondos cobrados en el país, por los cuales suscribió bonos BOPREAL, excepto que la repatriación se concrete a partir de un canje y/o arbitraje con los fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los bonos BOPREAL.

La declaración jurada deberá estar firmada por el cliente no residente o su representante legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del cliente.

Adicionalmente, la entidad deberá realizar un boleto de venta de cambio a nombre de la empresa que hubiera abonado las utilidades y dividendos bajo el código "P21. Registro de fondos abonados en el país por utilidades y dividendos por adjudicación de bonos BOPREAL"; consignando el valor nominal en moneda extranjera de los bonos BOPREAL adjudicado al cliente.

4.7.   Disposiciones complementarias asociadas a los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL).

4.7.1.   Los clientes podrán, en la medida que se cumplan los requisitos aplicables, acceder al mercado de cambios mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los bonos BOPREAL para concretar:

4.7.1.1.   el pago de deudas comerciales por importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23, que resultaban elegibles de acuerdo con lo dispuesto en el punto 4.4.

4.7.1.2.   el pago de deudas comerciales por importaciones de servicios prestados o devengados hasta el 12/12/23, que resultaban elegibles de acuerdo con lo dispuesto en el punto 4.5.

4.7.1.3.   el pago de deudas con accionistas no residentes por utilidades y dividendos, que resultaban elegibles de acuerdo con lo dispuesto en el punto 4.6.1.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.7.1.4. la repatriación de inversiones de portafolio de no residentes originadas en utilidades y dividendos cobrados en el país desde el 01/09/19, a partir de la distribución determinada por la asamblea de accionistas por balances cerrados y auditados, que resultaban elegibles de acuerdo con lo dispuesto en el punto 4.6.2.

También se podrán considerar comprendidos en los puntos 4.7.1.1. y 4.7.1.2. a aquellos pagos elegibles que se cursen por el Sistema de Moneda Locales (SML) a partir de la venta de fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los bonos BOPREAL.

4.7.2. Los clientes que hayan adquirido bonos BOPREAL en una suscripción primaria en el marco de lo dispuesto en los puntos 4.4., 4.5. y 4.6. no deberán tener en cuenta a los efectos de la confección de las declaraciones juradas previstas en los puntos 3.16.3.1. y 3.16.3.2. las ventas con liquidación en moneda extranjera en el país o en el exterior de los bonos BOPREAL o las transferencias de estos bonos a depositarios en el exterior, cuando sean realizados por hasta el monto adquirido en la suscripción primaria.

Tampoco deberán tener en cuenta en las declaraciones juradas indicadas, las ventas de títulos valores con liquidación en moneda extranjera en el exterior o las transferencias de títulos valores a depositarios en el exterior, ambas concretadas a partir del 01/04/24, cuando el valor de mercado de estas operaciones no supere a la diferencia entre el valor obtenido por la venta con liquidación en moneda extranjera en el exterior de bonos BOPREAL adquiridos en una suscripción primaria por deudas de importaciones de bienes y servicios elegibles en los puntos 4.4. y 4.5. y su valor nominal, si el primero resultase menor.

4.7.3. Los clientes que hayan adquirido bonos BOPREAL en una suscripción primaria en el marco de lo dispuesto en los puntos 4.4., 4.5. y 4.6.1. podrán realizar ventas de títulos valores contra cable sobre una cuenta de terceros en el exterior en la medida que se cumplan los requisitos previstos en el punto 4.3.2.3., cuando se trate de la venta de los bonos BOPREAL adquiridos por el vendedor en las suscripciones primarias citadas.

También podrán liquidar, en las condiciones indicadas en el párrafo precedente, otras ventas de títulos valores concretadas a partir del 01/04/24 en la medida que el valor de mercado de estas operaciones no supere a la diferencia entre el valor obtenido por la venta con liquidación en moneda extranjera en el exterior de los bonos BOPREAL adquiridos en una suscripción primaria por deudas de importaciones de bienes y servicios elegibles en los puntos 4.4. y 4.5. y su valor nominal, si el primero resultase menor.

4.7.4. Los clientes que suscribieron BOPREAL Serie 1 con anterioridad al 31/01/24 por un monto igual o mayor al 50% (cincuenta por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5., podrán acceder al mercado de cambios para pagar capital de deudas elegibles por las cuales no se suscribió un título BOPREAL, cuando se verifique alguna de las siguientes condiciones:

4.7.4.1. el monto total abonado por este mecanismo no supere el equivalente al 5% (cinco por ciento) del monto suscripto de BOPREAL Serie 1; o

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 4. Otras disposiciones específicas. |

4.7.4.2.  en forma simultánea concrete la liquidación por un monto equivalente al pagado de cobros diferidos de exportaciones de bienes que hubiera correspondido ingresar a partir del 01/03/25 según los plazos normativos establecidos y el monto total de deudas abonadas en el mes calendario bajo este mecanismo no supera el 10% (diez por ciento) del monto de las deudas elegibles por las cuales no se suscribió un título BOPREAL; o

4.7.4.3.  en forma simultánea concrete la liquidación por un monto equivalente al pagado de cobros anticipados de exportaciones de bienes que serán cancelados con embarques cuyos cobros hubiera correspondido ingresar a partir del 01/03/25 a razón de un máximo mensual equivalente al 10% (diez por ciento) del monto total de los anticipos que se encuadraron en este mecanismo.

La entidad deberá contar con una declaración jurada del importador en la cual deja constancia de que será necesaria la conformidad previa del BCRA para la cancelación de estos cobros anticipados de exportaciones de bienes antes de los plazos estipulados.

Adicionalmente a los restantes requisitos normativos aplicables, la entidad deberá contar con una declaración jurada del cliente en la que conste el monto suscripto del BOPREAL Serie 1, los montos de las deudas comerciales de bienes y servicios por operaciones anteriores al 13/12/23 elegibles y que el pago queda encuadrado en los límites previstos.

4.7.5.  Los clientes que suscribieron BOPREAL Serie 1 con anterioridad al 31/01/24 por un monto igual o mayor al 25% (veinticinco por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5., podrán acceder al mercado de cambios para pagar capital de deudas elegibles por las cuales no se suscribió un título BOPREAL en la medida que el pago no supere el equivalente al 50% (cincuenta por ciento) del monto liquidado simultáneamente en concepto de cobros anticipados de exportaciones de bienes que serán cancelados con embarques cuyos cobros hubiera correspondido ingresar a partir del 01/03/25 a razón de un máximo mensual equivalente al 10% (diez por ciento) del monto total de los anticipos que se encuadraron en este mecanismo.

La entidad deberá contar con una declaración jurada del importador en la cual deja constancia de que será necesaria la conformidad previa del BCRA para la cancelación de estos cobros anticipados de exportaciones de bienes antes de los plazos estipulados.

Adicionalmente a los restantes requisitos normativos aplicables, la entidad deberá contar con una declaración jurada del cliente en la que conste el monto suscripto del BOPREAL Serie 1 y los montos de las deudas comerciales de bienes y servicios por operaciones anteriores al 13/12/23 elegibles y que el pago queda encuadrado en los límites previstos.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|---------------------|
|          | Sección 4. Otras disposiciones específicas. |

4.7.6. En el caso de que un cliente haya concretado una operación de venta con obligación de recompra utilizando los bonos BOPREAL adquiridos en una suscripción primaria complementariamente será aplicable lo siguiente:

    4.7.6.1. la venta de los títulos en el origen de la operación no deberá tenerse en cuenta a los efectos de la confección de las declaraciones juradas previstas en los puntos 3.16.3.1. y 3.16.3.2., en línea con lo previsto en el primer párrafo del punto 4.7.2.

    4.7.6.2. la mencionada venta no habilitará al cliente a concretar las operaciones de títulos valores por la diferencia entre el valor obtenido por la venta y el valor nominal de los títulos que se contemplan en el segundo párrafo del punto 4.7.2.

    4.7.6.3. una vez que el cliente haya recuperado la tenencia de los bonos BOPREAL, los títulos tendrán el mismo tratamiento otorgado a los títulos adquiridos en una suscripción primaria.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas. |

**5.1. Horario de funcionamiento del mercado de cambios.**

Las entidades podrán operar sin límite de horario.

**5.2. Tipo de cambio minorista.**

5.2.1. Sistema de publicación de cotizaciones del BCRA.

En la página de Internet del BCRA se podrá consultar las cotizaciones de tipos de cambio minoristas ofrecidas en la Ciudad Autónoma de Buenos Aires por las entidades adheridas al sistema.

Estarán disponibles las cotizaciones comprador y vendedor del dólar estadounidense y del euro reportadas por las entidades adheridas al sistema para sus operaciones en el mostrador y sus operaciones por Internet.

Asimismo, se podrá consultar los tipos de cambio minoristas de referencia (TCMR) comprador y vendedor calculados por el BCRA a partir de los valores informados.

5.2.2. Operaciones en puertos, aeropuertos internacionales y terminales de transporte internacional terrestre.

En el caso de las casas operativas instaladas en puertos, aeropuertos internacionales y terminales de transporte internacional terrestre, los tipos de cambio minorista comprador y vendedor ofrecidos no podrán diferir en más de 3 % de los operados por el Banco de la Nación Argentina el mismo día sin comisiones. En el caso de operaciones fuera del horario de atención de las entidades financieras, la comparación se realizará respecto de los últimos tipos de cambio minorista de cierre del Banco de la Nación Argentina.

**5.3. Boletos de cambio.**

En el boleto de cambio deberá constar el carácter de declaración jurada del ordenante de la operación de cambio sobre todos los datos contenidos en el mismo, incluyendo el concepto de la operación y el cumplimiento de los límites y requisitos establecidos por estas normas. La entidad interviniente deberá constatar el carácter genuino de la operación y el cumplimiento de los límites que fueran de aplicación.

En los boletos deberá constar la firma del cliente que realiza la operación de cambio, quien deberá ser identificado por la entidad de acuerdo con lo previsto en el punto 5.4.

**5.4. Identificación del cliente.**

La identificación del cliente a nombre de quien será registrada la operación deberá ser efectuada por la entidad a través de los siguientes mecanismos:

| Versión: 3a. | COMUNICACIÓN "A" 6844 | Vigencia: 06/12/2019 | Página 1 |
|---|---|---|---|



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas. |

5.4.1. Operaciones realizadas de manera presencial.

El cliente deberá presentar un documento de identidad admitido en las normas sobre "Documentos de identificación en vigencia" u otros documentos habilitantes en el caso de turistas y, en caso de corresponder, los instrumentos que permitan a quien se presenta actuar por cuenta y orden de personas humanas o jurídicas, patrimonios u otras universalidades.

5.4.2. Operaciones por canales electrónicos y/o firma electrónica o digital.

La identificación del cliente será efectuada mediante el uso de:

5.4.2.1. firmas electrónicas y/o digitales, en la medida que se cumplan las condiciones previstas por la Ley 25506 y sus disposiciones reglamentarias; o

5.4.2.2. canales electrónicos, en tanto se cumpla lo previsto en la Sección 6. De las normas sobre "Requisitos mínimos de gestión, implementación y control de los riesgos relacionados con tecnología informática, sistemas de información y recursos asociados para las entidades financieras" o en los puntos B.6. y B.7. de las normas sobre "Requisitos operativos mínimos de tecnología y sistemas de información para las casas y agencias de cambio", según se trate de entidades financieras o cambiarias, respectivamente.

5.5. Información mínima en las transferencias de fondos desde y hacia el exterior.

Se deberá:

5.5.1. Incluir en las transferencias de fondos con el exterior y en sus respectivos mensajes, información completa respecto del ordenante y del beneficiario. Como mínimo la siguiente:

5.5.1.1. Ordenante:

i) apellidos y nombres completos o denominación social, según corresponda;

ii) domicilio o número de DNI o número de CUIT, CUIL, CDI o CIE;

iii) número de identificación del cliente en la entidad ordenante; y

iv) número de cuenta o Código Internacional de Cuenta Bancaria (IBAN)

5.5.1.2. Beneficiario:

i) apellidos y nombres completos o denominación social, según corresponda; y

ii) número de transacción.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|--------------------|
|          | Sección 5. Pautas operativas. |

5.5.2. Contar con procedimientos efectivos que permitan detectar aquellas transferencias recibidas del exterior y sus respectivos mensajes, con información incompleta del ordenante y/o del beneficiario, conforme a lo previsto en el punto 5.5.1.

5.5.3. Las retransferencias de fondos a corresponsales de otras entidades locales o la devolución de los fondos al emisor, o cualquier otra retransferencia de fondos, sólo se deberán realizar a partir de que se completen los datos faltantes de las transferencias recibidas en la cuenta de corresponsalía de la entidad local.

En su participación en la cadena de pagos de transferencias electrónicas de fondos las entidades locales deberán verificar el cumplimiento de la información mínima requerida (tanto del ordenante como del beneficiario) en los términos del punto 5.5.1.

5.5.4. Mantener pendientes de liquidación en el mercado de cambios y/o de acreditación en cuentas locales en moneda extranjera las transferencias de fondos que no contengan la mencionada información mínima del ordenante y/o del beneficiario hasta tanto se complete.

5.6. Notificación al cliente de acreditación de fondos en cuentas de corresponsalía.

Las entidades deberán contar con procedimientos que permitan informar al beneficiario la recepción de los fondos en un plazo no mayor a un día hábil siguiente de la fecha de acreditación de los fondos en la cuenta de corresponsalía, poniéndolos a su disposición para la concertación de cambio o para su acreditación en cuentas en moneda extranjera abiertas en una entidad financiera local.

5.7. Registro de las operaciones con clientes ante el BCRA.

5.7.1. La entidad deberá registrar ante el BCRA toda operación que realice en el mercado de cambios.

5.7.2. El registro de esas operaciones se deberá realizar en la fecha de su concertación en el mercado de cambios.

5.7.3. A esos efectos se utilizará CUIT, CUIL, CDI, CIE o DNI del cliente que realiza la operación. En las situaciones que se detallan a continuación se admitirá también la utilización del:

5.7.3.1. Número de pasaporte u otro documento habilitante para el ingreso al país cuando se trate de personas humanas no residentes o de personal diplomático acreditado en el país, debiéndose consignar el nombre y apellido completo del no residente (tal cual consta en el documento considerado) y el país emisor del instrumento.

5.7.3.2. Código asignado por la Comisión Nacional de Valores cuando se trate de un fondo común de inversión.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas. |

5.7.3.3. CUIT de la entidad financiera local cuando accede al mercado de cambios en carácter de apoderado de un no residente o en el marco de operaciones por los servicios de renta y capital, rescates y ventas de títulos valores para los cuales sea custodio de la tenencia de no residentes. En el registro de la operación deberá consignarse el nombre y apellido completos o denominación social (sin abreviaturas), según corresponda, del no residente que sea beneficiario final de la operación.

5.7.3.4. CUIT o CUIL de la persona humana residente que actúe en carácter de apoderado de un no residente. En el registro de la operación deberá consignarse el nombre y apellido completos o denominación social (sin abreviaturas), según corresponda, del no residente que sea beneficiario final de la operación.

5.8. Boletos globales diarios.

Las entidades podrán elaborar un boleto global diario para las situaciones que se detallan a continuación, en la medida que se verifiquen todas las condiciones indicadas en cada caso.

En todos los casos, se deberá requerir una lista detallada de los beneficiarios/ordenantes de los pagos comprendidos en dicho boleto, debiendo como mínimo informar respecto de ellos: nombres y apellidos completos o denominación social (según corresponda), CUIT, CUIL o CDI y el monto que le corresponde.

5.8.1. Operaciones por cobros y pagos de jubilaciones y pensiones.

Deben corresponder a transferencias efectuadas por organismos oficiales o privados de fondos de jubilaciones y pensiones o fondos compensadores de previsión, a personas humanas residentes en el país (compras de cambio) o en el exterior (ventas de cambio) e identificar el pago a nivel de cada beneficiario del país o del exterior.

El boleto deberá ser confeccionado a nombre de la entidad que cursa la operación.

5.8.2. Ingresos de divisas a través de empresas procesadores de pagos.

A nombre de la empresa local que actúa como representante en el país de la empresa procesadora de pagos en la medida que se cumplan las siguientes condiciones:

5.8.2.1. Exista un acuerdo entre la persona jurídica residente que actúa como cliente y una empresa del exterior habilitando a la primera a actuar como agente de pago en la República Argentina y en el cual se prevea que los fondos ingresados sean destinados dentro de los 2 (dos) días hábiles al pago en el país de quienes resulten beneficiarios finales mediante la acreditación de sus cuentas locales en moneda nacional o en moneda extranjera.

5.8.2.2. Las transferencias tengan como ordenante la empresa del exterior firmante del acuerdo y se canalicen a través de una entidad financiera del exterior cuya casa matriz o controlante se encuentre radicada en un país miembro del Comité de Supervisión Bancaria de Basilea.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas |

5.8.2.3.  Todas las empresas del grupo económico de la procesadora de pagos, incluyendo la subsidiaria local si la hubiera, apliquen programas basados en estándares internacionales para la prevención del lavado de activos y del financiamiento del terrorismo y, asimismo, cuenten con políticas y prácticas de uso tendientes a garantizar que sus clientes no usen el sistema de procesamiento de pagos para operaciones ilegales o inadecuadas.

5.8.2.4.  La empresa procesadora de pagos reciba los fondos exclusivamente a través de la infraestructura financiera de cuentas en entidades financieras, independientemente del medio de pago utilizado por el cliente pagador local del exterior.

Por los ingresos cursados que correspondan al cobro de exportaciones de bienes y servicios, la entidad receptora de la transferencia emitirá, a pedido del exportador, una certificación de ingreso y liquidación de divisas por los fondos recibidos en moneda local.

5.9.  **Posición general de cambios y tenencias en moneda extranjera de las entidades.**

5.9.1.  Las entidades financieras podrán determinar libremente el nivel de su posición general de cambios (PGC).

5.9.2.  Las casas y agencias de cambio no podrán incrementar, sin conformidad previa del BCRA, sus tenencias en moneda extranjera respecto al promedio de sus tenencias de agosto de 2019 o el "stock" al cierre del día anterior al 02/09/19, el máximo de los dos.

Las casas y agencias de cambio inscriptas antes del 01/09/19 y que no hubieran operado hasta esa fecha deberán considerar las tenencias de moneda extranjera registradas al inicio del día en que comenzaron su operatoria.

5.9.3.  Las entidades no podrán comprar títulos valores en el mercado secundario con liquidación en moneda extranjera.

5.9.4.  Las entidades no podrán utilizar fondos de su PGC para realizar pagos a proveedores locales.

5.9.5.  Cuando las entidades adquieran títulos valores en suscripción primaria con liquidación contra cable en cuentas del exterior, sólo podrán venderlos en el mercado secundario con liquidación en moneda extranjera en el país una vez transcurridos 90 (noventa) días corridos desde la fecha de su adquisición. Este plazo no resulta aplicable a las ventas que se realicen con liquidación contra cable en cuentas del exterior.

Esta medida resulta aplicable a todas las suscripciones primarias con liquidación a partir del 20/01/25.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas |

**5.10. Operaciones propias de las entidades.**

5.10.1. Las entidades deberán confeccionar boletos de cambio a nombre propio cuando las mismas correspondan a:

5.10.1.1. Cobros o pagos en moneda extranjera por operaciones cambiarias propias en carácter de cliente.

5.10.1.2. Operaciones de cambio, canje o arbitraje con el BCRA y otras entidades financieras o cambiarias del país.

5.10.2. Las operaciones propias de la entidad deberán registrarse en la fecha en que se produce el efecto sobre su PGC.

5.10.3. No corresponderá realizar registro cambiario a nombre de la propia entidad por movimientos en moneda extranjera en el país asociados a su operatoria de créditos y depósitos.

5.10.4. Cuando una operación propia de la entidad se encuentre alcanzada por la obligación de ingreso y liquidación de divisas en el mercado de cambios, se considerará cumplido lo requerido con el ingreso de los fondos a la PGC de la entidad.

**5.11. Operaciones de cambio entre entidades.**

Estas operaciones deberán ser realizadas a través del SIOPEL.

Los movimientos en pesos resultantes de la liquidación de operaciones de compraventa de cambio que se realicen entre las entidades deberán efectuarse obligatoriamente a través de cuentas abiertas en el BCRA o en entidades financieras locales.

**5.12. Operaciones de arbitrajes y canjes en el exterior de las entidades.**

Dichas entidades podrán realizar operaciones de arbitrajes y canjes en el exterior siempre que la contraparte sea:

5.12.1. sucursal o agencia en el exterior de bancos oficiales locales; o

5.12.2. una entidad financiera del exterior de propiedad total o mayoritaria de estados extranjeros; o

5.12.3. una entidad financiera o cambiaria del exterior que no esté constituida en países o territorios donde no se aplican, o no se aplican suficientemente, las Recomendaciones del Grupo de Acción Financiera Internacional; o

5.12.4. una compañía del exterior que se dedique a la compraventa de billetes de distintos países y/o metales preciosos amonedados o en barras de buena entrega y cuya casa matriz esté radicada en un país miembro del Comité de Supervisión Bancaria de Basilea.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 5. Pautas operativas |

**5.13. Operaciones que impliquen importación y/o exportación de moneda nacional.**

Las entidades podrán concretar operaciones de cambio que impliquen la importación y/o exportación de monedas y billetes de pesos argentinos siempre que la contraparte sea alguna de las previstas en el punto 5.12. Las operaciones que impliquen la importación de billetes de pesos argentinos quedarán también sujetas a las disposiciones establecidas para la compra de moneda extranjera por parte de no residentes.

La liquidación de las divisas remitidas a la entidad local por la contraparte para la adquisición de billetes en moneda local estará exceptuada de lo dispuesto en el primer párrafo del punto 2.9. en la medida que exista un compromiso de la contraparte respecto a que dichos fondos serán comercializados con el objeto de atender la demanda de turismo y viajes y la exportación se realice en un plazo no mayor a los 30 (treinta) días corridos de la fecha de concertación de cambio.

**5.14. Liquidación de financiaciones en moneda extranjera otorgadas por entidades financieras locales.**

Los fondos recibidos por los clientes en virtud de financiaciones en moneda extranjera otorgadas por las entidades financieras locales deberán ser liquidados en el mercado de cambios al momento de su desembolso.

Lo indicado precedentemente no será aplicable en el caso de financiaciones otorgadas a través de la suscripción primaria de títulos de deuda o de otros valores representativos de deuda contemplados en el punto 3.6., quedando la liquidación de los fondos por parte del emisor sujeta a las normas aplicables al instrumento.

**5.15. Suspensión de operaciones por incumplimiento en el registro ante el BCRA.**

Las entidades financieras deberán suspender sus operaciones en divisas en el caso de que registren un atraso mayor a 4 (cuatro) días hábiles en la validación en algún apartado del régimen informativo de operaciones cambiarias.

Las entidades cambiarias deberán suspender sus operaciones en caso de encontrarse en la situación indicada precedentemente.

La suspensión procederá sin que medie comunicación alguna del BCRA y se mantendrá hasta que se regularice su situación en materia informativa.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| | Sección 6. Definiciones. |

En el marco de estas disposiciones se definen los siguientes conceptos:

**6.1. Instrumentos operados en el mercado de cambios.**

6.1.1. Monedas y billetes en moneda extranjera.

Comprende monedas y billetes emitidos por un estado extranjero.

6.1.2. Divisas en moneda extranjera.

Son instrumentos de pago expresados en una moneda emitida por un estado extranjero y generalmente aceptados en transacciones transnacionales: transferencia bancaria internacional, orden de pago, giro, cheque de viajero, cheque sobre cuentas en el exterior, etc.

Quedan excluidos de esta definición las monedas y billetes en moneda extranjera, el oro amonedado y el oro en barras de buena entrega.

6.1.3. Oro amonedado.

Abarca las monedas de oro con valor monetario, incluyendo aquellas emitidas por la República Argentina.

6.1.4. Oro en barras de buena entrega.

Comprende las barras de distinto peso, con un título no inferior a 995 milésimos de fino y que son reconocidas en los mercados tradicionales del oro, por contar con el sello de firmas refinadoras, fundidoras y ensayadoras aceptadas internacionalmente.

**6.2. Tipo de operaciones cursadas en el mercado de cambios.**

6.2.1. Compra-venta de cambio con liquidación en moneda local.

Son operaciones en las cuales se entrega o se recibe moneda local a cambio de alguno de los instrumentos operados en el mercado de cambios.

6.2.2. Canjes.

Son operaciones en las cuales se intercambia con una misma contraparte dos instrumentos operados en el mercado de cambios expresados en la misma moneda extranjera.

6.2.3. Arbitrajes.

Son operaciones en las cuales se intercambia con una misma contraparte instrumentos operados en el mercado de cambios que están expresados en distinta moneda extranjera.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 6. Definiciones. |

### 6.3. Operaciones al contado.

Comprende las operaciones en las cuales la liquidación por parte de ambas partes está pactada dentro de un plazo de hasta 2 (dos) días hábiles desde la fecha de su concertación.

Estas operaciones se consideran como accesos al mercado de cambios según su fecha de concertación.

### 6.4. Operaciones a término.

Comprende las operaciones en las cuales la liquidación está pactada en un plazo mayor a los 2 (dos) días hábiles desde la fecha de su concertación.

En el caso de que se prevea la entrega efectiva de instrumentos operados en el mercado de cambios, estas operaciones quedan sujetas a la norma cambiaria y se consideran un acceso al mercado de cambios a concretarse en la fecha de su liquidación.

No están sujetas a estas normas las concertaciones y cancelaciones de operaciones de futuros en mercados regulados, "forwards", opciones y cualquier otro tipo de derivado en la medida que estén instrumentadas bajo ley argentina y su liquidación se efectúe en el país por compensación en moneda doméstica, sin que pueda generar obligaciones presentes o futuras de realizar pagos en moneda extranjera.

### 6.5. Residente.

6.5.1. Persona humana.

Se considerará que una persona humana es residente del país dentro de cuya frontera tiene su centro de interés económico o actividad principal. En tal sentido, deberá presumirse que una persona humana es residente de un país si permanece o tiene intención de permanecer en él por al menos un año.

6.5.2. Persona jurídica.

Una persona jurídica (incluidas las sociedades de hecho u otras que no reúnan los requisitos exigidos por la Ley General de Sociedades) se considerará residente del país donde está constituida.

Las sucursales en una economía de personas jurídicas de otra economía se considerarán residentes del primer país cuando están inscriptas a los fines de poder realizar actividades en el país de manera habitual.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| | Sección 6. Definiciones. |

6.5.3. Patrimonios y otras universalidades.

La residencia de los patrimonios y otras universalidades (por ejemplo: fideicomisos, fondos comunes de inversión, sucesiones indivisas, uniones transitorias de empresas, agrupaciones de colaboración empresaria, consorcios de cooperación u otros contratos plurilaterales asociativos) estará dada por la residencia del fiduciario o persona que ejerza su representación legal.

6.6. Operaciones con contrapartes vinculadas.

Se considerarán operaciones con contrapartes vinculadas a aquellas en las que participan un residente y una contraparte que mantienen entre ellos los tipos de relaciones descriptos en el punto 1.2.2. de las normas "Grandes exposiciones al riesgo de crédito".

6.7. Posición general de cambios (PGC).

Comprenderá la totalidad de los activos externos líquidos de la entidad, netos de los saldos deudores de corresponsalía originados en la operatoria del mercado de cambios. También quedarán comprendidas las compras y ventas concertadas en el mercado de cambios y que se encuentran pendientes de liquidación.

Serán considerados activos externos líquidos de la entidad, entre otros: monedas y billetes en moneda extranjera, disponibilidades en oro amonedado o en barras de buena entrega, saldos acreedores de corresponsalía (incluyendo las transferencias a favor de terceros sin liquidación concertada), otros depósitos a la vista en entidades financieras del exterior, inversiones en títulos públicos externos y certificados de depósito a plazo.

No formarán parte de la PGC: inversiones directas en el exterior, activos externos de terceros en custodia, ventas y compras a término de divisas o valores externos, depósitos en el BCRA en moneda extranjera en cuentas a nombre de la entidad y demás activos locales en moneda extranjera.

6.8. Servicios.

Los servicios son el resultado de una actividad productiva que cambia las condiciones de las unidades que los consumen, o facilitan el intercambio de productos o activos financieros.

En el comercio internacional, la prestación de un servicio está vinculada a un acuerdo previo entre una persona o empresa que presta el servicio y es residente de una economía y un consumidor o grupo de consumidores de ese servicio, que son residentes de otra economía, independientemente de la economía en la cual se preste ese servicio.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 6. Definiciones. |

Comprende entre otros los fletes, servicios de pasajeros, otros servicios de transportes, turismo y viajes, servicios de construcción, seguros, servicios financieros, servicios de telecomunicaciones, información e informática, cargos por el uso de la propiedad intelectual, servicios de investigación y desarrollo, servicios de consultoría profesional y en administración, servicios técnicos relacionados con el comercio y otros servicios empresariales, servicios audiovisuales y conexos, servicios personales, culturales y recreativos (incluido los derechos y premios de los deportistas y/o entidades deportivas) y servicios del gobierno.

6.9.  Rentas (ingreso primario).

Comprende la remuneración de empleados y la renta de la inversión. En el primer caso, se incluyen los pagos de sueldos y otras remuneraciones de trabajadores temporales que se perciben por el trabajo personal realizado por el residente de una economía, para el residente de otra economía. En rentas de la inversión, se incluyen las transacciones por ingresos de residentes de una economía por la tenencia de activos financieros emitidos o adeudados por residentes de otra economía. Comprende los pagos de intereses y de utilidades y dividendos.

También se incluye en este concepto, la renta obtenida por las inversiones directas en inmuebles. En cambio, la renta obtenida por el alquiler a no residentes de inmuebles ubicados en el país, constituyen un ingreso del residente por servicios de alquileres.

6.10.  Transferencias corrientes (ingreso secundario).

Existe una transferencia entre dos economías cuando un residente de una economía provee bienes, servicios, activos financieros u otros activos no producidos a un residente de otra economía, sin recibir a cambio una contraprestación con valor económico.

Las transferencias corrientes afectan el nivel de ingreso disponible e influyen en el consumo de bienes y servicios, reduciéndolos en el caso del donante y aumentándolos en el caso del receptor. Incluye entre otras las transferencias personales, donaciones, jubilaciones y pensiones.

Las transferencias personales corresponden a transferencias entre personas humanas, residentes y no residentes, independientemente de la relación entre ellas.

6.11.  Activos no financieros no producidos.

Las adquisiciones o enajenaciones de activos no financieros no producidos comprenden aquellas transacciones en las que tiene lugar el traspaso de activos intangibles asociados con los derechos de propiedad económica de, entre otros, derechos de pesca, derechos minerales y espacio aéreo y electromagnético, los pases de deportistas –incluyendo los derechos de formación de deportistas percibidos a partir de operaciones entre terceros– y, en caso de que se vendan por separado de la empresa propietaria: patentes, derechos de autor, concesiones, arrendamientos, marcas registradas, logotipos y dominios de Internet.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|--------------------|
|          | Sección 6. Definiciones. |

**6.12. Gobiernos locales.**

Comprende a la administración central de provincias, de la Ciudad Autónoma de Buenos Aires, y de las municipalidades del país.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.1. Obligación de ingreso y liquidación en los plazos establecidos.

7.1.1. Exportaciones oficializadas a partir del 02/09/19.

El contravalor en divisas de la exportación hasta alcanzar el valor facturado según la condición de venta pactada deberá ingresarse al país y liquidarse en el mercado de cambios.

Por las exportaciones comprendidas en el Decreto 28/23, lo indicado precedentemente se considerará cumplimentado cuando el exportador haya ingresado y liquidado en el mercado de cambios un monto no menor al 80% (ochenta por ciento) del valor facturado y por la porción no liquidada haya concretado operaciones de compraventa con títulos valores, en las cuales los títulos valores son adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local en el país.

En el caso que el cliente sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que declaró ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 en materia de cobro de exportaciones de bienes y servicios resultará aplicable lo dispuesto en los puntos 14.1.1. y 14.1.2., según corresponda.

El ingreso y liquidación de las divisas por el mercado de cambios y las operaciones con títulos valores deberán concretarse en los siguientes plazos    a computar desde la fecha del cumplido de embarque otorgado por la Aduana:

7.1.1.1.  30 (treinta) días corridos para las exportaciones de bienes que correspondan a las posiciones arancelarias: 1001.19.00, 1001.99.00, 1005.90.10 (excepto el maíz pisingallo), 1201.90.00, 1208.10.00, 1507.10.00, 1507.90.19, 1517.90.90 (excepto aquellos que no contengan soja), 2304.00.10 y 2304.00.90.

7.1.1.2.  30 (treinta) días corridos para las exportaciones de bienes que correspondan a las posiciones arancelarias 1003.90.10, 1003.90.80, 1007.90.00 y a las correspondientes al capítulo 27 (excepto la posición 2716.00.00).

7.1.1.3.  60 (sesenta) días corridos para las operaciones con contrapartes vinculadas que no correspondan a los bienes indicados en los puntos 7.1.1.1. y 7.1.1.2. y las exportaciones correspondientes a los capítulos 26 (excepto las posiciones 2601.11.00, 2603.00.90, 2607.00.00, 2608.00.10, 2613.90.90, 2616.10.00, 2616.90.00 y 2621.10.00) y 71 (excepto las posiciones 7106.91.00, 7108.12.10 y 7112.99.00).

Los exportadores que realizaron operaciones con contrapartes vinculadas que correspondan a bienes comprendidos en el punto 7.1.1.4., en las cuales el importador sea una sociedad controlada por el exportador argentino, podrán solicitar a la entidad encargada del seguimiento de la destinación que extienda el plazo hasta:

i)  el plazo previsto en dicho punto cuando el exportador no haya registrado exportaciones por un valor total superior al equivalente a USD 50.000.000 (dólares estadounidenses cincuenta millones) en el año calendario inmediato anterior a la oficialización de la destinación;

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|---------------------|
| | Sección 7. Cobros de exportaciones de bienes. |

ii) un plazo de 120 (ciento veinte) días corridos cuando el exportador haya superado el monto indicado en el punto precedente y los bienes exportados correspondan a las posiciones que se detallan a continuación: 0202.30.00.111D, 0202.30.00.115M, 0202.30.00.117R; 0202.30.00.118U, 0202.30.00.121G, 0202.30.00.124N, 0202.30.00.126T, 0202.30.00.131K, 0202.30.00.133P, 0202.30.00.136W, 0202.30.00.137Y, 0202.30.00.141N, 0202.30.00.142Q, 0202.30.00.146Z, 0202.30.00.147B, 0202.30.00.151R, 0202.30.00.943L, 0202.30.00.991Y, 0202.30.00.992A, 0202.30.00.995G, 0203.21.00.000J, 0206.29.90.300P, 0207.14.00.100K, 1901.90.20 (en envases inmediatos de contenido neto inferior o igual a 1 kg) y 2204.21.00.

7.1.1.4. 180 (ciento ochenta) días corridos para el resto de los bienes.

7.1.1.5. 365 (trescientos sesenta y cinco) días corridos para las operaciones que se concreten en el marco del régimen "EXPORTA SIMPLE", independientemente del tipo de bien exportado.

Independientemente de los plazos máximos precedentes, los cobros de exportaciones deberán ser ingresados y liquidados en el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de cobro. La posibilidad de utilizar este plazo quedará supeditada en todos los casos al cumplimiento de los plazos previstos en los puntos 7.1.1.1. a 7.1.1.5.

Los montos en moneda extranjera originados en cobros de siniestros por coberturas contratadas, en la medida que los mismos cubran el valor de los bienes exportados, están alcanzados por esta obligación.

El exportador deberá seleccionar una entidad para que realice el "Seguimiento de las negociaciones de divisas por exportaciones de bienes". La obligación de ingreso y liquidación de divisas de un permiso de embarque se considerará cumplida cuando la entidad haya certificado tal situación por los mecanismos establecidos a tal efecto.

7.1.2. Exportaciones oficializadas con anterioridad al 02/09/19.

Los cobros de exportaciones oficializadas con anterioridad al 02/09/19 que se encontrasen pendientes de cobro a esa fecha deberán ser ingresadas y liquidadas en el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de cobro o desembolso en el exterior o en el país.

Los exportadores que hayan concretado permisos de embarque en ese periodo quedarán alcanzados por un seguimiento específico cuyas características se dará a conocer por separado.

7.1.3. Anticipos, prefinanciaciones y posfinanciaciones del exterior.

Los anticipos, prefinanciaciones y posfinanciaciones del exterior deberán ser ingresadas y liquidadas en el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de cobro o desembolso en el exterior.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

Por las exportaciones comprendidas en el Decreto 28/23, lo indicado precedentemente se considerará cumplimentado cuando en los plazos señalados el exportador haya ingresado y liquidado en el mercado de cambios un monto no menor al 80% (ochenta por ciento) del contravalor de los anticipos, prefinanciaciones y posfinanciaciones y por la porción no liquidada haya concretado operaciones de compraventa con títulos valores, en las cuales los títulos valores son adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local en el país.

En el caso que el cliente sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que declaró ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 en materia de cobro de exportaciones de bienes y servicios, resultará aplicable lo dispuesto en el punto 14.1.4.

El plazo se ampliará a 180 (ciento ochenta) días corridos desde la fecha de cobro o desembolso en el exterior, cuando el cliente cumpla la totalidad de las siguientes condiciones:

7.1.3.1.    la transferencia de las divisas haya ingresado en la cuenta de corresponsalía de la entidad local entre el 10/04/23 y el 31/12/24.

7.1.3.2.    el cliente haya registrado liquidaciones de divisas en el mercado de cambios por anticipos, prefinanciaciones y/o posfinanciaciones del exterior en el año 2022 por un monto igual o superior al equivalente a USD 100.000.000 (dólares estadounidenses cien millones).

7.1.3.3.    el cliente ingrese los fondos para su acreditación en una "Cuenta especial para acreditar financiación de exportaciones" de su titularidad hasta que se concrete la liquidación de las divisas o se compromete a que los fondos quedarán acreditados en la cuenta de corresponsalía de la entidad hasta que se concrete su ingreso por el mercado de cambios.

La retransferencia al exterior de los fondos que permanezcan como transferencias pendientes de liquidación requerirá la conformidad previa del BCRA.

Por los fondos ingresados que sean acreditados en una cuenta en moneda extranjera de titularidad del cliente, la entidad deberá confeccionar un boleto de compra por el concepto "A15. Ingresos de divisas pendientes de liquidación vinculadas a exportaciones de bienes y servicios o a enajenación de activos no financieros no producidos" y un boleto de venta por el concepto "A10. Débito/crédito de moneda extranjera en cuentas locales por transferencias con el exterior".

En el momento en que se produzca la liquidación de los fondos, la entidad deberá confeccionar un boleto de compra por el concepto que corresponda a la operación liquidada, dejando constancia en el boleto de que la operación se concreta en el marco de esta operatoria. El cliente solamente podrá liquidar por los conceptos "B02. Cobros anticipados de exportaciones de bienes" o "B03. Financiaciones del exterior por exportaciones de bienes" hasta el monto de la financiación del exterior.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

Los fondos que permanezcan como transferencias pendientes de liquidación en virtud de la extensión del plazo a 180 (ciento ochenta) días corridos, deberán ser transferidos por las entidades al Banco Central, en el día de ingreso de los fondos al corresponsal o si hubiera inconvenientes operativos el día hábil inmediato siguiente.

7.1.4. Prefinanciaciones, posfinanciaciones y financiaciones a importadores del exterior otorgadas por entidades financieras locales.

Deberán ser liquidadas en el mercado de cambios al momento de su desembolso.

En el caso que el cliente sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) que declaró ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 en materia de cobro de exportaciones de bienes y servicios resultará aplicable lo dispuesto en el punto 14.1.4.

7.2. Liquidaciones y otros ingresos imputables al cumplimiento de un permiso de embarque.

7.2.1. Cobro de exportaciones.

Ingreso en divisas imputado a exportaciones de bienes que sea liquidado por el exportador en el mercado de cambios con posterioridad al cumplido de embarque otorgado por la Aduana a la exportación.

7.2.2. Ingresos de fondos propios de los exportadores para el cumplimiento de la obligación.

Cuando los exportadores anticipen fondos desde sus cuentas en el exterior a los fines de dar cumplimiento a la obligación de liquidación de exportaciones realizadas y pendientes de cobro.

7.2.3. Ingresos a través de empresas procesadores de pagos.

Liquidación de divisas realizadas por procesadores de pagos en el mercado de cambios y cuyo producido fue acreditado en cuentas locales en moneda nacional a nombre del exportador.

7.2.4. Ingresos a través del Sistema de Moneda Locales.

Por el monto acreditado en moneda nacional en la cuenta del exportador en virtud de cobros de exportaciones canalizados a través del SML.

En caso de que el ingreso corresponda a exportaciones a Paraguay o a Uruguay facturadas en la moneda del país de destino de la exportación se computará el equivalente en dicha moneda del monto acreditado.

7.2.5. Ingresos por cobros de exportaciones de bienes exceptuados de liquidación en virtud de lo dispuesto en los puntos 2.6. y 2.7.

Ingresos de cobros de exportaciones de bienes que encuadren en las excepciones previstas en los puntos 2.6. y 2.7. por dar cumplimiento a las condiciones aplicables en cada caso.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

La entidad interviniente deberá requerir una declaración jurada del exportador respecto al encuadramiento de la operación en lo indicado precedentemente y el detalle de los respectivos permisos de embarque.

Cuando en la misma liquidación estén involucradas dos o más destinaciones de exportación a consumo se deberá registrar en forma individualizada el número de permiso de embarque y el monto en divisas imputado al permiso en la moneda que se liquida.

### 7.3. Aplicación de divisas de cobros de exportaciones.

Existe una aplicación de divisas de cobros de exportaciones de bienes cuando se ha certificado que los propios bienes exportados o las divisas cobradas por ellos fueron utilizados para cancelar el capital, intereses y/o gastos de otorgamiento de operaciones de financiamiento, pagar utilidades y dividendos y/o concretar la repatriación de una inversión directa de un accionista no residente en los casos admitidos en los puntos 7.3.1. a 7.3.11.

A los efectos que los cobros de exportaciones aplicados puedan ser imputados al cumplimiento de los permisos de embarque oficializados a partir del 02/09/19, será necesario contar en todos los casos con una certificación de aplicación emitida por la entidad encargada del "Seguimiento de anticipos y otras financiaciones de exportación de bienes".

Los exportadores que efectúen liquidaciones de moneda extranjera asociadas a las operaciones comprendidas en los puntos 7.3.1. al 7.3.10. deberán solicitar a la entidad interviniente que le asigne un número de identificación (número APX) y la incorpore al mencionado seguimiento.

En el caso de operaciones comprendidas en el punto 7.3.8. que no registren liquidaciones en el mercado de cambios por ser refinanciaciones de deudas preexistentes, la entidad nominada por el exportador atento a lo establecido en el punto 7.9.3. deberá incorporarla al mencionado seguimiento, usando para su identificación el número correlativo que se le asignó a la operación del cliente (número ECO: Entidad-CUIT-N° Operación).

7.3.1. Anticipo de exportaciones de bienes liquidado.

Adelanto en divisas efectuado a nombre del importador del exterior como pago parcial o total de la orden de compra o suministro efectuada al exportador, liquidado en el mercado de cambios con anterioridad al otorgamiento del cumplido de embarque de la mercadería por parte de la Aduana.

7.3.2. Prefinanciación de exportaciones de bienes liquidada.

Financiación otorgada al exportador por una entidad financiera local o por un no residente distinto del importador del exterior con el objeto de ser destinada a financiar los procesos de compra de insumos, producción y exportación de bienes, liquidada en el mercado de cambios con anterioridad al cumplido de embarque de la mercadería por parte de la Aduana.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|-------------------|
|          | Sección 7. Cobros de exportaciones de bienes. |

7.3.3. Posfinanciación de exportaciones de bienes liquidada.

Financiación otorgada al exportador por una entidad financiera local o del exterior o por compañías internacionales dedicadas al descuento de créditos a la exportación, a partir de sus derechos al cobro contra un comprador del exterior por bienes ya entregados.

7.3.4. Liquidaciones asociadas a exportaciones que cuenten con financiación a importadores del exterior otorgada por entidades financieras locales.

Liquidaciones de fondos en moneda extranjera entregados al exportador por una entidad financiera local en el marco de financiaciones a importadores del exterior, ya sea de manera directa o a través de líneas de crédito o bancos del exterior, para la adquisición de bienes producidos en el país previstas en el punto 2.1.16. de las normas sobre "Política de crédito".

7.3.5. Préstamos financieros con contratos vigentes al 31/08/19 cuyas condiciones prevean la atención de los servicios mediante la aplicación en el exterior del flujo de fondos de exportaciones de bienes.

En el caso de operaciones liquidadas en el mercado de cambios entre el 16/09/05 y 10/11/17, la aplicación de las divisas al capital, intereses y otros conceptos permitidos sólo será admisible cuando la liquidación se hubiese encuadrado en disposiciones que habilitaban la aplicación de divisas de exportaciones de bienes a su cancelación.

7.3.6. Prefinanciaciones y financiaciones de exportaciones otorgadas o garantizadas por entidades financieras locales pendientes al 31/08/19 que no fueron liquidadas en el mercado de cambios.

7.3.7. Anticipos y prefinanciaciones de exportaciones del exterior pendientes al 31/08/19 que no fueron liquidados en el mercado de cambios en la medida que se cuente con la conformidad previa o se aplique el mecanismo descripto en el punto 9.3.3.2.

Los exportadores que pretendan aplicar estas operaciones a embarques oficializados a partir del 02/09/19 deberán nominar una única entidad para que realice el seguimiento del conjunto de sus operaciones.

Los pedidos de conformidad deberán ser presentados ante el BCRA exclusivamente por la entidad nominada por el exportador.

7.3.8. Operaciones financieras habilitadas para aplicar cobros de exportaciones de bienes y servicios.

Las operaciones financieras enunciadas en el punto 7.9. en la medida que se cumplan los requisitos y procedimientos estipulados para quedar habilitadas para la aplicación de cobros de exportaciones de bienes y servicios.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.3.9. Operaciones habilitadas para la aplicación de cobros de exportaciones de bienes en el marco del régimen de fomento de inversión para las exportaciones (Decreto 234/21).

Las operaciones enunciadas en el punto 7.10. en la medida que se cumplan los requisitos y procedimientos estipulados para quedar habilitadas para la aplicación de cobros de exportaciones de bienes.

7.3.10. Financiaciones asociadas a importaciones de bienes habilitadas para la aplicación de cobros de exportaciones de bienes

Financiaciones comerciales o financieras asociadas a la realización de pagos diferidos o a la vista de importaciones de bienes que cumplan las condiciones y requisitos previstos en el punto 7.11.

7.3.11. Anticipos, prefinanciaciones y posfinanciaciones del exterior con liquidación parcial en virtud de lo dispuesto por los Decretos 492/23, 549/23, 597/23 y 28/23.

Se admitirá la aplicación de divisas a la cancelación del capital e intereses correspondiente a la porción no liquidada de anticipos, prefinanciaciones y posfinanciaciones del exterior a partir de lo dispuesto en los Decretos 492/23, 549/23, 597/23 y 28/23, en la medida que el cliente demuestre que, en las condiciones estipulados en los mencionados Decretos, ingresó y liquidó divisas en el mercado de cambios por un monto no menor al porcentaje mínimo requerido de la operación y por la porción no liquidada del cobro concretó operaciones de compraventa con títulos valores, en las cuales los títulos valores son adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local en el país.

La aplicación de la porción no liquidada deberá ser certificada por la entidad encargada del "Seguimiento de anticipos y otras financiaciones de exportación de bienes" de la porción liquidada de la operación, debiéndose verificarse los restantes requisitos habituales. En caso de que la operación haya sido liquidada por más de una entidad, cada una podrá certificar la aplicación de la porción no liquidada en proporción a su participación en la porción liquidada.

En el caso de que la adquisición de títulos valores se haya concretado con liquidación en el país de la moneda extranjera se deberá contar con la certificación de la entidad que cursó la operación de canje y/o arbitraje por el ingreso de las divisas a través del mercado de cambios.

7.4. Otras imputaciones admitidas en el cumplimiento de la obligación de ingreso y liquidación.

El exportador podrá solicitar a la entidad encargada que se dé por cumplimentado parcial o totalmente el seguimiento de un permiso de embarque cuando la operación se encuentra comprendida en alguna de las situaciones detalladas en el punto 8.5. y se verifiquen las condiciones previstas en cada caso.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

**7.5. Ampliaciones del plazo para el ingreso y liquidación de divisas.**

La entidad encargada del seguimiento del permiso podrá conceder extensiones en el plazo de ingreso y liquidación en las siguientes circunstancias:

7.5.1. Plazo mínimo para la financiación de la importación en el país de destino.

Cuando en el país de destino existiese un plazo mínimo de financiación de la importación que fuera mayor al plazo máximo de liquidación para el cobro de las exportaciones, será aplicable el plazo vigente en el país de destino.

7.5.2. Exportaciones totalmente prefinanciadas y/o posfinanciadas localmente o desde el exterior.

Cuando el monto pendiente de ingreso de las operaciones haya sido prefinanciado en su totalidad y los fondos liquidados en el mercado de cambios en concepto de prefinanciaciones de exportaciones locales y/o del exterior, se podrá extender el plazo para la liquidación de divisas del embarque hasta la fecha de vencimiento de la correspondiente financiación.

En tanto si el exportador demuestra haber liquidado en el mercado de cambio, antes del vencimiento del plazo, posfinanciaciones de exportaciones que cubran la totalidad del monto pendiente de ingreso del permiso, sin que se verifiquen las condiciones previstas para los puntos 9.3.4. y 9.3.5. para la emisión de la correspondiente certificación de aplicación, se podrá extender el plazo para la liquidación de divisas del embarque hasta la fecha en que venza el crédito de mayor plazo descontado y/o cedido por el exportador.

Esto último también será aplicable cuando el exportador haya prefinanciado parcialmente la operación y demuestre haber liquidado en el mercado de cambio, antes del vencimiento, posfinanciaciones de exportaciones que cubran el resto del monto pendiente de ingreso.

Esta extensión del plazo también se podrá otorgar a exportaciones de bienes comprendidas en lo dispuesto por los Decretos 492/23, 549/23, 597/23 y 28/23, en la medida que el cliente demuestre que, en las condiciones estipulados en los mencionados Decretos, ingresó y liquidó divisas en el mercado de cambios por un monto no menor al porcentaje mínimo requerido del anticipo, prefinanciación o posfinanciación y la porción no liquidada concretó operaciones de compraventa con títulos valores, en las cuales los títulos valores son adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local en el país.

En el caso de que la adquisición de títulos valores se haya concretado con liquidación en el país de la moneda extranjera se deberá contar con la certificación de la entidad que cursó la operación de canje y/o arbitraje por el ingreso de las divisas a través del mercado de cambios.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.5.3. Permisos cuyos fondos se encuentran retenidos en las cuentas asociadas a los endeudamientos financieros referidas en los puntos 7.3.5., 7.9. y 7.11.

En caso de que la fecha hasta la cual los cobros de un permiso deben permanecer depositados en virtud de lo exigido en el contrato del financiamiento fuese posterior al vencimiento del plazo para la liquidación de divisas del permiso, el exportador podrá solicitar que este plazo sea ampliado hasta el quinto día hábil posterior a dicha fecha.

Esta opción estará disponible hasta alcanzar el 125% (ciento veinticinco por ciento) de los servicios por capital e intereses a abonar en el mes corriente y los siguientes seis meses calendario.

7.5.4. Operaciones con contrapartes vinculadas elegibles para una extensión.

7.5.4.1. Cuando la entidad haya verificado que la destinación de exportación corresponde a una operación en la que se cumplen las condiciones previstas en el segundo párrafo del punto 7.1.1.3., podrá extender el plazo hasta aquel que resulte aplicable a los productos de acuerdo con el punto 7.1.1.

7.5.4.2. Cuando la entidad haya verificado que la destinación de exportación fue declarada erróneamente ante la Aduana como una operación con contraparte vinculada, se podrá extender el plazo hasta aquel que resulte aplicable a los productos de acuerdo con el punto 7.1.1.

7.5.5. Indeterminación del precio definitivo en exportaciones bajo los regímenes de precios revisables o concentrados de minerales.

Cuando al vencimiento del plazo no haya sido posible, por causas ajenas a la voluntad del exportador, determinar el precio definitivo de los bienes comprendidos en la operación, la entidad podrá extender el plazo hasta los 120 días corridos a contar desde la fecha de cumplido de embarque que figura en el permiso de embarque provisorio.

Para ello la entidad encargada del seguimiento deberá verificar el cumplimiento de las siguientes condiciones:

7.5.5.1. El exportador haya registrado imputaciones por las modalidades admitidas por al menos el 85% (ochenta y cinco por ciento) del valor del permiso de embarque provisorio, y

7.5.5.2. el exportador ha entregado una declaración jurada en la que deja constancia de los motivos ajenos a su voluntad por los cuales a la fecha no ha sido posible determinar el precio definitivo de los bienes comprendidos en la operación.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.5.6. Cobros elegibles para el mecanismo previsto en el punto 7.10. que se encuentra depositados hasta su aplicación a los usos admitidos.

Si el monto pendiente de un permiso se encuentra totalmente cubierto por cobros de exportación que son elegibles para el mecanismo previsto en el punto 7.10. y que se encuentran, a la espera de su aplicación a los usos admitidos, depositados en cuentas de corresponsalía en el exterior de entidades financieras locales y/o en cuentas locales en moneda extranjera de entidades financieras locales; el exportador podrá solicitar a la entidad encargada del seguimiento del permiso que el plazo sea ampliado hasta la fecha en que se estima se efectuará la aplicación.

7.5.7. Cobros encuadrados en la excepción de liquidación para los beneficiarios del régimen de fomento para las exportaciones de la economía del conocimiento.

La entidad encargada del seguimiento podrá extender el plazo para la liquidación de un permiso de embarque en la medida que:

7.5.7.1. el cliente haya utilizado el mecanismo previsto en el punto 7.8.4. por la totalidad del monto que se encuentra pendiente de liquidación; y

7.5.7.2. los fondos sigan depositados en una "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto N° 679/22" de titularidad del cliente.


7.6. Incumplidos en gestión de cobro.

Un permiso de embarque será registrado por la entidad de seguimiento en la condición de "Incumplido en gestión de cobro" cuando se haya verificado que el incumplimiento se debe a la falta de pago del importador, por haberse demostrado las situaciones previstas conforme a los puntos 7.6.1. a 7.6.3.

En todos los casos la entidad deberá obtener la declaración jurada sobre el carácter genuino de lo declarado, firmada por el exportador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del exportador.

A excepción de los casos en que la falta de pago del importador se origine en un control de cambios en el país del importador, la figura de "Incumplido en gestión de cobro" no podrá ser aplicada por la entidad de seguimiento cuando se trate de operaciones con contrapartes vinculadas.

Si una vez superados los inconvenientes existentes el importador efectuara el pago, el exportador argentino o en su caso la compañía de seguros de crédito a la exportación deberá ingresar las divisas dentro de los 20 (veinte) días hábiles de la fecha de puesta a disposición de los fondos.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.6.1. Control de cambios en el país del importador.

Cuando la falta de pago del importador extranjero se deba a la existencia de al menos una de las siguientes situaciones:

7.6.1.1. El país de destino de la exportación haya implementado restricciones a los giros de divisas al exterior para el pago de importaciones con posterioridad al embarque de la mercadería, y mientras duren estas restricciones, lo cual será acreditado mediante copia con legalización consular, de la normativa que dispone dicho control cambiario.

7.6.1.2. En el país de destino, el acceso al mercado de cambios para el pago de importaciones de bienes está sujeto al requisito de una autorización previa, existiendo documentación que permite a la entidad interviniente considerar que existe una demora en el otorgamiento de estas autorizaciones, que no es atribuible a las partes intervinientes en la operación comercial ni a las entidades financieras participantes.

7.6.2. Insolvencia posterior del importador extranjero.

Cuando el importador extranjero haya caído en estado de insolvencia con posterioridad al embarque de la mercadería y el exportador aporte la siguiente documentación:

7.6.2.1. Constancia de las publicaciones que hagan saber el inicio del trámite falencial conforme a lo exigido por la legislación vigente en el país en que tramite.

7.6.2.2. Constancia de la presentación efectuada por el exportador para obtener el reconocimiento y pago de su acreencia, certificada por la autoridad interviniente en el proceso, conforme al procedimiento aplicable en el país donde haya debido efectuarla.

La documentación deberá estar legalizada por autoridad consular o conforme a lo previsto por el Convenio de la Haya del 5 de octubre de 1961, cuando resultase aplicable.

7.6.3. Deudor moroso.

Cuando el exportador mantenga acciones judiciales contra el importador, u otro obligado a efectuar el pago, acreditándolo con copia del escrito de iniciación de demanda certificada por el juzgado interviniente en cuanto a su fecha de inicio y radicación.

La documentación deberá estar legalizada por autoridad consular o conforme a lo previsto por el Convenio de la Haya del 5 de octubre de 1961, cuando resultase aplicable.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

También se podrán incluir casos en esta categoría, sin necesidad de que el exportador haya iniciado y mantenga acciones legales, cuando se verifique alguna de las siguientes situaciones:

7.6.3.1.   El exportador demuestre que la operación se encontraba cubierta por una póliza de seguro de crédito a la exportación y haya liquidado los montos cubiertos por la compañía de seguro por el crédito impago, subrogándose ésta los derechos para efectuar las gestiones de cobro, tanto judiciales como extrajudiciales, directamente contra el deudor.

7.6.3.2.   Cuando el importador sea un ente del sector público del país destinatario, y el exportador demuestre su gestión de cobro a través de los reclamos efectuados en el marco de la legislación aplicable a la operación.

7.6.3.3.   El exportador demuestre en forma fehaciente su gestión de cobro a través de los reclamos efectuados al obligado al pago por compañías de seguro de crédito a la exportación sin que la operación haya sido cubierta por ésta, o por entidades constituidas como agencias de recupero nacionales o del exterior contratadas por el exportador a tal efecto. Esta alternativa sólo será válida en la medida que el valor acumulado pendiente de liquidación adeudado al exportador por el no residente no supere el equivalente a USD 200.000 (dólares estadounidenses doscientos mil).

7.6.3.4.   El exportador demuestre en forma fehaciente su gestión de cobro a través de los reclamos efectuados al obligado de pago sin llegar al inicio de la gestión judicial. Esta alternativa sólo será válida en la medida que en el año calendario considerando las fechas de oficialización de los permisos de embarque, el valor acumulado pendiente de liquidación de estos permisos no supere el equivalente a USD 100.000 (dólares estadounidenses cien mil).

En los casos encuadrados en los puntos 7.6.3.2. y 7.6.3.4., en la medida que el monto supere el equivalente de USD 25.000 (dólares estadounidenses veinticinco mil) la entidad deberá solicitar adicionalmente la presentación de un informe de auditor externo, que certifique: monto pendiente de cobro, registración contable del crédito, sus previsiones o castigos, acciones iniciadas para la cobranza, adjuntando copia de la documentación respaldatoria de dicha gestión (notas, correos electrónicos, telegramas, cartas documento, contratos, constancia de las gestiones realizadas, etc.).

7.7.   Cancelación de anticipos u otras financiaciones de exportación sin aplicación de divisas por cobros de exportaciones de bienes.

Dadas las características que definen a los anticipos, prefinanciaciones de exportaciones - locales o externas- y otras financiaciones de exportación, estas operaciones deberán ser canceladas con fondos originados en el cobro de exportaciones de bienes, salvo que el cliente pueda demostrar que no puede hacerlo de dicha forma por causas ajenas a su voluntad (por ejemplo: desistimiento de la operación por parte del comprador externo, falta de pago por parte del comprador externo, etc.).

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

El acceso al mercado local de cambios para cancelar anticipos u otras financiaciones de exportaciones del exterior sin aplicación de divisas de cobros de exportaciones de bienes se regirá por las normas para la cancelación de servicios de capital de préstamos financieros.

El acceso al mercado de cambios por parte de clientes para la precancelación de financiaciones de exportación otorgadas por entidades financieras locales quedará sujeto a la conformidad previa del BCRA. Este requisito se considerará cumplimentado en la medida que el cliente registre, en la fecha de acceso al mercado, liquidaciones por cobros de exportaciones de bienes por un monto igual o mayor al que se precancela a la entidad financiera local.

En el caso de operaciones comprendidas en el "Seguimiento de anticipos y otras financiaciones de exportación de bienes" (Sección 9.), la entidad para dar acceso al mercado de cambios deberá contar con la correspondiente certificación por parte de la entidad encargada del seguimiento de la financiación.

Los exportadores que registren anticipos u otras financiaciones de exportación comprendidas en el "Seguimiento de anticipos y otras financiaciones de exportación de bienes", por deudas directas no garantizadas por entidades financieras locales, deberán notificar a la entidad encargada de su seguimiento cualquier disminución del monto del capital adeudado que no se origine en la aplicación de cobros de exportaciones.

7.8.   Otras disposiciones.

7.8.1.   Exportaciones por cuenta y orden de terceros.

En los casos de exportaciones realizadas por cuenta y orden de terceros en el marco de la Resolución General 616/99 de la AFIP en las cuales mandatarios, consignatarios u otros intermediarios efectúan la venta de los bienes al exterior por cuenta y orden del propietario de la mercadería será aplicable lo siguiente:

7.8.1.1.   En la medida que estén nominados en el permiso de embarque, ambas partes (documentante y propietario de la mercadería) son responsables del cumplimiento de la obligación de ingreso y liquidación de divisas por la operación.

7.8.1.2.   La entidad encargada del seguimiento del permiso podrá computar las liquidaciones y/o aplicaciones de divisas que sean realizadas según la normativa vigente tanto por el exportador como por el documentante, en la medida que figuren como tales en el permiso de embarque.

7.8.2.   Exportaciones bajo los regímenes de precios revisables o concentrado de minerales.

En los casos de exportaciones de productos que se comercializan sobre la base de precios FOB sujetos a una determinación posterior al momento de registro de la operación (Exportación de mercaderías con precios revisables – Resolución General 4073-E/17 de la AFIP) o al amparo del Régimen de Concentrados de Minerales (Resolución General 2108/06 de la AFIP) será aplicable lo siguiente:

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.8.2.1.   El plazo de ingreso y liquidación de divisas se contará a partir de la fecha de cumplido de embarque que figura en el permiso de embarque provisorio: "Destinación Suspensiva de Exportación de Mercaderías con Precios Revisables" (ES02) o "Destinación de exportación de concentrados de minerales con valor FOB provisorio" (ES03).

7.8.2.2.   El monto alcanzado por la obligación de ingreso y liquidación de divisas se computará a partir del valor FOB que conste en los permisos de embarque definitivos: "Destinación definitiva de exportación de mercaderías previamente exportadas al amparo de precios revisables" (EC08) o "Destinación de exportación a consumo de concentrados de minerales" (EC09).

7.8.2.3.   Las liquidaciones y/o aplicaciones imputadas al permiso de embarque provisorio podrán computarse también como imputaciones al permiso de embarque definitivo y viceversa.

7.8.2.4.   Cuando al vencimiento del plazo no se hubiera oficializado aún el permiso de embarque definitivo, las entidades podrán otorgar el cumplido del permiso de embarque provisorio tomando en consideración las imputaciones registradas hasta ese momento frente a los datos que surgen del permiso de embarque provisorio y toda otra documentación que justifique el monto liquidado por el exportador (tal es el caso de la factura por el monto correspondiente al precio final).

En caso de que a esa fecha no hubiese sido posible determinar, por causas ajenas a la voluntad del exportador, el precio definitivo de los bienes comprendidos en la operación, el exportador podrá solicitar una extensión del plazo a la entidad encargada del seguimiento en la medida que se verifiquen las condiciones previstas en el punto 7.5.5.

7.8.2.5.   En caso de que un permiso de embarque definitivo esté asociado a un embarque provisorio oficializado con anterioridad al 02/09/19, las entidades podrán dar el cumplido de embarque del permiso definitivo.

7.8.3.   Aplicación de divisas de anticipos, prefinanciación o posfinanciaciones de exportaciones del exterior a la cancelación de prefinanciaciones de exportaciones.

El exportador podrá aplicar las divisas provenientes de cobros anticipados y nuevas prefinanciaciones o posfinanciaciones del exterior a la cancelación de prefinanciaciones locales y/o del exterior.

La entidad encargada del seguimiento de la prefinanciación cancelada registrará a nombre del cliente simultáneamente una liquidación y un egreso de divisas por el monto de la cancelación, incorporándose la liquidación al "Seguimiento de anticipos y otras financiaciones de exportación de bienes" a partir de la fecha de su registro.

En caso de tratarse de prefinanciaciones de exportaciones del exterior pendientes al 31/08/19 y que no fueron liquidados en el mercado de cambios se requerirá la conformidad previa del BCRA.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.8.4. Excepción de liquidación para cobros de exportaciones de bienes de beneficiarios del régimen de fomento para las exportaciones de la economía del conocimiento.

Quedarán exceptuados de la obligación de liquidación, en la medida que ingresen dentro de los plazos normativos establecidos, los cobros de exportaciones de bienes de personas jurídicas que sean beneficiarias del régimen de fomento para las exportaciones de la economía del conocimiento (Capítulo II del Decreto 679/22) y se cumplan la totalidad de las siguientes condiciones:

7.8.4.1. la entidad interviniente deberá contar con una declaración jurada del cliente en la que conste que los cobros que dejan de liquidarse corresponden a exportaciones de bienes que están relacionadas con actividades vinculadas a la economía del conocimiento.

7.8.4.2. los fondos en moneda extranjera sean acreditados en una "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto 679/22" de titularidad del cliente hasta que sean destinados al pago en moneda extranjera de las remuneraciones de personal en relación de dependencia, debidamente registrado, afectado a las actividades de la economía del conocimiento, conforme los criterios establecidos en el Decreto 679/22 y la Resolución 234/22 del Ministerio de Economía.

7.8.4.3. el cliente cuente por el equivalente del monto que se pretende no liquidar con una "Certificación de incremento de exportaciones asociadas a la economía del conocimiento (Decreto 679/22)" emitida en los términos previstos en el punto 2.6.2.

Los montos de las divisas a ser afectadas en el marco de lo dispuesto en el capítulo II del Decreto 679/22 no pueden resultar alcanzadas por ningún otro tratamiento cambiario diferencial que no sea aquel previsto en dicho capítulo.

A los efectos del registro de estas operaciones se deberán confeccionar dos boletos sin movimiento de pesos, el boleto de compra se realizará por el concepto de cobros de exportaciones que corresponda y el boleto de venta deberá registrarse bajo el código de concepto "A22. Acreditación de cobros de exportaciones de bienes y servicios".

La imputación del monto ingresado al cumplimiento del permiso de embarque requerirá que el exportador presente, ante la entidad encargada de su seguimiento, documentación que demuestre que se registraron por dicho monto transferencias en moneda extranjera desde la "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto 679/22" por el pago de las remuneraciones de personal en relación de dependencia.

Por otra parte, la entidad encargada del seguimiento del permiso de embarque podrá extender el plazo de liquidación del permiso cuando, por el monto que se encuentre pendiente de liquidación, el cliente haya utilizado este mecanismo y los fondos sigan depositados en "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto 679/22" de titularidad del cliente.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

**7.9. Operaciones financieras habilitadas para aplicar cobros de exportaciones de bienes y servicios.**

7.9.1. La aplicación de cobros de exportaciones y servicios estará habilitada, en la medida que se cumplan las condiciones consignadas en cada caso, en los siguientes casos:

7.9.1.1. Pago de capital e intereses de endeudamientos financieros comprendidos en el punto 3.5. cuyos fondos hayan sido ingresados y liquidados en el mercado de cambios a partir del 02/10/20 y destinados a la financiación de proyectos que cumplen las condiciones previstas en el punto 7.9.2., en la medida que su vida promedio no sea inferior a 1 (un) año, considerando los pagos de servicios de capital e intereses.

7.9.1.2. Repatriación de inversiones directas de no residentes en empresas que no sean controlantes de entidades financieras locales cuyos fondos hayan sido ingresados y liquidados en el mercado de cambios a partir del 02/10/20 y destinados a la financiación de proyectos que cumplen las condiciones previstas en el punto 7.9.2., en la medida que la repatriación se produzca con posterioridad a la fecha de finalización y puesta en ejecución del proyecto de inversión y, como mínimo, 1 (un) año después del ingreso del aporte de capital en el mercado de cambios.

En caso de que el cliente sea beneficiario directo del Decreto 277/22, la aplicación sólo podrá ser convalidada por la entidad encargada del seguimiento hasta el monto que surge de restar el valor de los beneficios del Decreto 277/22, utilizados por el cliente en forma directa o indirecta.

7.9.1.3. Pago de capital e intereses de emisiones de títulos de deuda con registro público en el país que encuadren en el punto 3.6.1.3. y cuyos fondos hayan sido liquidados en el mercado de cambios a partir del 16/10/20 y destinados a la financiación de proyectos que cumplen las condiciones previstas en el punto 7.9.2., en la medida que su vida promedio sea no inferior a 1 (un) año considerando los vencimientos de capital e intereses.

7.9.1.4. Pago de capital e intereses de emisiones de títulos de deuda con registro público en el país, denominadas en moneda extranjera y cuyos servicios sean pagaderos en el exterior o en moneda extranjera en el país o emisiones de títulos de deuda con registro público en el exterior, concertadas a partir entre el 09/10/20 y el 31/12/23, con una vida promedio no inferior a 2 (dos) años y cuya entrega a los acreedores haya tenido lugar como parte del plan de refinanciación oportunamente requerido en el punto 7. de la Comunicación A 7106 y concordantes (disposiciones receptadas en el punto 3.17. del Anexo de la Comunicación A 7914), en base a los siguientes parámetros:

i) el monto de capital por el cual se accedió al mercado de cambios hasta el 31/12/23 no superó el 40% (cuarenta por ciento) del monto del capital que vencía, excepto cuando por un monto igual o superior al excedente el deudor:

| Versión: 5a. | COMUNICACIÓN "A" 8191 | Vigencia: 11/02/2025 | Página 16 |
|---|---|---|---|

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

a) registraba liquidaciones en el mercado de cambios a partir del 09/10/20 por emisiones de títulos de deuda con registro público en el exterior u otros endeudamientos financieros con el exterior; o

b) registraba liquidaciones en el mercado de cambios a partir del 09/10/20 por emisiones de títulos de deuda con registro público en el país denominados y suscriptos en moneda extranjera y cuyos servicios fueran pagaderos en moneda extranjera en el país; o

c) contaba con una "Certificación de aumento de exportaciones de bienes" para los años 2021 a 2023 emitida en el marco del punto 3.18.; o

d) contaba con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.

ii) el resto del capital que vencía fue, como mínimo, refinanciado con un nuevo endeudamiento con el exterior con una vida promedio de 2 (dos) años mayor a la vida promedio remanente del capital refinanciado.

7.9.1.5. Pago de capital e intereses de títulos de deuda con registro público en el exterior y otros endeudamientos financieros con el exterior cuyos fondos hayan sido ingresados y liquidados en el mercado de cambios entre el 16/10/20 y el 31/12/23 y hayan permitido alcanzar los parámetros de refinanciación previstos en el punto 7.9.1.4.

7.9.1.6. Pago de capital e intereses de emisiones de títulos de deuda con registro público en el país, denominados y suscriptos en moneda extranjera y con servicios pagaderos en moneda extranjera en el país, cuyos fondos hayan sido liquidados en el mercado de cambios entre el 16/10/20 y el 31/12/23 y hayan permitido alcanzar los parámetros de refinanciación previstos en el punto 7.9.1.4.

7.9.1.7. Pago de capital e intereses de emisiones de títulos de deuda con registro público en el país denominadas en moneda extranjera y cuyos servicios sean pagaderos en moneda extranjera en el país o emisiones de títulos de deuda con registro público en el exterior, en la medida que:

i) su emisión haya tenido lugar entre el 07/01/21 y el 31/12/23;

ii) fueron entregados a acreedores en el marco de operaciones de canje de títulos de deuda o refinanciación de vencimientos de capital y/o interés de los siguientes 2 (dos) años por endeudamientos con el exterior cuyo vencimiento final fuese posterior al periodo considerado a la fecha de su emisión en el punto 7. de la Comunicación A 7106 y concordantes (disposiciones receptadas en el punto 3.17. del Anexo de la Comunicación A 7914);

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

iii) considerando el conjunto de la operación la vida promedio de la nueva deuda implique un incremento no inferior a 18 (dieciocho) meses respecto a los vencimientos refinanciados.

7.9.1.8.   Pago de capital e intereses de endeudamientos financieros comprendidos en el punto 3.5., cuyos fondos hayan sido liquidados en el mercado de cambios a partir del 19/04/24, en la medida que su vida promedio sea no inferior a 3 (tres) años, y el primer pago de capital no se registre antes de cumplirse el año del ingreso de los fondos.

7.9.1.9.   Pago de capital e intereses devengados hasta la fecha de aplicación por parte de un cliente que sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) en la medida que se trate de operaciones encuadradas en el punto 14.2.1.

7.9.1.10.  Repatriaciones de aportes de inversión directa de no residentes en una Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) encuadradas en el punto 14.2.3.

7.9.2.  Las operaciones de los puntos 7.9.1.1. a 7.9.1.3. serán elegibles en la medida que los fondos liquidados sean destinados a la financiación de proyectos de inversión en el país que generen:

7.9.2.1.   un aumento en la producción de bienes que, en su mayor parte, serán colocados en mercados externos y/o que permitirán sustituir importaciones de bienes.

Se entenderá como cumplida la condición precedente, cuando se demuestre razonablemente que al menos dos tercios del incremento en la producción de bienes como resultado del proyecto, tendrá como destino los mercados externos y/o la sustitución de importaciones en los 3 (tres) años siguientes a la finalización del proyecto, con un efecto positivo en el balance cambiario de bienes y servicios, y/o

7.9.2.2.   un aumento en la capacidad de transporte de exportaciones de bienes y servicios con la construcción de obras de infraestructura en puertos, aeropuertos y terminales terrestres de transporte internacional.

7.9.3.  Los exportadores que opten por este mecanismo deberán designar una entidad financiera local para que realice el seguimiento de la operación, la cual se encargará de:

7.9.3.1.   certificar el cumplimiento de las condiciones de elegibilidad de las operaciones de financiamiento a las cuales se aplicarán las divisas,

7.9.3.2.   efectuar el seguimiento de los permisos de embarques cuyos cobros se mantengan en el exterior acorde a lo previsto en la presente norma,

7.9.3.3.   efectuar el seguimiento de las garantías constituidas y de las cuentas especiales que se constituyan, y

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.9.3.4.  cumplimentar los requerimientos de información que establezca el BCRA respecto a estas operaciones.

En el caso de que se trate de operaciones destinadas a los proyectos comprendidos en el punto 7.9.2., la entidad encargada del seguimiento deberá adicionalmente:

7.9.3.5.  certificar el cumplimiento de las condiciones para la elegibilidad del proyecto,

7.9.3.6.  efectuar el seguimiento de la ejecución del proyecto y su financiación.

7.9.4.  Por aquellas operaciones para las cuales los exportadores hagan ejercicio de la opción prevista en el presente punto, la entidad financiera designada deberá remitir, por nota dirigida a la Gerencia Principal de Exterior y Cambios dentro de los 90 (noventa) días corridos posteriores al primer ingreso de fondos, la correspondiente certificación de que se cumplen las condiciones que permiten encuadrar la operación.

La certificación que se presente en el BCRA deberá contener como mínimo, el detalle del punto normativo en que encuadra la operación, su número de identificación en el marco del "Seguimiento de anticipos y otras financiaciones de exportación de bienes" y, si existen endeudamientos que contemplen el mantenimiento de cuentas de garantías o cuentas específicas sin estar en garantía, identificación del tipo de cuenta y entidad financiera local o del exterior.

El número de identificación a consignar será el número APX para las operaciones con liquidación en el mercado o el número ECO (Entidad-CUIT-N° Operación) para aquellas operaciones sin liquidaciones por ser refinanciaciones de deudas preexistentes.

En el caso de que se trate de operaciones destinadas a la financiación de proyectos comprendidos en el punto 7.9.2., la entidad deberá adicionalmente remitir la certificación del cumplimiento de las condiciones para la elegibilidad del proyecto, la cual deberá contener, como mínimo, la descripción de éste, el monto proyectado a invertir y la composición del financiamiento.

La certificación que emita la entidad financiera deberá basarse en las proyecciones sobre el aumento anual esperado en la producción de bienes exportables o que permiten sustituir importaciones, ventas externas en base al análisis de posibilidades de colocación o en su caso importaciones a sustituir, proporción de futuras ventas externas o sustitución de importaciones a cubrir con la producción del nuevo proyecto, flujos de divisas esperados y flujos de divisas con afectación a la atención de los servicios del financiamiento.

La entidad solicitará los dictámenes profesionales que estime necesarios para asegurar la razonabilidad y genuinidad de la operación en los aspectos económicos y financieros, que deberán ser complementados con dictámenes sobre los aspectos técnicos del proyecto, cuando el mismo no cuente con la aprobación en los términos de la Ley 26.360.

La documentación utilizada por la entidad financiera y hojas de trabajo que avalan la emisión de la certificación deberá quedar archivada en la entidad a disposición del BCRA.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.9.5. Por los endeudamientos financieros comprendidos en el punto 3.5. que hayan sido ingresadas y liquidadas por el mercado de cambios a partir del 07/01/21 se admitirá que los fondos originados en el cobro de exportaciones de bienes y servicios del deudor sean acumulados en cuentas del exterior y/o el país destinadas a garantizar la cancelación de los vencimientos de la deuda emitida.

Esta opción estará disponible hasta alcanzar el 125% (ciento veinticinco por ciento) de los servicios por capital e intereses a abonar en el mes corriente y los siguientes seis meses calendario, de acuerdo con el cronograma de vencimientos de los servicios acordados con los acreedores, debiendo los fondos excedentes ser ingresados y liquidados en el mercado de cambios dentro de los plazos previstos en las normas generales en la materia.

En caso de que la fecha hasta la cual los cobros deben permanecer depositados en virtud de lo exigido en el contrato del financiamiento fuese posterior al vencimiento del plazo para la liquidación de divisas, el exportador podrá solicitar que este plazo sea ampliado hasta el quinto día hábil posterior a dicha fecha.

7.9.6. Los residentes con endeudamientos comprendidos en el punto 7.9.1. y originados a partir del 07/01/21 o los fideicomisos constituidos en el país para garantizar la atención de los servicios de capital e intereses de tales endeudamientos, podrán acceder al mercado, en la medida que se cumplan las condiciones previstas en el punto 3.11.3., para la compra de moneda extranjera para la constitución de las garantías en cuentas en moneda extranjera abiertas en entidades financieras locales o en el exterior -cuando se trate de un endeudamiento financiero comprendido en el punto 3.5.-, por los montos exigibles en los contratos de endeudamiento.

7.10. Operaciones habilitadas para la aplicación de cobros de exportaciones de bienes en el marco del régimen de fomento de inversión para las exportaciones (Decreto 234/21).

7.10.1. Se admitirá la aplicación de cobros en divisas por exportaciones de bienes que correspondan a proyectos comprendidos en el régimen de fomento de inversión para las exportaciones (Decreto 234/21) y en los términos fijados por la autoridad de aplicación para las siguientes operaciones:

7.10.1.1. Pago a partir del vencimiento de capital e intereses de deudas por la importación de bienes y servicios.

7.10.1.2. Pago a partir del vencimiento de capital e intereses de endeudamientos financieros comprendidos en el punto 3.5.

7.10.1.3. Pago de utilidades y dividendos que correspondan a balances cerrados y auditados.

7.10.1.4. Repatriación de inversiones directas de no residentes en empresas que no sean controlantes de entidades financieras locales.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.10.2. La aplicación de las divisas a las operaciones señaladas será admitida en la medida que se verifiquen la totalidad de las siguientes condiciones:

7.10.2.1. El monto aplicado no supere el 20% (veinte por ciento) del monto en divisas que corresponden al permiso de exportación cuyos cobros se aplican.

7.10.2.2. El monto aplicado en el año calendario no supere el equivalente al 25% (veinticinco por ciento) del monto bruto de las inversiones ingresadas para financiar el desarrollo del proyecto que genera las exportaciones aplicadas.

El monto bruto de las inversiones ingresadas a computar surgirá de la suma de los montos acumulados por:

i) las liquidaciones efectuadas en el mercado de cambios a partir del 07/04/21 en concepto de endeudamientos financieros comprendidos en el punto 3.5. y aportes de inversión extranjera directa.

ii) el valor FOB de las importaciones de bienes de capital incorporados al proyecto de inversión cuyo registro de ingreso aduanero se haya producido a partir del 07/04/21 y que hayan tenido una financiación de un acreedor del exterior con una vida promedio no inferior a 1 (un) año que no fue computada en el punto anterior o hayan constituido un aporte de inversión directa en especie a la empresa residente.

Las inversiones podrán ser computadas una vez transcurrido un año calendario desde su liquidación en el mercado de cambios y/o el registro de ingreso aduanero de los bienes de capital, según corresponda.

En el caso de aportes de inversión directa, el cliente deberá presentar la documentación que avale la capitalización definitiva del aporte. En caso de no disponerla, deberá presentar constancia del inicio del trámite de inscripción ante el Registro Público de Comercio de la decisión de capitalización definitiva de los aportes de capital computados de acuerdo con los requisitos legales correspondientes y comprometerse a presentar la documentación de la capitalización definitiva del aporte dentro de los 365 (trescientos sesenta y cinco) días corridos desde el inicio del trámite.

7.10.2.3. En caso de que el cliente sea beneficiario directo del Decreto 277/22, la aplicación de las divisas sólo podrá ser convalidada por la entidad encargada del seguimiento hasta el monto que surge de restar el valor de los beneficios del Decreto 277/22, utilizados por el cliente en forma directa o indirecta.

7.10.2.4. Los exportadores que opten por este mecanismo deberán designar una entidad financiera local para que realice el seguimiento del proyecto comprendido en el régimen mencionado, la cual se encargará de:

i) Constatar que el exportador posee un "Certificado de Inversión para Exportación" emitido por la Autoridad de Aplicación.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

ii) Certificar que las exportaciones de bienes cuyos cobros se pretende aplicar están vinculadas al proyecto aprobado por la Autoridad de Aplicación.

iii) Efectuar el seguimiento de los permisos de embarques cuyos cobros se pretenda aplicar acorde a lo previsto en el presente punto.

iv) Efectuar el registro de las importaciones de bienes de capital que cumplen lo previsto en el punto 7.10.2.2.ii) y realizar el seguimiento de los correspondientes despachos de importación.

v) Efectuar el seguimiento de los fondos pendientes de aplicación.

vi) Cumplimentar los requerimientos de información que establezca el BCRA respecto a estas operaciones.

La entidad nominada por un exportador deberá notificar tal situación al BCRA mediante nota dirigida a la Gerencia Principal de Exterior y Cambios dentro de los 30 (treinta) días corridos de producida su nominación.

La nota por presentar en el BCRA deberá contener como mínimo, copia del "Certificado de Inversión para Exportación", la descripción del proyecto, el monto proyectado a invertir y la composición del financiamiento.

Asimismo, deberá notificar al BCRA cada inversión ingresada para financiar el proyecto, informando su monto, sus características y, en caso de que sea un endeudamiento, las condiciones de pago establecidas. En la nota deberá consignarse el número de identificación de la operación (número APX) en el marco del "Seguimiento de anticipos y otras financiaciones de exportación de bienes" e indicar si la operación encuadra en lo previsto en el punto 7.9.

En caso de que la inversión corresponda a una operación comprendida en el punto 7.10.2.2.ii) también deberá consignarse en la nota el número de oficialización correspondiente.

7.10.2.5. Para el registro de las operaciones del punto 7.10.2.2.ii) en el régimen informativo de operaciones de cambios (RIOC), la entidad encargada del seguimiento deberá confeccionar dos boletos sin movimiento de fondos con las siguientes características:

i) El boleto de compra se confeccionará por un código de concepto que identifique que se trata de una operación comprendida en el mencionado punto, debiéndose dejar constancia de la identificación del acreedor o de quien realiza el aporte, según corresponda, y asignar un número de identificación (número APX) que permitirá la incorporación de la operación al "Seguimiento de anticipos y otras financiaciones de exportación de bienes".

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

ii) El boleto de venta se confeccionará con el código de concepto que refleje el pago diferido de importaciones de bienes que se efectúa, dejando constancia que el pago encuadra en el presente mecanismo.

iii) Los boletos deberán ser registrados en la fecha en que se produjo el registro de ingreso aduanero de los bienes de capital, independientemente de cuál sea el momento en que el cliente solicita su registro ante la entidad financiera.

7.10.3. Los cobros de exportación de bienes recibidos por un exportador que resulten elegibles para el mecanismo previsto en este punto y no sean aplicados simultáneamente a los usos admitidos podrán quedar depositados hasta su aplicación en las cuentas corresponsales en el exterior de entidades financieras locales y/o en cuentas locales en moneda extranjera de entidades financieras locales.

En caso de que la aplicación no hubiese tenido lugar al momento del vencimiento del plazo para la liquidación de divisas del correspondiente permiso, el exportador podrá solicitar a la entidad encargada del seguimiento del permiso que el plazo sea ampliado hasta la fecha en que se estima se efectuará la aplicación.

7.10.4. Los casos previstos en el punto 1) del artículo 8° bis incorporado por el Decreto 836/21 al Decreto 234/21, podrán aplicar durante 2 (dos) años calendario consecutivos por cada año calendario en que no se hiciera uso del beneficio, hasta el 40% (cuarenta por ciento) del valor de los permisos embarcados durante los años en que se haga uso del beneficio ampliado, en la medida que el monto anual aplicado no supere el equivalente al 40% (cuarenta por ciento) del monto bruto de las divisas ingresadas para financiar el desarrollo del proyecto que genera las exportaciones aplicadas.

Se podrá acceder a la opción indicada en el párrafo precedente una vez transcurrido el segundo año calendario desde el primer ingreso de divisas que dan inicio al proyecto. Dicho plazo podrá computarse como parte del período de no utilización que da lugar al uso del beneficio ampliado.

Adicionalmente a lo previsto en el primer párrafo del punto 7.10.3. los fondos también podrán permanecer en cuentas bancarias de entidades financieras del exterior que no estén constituidas en países o territorios donde no se aplican o no se aplican suficientemente las recomendaciones del Grupo de Acción de Financiera Internacional.

7.10.5. Los casos previstos en el punto 2) del artículo 8° bis incorporado por el Decreto 836/21 al Decreto 234/21, podrán aplicar durante 2 (dos) años calendario consecutivos por cada año calendario en que no se hiciera uso del beneficio, hasta el 60% (sesenta por ciento) del valor de los permisos embarcados durante los años en que se haga uso del beneficio ampliado, en la medida que el monto anual aplicado no supere el equivalente al 60% (sesenta por ciento) del monto bruto de las divisas ingresadas para financiar el desarrollo del proyecto que genera las exportaciones aplicadas.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

Se podrá acceder a la opción indicada en el párrafo precedente una vez transcurrido el segundo año calendario desde el primer ingreso de divisas que dan inicio al proyecto. Dicho plazo podrá computarse como parte del período de no utilización que da lugar al uso del beneficio ampliado.

Adicionalmente a lo previsto en el primer párrafo del punto 7.10.3. los fondos también podrán permanecer en cuentas bancarias de entidades financieras del exterior que no estén constituidas en países o territorios donde no se aplican o no se aplican suficientemente las recomendaciones del Grupo de Acción de Financiera Internacional.

7.10.6. En caso de tratarse de operaciones comprendidas en el régimen de fomento de inversión para las exportaciones (Decreto 234/21) que también encuadran en lo previsto en el punto 7.9., los exportadores podrán utilizar los mecanismos previstos en dicho punto en adición a lo previsto en los puntos 7.10.1. y 7.10.3.

Cuando la utilización de los mecanismos del punto 7.9. redunde en un monto que exceda lo previsto en el presente punto, la entidad encargada del seguimiento deberá tomar los montos en exceso a cuenta, y oportunamente descontarlos, de los beneficios que le correspondan al cliente por el presente punto en futuros períodos hasta alcanzar un monto equivalente al exceso registrado.

7.11. **Financiaciones asociadas a importaciones de bienes habilitadas para la aplicación de cobros de exportaciones de bienes.**

7.11.1. Se admitirá la aplicación de divisas de cobros de exportaciones de bienes a la cancelación de vencimientos de capital e intereses de las siguientes operaciones:

7.11.1.1. Financiaciones comerciales por la importación de bienes otorgadas por el proveedor del exterior.

Estas financiaciones podrán, si las partes así lo acuerdan, contar con garantías de entidades financieras locales o del exterior, agencia oficial de crédito a la exportación del exterior u otros.

7.11.1.2. Financiaciones comerciales por la importación de bienes donde los desembolsos en divisas se aplicaron, neto de gastos, directa e íntegramente a pagos anticipados, a la vista y/o diferidos al proveedor del exterior y/o a pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada, que hayan sido otorgados por:

i) una entidad financiera del exterior o agencia oficial de crédito a la exportación del exterior.

ii) una entidad financiera local a partir de una línea de crédito de una entidad financiera del exterior.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.11.1.3. Préstamos financieros otorgados por contrapartes vinculadas al cliente en los cuales los desembolsos en divisas se aplicaron directa e íntegramente a pagos anticipados, a la vista y/o diferidos de importaciones de bienes al proveedor del exterior y/o a pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada.

7.11.1.4. Préstamos financieros otorgados por los acreedores referidos en los puntos 7.11.1.2. y 7.11.1.3. que son liquidados en el mercado de cambios y que simultáneamente fueron utilizados para concretar pagos anticipados, a la vista y/o diferidos de importaciones de bienes al proveedor del exterior y/o al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada.

7.11.1.5. Emisiones de títulos de deuda con registro público en el exterior o con registro público en el país denominados en moneda extranjera que contemplen que sus servicios serán pagaderos en el país o en el exterior, en la medida que:

   i) la emisión se haya concretado a partir del 21/09/23 y los fondos hayan sido suscriptos totalmente en el exterior.

   ii) el título no registre vencimientos de capital como mínimo por 2 (dos) años.

   iii) la totalidad de los fondos obtenidos se hayan aplicado en un plazo de 120 (ciento veinte) días corridos de su recepción para concretar pagos anticipados y/o a la vista y/o diferidos de importaciones de bienes al proveedor del exterior y/o los pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada.

7.11.1.6. Emisiones de títulos de deuda con las características previstas en el punto 7.11.1.5. y que cumplan las condiciones enunciadas los incisos i) y ii), que hayan sido liquidadas en el mercado de cambios y simultáneamente utilizadas para concretar pagos anticipados y/o a la vista y/o diferidos de importaciones de bienes al proveedor del exterior y/o pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada.

7.11.2. La aplicación de las divisas a las operaciones señaladas será admitida en la medida que se verifiquen la totalidad de las siguientes condiciones:

7.11.2.1. La fecha de origen de la financiación haya tenido lugar a partir del 19/05/23 para las operaciones de los puntos 7.11.1.1. a 7.11.1.4. y a partir del 21/09/23 para las operaciones de los puntos 7.11.1.5. y 7.11.1.6.

Cuando quien financia es el propio proveedor en el exterior de los bienes se tomará como fecha de origen aquella en la que se cumplió la condición de compra pactada. En tanto, se tomará la fecha en que el proveedor del exterior recibió los fondos cuando los pagos son realizados en forma directa desde el exterior por quien financia.

| Versión: 4a. | COMUNICACIÓN "A" 8191 | Vigencia: 11/02/2025 | Página 25 |
|---|---|---|---|

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.11.2.2. En caso de que la fecha de origen de la financiación haya tenido lugar hasta el 12/12/23 se deberá verificar que:

i) el importador haya demostrado que a la fecha de origen de la financiación contaba con una declaración SIRA en estado "SALIDA" o "CANCELADA" para los bienes comprendidos en la operación y que los bienes no corresponden a las posiciones arancelarias comprendidas en el punto 12.2. del Anexo de la Comunicación A 7914.

ii) si existiesen fondos destinados al pago de fletes de importaciones de bienes no incluidos en la condición de compra se deberá demostrar que a la fecha de origen de la financiación contaba con una declaración SIRASE en estado "APROBADA".

Para las operaciones comprendidas en los puntos 7.11.1.2. a 7.11.1.6. lo requerido respecto a las declaraciones SIRA o SIRASE resulta aplicable al momento en que se concreta el pago al proveedor de bienes o de servicios de fletes, según corresponda.

7.11.2.3. El importador haya demostrado el registro de ingreso aduanero de los bienes por un valor equivalente al monto total de la financiación que pretende ser cancelada con este mecanismo. A los efectos del valor de los bienes podrá tomarse en todo concepto que forme parte de la condición de compra pactada registrada en la factura emitida por el proveedor del exterior.

Si existiesen fondos destinados al pago de fletes de importaciones de bienes no incluidos en la condición de compra y el importador demostró el registro de ingreso aduanero de los bienes cuyos fletes se abonaron, también se podrá computar el valor de los fletes que consten en la documentación de transporte asociada al registro de ingreso aduanero de los bienes.

En el caso de operaciones comprendidas en el punto 7.11.1.6. también se admitirá la cancelación de intereses a partir de la fecha en que se complete el ingreso de la financiación, sin necesidad de contar en ese momento con el registro de ingreso aduanero de los bienes.

7.11.2.4. Las financiaciones de los puntos 7.11.1.1. a 7.11.1.4. no tengan vencimientos de capital y/o intereses hasta que hayan transcurrido 240 (doscientos cuarenta) días corridos desde el registro de ingreso aduanero de los bienes y las financiaciones de los puntos 7.11.1.5. a 7.11.1.6. no registren vencimientos de capital durante los primeros 2 (dos) años desde su emisión.

7.11.2.5. El vencimiento final tenga lugar, como mínimo, una vez transcurrido 365 (trescientos sesenta y cinco) días corridos desde el registro de ingreso aduanero de los bienes para las financiaciones de los puntos 7.11.1.1. a 7.11.1.4. y los 2 (dos) años desde la emisión para las financiaciones de los puntos 7.11.1.5. a 7.11.1.6.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

7.11.2.6. El monto acumulado de los vencimientos de capital en ningún momento superará el monto que surge de computar el equivalente a un quinto del valor total del capital financiado por cada mes calendario a partir del octavo mes del registro de ingreso aduanero.

7.11.2.7. Los cobros por aplicarse correspondan a exportaciones de bienes concretadas con posterioridad al registro de ingreso de los bienes.

En el caso de operaciones comprendidas en el punto 7.11.1.6. también se admitirá la cancelación de intereses mediante la aplicación de cobros de exportaciones de bienes concretadas a partir de la fecha en que se completó el ingreso de la financiación.

7.11.2.8. El importador haya nominado una entidad financiera local para realizar el seguimiento de la operación en el marco del "Seguimiento de anticipos y otras financiaciones de exportación de bienes", la cual deberá registrar ante el BCRA que el importador ejerció la opción de enmarcar la financiación en el esquema de este mecanismo.

La entidad deberá verificar los requisitos habituales a los efectos de certificar la aplicación de divisas a la cancelación de la financiación.

7.11.3. La entidad financiera encargada del "Seguimiento de anticipos y otras financiaciones de exportación de bienes" de las operaciones que queden comprendidas en el punto 7.11.1. deberá concretar su registro ante el BCRA a través del régimen informativo de operaciones de cambios (RIOC).

En el caso de pagos concretados a partir de financiaciones de entidades financieras locales o acreedores del exterior liquidados en el mercado de cambios, la utilización de este mecanismo deberá constar tanto en el boleto de compra que refleja la liquidación del cliente como en el boleto de venta por el correspondiente pago de importaciones de bienes.

En el caso de financiaciones propias del proveedor o aquellas que impliquen pagos directos al proveedor por parte del acreedor del exterior, a los efectos del registro ante el BCRA, deberán confeccionarse dos boletos sin movimiento de fondos con las siguientes características:

7.11.3.1. El boleto de compra se confeccionará por un código de concepto que identifique que se trata de una financiación comprendida en el mecanismo del punto 7.11.1., debiendo dejar constancia de la identificación del acreedor y asignar un número de identificación (número APX) que permitirá la incorporación al mencionado seguimiento.

7.11.3.2. El boleto de venta se confeccionará con el código de concepto que refleje el tipo de pago de importaciones de bienes que se efectúa, dejando constancia que el pago se concreta por el presente mecanismo.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 7. Cobros de exportaciones de bienes. |

En caso de pagos con registro de ingreso aduanero se deberá contar con la correspondiente certificación de la entidad encargada del seguimiento de pago de importaciones de bienes (SEPAIMPO). En el caso de pagos con registro de ingreso aduanero pendiente la operación quedará incorporada al correspondiente seguimiento previsto en el punto 10.5., siendo aplicables los plazos normativos generales para demostrar el registro de ingreso aduanero de los bienes.

7.11.3.3. Los boletos deberán ser registrados en la fecha en que se originó la financiación, independientemente de cuál sea el momento en que el cliente solicita su registro ante la entidad financiera.

Si existiesen fondos de las operaciones contempladas en los puntos 7.11.1.2. a 7.11.1.6. destinados al pago en forma directa al proveedor de servicios de fletes de importaciones de bienes no incluidos en su condición de compra pactada, a los efectos del registro de la operación ante el BCRA en los términos previstos en el presente punto, las entidades deberán realizar el correspondiente boleto de venta dejando constancia del pago de tales fletes.

7.11.4. El requisito de ingreso y liquidación de las divisas de las financiaciones contempladas en los puntos 7.11.1.1., 7.11.1.2., 7.11.1.3. y 7.11.1.5., cuando resulte aplicable, se considerará cumplimentado en la medida que se demuestre el registro de ingreso aduanero de bienes por un valor equivalente a la financiación recibida.

7.11.5. Por las emisiones de títulos de deudas comprendidas en los puntos 7.11.1.5. y 7.11.1.6. se admitirá que los fondos originados en el cobro de exportaciones de bienes y servicios del deudor sean acumulados en cuentas del exterior y/o el país destinadas a garantizar la cancelación de los vencimientos de la deuda emitida.

Esta opción estará disponible hasta alcanzar el 125% (ciento veinticinco por ciento) del capital e intereses a abonar en el mes corriente y los siguientes seis meses calendario, de acuerdo con el cronograma de vencimientos de los servicios acordados con los acreedores, debiendo los fondos excedentes ser ingresados y liquidados en el mercado de cambios dentro de los plazos previstos en las normas generales en la materia.

En caso de que la fecha hasta la cual los cobros deben permanecer depositados en virtud de lo exigido en el contrato del financiamiento fuese posterior al vencimiento del plazo para la liquidación de divisas, el exportador podrá solicitar que este plazo sea ampliado hasta el quinto día hábil posterior a dicha fecha.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

## 8.1. Operaciones comprendidas.

Este seguimiento comprende a todas las exportaciones de bienes cuya oficialización se haya concretado a partir del 02/09/19 y que hayan obtenido el pertinente cumplido de embarque aduanero, excepto las operaciones aduaneras que se detallan en el punto 8.5.17.

Independientemente de que una exportación sea considerada como exceptuada del seguimiento, si el exportador recibiera cobros por tal exportación, éstos también se encontrarán alcanzados por la obligación de ingreso y liquidación de divisas.

## 8.2. Entidad nominada por el exportador.

Por cada operación de exportación, el exportador deberá seleccionar una entidad como responsable de su seguimiento. La designación de la entidad será inicialmente efectuada por el exportador al momento de realizar la oficialización del permiso de embarque ante la Agencia de Recaudación y Control Aduanero (ARCA).

En caso de que el exportador no hubiera realizado la nominación en ese momento, el mismo deberá presentarse ante la entidad que desea designar y acordar la asunción de dicha tarea por parte de ella. La entidad deberá informar la asunción al BCRA.

Serán elegibles para el exportador, quedando obligadas a llevar a cabo las responsabilidades asociadas al presente seguimiento, todas las entidades financieras y casas de cambio salvo aquellas que hayan notificado al BCRA que han optado por no operar en comercio exterior.

El exportador podrá modificar la entidad encargada del seguimiento en los siguientes casos:

8.2.1. A voluntad, en la medida que no se haya producido el vencimiento del plazo previsto para la liquidación de los cobros del permiso.

8.2.2. Cuando la entidad nominada por el exportador haya optado por no operar en comercio exterior y su última operación de ese tipo sea previa a la fecha de oficialización del permiso de embarque involucrado.

En tales casos, la entidad a cargo del seguimiento deberá notificarle la voluntad del exportador a la nueva entidad. La constancia de aceptación por parte de esta última liberará a la entidad previa de sus obligaciones hacia adelante.

## 8.3. Información de las destinaciones de exportación a disposición de las entidades.

El sistema SECOEXPO dispuesto por el BCRA permitirá que la entidad tome conocimiento de los permisos de embarque para los cuales ha sido designada por un exportador.

A través de dicho sistema, las entidades tendrán acceso a la información disponible en ARCA que resulte pertinente a los efectos de cumplimentar sus responsabilidades como entidad nominada para el seguimiento de un permiso de embarque.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

Si el exportador considera que existen errores en la forma en que un permiso de embarque ha sido reportado en el sistema SECOEXPO, deberá tramitar la correspondiente rectificación directamente ante la ARCA.

La entidad podrá considerar rectificada la información cuando ella se refleje en el SECOEXPO o cuando la entidad disponga de documentación emitida por la ARCA en la cual se indique expresamente que dicho organismo considera válidos los datos indicados por el exportador en su pedido de rectificación.

8.4. Responsabilidades de la entidad nominada para el seguimiento del permiso.

8.4.1. Determinación del monto a ingresar y liquidar.

La entidad calculará el monto alcanzado por la obligación a partir de la información disponible en el sistema SECOEXPO y la documentación comercial aportada por el exportador. Además, deberá verificar que esta última documentación resulte consistente con los registros aduaneros, considerando las normas de declaración aduanera aplicables.

El monto en divisas a ingresar y liquidar por una exportación estará determinado por el valor FOB de la mercadería registrado en la Aduana más el valor de los demás conceptos incluidos en el precio según la condición de venta pactada con el comprador de los bienes.

Dado que la documentación comercial resulta imprescindible para establecer fehacientemente el valor alcanzado por la obligación de ingreso y liquidación, su presentación por parte del exportador y la verificación de su consistencia con los datos en los registros aduaneros son requisitos excluyentes para que la entidad pueda otorgar una certificación de cumplido para el permiso.

8.4.2. Determinación del plazo para el ingreso y liquidación de las divisas.

La entidad deberá determinar el plazo aplicable a cada exportación a partir de lo dispuesto en el punto 7.1.1.

En el caso de que una exportación esté compuesta por distintos productos, el plazo aplicable será aquel que representa una mayor proporción del valor FOB total de la exportación.

La fecha de vencimiento que le corresponde a una exportación será aquella resultante de sumar el plazo aplicable a la fecha de cumplido de embarque otorgada por la Aduana. Si la fecha resultante fuese un día no hábil, el vencimiento se trasladará al primer día hábil siguiente.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | |
|---|---|
| | EXTERIOR Y CAMBIOS |
| B.C.R.A. | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

En caso de que exista una ampliación del plazo para un producto, el nuevo plazo se aplicará tanto a las exportaciones embarcadas a partir de la vigencia de la ampliación como a las embarcadas previamente cuyo plazo para ingresar y liquidar no se encontrase vencido a ese momento. En tanto en caso de existir una reducción del plazo vigente, el plazo reducido sólo regirá para las operaciones que se oficialicen a partir de la vigencia del nuevo plazo.

8.4.3. Registro de las imputaciones al seguimiento del permiso.

La entidad encargada del seguimiento de un permiso de embarque deberá registrar los montos imputados al mismo por alguna de las siguientes modalidades admitidas:

8.4.3.1. Cobros de exportaciones de bienes registrados en el mercado de cambios.

En el caso de no haber dado curso a la operación en el mercado de cambios, la entidad deberá contar con una certificación de liquidación emitida por aquella que lo hizo o, en su defecto, una certificación de la utilización de las excepciones de liquidaciones previstas en los puntos 2.6. y 2.7.

En el caso de que se haya encuadrado la operación en la excepción prevista en el punto 2.6., la entidad deberá adicionalmente contar con documentación que demuestre que por el monto a imputar al cumplimiento del permiso se registraron transferencias en moneda extranjera desde la "Cuenta especial para el régimen de fomento de la economía del conocimiento. Decreto 679/22" por el pago de las remuneraciones de personal en relación de dependencia.

8.4.3.2. Aplicación de las divisas provenientes del cobro de la exportación de bienes admitidos por esta normativa.

La entidad deberá contar con una certificación de aplicación emitida por la encargada del seguimiento de la operación a cuya cancelación se aplicaron las divisas.

8.4.3.3. Otras imputaciones admitidas en el cumplimiento del seguimiento.

La entidad encargada del seguimiento será la responsable de constatar el cumplimiento de las condiciones y requisitos previstos en cada una de las situaciones consideradas en el punto 8.5.

Cuando se considere parcial o totalmente cumplimentado el seguimiento de un permiso de embarque por aplicaciones y/o por las situaciones consideradas en el punto 8.5., la entidad deberá reportarlo al BCRA dentro de los 5 (cinco) días hábiles de convalidada la imputación por parte de ella.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.4.4.  Emisión de la certificación de cumplido.

La entidad deberá emitir una certificación de cumplido para aquellas destinaciones de exportación a consumo que acumularon imputaciones admitidas hasta alcanzar el total del monto a ingresar y liquidar.

La certificación de cumplido, además de ser requerida a los efectos cambiarios, dará lugar a la liberación de pagos a cargo de la ARCA dentro de la normativa aplicable en materia aduanera y fiscal.

8.4.5.  Denuncia de incumplido.

La entidad encargada del seguimiento deberá realizar la denuncia de incumplido para un permiso cuando habiéndose producido el vencimiento del plazo previsto por la normativa vigente no se hayan verificado las condiciones requeridas para la remisión de la certificación de cumplido del permiso.

La entidad deberá realizar la denuncia dentro de los 10 (diez) días hábiles contados a partir de la fecha de vencimiento del plazo para la liquidación de las divisas del permiso.

En caso de que la entidad hubiera sido notificada a través del sistema SECOEXPO sobre su responsabilidad en el seguimiento de un permiso con posterioridad al vencimiento del plazo para liquidar divisas que le corresponde, el plazo para realizar la denuncia se contará a partir de la fecha en que tomó conocimiento de su responsabilidad sobre el permiso.

8.4.6.  Actualización y cierre de la denuncia de incumplido.

La entidad deberá notificar cualquier modificación en la situación de un permiso de embarque que fuera previamente reportado como incumplido por ésta.

En particular, en caso de certificar el cumplido del permiso, deberá reportar también el cierre del incumplido consignando el número de cumplido asignado por la entidad al permiso, la fecha en que se completó el ingreso de las divisas y detallando todos los movimientos que han permitido a la entidad considerarlo cumplido.

El cierre del incumplido deberá realizarse dentro de los 5 (cinco) días hábiles de remitida la certificación de cumplido.

8.4.7.  Certificación de "Incumplido en gestión de cobro".

Cuando la entidad encargada del seguimiento constate que se verifican las condiciones previstas en el punto 7.6., adicionalmente a la denuncia de incumplido, deberá remitir al BCRA la certificación de "Incumplido en gestión de cobro" para el permiso.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

En caso de que hubiese correspondido considerar a un permiso de embarque como "Incumplido en gestión de cobro" y dicha condición no hubiese sido reportada al BCRA con anterioridad a la remisión del cumplido del permiso, la entidad financiera deberá realizar las rectificaciones necesarias para que tal situación quede debidamente registrada en el seguimiento.

8.4.8.  Ampliaciones de plazo de vencimiento del permiso.

La entidad encargada del seguimiento deberá reportar cuando otorgue extensiones del plazo de liquidación en las circunstancias previstas en el punto 7.5.

8.5.  Otras imputaciones admitidas en el cumplimiento del seguimiento.

La entidad podrá considerar cumplimentado parcial o totalmente el seguimiento de un permiso de embarque cuando cuente con los elementos que le permitan considerar que la operación se encuentra en alguna de las situaciones detalladas a continuación y se verifiquen las condiciones previstas en cada caso.

La documentación utilizada para certificar el concepto y monto de las divisas imputado en cada caso deberá quedar archivada en la entidad a disposición del BCRA.

8.5.1.  Conceptos incluidos en el valor FOB en Aduana que no forman parte de la condición de venta pactada.

Por el valor que corresponda a conceptos que constan en el valor FOB declarado ante la Aduana en cumplimiento de las normas aduaneras y que no forman parte de la condición de venta acordada entre las partes en el caso de exportaciones realizadas bajo las condiciones de venta EXW (en fábrica), FAS (franco al costado del buque) o FCA (franco transportista – libre transportista).

Este mecanismo también será aplicable por el valor de los gastos que consten como dato complementario "GTOSANT736CA" en los casos de exportaciones de bienes en las que los gastos comprendidos en el precio FOB pactado con el importador del exterior no incluyan la totalidad de los gastos efectivamente incurridos hasta el lugar determinado por el art. 736 del Código Aduanero –dato complementario "LUGAR ART736CA"–.

El ingreso de divisas correspondiente a los gastos de transporte locales incurridos por el comprador hasta el lugar determinado por el citado art. 736 se rige, en su caso, por las normas correspondientes a una exportación de servicios.

8.5.2.  Gastos bancarios asociados a la ejecución del cobro.

Por el valor equivalente a los gastos debitados por las entidades financieras del exterior intervinientes, según los usos y costumbres de las operaciones bancarias asociadas al cobro de la exportación y/o financiación de la misma.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.3. Exportaciones que por su naturaleza no son susceptibles de generar un contravalor en divisas.

Por el valor de los bienes que la entidad podrá considerar, a partir de la descripción y la documentación de la operación aportadas por el exportador, que corresponden a una exportación de bienes que por su naturaleza no resulta susceptible de generar un contravalor en divisas, cuando se cumplan todas las siguientes condiciones:

8.5.3.1. En el permiso de embarque conste que la exportación de los bienes involucrados se oficializó bajo la ventaja aduanera "EXPONOTITONEROSO".

Si el exportador hubiese omitido incorporarlas al momento de la oficialización, esta condición también podrá considerarse satisfecha cuando el exportador acredite que se ha solicitado ante la ARCA la rectificación del permiso con el objeto de incorporar alguna de las ventajas indicadas.

8.5.3.2. En la documentación comercial asociada a la operación conste que la propiedad de los bienes involucrados ha sido entregada a título gratuito.

8.5.3.3. La entidad interviniente cuente con una declaración jurada del exportador en la cual se describa en forma precisa la operatoria por la cual se entregó la propiedad de los bienes al no residente y se detallen los motivos que justifican que la misma sea considerada como una operación que por su naturaleza no resulta susceptible de generar un contravalor en divisas.

8.5.3.4. En la medida que el monto a imputar al permiso por este mecanismo supere el equivalente a USD 25.000 (dólares estadounidenses veinticinco mil), la entidad deberá contar con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

8.5.4. Reembarco de bienes desde zonas francas nacionales (subrégimen ZFRE).

Por el valor de los bienes reembarcados desde zonas francas nacionales en la medida que cuente con una declaración jurada del exportador en la cual identifique el documento de ingreso a una zona franca nacional (ZFI) asociado a los bienes exportados y la correspondiente certificación de afectación emitida por el entidad encargada del seguimiento del ZFI en el SEPAIMPO (Sección 11.).

8.5.5. Reexportación de mercadería ingresada al Régimen de aduana en factoría (RAF) y no utilizada (subrégimen RR01).

Por el valor de la reexportación de mercaderías no utilizadas que fueron ingresadas por el Régimen de aduana en factoría (Resolución General 1673/04 de la AFIP) que se registra mediante el subrégimen RR01 en la medida que cuente con una declaración jurada del exportador en la cual identifique el documento de ingreso al RAF (DIR) asociado a los bienes reexportados y la correspondiente certificación de afectación emitida por la entidad encargada del seguimiento del DIR en el SEPAIMPO (Sección 11.).

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.6.  Mercadería rechazada total o parcialmente en destino y reimportada.

Por hasta el monto proporcional a la relación entre el monto FOB total en divisas que figura en el despacho de reimportación de los bienes y el monto FOB total en divisas de la exportación que fue rechazada.

La entidad deberá contar con la correspondiente certificación de afectación emitida por la entidad encargada del seguimiento en el SEPAIMPO (Sección 11.) del despacho por la cual se produjo la reimportación de la mercadería exportada.

En caso de haberse imputado cobros de exportaciones y/o aplicaciones de divisas al permiso original por la porción de la mercadería rechazada y posteriormente reimportada, el monto que surge de la utilización de este mecanismo podrá ser imputado al embarque por el cual se enviaron los bienes en reemplazo de la mercadería rechazada.

8.5.7.  Exportaciones que incorporan bienes importados temporalmente sin uso de divisas.

Por el valor de los bienes importados temporalmente sin uso de divisas que fueron incorporados en el valor de los bienes exportados mediante los subregímenes EC03 (Exportación a consumo con despacho de importación temporaria (DIT) con transformación), EG03 (Exportación a consumo con DIT con transformación Gran Operador), EC04 (Exportación a consumo con DIT ingresada para transformación egresado sin transformación) o EG13 (Exportación para Consumo con DIT con Transformación Gran Operador con Autorización) en la medida que la entidad cuente con:

8.5.7.1.  Factura de exportación por el monto neto entre el valor del permiso de embarque y el valor de los insumos importados temporalmente sin giro de divisas que se cancelan.

8.5.7.2.  Factura o factura proforma del proveedor del bien importado temporariamente, por el monto del despacho a plaza correspondiente, en la que conste que el bien fue enviado sin cargo.

8.5.7.3.  La certificación de afectación emitida por la entidad encargada del seguimiento en el SEPAIMPO (Sección 11.) del despacho de importación temporal para transformación por la cual se produjo el registro de ingreso aduanero de la mercadería exportada.

8.5.8.  Faltantes, mermas y deficiencias registrados en los permisos de embarque.

Por el valor que se correspondan las deducciones en el precio acordadas con el cliente del exterior originadas en diferencias entre las cantidades o volúmenes de bienes embarcados y los arribados a destino o en el arribo de bienes defectuosos o que no cumplían las condiciones de calidad previstas.

En aquellos casos en que el importador original de la mercadería haya rechazado los bienes en virtud de la existencia de deficiencias y el exportador haya revendido la mercadería a otro comprador del exterior a un valor menor, se podrá imputar el monto que surge de la diferencia entre el monto facturado a ambos compradores.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

Si el monto total a imputar al permiso no supera el equivalente de USD 25.000 (veinticinco mil dólares estadounidenses), será suficiente que la entidad cuente con la declaración jurada del exportador y copia certificada de la documentación intercambiada con el importador, de la cual surja el concepto y el monto no ingresado.

En caso de que el monto a imputar sea superior al valor indicado, la entidad deberá contar con documentación adicional que le permita certificar el carácter genuino de la operación y que el monto no ingresado corresponde a los conceptos señalados.

En caso de haberse imputado cobros de exportaciones y/o aplicaciones de divisas al permiso original por la porción faltante de los bienes, con mermas y/o deficiencias, el monto que surge de la utilización de este mecanismo podrá ser imputado al embarque por el cual se enviaron los bienes en reemplazo de aquellos con problemas.

8.5.9. Bienes exportados temporalmente cuya reimportación no resulta razonable por pérdida de valor.

Por el valor de los bienes que fueron exportados temporariamente, con o sin transformación, cuya reimportación al país no resulte razonable ante la pérdida del valor de los bienes exportados por su grado de deterioro o por no ser posible su reparación.

La entidad deberá contar con una declaración jurada del exportador indicando que por los bienes no reimportados no ha recibido ni recibirá algún tipo de contraprestación y con la documentación técnica que le permita certificar la pérdida de valor comercial y/o destrucción de ellos en el exterior.

En la medida que el monto a imputar al permiso por este mecanismo supere el equivalente a USD 25.000 (veinticinco mil dólares estadounidenses) y no pueda demostrarse la destrucción de los bienes en el exterior, la entidad deberá contar con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

8.5.10. Mercadería siniestrada con anterioridad a la entrega del bien en la condición de compra pactada entre el exportador e importador.

Por el valor de los bienes siniestrados en la medida que la entidad interviniente cuente con la declaración jurada del exportador, la documentación de transporte, la denuncia del siniestro ante la entidad aseguradora y la liquidación del seguro.

De haberse realizado el pago en moneda extranjera, se requerirá certificación de la liquidación del cobro en el mercado de cambios. Si el siniestro fue liquidado en moneda local, copia del resumen de cuenta de depósito en entidad financiera en el cual figure el cobro del siniestro.

En caso de haberse imputado cobros de exportaciones y/o aplicaciones de divisas al permiso original por la porción de los bienes que sufrieron el siniestro, el monto que surja de la utilización de este mecanismo podrá ser imputado al embarque por el cual se enviaron los bienes en reemplazo del bien siniestrado.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.11. Descuentos y gastos de servicios pagaderos en el exterior que consten en la documentación del permiso de embarque.

Por el valor de los descuentos y gastos de servicios pagaderos en el exterior que consten en el permiso de embarque en la medida que la entidad cuente con la declaración jurada del exportador respecto al carácter genuino de la operación y con la documentación de la cual surjan los montos correspondientes.

En la medida que el monto a imputar al permiso por este mecanismo supere el equivalente a USD 25.000 (veinticinco mil dólares estadounidenses), la entidad deberá contar con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

8.5.12. Gastos relacionados con la colocación de los bienes en el exterior y no incorporados en el permiso de embarque.

Por el valor de los gastos directamente relacionados con la colocación de los bienes en el exterior y que no estaban determinados a la fecha de embarque de los bienes, tales como gastos por promociones comerciales y descuentos debitados por el importador acorde a los usos y costumbres de colocación del producto exportado en el país de destino, en la medida que la entidad cuente con la declaración jurada del exportador respecto al carácter genuino de la operación y con la documentación de la cual surjan los montos correspondientes.

En la medida que el monto a imputar al permiso por este mecanismo supere el equivalente a USD 25.000 (veinticinco mil dólares estadounidenses), la entidad deberá contar con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

8.5.13. Multas por demoras del exportador en la entrega de los bienes al importador respecto de los plazos pactados.

Por el valor de las multas aplicadas por el importador por demoras en la entrega del bien en la medida que se cumplan la totalidad de las siguientes condiciones:

8.5.13.1.  la aplicación de las multas está específicamente prevista en el contrato de compraventa internacional celebrado entre las partes,

8.5.13.2.  la firma de dicho contrato sea anterior a la fecha de embarque,

8.5.13.3.  esté acreditada en forma fehaciente, la demora por parte del exportador residente respecto a las condiciones pactadas entre las partes, y

8.5.13.4.  el exportador y el importador no estén vinculados en forma directa o indirecta de acuerdo con lo previsto en el punto 6.6.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.14. Retenciones impositivas en el país de destino.

Por el monto retenido al exportador en el exterior en el caso de que por la normativa tributaria del país de destino de los bienes establezca retenciones impositivas a los pagos a realizar por el importador, en la medida que la entidad cuente con la documentación debidamente certificada que acredite:

8.5.14.1.  la norma tributaria aplicable,

8.5.14.2.  el monto retenido al exportador en el exterior, y

8.5.14.3.  la correspondencia de la retención con el cobro del permiso a imputar.

8.5.15. Imputaciones al complemento de la misma operación de precios revisables o concentrados de minerales.

Por los montos que correspondan a liquidaciones, aplicaciones u otros mecanismos ya imputados al cumplimiento del permiso provisorio que conforma una única operación con el permiso definitivo al que se imputa por este mecanismo, o viceversa, en operaciones de precios revisables o de concentrado de minerales en el marco de la operatoria descripta en el punto 7.8.2.

Asimismo, en caso de que el valor FOB del permiso definitivo resultase inferior al valor FOB del permiso provisorio, también se podrá imputar el monto de la diferencia entre ambos al cumplimiento de este último.

8.5.16. Ingresos liquidados a través de empresas procesadoras de pagos.

Por el monto de las divisas ingresadas y liquidadas por una empresa procesadora de pagos en el mercado de cambios y cuyo producido fue acreditado en cuentas en moneda local a nombre del exportador que sean imputadas al permiso de embarque.

La entidad deberá contar con la certificación de liquidación emitida por la entidad que curso el ingreso y liquidación de los fondos a nombre de la procesadora de pagos.

8.5.17. Operaciones aduaneras exceptuadas del seguimiento.

Por el valor que corresponda a ventajas aduaneras u otras situaciones previstas en el siguiente listado de operaciones:

8.5.17.1.  Régimen de operaciones aduaneras realizadas mediante medios de transporte de guerra, seguridad o policía (artículos 472 al 484 de la Ley 22415).

8.5.17.2.  Régimen de rancho (artículos 506 al 516 de la Ley 22415) en la medida que correspondan a medios de transporte de bandera nacional.

8.5.17.3.  Régimen de pacotilla (artículos 517 al 528 de la Ley 22415).

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 8.  Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.17.4.  Régimen de franquicia diplomática (artículos 529 al 549 de la Ley 22415).

8.5.17.5.  Régimen de muestras (artículos 560 al 565 de la Ley 22415).

8.5.17.6.  Régimen de material promocional (Resolución General AFIP N° 2345/07).

8.5.17.7.  Régimen de equipaje (artículos 488 al 505 de la Ley 22415).

8.5.17.8.  Régimen de exportación para compensar envíos con deficiencias (artículos 573 al 577 de la Ley 22415).

8.5.17.9.  Régimen de envíos de asistencia y salvamento (artículos 581 al 584 de la Ley 22415).

8.5.17.10.  Régimen de corredores de comercio (Resolución ANA N° 122/93).

8.5.17.11.  Régimen de donación de órganos y sangre humana (Resolución ANA N° 384/97).

8.5.17.12.  Régimen de exportación en consignación (mientras permanezca dentro del régimen, según el Decreto N° 637/79).

8.5.17.13.  Régimen de removido (artículos 386 al 396 de la Ley 22415).

8.5.17.14.  Exportaciones del Área Aduanera Especial a las áreas francas nacionales y al resto del territorio de la Nación.

En cuanto a las exportaciones del Área Aduanera Especial al área franca, la exención de ingreso de divisas es procedente en tanto supongan abastecimiento mismo del área franca y no exista ulterior reexportación (a decisión de la Dirección General de Aduanas, según el apartado segundo del art. 12 del Decreto N° 9208/72).

8.5.17.15.  Exportaciones desde el Territorio Nacional Continental al área franca (art. 18 de la Ley 19640).

En cuanto a las exportaciones desde el Territorio Nacional Continental al área franca, la exención de ingreso de divisas es procedente en tanto supongan abastecimiento del área franca y no exista ulterior reexportación (a decisión de la Dirección General de Aduanas, según el apartado primero del art. 17 del Decreto N° 9208/72).

8.5.17.16.  Exportaciones desde el Territorio Nacional Continental al Área aduanera especial –art. 20 a) de la Ley 19640–.

8.5.17.17.  Exportación a consumo con Destinación de Importación Temporaria, sin transformación (subregímenes EC02, EG02 o PER1). Se refiere a la exportación a consumo de bienes que retorna en cumplimiento de una obligación asumida en el régimen de importación temporaria, egresando al exterior en el mismo estado en que se importó.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.17.18. Exportación a consumo de bienes que se encuentran excluidos del Régimen de Equipaje –art. 59 inc. B) del Decreto N° 1001/82–: son aquellos bienes (por ejemplo: automotores, motocicletas, motores dentro o fuera de borda, aeronaves, embarcaciones, etc.) que un residente del país exporta con motivo de su radicación en el exterior.

8.5.17.19. Exportación a consumo de bienes que conforman el equipaje no acompañado del viajero pero que se exportan fuera de los plazos establecidos en el inciso c) apartado 3 del artículo 60 del Decreto N° 1001/82.

8.5.17.20. Exportaciones de bienes enviados al exterior con fines promocionales amparadas por la Resolución de Aduana N° 772/92, hasta un tope de USD 5.000 (cinco mil dólares estadounidenses).

8.5.17.21. Destinaciones suspensivas de exportaciones temporarias (artículos 349 a 373 del Código Aduanero).

8.5.17.22. Exportaciones a zonas francas nacionales.

8.5.17.23. Operaciones de trasbordo (artículos 410 a 416 de la Ley 22415).

8.5.17.24. Operaciones de reembarco consignadas mediante los subregímenes RE01, RE04, RE05, RE06, REP1, REP4 o REP6.

8.5.17.25. Exportación a consumo de automotores de fabricación nacional, sus partes y piezas al amparo de la Ley 19486 y del Decreto N° 5529/72.

8.5.17.26. Las exportaciones de efectos personales que hacen a la profesión u oficio de personas humanas que fijan su residencia en el exterior en la medida que dichas operaciones hayan sido autorizadas por la Aduana.

8.5.17.27. Exportaciones de valores (billetes, monedas, etc.) mediante el régimen EC51.

8.5.17.28. Operaciones aduaneras de los subregímenes "BARA" y "VMI1" en el marco de la operatoria de proveedores de combustibles de medios de transporte.

8.5.18. Cobros locales por exportaciones del régimen de ranchos a medios de transporte de bandera extranjera.

La entidad podrá considerar cumplimentado parcial o totalmente el seguimiento de un permiso de embarque por el valor equivalente a los montos abonados localmente en pesos y/o en moneda extranjera al exportador por un agente local de la empresa propietaria de los medios de transporte de bandera extranjera, en la medida que se verifiquen las siguientes condiciones:

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.18.1. La documentación permite constatar que la entrega de la mercadería exportada se ha producido en el país, que el agente local de la empresa propietaria de los medios de transporte de bandera extranjera ha realizado localmente el pago al exportador y la moneda en la que dicho pago se efectuó.

8.5.18.2. La entidad cuente con una certificación emitida por una entidad en la que conste que el referido agente local hubiera tenido acceso al mercado de cambios por el monto equivalente en moneda extranjera que se pretende imputar al permiso.

La entidad emisora de la mencionada certificación deberá previamente:

i) verificar el cumplimiento de todos los requisitos establecidos por la normativa cambiaria para el acceso al mercado de cambios, con excepción de lo previsto en el punto 3.16.1., y

ii) contar con una declaración jurada del referido agente local en la que conste que no ha transferido ni transferirá fondos al exterior por la parte proporcional de las operaciones comprendidas en la certificación.

8.5.18.3. En caso de que los montos hayan sido percibidos en moneda extranjera en el país, la entidad cuente con la certificación de liquidación de los fondos en el mercado de cambios.

8.5.18.4. El agente local no ha utilizado este mecanismo por un monto superior al equivalente de USD 2.000.000 (dos millones de dólares estadounidenses) en el mes calendario que se imputa.

En todos los casos el mes calendario que se imputa deberá corresponder a aquel que corresponde a la fecha de embarque del permiso o ser posterior a éste.

8.5.19. Exportación comprendida en lo dispuesto en el Decreto N° 443/23 cuya liquidación de divisas requerida fue completada hasta el 30.9.23.

La entidad podrá considerar cumplimentado el seguimiento de un permiso de embarque por el equivalente de hasta el 25% del valor facturado según la condición de venta pactada, en la medida que se verifiquen las siguientes condiciones:

8.5.19.1. la entidad cuenta con documentación que le permite constatar que la operación de exportación queda encuadrada en lo previsto en el Decreto N° 443/23, mediante declaración jurada del exportador.

8.5.19.2. el resto del valor facturado según la condición de venta pactada se ha cumplimentado mediante:

i) cobros de exportaciones de bienes asociados a la operación encuadrada que fueron liquidados por el mercado de cambios hasta el 30.9.23; o

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

ii) la aplicación de divisas a la cancelación de capital o intereses de anticipos, prefinanciaciones y/o posfinanciaciones del exterior asociados a la operación encuadrada que fueron liquidados en el mercado de cambios hasta el 30.9.23; u

iii) otras imputaciones admitidas en el cumplimiento del seguimiento según lo previsto en los puntos 8.5.1. al 8.5.18.

8.5.20. Cobro de exportación percibido luego del embarque no liquidado en virtud de lo dispuesto en los Decretos N° 492/23, 549/23, 597/23 y 28/23.

La entidad podrá considerar cumplimentado el seguimiento de un permiso de embarque por hasta el porcentaje del valor facturado según la condición de venta pactada que, en las condiciones previstas en el Decreto que resulte aplicable a la operación, podía ser canalizado a través de operaciones de compraventa de títulos valores, en la medida que se verifiquen las siguientes condiciones:

8.5.20.1. en el caso de tratarse de una operación encuadrada en el Decreto N° 492/23, la entidad deberá contar con una declaración jurada del exportador en la que conste que la operación encuadra en este Decreto.

8.5.20.2. el exportador haya demostrado que el valor a afectar corresponde a cobros de exportaciones percibidos luego del embarque de los bienes que se destinó a la adquisición de títulos valores con liquidación en moneda extranjera que fueron vendidos con liquidación en moneda local en el país en las condiciones estipuladas en los citados decretos.

En el caso de que la adquisición de títulos valores se haya concretado con liquidación en el país de la moneda extranjera se deberá contar con la certificación de la entidad que cursó la operación de canje y/o arbitraje por el ingreso de las divisas a través del mercado de cambios.

8.5.20.3. el resto del valor facturado según la condición de venta pactada se ha cumplimentado mediante:

i) cobros de exportaciones de bienes asociados a la operación encuadrada que fueron liquidados por el mercado de cambios durante el lapso previsto en los referidos decretos; o

ii) la aplicación de divisas a la cancelación de capital o intereses de anticipos, prefinanciaciones y/o posfinanciaciones del exterior asociados a la operación encuadrada que fueron liquidados en el mercado de cambios durante el lapso previsto en los referidos decretos; u

iii) otras imputaciones admitidas en el cumplimiento del seguimiento según lo previsto en los puntos 8.5.1. al 8.5.18.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 8. Seguimiento de las negociaciones de divisas por exportaciones de bienes (SECOEXPO). |

8.5.21. Exportación alcanzada por los beneficios cambiarios del Régimen de Incentivo a las Grandes Inversiones (RIGI).

A pedido de un cliente que sea Vehículo de Proyecto Único (VPU) adherido al RIGI que haya declarado ante la Autoridad de Aplicación que preveía hacer uso de estos beneficios, la entidad podrá considerar cumplimentado el seguimiento del permiso por hasta el monto equivalente al porcentaje de los cobros de las exportaciones de bienes que resultan de libre disponibilidad para el exportador según lo detallado en los puntos 14.1.1. y 14.1.2., según corresponda.

8.5.22. Exportación alcanzada por los beneficios cambiarios del Régimen de Promoción de Inversión para la Explotación de Hidrocarburos (Decreto 929/13).

A pedido de un cliente que posea un proyecto incluido en el Régimen de Promoción de Inversión para la Explotación de Hidrocarburos establecido por el Decreto 929/13, la entidad podrá considerar cumplimentado el seguimiento de un permiso de embarque por la parte del permiso que se encuentre amparado por un "Certificado DECRETO 929/13" emitido a partir de lo dispuesto por la Resolución 26/23 de la Secretaría de Energía.

## 8.6. Reportes de las entidades en el seguimiento.

Las entidades encargadas del seguimiento deberán cumplimentar los reportes de información que se establezcan en el régimen informativo asociado a este seguimiento.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

**9.1. Operaciones comprendidas.**

9.1.1. Todas las liquidaciones de divisas en el mercado de cambios a partir del 2.9.19 que correspondan a cobros de anticipos, prefinanciaciones u otras financiaciones para las cuales se admita la aplicación de divisas de cobros de exportaciones.

9.1.2. Prefinanciaciones y financiaciones de exportaciones pendientes al 31.8.19 que fueron otorgadas o garantizadas por entidades financieras locales.

9.1.3. Anticipos y prefinanciaciones de exportaciones del exterior pendientes al 31.8.19 que fueron liquidados en el mercado de cambios y para los cuales el exportador solicite su aplicación a permisos de embarque oficializados a partir del 2.9.19.

9.1.4. Anticipos y prefinanciaciones de exportaciones del exterior pendientes al 31.8.19 que no fueron liquidados en el mercado de cambios para los cuales el exportador solicite su aplicación a permisos de embarque oficializados a partir del 2.9.19.

9.1.5. Préstamos financieros con contratos vigentes al 31.8.19 cuyas condiciones prevean la atención de los servicios mediante la aplicación en el exterior del flujo de fondos de exportaciones y para los cuales el exportador solicite su aplicación a permisos de embarque oficializados a partir del 2.9.19.

9.1.6. Endeudamientos financieros con el exterior y títulos de deuda denominados en moneda extranjera con registro público en el país, admitidos en los puntos 7.9. o 7.10.

9.1.7. Aportes de inversión extranjera directa admitidos en los puntos 7.9. o 7.10.

9.1.8. Financiaciones asociadas a importaciones de bienes habilitadas para la aplicación de cobros de exportaciones de bienes contempladas en el punto 7.11.

**9.2. Entidad nominada por el exportador.**

Por cada operación comprendida el exportador deberá seleccionar una entidad como responsable de su seguimiento.

Esta entidad será la única responsable de emitir los certificados de aplicación que habilitan que los cobros de exportaciones puedan ser imputados a los permisos correspondientes.

En el caso de financiaciones otorgadas por entidades financieras locales, el seguimiento estará a cargo de la entidad que otorgó la financiación hasta su cancelación total.

Para las operaciones comprendidas en los puntos 9.1.6. y 9.1.7. el seguimiento quedará a cargo de la entidad nominada en cumplimiento a lo establecido en los puntos 7.9. o 7.10.

En el caso de las operaciones comprendidas en el punto 9.1.8. el seguimiento quedará a cargo de la entidad que, a pedido del exportador y luego de verificar el cumplimiento de los requisitos previstos en el punto 7.11., realizó el registro de la operación ante el BCRA.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

En los restantes casos, el seguimiento quedará inicialmente a cargo de la entidad que dé curso a la liquidación por el mercado de cambios, pudiendo el exportador modificarla posteriormente en la medida que no se hayan registrado aplicaciones de divisas a la cancelación de la misma.

En caso de que el exportador solicite el cambio, la entidad a cargo del seguimiento deberá notificarle la voluntad del exportador a la nueva entidad. La constancia de aceptación por parte de esta última liberará a la entidad previa de sus obligaciones hacia adelante.

9.3. Certificaciones de aplicación de cobros de exportaciones.

A solicitud del exportador, la entidad encargada del seguimiento emitirá las certificaciones de aplicación en la medida que se verifiquen las condiciones previstas en los puntos 9.3.1. al 9.3.13.

La entidad deberá dejar registradas las certificaciones de aplicación emitidas para cada una de las operaciones bajo su seguimiento.

9.3.1. Anticipos y prefinanciaciones del exterior liquidados en el mercado de cambios a partir del 2.9.19 y prefinanciaciones locales.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación del capital e intereses en la medida que se verifiquen las siguientes condiciones:

9.3.1.1. La entidad cuente con documentación que le permita verificar:

i) el carácter genuino de la operación de financiamiento y su concordancia con el tipo de operación declarado;

ii) que el exportador ha cancelado al acreedor con posterioridad al 2.9.19 un monto equivalente al cual se solicita la certificación de aplicación, como consecuencia de la utilización de las divisas correspondientes al permiso indicado;

iii) que, en caso de corresponder, por la operación cancelada se ha dado cumplimiento al "Relevamiento de activos y pasivos externos".

9.3.1.2. Que el monto a certificar por una aplicación a la cancelación del capital sea menor o igual al saldo liquidado pendiente de aplicación que registra la entidad para la operación en cuestión.

En caso de tratarse de una operación del exterior liquidada parcialmente durante la vigencia de los Decretos Nº 492/23, N° 549/23, N° 597/23 y N° 28/23, también se podrá emitir certificaciones por la porción no liquidada en la medida que se verifique lo previsto en el punto 7.3.11.

9.3.1.3. Que el monto de la certificación por una aplicación de intereses u otros conceptos admitidos sea consistente con los pactados para la operación y que reflejen condiciones de mercado.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

La entidad también podrá emitir certificaciones de aplicación con imputación a una operación bajo su seguimiento, en la medida que el exportador demuestre fehacientemente que las divisas del permiso se utilizaron para cancelar la deuda original que fue cedida a otro acreedor externo por el acreedor originalmente declarado, o una renovación de la operación original con el mismo acreedor.

9.3.2. Anticipos y prefinanciaciones del exterior pendientes al 31.8.19 que fueron liquidados por el mercado de cambios.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación del capital e intereses en la medida que en adición a la verificación de las condiciones indicadas en el punto 9.3.1. la entidad cuente con una declaración jurada del exportador detallando el monto pendiente de la deuda al 31.8.19 y las cancelaciones realizadas.

En el caso de que el monto adeudado fuera superior a USD 25.000 (veinticinco mil dólares estadounidenses), la entidad deberá contar adicionalmente con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

9.3.3. Anticipos y prefinanciaciones de exportaciones del exterior pendientes al 31.8.19 no liquidados en el mercado de cambios.

La entidad nominada por el exportador para el seguimiento del conjunto de sus operaciones que encuadran en este punto deberá por cada operación que presente el exportador en adición a la verificación de las condiciones indicadas en el punto 9.3.1. requerir una declaración jurada del exportador detallando el monto pendiente de la deuda al 31.8.19 y las cancelaciones realizadas.

En el caso de que el monto adeudado fuera superior a USD 25.000 (veinticinco mil dólares estadounidenses), la entidad deberá contar adicionalmente con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

La entidad podrá emitir una certificación de aplicación de las divisas a la cancelación del capital e intereses de alguna de estas operaciones sólo en la medida que se verifique alguna de las siguientes situaciones:

9.3.3.1. se cuente con la conformidad previa del BCRA; o

9.3.3.2. el monto acumulado de aplicaciones de capital e intereses emitidas por las operaciones del exportador comprendidas en este apartado no supera el 75 % del valor de las nuevas liquidaciones de anticipos y prefinanciaciones del exterior liquidadas por el exportador en el mercado de cambios a partir del 2.9.19.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

9.3.4. Posfinanciaciones del exterior por descuentos y/o cesiones de créditos a la exportación.

Se podrán emitir las certificaciones de aplicación de las divisas a la cancelación del capital y los intereses que correspondan proporcionalmente al monto liquidado, según surja de la copia de la liquidación efectuada.

En caso de tratarse de una operación liquidada parcialmente durante la vigencia de los Decretos N° 492/23, N° 549/23, N° 597/23 y N° 28/23, también se podrá emitir certificaciones por la porción no liquidada en la medida que se verifique lo previsto en el punto 7.3.11.

Las certificaciones sólo podrán emitirse en la medida que la entidad tenga constancia que el exportador ha sido liberado de sus obligaciones contingentes con el exterior.

9.3.5. Posfinanciaciones de entidades financieras locales por descuentos y/o cesiones.

Se podrán emitir las certificaciones de aplicación de las divisas a la cancelación del capital y/o intereses que correspondan proporcionalmente al monto liquidado, en la medida que en la cuenta de la entidad se hayan acreditado ingresos de divisas que correspondan a:

9.3.5.1. El efectivo cobro de las divisas del embarque que originó el crédito.

9.3.5.2. La cesión sin recurso de la operación en una entidad del exterior.

9.3.5.3. El descuento de la operación en una entidad del exterior, habiendo quedado la entidad local y el exportador liberados de sus obligaciones contingentes con el exterior.

En los últimos dos casos a los efectos de la emisión de la certificación se computará el monto del documento descontado o cedido, según el caso, debiendo la entidad efectuar el correspondiente registro a su nombre por los intereses abonados por el descuento o cesión en el exterior de la operación.

9.3.6. Financiaciones de entidades financieras locales a importadores del exterior.

Se podrán emitir las certificaciones de aplicación por los montos liquidados por el exportador que resulten proporcionales a los montos percibidos por la entidad en concepto de cancelación del capital de la financiación.

9.3.7. Préstamos financieros con contratos vigentes al 31.8.19 cuyas condiciones prevean la atención de los servicios mediante la aplicación en el exterior del flujo de fondos de exportaciones para los cuales el exportador ha solicitado su aplicación a permisos de embarque oficializados a partir del 2.9.19.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación a partir del vencimiento del capital, intereses y otros conceptos admitidos en la medida que, en adición a la verificación de las condiciones indicadas en el punto 9.3.1., la entidad cuente con una declaración jurada del exportador detallando el monto pendiente de la deuda al 31.8.19 y las cancelaciones realizadas.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
|  | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

En el caso de que el monto adeudado fuera superior a USD 25.000 (veinticinco mil dólares estadounidenses), la entidad deberá contar adicionalmente con una certificación de auditor externo en la cual se deje constancia que lo declarado por el exportador resulta consistente con la información que surge de la revisión de los registros contables, extracontables y toda otra documentación adicional aportada.

9.3.8. Endeudamientos financieros con el exterior admitidos en los puntos 7.9. o 7.10.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación del capital, intereses y otros conceptos admitidos, en la medida que verifique las condiciones indicadas en el punto 9.3.1., constate que la cancelación tuvo lugar a partir de la fecha de vencimiento y cuente con la documentación que le permita verificar el cumplimiento de los requisitos establecidos en los puntos 7.9. o 7.10., según corresponda.

9.3.9. Títulos de deuda con registro público en el país denominados en moneda extranjera admitidos en el punto 7.9.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación a partir del vencimiento del capital, intereses y otros conceptos admitidos, en la medida que verifique las condiciones indicadas en el punto 9.3.1., constate que la cancelación tuvo lugar a partir de la fecha de vencimiento y cuente con la documentación que verifican el cumplimiento de los requisitos establecidos en el punto 7.9.

9.3.10. Repatriaciones de aportes de inversión directa de no residentes en empresas que no controlantes de entidades financieras locales admitidas en los puntos 7.9. o 7.10.

La entidad podrá emitir la certificación de aplicación en la medida que la entidad cuenta con la documentación que le permita verificar:

9.3.10.1. el cumplimiento de los requisitos establecidos en los puntos 7.9. o 7.10.;

9.3.10.2. que el accionista no residente que realizó la repatriación recibió un monto equivalente al cual se solicita la certificación de aplicación, como consecuencia de la utilización de las divisas correspondientes al permiso indicado;

9.3.10.3. se han cumplimentado los mecanismos legales previstos en el caso de una reducción de capital y/o devolución de aportes irrevocables realizadas por la empresa local;

9.3.10.4. el pasivo en pesos con el exterior generado a partir de la fecha de la no aceptación del aporte irrevocable o de la reducción de capital según corresponda. Se encuentra declarado en la última presentación vencida del "Relevamiento de activos y pasivos externos", en caso de corresponder;

9.3.10.5. en caso de que se trate de una aplicación en virtud de una operación admitida en el punto 7.9. el monto acumulado de las certificaciones aplicadas no supera el monto del aporte oportunamente ingresado y liquidado en el mercado de cambios.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

9.3.11. Deudas comerciales por la importación de bienes y servicios en el marco de lo previsto en el punto 7.10.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación a partir del vencimiento del capital e intereses admitidos en la medida que verifique las condiciones indicadas en el punto 9.3.1. y cuenta con la documentación que permite verificar el cumplimiento de los requisitos establecidos en el punto 7.10.

En el caso de cancelaciones del capital de deudas comerciales por importaciones de bienes, la entidad deberá contar con la correspondiente certificación de afectación emitida por la entidad encargada del seguimiento en el SEPAIMPO (Sección 11.) del despacho por la cual se produjo el registro de ingreso aduanero de los bienes que originan la deuda.

9.3.12. Utilidades y dividendos en el marco de lo previsto en el punto 7.10.

La entidad podrá emitir las certificaciones de aplicación de las divisas al pago de utilidades y dividendos a accionistas no residentes, en la medida que se cumplan la totalidad de las siguientes condiciones:

9.3.12.1. Las utilidades y dividendos correspondan a balances cerrados y auditados.

9.3.12.2. El monto total abonado por este concepto a accionistas no residentes, incluido el pago cuya aplicación se está solicitando, no supere el monto en moneda local que les corresponda según la distribución determinada por la asamblea de accionistas.

La entidad deberá contar con una declaración jurada firmada por el representante legal de la empresa residente o un apoderado con facultades suficientes para asumir este compromiso en nombre de la empresa.

9.3.12.3. La entidad deberá verificar que el cliente haya dado cumplimiento en caso de corresponder, a la declaración de la última presentación vencida del "Relevamiento de activos y pasivos externos" por las operaciones involucradas.

9.3.13. Financiaciones asociadas a importaciones de bienes habilitadas para la aplicación de cobros de exportaciones de bienes contempladas en el punto 7.11.

La entidad podrá emitir las certificaciones de aplicación de las divisas a la cancelación del capital e intereses en la medida que en adición a la verificación de las condiciones indicadas en el punto 9.3.1., cuente con la documentación que permite verificar el cumplimiento de los requisitos establecidos en el punto 7.11.


9.4. Fecha de aplicación de divisas.

Estará dada por la fecha de efectiva cancelación del concepto al cual se aplicaron las divisas de cobros de exportaciones.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|-------------------|
| | Sección 9. Seguimiento de anticipos y otras financiaciones de exportación de bienes. |

**9.5. Datos mínimos que conforman la certificación.**

La certificación de aplicación deberá contener, como mínimo, la siguiente información: CUIT y denominación del exportador, fecha de emisión de la certificación, permiso de embarque al cual corresponden los cobros aplicados, fecha de aplicación, tipo de operación cancelada, concepto que se canceló (capital y/o interés), moneda y monto de la aplicación imputada al mismo.

Los montos deberán estar expresados en la moneda que oportunamente fue liquidada por el mercado de cambios.

**9.6. Otras circunstancias que reduzcan el monto pendiente de aplicación.**

La entidad deberá también registrar en sus bases de datos cualquier otra circunstancia de la que tome conocimiento y que implique una reducción del monto del capital adeudado y disponible para aplicación, no derivada de la aplicación de cobros de exportación de bienes, como ser: cancelación de prefinanciaciones con aplicación de anticipos, cancelaciones concretadas con la aplicación de servicios, devolución de financiaciones del exterior a través del mercado de cambios, condonación del acreedor, etc.

**9.7. Operaciones cursadas por el Sistema de Monedas Locales (SML).**

En el caso de anticipos cursados por el SML a partir del 2.9.19, la entidad en la cual se le acreditaron los fondos el exportador deberá asumir el "Seguimiento de anticipos y otras financiaciones de exportación de bienes" tomando como monto ingresado el monto en moneda nacional acreditado en la cuenta del exportador. En caso de que se trate de anticipos de exportaciones a Paraguay o a Uruguay facturadas en la moneda del país destino de la exportación, se computará el equivalente en dicha moneda del monto acreditado.

A partir de su incorporación al seguimiento resultarán de aplicación las normas generales en la materia.

**9.8. Cumplimiento del régimen informativo del BCRA.**

La entidad deberá dar cumplimiento a las disposiciones dadas a conocer por el régimen informativo asociado a este seguimiento.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

**10.1. Disposiciones generales.**

Las entidades podrán dar acceso al mercado de cambios para realizar pagos al exterior por importaciones argentinas de bienes y otras compras de bienes cuando se reúnan las condiciones especificadas en estas normas.

Las entidades financieras podrán adicionalmente acceder al mercado de cambios para hacer frente a sus obligaciones con el exterior por garantías o avales otorgados con relación a operaciones de importaciones argentinas de bienes, como para la cancelación de líneas de crédito del exterior que fueron aplicadas a la financiación de importaciones argentinas de bienes en la medida que se cumplan con las condiciones previstas.

Las condiciones especificadas también resultarán aplicables a los pagos por importaciones argentinas de bienes y servicios conexos que puedan ser canalizados por el Sistema de Monedas Locales (SML) por cumplir los requisitos previstos en dicho sistema.

**10.2. Definiciones.**

10.2.1. Pagos de importaciones argentinas de bienes.

Se consideran importaciones argentinas de bienes a aquellas operaciones que cuenten con el correspondiente registro de ingreso aduanero de los bienes ante la Aduana de la República Argentina.

El pago de importaciones de bienes comprende a todo concepto que forme parte de la condición de compra pactada registrada en la factura emitida por el proveedor del exterior.

En esta normativa se distinguen dos tipos de pagos de importaciones argentinas de bienes:

10.2.1.1. Pagos de importaciones que cuentan con registro de ingreso aduanero.

10.2.1.2. Pagos de importaciones de bienes con registro de ingreso aduanero pendiente.

En este último caso, los pagos cursados quedarán sujetos a un seguimiento para verificar que se efectúe el registro de ingreso aduanero de los bienes en los plazos previstos en la normativa.

10.2.2. Registro de ingreso aduanero.

A los efectos de esta norma se considera que una importación de bienes cuenta con el registro de ingreso aduanero cuando el importador realizó la oficialización del despacho de importación para su posterior despacho a plaza de los bienes.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

También se da cumplimiento a dicho registro cuando los bienes son ingresados al país con despacho a plaza a través de Solicitud Particular o Courier o se cumplimentó el trámite aduanero por el ingreso de bienes del exterior a zonas francas nacionales y dicho ingreso se corresponde con una venta de bienes de un no residente a un residente.

No se incluyen los registros aduaneros por importaciones suspensivas de depósitos de almacenamiento ni los ingresos de importaciones temporarias sin giro de divisas.

10.2.3. Condición de compra pactada.

Condición acordada entre las partes que fija el momento en el que se considera cumplida la obligación de entrega de los bienes del exportador al importador, quedando fijados los costos a cargo de cada una de las partes.

10.2.4. Deuda comercial por importación de bienes.

A los efectos del acceso al mercado de cambios, corresponde considerar deudas comerciales por financiaciones de importaciones de bienes a los siguientes endeudamientos:

10.2.4.1. Financiación a cualquier plazo otorgada por el proveedor del exterior.

10.2.4.2. Financiación a cualquier plazo otorgada por una agencia de crédito a la exportación del exterior para financiar la compra de importaciones argentinas de bienes u otras deudas que tengan origen en operaciones de importación en las que el acreedor sea una agencia oficial de crédito a la exportación.

10.2.4.3. Financiación a cualquier plazo otorgada por una entidad financiera del exterior, donde los desembolsos en divisas se aplican, neto de gastos, directa e íntegramente al pago anticipado y/o a la vista y/o diferido al proveedor del exterior.

10.2.4.4. Financiación a cualquier plazo otorgada por una entidad financiera local donde los desembolsos en divisas se aplican, neto de gastos, directa e íntegramente al pago anticipado y/o a la vista al proveedor del exterior.

10.2.4.5. Financiación a plazos no superiores a los 365 (trescientos sesenta y cinco) días corridos desde la fecha de embarque otorgada por una entidad financiera local como complemento de la financiación del exterior.

10.2.4.6. Financiación a cualquier plazo otorgada por una entidad financiera local como complemento de la financiación del exterior contemplada en los puntos anteriores, siempre que la misma sea otorgada con la apertura de una carta de crédito o letras avaladas, o con un crédito aprobado en firme por la entidad, con anterioridad a la fecha de embarque.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

En estos casos, la entidad debe contar con: a) los documentos de embarque dentro de los 50 (cincuenta) días hábiles siguientes a la fecha de embarque; y b) con documentación fehaciente que avale que la fecha de otorgamiento del crédito por la entidad local es anterior a la fecha de embarque del bien.

10.2.4.7. Cuotas pendientes de contratos de alquiler de bienes con opción de reemplazo, compra o devolución.

10.2.4.8. Las operaciones de financiación del exterior otorgadas en las condiciones de los puntos inmediatos precedentes, que registren cambios en el acreedor externo sin que se modifiquen las condiciones financieras de la misma y las restantes cláusulas contractuales del financiamiento original.

10.2.4.9. Las refinanciaciones de cualquiera de las operaciones de los puntos inmediatos precedentes que fueran otorgadas por el acreedor.

Los pagos por deudas originadas en importaciones de bienes que no encuadren como deudas comerciales de importación se regirán por las normas que sean de aplicación para la cancelación de servicios de capital de préstamos financieros.

10.2.5. Proveedor del exterior.

A los efectos de la normativa cambiaria se considerará proveedor del exterior a quien ha emitido o emitirá la factura comercial en el exterior a nombre del comprador residente que accede al mercado de cambios.

Asimismo, las entidades podrán considerar como equivalente a un pago a un proveedor del exterior, a aquellos pagos que se realicen a un beneficiario del exterior distinto de quien emitió la factura comercial, en la medida que cuenten con documentación que le permita acreditar que ambas empresas del exterior forman parte de un mismo grupo económico y que la intervención de ambas en la operación está asociada a cuestiones administrativas y/u operacionales internas de dicho grupo, que son ajenas a la voluntad del importador argentino.

Las entidades también podrán admitir la afectación de bienes remitidos por una empresa distinta de la que fuera beneficiaria del pago sin registro de ingreso aduanero cuando se verifique lo indicado en párrafo precedente.

10.2.6. Sistema de Seguimiento de Pagos de Importaciones (SEPAIMPO).

El sistema de "Seguimiento de Pagos de Importaciones" (SEPAIMPO) permite monitorear los pagos asociados a una oficialización de importación, como así también la demostración del ingreso de los bienes al país con relación a pagos efectuados con anterioridad al registro de ingreso aduanero de los bienes.

El sistema SEPAIMPO incorpora la información de las oficializaciones de importación, las operaciones cursadas por el mercado de cambios asociadas a importaciones de bienes y los datos que deben suministrar al sistema las entidades a cargo del seguimiento de las oficializaciones y de los pagos realizados con anterioridad al registro de ingreso aduanero.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

La entidad nominada por el importador para realizar el seguimiento de las oficializaciones de importación en el marco del SEPAIMPO es la responsable de verificar el cumplimiento de las condiciones estipuladas en la presente normativa que habilitarán el acceso al mercado de cambios y/o la afectación de una oficialización a la regularización de un pago con registro aduanero pendiente

10.2.7. Deuda de entidades financieras por líneas de crédito del exterior aplicadas a la financiación de importaciones de bienes.

Corresponde a la deuda de las entidades financieras locales por la utilización de líneas de crédito del exterior aplicadas a la financiación de importaciones argentinas de bienes y de los servicios contenidos en la condición de compra pactada, en la medida que la misma califique como deuda comercial según lo dispuesto en el punto 10.2.4.

10.2.8. Otras compras de bienes al exterior.

Comprende los siguientes casos:

10.2.8.1. Insumos, equipos y repuestos destinados a la construcción, reparación, mantenimiento o reemplazo de partes de instalaciones de producción y tratamiento de hidrocarburos off shore.

10.2.8.2. Bienes destinados a su venta en tiendas libres de impuestos según régimen de la Ley 22056.

10.2.8.3. Bienes ingresados a depósitos francos habilitados de acuerdo con la Resolución ANA N° 2676/79.

10.2.8.4. Compras de bienes que no pasan por el país y se venden al exterior.

10.3. Pagos de importaciones de bienes que cuentan con registro de ingreso aduanero.

10.3.1. Operaciones comprendidas.

En la medida que corresponda a operaciones que cuenten con el registro de ingreso aduanero quedan comprendidos

10.3.1.1. Pagos contra la presentación de la documentación de embarque.

10.3.1.2. Pagos de deudas comerciales por importaciones de bienes.

10.3.1.3. Cancelación por parte de las entidades financieras de garantías comerciales de importaciones de bienes.

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.3.2.  Requisitos de acceso para el pago de oficializaciones de importación comprendidas en el SEPAIMPO.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de importaciones de bienes que cuentan con registro de ingreso aduanero que constan en el SEPAIMPO, en la medida que verifique previamente la totalidad de los siguientes requisitos:

10.3.2.1.  Certifica en carácter de entidad encargada del seguimiento de la oficialización que se cumplen las condiciones que se enuncian a continuación o cuenta con una certificación para realizar el pago emitida por la entidad que tiene tal responsabilidad

i)  Cuenta con constancia del registro aduanero del ingreso al país de los bienes que originan el pago a cancelarse.

ii)  Cuenta con copia de factura comercial emitida en el exterior a nombre del cliente residente en el país, que efectúa la compra al exterior, donde conste nombre y dirección del emisor, nombre del importador argentino, la cantidad y descripción de la mercadería, condición de venta y valor de la factura.

iii)  Cuenta con copia del Documento de Transporte (Conocimiento de Embarque – Carta de Porte – Guía Aérea).

iv)  Que la información que surge de la factura comercial y del Documento de Transporte sea consistente con la que figura en los registros aduaneros, considerando las normas de declaración aduanera aplicables.

v)  Que la documentación presentada le permita establecer la fecha de vencimiento de la obligación con el exterior por parte del importador o, en su defecto, que la operación no tiene una fecha de vencimiento pactada.

vi)  Que, en caso de tratarse de operaciones financiadas, la documentación presentada le permite calificar a la misma como una deuda por importaciones de bienes según lo dispuesto en el punto 10.2.4.

vii)  Que el total de los pagos realizados con imputación a la oficialización de importación, incluyendo el pago cuyo curso se está solicitando, no supera el monto facturado en la condición de compra pactada.

viii)  Que el beneficiario del pago a realizar sea el proveedor del exterior o, en su caso, la entidad financiera del exterior o la agencia oficial de crédito que financió la compra al proveedor del exterior en la medida que las operaciones encuadren como deuda comercial por importaciones de bienes, o el no residente que compró el crédito al acreedor comercial del exterior y en la medida que no se modifiquen las condiciones en las que se otorgó el crédito.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

ix) Cuenta con constancia de que la operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

x) En el caso de importaciones oficializadas con anterioridad al 01/11/19, cuenta con una declaración jurada consignando el saldo de deuda pendiente a la fecha, firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

10.3.2.2. La venta de las divisas es cursada con débito en cuentas del cliente en entidades financieras locales por alguna de las modalidades de medios de pago vigentes.

10.3.2.3. El pago no se realiza con anterioridad a la fecha de vencimiento de la obligación con el exterior.

Este requisito no resultará aplicable cuando el cliente sea un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) y se cancelen financiaciones comerciales en el marco de lo previsto en el punto 14.2.1.

10.3.2.4. Declaración jurada comprometiéndose a liquidar en el mercado de cambios, dentro de los 20 (veinte) días hábiles de su puesta a disposición, las divisas que pudiera percibir en devolución de pagos de importaciones efectuados con acceso al mercado de cambios. Esta declaración deberá ser firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

10.3.2.5. Si se trata de una importación de bienes con registro de ingreso aduanero a partir del 13/12/23 no comprendida en el punto 10.6.6., la entidad deberá constatar adicionalmente que el pago diferido cumple alguna de las siguientes condiciones:

i) se realiza respetando los plazos detallados en el punto 10.10.1. según el bien importado; o

ii) se realiza antes de los plazos detallados en el punto 10.10.1. en virtud de que la operación encuadra en alguna de las situaciones previstas en el punto 10.10.2.

10.3.2.6. Si se trata de una importación de bienes con registro de ingreso aduanero hasta el 12/12/23, la entidad deberá verificar que la operación encuadra en alguna de las situaciones previstas en el punto 10.11.

Los clientes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el monto de la deuda pendiente de pago por estas operaciones en la medida que se cumplan los requisitos previstos en el punto 4.4.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.3.2.7. En todos los casos la entidad deberá, al momento de dar acceso al mercado de cambios, contar con la convalidación de la situación de la operación en el sistema online implementado por el BCRA a tales efectos.

Los casos que no encuadren en lo expuesto precedentemente quedan sujetos a la conformidad previa del BCRA, debiendo los pedidos ser canalizados por una entidad autorizada a realizar este tipo de pagos.

10.3.3. Requisitos de acceso para pagos de importaciones de bienes ingresadas por Solicitud Particular o Courier que no constan en el SEPAIMPO.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de importaciones de bienes ingresadas por Solicitud Particular o Courier y que no constan en el SEPAIMPO en la medida que verifique previamente que se cumplen la totalidad de los requisitos detallados en el punto 10.3.2., incluyendo aquellos enunciados en el punto 10.3.2.1.

La entidad deberá intervenir, dejando constancia de la fecha y monto pagado al exterior, copia de la "Solicitud Particular" autenticada por el Servicio Aduanero interviniente que demuestre la efectiva nacionalización de los bienes. En dicha documentación, debe constar la identificación de la factura, que permita determinar el detalle y monto de los bienes despachados.

En el caso de operaciones anteriores al 02/09/19, la entidad deberá intervenir la documentación aduanera dejando constancia del monto de deuda pendiente al 31/08/19 declarado por el importador.

10.3.4. Requisitos adicionales para la cancelación de importaciones de material bélico secreto.

La entidad que interviene adicionalmente deberá considerar los siguientes elementos:

10.3.4.1. En el caso de que se hubiera transferido el derecho de disponer de la mercadería en el documento de transporte, con antelación a su importación, factura emitida en el país por la persona humana o jurídica residente que figura como comprador en la factura emitida por el proveedor, donde consta la cantidad y descripción de la mercadería, precio unitario y total y demás requisitos establecidos por la ARCA, emitida a nombre de la persona humana o jurídica residente que factura la venta de los bienes a nombre de la Fuerza Armada o de Seguridad que efectúa el despacho a plaza de los bienes.

10.3.4.2. Copia del documento de salida de zona primaria aduanera.

10.3.4.3. Copia de la Solicitud Particular autenticada por autoridad aduanera competente en la que conste la salida a plaza de los bienes.

10.3.4.4. En la medida que la verificación de la mercadería por parte de la Aduana no conste en la Solicitud Particular, copia del certificado y/o constancia de autorización emitido por la Fuerza Armada o de Seguridad interviniente, dirigida al Servicio Aduanero, en el que consta el detalle de la operación de que se trata, de conformidad a los términos del Decreto 2.921/70.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.3.5.   Pagos de importaciones de bienes ingresadas desde zonas francas con transferencia aduanera de dominio del exportador al importador.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de importaciones de bienes ingresadas desde zonas francas con transferencia aduanera de dominio del exportador al importador en la medida que verifique previamente que se cumplen la totalidad de requisitos detallados en el punto 10.3.2., reemplazando lo requerido en los incisos i), iii) y iv) del punto 10.3.2.1. por lo siguiente:

10.3.5.1.   Se presente el formulario ZFE de oficialización de ingreso de los bienes al país.

10.3.5.2.   Se presente el documento de Transferencia Aduanera de Dominio autorizado por la aduana, del exportador no residente al importador local que registra el ingreso de los bienes al país.

10.3.5.3.   La información que surge de la factura comercial sea consistente con la información que figura en el formulario ZFE del registro de ingreso aduanero, considerando las normas de declaración aduanera aplicables.

10.3.5.4.   Se cuente con la certificación de la entidad a cargo del seguimiento del ZFI de que dicho formulario de registro de ingreso aduanero a zona franca ha sido inhabilitado para la realización de pagos por no corresponder a una venta de un no residente a un residente y de que se ha reportado el ZFE presentado como asociado al ZFI.

La entidad que cursa el pago al exterior deberá intervenir el documento aduanero ZFE correspondiente al ingreso de los bienes al país desde zona franca.

10.3.6.   Pagos de importaciones con cartas de crédito o letras avaladas emitidas u otorgadas por entidades financieras locales.

La entidad tendrá acceso al mercado de cambios para cancelar cartas de crédito o letras avaladas emitidas u otorgadas para garantizar operaciones de importaciones de bienes que tengan el registro aduanero de los bienes, incluso cuando no se cumplan los requisitos establecidos para el acceso del cliente, en la medida que cuente con la documentación que demuestre que, al momento de la apertura o emisión por parte de la entidad, se cumplían las condiciones que resultaban aplicables según la fecha en que se emitió u otorgó la carta de crédito o letra avalada y el tipo de operación garantizada por la entidad.

En el caso de cartas de crédito o letras avaladas emitidas u otorgadas a partir del 13.12.23, la entidad deberá contar con la documentación que demuestre que, al momento de la apertura o emisión, la operación garantizada correspondía a una importación de bienes con registro de ingreso aduanero a partir de dicha fecha y, salvo que la operación quedase comprendida en la situación prevista en el punto 10.10.2.9., que el pago garantizado debía ser concretado por el cliente a partir de la fecha que resultaba de adicionar el plazo en días corridos que le corresponde al bien por el punto 10.10.1. más otros 15 (quince) días corridos a la fecha estimada de arribo de los bienes al país.

| Versión: 7a. | COMUNICACIÓN "A" 8035 | Vigencia: 04/06/2024 | Página 8 |



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Las condiciones aplicables para las cartas de crédito o letras avaladas emitidas u otorgadas hasta el 12/12/23 fueron oportunamente receptadas en el punto 10.3.6. del Anexo de la Comunicación A 7914.

El boleto de venta deberá efectuarse a nombre de la propia entidad en calidad de cliente por el concepto "B14. Cancelación de garantías comerciales de entidades financieras por importaciones de bienes con registro de ingreso aduanero".

10.3.7. Registro cambiario de los pagos de importaciones con registro de ingreso aduanero.

El boleto de cambio de venta se realizará por los conceptos "B06. Pagos diferidos de importaciones de bienes (excepto bienes de capital)", "B14. Cancelación de garantías comerciales de entidades financieras por importaciones de bienes con registro de ingreso aduanero", "B15. Pagos de deudas comerciales por la importación de bienes con agencias oficiales de crédito o una entidad financiera del exterior o que cuente con garantía otorgada por las mismas" o "B22. Pagos diferidos de importaciones de bienes de capital", según corresponda, debiéndose identificar el número de la oficialización del despacho de importación o del documento por el cual se produjo el registro de ingreso aduanero.

Los conceptos mencionados serán aplicables a todo monto pagado que forme parte de la condición de compra pactada registrada en la factura asociada a la oficialización del despacho de importación. Si en el monto total de la transferencia se incluyeran otros conceptos que no forman parte de la condición de compra pactada, se deberán elaborar boletos diferenciados con las formalidades habituales por cada concepto involucrado.

Cuando la concertación de cambio por la venta de divisas para el pago de importaciones a un mismo beneficiario del exterior involucre el pago de dos o más oficializaciones de despachos de importación, se podrá confeccionar un único boleto de cambio por el monto total de la transferencia, que deberá contener un anexo con la firma del cliente en el cual conste el listado de las oficializaciones de los despachos de importación y el monto en divisas pagado que corresponde a cada uno.

10.4. Pagos de importaciones de bienes con registro de ingreso aduanero pendiente.

10.4.1. Operaciones comprendidas.

Los pagos al exterior de importaciones de bienes que no cuentan con el registro aduanero a la fecha de acceso al mercado de cambios comprenden a:

10.4.1.1. Pagos anticipados al exterior a la fecha de entrega de los bienes por parte del proveedor del exterior.

10.4.1.2. Pagos a la vista contra la presentación de la documentación de embarque.

10.4.1.3. Pagos de deudas comerciales al exterior (operaciones en las que se cumplió la condición de compra pactada entre exportador e importador).

10.4.1.4. Cancelación de garantías comerciales de importaciones de bienes otorgadas por entidades locales.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

En todos estos casos, los pagos realizados quedarán alcanzados por el seguimiento de pagos de importaciones con registro de ingreso aduanero pendiente.

La entidad por la cual se cursó el pago será la entidad encargada de dicho seguimiento y de efectuar los registros correspondientes en el SEPAIMPO.

10.4.2. Requisitos de acceso para el pago anticipado de importaciones.

La entidad podrá dar acceso al mercado de cambios para el pago al exterior en la medida que verifique previamente que se cumplen la totalidad de los siguientes requisitos:

10.4.2.1. Documentación que permite determinar la existencia de una compra de bienes al exterior, donde se exige el anticipo de parte o el total de los fondos con anterioridad a la fecha de entrega de los bienes en la condición de compra pactada. Esta documentación debe permitir determinar el detalle de los bienes a importar, la condición de compra pactada, plazos de entrega y condiciones de pago.

10.4.2.2. El beneficiario del pago sea el proveedor del exterior.

10.4.2.3. La venta de las divisas será cursada con débito en cuentas del cliente en entidades financieras locales por alguna de las modalidades de medios de pago vigentes.

10.4.2.4. Cuenta con la declaración jurada del cliente de que se compromete a demostrar el registro del ingreso aduanero de los bienes dentro del plazo que corresponda según tipo de bien a importar, o en su defecto, proceder en ese plazo a la liquidación en el mercado de cambios de los fondos en moneda extranjera asociados a la devolución del pago efectuado.

En el caso de pagos anticipados de bienes de capital, el plazo para demostrar el registro de ingreso aduanero será de 270 (doscientos setenta) días corridos a partir de la fecha de acceso al mercado de cambios. A tal efecto, se deberán considerar las posiciones arancelarias clasificadas como BK (Bien de Capital) en la Nomenclatura Común del MERCOSUR (Decreto 690/02 y complementarias).

Para el resto de los bienes, el plazo será de 90 (noventa) días corridos a partir de la fecha de acceso al mercado de cambios.

En el caso de que un mismo pago anticipado incluya bienes de capital y bienes que no lo son, la operación se regirá por el plazo del tipo de bien que represente una mayor proporción del valor total abonado.

Si la nacionalización de los bienes requiere un plazo mayor y el pago anticipado se concreta en el marco de lo previsto en los puntos 10.10.2.1. a 10.10.2.4. o 10.10.2.13.ii), la entidad podrá considerar que el referido plazo se extiende hasta la fecha que surge de sumar 15 (quince) días corridos a la fecha estimada de arribo de los bienes considerada a los efectos de determinar el vencimiento requerido para la correspondiente financiación. La entidad deberá reportar la extensión otorgada en el SEPAIMPO.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Si el proveedor del exterior es una contraparte vinculada con el importador o se necesiten plazos mayores para la oficialización del despacho de importación, se requerirá contar con la previa conformidad del BCRA antes del acceso al mercado de cambios.

Los pedidos al BCRA deben ser canalizados por una entidad autorizada a realizar este tipo de pago.

10.4.2.5. Cuenta con elementos que le permitan avalar la razonabilidad de los montos a pagar considerando la actividad importadora del cliente en los últimos años y/o los planes de negocios que le presente el importador.

Adicionalmente, en el caso de que el cliente no sea una persona humana y se haya constituido hasta 365 (trescientos sesenta y cinco) días corridos antes de la fecha de acceso al mercado de cambios, para dar curso a nuevos pagos se requerirá la conformidad previa del BCRA cuando el monto pendiente de regularización por pagos anticipados de importaciones sea mayor al equivalente de USD 5 millones (cinco millones de dólares estadounidenses), incluido el monto por el cual se solicita el acceso al mercado de cambios. En el caso de que el cliente sea una unión transitoria, se tomará en cuenta la fecha de constitución de la sociedad más antigua que la conforma.

Para los importadores comprendidos en el párrafo anterior, las entidades deberán consultar en el apartado "Régimen Informativo SEPAIMPO" del sitio www3.bcra.gob.ar, si el saldo pendiente de regularización por pagos anticipados de importaciones del cliente se encuentra comprendido en el límite previsto.

10.4.2.6. El cliente no registra situaciones de demora en la regularización de pagos con registro de ingreso aduanero pendiente realizados a partir del 2.9.19.

Los pagos de importaciones de bienes con registro de ingreso aduanero pendiente concretados entre el 2.9.19 y el 31.10.19, por operaciones comprendidas en los puntos 10.4.1.2. a 10.4.1.4., que no se encuentren regularizados según lo previsto en el punto 10.5. son considerados en situación de demora a partir del 2.11.2020.

Las entidades deberán consultar en el apartado "Régimen Informativo SEPAIMPO" del sitio www3.bcra.gob.ar, si el cliente registra en el sistema demoras en el conjunto de las entidades.

Este requisito no será de aplicación para:

i) el sector público;

ii) todas las organizaciones empresariales, cualquiera sea su forma societaria, en donde el Estado Nacional tenga participación mayoritaria en el capital o en la formación de las decisiones societarias;

iii) los fideicomisos constituidos con aportes del sector público nacional; y

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

iv) las personas jurídicas que tengan a su cargo la provisión de medicamentos críticos a pacientes cuando realicen pagos anticipados por ese tipo de bienes a ingresar por el beneficiario de dicha cobertura médica.

10.4.2.7. Se requerirá la conformidad previa del BCRA cuando el cliente registre por operaciones anteriores al 2.9.19, una condena o un sumario en materia penal cambiario en trámite, en ambos casos, por infracciones al artículo 1° inciso c) de la Ley 19359 relativas a regímenes de pagos por importaciones de bienes. Serán consideradas las condenas dictadas por hasta 5 (cinco) años anteriores a la fecha de la operación.

Las entidades deberán consultar en el apartado "Régimen Informativo SEPAIMPO" del sitio www3.bcra.gob.ar, si el cliente se encuentra en la situación prevista en el párrafo precedente.

Este requisito no será de aplicación para:

i) el sector público;

ii) todas las organizaciones empresariales, cualquiera sea su forma societaria, en donde el Estado Nacional tenga participación mayoritaria en el capital o en la formación de las decisiones societarias; y

iii) los fideicomisos constituidos con aportes del sector público nacional.

10.4.2.8. Se requerirá la conformidad previa del BCRA excepto cuando la entidad constate que el pago encuadra en alguna de las situaciones previstas en el punto 10.10.2. o en el punto 10.6.6.

10.4.2.9. La entidad deberá, al momento de dar acceso al mercado de cambios, contar con la convalidación de la situación de la operación en el sistema online implementado por el BCRA a tales efectos.

10.4.3. Requisitos de acceso para el pago de deudas comerciales o a la vista contra la presentación de la documentación de embarque.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior en la medida que verifique previamente que se cumplen la totalidad de los siguientes requisitos:

10.4.3.1. Cuenta con copia de la factura comercial emitida en el exterior a nombre de la persona humana o jurídica residente en el país, que efectúa la compra al exterior, donde conste nombre y dirección del emisor, nombre del importador argentino, la cantidad y descripción de la mercadería, condición de venta y valor de la factura.

10.4.3.2. Cuenta con copia del Documento de Transporte (Conocimiento de Embarque – Carta de Porte – Guía Aérea).

10.4.3.3. Cuenta con documentación que le permite establecer que el pago parcial o total de los bienes debe realizarse contra la presentación de la documentación de embarque.

| Versión: 9a. | COMUNICACIÓN "A" 8035 | Vigencia: 04/06/2024 | Página 12 |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.4.3.4. El beneficiario del pago sea el proveedor del exterior, la entidad financiera del exterior o la agencia oficial de crédito que financió el pago anticipado al proveedor del exterior.

10.4.3.5. La venta de las divisas es cursada con débito en cuentas del cliente en entidades financieras locales por alguna de las modalidades de medios de pago vigentes.

10.4.3.6. Cuenta con la declaración jurada del cliente de que se compromete a demostrar el registro de ingreso aduanero de los bienes dentro de los 90 (noventa) días corridos de la fecha de acceso al mercado de cambios, o en su defecto, proceder dentro de ese plazo, al reingreso de las divisas desde el exterior.

10.4.3.7. Se requerirá la conformidad previa del BCRA excepto cuando la entidad constate que el pago encuadra en alguna de las situaciones previstas en el punto 10.10.2. o en el punto 10.6.6.

10.4.3.8. La entidad deberá, al momento de dar acceso al mercado de cambios, contar con la convalidación de la situación de la operación en el sistema online implementado por el BCRA a tales efectos.

10.4.4. Cancelación de garantías comerciales de importaciones de bienes otorgadas por entidades financieras locales.

La entidad tendrá acceso al mercado de cambios para cancelar cartas de crédito o letras avaladas emitidas u otorgadas para garantizar operaciones de importaciones de bienes que tengan el registro aduanero pendiente, incluso cuando no se cumplan los requisitos establecidos para el acceso del cliente, en la medida que se verifique que se cumplían las condiciones que resultaban aplicables según la fecha en que se emitió u otorgó la carta de crédito o letra avalada y el tipo de operación garantizada por la entidad.

En el caso de cartas de crédito o letras avaladas emitidas u otorgadas a partir del 13.12.23, la entidad deberá contar con la documentación que demuestre que, al momento de la apertura o emisión, la operación garantizada correspondía a una importación de bienes con registro de ingreso aduanero a partir de dicha fecha y, salvo que la operación quedase comprendida en la situación prevista en el punto 10.10.2.9., que el pago garantizado debía ser concretado por el cliente a partir de la fecha que resultaba de adicionar el plazo en días corridos que le corresponde al bien por el punto 10.10.1. más otros 15 (quince) días corridos a la fecha estimada de arribo de los bienes al país.

Las condiciones aplicables para las cartas de crédito o letras avaladas emitidas u otorgadas hasta el 12.12.23 fueron oportunamente receptadas en el punto 10.3.6. del Anexo de la Comunicación "A" 7914.

El boleto de venta deberá efectuarse a nombre de la propia entidad en calidad de cliente por el concepto "B11. Cancelación de garantías comerciales de entidades financieras de importaciones de bienes sin registro de ingreso aduanero".



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Por los pagos que se realicen, la entidad deberá informar en el SEPAIMPO dentro de los 5 (cinco) días hábiles, la CUIT del importador por el cual se ha efectuado el pago.

En la medida que la entidad no cuente con el registro de la oficialización del despacho de importación dentro de los 90 (noventa) días corridos de la fecha de acceso al mercado de cambios, la entidad deberá efectuar la correspondiente denuncia.

10.4.5. Registro cambiario de los pagos de importaciones con registro de ingreso aduanero pendiente.

El boleto de cambio de venta se realizará por el concepto correspondiente a la operación cursada.

Por todo acceso al mercado de cambios por pagos de importaciones de bienes argentinas con registro de ingreso aduanero pendiente, incluyendo las cancelaciones de garantías, la entidad generará un número clave único para su identificación en el seguimiento de pagos de importaciones con registro aduanero pendiente.

En los casos de devoluciones de pagos anticipados de importaciones de bienes se deberá identificar el pago al exterior al que corresponden las divisas devueltas. A tal efecto, la entidad interviniente deberá requerir al importador una declaración jurada en la que identifique la entidad por la cual realizó el pago con registro aduanero pendiente, la fecha en que lo efectuó y el número de identificación otorgado al mismo oportunamente por la entidad.

10.5. Seguimiento de pagos de importaciones con registro de ingreso aduanero pendiente.

Todo pago de importaciones con registro de ingreso aduanero pendiente efectuado a partir del 2.9.19 estará sujeto a un seguimiento desde la fecha de acceso al mercado de cambios hasta la fecha en que se produzca su regularización.

Se considerará regularizada la situación de estos pagos a los efectos cambiarios cuando se demuestre ante la entidad encargada del seguimiento de ese pago, y por hasta el monto girado, la existencia de:

i) el registro de ingreso aduanero a su nombre o a nombre de un tercero en la medida que se cumplan las condiciones establecidas en la presente normativa; y/o

ii) la liquidación en el mercado de cambios de las divisas asociadas a la devolución del pago efectuado; y/o

iii) otras formas de regularización previstas en la presente norma según las condiciones y límites establecidos en cada caso; y/o

iv) la conformidad otorgada por el BCRA para dar por regularizada parte o el total de la operación. El pedido solo podrá ser tramitado por la entidad encargada del seguimiento del pago y deberá estar debidamente justificado por la misma.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.5.1.  Requisitos para la afectación de oficializaciones de importación comprendidas en el SEPAIMPO.

La entidad encargada del seguimiento del pago podrá afectar el registro de ingreso aduanero de una oficialización de importación a la regularización de una operación a su cargo, en la medida que certifique que se cumplen los requisitos enunciados en el punto 10.3.2.1. en carácter de entidad encargada del seguimiento de la oficialización o cuente con una certificación para afectación emitida por la entidad que tiene tal responsabilidad.

Las afectaciones con imputación a un pago deberán ser incorporadas en el SEPAIMPO por la entidad a cargo del seguimiento del pago.

10.5.2.  Requisitos para la afectación de importaciones ingresadas por solicitud particular o Courier no incluidas en el SEPAIMPO o ingresadas desde zonas francas con transferencia aduanera de dominio del exportador al importador.

La entidad encargada del seguimiento del pago podrá afectar importaciones de bienes ingresadas por Solicitud Particular o Courier no incluidas en el SEPAIMPO o las ingresadas desde zonas francas con transferencia aduanera de dominio del exportador al importador en la medida que se verifiquen las condiciones estipuladas para cada tipo de operación en el punto 10.3.

La entidad deberá intervenir la documentación aduanera, dejando constancia de la fecha, la identificación del pago con ingreso aduanero pendiente y monto afectado al mismo.

10.5.3.  Requisitos aplicables a otras formas de regularización de un pago con registro aduanero pendiente.

En el caso de una devolución de fondos del exterior asociada a un pago con registro aduanero pendiente, la entidad deberá contar con la certificación emitida por la entidad que dio curso a la liquidación en el mercado de cambios.

Para los mecanismos previstos en los puntos 10.5.4., 10.5.5.1. y 10.5.5.2., la entidad deberá verificar el cumplimiento de las condiciones previstas en cada caso.

10.5.4.  Excepciones a la demostración de ingreso de los fondos del exterior.

El importador podrá optar en los casos de saldos pendientes de entrega, diferencias por aplicaciones de tipos de pase, incumplimientos de entrega por parte del proveedor externo, por solicitar a la entidad a cargo del seguimiento que se dé por cumplida su obligación de demostrar la oficialización del ingreso de los bienes y/o el ingreso de las divisas del exterior, en la medida que no haya hecho uso de esta alternativa por un monto mayor al equivalente de USD 10.000 (diez mil dólares estadounidenses) en el año calendario por fecha de pago.

Al respecto, la entidad deberá exigir una declaración jurada sobre el carácter genuino de los motivos declarados, firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

La entidad a cargo del seguimiento deberá incorporar en el SEPAIMPO los registros correspondientes.

10.5.5. Prórrogas de plazos para la demostración del registro de ingreso aduanero.

Las prórrogas del plazo para la demostración del registro de ingreso aduanero de importación serán concedidas por la entidad a cargo del seguimiento del pago realizado sin registro de ingreso aduanero, dentro de las condiciones que establece la presente normativa o con la previa conformidad del BCRA.

Estas prórrogas deberán ser registradas por la entidad encargada del seguimiento del pago en el sistema SEPAIMPO.

10.5.5.1. Mercadería siniestrada con posterioridad a la entrega del bien en la condición de compra pactada:

La entidad a cargo del seguimiento podrá otorgar hasta cinco prórrogas sucesivas de 180 (ciento ochenta) días corridos de plazo hasta la fecha de la liquidación del seguro, cuando se cumpla con los siguientes requisitos:

i) la falta total o parcial de la oficialización de la documentación aduanera se justifica en un siniestro;

ii) el embarque cuenta con un seguro por la cobertura del siniestro de la mercadería; y

iii) se cuenta con la factura emitida por el exportador; póliza del seguro que cubre el embarque siniestrado; documentación de transporte; denuncia del siniestro ante la entidad aseguradora y autoridad policial u otra documentación probatoria del siniestro.

Operada la liquidación del seguro, la documentación respectiva se completará con:

iv) la liquidación del seguro, donde figure fecha, lugar y moneda del pago;

v) de haberse realizado el pago en moneda extranjera, documentación por la cual se liquidaron las divisas en el mercado de cambios. El monto percibido en moneda extranjera por el cobro del seguro deberá ser ingresado y liquidado en el mercado de cambios dentro de los 20 (veinte) días hábiles siguientes a la fecha de efectiva percepción; y

vi) si el siniestro fue liquidado en moneda local, copia del extracto bancario donde figure el depósito del cheque con el cual fue cobrado el siniestro.

En todos los casos, la entidad deberá exigir, además de la documentación señalada, una declaración jurada sobre el carácter genuino de lo declarado, firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Utilizados los plazos máximos con sus sucesivas renovaciones, la entidad registrará la condición de no recupero total o parcial de los fondos en el SEPAIMPO, dando por finalizado su seguimiento del pago. Esto es independiente de la obligación del importador de ingresar por el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de cobro, todo recupero que registre en moneda extranjera con relación a dicho pago.

10.5.5.2. Operaciones en gestión de cobro por incumplimiento del proveedor.

La entidad a cargo del seguimiento del pago realizado, podrá imputarlo en el SEPAIMPO como en "gestión de cobro" cuando se dé alguna de las siguientes condiciones:

i) Control de cambios en el país del exportador.

El importador puede demostrar su gestión de cobro y que la falta de ingreso obedece a que, en el país del proveedor del exterior, existen demoras por restricciones a los giros de divisas. Lo cual será acreditado mediante copia con legalización consular, de la normativa que dispone dicho control cambiario.

ii) Insolvencia posterior del proveedor del exterior, no contándose con garantías de devolución de los fondos.

En la medida que el importador argentino aporte la siguiente documentación:

a) constancia de las publicaciones que hagan saber el inicio del trámite falencial conforme a lo exigido por la legislación vigente en el país en que tramite; y

b) constancia de la presentación efectuada para obtener el reconocimiento y pago de su acreencia, certificada por la autoridad interviniente en el proceso, conforme al procedimiento aplicable en país donde haya debido efectuarla.

La documentación deberá estar legalizada por autoridad consular o conforme a lo previsto por el Convenio de la Haya del 5 de octubre de 1961, cuando corresponda.

iii) Deudor moroso.

En la medida que se verifique alguna de las siguientes situaciones:

a) El importador demuestre en forma fehaciente su gestión de cobro a través de los reclamos efectuados al obligado de pago por compañías de seguro de crédito a la exportación o de entidades constituidas como agencias de recupero nacionales o del exterior contratadas por el importador a tal efecto. Esta alternativa solo será válida en la medida que el valor adeudado al importador por el no residente no supere el equivalente de USD 100.000 (dólares estadounidenses cien mil); y/o

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

b) El importador argentino haya iniciado y mantenga acciones judiciales contra el proveedor del exterior o contra quien corresponda, acreditándolo con copia del escrito de iniciación de demanda certificada por el juzgado interviniente en cuanto a su fecha de inicio y radicación. La documentación deberá estar legalizada por autoridad consular o conforme a lo previsto por el Convenio de la Haya del 5 de octubre de 1961, cuando resultase aplicable.

En todos los casos, la entidad deberá exigir, además de la documentación señalada, una declaración jurada sobre el carácter genuino de lo declarado, firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

Si el importador percibiera un monto en moneda extranjera, el mismo deberá ser ingresado y liquidado en el mercado de cambios dentro de los 20 (veinte) días hábiles siguientes a la fecha de efectiva percepción.

En todos estos casos, la operación podrá permanecer en "gestión de cobro" mientras se demuestre la vigencia del reclamo y de las condiciones que explican la demora en la ejecución de la transferencia. A estos fines, la entidad otorgará hasta cinco prórrogas sucesivas de hasta 180 (ciento ochenta) días corridos.

Utilizados los plazos máximos con sus sucesivas renovaciones, la entidad registrará la condición de no recupero total o parcial de los fondos en el SEPAIMPO, dando por finalizado su seguimiento del pago. Esto es independiente de la obligación del importador de ingresar por el mercado de cambios dentro de los 20 (veinte) días hábiles de la fecha de cobro, todo recupero en moneda extranjera que registre con relación a dicho pago.

10.5.5.3. Otras causales ajenas a la voluntad de decisión del importador.

En los casos de demoras en el registro de ingreso aduanero de la oficialización de importación, por causales ajenas a la voluntad de decisión del importador que afecten a la mayor parte del monto pendiente de regularización de la operación, la entidad interviniente podrá otorgar una extensión de los plazos establecidos precedentemente, que no podrá superar los 545 (quinientos cuarenta y cinco) días corridos para los pagos anticipados de bienes de capital o los 365 (trescientos sesenta y cinco) días corridos para los restantes pagos, contándose los plazos indicados desde la fecha de acceso al mercado de cambios.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Son ejemplos de causales ajenas a la voluntad de decisión del importador las demoras motivadas en la producción y/o en el embarque por parte del proveedor del exterior no derivadas en incumplimientos del importador, en problemas de transporte, en la obtención de certificaciones necesarias para la oficialización de la importación de los bienes o actuaciones administrativas aduaneras que impliquen la imposibilidad de oficializar hasta su resolución. En sentido contrario, la demora en efectuar la oficialización por decisiones del importador motivadas en cuestiones financieras o de mercado no está comprendida entre las causales admitidas.

La documentación que avale la causal de la demora que respalda la ampliación del plazo otorgada por la entidad, deberá quedar archivada en la entidad a disposición del BCRA.

Agotados los plazos que puede otorgar la entidad a cargo del seguimiento, esta última podrá solicitar la conformidad del BCRA para una ampliación mayor en la medida que subsistan causales de demora ajenas al importador.

10.5.6. Denuncia por incumplimiento en la regularización en plazo de un pago con registro aduanero pendiente.

La entidad a cargo del seguimiento de los pagos con registro de ingreso aduanero pendiente deberá, dentro de los 5 (cinco) días hábiles siguientes a la fecha de vencimiento de los plazos establecidos en la presente norma, informar en el SEPAIMPO las operaciones de los importadores que no hubieran regularizado su situación.

10.5.7. Pagos realizados en monedas distintas a la moneda de la facturación de compra.

A los efectos de determinar los montos pendientes en los casos de facturaciones en monedas distintas a las monedas de transferencia, la entidad encargada del seguimiento del pago deberá considerar los tipos de pase correspondientes a la fecha de transferencia al beneficiario de los fondos.

10.6. Otras disposiciones.

10.6.1. Bienes importados en el marco de contratos de alquiler de bienes con opción de reemplazo, compra y/o devolución.

Los pagos al exterior por bienes importados en el marco de contratos de alquiler de bienes con opciones de reemplazo, compra y/o devolución, se rigen por la normativa cambiaria que regula el pago de importaciones de bienes.

En el caso de que los pagos a realizar previstos en el contrato superen el valor del bien importado según la condición de compra pactada registrada en la factura emitida por el proveedor del exterior, la entidad deberá verificar que cada cuota sea separada en el componente de pago de capital comercial y renta por intereses comerciales, de acuerdo a la tasa de interés efectiva implícita en la financiación, relacionando el cronograma y montos de pagos a realizar y el valor del bien en la factura.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.6.2. Personas jurídicas que tengan a su cargo la provisión de medicamentos a pacientes.

En la medida que se cumplan los requisitos generales previstos, las personas jurídicas que tengan a su cargo la provisión de medicamentos a pacientes tendrán acceso al mercado de cambios para realizar el pago al exterior de los medicamentos ingresados por Solicitud Particular por el beneficiario de dicha cobertura médica.

De igual forma tendrán acceso para realizar pagos con registro de ingreso aduanero pendiente por los medicamentos que serán ingresados por el beneficiario de la cobertura.

10.6.3. Gobiernos locales por obras de infraestructura.

En la medida que se cumplan los requisitos generales previstos, los gobiernos locales tendrán acceso para el pago al exterior de bienes importados en el marco de contratos de obras de infraestructura, cuando cuenten con el registro de ingreso aduanero oficializado por entes, reparticiones, organismos que formen parte del estado Provincial y/o de empresas que, si bien puedan tener personería jurídica propia, son propiedad en su totalidad del estado Provincial.

De igual forma, los gobiernos locales tendrán acceso al mercado de cambios para realizar pagos con registro aduanero pendiente por bienes que serán importados en el marco de la realización de obras de infraestructura por alguno de los enunciados en el párrafo precedente.

10.6.4. Ventas internas con anterioridad al registro aduanero.

En los casos en los cuales el comprador al exterior vende los bienes localmente a un tercero que efectúa el registro aduanero del ingreso de los bienes, se deberá presentar adicionalmente a los requisitos generales establecidos para el acceso al mercado de cambios para un pago diferido o la afectación de la oficialización a un pago previo, la factura comercial emitida en el país por la persona humana o jurídica que figura como comprador en la factura comercial del exportador, a nombre de la persona humana o jurídica que figura como importador en el registro de ingreso aduanero.

10.6.5. Bienes donados al Ministerio de Salud de la Nación para fortalecer la capacidad de atención médica o sanitaria del país.

En los casos en que el comprador al exterior haya adquirido bienes relacionados con la atención médica y/o sanitaria de la población y los haya donado al Ministerio de Salud de la Nación con anterioridad al registro de ingreso aduanero de los bienes, a los efectos del acceso al mercado de cambios para un pago diferido o la afectación de la oficialización a un pago con registro de ingreso aduanero pendiente, se deberá verificar los requisitos previstos en cada caso reemplazando la constancia de ingreso aduanero de los bienes por la constancia de aceptación de la donación por parte del Ministerio de Salud de la Nación.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.6.6. Importaciones temporales de la posición arancelaria 12.01.90.00 de la NCM (porotos de soja excluidos p/siembra).

Las entidades para otorgar acceso al mercado de cambios para el pago de importaciones temporales de la posición arancelaria 1201.90.00 de la NCM (porotos de soja excluidos p/siembra) con registro de ingreso aduanero a partir del 13.12.23, adicionalmente a los restantes requisitos normativos aplicables, deberán verificar que el cliente por el monto que pretende abonar:

10.6.6.1. ha liquidado cobros de exportaciones asociados a la exportación a consumo con despacho de importación temporaria (DIT) con transformación concretada a partir de los bienes importados temporariamente que se abonan, y/o

10.6.6.2. liquida simultáneamente cobros anticipados o prefinanciaciones de exportaciones del exterior o prefinanciaciones de exportaciones otorgadas por entidades financieras locales con fondeo en líneas de crédito del exterior, que tengan una fecha de vencimiento que sea igual o posterior a la fecha en que se producirá la exportación de los bienes elaborados a partir de aquellos importados temporariamente que se abonan.

10.6.7. Formación de activos externos con aplicación específica al pago de importaciones de combustibles o energía.

Las entidades podrán dar acceso al mercado de cambios a todas las organizaciones empresariales, cualquiera sea su forma societaria, en donde el Estado Nacional tenga participación mayoritaria en el capital o en la formación de las decisiones societarias, para efectuar formación de activos externos con aplicación específica al pago de importaciones de combustibles o energía con registro de ingreso aduanero a partir del 13.12.23 cuando se cumplan las siguientes condiciones:

10.6.7.1. los fondos adquiridos sean depositados en cuentas en moneda extranjera de titularidad del cliente abiertas en entidades financieras del exterior,

10.6.7.2. la entidad ha verificado que al momento de acceso al mercado el cliente cumple con los requisitos que la normativa cambiaria vigente establece para el pago de importaciones de bienes que se pretende realizar con los fondos,

10.6.7.3. la entidad cuenta con una declaración jurada del cliente, firmada por su representante legal, en la que en nombre de este cliente se compromete a que:

i) los fondos serán aplicados al pago de importaciones de combustibles o energía dentro de los 5 (cinco) días hábiles de la fecha de acceso al mercado de cambios,

ii) se presentará ante la entidad que le dio acceso la documentación que le permita corroborar la afectación de los fondos al destino específico y realizar el correspondiente registro ante el BCRA,



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

iii) los fondos en moneda extranjera que no se utilicen para el destino específico previsto serán reingresados y liquidados en el mercado de cambios dentro de los 8 (ocho) días hábiles posteriores a la fecha del acceso.

A los efectos del registro de las operaciones previstas en el punto 10.6.7., la entidad interviniente deberá confeccionar un boleto de venta de cambio bajo el código de concepto "A23. Constitución de depósitos en el exterior para afectar al pago de importaciones de combustibles o energía", y al momento de la aplicación de los fondos adquiridos se deberá efectuar un boleto de compra bajo el mismo concepto y otro de venta por el concepto correspondiente a la cancelación de la deuda con el exterior.

10.7. Líneas de crédito de entidades financieras aplicadas a la financiación de importaciones de bienes.

10.7.1. Cancelación por parte de las entidades financieras.

La entidad financiera tendrá acceso al mercado de cambios, en las condiciones previstas en el punto 3.15.1., para la cancelación de líneas de crédito del exterior aplicadas a la financiación de importaciones argentinas de bienes y de los servicios contenidos en la condición de compra pactada, en la medida que la misma califique como deuda comercial según lo dispuesto en el punto 10.2.4. y la entidad cuente con la documentación que demuestre que, al momento del otorgamiento de la financiación al importador, se cumplían las condiciones que resultaban aplicables en ese momento al tipo de operación financiada por la entidad.

En el caso de las financiaciones otorgadas a partir del 13.12.23, la entidad deberá contar con la documentación que demuestre que:

i) la operación financiada correspondía a una importación de bienes con registro de ingreso aduanero a partir del 13.12.23

ii) la fecha de vencimiento de la financiación otorgada era compatible con los plazos previstos en el punto 10.10.1. según lo previsto en el punto 10.10.2.1., salvo que la operación quedase comprendida en lo previsto en la situación prevista en el punto 10.10.2.9.

Las condiciones aplicables para las financiaciones otorgadas hasta el 12.12.23 fueron oportunamente receptadas en el punto 10.7. del Anexo de la Comunicación "A" 7914.

Los casos que no cumplan las condiciones requeridas quedarán sujetos a la conformidad previa del BCRA.

10.7.2. Registro cambiario de los flujos asociados.

La utilización de una línea de crédito, materializada con la acreditación de los fondos en la cuenta de la entidad financiera en su corresponsal del exterior, deberá reflejarse como una compra de divisas por el concepto "Líneas de crédito del exterior" a nombre de la propia entidad en calidad de cliente.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Cuando la entidad cancela la línea de crédito con la entidad financiera del exterior, corresponde efectuar un boleto de venta por el concepto "Líneas de crédito del exterior" a nombre de la propia entidad en calidad de cliente.

En los casos de financiaciones comerciales por importaciones argentinas con utilización de líneas de crédito del exterior, en el momento en que la entidad interviniente transfiere las divisas en pago al exportador del bien, corresponderá registrar boletos simultáneos de compra y venta de divisas a nombre del cliente que recibe la financiación:

i) En el caso de la compra se utilizará el concepto "P12. Otras financiaciones locales otorgadas por la entidad (excluida la financiación de exportaciones y tarjetas de crédito)".

ii) Para la venta se utilizarán los conceptos por el pago de las importaciones que correspondan por los montos incluidos en la condición de compra pactada o de servicios que correspondan (fletes y seguros de importación) cuando no formen parte de la condición de compra pactada y estén financiados por la entidad.

En los casos en que se trate de pagos que sean con registro de ingreso aduanero pendiente, el cliente deberá demostrarlo posteriormente de acuerdo con las normas generales en la materia.

Cuando el pago a nombre del cliente encuadre en el punto 10.10.2.1., se deberá dejar constancia de tal circunstancia al reportar el boleto de venta a nombre del cliente en el Régimen Informativo de Operaciones de Cambios.

### 10.8. Cancelación al exterior de deudas originadas en la importación argentina de bienes que no encuadran como deudas comerciales.

La entidad interviniente podrá dar acceso al mercado de cambios para la cancelación al exterior de deudas originadas en la importación argentina de bienes que no encuadran como deudas comerciales en la medida que se cumplan conjuntamente las condiciones previstas en los puntos 10.3.2. o 10.3.3., según corresponda, más las normas que sean aplicables a la cancelación de deudas financieras.

En la certificación emitida por la entidad encargada del seguimiento de la oficialización de importación deberá constar que el pago debe cursarse de acuerdo con las normas aplicables a la cancelación de deudas financieras.

Estos pagos se cursarán con un boleto de venta a nombre del cliente por el concepto "P13. Pagos de principal de deudas financieras con el exterior originadas en importaciones de bienes".

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

### 10.9. Otras compras de bienes al exterior.

10.9.1. Pagos de insumos, equipos y repuestos destinados a la construcción, reparación, mantenimiento o reemplazo de partes de instalaciones de producción y tratamiento de hidrocarburos "off shore".

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de insumos, equipos y repuestos destinados a la construcción, reparación, mantenimiento o reemplazo de partes de instalaciones de producción y tratamiento de hidrocarburos "off shore".

A tales efectos deberá verificar previamente que se cumplen la totalidad de los requisitos establecidos, reemplazando el requisito de registro de ingreso aduanero por la demostración del sometimiento de los bienes abonados al régimen aduanero que corresponda por su empleo en el Mar Territorial o la Zona Económica Exclusiva.

La entidad interviniente deberá intervenir la documentación aduanera por los pagos realizados.

10.9.2. Pagos de bienes destinados a su venta en tiendas libres de impuestos según régimen de la Ley 22056.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de compras de bienes destinadas a ventas en tiendas libres de impuestos según régimen de la Ley 22056.

A tales efectos deberá verificar previamente que se cumplen la totalidad de requisitos establecidos, reemplazando el requisito de registro de ingreso aduanero por la demostración del sometimiento de los bienes abonados al régimen aduanero que corresponda por su venta en tiendas libres de impuestos.

La entidad interviniente deberá intervenir la documentación aduanera por los pagos realizados.

10.9.3. Pagos de bienes ingresados a depósitos francos habilitados de acuerdo con la Resolución N° ANA 2676/79.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de compras de bienes ingresados a depósitos francos habilitados de acuerdo con la Resolución N° ANA 2676/79.

A tales efectos deberá verificar previamente que se cumplen la totalidad de requisitos establecidos, reemplazando el requisito de registro de ingreso aduanero por la demostración del sometimiento de los bienes abonados al régimen aduanero que corresponda por su ingreso a depósitos francos.

La entidad interviniente deberá intervenir la documentación aduanera por los pagos realizados.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.9.4.  Compras de bienes que no pasan por el país y se venden al exterior.

La entidad interviniente podrá dar acceso al mercado de cambios para el pago al exterior de compras de bienes que son vendidas al exterior sin pasar por el país.

A tales efectos deberá verificar previamente que se cumplen la totalidad de requisitos detallados en el punto 10.3.2., reemplazando lo requerido en los incisos i) y iv) del punto 10.3.2.1. por lo siguiente:

i)  Factura comercial emitida por el comprador a su cliente en el exterior donde conste la cantidad y descripción de la mercadería, la condición de venta y valor de la factura.

ii) La entidad verificó que las cantidades y descripciones de la mercadería de la factura de venta sean consistentes con aquellas que constan en la factura comercial que respalda la compra por la cual quiere realizarse el pago.

iii) Que a la entidad interviniente le conste que el comprador argentino ha liquidado divisas en el mercado de cambios asociadas a la venta de la mercadería por un monto no menor al valor de los pagos realizados por la obligación con el exterior, incluyendo el pago cuyo curso se está solicitando.

Los cobros y los pagos asociados a esta operatoria deberán ser cursados utilizando el concepto "B09. Compraventa de bienes sin paso por el país y vendidos a terceros países".

10.10. Disposiciones complementarias para importaciones de bienes con registro de ingreso aduanero a partir del 13/12/23.

10.10.1.  Plazos para pagos diferidos de importaciones de bienes con registro de ingreso aduanero a partir del 13/12/23.

Las entidades podrán dar acceso al mercado de cambios para cursar pagos diferidos de importaciones de bienes con registro de ingreso aduanero a partir del 13/12/23 cuando, adicionalmente a los restantes requisitos normativos aplicables, se verifique que el pago respeta el cronograma que se presenta a continuación según tipo de bien:

10.10.1.1.  desde su registro de ingreso aduanero se podrá realizar el pago correspondiente a los siguientes bienes:

i)  aceites de petróleo o mineral bituminoso, sus preparaciones y sus residuos (subcapítulos 2709, 2710 y 2713 de la NCM).

ii) gases de petróleo y demás hidrocarburos gaseosos (subcapítulo 2711 de la NCM).

iii) hulla bituminosa sin aglomerar (posición arancelaria 2701.12.00 de la NCM), cuando la importación sea concretada por una central de generación eléctrica.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

iv) energía eléctrica (posición arancelaria 2716.00.00 de la NCM).

v) importaciones oficializadas a partir del 15/04/24 de uranio natural, uranio enriquecido y sus compuestos (posiciones arancelarias 2844.10.00 y 2844.20.00 de la NCM), agua pesada (posición arancelaria 2845.10.00) o circonio y sus manufacturas cuando correspondan a la posición arancelaria 8109.91.00, que sean destinadas a la elaboración de energía o combustibles.

10.10.1.2.  para los restantes bienes, el pago se podrá realizar a partir de los 30 (treinta) días corridos desde el registro de ingreso aduanero de los bienes.

10.10.2.  Pagos diferidos de importaciones de bienes con registro de ingreso aduanero a partir del 13/12/23 antes de los plazos previstos en el punto 10.10.1. o pagos de importaciones de bienes con registro de ingreso aduanero pendiente.

Las entidades podrán dar acceso al mercado de cambios para cursar pagos diferidos de importaciones de bienes con registro de ingreso aduanero a partir del 13/12/23 antes de los plazos previstos en el punto 10.10.1. y/o pagos con registro de ingreso aduanero pendiente cuando, en adición a los restantes requisitos aplicables, se verifique alguna de las siguientes situaciones:

10.10.2.1.  el cliente accede al mercado de cambios con fondos originados en una financiación de importaciones de bienes otorgada por una entidad financiera local a partir de una línea de crédito del exterior en la medida que se cumplan las siguientes condiciones al momento del otorgamiento:

i) las fechas de vencimiento y los montos de capital a pagar de la financiación otorgada sean compatibles con aquellos previstos en el punto 10.10.1.:

a) si el otorgamiento de la financiación es anterior de la fecha de arribo al país de los bienes, los plazos previstos en el punto 10.10.1. se computarán a partir de la fecha estimada de arribo al país de los bienes más 15 (quince) días corridos.

b) si el otorgamiento de la financiación es posterior al arribo al país de los bienes pero anterior a su registro de ingreso aduanero, los plazos previstos en el punto 10.10.1. se computarán a partir de la fecha del otorgamiento más 15 (quince) días corridos.

c) si el otorgamiento de la financiación es posterior a la fecha de registro de ingreso aduanero de los bienes, los plazos previstos en el punto 10.10.1. se computarán desde dicha fecha de registro.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

ii) cuando la operación encuadre en los incisos a) y b) del punto precedente, la entidad deberá adicionalmente contar con una declaración jurada del importador en la que se compromete, salvo situaciones de fuerza mayor ajenas a su voluntad, a concretar el registro de ingreso aduanero de los bienes dentro de los 15 (quince) días corridos de su arribo al país o de la fecha de otorgamiento de la financiación, según corresponda.

10.10.2.2.  El cliente accede al mercado de cambios en forma simultánea con la liquidación de fondos en concepto de anticipos o prefinanciaciones de exportaciones del exterior o prefinanciaciones de exportaciones otorgadas por entidades financieras locales con fondeo en líneas de crédito del exterior, en la medida que se cumplan las condiciones estipuladas en los puntos 10.10.2.1.i) y 10.10.2.1.ii). precedentes.

La entidad adicionalmente deberá contar con una declaración jurada del importador en la cual deja constancia de que será necesaria la conformidad previa del BCRA para la aplicación de divisas de cobros de exportaciones con anterioridad a la fecha de vencimiento que surge de las condiciones de plazo estipuladas para situaciones asociadas a un financiamiento.

10.10.2.3.  El cliente accede al mercado de cambios en forma simultánea con la liquidación de fondos originados en un endeudamiento financiero comprendido en el punto 3.5., en la medida que se cumplan las condiciones estipuladas en los puntos 10.10.2.1. i) y 10.10.2.1.ii). precedentes.

La porción de los endeudamientos financieros que sea utilizada en virtud de lo dispuesto en el presente punto no podrá ser computada a los efectos de otros mecanismos específicos que habiliten el acceso al mercado de cambios a partir del ingreso y/o liquidación de este tipo de operaciones.

10.10.2.4.  Se trata de un pago de importaciones de bienes enmarcado en el mecanismo previsto en el punto 7.11.

10.10.2.5.  Se trata de pagos de importaciones de bienes de capital que se concreten en forma simultánea con la liquidación de fondos originados en un endeudamiento financiero comprendido en el punto 3.5. o un aporte de inversión extranjera directa que encuadren en el punto 7.10.2.2.

10.10.2.6.  El cliente accede para realizar un pago de capital de deudas comerciales por la importación de bienes según lo dispuesto en el punto 10.2.4. y el cliente cuenta por el equivalente al valor que abona con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.

**BANCO CENTRAL DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.10.2.7.   El pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por entidades financieras locales o del exterior; o

10.10.2.8.   El pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por organismos internacionales y/o agencias oficiales de crédito; o

Las entidades podrán considerar también como operación garantizada por una agencia oficial de crédito a aquella que se encuentre cubierta por una garantía emitida por una aseguradora privada por cuenta y orden de un gobierno nacional de otro país. En todos los casos, la entidad interviniente deberá contar con documentación en la que conste explícitamente tal situación.

10.10.2.9.   Se trata de pagos de importaciones de bienes cursados por una persona humana o jurídica para la provisión de un medicamento crítico cuyo registro de ingreso aduanero se concreta mediante Solicitud Particular; o

10.10.2.10.   Pagos de importaciones de bienes con registro de ingreso aduanero pendiente por hasta el 20% (veinte por ciento) del valor FOB de bienes de capital, según la Nomenclatura Común del MERCOSUR (Decreto 690/02 y complementarias), cursados por personas humanas o personas jurídicas que clasifiquen como MiPyME según lo dispuesto en las normas de "Determinación de la condición de micro, pequeña y mediana empresa", en la medida que no sean bienes que correspondan a las posiciones arancelarias detalladas en el punto 12.1.

10.10.2.11.   Se trata de un pago de importaciones de bienes oficializadas a partir del 13/06/24 como parte de la implementación y ejecución de un plan de acción establecido por la Secretaría de Transporte del Ministerio de Economía en el marco de la emergencia pública en materia ferroviaria para los servicios de transporte de pasajeros y cargas de jurisdicción nacional establecida en el Decreto 525/24.

La entidad deberá contar con la documentación emitida por la Secretaría de Transporte que certifique que los bienes a abonar se encuentran comprendidos en el Plan de Acción establecido por esa secretaría.

10.10.2.12.   Pago a la vista y/o pago diferido de importaciones de bienes que se concreten:

i)   mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta en moneda extranjera en una entidad financiera local; y/o

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|----------|--------------------|
|          | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

ii) en forma simultánea con la liquidación de financiaciones en moneda extranjera otorgadas al cliente por entidades financieras locales que cumplan las condiciones estipuladas en los puntos 10.10.2.1.i) y 10.10.2.1.ii).

10.10.2.13. Pagos anticipados de bienes de capital en la medida que se concreten:

i) mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta en moneda extranjera en una entidad financiera local; y/o

ii) en forma simultánea con la liquidación de financiaciones en moneda extranjera otorgadas al cliente por entidades financieras locales que cumplan las condiciones estipuladas en los puntos 10.10.2.1.i) y 10.10.2.1.ii).

10.10.2.14. Se trata de un pago diferido de importaciones de bienes de capital concretado por un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo para Grandes Inversiones (RIGI) por financiaciones comerciales comprendidas en los puntos 14.2.1.7., 14.2.1.8. o 14.2.1.9. que pueden computarse como ingresada y liquidada por el mercado de cambios.

Se podrá considerar como importación de bienes de capital a: i) aquellas que correspondan a bienes cuyas posiciones arancelarias se encuentren clasificadas como BK en la Nomenclatura Común del MERCOSUR (Decreto 690/02 y complementarias) y ii) aquellas que incluyan otros bienes en la medida que los bienes clasificados como BK representen como mínimo el 90% (noventa por ciento) del valor FOB total de la operación y la entidad cuente con una declaración jurada del cliente en la cual deje constancia de que los restantes bienes son repuestos, accesorios o materiales necesarios para el funcionamiento, construcción o instalación de los bienes de capital que se están adquiriendo.

10.11. Disposiciones complementarias para importaciones de bienes con registro de ingreso aduanero hasta el 12/12/23.

Se requerirá la conformidad previa del BCRA para el acceso al mercado de cambios para realizar pagos de importaciones por bienes con registro de ingreso aduanero hasta el 12/12/23, excepto cuando, adicionalmente a los restantes requisitos aplicables, la entidad verifique que:

10.11.1. el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por entidades financieras locales o del exterior; o

10.11.2. el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por organismos internacionales y/o agencias oficiales de crédito; o



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

Las entidades podrán considerar también como operación garantizada por una agencia oficial de crédito a aquella que se encuentre cubierta por una garantía emitida por una aseguradora privada por cuenta y orden de un gobierno nacional de otro país. En todos los casos, la entidad interviniente deberá contar con documentación en la que conste explícitamente tal situación.

10.11.3. el cliente cuenta por el equivalente al monto a pagar con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.; o

10.11.4. el pago es concretado mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL); o

10.11.5. el pago es concretado en el marco de lo dispuesto en el punto 4.7.4. por un cliente que suscribió BOPREAL Serie 1 por un monto igual o mayor al 50% (cincuenta por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5. con anterioridad al 31/01/24; o

10.11.6. el pago es concretado en el marco de lo dispuesto en el punto 4.7.5. por un cliente que suscribió BOPREAL Serie 1 por un monto igual o mayor al 25% (veinticinco por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5. con anterioridad al 31/01/24; o

10.11.7. el pago es concretado a partir del 10/02/24 por una persona humana o una persona jurídica que clasifique como MiPyMe según lo dispuesto en las normas de "Determinación de la condición de micro, pequeña y mediana empresa" y se cumple la totalidad de las siguientes condiciones:

10.11.7.1. El monto total de sus deudas por importaciones de bienes y servicios previas al 13/12/23 pendiente de pago al 24/01/24 fuera menor o igual al equivalente a USD 500.000 (dólares estadounidenses quinientos mil).

10.11.7.2. El cliente haya registrado la totalidad de sus deudas por importaciones de bienes y servicios en el "Padrón de Deuda Comercial por Importaciones con Proveedores del Exterior" establecido por Resolución General Conjunta 5466/23 de la AFIP y la Secretaría de Comercio y concordantes.

10.11.7.3. Los pagos por deudas de bienes o servicios realizados en el marco de los mecanismos previstos en este punto y/o en el punto 13.4.8., en el conjunto de las entidades y por el conjunto de los conceptos, no superen el equivalente al monto declarado en el referido padrón.

10.11.7.4. La operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 10. Pagos de importaciones y otras compras de bienes en el exterior. |

10.11.7.5. La entidad cuente con una declaración jurada del cliente en la que conste que:

i) la totalidad de sus deudas por importaciones de bienes y servicios previas al 13/12/23 han sido declaradas en el "Padrón de Deuda Comercial por Importaciones con Proveedores del Exterior" y el monto total adeudado a la fecha de cierre del mencionado registro no supera el equivalente a USD 500.000 (dólares estadounidenses quinientos mil).

ii) los montos abonados por este mecanismo en el conjunto de las entidades y por el conjunto de los conceptos no superan los límites previstos en el punto 10.11.7.3.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

**11.1. Seguimiento de oficializaciones de importación.**

Quedarán comprendidas todas las oficializaciones de importación ocurridas a partir del 01/11/19 y aquellas que sean anteriores por las cuales se solicite realizar pagos a través del mercado de cambios a partir de la mencionada fecha.

Por cada oficialización del despacho de importación, el importador deberá nominar una entidad para que se haga responsable del seguimiento de la oficialización. Esta entidad será la responsable de verificar el cumplimiento de las condiciones estipuladas en la presente normativa que habilitarán el acceso al mercado de cambios y/o la afectación de una oficialización a la regularización de un pago con registro aduanero pendiente.

La entidad será originalmente nominada por el importador ante la ARCA, pudiendo el importador posteriormente modificarla en la medida que, a la fecha de la solicitud de cambio de entidad, no existan certificaciones emitidas de acceso al mercado de cambios que estén pendientes de uso.

En caso de que el importador no haya nominado a una entidad al momento de la oficialización podrá posteriormente seleccionar una entidad que se haga cargo del seguimiento.

Serán elegibles para el importador, quedando obligadas a llevar a cabo las responsabilidades asociadas al presente seguimiento, todas las entidades financieras y casas de cambio salvo aquellas que hayan notificado al BCRA que han optado por no operar en comercio exterior.

11.1.1.   Responsabilidades de la entidad nominada.

La entidad nominada por el importador para el seguimiento de la oficialización del despacho de importación será la responsable de:

11.1.1.1.   Verificar que la documentación presentada por el importador sea consistente con los registros aduaneros considerando las normas de declaración aduanera aplicables al respecto.

11.1.1.2.   Controlar que el monto de los pagos y otros movimientos registrados con imputación al despacho no supere el monto facturado según la condición de compra pactada.

La entidad deberá reportar en el SEPAIMPO cuando se convalide un monto comprendido en el valor facturado según la condición de compra pactada y que no conste en los registros aduaneros por la aplicación de las normas de declaración aduanera.

11.1.1.3.   Verificar, en el caso de operaciones financiadas, que la misma queda encuadrada como una deuda por importaciones de bienes según lo dispuesto en el punto 10.2.4.

11.1.1.4.   Emitir a pedido del importador las certificaciones que habilitarán el acceso al mercado de cambios para el pago de deudas comerciales de importaciones con imputación a oficializaciones de importación bajo su seguimiento.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

La entidad deberá verificar, previamente a emitir cada certificación, el cumplimiento de los requisitos establecidos a la fecha de emisión de la certificación.

11.1.1.5. En el caso de una importación oficializada hasta el 31.10.19, previamente a la emisión de la primera certificación con posterioridad a la fecha indicada, la entidad nominada deberá contar con una declaración jurada consignando el detalle de los pagos realizados con imputación por dicha oficialización y el saldo de deuda pendiente a la fecha para la misma. Esta declaración deberá ser firmada por el importador o quien ejerza su representación legal o un apoderado con facultades suficientes para asumir este compromiso en nombre del importador.

11.1.1.6. Emitir a pedido del importador las certificaciones para afectar la oficialización del despacho de importación bajo seguimiento a un pago de importaciones con registro aduanero pendiente.

La entidad deberá verificar, previamente a emitir cada certificación, la correspondencia del pago con la operación oficializada.

11.1.1.7. Emitir a pedido del importador las certificaciones que habilitarán el acceso al mercado de cambios para la cancelación al exterior de deudas originadas en la importación argentina de bienes que no encuadran como deudas comerciales.

La entidad deberá verificar, previamente a emitir cada certificación, el cumplimiento de los requisitos establecidos a la fecha de emisión de la certificación.

11.1.1.8. Emitir a pedido del importador las certificaciones que habilitarán la suscripción de Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por los despachos con registro de ingreso aduanero hasta el 12.12.23 cuando se cumplan los requisitos previstos en el punto 4.4.

11.1.1.9. Por los bienes ingresados a zona franca sin una venta de bienes de un no residente a un residente, la entidad deberá inhabilitar el ZFI para la realización de pagos y reportar en el SEPAIMPO los ZFE con transferencia aduanera de dominio, asociados al ZFI por los cuales se le ha solicitado la emisión de una certificación. La emisión de estas certificaciones sólo se podrá realizar una vez inhabilitado el ZFI.

11.1.1.10. Emitir a pedido del importador certificaciones con el detalle correspondiente para que la entidad encargada del seguimiento del ingreso de divisas de exportaciones de bienes pueda realizar la imputación al cumplimiento del permiso de embarque en función de la normativa aplicable.

11.1.1.11. Emitir a pedido del importador certificaciones con el detalle correspondiente para que la entidad encargada del "Seguimiento de anticipos y otras financiaciones de exportación de bienes" pueda convalidar la aplicación de divisas en el marco del mecanismo dispuesto en el punto 7.11.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

11.1.1.12. Reportar al BCRA todas las otras circunstancias de las que tomen conocimiento y que modifiquen las obligaciones con el exterior del importador por el despacho.

11.1.1.13. Registrar en el SEPAIMPO la baja del valor correspondiente a la diferencia entre el valor aduanero del despacho correspondiente a la condición de compra pactada, y el valor que consta en la factura de compra, cuando este último sea menor. En las condiciones cumplidas con anterioridad a la condición FOB, a los efectos del registro de la diferencia, se tomará el valor FOB de la oficialización del despacho de importación.

11.1.1.14. Mantener un registro de las certificaciones emitidas, de las anuladas y otros movimientos con imputación al despacho. Este registro será considerado información a disposición del BCRA.

11.1.1.15. Archivar a disposición del BCRA toda la documentación utilizada en el marco del seguimiento del despacho.

11.1.2. Información de los registros aduaneros de oficializaciones de despacho de importación a disposición de las entidades.

Los datos básicos de identificación (N° de oficialización, CUIT y razón social del importador y entidad nominada) estarán disponibles a través de una consulta puntual para todas las entidades, permitiéndoles conocer cuál es la entidad encargada del seguimiento de la oficialización del despacho en ese momento a los efectos de requerirle las certificaciones necesarias.

La entidad que conste ante el BCRA como última entidad nominada por el importador para el seguimiento, tendrá acceso a información detallada de la oficialización que le permita cumplimentar las responsabilidades que le corresponden.

11.1.3. Certificación para el acceso al mercado de cambios para el pago de importaciones de bienes con registro de ingreso aduanero.

A solicitud del importador, la entidad procederá a emitir la certificación que habilita el acceso del importador al mercado de cambios para realizar un pago con imputación del despacho de importación bajo seguimiento de la entidad, por cualquier entidad que opere en comercio exterior.

La emisión de una certificación por parte de la entidad implica que, a la fecha de su emisión, se verifican todos los requisitos normativos previstos en el punto 10.3.2.1.

En la certificación que emita la entidad para habilitar el acceso al mercado de cambios deberá constar al menos la siguiente información:

11.1.3.1. Código de la entidad que emite la certificación.

11.1.3.2. Fecha de emisión de la certificación.

11.1.3.3. CUIT del importador.

11.1.3.4. Nombre completo o denominación social del importador.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

11.1.3.5.   N° de oficialización del despacho de importación.

11.1.3.6.   Moneda en que está contraída la deuda con el exterior.

11.1.3.7.   Monto de la certificación en dicha moneda.

11.1.3.8.   Fecha del próximo vencimiento.

11.1.3.9.   Código de concepto del régimen informativo de operaciones de cambio.

11.1.3.10.  Nombre completo o denominación social del beneficiario del exterior.

11.1.3.11.  País de residencia del beneficiario del exterior.

11.1.3.12.  Entidad financiera del exterior al que se girarán los fondos.

Las certificaciones tendrán una validez de 10 (diez) días hábiles a contar desde la fecha de emisión y serán transmitidas por la entidad emisora a la entidad por la cual se curse el pago por un medio seguro, en la medida que el importador haya presentado la documentación correspondiente y que se cumplan los requisitos para su emisión.

La devolución de las certificaciones no utilizadas será efectuada entre las entidades involucradas. La entidad a cargo del seguimiento deberá considerar como utilizada toda certificación no devuelta.

11.1.4.  Certificación para afectación del despacho a pagos con registro de ingreso aduanero pendiente.

A solicitud del importador, la entidad procederá a emitir la certificación que habilita a la entidad encargada del seguimiento del pago con registro de ingreso aduanero pendiente, a afectar el pago a la oficialización de importación.

En la certificación que emita la entidad, deberá constar al menos la siguiente información:

11.1.4.1.   Código de la entidad que emite la certificación.

11.1.4.2.   Fecha de emisión de la certificación.

11.1.4.3.   CUIT del importador.

11.1.4.4.   Nombre completo o denominación social del importador.

11.1.4.5.   N° de oficialización del despacho de importación.

11.1.4.6.   Fecha de la oficialización del despacho de importación.

11.1.4.7.   Nombre del proveedor del exterior.

11.1.4.8.   Moneda en que se expresa el valor FOB de la destinación.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

11.1.4.9.   Monto por el cual el importador solicita afectar el despacho en la moneda de compra.

11.1.4.10.   Código de la entidad por la cual se cursó el pago.

11.1.4.11.   Fecha de acceso al mercado de cambios.

Las certificaciones serán transmitidas por un medio seguro entre la entidad emisora y la entidad por la cual se cursó el pago.

El BCRA tomará conocimiento de la utilización de esta certificación a través del reporte en el SEPAIMPO de la entidad encargada del seguimiento del pago con registro de ingreso aduanero pendiente.

11.1.5.   Reporte al BCRA de otras circunstancias que modifiquen las obligaciones con el exterior del importador.

La entidad encargada del seguimiento de la oficialización del despacho de importación deberá reportar en el SEPAIMPO toda circunstancia de la que tome conocimiento e implique una modificación de las obligaciones con el exterior del importador.

Las circunstancias que deberán ser reportadas comprenden a:

11.1.5.1.   Conceptos comprendidos en el valor facturado según la condición de compra pactada que no constan en los registros aduaneros por la aplicación de las normas de declaración aduanera.

11.1.5.2.   Pagos en el exterior con fondos de libre disponibilidad, que deberán ser informados por el importador a la entidad de seguimiento.

11.1.5.3.   Imputación de la oficialización en forma total o parcial a la excepción de ingreso y liquidación de los cobros de una destinación de exportación.

11.1.5.4.   Nota de crédito. Condonación de deuda del acreedor.

11.1.5.5.   Capitalización de deuda / Aporte de capital en especie.

11.1.5.6.   Otros.

11.1.6.   Reporte al BCRA del cambio de la entidad a cargo del seguimiento.

La entidad encargada del seguimiento de la oficialización del despacho de importación deberá reportar al BCRA en el marco del SEPAIMPO cuando, a pedido del importador, ceda su seguimiento a otra entidad de plaza.

A los efectos de poder concretarse la cesión se deberán verificar las siguientes condiciones:

11.1.6.1.   La entidad cedente no registra certificaciones emitidas y no devueltas cuyo plazo de vigencia aún no haya vencido.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

11.1.6.2. Por las certificaciones emitidas y no devueltas, le consta su uso por parte de la entidad que dio el acceso al mercado de cambios y/o que la afectó a un pago pendiente.

11.1.6.3. La entidad cedente cuenta con una notificación de la nueva entidad designada aceptando la designación.

11.1.6.4. La entidad cedente le ha comunicado fehacientemente a la entidad receptora de la nueva designación, todas las certificaciones que ha emitido con imputación al despacho.

11.2. Seguimiento de pagos de importaciones realizados con anterioridad al registro de ingreso aduanero.

Comprende todo pago de importaciones con registro de ingreso aduanero pendiente cursado por el mercado de cambios a partir del 02.09.19, quedando a cargo del seguimiento la entidad que le dio curso.

Las operaciones cursadas quedarán incorporadas al SEPAIMPO a partir de su reporte en el Régimen Informativo de Operaciones de Cambios (RIOC).

Los datos asociados a cada pago podrán ser remitidos y/o consultados en el SEPAIMPO exclusivamente por la entidad que cursó el pago.

11.2.1. Responsabilidades de la entidad a cargo del seguimiento del pago con registro de ingreso aduanero pendiente.

En su carácter de entidad seguidora del pago, la entidad será responsable de:

11.2.1.1. Verificar el cumplimiento por parte del importador de los plazos previstos para el registro de la oficialización de los despachos de importación o el reingreso de las divisas, reportando al BCRA la falta de cumplimiento por parte del importador, en la medida que no haya regularizado la operación.

11.2.1.2. Reportar por el SEPAIMPO al BCRA las afectaciones de despachos de importación imputadas al pago, sobre la base de las certificaciones emitidas por las entidades a cargo del seguimiento de la oficialización del despacho de importación.

11.2.1.3. Reportar en el SEPAIMPO las prórrogas en los plazos que fuesen concedidas a las operaciones bajo su seguimiento, indicando la nueva fecha de vencimiento y el motivo de la prórroga.

11.2.1.4. Tomar registro de las liquidaciones de divisas asociadas a devoluciones de pagos en base a la certificación de la entidad por donde se cursaron los fondos. En el SEPAIMPO la información surgirá de los datos remitidos por las entidades en el marco del Régimen Informativo de Operaciones de Cambios.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 11. Sistema de seguimiento de pagos de importaciones (SEPAIMPO). |

11.2.1.5.   Reportar en el SEPAIMPO dentro de los 5 (cinco) días hábiles siguientes a la fecha de acceso al mercado de cambios, la CUIT y nombre del cliente por el cual se ha accedido al mercado de cambios en los casos de cancelación de garantías otorgadas por importaciones de bienes.

11.2.1.6.   Reportar en el SEPAIMPO todas las otras circunstancias de las que tome conocimiento y que modifiquen el monto pendiente de regularización, como ser: usos de márgenes normativos y tratamientos previstos en la norma para casos de siniestros y en gestión de cobro.

11.2.1.7.   Mantener un registro de todos los movimientos con imputación al pago de importación con registro de ingreso aduanero pendiente. Este registro estará a disposición del BCRA.

11.2.1.8.   Archivar a disposición del BCRA toda la documentación utilizada en el marco del seguimiento del pago realizado.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 12. Posiciones arancelarias de la NCM con tratamiento específico en las normas de importaciones de bienes. |

## 12.1.    Posiciones arancelarias referidas en el punto 10.10.2.10.

| Posición NCM | Observaciones |
|---|---|
| 8802.11.00 | |
| 8802.12.10 | |
| 8802.12.90 | |
| 8802.20.10 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.20.21 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.20.22 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.20.90 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.10 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.21 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.29 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.31 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.39 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.30.90 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.40.10 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |
| 8802.40.90 | Quedan exceptuadas las importaciones realizadas por empresas que presten servicios de aeronavegación. |



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

**13.1. Disposiciones generales.**

Las entidades podrán dar acceso al mercado de cambios por pagos de servicios prestados por no residentes en la medida que se cumplan las siguientes condiciones:

13.1.1.   El cliente cuenta con la documentación que permite avalar la existencia del servicio.

13.1.2.   En el caso de deudas comerciales por servicios el acceso se produce a partir de la fecha de vencimiento, en la medida que se verifique que la operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

A los efectos del acceso al mercado de cambios, corresponde considerar deudas comerciales por la importación de servicios a los endeudamientos originados en la adquisición de servicios a no residentes que sean análogos a aquellos enunciados en el punto 10.2.4. para la importación de bienes.

Los pagos por deudas originadas en la adquisición de servicios a no residentes que no encuadren como deudas comerciales se regirán por las normas que sean de aplicación para la cancelación de servicios de capital de préstamos financieros.

13.1.3.   Si se trata de servicios que fueron o serán prestados o devengados a partir del 13.12.23, la entidad deberá constatar adicionalmente que el pago cumple alguna de las siguientes condiciones:

    i)   se realiza respetando los plazos detallados en el punto 13.2. según el tipo de servicio; o

    ii)   se realiza antes de los plazos detallados en el punto 13.2. en virtud de que la operación encuadra en alguna de las situaciones previstas en el punto 13.3.

13.1.4.   Si se trata de pagos de deudas por servicios de no residentes que fueron prestados y/o devengados hasta el 12.12.23, la entidad deberá verificar que la operación encuadra en alguna de las situaciones previstas en el punto 13.4.

Los clientes podrán suscribir Bonos para la Reconstrucción de una Argentina Libre (BOPREAL) por hasta el monto de la deuda pendiente de pago por estas operaciones en la medida que se cumplan los requisitos previstos en el punto 4.5.

13.1.5.   En todos los casos la entidad deberá, al momento de dar acceso al mercado de cambios, contar con la convalidación de la situación de la operación en el sistema online implementado por el BCRA a tales efectos.

Los casos que no encuadren en lo expuesto precedentemente quedan sujetos a la conformidad previa del BCRA, debiendo los pedidos ser canalizados por una entidad autorizada a realizar este tipo de pagos.

| Versión: 5a. | COMUNICACIÓN "A" 8035 | Vigencia: 04/06/2024 | Página 1 |
|---|---|---|---|



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

**13.2. Pagos de servicios que fueron o serán prestados o devengados a partir del 13/12/23.**

Las entidades podrán dar acceso al mercado de cambios para cursar pagos de servicios de no residentes que fueron o serán prestados a partir del 13/12/23 cuando, adicionalmente a los restantes requisitos normativos aplicables, la operación queda comprendida en algunas de las situaciones que se detallan a continuación:

13.2.1.   el pago corresponde a una operación que encuadra en los siguientes códigos de concepto:

   S03.   Servicios de transporte de pasajeros.
   S06.   Viajes (excluidas las operaciones asociadas a retiros y/o consumos con tarjetas de residentes con proveedores no residentes o de no residentes con proveedores argentinos).
   S23.   Servicios audiovisuales y conexos.
   S25.   Servicios del gobierno.
   S26.   Servicios de salud por empresas de asistencia al viajero.
   S27.   Otros servicios de salud.
   S29.   Operaciones asociadas a retiros y/o consumos con tarjetas de residentes con proveedores no residentes o de no residentes con proveedores argentinos.

13.2.2.   los gastos que abonen las entidades al exterior por su operatoria habitual.

13.2.3.   el pago corresponde a una operación que encuadra en el concepto "S31. Servicios de fletes por operaciones de exportaciones de bienes" en la cual los fletes forman parte de la condición de venta pactada con el comprador de los bienes y se concreta una vez que la exportación cuenta con el cumplido de embarque otorgado por la Aduana.

13.2.4.   el pago corresponde a una operación que encuadra en el concepto "S30. Servicios de fletes por operaciones de importaciones de bienes" y se concreta una vez transcurrido, desde la fecha de prestación del servicio, un plazo equivalente al cual se podría comenzar a pagar en forma diferida el bien transportado según lo dispuesto en el punto 10.10.1.

13.2.5.   el pago corresponde a una operación que encuadra en el concepto "S24. Otros servicios personales, culturales y recreativos" y se concreta una vez transcurrido un plazo de 90 (noventa) días corridos desde la fecha de prestación o devengamiento del servicio. Este plazo se reducirá a 30 (treinta) días corridos cuando se trate de servicios prestados o devengados a partir del 29/11/24 por una contraparte no vinculada al residente.

13.2.6.   el pago corresponde a un servicio no comprendido en los puntos 13.2.1. a 13.2.5. prestado por una contraparte no vinculada al residente y se concreta una vez transcurrido un plazo de 30 (treinta) días corridos desde la fecha de prestación o devengamiento del servicio.

   Este plazo también será aplicable para las operaciones que correspondan a las transferencias al exterior de agentes locales por sus recaudaciones en el país de fondos correspondientes a servicios prestados por no residentes a residentes.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

13.2.7. el pago corresponde a un servicio no comprendido en los puntos 13.2.1. a 13.2.5. prestado por una contraparte vinculada al residente y se concreta una vez transcurrido un plazo de 180 (ciento ochenta) días corridos desde la fecha de prestación o devengamiento del servicio.

Las operaciones originadas en la prestación de servicios por parte de contrapartes vinculadas continuarán alcanzadas por este requisito aun cuando existiese una modificación del acreedor o del deudor que conlleve a que ya no exista una vinculación entre el acreedor y el deudor residente.

**13.3.** Pagos de servicios que fueron o serán prestados o devengados a partir del 13/12/23 con anterioridad a lo previsto en los puntos 13.2.3. a 13.2.7.

También será admisible el acceso para el pago de servicios que fueron o serán prestados o devengados a partir del 13/12/23 con antelación a los plazos previstos en los puntos 13.2.3. a 13.2.7., cuando adicionalmente a los restantes requisitos normativo, se verifique el encuadre en alguna de las siguientes situaciones:

13.3.1. el cliente accede al mercado de cambios con fondos originados en una financiación en moneda extranjera por importaciones de servicios otorgada por una entidad financiera local en la medida que las fechas de vencimiento y los montos de capital a pagar de la financiación otorgada sea compatible con aquellos previstos en el punto 13.2.

Si el otorgamiento de la financiación es anterior de la fecha de prestación o devengamiento del servicio, los plazos previstos en el punto 13.2. se computarán a partir de la fecha estimada de prestación o devengamiento más 15 (quince) días corridos.

Si el otorgamiento de la financiación es posterior a la fecha de prestación o devengamiento del servicio, los plazos previstos en el punto 13.2. se computarán desde esta última fecha.

13.3.2. El cliente accede al mercado de cambios en forma simultánea con la liquidación de fondos en concepto de anticipos o prefinanciaciones de exportaciones del exterior o prefinanciaciones de exportaciones otorgadas por entidades financieras locales con fondeo en líneas de crédito del exterior, en la medida que se cumplan lo estipulado en el punto 13.3.1. en materia de fechas de vencimiento y los montos de capital a pagar de la financiación.

La entidad adicionalmente deberá contar con una declaración jurada del importador en la cual deja constancia de que será necesaria la conformidad previa del BCRA para la aplicación de divisas de cobros de exportaciones con anterioridad a la fecha de vencimiento que surge de las condiciones de plazo estipuladas para situaciones asociadas a un financiamiento.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

13.3.3.   El cliente accede al mercado de cambios en forma simultánea con la liquidación de fondos originados en un endeudamiento financiero comprendido en el punto 3.5., en la medida que se cumplan lo estipulado en el punto 13.3.1. en materia de fechas de vencimiento y los montos de capital a pagar de la financiación.

La porción del endeudamiento financiero que sea utilizada en virtud de lo dispuesto en el presente punto no podrá ser computada a los efectos de otros mecanismos específicos que habiliten el acceso al mercado de cambios a partir del ingreso y/o liquidación de este tipo de operaciones.

13.3.4.   Se trata de un pago de importaciones de servicios enmarcado en el mecanismo previsto en el punto 7.11.

13.3.5.   El cliente cuenta por el equivalente al valor que abona con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.; o

13.3.6.   el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por entidades financieras locales o del exterior; o

13.3.7.   el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por organismos internacionales y/o agencias oficiales de crédito.

Las entidades podrán considerar también como operación garantizada por una agencia oficial de crédito a aquella que se encuentre cubierta por una garantía emitida por una aseguradora privada por cuenta y orden de un gobierno nacional de otro país. En todos los casos, la entidad interviniente deberá contar con documentación en la que conste explícitamente tal situación.

13.3.8.   el pago se concrete a la fecha de cierre de una operación de recompra y/o rescate de deudas encuadradas en los puntos 3.5.3.1. o 3.6.4.4. y corresponda a los servicios prestados por no residentes derivados a la emisión de los nuevos títulos de deuda y/o la operación de recompra y/o rescate.

13.3.9.   el pago sea a una contraparte no vinculada al cliente y se concrete mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta en moneda extranjera en una entidad financiera local.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

**13.4.** Pagos de servicios de no residentes prestados o devengados hasta el 12/12/23.

Se requerirá la conformidad previa del BCRA para el acceso al mercado de cambios para realizar pagos de servicios de no residentes prestados o devengados hasta el 12/12/23, excepto cuando, adicionalmente a los restantes requisitos aplicables, la entidad verifique que:

13.4.1    el pago corresponde a servicios comprendidos en los puntos 13.2.1. o 13.2.2.; o

13.4.2.   el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por entidades financieras locales o del exterior; o

13.4.3.   el pago corresponda a la cancelación de deudas por operaciones financiadas o garantizadas con anterioridad al 13/12/23 por organismos internacionales y/o agencias oficiales de crédito; o

Las entidades podrán considerar también como operación garantizada por una agencia oficial de crédito a aquella que se encuentre cubierta por una garantía emitida por una aseguradora privada por cuenta y orden de un gobierno nacional de otro país. En todos los casos, la entidad interviniente deberá contar con documentación en la que conste explícitamente tal situación.

13.4.4.   el cliente cuenta por el equivalente al monto a pagar con una "Certificación por los regímenes de acceso a divisas para la producción incremental de petróleo y/o gas natural (Decreto 277/22)" emitida en el marco de lo dispuesto en el punto 3.17.; o

13.4.5.   el pago se concreta mediante la realización de un canje y/o arbitraje con los fondos depositados en una cuenta local y originados en cobros de capital e intereses en moneda extranjera de los Bonos para la Reconstrucción de una Argentina Libre (BOPREAL); o

13.4.6.   el pago se concreta en el marco de lo dispuesto en el punto 4.7.4. por un cliente que suscribió BOPREAL Serie 1 por un monto igual o mayor al 50% (cincuenta por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5. con anterioridad al 31/01/24.; o

13.4.7.   el pago se concreta en el marco de lo dispuesto en el punto 4.7.5. por un cliente que suscribió BOPREAL Serie 1 por un monto igual o mayor al 25% (veinticinco por ciento) del total pendiente por sus deudas elegibles para los puntos 4.4. y 4.5. con anterioridad al 31/01/24; o

13.4.8.   el pago es concretado a partir del 10/02/24 por una persona humana o una persona jurídica que clasifique como MiPyMe según lo dispuesto en las normas de "Determinación de la condición de micro, pequeña y mediana empresa" y se cumple la totalidad de las siguientes condiciones:

i)    El monto total de sus deudas por importaciones de bienes y servicios previas al 13/12/23 pendiente de pago sea menor o igual al equivalente a USD 500.000 (dólares estadounidenses quinientos mil).



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
| --- | --- |
| | Sección 13. Pagos de servicios prestados por no residentes. |

ii) El cliente haya registrado la totalidad de sus deudas por importaciones de bienes y servicios en el "Padrón de Deuda Comercial por Importaciones con Proveedores del Exterior" establecido por Resolución General Conjunta 5466/23 de la AFIP y la Secretaría de Comercio y concordantes.

iii) Los pagos por deudas de bienes o servicios realizados en el marco de los mecanismos previstos en este punto y/o en el punto 10.11.7., en el conjunto de las entidades y por el conjunto de los conceptos, no superen el equivalente al monto declarado en el referido padrón.

iv) La operación se encuentra declarada, en caso de corresponder, en la última presentación vencida del "Relevamiento de activos y pasivos externos".

v) La entidad cuente con una declaración jurada del cliente en la que conste que:

   a) la totalidad de sus deudas por importaciones de bienes y servicios previas al 13/12/23 han sido declaradas en el "Padrón de Deuda Comercial por Importaciones con Proveedores del Exterior" y el monto total adeudado a la fecha de cierre del mencionado registro no supera el equivalente a USD 500.000 (dólares estadounidenses quinientos mil).

   b) los montos abonados por este mecanismo en el conjunto de las entidades y por el conjunto de los conceptos no superan los límites previstos en el punto iii) precedente.

13.5. Cancelación de cartas de crédito o letras avaladas emitidas u otorgadas por entidades financieras para garantizar importaciones de servicios.

Las entidades financieras tendrán acceso al mercado de cambios para cursar pagos propios por cartas de crédito o letras avaladas emitidas u otorgadas para garantizar operaciones de importaciones de servicios, en la medida que se verifique que cumplían las condiciones que resultaban aplicables según la fecha en que se emitió u otorgó la carta de crédito o letra avalada.

En particular, en el caso de cartas de crédito o letras avaladas emitidas u otorgadas a partir del 13/12/23, la entidad deberá contar con la documentación que demuestre que, al momento de la apertura o emisión, la operación garantizada correspondía a un servicio prestado o devengado a partir del 13/12/23 y el pago garantizado debía ser concretado por el cliente a partir de la fecha que resultaba de adicionar el plazo en días corridos que le corresponde al servicio por el punto 13.2. más otros 15 (quince) días corridos a la fecha estimada de prestación o devengamiento del servicio.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 13. Pagos de servicios prestados por no residentes. |

13.6. **Líneas de crédito de entidades financieras aplicadas a la financiación de importaciones de servicios.**

La entidad financiera tendrá acceso al mercado de cambios, en las condiciones previstas en el punto 3.15.1., para la cancelación de líneas de crédito del exterior aplicadas a la financiación de importaciones argentinas de servicios en la medida que la misma califique como deuda comercial según lo dispuesto en el segundo párrafo del punto 13.1.2. y la entidad cuente la documentación que demuestre que, al momento del otorgamiento de la financiación al importador, se cumplían las condiciones que resultaban aplicables en ese momento al tipo de operación financiada por la entidad.

En el caso de las financiaciones otorgadas a partir del 13/12/23, la entidad deberá contar con la documentación que demuestre que:

i) la operación financiada correspondía a una importación de servicios prestada o devengada a partir del 13/12/23.

ii) la fecha de vencimiento de la financiación otorgada era compatible con los plazos previstos en el punto 13.2.:

a) si el otorgamiento de la financiación es anterior de la fecha de prestación o devengamiento del servicio, los plazos previstos en el punto 13.2. se computarán a partir de la fecha estimada de prestación o devengamiento del servicio más 15 (quince) días corridos.

b) si el otorgamiento de la financiación es posterior a la fecha de prestación o devengamiento del servicio, los plazos previstos en el punto 13.2. se computarán desde la última fecha mencionada.

Los casos que no cumplan las condiciones requeridas quedarán sujetos a la conformidad previa del BCRA.

**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

En esta sección se detallan las disposiciones complementarias en materia cambiaria que, en la medida que las disposiciones generales no resulten más favorables, resultan aplicables a un Vehículo de Proyecto Único (VPU) adherido al Régimen de Incentivo los referidas al "Régimen de Incentivo para Grandes Inversiones" (RIGI) establecido en el Título VII de la Ley 27.742 y reglamentado por el Decreto 749/24 y concordantes.

**14.1.** **Beneficios relacionados con el ingreso y/o liquidación de cobro de exportaciones de bienes y servicios.**

Para un VPU adherido al RIGI que haya declarado ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el artículo 198 de la Ley 27.742 en materia de cobro de exportaciones de bienes y servicios resultará de aplicación lo siguiente:

14.1.1. Las exportaciones de bienes efectuadas por un VPU adherido al RIGI por un proyecto declarado de Exportación Estratégica de Largo Plazo quedarán exceptuadas de la obligación de ingreso y/o liquidación del contravalor en divisas por un porcentaje del valor percibido según la condición de venta que quedará determinado en base a la fecha en que se concrete la exportación con relación a la fecha de puesta en marcha del VPU reportada al BCRA por la Autoridad de Aplicación:

    i)    0% (cero por ciento)    embarcada dentro del año de plazo.
    ii)  20% (veinte por ciento)    embarcada luego del plazo de 1 (un) año.
    iii) 40% (cuarenta por ciento)    embarcada luego del plazo de 2 (dos) años.
    iv) 100% (ciento por ciento)    embarcada luego del plazo de 3 (tres) años.

14.1.2. Las exportaciones de bienes efectuadas por un VPU adherido al RIGI por un proyecto que no fue declarado de Exportación Estratégica de Largo Plazo quedarán exceptuadas de la obligación de ingreso y/o liquidación del contravalor en divisas por un porcentaje del valor percibido según la condición de venta que quedará determinado en base a la fecha en que se concrete la exportación con relación a la fecha de puesta en marcha del VPU reportada al BCRA por la Autoridad de Aplicación:

    i)    0% (cero por ciento)    embarcada dentro de los 2 (dos) años de plazo.
    ii)  20% (veinte por ciento)    embarcada luego del plazo de 2 (dos) años.
    iii) 40% (cuarenta por ciento)    embarcada luego del plazo de 3 (tres) años.
    iv) 100% (ciento por ciento)    embarcada luego del plazo de 4 (cuatro) años.

14.1.3. Los cobros por la prestación de servicios a un no residente por parte de un VPU titular de un proyecto adherido al RIGI quedarán exceptuados de la obligación de ingreso y/o liquidación por la totalidad del contravalor en divisas en la medida que el servicio haya sido prestado o devengado a partir de la fecha de puesta en marcha del VPU reportada por la Autoridad de Aplicación al BCRA.

14.1.4. Los cobros anticipados de exportaciones de bienes, las prefinanciaciones y las posfinanciaciones locales o del exterior quedarán exceptuadas de la obligación de ingreso y liquidación en el mismo porcentaje que le resultará aplicable a la exportación que es financiada.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

En caso de que la exportación de bienes se concrete finalmente en una fecha por la cual correspondiese quedar exceptuada por un porcentaje menor al considerado al momento de la liquidación del anticipo o prefinanciación, el exportador deberá demostrar el ingreso y liquidación de la diferencia generada para obtener la certificación de cumplido del permiso correspondiente.

14.1.5. Los cobros de exportaciones de bienes y servicios, anticipos, prefinanciaciones y posfinanciaciones de exportaciones no alcanzados por las excepciones dispuestas en los puntos precedentes, estarán sujetas a la obligación de ingreso y liquidación por el mercado de cambios en los plazos que resultan aplicables en cada caso.

14.2. **Beneficios relacionados con el acceso al mercado de cambios para operaciones de egreso.**

Adicionalmente lo previsto en la normativa general en materia de egresos por el mercado de cambios, en la medida que se cumplan los restantes requisitos aplicables a cada operación, por aquellas financiaciones o aportes de inversión directa recibidos por el VPU adherido a partir de la vigencia de la Ley 27.742, las entidades podrán también dar acceso en las siguientes situaciones:

14.2.1. En el marco de lo dispuesto en los puntos 3.3., 3.5., 3.6. y 10.3.2., según corresponda, sin necesidad de contar con la conformidad previa del BCRA si tal requisito estuviese vigente, las entidades podrán darle acceso al cliente para pagar, incluso antes de la fecha de vencimiento, los intereses devengados hasta la fecha de acceso que se encuentren impagos y/o el capital pendiente de:

14.2.1.1. emisiones de títulos de deuda con registro en el exterior y otros endeudamientos financieros con el exterior ingresados y liquidados en el mercado de cambios.

14.2.1.2. emisiones de títulos de deuda con registro en el país suscriptos íntegramente en el exterior y que fueron ingresados y liquidados en el mercado de cambios.

14.2.1.3. otras emisiones de títulos de deuda con registro en el país denominados en moneda extranjera y que fueron ingresados y/o liquidados en el mercado de cambios.

14.2.1.4. pagarés con oferta pública emitidos en el marco de la Resolución General 1003/24 de la Comisión Nacional de Valores (CNV) y concordantes, denominados y suscriptos en moneda extranjera y cuyos servicios de capital e intereses sean pagaderos en moneda extranjera en el país, liquidados en el mercado de cambios.

14.2.1.5. financiaciones en moneda extranjera otorgadas por entidades financieras locales que no fueron fondeadas con una línea de crédito de una entidad financiera del exterior, liquidadas en el mercado de cambios.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

14.2.1.6.  financiaciones financieras en moneda extranjera otorgadas por entidades financieras locales fondeadas a partir de una línea de crédito de una entidad financiera del exterior, liquidadas en el mercado de cambios.

14.2.1.7.  financiaciones comerciales en moneda extranjera otorgadas por una entidad financiera local fondeadas a partir de una línea de crédito de una entidad financiera del exterior en la cual los desembolsos se aplicaron simultáneamente a realizar por el mercado de cambios pagos de importaciones de bienes de capital al proveedor del exterior o al pago de fletes de importación de bienes de capital, según las disposiciones aplicables en cada caso.

14.2.1.8.  financiaciones comerciales otorgadas por el proveedor del exterior para la importación de bienes de capital en la medida que puedan ser computadas como ingresadas y liquidadas en el mercado de cambios por cumplir los requisitos previstos en el punto 14.5.3.

14.2.1.9.  financiaciones comerciales otorgadas por una entidad financiera del exterior y/o agencia de crédito del exterior aplicadas a la importación de bienes de capital en la medida que puedan ser computadas como ingresadas y liquidadas en el mercado de cambios por cumplir los requisitos previstos en el punto 14.5.3.

14.2.1.10.  préstamos financieros del exterior otorgados por contrapartes vinculadas al cliente aplicados directamente a la importación de bienes de capital en la medida que puedan ser computados como ingresadas y liquidadas en el mercado de cambios por cumplir los requisitos previstos en el punto 14.5.3.

14.2.1.11.  emisiones de títulos de deuda denominados en moneda extranjera en la medida que los fondos hayan sido suscriptos íntegramente en el exterior y aplicados en forma directa a la importación de bienes de capital en la medida que puedan ser computadas como ingresadas y liquidadas en el mercado de cambios por cumplir los requisitos previstos en el punto 14.5.3.

En el caso de que la totalidad de los fondos obtenidos por la financiación no pudiese ser computada como ingresada y liquidada en el mercado de cambios, las entidades también podrán dar acceso al VPU adherido, sin necesidad de contar con la conformidad previa del BCRA si tal requisito estuviese vigente, para realizar:

i)  pagos de intereses devengados hasta la fecha de acceso que se encuentren impagos y que correspondan a la porción del capital equivalente a la proporción de los fondos recibidos por el VPU por la financiación que puede computarse como ingresada y liquidada por el mercado de cambios.

ii)  pagos por capital adeudado que corresponda a la porción del capital equivalente a la proporción de los fondos recibidos por el VPU por la financiación que puede computarse como ingresada y liquidada por el mercado de cambios.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

14.2.2. En el marco de lo dispuesto en el punto 3.4. las entidades también podrán darle acceso al mercado de cambios al VPU para pagar utilidades y dividendos a sus accionistas no residentes, sin necesidad de contar con la conformidad previa del BCRA si este requisito estuviese vigente, cuando el pago corresponda a montos pendientes con el accionista no residente por:

    i) la proporción de sus aportes de inversión directa en el VPU que fue ingresada y liquidada por el mercado de cambios, o

    ii) por sus aportes de inversión directa en especie instrumentados mediante la entrega al VPU de bienes de capital que cumplen las condiciones previstas en el punto 14.5.4.

14.2.3. En el marco de lo dispuesto en el punto 3.13., las entidades también podrán dar acceso a un VPU adherido al RIGI para concretar, sin necesidad de contar con la conformidad previa del BCRA ni respetar plazos mínimos de permanencia si alguno de estos requisitos estuviese vigente, la repatriación de los aportes de inversión directa de sus accionistas no residentes que fueron destinados a financiar el proyecto en la medida que el monto acumulado de las repatriaciones de capital del no residente sea menor o igual a la suma de los aportes contemplados en los incisos i) y ii) del punto 14.2.2. precedente.

14.2.4. Las entidades podrán también en el marco del punto 3.13., sin conformidad previa del BCRA si el requisito estuviese vigente, a un cliente no residente para la transferencia al exterior de los fondos que haya percibido en el país por su carácter de acreedor por un endeudamiento con el exterior otorgado a un VPU, en la medida que:

    i) los fondos correspondan a un cobro del capital y/o intereses del endeudamiento a partir de pagos realizados por el VPU o a partir de cualquier modalidad que haya permitido el cobro en el país a partir de un incumplimiento del VPU; como ser el pago por otro residente -incluyendo empresas vinculadas al VPU- en carácter de garante.

    ii) la entidad verifique que el deudor hubiese tenido acceso para realizar el pago a su nombre por cumplimentar las disposiciones normativas aplicables, debiendo quedar constancia en el boleto de cambio de venta la identificación del VPU cuyo endeudamiento ha permitido el acceso.

    En caso de tratarse de la repatriación de un cobro de capital, la entidad deberá registrar la operación en el sistema online a nombre del VPU y obtener la correspondiente convalidación respecto al cumplimiento de lo previsto en el punto 14.4.1.

    iii) el acceso al mercado de cambios se concrete dentro de los 10 (diez) días hábiles siguientes a la disponibilidad de los fondos por parte del no residente.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

**14.3. Otros beneficios.**

14.3.1. Se admite en el marco de lo dispuesto en el punto 7.9. la aplicación por parte de VPU adherido al RIGI de cobros de exportaciones de bienes y servicios sujetos a la obligación de ingreso y liquidación en el mercado de cambios para:

   i) pagos de intereses devengados impagos hasta la fecha de aplicación y/o capital pendiente de las operaciones enunciadas en los puntos 14.2.1.1. al 14.2.1.11. en la medida que correspondan a la porción del capital equivalente a la proporción de los fondos recibidos por el VPU por la financiación que puede computarse como ingresada y liquidada por el mercado de cambios.

   ii) repatriaciones de los aportes de inversión directa de sus accionistas no residentes que fueron destinados a financiar el proyecto en la medida que el monto acumulado de las repatriaciones de capital del no residente sea menor o igual a la suma de sus aportes de inversión directa en el VPU que pueden computarse como ingresados y liquidados por el mercado de cambios.

   En todos los casos, la operación deberá estar incorporada al "Seguimiento de anticipos y otras financiaciones de exportación de bienes" y tener asignado el correspondiente número de identificación (número APX).

14.3.2. Se admite en los términos previstos en el punto 7.9.5. que los fondos originados en el cobro de exportaciones de bienes y servicios por parte de un VPU adherido, que se encuentran alcanzados por la obligación de ingreso y liquidación en el mercado de cambios, sean acumulados en cuentas del exterior y/o del país destinadas a garantizar la cancelación de los vencimientos de los endeudamientos comprendidos en el punto 3.5.

**14.4. Requisito complementario para egresos para un VPU que prevé hacer uso de los beneficios en materia de cobros de exportaciones de bienes y servicios.**

Para dar acceso al mercado de cambios por cualquier concepto de egreso a un VPU que haya solicitado la inscripción al RIGI indicando ante la Autoridad de Aplicación que preveía hacer uso de los beneficios establecidos en el régimen en materia de cobro de exportaciones de bienes y servicios, adicionalmente a los restantes requisitos que le sean aplicables a la operación, las entidades deberán:

14.4.1. contar con una declaración jurada del representante legal del VPU, o un apoderado con facultades suficientes para asumir este compromiso en nombre del VPU, en la que deje constancia de que el importe total de divisas ingresadas desde el exterior y liquidadas en el mercado de cambios por cualquier concepto por parte del VPU adherido es, al momento de cada acceso, igual o mayor al monto que surge de sumar el monto de la operación que se pretende cursar al monto total de los accesos al mercado de cambios del VPU para egresos por todo concepto excepto los pagos admitidos de intereses y/o utilidades y dividendos y/o el capital de financiaciones locales contempladas en los puntos 14.2.1.3. al 14.2.1.5.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

La liquidación en el mercado de cambios de financiaciones en moneda extranjera otorgadas al VPU por una entidad financiera local a partir de una línea de crédito del exterior también deberán ser computadas a favor del VPU como parte de las divisas ingresadas desde el exterior.

14.4.2. registrar la operación en el sistema online instrumentado por el BCRA y contar con la correspondiente convalidación respecto al cumplimiento de lo previsto en el punto 14.4.1. considerando los ingresos y egresos registrados en el sistema.

El sistema online tomará en consideración exclusivamente los ingresos de divisas desde el exterior y las aplicaciones de cobros de exportaciones al pago de intereses que hayan quedado incorporados en forma directa en el propio sistema. El correspondiente registro de un ingreso será responsabilidad de la entidad interviniente en la operación.

Este requisito complementario no resultará aplicable cuando el acceso al mercado de cambios del VPU sea con el objeto de realizar alguna de las siguientes operaciones:

i) pagos de intereses admitidos por las financiaciones contempladas en los puntos 14.2.1.1. al 14.2.1.11.

ii) pagos de utilidades y dividendos a accionistas no residentes admitidos en el punto 14.2.2.

iii) pagos de capital de las financiaciones locales contempladas en los puntos 14.2.1.3. al 14.2.1.5.

**14.5. Otras disposiciones.**

14.5.1. Los beneficios cambiarios del RIGI no podrán ser acumulados con otros incentivos cambiarios existentes o que se creen a futuro.

14.5.2. Para el caso que el VPU no pudiese computar la totalidad de los fondos obtenidos por las financiaciones comprendidas en los puntos 14.2.1.1. al 14.2.1.11. como ingresada y liquidada en el mercado de cambios, que cualquier mecanismo previsto en las normas cambiarias que tome en consideración el valor pendiente del endeudamiento y/o el valor de las próximas cuotas de capital o intereses sólo estará disponible para el VPU hasta la proporción de los fondos recibidos por la financiación que pueden computarse como ingresada y liquidada por el mercado de cambios.

De igual forma, cualquier mecanismo previsto en las normas cambiarias que tome en consideración el valor de los aportes de inversión directa extranjera sólo estará disponible para el VPU adherido hasta el valor que surja de la suma de los aportes contemplados en los incisos i) y ii) del punto 14.2.2.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

14.5.3. Las financiaciones enunciadas en los puntos 14.2.1.8. al 14.2.1.11. podrán ser computadas como ingresadas y liquidadas en el mercado de cambios por un VPU adherido al RIGI cuando una entidad financiera local seleccionada por el VPU haya verificado el cumplimiento de la totalidad de las siguientes condiciones:

   i) Existe documentación que demuestra que se trata de una financiación otorgada directamente por el proveedor del exterior de los bienes de capital u otorgada por un tercero habilitado cuyos desembolsos en divisas se aplicaron, neto de gastos, directamente a pagos anticipados, a la vista y/o diferidos al proveedor del exterior del bien de capital y/o a pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes de capital no incluidos en la condición de compra pactada.

   ii) El VPU haya demostrado el registro de ingreso aduanero de los bienes por un valor igual o mayor al monto total de la financiación que será computada como ingresada y liquidada en el mercado de cambios.

   A los efectos del valor de los bienes podrá tomarse todo concepto que forme parte de la condición de compra pactada registrada en la factura emitida por el proveedor del exterior.

   Si existiesen fondos destinados al pago de fletes de importaciones de bienes no incluidos en la condición de compra y el importador demostró el registro de ingreso aduanero de los bienes cuyos fletes se abonaron, también se podrá computar el valor de los fletes que consten en la documentación de transporte asociada al registro de ingreso aduanero de los bienes.

   La operación podrá incluir bienes que no revistan la condición de bien de capital en la medida que aquellos que lo sean representen como mínimo el 90% (noventa por ciento) del valor FOB total pagado y la entidad cuente con una declaración jurada del cliente en la cual deje constancia de que los restantes bienes son repuestos, accesorios o materiales necesarios para el funcionamiento, construcción o instalación de los bienes de capital que se están adquiriendo.

   La entidad deberá contar con la correspondiente certificación de la entidad encargada del seguimiento de pago de importaciones de bienes (SEPAIMPO).

   iii) La entidad financiera ha concretado el registro de la financiación ante el BCRA a través del régimen informativo de operaciones de cambio (RIOC), una vez verificado el registro de ingreso aduanero de los bienes, mediante la confección de dos boletos sin movimiento de fondos con las siguientes características:

   a) Los boletos deberán quedar registrados, independientemente de cuál sea el momento en que el cliente solicita su registro ante la entidad financiera, en la fecha en que se produjo el registro de ingreso aduanero de los bienes o en la fecha de aplicación del desembolso en divisas de la financiación, si ésta última fuese posterior a la anterior.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

b) El boleto de compra se confeccionará por un código de concepto que identifique que se trata de una financiación comprendida en este mecanismo, debiendo dejar constancia de la identificación del acreedor.

Si la financiación fue otorgada por el propio proveedor, el boleto se registrará por el monto pendiente de cancelación a la fecha del registro del ingreso aduanero de los bienes.

Si la financiación fue otorgada por otros acreedores del exterior habilitados en el boleto con la fecha del registro de ingreso aduanero se registrará la suma de los desembolsos en divisas del acreedor que se aplicaron hasta esa fecha, neto de gastos, directamente a pagos anticipados, a la vista y/o diferidos al proveedor del exterior del bien de capital o a pagos en forma directa al proveedor de servicios de fletes de importaciones de bienes de capital no incluidos en la condición de compra pactada. Si la aplicación del desembolso en divisas fuese posterior a la fecha del registro de ingreso aduanero se realizará un boleto específico en la fecha en que el proveedor recibió el pago.

En caso de que el VPU contemple la posibilidad de aplicar cobros de exportaciones de bienes a la cancelación del capital o intereses de la financiación, la entidad deberá asignar el correspondiente número de identificación (número APX) para el "Seguimiento de anticipos y otras financiaciones de exportación de bienes", el cual quedará a cargo de la propia entidad.

c) El boleto de venta se confeccionará por el monto correspondiente con el código de concepto para los pagos diferidos de importaciones de bienes de capital o al pago de fletes de importaciones de los bienes, según corresponda, dejando constancia que el pago se concreta por el presente mecanismo.

14.5.7. Los aportes de inversión directa en especie instrumentados mediante la entrega al VPU de bienes de capital podrán ser computados como ingresados y liquidados en el mercado de cambios en la medida que:

i) El VPU haya demostrado el registro de ingreso aduanero del bien de capital por un valor consistente con el monto del aporte que será computado como ingresado y liquidado en el mercado de cambios.

La operación podrá incluir bienes que no revistan la condición de bien de capital en la medida que aquellos que lo sean representen como mínimo el 90% (noventa por ciento) del valor FOB total pagado y la entidad cuente con una declaración jurada del cliente en la cual deje constancia de que los restantes bienes son repuestos, accesorios o materiales necesarios para el funcionamiento, construcción o instalación de los bienes de capital que se están adquiriendo.

La entidad deberá contar con la correspondiente certificación de la entidad encargada del seguimiento de pago de importaciones de bienes (SEPAIMPO).

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR Y CAMBIOS |
|---|---|
| B.C.R.A. | Sección 14. Disposiciones complementarias asociadas al Régimen de Incentivo para Grandes Inversiones (RIGI). |

ii) El VPU deberá presentar la documentación que avale la capitalización definitiva del aporte. En caso de no disponerla, deberá presentar constancia del inicio del trámite de inscripción ante el Registro Público de Comercio de la decisión de capitalización definitiva de los aportes de capital computados de acuerdo con los requisitos legales correspondientes y comprometerse a presentar la documentación de la capitalización definitiva del aporte dentro de los 365 (trescientos sesenta y cinco) días corridos desde el inicio del trámite.

iii) Una entidad financiera haya registrado al aporte de capital en el régimen informático de operaciones de cambio (RIOC) mediante la confección de dos boletos de cambio sin movimiento de fondos con las siguientes características:

a) Los boletos deberán ser registrados en la fecha en que se produjo el registro de ingreso aduanero de los bienes, independientemente de cuál sea el momento en que el cliente solicite su registro ante la entidad financiera.

b) El boleto de compra se confeccionará con un código de concepto que identifique que se trata de un aporte comprendido en este mecanismo.

En caso de que el VPU contemple la posibilidad de aplicar cobros de exportaciones de bienes para la repatriación del aporte, la entidad deberá asignar el correspondiente número de identificación (número APX) para el "Seguimiento de anticipos y otras financiaciones de exportación de bienes", el cual quedará a cargo de la propia entidad.

c) El boleto de venta se confeccionará con el código de concepto de pago diferido de importaciones de bienes de capital, dejando constancia que el pago se enmarca en el presente mecanismo.

14.6.   Estabilidad cambiaria aplicable al VPU.

La normativa alcanzada por la estabilidad cambiaria contemplada en los artículos 201 y 205 de la Ley 27.742 será la aplicable al VPU, conforme lo dispuesto en esos artículos, a la fecha de adhesión al RIGI que surja de las constancias emitidas por la Autoridad de Aplicación.



**BANCO CENTRAL DE LA REPÚBLICA ARGENTINA**

| B.C.R.A. | EXTERIOR Y CAMBIOS |
|---|---|
| | Sección 15. Disposiciones legales que determinan la estructura general del mercado de cambios |

Se trascribe a continuación la parte pertinente de las disposiciones legales que determinan la estructura general del mercado de cambios:

**15.1.   Artículos 1° y 2° del Decreto 260/02.**

" ARTÍCULO 1°.- (*Artículo sustituido por art. 132 de la Ley N° 27444 B.O. 18/06/18*) Establécese un mercado libre de cambios por el cual se cursarán las operaciones de cambio que sean realizadas por las entidades financieras y las demás personas autorizadas por el Banco Central de la República Argentina para dedicarse de manera permanente o habitual al comercio de la compra y venta de monedas y billetes extranjeros, oro amonedado o en barra de buena entrega y cheques de viajero, giros, transferencias u operaciones análogas en moneda extranjera.

ARTÍCULO 2°.- Las operaciones de cambio en divisas extranjeras serán realizadas al tipo de cambio que sea libremente pactado y deberán sujetarse a los requisitos y a la reglamentación que establezca el BANCO CENTRAL DE LA REPUBLICA ARGENTINA."

**15.2.   Artículos 1°, 2° y 3° del Decreto 609/19.**

" ARTÍCULO 1°.- (*Artículo sustituido por art. 1° del Decreto N° 91/19 B.O. 28/12/19*) Establécese que el contravalor de la exportación de bienes y servicios deberá ingresarse al país en divisas y/o negociarse en el mercado de cambios en las condiciones y plazos que establezca el BANCO CENTRAL DE LA REPÚBLICA ARGENTINA.

ARTÍCULO 2°.- El BANCO CENTRAL DE LA REPÚBLICA ARGENTINA, conforme lo previsto en su Carta Orgánica, establecerá los supuestos en los que el acceso al mercado de cambios para la compra de moneda extranjera y metales preciosos amonedados y las transferencias al exterior requerirán autorización previa, con base en pautas objetivas en función de las condiciones vigentes en el mercado cambiario y distinguiendo la situación de las personas humanas de la de las personas jurídicas.

ARTÍCULO 3°.- Facúltese al BANCO CENTRAL DE LA REPÚBLICA ARGENTINA para establecer reglamentaciones que eviten prácticas y operaciones tendientes a eludir, a través de títulos públicos u otros instrumentos, lo dispuesto en esta medida."

**15.3.   Artículo 1° del Decreto 28/23.**

" ARTÍCULO 1°.- Establécese que el contravalor de la exportación de las prestaciones de servicios comprendidas en el inciso c) del apartado 2 del artículo 10 de la Ley N° 22.415 (Código Aduanero) y sus modificaciones y de la exportación de las mercaderías comprendidas en la Nomenclatura Común del MERCOSUR (N.C.M.), incluidos los supuestos de prefinanciación y/o postfinanciación de exportaciones del exterior o un anticipo de liquidación, deberá ingresarse al país en divisas y/o negociarse, un OCHENTA POR CIENTO (80%) a través del Mercado Libre de Cambios (MLC), debiendo el exportador, por el VEINTE POR CIENTO (20%) restante, concretar operaciones de compraventa con valores negociables adquiridos con liquidación en moneda extranjera y vendidos con liquidación en moneda local."

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| B.C.R.A. | ORIGEN DE LAS DISPOSICIONES CONTENIDAS EN LAS NORMAS SOBRE "EXTERIOR Y CAMBIOS" |
|----------|--------------------------------------------------------------------------------|

| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | | OBSERVACIONES |
|---|---|---|---|---|---|---|---|
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | |
| 1. | 1.1. | | A 6244 | I | 1.2. | | Según Com. A 6436 y 6844. |
| | 1.2. | | A 6244 | I | 1.1. | | Según Com. A 6770 y 6844. |
| | 1.3. | | A 6244 | I | 1.3. | | |
| | 1.4. | | A 6770 | | 18. | | |
| | 1.5. | | A 6244 | I | 1.6. | | |
| | 1.6. | | A 6244 | I | 1.7. | | |
| | 1.7. | | A 6244 | I | 1.8. | | |
| | 1.8. | | A 6770 | | 21. | | |
| | 1.9. | | A 6244 | I | 2.2. | | Según Com. A 6401. |
| 2. | 2.1. | | A 6770 | | 1. a 3. | | |
| | 2.2. | | A 6770 | | 4. | | Incluye interpretación normativa. Según Com. A 7123, 7138, 7196, 7272, 7308, 7518, 7553, 7630, 7607, 7664, 7762, 7766, 7834, 7867, 7953, 8074, 8099, 8116, 8137, 8153 y 8191. |
| | 2.3. | | A 6780 | | 1.7. | | Incluye interpretación normativa Según Com. A 7272, 7873, 7894 y 8137. |
| | 2.4. | | A 6770 | | 8. | | Incluye interpretación normativa. Según Com. A 6776, 7953, 8055 y 8191. |
| | 2.5. | | A 6838 | | 1. | | Según Com. A 7953, 8031, 8055, 8160 y 8191. |
| | 2.6. | | A 7664 | | 1., 2. y 19. | | Según Com. A 7766. |
| | 2.7. | | A 6814 | | 4 | | Según Com. A 6838, 7953 y 8191. Incluye interpretación normativa. |
| | 2.8. | | A 6244 | I | 2.5. | | Según Com. A 6770, 6776 y 7272. Según interpretación normativa. |
| | 2.9. | | A 6244 | I | 2.9. | | |
| 3. | 3.1. | | A 6770 | | 12., 13. y 19. | | |
| | 3.2. | | A 6770 | | 12. y 14. | | Según Com. A 7953. |
| | 3.3. | | A 6770 | | 12 y 19. | | Según Com. A 7001, 7042, 7746, 7770, 7798, 7915, 7916, 7935, 8059, 8099, 8161 y 8191. Incluye interpretación normativa. |
| | 3.4. | | A 6770 | | 10. | | Según Com. A 6869, 7001, 7042, 7168, 7272, 7301, 7416, 7626, 7664, 7915, 7916, 7999 y 8099. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR Y CAMBIOS | | | | | | |
|---|---|---|---|---|---|---|
| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | |
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | OBSERVACIONES |
| 3. | 3.5. | | A 6770 | | 8., 11. Y 19. | | Incluye interpretación normativa. Según Com. A 6780, 6792, 6814, 7001, 7030, 7042, 7052, 7079, 7094, 7106, 7123, 7133, 7151, 7168, 7193, 7196, 7218, 7230, 7239, 7272, 7301, 7313, 7416, 7422, 7466, 7490, 7621, 7626, 7664, 7746, 7770, 7799, 7845, 7898, 7904, 7915, 7916, 7917, 7935, 7953, 7994, 8055, 8059, 8099, 8112, 8129, 8161 y 8191. |
| | 3.6. | | A 6770 | | 9. | | Incluye interpretación normativa. Según Com. A 6776, 6792, 6838, 7003, 7106, 7133, 7138, 7196, 7230, 7272, 7308, 7416, 7422, 7466, 7532, 7621, 7845, 7915, 7916, 7953, 8031, 8055, 8099, 8112, 8160 y 8191. |
| | 3.7. | | A 6780 | | 1.6. | | Según Com. 6792, 7915 y 7916. |
| | 3.8. | | A 6770 | | 6. | | Según Com. A 6780, 6804, 6814, 6815, 6883, 6948, 6993, 7001, 7006, 7082, 7106, 7126, 7272, 7342, 7398, 7401, 7556, 7606, 7609, 7610, 7735, 7746, 7810, 7838, 7840, 7915, 7916, 8108 y C 93169. |
| | 3.9. | | A 6787 | | 1. | | Según Com. A 6815 y 7895. |
| | 3.10. | | A 6770 | | 5. | | Según Com. A 6780, 6814, 7556, 7915, 7916 y C 93169. |
| | 3.11. | | A 6796 | | 1. y 2. | | Según Com. A 6814, 6825, 7196, 7272, 7798, 7904, 7915, 7916, 7917, 8055, 8129 y 8191. |
| | 3.12. | | A 6770 | I | 5. y 6. | | Según Com. A 6780, 6814, 7272, 7915 y 7916. |
| | 3.13. | | A 6770 | | 7. | | Según Com. A 6776, 6815, 6855, 6883, 6915, 7052, 7123, 7168, 7272, 7528, 7551, 7626, 7664, 7830, 7915, 7916, 7999, 8006, 8099, 8108 y 8191. Incluye interpretación normativa. |
| | 3.14. | | A 6244 | I | 2.5. | | Según Com. A 6770, 6776, 6780, 6782, 6799, 6948, 7272, 7401, 7622, 7664, 7746, 7898, 7904, 7915, 7916, 7925, 7911, 7999, 8006, 8133 y 8191. Incluye interpretación normativa. |
| | 3.15. | | A 6908 | I | 1. | | Según Com. A 7003, 7201, 7272, 7374, 7553, 7915, 7916, 7917 y 7953. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR Y CAMBIOS | | | | | | | |
|---|---|---|---|---|---|---|---|
| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | | |
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | OBSERVACIONES |
| 3. | 3.16. | | A 6815 | | 7. y 8. | | Según Com. A 7001, 7021, 7030, 7042, 7094, 7138, 7193, 7200, 7272, 7273, 7293, 7308, 7327, 7375, 7385, 7401, 7422, 7490, 7552, 7556, 7586, 7746, 7766, 7772, 7833, 7838, 7845, 7852, 7911, 7925, 7935, 7953, 7999, 8006, 8085, 8099, 8108, 8112, 8137, 8191, B 12082 y C 91566 y 96983. Incluye interpretación normativa. |
| | 3.17. | | A 7626 | | 1. a 5. | | Según Com. A 7803, 7898, 7953, 8055 y 8191. |
| | 3.18. | | A 7301 | | 1. | | Según Com. A 7416, 7466, 7532, 7553, 7622, 7626, 7746, 7664, 7917 y 7953. |
| 4. | 4.1. | | A 6664 | | 2.10. | | Según Com. A 6815, 6823, 6948, 7001, 7106, 7272, 7766 y 8035. Incluye interpretación normativa. |
| | 4.2. | | A 6244 | I | 2.3. | | Según Com. A 6770, 6788, 7308 y 7834. |
| | 4.3. | | A 6799 | I | 1. | | Según Com. A 6993, 7001, 7006, 7082, 7106, 7126, 7142, 7272, 7327, 7340, 7342, 7385, 7398, 7422, 7586, 7606, 7609, 7610, 7735, 7810, 7840, 7940, 7952. 7968, 7999, 8035, 8042, 8073, 8191 y B 11892. Incluye interpretación normativa. |
| | 4.4. | | A 7925 | | 1. | | Incluye interpretación normativa. Según Com. A 8191. |
| | 4.5. | | A 7925 | | 2. | | Incluye interpretación normativa. Según Com. A 8191. |
| | 4.6. | | A 7999 | | 1. y 2. | | Incluye interpretación normativa. Según Com. A 8191. |
| | 4.7. | | A 7925 | | 3. a 5. | | Incluye interpretación normativa. Según Com. A 7935, 7940, 7941, 7952, 7999, 8035, 8055, 8191, C 96983 y 97065. |
| 5. | 5.1. | | A 6244 | I | 2.1. | | Según Com. A 6363 y 6436. |
| | 5.2. | | A 6244 | I | 2.4. | | Según Com. "A" 6378 y 6419 y B 9791. |
| | 5.3. | | A 6770 | | 18. | | |
| | 5.4. | | A 6244 | I | 3.1. | | Según Com. A 6378 y 7272. Incluye interpretación normativa. |
| | 5.5. | | A 6244 | I | 3.2. | | Según Com. A 7762. |
| | 5.6. | | A 6244 | I | 2.7. | | Según Com. A 6844. |
| | 5.7. | | A 6244 | I | 3.3. | | |
| | 5.8. | | A 6244 | I | 3.4. | | Según Com. A 6363 y 6844. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR Y CAMBIOS | | | | | | | |
|---|---|---|---|---|---|---|---|
| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | | OBSERVACIONES |
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | |
| 5. | 5.9. | | A 6244 | I | 1.4 | | Según Com. A 6770, 6780, 7551, 8006 y 8178. |
| | 5.10. | | A 6244 | I | 3.5. | | Según Com. A 6844 y 7953. |
| | 5.11. | | A 6244 | I | 3.6. | | Según Com. A 6443, 6815 y 7828. |
| | 5.12. | | A 6244 | I | 3.7. | | Según Com. A 6436. |
| | 5.13. | | A 6244 | I | 3.8. | | Según Com. A 6363 y 7272. Incluye interpretación normativa. |
| | 5.14. | | A 6776 | | 2. | | Incluye interpretación normativa. Según Com. A 8031, 8160 y 8191. |
| | 5.15. | | A 6244 | I | 3.9. | | |
| 6. | 6.1. | | A 6244 | I | 4.1. | | |
| | 6.2. | | A 6244 | I | 4.2. | | |
| | 6.3. | | A 6244 | I | 4.3. | | |
| | 6.4. | | A 6244 | I | 4.4. | | |
| | 6.5. | | A 6244 | I | 4.5. | | |
| | 6.6. | | A 6776 | | 1.7. | | Incluye aclaración interpretativa. |
| | 6.7. | | A 6244 | I | 4.7. | | Incluye aclaración interpretativa. Según Com. A 6312. |
| | 6.8. | | A 6844 | | 6.8. | | |
| | 6.9. | | A 6844 | | 6.9. | | |
| | 6.10. | | A 6844 | | 6.10. | | |
| | 6.11. | | A 6844 | | 6.11. | | |
| | 6.12. | | A 6844 | | 6.12. | | |
| 7. | 7.1. | | A 6770 | | 1. a 3. | | Según Com. A 6776, 6780, 6788, 6805, 6882, 7374, 7532, 7570, 7571, 7649, 7740, 7826, 7833, 7853, 7867, 7898, 7935, 7953. 8035, 8099 y 8137. |
| | 7.2. | | A 6788 | I | 1.2. | | Según Com. A 7308, 7664, 7834 y 7953. |
| | 7.3. | | A 6788 | I | 1.3. | | Según Com. A 7123, 7138, 7196, 7259, 7272, 7770, 7853, 7867 y 7953. |
| | 7.4. | | A 6788 | I | 1.4. | | Según Com. A 7217. |
| | 7.5. | | A 6788 | I | 1.5. | | Según Com. A 7196, 7229, 7272, 7374, 7664, 7770, 7853, 7867 y 7953. Incluye interpretación normativa. |
| | 7.6. | | A 6788 | I | 1.6. | | Según Com. A 6844 y 8137. |
| | 7.7. | | A 6788 | I | 1.7. | | Según Com. A 7003 y 7272. Incluye interpretación normativa. |
| | 7.8. | | A 6788 | I | 1.8. | | Según Com. A 6805, 7374, 7664 y 8191. Incluye interpretación normativa. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR Y CAMBIOS | | | | | | |
|---|---|---|---|---|---|---|
| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | |
| Sección | Punto | Párr. | Com. | Cap./ Anexo | Punto | Párr. | OBSERVACIONES |
| 7. | 7.9. | | A 7123 | | 1. | | Según Com. A 7138, 7196, 7272, 7308, 7416, 7626, 7994, 8099 y 8191. Incluye interpretación normativa. |
| | 7.10. | | A 7259 | | 1. a 3. | | Según Com. A 7272, 7626, 7799 y 8191. |
| | 7.11. | | A 7770 | | 1. a 3. | | Según Com. A 7845, 7852, 7898, 7917 y 8191. |
| 8. | 8.1. | | A 6788 | I | 2.1. | | |
| | 8.2. | | A 6788 | I | 2.2. | | Según Com. A 8191. |
| | 8.3. | | A 6788 | I | 2.3. | | Según Com. A 6844 y 8191. |
| | 8.4. | | A 6788 | I | 2.4. | | Según Com. A 7664 y 8191. |
| | 8.5. | | A 6788 | I | 2.5. | | Según Com. A 7217, 7272, 7313, 7507, 7664, 7780, 7833, 7853, 7867, 7917, 7953, 8099, 8155 y 8191. Incluye interpretación normativa. |
| | 8.6. | | A 6788 | I | 2.6. | | |
| 9. | 9.1. | | A 6788 | I | 3.1. | | Según Com. A 7123, 7138, 7259, 7272 y 7770. |
| | 9.2. | | A 6788 | I | 3.2. | | Según Com. A 7272 y 7770. |
| | 9.3. | | A 6788 | I | 3.3. | | Según Com. A 7123, 7138, 7272, 7770, 7853, 7867 y 7953. |
| | 9.4. | | A 6788 | I | 3.4. | | |
| | 9.5. | | A 6788 | I | 3.5. | | |
| | 9.6. | | A 6788 | I | 3.6. | | |
| | 9.7. | | A 6788 | I | 3.7. | | Según Com. A 7308 y 7834. |
| | 9.8. | | A 6788 | I | 3.8. | | |
| 10. | 10.1. | | A 6818 | I | 1. | | |
| | 10.2. | | A 6818 | I | 2. | | Según Com. A 6844 y 7562. |
| | 10.3. | | A 6770 | | 12., 13. y 19. | | Según Com. A 6776, 6780, 6818, 7001, 7030, 7042, 7052, 7079, 7094, 7138, 7151, 7193, 7201, 7239, 7272, 7313, 7416, 7433, 7466, 7469, 7471, 7472, 7488, 7490, 7516, 7547, 7622, 7638, 7866, 7915, 7916, 7917, 7953, 8035, 8099, 8137 y 8191. Incluye interpretación normativa. |
| | 10.4. | | A 6770 | | 19. | | Según Com. A 6815, 6818, 6825, 6844, 6903, 7030, 7052, 7079, 7094, 7138, 7151, 7193, 7201, 7239, 7272, 7313, 7416, 7466, 7469, 7471, 7472, 7488, 7490, 7547, 7622, 7638 7866, 7915, 7916, 7917, 7953, 8035, 8133 y 8191. Incluye interpretación normativa. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | | OBSERVACIONES |
|---|---|---|---|---|---|---|---|
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | |
| 10. | 10.5. | | A 6818 | I | 5. | | Según Com. A 6915, 7253 y 8137. Incluye interpretación normativa. |
| | 10.6. | | A 6818 | I | 6. | | Según Com. A 7293, 7763, 7798 y 7917. |
| | 10.7. | | A 6818 | I | 7. | | Según Com. A 6908, 7201, 7466, 7469, 7471, 7472, 7488, 7490, 7507, 7553, 7622, 7915, 7916, 7917 y 7953. |
| | 10.8. | | A 6818 | I | 8. | | Según Com. A 7490. |
| | 10.9. | | A 6818 | I | 9. | | Según Com. A 7313. Incluye interpretación normativa. |
| | 10.10. | | A 7917 | | 1. y 3. | | Según Com. A 7945, 7953, 7980, 7990, 7998, 8035, 8054, 8074, 8094, 8099, 8108, 8118, 8133 y 8191. |
| | 10.11. | | A 7917 | | 1.5. | | Según Com. A 7925, 7935, 7941, 7952, 7953, 8035 y 8191. Incluye interpretación normativa. |
| 11. | 11.1. | | A 6818 | I | 10.1. | | Según Com. A 7925, 8035 y 8191. Incluye interpretación normativa. |
| | 11.2. | | A 6818 | I | 10.2. | | |
| 12. | 12.1. | | A 7201 | | 2. | | Según Com. A 7433, 7490, 7532 y 7622, 7917, 7953, 8118, 8191 y C 97215. |
| 13. | 13.1. | | A 6770 | | 12. y 14. | | Según Com. A 6776, 6780, 6829, 6972, 7001, 7042, 7272, 7301, 7308, 7348, 7416, 7433, 7490, 7516, 7532, 7542, 7547, 7553, 7594, 7606, 7622, 7626, 7664, 7746, 7762, 7771, 7815, 7864, 7866, 7893, 7903, 7915, 7916, 7917, 7925, 7935, 7941, 7945, 7952, 7953, 8035 y C 96844. Incluye interpretación normativa. |
| | 13.2. | | A 7917 | | 2.2. | | Según Com. A 7953, 7998, 8035, 8118, 8122, 8133, 8137, 8191 y C 96844. Incluye interpretación normativa. |
| | 13.3. | | A 7917 | | 2.3. y 4. | | Según Com. A 7945, 7953, 8035, 8112, 8133, 8191 y C 96844. Incluye interpretación normativa. |
| | 13.4. | | A 7917 | | 2.4. | | Según Com. A 7925, 7935, 7941, 7952, 7953, 8035, 8191 y C 97065. Incluye interpretación normativa. |
| | 13.5. | | A 6770 | | 12. y 14. | | Según Com. A 7917. |
| | 13.6. | | A" 6770 | | 12. y 14. | | Según Com. A 7917. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| TEXTO ORDENADO | | | NORMA DE ORIGEN | | | | OBSERVACIONES |
|---|---|---|---|---|---|---|---|
| Sección | Punto | Párr. | Com. | Cap./Anexo | Punto | Párr. | |
| 14. | 14.1. | | A 8099 | | 1. | | |
| | 14.2. | | A 8099 | | 3. | | Según Com. A 8191. |
| | 14.3. | | A 8099 | | 5. y 6. | | Según Com. A 8191. |
| | 14.4. | | A 8099 | | 2. | | Según Com. A 8191. |
| | 14.5. | | A 8099 | | 4., 7., 8. y 9. | | |
| | 14.6. | | A 8099 | | 10. | | |
| 15. | 15.1. | | A 6844 | | | | |
| | 15.2. | | A 6844 | | | | Según Com. A 6862. |
| | 15.3. | | A 7953 | I. | 14.3. | | |

## Comunicaciones que componen el historial de la norma

**Últimas modificaciones:**

**05/05/22: A 7507**

**19/05/22: A 7516**

**26/01/24: A 7953**

**03/06/24: A 8035**

**10/02/25: A 8191**

**Últimas versiones de la norma - Actualización hasta:**

| | |
|---|---|
| **09/11/17** | **25/01/24** |
| **30/12/17** | **02/03/24** |
| **18/01/18** | **09/02/25** |
| **25/01/18** | |
| **05/03/18** | |
| **24/01/19** | |
| **03/07/19** | |
| **04/12/19** | |
| **12/01/20** | |
| **15/01/20** | |
| **29/01/20** | |
| **27/02/20** | |
| **26/04/21** | |
| **27/05/21** | |
| **17/06/21** | |
| **23/06/21** | |
| **15/12/21** | |
| **11/04/22** | |
| **04/05/22** | |
| **18/05/22** | |
| **15/02/23** | |
| **06/12/23** | |

**Texto base**:

**Comunicación A 6312: Texto ordenado de las normas sobre "Exterior y cambios"**

**Comunicaciones que dieron origen y/o actualizaron esta norma:**

**A 6244: Nuevas normas que regulan al Mercado Único y Libre de Cambios.**

**A 6363: "Exterior y cambios". "Política de crédito". Adecuaciones.**

**A 6378: Casas, agencias y oficinas de cambio. Exterior y cambios. Adecuaciones.**

**A 6384: Casas, agencias y oficinas de cambio. Exterior y cambios. Adecuaciones.**

**A 6419: Comunicación por medios electrónicos para el cuidado del medio ambiente. Adecuaciones.**

**A 6436: Adecuaciones a las normas de "Exterior y Cambios".**

**A 6443: Decreto N° 27/18. Casas, agencias y oficinas de cambio. Adecuaciones. Operadores de cambio.**

**A 6462: Comunicación A 6419. Actualizaciones.**

**A 6639: Comunicación A 6599. Actualización de textos ordenados.**

**A 6664: "Protección de los usuarios de servicios financieros". "Comunicación por medios electrónicos para el cuidado del medio ambiente". "Exterior y Cambios". "Tasas de interés en las operaciones de crédito". Adecuaciones.**

**A 6770: Exterior y cambio. Adecuaciones.**

**A 6776: Exterior y cambio. Adecuaciones.**

**A 6780: Exterior y cambio. Adecuaciones y aclaraciones.**

**A 6782: Exterior y cambio. Adecuaciones.**

**A 6787: Exterior y cambio. Adecuaciones.**

**A 6788: Exterior y Cambios. Normas en materia de exportaciones de bienes.**

**A 6792: Exterior y cambios. Adecuaciones.**

**A 6796: Exterior y cambios. Adecuaciones.**

**A 6799: Exterior y Cambios. Adecuaciones.**

**A 6804: Exterior y cambios. Adecuaciones.**

**A 6805: Exterior y Cambios. Normas de exportaciones de bienes. Adecuaciones.**

**A 6814: Exterior y Cambios. Adecuaciones.**

**A 6815:    Exterior y Cambios. Adecuaciones.**

**A 6818:    Exterior y cambios. Normativa sobre pagos de importaciones y otras compras de bienes en el exterior.**

**A 6823: Exterior y cambios. Adecuaciones.**

**A 6825: Exterior y Cambios. Adecuaciones.**

**A 6829: Exterior y Cambios. Adecuaciones.**

**A 6838: Exterior y Cambios. Adecuaciones.**

**A 6844: Texto Ordenado de las Normas sobre Exterior y Cambios.**

**A 6854: Exterior y Cambios. Vigencia.**

**A 6855: Exterior y cambios. Adecuaciones.**

**A 6856: Exterior y cambios. Adecuaciones.**

**A 6862: Texto ordenado de las normas sobre "Exterior y cambios". Actualización.**

**A 6869: Texto ordenado de las normas sobre "Exterior y cambios". Adecuaciones.**

**A 6882: Texto ordenado de las normas sobre "Exterior y cambios". Adecuaciones.**

**A 6883: Exterior y cambios. Adecuaciones.**

**A 6903: Exterior y cambios. Adecuaciones.**

**A 6908: Exterior y cambios. Adecuaciones.**

**A 6915: Texto ordenado de las normas sobre "Exterior y cambios". Actualización.**

**A 6948: Adecuaciones a la normativa vigente**

**A 6972: Exterior y cambios. Adecuaciones.**

**A 6993:    Créditos a tasa cero (Decreto N° 332/2020). Efectivo mínimo. Exterior y Cambios. Adecuaciones. Comunicación A 6992. Actualización.**

**A 7001: Exterior y cambios. Adecuaciones.**

**A 7003:    Posición global neta de moneda extranjera. Efectivo mínimo. Política de crédito. Exterior y cambios. Adecuaciones.**

**A 7006:    Asistencia crediticia a MiPyME. Posición neta en LELIQ. Operaciones al contado a liquidar y a término, pases, cauciones, otros derivados y con fondos comunes de inversión. Efectivo mínimo. Exterior y cambios. Adecuaciones.**

**A 7021: Exterior y cambios. Adecuaciones.**

**A 7030: Exterior y cambios. Adecuaciones.**

**A 7042: Exterior y cambios. Adecuaciones.**

**A 7052: Exterior y cambios. Adecuaciones.**

**A 7068: Exterior y cambios. Adecuaciones.**

**A 7079: Exterior y cambios. Adecuaciones.**

**A 7082:    Créditos a Tasa Subsidiada para Empresas. Créditos a Tasa Cero Cultura. Decreto N° 332/2020. Servicios financieros en el marco de la emergencia sanitaria dispuesta por el Decreto N° 260/2020 Coronavirus (COVID19). Efectivo mínimo. Depósitos e inversiones a plazo. Exterior y cambios. Adecuaciones.**

**A 7094: Exterior y cambios. Adecuaciones.**

**A 7106: Exterior y cambios. Adecuaciones.**

**A 7123: Exterior y cambios. Adecuaciones.**

**A 7126: Exterior y cambios. Adecuaciones.**

**A 7133: Exterior y cambios. Adecuaciones.**

**A 7138: Exterior y cambios. Adecuaciones.**

**A 7142: Exterior y cambios. Adecuaciones.**

**A 7151: Exterior y cambios. Adecuaciones.**

**A 7168: Exterior y cambios. Adecuaciones.**

**A 7193: Exterior y cambios. Adecuaciones.**

**A 7196: Exterior y cambios. Adecuaciones.**

**A 7200: Exterior y cambios. Adecuaciones.**

**A 7201: Exterior y cambios. Adecuaciones.**

**A 7217: Exterior y cambios. Adecuaciones.**

**A 7218: Exterior y cambios. Adecuaciones.**

**A 7229: Exterior y cambios. Adecuaciones.**

**A 7230: Exterior y cambios. Adecuaciones.**
**:**
**A 7239: Exterior y cambios. Adecuaciones.**

**A 7253: Exterior y cambios. Adecuaciones.**

**A 7259: Exterior y cambios. Adecuaciones.**

**A 7272: Texto ordenado de las normas sobre "Exterior y cambios". Actualización.**

**A 7273: Exterior y cambios. Adecuaciones.**

**A 7293: Texto ordenado de las normas de "Exterior y cambios". Adecuaciones y actualización.**

**A 7301: Exterior y cambios. Adecuaciones.**

**A 7308: Normas de "Exterior y cambios". Adecuaciones y actualización del texto ordenado.**

**A 7313: Exterior y cambios. Adecuaciones.**

**A 7327: Exterior y cambios. Adecuaciones.**

**A 7340: Exterior y cambios. Adecuaciones.**

**A 7342: Créditos a Tasa Cero 2021 (Decreto Nº 512/21). Servicios financieros en el marco de la emergencia sanitaria dispuesta por el Decreto Nº 260/2020 Coronavirus (COVID-19). Efectivo mínimo. Exterior y cambios. Adecuaciones.**

**A 7348: Exterior y cambios. Adecuaciones.**

**A 7374: Exterior y cambios. Adecuaciones.**

**A 7375: Exterior y cambios. Adecuaciones.**

**A 7385: Exterior y cambios. Adecuaciones.**

**A 7398: Exterior y cambios. Adecuaciones.**

**A 7401: Exterior y cambios. Adecuaciones.**

**A 7408: Exterior y cambios. Adecuaciones.**

**A 7416: Exterior y cambios. Adecuaciones.**

**A 7420: Exterior y cambios. Adecuaciones**

**A 7422: Texto ordenado de las normas de "Exterior y cambios". Actualización.**

**A 7433: Exterior y cambios. Adecuaciones.**

**A 7466: Exterior y cambios. Adecuaciones.**

**A 7469: Exterior y cambios. Adecuaciones.**

**A 7471: Exterior y cambios. Adecuaciones.**

**A 7472: Exterior y cambios. Adecuaciones.**

**A 7488: Exterior y cambios. Adecuaciones.**

**A 7490: Texto ordenado de las normas de "Exterior y cambios". Actualización.**

**A 7507: Exterior y cambios. Adecuaciones.**

**A 7516: Exterior y cambios. Adecuaciones.**

**A 7518: Exterior y cambios. Adecuaciones.**

**A 7528: Exterior y cambios. Adecuaciones.**

**A 7532: Exterior y cambios. Adecuaciones**

**A 7542: Exterior y cambios. Adecuaciones.**

**A 7547: Exterior y cambios. Adecuaciones.**

**A 7551: Exterior y cambios. Adecuaciones.**

**A 7552: Exterior y cambios. Adecuaciones.**

**A 7553: Exterior y cambios. Adecuaciones.**

**A 7556: Exterior y cambios. Depósitos de ahorro, cuenta sueldo y especiales. Efectivo mínimo. Posición global neta de moneda extranjera. Adecuaciones.**

**A 7562: Exterior y cambios. Adecuaciones.**

**A 7565: Exterior y cambios. Adecuaciones.**

**A 7570: Exterior y cambios. Depósitos de ahorro, cuenta sueldo y especiales. Efectivo mínimo. Política de crédito. Adecuaciones.**

**A 7571: Exterior y cambios. Depósitos de ahorro, cuenta sueldo y especiales. Efectivo mínimo. Posición global neta de moneda extranjera. Política de crédito. Adecuaciones.**

**A 7586: Exterior y cambios. Adecuaciones.**

**A 7594: Exterior y cambios. Adecuaciones.**

**A 7601: Exterior y cambios. Adecuaciones.**

**A 7606: Exterior y cambios. Adecuaciones.**

**A 7609: Exterior y cambios. Adecuaciones.**

**A 7610: Exterior y Cambios. Aclaración.**

**A 7621: Exterior y cambios. Adecuaciones.**

**A 7622: Exterior y cambios. Adecuaciones.**

**A 7624: Exterior y cambios. Adecuaciones.**

**A 7626: Exterior y Cambios. Adecuaciones**

**A 7629: Exterior y cambios. Adecuaciones.**

**A 7630: Exterior y cambios. Adecuaciones.**

**A 7638: Exterior y cambios. Adecuaciones.**

**A 7643: Exterior y cambios. Adecuaciones.**

**A 7649: Exterior y cambios. Adecuaciones.**

**A 7662: Exterior y cambios. Adecuaciones.**

**A 7664: Exterior y cambios. Depósitos de ahorro, cuenta sueldo y especiales. Adecuaciones.**

**A 7676: Exterior y cambios. Adecuaciones.**

**A 7682: Exterior y cambios. Adecuaciones.**

**A 7686: Exterior y cambios. Adecuaciones.**

**A 7709: Exterior y cambios. Adecuaciones.**

**A 7733: Exterior y cambios. Adecuaciones.**

**A 7735: Exterior y cambios. Adecuaciones.**

**A 7740: Exterior y cambios. Adecuaciones.**

**A 7746: Exterior y cambios. Adecuaciones.**

**A 7762: Exterior y cambios. Adecuaciones.**

**A 7763: Exterior y cambios. Adecuaciones.**

**A 7766: Exterior y cambios. Adecuaciones.**

**A 7770: Exterior y cambios. Adecuaciones.**

**A 7771: Exterior y cambios. Adecuaciones.**

**A 7772: Exterior y cambios. Adecuaciones.**

**A 7780: Exterior y cambios. Adecuaciones.**

**A 7781: Exterior y cambios. Adecuaciones.**

**A 7782: Exterior y cambios. Adecuaciones.**

**A 7798: Exterior y cambios. Adecuaciones.**

**A 7799: Exterior y cambios. Adecuaciones.**

**A 7810: Exterior y cambios. Adecuaciones.**

**A 7815: Exterior y cambios. Adecuaciones.**

**A 7826: Exterior y cambios. Adecuaciones.**

**A 7828: Exterior y cambios. Adecuaciones.**

**A 7830: Exterior y cambios. Adecuaciones.**

**A 7833: Exterior y cambios. Adecuaciones.**

**A 7834: Exterior y cambios. Adecuaciones**

**A 7838: Exterior y cambios. Adecuaciones.**

**A 7840: Exterior y cambios. Adecuaciones.**

**A 7845: Exterior y cambios. Adecuaciones.**

**A 7851: Exterior y cambios. Adecuaciones.**

**A 7852: Exterior y cambios. Adecuaciones.**

**A 7853: Exterior y cambios. Adecuaciones.**

**A 7864: Exterior y cambios. Adecuaciones.**

**A 7866: Exterior y cambios. Adecuaciones.**

**A 7867: Exterior y cambios. Adecuaciones.**

**A 7873: Exterior y cambios. Adecuaciones.**

**A 7874: Exterior y cambios. Adecuaciones.**

**A 7893: Exterior y cambios. Adecuaciones.**

**A 7894: Exterior y cambios. Adecuaciones.**

**A 7895: Exterior y cambios. Adecuaciones.**

**A 7903: Exterior y cambios. Adecuaciones.**

**A 7904: Exterior y cambios. Adecuaciones.**

**A 7911: Exterior y cambios. Adecuaciones.**

**A 7914: Exterior y cambios. Adecuaciones y actualización del texto ordenado**

**A 7915: Exterior y cambios. Adecuaciones.**

**A 7916: Exterior y cambios. Adecuaciones.**

**A 7917: Exterior y cambios. Adecuaciones.**

**A 7925 Exterior y cambios. Adecuaciones.**

**A 7935: Exterior y cambios. Adecuaciones.**

**A 7940: Exterior y cambios. Adecuaciones.**

**A 7941: Exterior y cambios. Adecuaciones.**

**A 7945: Exterior y cambios. Adecuaciones.**

**A 7952: Exterior y cambios. Adecuaciones.**

**A 7953: Exterior y cambios. Adecuaciones y actualización del texto ordenado.**

**A 7968: Exterior y cambios. Adecuaciones.**

**A 7980: Exterior y cambios. Adecuaciones.**

**A 7990: Exterior y cambios. Adecuaciones.**

**A 7994: Exterior y cambios. Adecuaciones.**

**A 7998: Exterior y cambios. Adecuaciones.**

**A 7999: Exterior y cambios. Adecuaciones.**

**A 8006: Depósitos de ahorro, cuenta sueldo y especiales. Exterior y cambios. Adecuaciones.**

**A 8031: Exterior y cambios. Adecuaciones.**

**A 8035: Exterior y cambios. Adecuaciones y actualización del texto ordenado.**

**A  8042: Exterior y cambios. Adecuaciones.**

**A  8054: Exterior y cambios. Adecuaciones.**

**A  8055: Exterior y cambios. Adecuaciones.**

**A  8059: Exterior y cambios. Adecuaciones.**

**A  8073: Exterior y cambios. Adecuaciones.**

**A  8074: Exterior y cambios. Adecuaciones.**

**A 8085: Exterior y cambios. Adecuaciones.**

**A 8094: Exterior y cambios. Adecuaciones.**

**A 8099: Exterior y cambios. Adecuaciones.**

**A 8108: Exterior y cambios. Adecuaciones.**

**A 8112: Exterior y cambios. Adecuaciones.**

**A 8116 Exterior y cambios. Adecuaciones.**

**A 8118: Exterior y cambios. Adecuaciones.**

**A 8122: Exterior y cambios. Adecuaciones.**

**A 8129: Exterior y cambios. Adecuaciones.**

**A 8133: Exterior y cambios. Adecuaciones.**

**A 8137: Exterior y cambios. Adecuaciones.**

**A 8153: Exterior y cambios. Adecuaciones.**

**A 8155: Exterior y cambios. Adecuaciones.**

**A 8160: Exterior y cambios. Adecuaciones.**

**A 8161: Exterior y cambios. Adecuaciones.**

**A 8178: Exterior y cambios. Adecuaciones.**

**A 8191: Exterior y cambios. Actualización del texto ordenado.**

**B 12020: Exterior y cambios. Pedidos de conformidad previa por pagos de importaciones de bienes (Comunicaciones A 7001 y 7030).**

**B 12082: Cuestiones operativas. Operaciones inconsistentes.**

**B 12083: Circular CAMEX 1 - 869. Sistema online para constatar las declaraciones juradas.**

**C 89971: Comunicación A 7293. Fe de erratas.**

**C 91566: Exterior y cambios. Fe de erratas.**

**C 93169: Exterior y cambios. Comunicación A 7556. Aclaraciones.**

**C 93180: Exterior y cambios. Comunicación A 7562. Fe de erratas.**

**C 96844: Exterior y cambios. Comunicación A 7917. Fe de erratas.**

**C 96983: Exterior y cambios. Comunicación A 7935. Fe de erratas.**

**C 97065: Exterior y cambios. Comunicación A 7941. Fe de erratas.**

**C 97215: Exterior y cambios. Comunicación A 7953. Fe de erratas.**

**Comunicaciones vinculadas a esta norma (relacionadas y/o complementarias):**

**B 11627: Régimen de Negociaciones en divisas de Exportaciones de Bienes. Baja de módulos KAA, KAB, KAC, KAD, KAE y KAJ.**

**B 11892: Comunicación A 6799. Aclaración Normativa.**

**B 11900: Punto 3.9. del Texto Ordenado de las Normas sobre Exterior y Cambios.**

**B 11944: Exterior y cambios. Adecuaciones. Sistema online para constatar la habilitación para realizar operaciones de cambio.**

**B 11957: Exterior y cambios. Sistema online para constatar la habilitación para realizar operaciones de cambio.**

**B 12188: Certificaciones de aumento de exportaciones previstas en la Com. A 7301. Procedimiento de emisión.**

**Legislación y/o normativa externa relacionada:**

**Decreto 260/02.**

**Decreto 609/19.**

**Decreto 91/19.**

**Decreto 597/23**

**Resolución General 841/2020**

**<u>Exhibit A – English Translation</u>**



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

## EXTERIOR AND CHANGES

**-Last communication incorporated: A 8191-**

**Text ordered on 02/10/2025**



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| BCRA | ORDERED TEXT OF THE RULES ON "EXTERIOR AND CHANGES". |
|---|---|

- Index -

**Section 1. General provisions.**

Section 2. Specific provisions for income from the foreign exchange market.

2.1.   Collections from exports of goods.
2.2.   Collections from exports of services.
2.3.   Disposal of non-produced non-financial assets.
2.4.   Debt securities subscribed abroad and financial indebtedness with foreign countries.

2.5.   Debt securities or other debt securities denominated and payable in foreign currency in the country.

2.6.   Exception to the settlement of export collections for goods and services for beneficiaries of the "Regime for the Promotion of Exports in the Knowledge Economy."

2.7.   Other exceptions to the liquidation obligation.
2.8.   Swaps and arbitrage with clients associated with foreign currency income.
2.9.   Operations included in article 3 of Decree 616/05.

Section 3. Specific provisions for expenditures through the foreign exchange market.

3.1.   Payments for imports and other purchases of goods from abroad.
3.2.   Payments for services provided by non-residents.
3.3.   Interest payments on debts for imported goods and services.
3.4.   Payments of profits and dividends.
3.5.   Payments on debt securities subscribed abroad and financial indebtedness abroad.

3.6.   Payments on debt securities or other debt instruments denominated and payable in foreign currency in the country and foreign currency obligations between residents.

3.7.   Payments of foreign currency debts owed by residents through trusts established in the country to guarantee the provision of services.
3.8.   Purchase of foreign currency by resident individuals for the formation of external assets, the remittance of family support, and for derivatives transactions.

3.9.   Purchase of foreign currency by resident individuals to be used simultaneously for the purchase of real estate in the country with mortgage loans.

3.10. Purchase of foreign currency by other residents—excluding entities—for the formation of external assets and for derivatives transactions.

3.11. Other purchases of foreign currency by residents with application specific.
3.12. Purchase of foreign currency for financial derivatives transactions.
3.13. Repatriation of direct investments and other purchases of foreign currency by non-residents.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | ORDERED TEXT OF THE RULES ON<br>"EXTERIOR AND CHANGES". |
|---|---|

- Index -

3.14. Swaps and arbitrage with clients not associated with foreign currency earnings.

3.15. Cancellation by financial institutions of foreign credit lines applied to finance foreign trade operations and financial guarantees granted.

3.16. Additional requirements for foreign exchange market expenditures.

3.17. Access with "Certification by the foreign exchange access regimes for the incremental production of oil and/or natural gas (Decree 277/22)".

3.18. Access with "Certification of Increased Exports of Goods."


Section 4. Other specific provisions.

4.1. Operations with credit, purchase, debit and prepaid cards.

4.2. Operations carried out through the Local Currency System (SML).

4.3. Securities transactions.

4.4. Subscription of BOPREAL bonds by debtors of imported goods with customs entry registration up to 12/12/23.

4.5. Subscription of BOPREAL bonds by debtors of non-resident services provided or accrued up to 12/12/23.

4.6. Subscription of BOPREAL bonds for profits and dividends of non-resident shareholders pending payment or already received in the country.

4.7. Supplementary provisions associated with the Bonds for the Reconstruction of a Free Argentina (BOPREAL).


Section 5. Operational Guidelines.

5.1. Exchange market operating hours.

5.2. Retail exchange rate.

5.3. Exchange tickets.

5.4. Customer identification.

5.5. Minimum information on transfers of funds to and from abroad.

5.6. Notification to the client of the crediting of funds to correspondent accounts.

5.7. Registration of client transactions with the BCRA.

5.8. Daily global tickets.

5.9. General exchange position and foreign currency holdings of entities.

5.10. Operations of the entities.

5.11. Exchange operations between entities.

5.12. Arbitration and swap operations abroad by entities.

5.13. Operations involving the import and/or export of national currency.

5.14. Settlement of foreign currency financing granted by local financial institutions.

5.15. Suspension of operations due to failure to register with the BCRA.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

BANCO CENTRAL
DE THE ARGENTINE REPUBLIC

| BCRA | ORDERED TEXT OF THE RULES ON "EXTERIOR AND CHANGES". |
|---|---|

- Index -

Section 6. Definitions.

6.1. Instruments traded on the foreign exchange market. 6.2.
Type of transactions carried out on the foreign exchange market. 6.3.
Spot transactions. 6.4.
Forward transactions. 6.5.
Resident. 6.6.
Transactions with related counterparties. 6.7.
General gear position (PGC). 6.8.
Services.
6.9. Income (primary income).
6.10. Current transfers (secondary income).
6.11. Non-produced non-financial assets.
6.12. Local governments.

Section 7. Collections from exports of goods.

7.1. Obligation to pay and settle within the established deadlines.
7.2. Settlements and other income attributable to compliance with a shipping permit.
7.3. Application of foreign currency for export collections.
7.4. Other charges admitted in compliance with the obligation of income and settlement.
7.5. Extensions to the deadline for the entry and settlement of foreign currency.
7.6. Defaulters in debt collection management.
7.7. Cancellation of advances or other export financing without the application of foreign currency for collections from exported goods.
7.8. Other provisions.
7.9. Financial operations enabled to apply collections for exports of goods and services.
7.10. Operations authorized for the application of export collections for goods within the framework of the investment promotion regime for exports (Decree No. 234/21).
7.11. Financing associated with imports of goods enabled for the application of collections on exports of goods.

Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO).

8.1. Operations included.
8.2. Entity nominated by the exporter.
8.3. Information on export destinations available to entities.
8.4. Responsibilities of the entity nominated for monitoring the permit.
8.5. Other charges admitted in compliance with the follow-up.
8.6. Reports from entities in the follow-up.



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | ORDERED TEXT OF THE RULES ON<br>"EXTERIOR AND CHANGES". |
|------|------------------------------------------------------|

- Index -

Section 9. Monitoring of advances and other export financing of goods.

9.1.   Operations included.
9.2.   Entity nominated by the exporter.
9.3.   Certifications of application of export collections.
9.4.   Currency application date.
9.5.   Minimum data that make up the certification.
9.6.   Other circumstances that reduce the amount pending application.
9.7.   Operations carried out through the Local Currency System (SML).
9.8.   Compliance with the BCRA's reporting regime.

Section 10. Payments for imports and other purchases of goods abroad.

10.1. General provisions.
10.2. Definitions.
10.3. Payments for imports of goods that have an entry record customs.
10.4. Payments for imported goods with pending customs entry registration.
10.5. Tracking import payments with customs entry records earring.
10.6. Other provisions.
10.7. Lines of credit from financial institutions applied to import financing.
10.8. Cancellation of foreign debts arising from the Argentine import of goods that do not qualify as commercial debts.
10.9. Other purchases of goods from abroad.
10.10. Complementary provisions for imports of goods with registration of customs entry from 13.12.23.
10.11. Additional provisions for imports of goods with customs entry registration until 12.12.23.

Section 11. Import payment tracking system (SEPAIMPO).

11.1. Monitoring import officializations.
11.2. Tracking import payments made prior to customs entry registration.



| BCRA | ORDERED TEXT OF THE RULES ON<br>"EXTERIOR AND CHANGES". |
|---|---|

- Index –

Section 12. NCM tariff items with specific treatment in the import regulations for goods.

      12.1. Tariff items referred to in point 10.10.2.10.

Section 13. Payments for services rendered by non-residents.

      13.1. General provisions.
      13.2. Payments for services that were or will be provided or accrued from 12/13/23.

      13.3. Payments for services that were or will be provided or accrued from 13/12/23 onwards, prior to the amount provided for in points 13.2.3. to 13.2.6.
      13.4. Payments for services rendered or accrued by non-residents until 12/12/23.
      13.5. Cancellation of letters of credit or guaranteed letters issued or granted by financial institutions to guarantee the import of services.
      13.6. Credit lines from financial institutions applied to the financing of service imports.

Section 14. Complementary provisions associated with the Incentive Regime for Large Enterprises Investments (RIGI).

      14.1. Benefits related to the entry and/or settlement of collections from exports of goods and services.
      14.2. Benefits related to access to the foreign exchange market for exit operations.
      14.3. Other benefits.
      14.4. Supplementary requirement for expenditures for a VPU that plans to use of the benefits in terms of collections from exports of goods and services.
      14.5. Other provisions.
      14.6. Exchange rate stability.

Section 15. Legal provisions determining the general structure of the foreign exchange market.

      15.1. Articles 1 and 2 of Decree 260/02.
      15.2. Articles 1, 2 and 3 of Decree 609/19.
      15.3. Article 1 of Decree 28/23.

Correlation table.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 1. General provisions. |

1.1. In all exchange, swap and/or arbitration transactions carried out through the free exchange market, established by Article 1 of Decree No. 260/02 according to the text established by Article 132 of Law 27444, hereinafter "exchange market", financial or exchange entities authorized to operate in exchange by the Central Bank of the Argentine Republic (BCRA), hereinafter "entities", must intervene.

1.2. Entities may grant access to the foreign exchange market to individuals or legal entities, assets, and other entities (hereinafter "clients"), when they verify compliance with the general provisions and, where applicable, the specific provisions provided for the relevant concept in this consolidated text.

In all cases, the entity must have the necessary elements to verify the genuine nature of the transaction to be carried out and its correct alignment with the declared concept.

1.3. Exchange operations will be carried out at the exchange rate that is freely agreed upon. between the parties.

1.4. For each exchange, swap, and/or arbitrage transaction, entities must issue a currency purchase and/or sale ticket, as appropriate, in accordance with the provisions of section 5.3.

1.5. Violations of this regulation will be subject to the Foreign Exchange Criminal Regime Law.

1.6. Entities must comply with the requirements for identifying their clients and recording transactions with the BCRA in accordance with the corresponding reporting regime. Failure to submit this information will be subject to Article 41 of the Financial Entities Law.

1.7. Entities must comply with regulations on "Prevention of money laundering, terrorist financing, and other illicit activities."

1.8. Any queries or requests for prior approval made by clients regarding transactions to be processed in the foreign exchange market must be made through an entity authorized to process the type of transaction described therein. These requests must be submitted to the BCRA's front desk, addressed to the Main Office of Foreign Exchange and Foreign Exchange.

These must include an analysis by the entity involved in the transaction framework, the original customer note, and the data necessary to identify the transaction in order to proceed with its analysis according to the type of query or request being made, accompanied by any documentation deemed relevant to the analysis of the request.

1.9. Covered entities must complete the "Report of External Assets and Liabilities" for the transactions that must be declared, even if no funds have entered the foreign exchange market and/or future access to that market is not expected.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 2. Specific provisions for income from the foreign exchange market. |

**2.1. Collections from exports of goods.**

Sections 7, 8, and 9 detail the rules associated with the export of goods, the provisions related to the monitoring of foreign exchange negotiations for exports of goods (SECOEXPO), and the monitoring of advances and other export financing of goods, respectively.

**2.2. Collections from exports of services.**

2.2.1. Collections for the provision of services by residents to non-residents must be entered and settled in the foreign exchange market within a period of no more than 20 (twenty) business days from the date of receipt abroad or in the country or from their crediting to foreign accounts.

To the extent that the export of services falls within the provisions of Decree 28/23, the aforementioned will be considered fulfilled when, within the indicated periods, the exporter has entered and settled in the foreign exchange market an amount not less than 80% (eighty percent) of the collected exchange rate and for the unsettled portion has carried out purchase and sale transactions with securities, in which the securities are acquired with settlement in foreign currency and sold with settlement in local currency in the country.

In the event that the client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) that has declared to the Enforcement Authority that it planned to make use of the benefits established in article 198 of Law 27.742, the exception provided for in point 14.1.3 will apply.

In the case of funds received or credited abroad, the payment and settlement may be considered complete for an amount equivalent to the usual expenses charged by foreign financial institutions for the transfer of funds to the country.

2.2.2. Collections from exports of services received within the established regulatory deadlines and falling into the following situations will be exempt from the settlement obligation:

2.2.2.1. These are payments for exports of services provided by individuals, and all of the following conditions are met:

i) The operations correspond to the following concept codes:

S01 Maintenance and repairs.
S07 Construction services.
S12 Telecommunications services.
S13 Computer services.
S14 Information services.
S15 Charges for the use of intellectual property.
S16 Research and development services.



Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 2. Specific provisions for income from the foreign exchange market. |

S17 Legal, accounting and management services.

S18 Advertising, market research and public opinion survey services.

S19 Architectural, engineering and other services technicians.

S21 Services related to trade.

S22 Other business services.

S23 Audiovisual and related services.

S24 Other personal, cultural and recreational services.

S27 Other health services.

S28 Educational teachings.

ii) The funds are credited to foreign currency accounts of customer ownership in local financial institutions.

iii) The client has not used this mechanism for an amount greater than equivalent of USD 36,000 (thirty-six thousand US dollars) in the calendar year, in all entities and by all of the concepts understood.

iv) The intervening entity has a sworn statement of the exporter in which he states that:

    a) does not exceed the annual limit established for all entities and by the set of concepts included.

    b) complies with the provisions of point 3.16.3.1, taking as reference the day on which you request the use of this mechanism as a replacement from the day of access to the foreign exchange market.

    c) undertakes to comply with the provisions of point 3.16.3.2. taking as a reference the day you request the use of this mechanism, replacing the market access day of changes.

v) The use of this mechanism must be neutral in terms of fiscal.

For the purposes of recording these transactions, two tickets without any movement of pesos must be prepared. The purchase ticket will be issued for the corresponding service concept, and the sales ticket must be registered under the concept code "A22. Accreditation of collections for exports of goods and services."

2.2.2.2. These are payments from exports of services provided by legal entities that are beneficiaries of the Knowledge Economy Export Promotion Scheme (Chapter II of Decree 679/22) and all of the following conditions are met:



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 2. Specific provisions for income from the foreign exchange market. |

    i) the operations correspond to the concept codes stated in point 2.2.2.1.i).

        The intervening entity must also have a sworn statement from the client stating that the unpaid payments correspond to exports of services related to activities linked to the knowledge economy.

    ii) the client has the equivalent of the amount that is intended not to be paid settle with a "Certification of increased exports" associated with the knowledge economy (Decree 679/22)" issued in the terms provided for in point 2.6.2.

    iii) funds in foreign currency must be credited to a "Special account for the economic development regime of the knowledge. Decree 679/22" of ownership of the client until they are intended for the payment in foreign currency of the remuneration of personnel in a dependent relationship, duly registered, affected to the activities of the knowledge economy, according to the criteria established in Decree 679/22 and Resolution 234/22 of the Ministry of Economy.

For the purposes of recording these transactions, two tickets without any movement of pesos must be prepared. The purchase ticket will be issued for the corresponding service concept, and the sales ticket must be registered under the concept code "A22. Accreditation of collections for exports of goods and services."

2.2.2.3. These are payments for exports of services corresponding to the following operations associated with international tourism in the country:

    i) charges for consumption in the country made by non-residents through debit, credit, purchase or prepaid cards issued in the abroad.

    ii) charges for consumption in the country made by non-residents through electronic wallets or any other payment method that involves an immediate debit to an account in a financial institution in abroad or in a virtual account in a company abroad.

    If the method used to channel consumption includes the possibility of using virtual accounts, the person depositing the funds must demonstrate that the payment mechanism used requires such accounts to be opened in institutions whose operations are authorized by the monetary authority or equivalent of their country of residence, and that holding a tax code from that country is a condition for opening the account.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 2. Specific provisions for income from the foreign exchange market. |

iii) charges for any type of tourist service in the contracted country by non-residents, including those services contracted through wholesale and/or retail travel and tourism agencies in the country.

iv) charges for non-resident passenger transport services with destination in the country by land, air or water.

For the purposes of recording these transactions, two tickets without any movement of pesos must be prepared: the purchase ticket will be issued for the service concept to which the income corresponds, and the sales ticket under the concept "A10. Foreign currency debit/credit in local accounts for transfers abroad."

2.2.3. If payments are made through the local currency system, the settlement will be considered complete for the amount credited in the exporter's account in local currency. For services provided to Paraguayan or Uruguayan residents invoiced in the currency of the country of export destination, the equivalent of the credited amount in that currency will be calculated.

2.2.4. The application of collections from services exports to the cancellation of capital and interest on financial debts included in point 3.5. or debt securities with public registration in the country that fall under point 3.6.1.3. or to the repatriation of direct investment contributions will be permitted, provided that the requirements set forth in point 7.9 are met.

2.2.5. Likewise, to the extent that the requirements set forth in points 3.11.3. and 7.9.5. are met, collections from service exports will be permitted to be accumulated in accounts opened in local or foreign financial institutions, for the amounts payable in the debt contracts, in order to guarantee the cancellation of the capital and interest services of financial indebtedness included in point 3.5. and/or of debt securities with public registration in the country that fall under point 3.6.1.3.

## 2.3. Disposal of non-produced non-financial assets.

The consideration received by residents for the sale to non-residents of non-produced non-financial assets must be paid in foreign currency and settled in the foreign exchange market within 20 (twenty) business days from the date of receipt abroad or in the country or from its crediting to foreign accounts.

In the case of funds received or credited abroad, the payment and settlement may be considered complete for an amount equivalent to the usual expenses charged by foreign financial institutions for the transfer of funds to the country.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 2. Specific provisions for income from the foreign exchange market. |

## 2.4. Debt securities subscribed abroad and financial indebtedness abroad.

Debt securities publicly registered abroad, other financial indebtedness with foreign countries, and debt securities publicly registered in the country denominated in foreign currency and fully subscribed abroad, disbursed as of 09/01/19, must be entered and settled in the foreign exchange market as a requirement for subsequent access to it for the purpose of meeting their capital and interest services within the framework of the provisions of point 3.5.

## 2.5. Debt securities or other debt securities denominated and payable in foreign currency in the country.

Resident issues of debt securities with public registration in the country not included in point 3.5 and/or promissory notes with public offering issued within the framework of General Resolution 1.003/24 of the National Securities Commission (CNV) and concordant and/or fiduciary debt securities of trustees of fiduciary trusts with public offering specified in accordance with the provisions of the CNV on the matter, denominated and subscribed in foreign currency, must be settled in the foreign exchange market as a requirement for subsequent access to it for the purposes of meeting their capital and/or interest services with foreign currency in the country within the framework of the provisions of point 3.6.

## 2.6. Exception to the settlement of export collections for goods and services for beneficiaries of the "Regime for the Promotion of Exports in the Knowledge Economy."

2.6.1. Legal entities registered in the National Registry of Beneficiaries of the Knowledge Economy Promotion Regime and who are beneficiaries of the provisions of Chapter II of Decree 679/22 shall be exempt from the obligation to settle payments for exports of goods and services corresponding to knowledge economy activities, provided that all of the following conditions are met:

2.6.1.1. have entered the exchange market within the time limits established in each case;

2.6.1.2. have a "Certification of increased exports associated with the knowledge economy (Decree 679/22)" under the terms set forth in point 2.6.2.;

2.6.1.3. the remaining requirements established in points are met 2.2.2.2. or 7.8.4., as appropriate.

The amounts of foreign currency to be allocated under the provisions of Chapter II of Decree 679/22 may not be subject to any other differential exchange treatment other than that provided for in said chapter.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 2. Specific provisions for income from the foreign exchange market. |

2.6.2. The beneficiary must nominate a single local financial entity that will be the responsible for issuing the "Certifications of increased exports associated with the knowledge economy (Decree 679/22)" and sending them to the entities through which the client wishes to collect the income from their export collections of goods or services.

The nominated entity may issue these certifications for each quarterly reference period following the client's registration, when all of the following requirements are met:

2.6.2.1. The amount of the certifications obtained for the quarterly reference period, including the one requested to be issued, does not exceed the equivalent in US dollars of 30% (thirty percent) of the increase in collections from exports of goods and services entered by the foreign exchange market in the reference quarter compared to those in the same quarter of 2021.

Before issuing each certification, the entity must verify the value of the amount indicated in the information provided by the BCRA.

If the reference quarter is the fourth quarter of 2022, the available amount must be reduced by the sum of the certifications issued in a timely manner for transactions after 09/30/2022, in accordance with the provisions of point 3.18 and/or point 3 of Communication A 7518.

For the purposes of calculating the collections from exports of services, the operations corresponding to the concepts detailed in point 2.2.2.1.i) will be taken into consideration.

2.6.2.2. The entity has a sworn statement from the exporter stating that:

i) the amount of the certifications requested for the quarterly period of reference, including the one requested to be issued, corresponds to the increase in export collections for related activities with the knowledge economy.

ii) undertakes that any funds not settled under this mechanism will be used for payment in foreign currency of the remuneration of dependent personnel, duly registered and affected by the activities of the knowledge economy, according to the criteria established in Decree 679/22 and Resolution 234/22 of the Ministry of Economy.

iii) as of the date of issue there are no non-compliances in terms of income and settlement of collections from exports of goods or services.

iv) complies with the provisions of point 3.16.3.1, taking as reference the day in which you request the certification to replace the day of access to the exchange market.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 2. Specific provisions for income from the foreign exchange market. |

v) undertakes to comply with the provisions of point 3.16.3.2. taking as a reference the day you request the certification to replace the day of access to the foreign exchange market.

2.6.2.3. Export collections that are intended to be included in this mechanism were not affected by any other differential exchange rate treatment.

2.6.3. The BCRA will initially consider the entity nominated by the exporter to be the entity that has accumulated the highest amount of settlements for services between 02/01/22 and 31/05/22.

If the exporter made his first entry of export collections eligible for tax from that last date, the entity through which that entry was made will be selected.

When the exporter wishes to change the entity nominated to issue the certifications, the entity in charge of monitoring must notify the new entity of the exporter's intention. If the exporter accepts, the new entity will be authorized to issue new certifications once the change of entity has been registered with the BCRA and the previous entity has sent the details of the certifications issued in the exporter's name to that point.

## 2.7. Other exceptions to the liquidation obligation.

In addition to the exceptions stated above, the settlement in the foreign exchange market of the funds received by residents for the operations provided for in points 2.1. to 2.5. will not be required, provided that all of the following conditions are met:

2.7.1. The exercise of the exception is carried out within the period for the settlement of funds in the foreign exchange market applicable to the transaction.

2.7.2. The funds have remained credited to foreign currency accounts held by the client in local financial institutions until the exercise of the exception, or, in the case of funds received abroad, deposited in the client's name in correspondent accounts of a local entity.

2.7.3. Foreign currency funds must be applied simultaneously with the exercise of the exception to transactions for which current exchange regulations allow access to the exchange market against local currency, considering the limits established for each concept involved.

2.7.4. The use of this mechanism must be tax-neutral.

For the purposes of recording these transactions, two tickets without any movement of pesos must be prepared, for the corresponding purchase and sale concepts, calculating the amount for which this mechanism is used for the purposes of the monthly limits that may be applicable in each case.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 2. Specific provisions for income from the foreign exchange market. |

In all cases, the client must provide a sworn statement confirming that they are aware that the funds used under this method will be used to calculate the regulatory limits for the relevant exchange sale concept and that they do not exceed them.

## 2.8. Swaps and arbitrage with clients associated with foreign currency income.

Entities may carry out these transactions with clients as long as they do not correspond to transactions subject to settlement obligations in the foreign exchange market.

For these transactions, financial institutions must allow the crediting of foreign currency income from abroad to accounts opened by the client in foreign currency.

If the transfer is in the same currency as the account, the entity must credit the same amount received from abroad.

When the entity decides to charge a commission and/or fee for these transactions, it must be implemented through a specifically individualized concept.

## 2.9. Operations included in article 3 of Decree 616/05.

The result of the exchange settlement must be credited to a local account. If the transaction is arranged at an institution other than the one where the client holds an account, the transfer of funds to the client's local account may be carried out through a direct transfer from an operating account of the institution or a non-transferable check issued by the institution itself.

With regard to the remaining requirements set forth in Article 4 of the aforementioned decree, the provisions of Resolution 3/15 of the former Ministry of Finance and Public Finance and Resolution 1/17 of the Ministry of Finance apply.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

Before granting access to the foreign exchange market for transactions covered in points 3.1 to 3.15—including those carried out through swaps or arbitrage transactions—in addition to the specific requirements and conditions detailed in each point, entities must comply with the applicable additional requirements listed in point 3.16.

### 3.1. Payments for imports and other purchases of goods from abroad.

The regulations associated with the operation of Argentine imports of goods and other purchases of goods from abroad and the provisions related to the import payment tracking system (SEPAIMPO) are detailed in Sections 10 and 11, respectively.

### 3.2. Payments for services provided by non-residents.

The rules associated with payment for services provided by non-residents are detailed in Section 13.

### 3.3. Interest payments on debts for imported goods and services.

Entities granting access to the foreign exchange market for the payment of interest on commercial debts for imported goods or services must verify that the following conditions are met:

3.3.1. The transaction is declared, if applicable, in the last due submission of the "Survey of external assets and liabilities."

3.3.2. Access to the foreign exchange market takes place from the due date of the interest payable.

This requirement will not apply if the client is a Single Project Vehicle (SVPU) adhering to the Large Investment Incentive Scheme (RIGI) that specifies payment within the framework of the provisions of point 14.2.1.

In the remaining cases, prior approval from the Central Bank of Argentina (BCRA) will be required to access the foreign exchange market to prepay interest payments on commercial debts for imported goods and services.

3.3.3. Prior approval from the BCRA will be required when the creditor is a counterparty linked to the debtor and the interest due was due before 04/07/24.

This requirement will not apply when the operation falls into any of the following situations:

3.3.3.1. These are operations specific to local financial institutions.

3.3.3.2. the client has a "Certification of increase in exports of goods" for the years 2021 to 2023, under the terms provided in point 3.18., for the equivalent of the value being paid, or



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.3.3.3. The client has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)", issued within the framework of the provisions of point 3.17, for the equivalent of the amount paid.

3.3.3.4. Payment is made simultaneously with settlement for an amount not less than the amount of interest for which the exchange market is accessed:

i) new financial indebtedness included in point 3.5. with an average life of not less than 2 (two) years and that contemplate as Minimum 1 (one) year grace period for capital payment, in both cases counted from the date on which market access is finalized.

ii) new direct investment contributions from non-residents.

Financial debt and/or foreign direct investment contributions, which cannot be included in other mechanisms considered in the foreign exchange regulations, may be entered and settled by the debtor who pays the interest or by another resident company belonging to its economic group.

The entity must verify compliance with all other regulatory requirements applicable to the transaction before submitting the request to the BCRA.

### 3.4. Payments of profits and dividends.

Entities may provide access to the foreign exchange market to transfer foreign currency abroad in the form of profits and dividends to non-resident shareholders, provided that all of the following conditions are met:

3.4.1. Profits and dividends correspond to closed and audited balance sheets.

3.4.2. The total amount paid under this concept to non-resident shareholders, including the payment being requested, does not exceed the amount in local currency to which they are entitled according to the distribution determined by the shareholders' meeting.

The entity must have a sworn statement signed by the legal representative of the resident company or a representative with sufficient authority to assume this commitment on behalf of the company.

3.4.3. The entity must verify that the client has complied, where applicable, with the declaration of the last overdue submission of the "Survey of external assets and liabilities" for the transactions involved.

Machine Translated by Google



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| | |
|---|---|
| BCRA | EXTERIOR AND CHANGES |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.4.4. The client falls into some of the following situations and meets all of them:
the conditions stipulated in each case:

3.4.4.1. Records direct investment contributions settled as of 01/17/20.

i) The total amount of transfers for the concept of profits and dividends issued through the exchange market since the 17/01/20, including the payment for which the course is being requested, does not exceed 30% (thirty percent) of the value of new investment contributions foreign direct investment in resident companies entered and settled through the exchange market from the aforementioned date.

To this end, the entity must have a certification issued by the entity that processed the liquidation stating that it has not issued certifications for the purposes set forth in this point for an amount greater than 30% (thirty percent) of the liquidated amount.

If the client is a direct beneficiary of Decree 277/22, the value of the decree benefits used by the client, directly or indirectly, must be deducted from the amount indicated in the first paragraph.

Therefore, the intervening entity must have a certification from the entity responsible for issuing "certifications for foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" within the framework of the provisions of point 3.17, which states the amount of the benefits used directly or indirectly by the client.

ii) Access occurs within a period of no less than 30 (thirty) days since the liquidation of the last contribution that is computed for purposes of the requirement provided for in point 3.4.4.1.i).

iii) The client must present the documentation that supports the capitalization definitive contribution. If you do not have it, you must submit proof of the start of the registration process with the Public Registry of Commerce of the final capitalization decision of the contributions of capital computed in accordance with legal requirements corresponding and undertake to submit the documentation of the definitive capitalization of the contribution within 365 (three hundred and sixty and five) calendar days from the start of the procedure.

3.4.4.2. Profits generated in projects under the "GAS PLAN".

i) Profits generated by contributions of foreign direct investment entered and settled by the foreign exchange market as of 11/16/20, intended to finance projects within the framework of the "Plan de Promotion of Argentine natural gas production – Scheme "Supply and demand 2020-2024" established in article 2 of the Decree 892/20.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

If the client is a direct beneficiary of Decree 277/22, the value of the decree benefits used by the client, directly or indirectly, must be deducted from the amount enabled in the preceding paragraph.

Therefore, the intervening entity must have a certification from the entity responsible for issuing the "certifications for foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" within the framework of the provisions of point 3.17, which states the amount of the benefits used directly or indirectly by the client.

    ii) Access to the foreign exchange market occurs no earlier than 2 (two) calendar years counted from the date of settlement in the market of changes in the contribution that allows the framework in the present point.

    iii) The client must present the documentation that supports the capitalization final contribution.

3.4.4.3. Have a certification of increased exports of goods.

The client has a "Certification of Increased Exports of Goods" for the years 2021 to 2023 issued under section 3.18, equivalent to the value of profits and dividends paid.

3.4.4.4. Have a "Certification for the foreign exchange access regimes for the incremental production of oil and/or natural gas (Decree 277/22)."

The client has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)", issued within the framework of the provisions of point 3.17, for the equivalent of the value of profits and dividends paid.

3.4.4.5. Exchange and/or arbitration with funds received in the country for capital or interest of the Bonds for the Reconstruction of a Free Argentina (BOPREAL).

The client carries out an exchange and/or arbitrage transaction with funds deposited in a local account and originating from foreign currency collections of principal or interest on the Bonds for the Reconstruction of a Free Argentina (BOPREAL).

3.4.4.6. Profits and dividends from contributions to a VPU affiliated with the RIGI.

The client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) and the profits correspond to contributions of foreign direct investment that fall within the provisions of point 14.2.2.

The client must present documentation that supports the final capitalization of the contribution.



Machine Translated by Google

**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

Cases that do not fall under the above requirements will require the prior approval of the BCRA to access the foreign exchange market.

Clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the equivalent amount in local currency of the profits and dividends outstanding to non-resident shareholders according to the distribution determined by the shareholders' meeting, provided that the requirements set forth in point 4.6.1 are met.

## 3.5. Payments of debt securities subscribed abroad and financial indebtedness with the abroad.

Entities may provide access to the foreign exchange market to make principal or interest payments on debt securities publicly registered abroad, other financial indebtedness abroad, and debt securities publicly registered in the country denominated in foreign currency and fully subscribed abroad, provided that the following conditions are met:

### 3.5.1. The debtor must demonstrate the receipt and settlement of foreign currency in the foreign exchange market for an amount equivalent to the nominal value of the financial debt.

This requirement will be considered fulfilled in the following cases:

3.5.1.1. debts disbursed prior to 01/09/19.

3.5.1.2. Indebtedness originated from 01/09/19 onwards that does not generate disbursements because it is a refinancing of capital and/or interest on foreign financial debts that would have been accessible under applicable regulations, provided that the refinancing does not anticipate the maturity of the original debt.

3.5.1.3. for the amount of the applicable granting and/or issuing expenses and other expenses debited abroad for the banking operations involved.

3.5.1.4. by the difference between the effective value and the nominal value in emissions of publicly registered debt securities placed below par.

3.5.1.5. for the portion corresponding to a capitalization of interest provided for in the debt contract.

3.5.1.6. for the portion of the issues of publicly registered debt securities made between 10/09/20 and 12/31/23 with an average life of no less than 2 (two) years that were delivered to creditors of financial indebtedness abroad and/or publicly registered debt securities denominated in foreign currency with maturities between 10/15/20 and 12/31/23, as part of the refinancing plan duly requested in point 7. of Communication A 7106 and related provisions (provisions received in point 3.17. of the Annex to Communication A 7914), based on the following parameters:



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

i) the amount of capital for which the foreign exchange market was accessed until on 12/31/23 did not exceed 40% (forty percent) of the amount of the capital that was due, except when for an amount equal to or greater than surplus debtor:

a) recorded settlements in the foreign exchange market as of 09/10/20 for issues of debt securities with public registration in foreign or other financial indebtedness with foreign countries; or

b) recorded settlements in the foreign exchange market as of 09/10/20 for issues of debt securities with public registration in the country denominated and subscribed in foreign currency and whose services are payable in foreign currency in the country; or

c) had a "Certification of increased exports of goods" for the years 2021 to 2023 issued within the framework of point 3.18.; or

d) had a "Certification for the access regimes to foreign currency for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17.

ii) the remainder of the maturing capital was, at a minimum, refinanced with a new foreign debt with an average life of 2 (two) years greater than the average remaining life of the refinanced capital.

3.5.1.7. for the portion of the issues of debt securities with public registration made as of 01/07/21 that were delivered to creditors to refinance pre-existing financial debts with an extension of the average life, when applicable to the amount of refinanced capital, the interest accrued until the refinancing date and, to the extent that the new debt securities do not record capital maturities during the first 2 (two) years, the amount equivalent to the interest that would accrue in the first 2 (two) years for the indebtedness that is refinanced early and/or for the postponement of the refinanced capital and/or for the interest that would accrue on the amounts thus refinanced.

3.5.1.8. for the portion subscribed with foreign currency in the country of debt securities issues with public registration abroad made as of 02/05/21, provided that all of the following conditions are met:

(i) the debtor proves that he has registered exports prior to the issuance of debt securities or the funds from the placement were destined to face commitments with the exterior. If they are not meets at least one of the two conditions stated, the issue must have the prior approval of the BCRA;

ii) the average life of the debt securities is not less than 5 (five) years years;



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

iii) the first payment of capital is not recorded before 3 (three) years from the date of the issue date;

iv) the local subscription does not exceed 25% (twenty-five percent) of the total subscription; and

v) all funds subscribed in the country have been liquidated in the exchange market.

3.5.1.9. For foreign debts originating from 01/09/19 onwards in a refinancing of the capital and/or interest of commercial debts with the foreign creditor, to the extent that the new financial debt does not anticipate maturities with respect to the refinanced commercial debt or imply making payments before the date on which the client could have accessed the commercial debt under applicable regulations.

These conditions may be considered fulfilled for debts with an average life of not less than 2 (two) years.
originated between 08/27/21 and 12/12/23 in a refinancing framed in point 20. of Communication A 7626 and concordant provisions (provisions duly received in point 3.20. of the Annex of Communication A 7914); to the extent that the entity has a certification for access to the foreign exchange market issued, within the 5 (five) prior business days, by the entity that completed the registration with the BCRA with the concept code "P17. Registration of refinancing of commercial debt within the framework of point 20. of Communication A 7626".

3.5.1.10. Financial debts included in this point 3.5. that fall under points 7.11.1.3. and 7.11.1.5. to the extent that the customs entry record of goods with a value equivalent to the financing received is demonstrated.

The value of freight charges recorded in the transport documentation associated with the customs entry record of the goods may also be computed, provided that the funds from the operations contemplated in points 7.11.1.3 and 7.11.1.5 have been allocated to the direct payment of import freight service providers not included in their agreed purchase condition.

3.5.1.11. Financial debts included in this point 3.5. that have been classified under point 7.10.2.2.ii) to the extent that the customs entry record of goods with a value equivalent to the financing received is demonstrated.

3.5.1.12. for the portion of the new debt securities delivered by a resident to its creditors as a participation premium, repurchase, early redemption or similar within the framework of an exchange, repurchase and/or early redemption operation of financial indebtedness included in this point 3.5., to the extent that:



Machine Translated by Google

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

  i) the nominal value of the new securities delivered, as a premium
     participation, repurchase or early redemption or similar, does not exceed the
     equivalent to 5% (five percent) of the capital value of the debt
     effectively exchanged or repurchased; and

  ii) the new debt securities contemplate at least 1 (one) year of
      grace for the payment of capital and imply a minimum extension of 2
      (two) years with respect to the average life of the remaining capital of the
      debt exchanged or repurchased.

3.5.2. The transaction is declared, if applicable, in the last due submission of the "Survey of external
     assets and liabilities."

3.5.3. Access to the foreign exchange market occurs no more than 3 (three) business days prior to
     the due date of the principal or interest service to be paid.

   In the case of a capital payment of debt securities issued from 11/08/24 that is made
   through a transfer abroad, additionally, access to the foreign exchange market must occur
   after at least 365 (three hundred and sixty-five) calendar days from the date of issue.

   Access to the foreign exchange market before the indicated time will require the prior
   approval of the BCRA, unless the debtor falls into one of the following situations and all the
   conditions stipulated in each case are met:

   3.5.3.1. Prepayment of principal and interest with the settlement of funds received from
         abroad for the issuance of a new debt security included in this point 3.5.

         i) the prepayment of capital is carried out simultaneously with the
            settlement of funds received from abroad for the issuance of
            a new debt security included in this point 3.5. issued in the
            within the framework of a refinancing, repurchase and/or rescue operation
            advance of debt.

            a) the new debt title contemplates one (1) year of grace for the
               capital payment and its average life is at least 2 (two) years greater
               the average remaining life of the debt being prepaid; and

            b) the accumulated amount of the capital maturities of the new
               indebtedness at no time may exceed, to date
               of the due date of the debt being cancelled, the amount that would have
               accumulated the principal maturities of the debt being cancelled.

         ii) the prepayment of interest corresponds to the accrued interest
             for the refinanced debt up to the closing date of the transaction
             repurchase and/or redemption, without the need for a liquidation of
             funds for the equivalent amount;



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

Additionally, the entity may provide the client with access to the foreign exchange market to:

iii) pay as a repurchase premium, early redemption premium or similar up to the equivalent of 5% (five percent) of the amount of the capital of the repurchased and/or redeemed debt, to the extent that the payment is carried out simultaneously with a liquidation of funds entered from abroad by the new debt title that exceeds the amount of principal that is prepaid, at least, for an amount equivalent to the amount of the premium paid.

iv) pay on the closing date of the repurchase and/or redemption operation, without need for a settlement of funds for the amount equivalent, the costs of issuing or other services provided by non-residents within the framework of the issuance of new debt securities issued and/or the repurchase and/or redemption operation.

3.5.3.2. Prepayment of capital and interest with simultaneous settlement of others financial debts included in this point 3.5.

i) The prepayment of capital and interest is carried out in a simultaneously with the liquidated funds from a new debt financial included in this point 3.5.;

ii) the average life of the new debt is greater than the life average remaining debt that is prepaid; and

iii) the accumulated amount of the capital maturities of the new indebtedness may at no time exceed, until the date of maturity of the debt being cancelled, the amount that would have accumulated the principal maturities of the debt being cancelled.

3.5.3.3. Prepayment of interest within the framework of a securities exchange process of debt included in point 3.5.

i) The prepayment of interest is carried out within the framework of a process exchange of debt securities issued by the client;

ii) the amount paid before maturity corresponds to interest accrued as of the closing date of the exchange;

iii) the average life of the new debt securities is greater than the life average remaining value of the exchanged title; and

iv) the accumulated amount of the principal maturities of the new securities at no time, until the final maturity date of the title redeemed, may exceed the amount that would have been accumulated by the principal maturities of the exchanged security.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.5.3.4. Prepayment of principal and interest simultaneously with the settlement of a new financial debt granted by a local financial institution from a foreign line of credit.

i) the prepayment of capital and interest is carried out in a manner simultaneously with the liquidated funds from a new debt financial granted by a local financial institution from a line of foreign credit;

ii) the average life of the new debt is greater than the life average remaining debt that is prepaid; and

iii) the accumulated amount of the capital maturities of the new indebtedness at any time, until the maturity date of the debt that is cancelled may exceed the amount that would have been accumulated the principal maturities of the debt being cancelled.

3.5.3.5. Prepayment of principal and interest by a VPU affiliated with the RIGI.

The client is a Single Project Vehicle (SVPU) affiliated with the Large Investment Incentive Scheme (RIGI) that prepays capital or accrued interest on financial debts included in this point 3.5, within the framework of the provisions of point 14.2.1.

3.5.4. To the extent that the requirement of prior approval by the BCRA for access to the foreign exchange market for the settlement upon maturity of principal and interest on financial debts included in this point 3.5. is in force, this requirement will not apply when all of the following conditions are met:

3.5.4.1. The funds were used to finance projects within the framework of the "Plan for the promotion of Argentine natural gas production – Supply and demand scheme 2020-2024" established in article 2 of Decree 892/20 ("GAS PLAN");

3.5.4.2. The funds have been received and settled by the foreign exchange market as of 11/16/20; and

3.5.4.3. the debt has an average life of not less than 2 (two) years.

3.5.5. Financial debts included in this point 3.5. will be eligible to settle their principal and interest payments upon maturity by applying collections from exports of goods and services, provided that the requirements set forth in point 7.9 are met.

Likewise, under the terms set forth in point 7.9.5., the aforementioned collections will be allowed to be accumulated, for the amounts required in the debt contracts, in accounts abroad and/or in the country in order to guarantee the cancellation of the services of financial debts with abroad.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.5.6. Prior approval from the Central Bank of Argentina (BCRA) will be required for access to the foreign exchange market for the settlement of principal and interest on financial debts included in this point 3.5. when the creditor is a counterparty linked to the debtor.

This requirement will not apply when the operation falls into any of the following situations:

3.5.6.1. These are operations specific to local financial institutions.

3.5.6.2. it concerns a financial debt included in this point 3.5. that has an average life of no less than 2 (two) years and the funds have been entered and settled by the foreign exchange market as of 02/10/20.

3.5.6.3. This is a payment of compensatory interest accruing from 01/01/25 on the remaining original value of financial debts with related foreign counterparties.

Punitive or other equivalent damages accrued from 01/01/25 will continue to be subject to the prior compliance requirement.

3.5.6.4. it is an interest payment that is made simultaneously with the settlement for an amount at least equivalent to:

i) new financial debts included in this point 3.5. with an average life of no less than 2 (two) years and that contemplate at least 1 (one) year of grace for the payment of capital, in both cases counted from the date on which access to the market.

ii) new direct investment contributions from non-residents.

Financial debt and/or foreign direct investment contributions, which cannot be included in other mechanisms considered in the foreign exchange regulations, may be entered and settled by the debtor who pays the interest or by another resident company belonging to its economic group.

3.5.6.5. it concerns a financial debt included in this point 3.5. with an average life of no less than 2 (two) years, settled between 08/27/21 and 12/12/23 and that was used to pay commercial debts for the importation of goods and services from the issuance of a "Certification of entry of new financial debt with abroad" within the framework of point 1. of Communication A 7348 and related provisions (provisions duly received in point 3.19. of the Annex to Communication A 7914).

Machine Translated by Google



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.5.6.6. it concerns a financial debt included in this point 3.5. with an average life of no less than 2 (two) years originated between 08/27/21 and 12/12/23, from a refinancing of commercial debts for the importation of goods and services with the creditor itself framed in point 20. of Communication A 7626 and concordant (provisions duly received in point 3.20. of the Annex of Communication A 7914).

The entity must have a certification for access to the foreign exchange market issued, within 5 (five) business days prior, by the entity that completed the registration with the BCRA with the concept code "P17.
Registration of commercial debt refinancing within the framework of point 20 of Communication A 7626".

3.5.6.7. The client has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)", issued within the framework of the provisions of point 3.17., for the equivalent of the amount of capital being paid.

3.5.6.8 it concerns a financial debt included in this point 3.5. that falls within the mechanism of point 7.11. and the access date is consistent with the conditions required to qualify for such mechanism.

3.5.6.9. The client has a "Certification of Increased Exports of Goods" for the years 2021 to 2023 issued under the provisions of point 3.18. for the equivalent of the principal amount being paid.

3.5.6.10. The client is a Single Project Vehicle (SVPU) affiliated with the Large Investment Incentive Scheme (RIGI) that pays off capital or interest on financial debts included in this point 3.5. within the framework of the provisions of point 14.2.1.

Debts included in this section will continue to be subject to prior consent even if there is a change in the creditor or debtor that results in the relationship between the creditor and the resident debtor no longer existing.

**3.6. Payments of debt securities or other debt instruments denominated and payable in foreign currency in the country and foreign currency obligations between residents.**

3.6.1. Access to the foreign exchange market for the payment of debts and other obligations in foreign currency between residents entered into on or after 09/01/19 is prohibited, except for the settlement in the country of principal and interest due on the following amounts:

3.6.1.1. Foreign currency financing provided by local financial institutions, including payments for purchases in foreign currency made using credit or purchase cards.

| Version: 6a. | COMMUNICATION "A" 8191 | Validity: 11/02/2025 | Page 12 |
| --- | --- | --- | --- |



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.6.1.2. Issues of debt securities made from 01/09/19 onwards for the purpose of refinancing debts included in point 3.6.2. and which entail an increase in the average life of the obligations.

3.6.1.3. Issues made on or after 11/29/19 of debt securities publicly registered in the country not included in point 3.5., which are denominated and subscribed in foreign currency and whose principal and interest services are payable in foreign currency, to the extent that all the funds obtained have been settled in the foreign exchange market.

3.6.1.4. Publicly offered promissory notes issued under General Resolution 1003/24 of the National Securities Commission (CNV) and related instruments, denominated and subscribed in foreign currency, and whose principal and interest services are payable in foreign currency in the country, provided that all the funds obtained have been settled in the foreign exchange market.

3.6.1.5. Fiduciary debt securities issued by trustees of financial trusts with public offerings carried out in accordance with the CNV's provisions on the matter, denominated and subscribed in foreign currency and whose capital and interest services are payable in foreign currency in the country, to the extent that all the funds obtained have been settled in the foreign exchange market.

3.6.2. Entities may provide access to the foreign exchange market for the settlement of foreign currency obligations between residents, as of their maturity, recorded in public records or deeds as of 08/30/19.

3.6.3. Entities may also provide access to the foreign exchange market for the settlement of foreign currency financing granted by local financial institutions outstanding as of August 30, 2019, starting at maturity.

3.6.4. Access to the foreign exchange market prior to maturity will require the prior approval of the BCRA unless the operation falls into one of the following situations and all the conditions stipulated in each are met:
case:

3.6.4.1. Financing of local entities for consumption in foreign currency through credit or purchase cards.

The debt originates from foreign currency financing provided by local financial institutions for purchases made in foreign currency using credit or purchase cards.

3.6.4.2. Other foreign currency financing from local financial institutions cancelled simultaneously with the liquidation of funds from abroad for new debts.

i) The pre-cancellation is carried out simultaneously with the funds liquidated from a new financial debt included in the point 3.5. and/or new pre-financing of foreign exports;



Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

ii) the average life of the new debt is greater than the life
average remaining debt that is prepaid;

iii) the accumulated amount of the capital maturities of the new
indebtedness at any time, until the maturity date of the
debt that is cancelled may exceed the amount that would have been accumulated
the principal maturities of the financing to be prepaid; and

iv) in the event that the new debt is a pre-financing of
exports from abroad, the entity must have a declaration
sworn by the client, stating that it will be necessary to
prior approval of the BCRA for the application of foreign currency collections
exports to the cancellation of capital prior to the
maturities computed for the purposes of compliance with the
conditions indicated.

If the financing prepaid by the client was granted from a foreign line of credit, the
financial institution may, in turn, prepay the principal and accrued interest on the
line of credit in proportion to the debt collected in advance.

3.6.4.3. Prepayment of interest within the framework of a securities exchange process
of debt.

i) The prepayment of interest is carried out within the framework of a process
exchange of debt securities issued by the client, in which
delivers to the creditor a new title with public registration in the country no.
included in point 3.5.

ii) the amount paid before maturity corresponds to interest
accrued as of the closing date of the exchange;

iii) the average life of the new debt securities is greater than the life
average remaining value of the exchanged title; and

iv) the accumulated amount of the principal maturities of the new securities
at no time, until the due date of the debt that is
canceled, may exceed the amount that would have been accumulated by the
principal maturities of the exchanged security.

3.6.4.4. Prepayment of principal and interest on a debt security covered by this point 3.6.
with the settlement of funds received from abroad for the issuance of a new debt
security covered by this point 3.5.

i) the prepayment of capital is carried out simultaneously with the
settlement of funds received from abroad for the issuance of
a new debt security included in this point 3.5. issued in the
within the framework of a refinancing, repurchase and/or rescue operation
advance payment of the debt title.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

a) the new debt title contemplates one (1) year of grace for the capital payment and its average life is at least 2 (two) years greater to the average remaining life of the debt security that is pre-cancel; and

b) the accumulated amount of the capital maturities of the new indebtedness at no time may exceed, to date of the due date of the debt being cancelled, the amount that would have accumulated the principal maturities of the debt being cancelled.

ii) the prepayment of interest corresponds to the accrued interest for the refinanced debt up to the closing date of the transaction repurchase and/or redemption, without the need for a liquidation of funds for the equivalent amount;

Additionally, the entity may provide the client with access to the foreign exchange market to:

iii) pay as a repurchase premium, early redemption premium or similar up to the equivalent of 5% (five percent) of the amount of the capital of the debt security repurchased and/or redeemed, to the extent that the payment is made simultaneously with a settlement of funds entered from abroad for the new debt title that exceeds the amount of principal that is prepaid, at least, by a amount equivalent to the amount of the premium paid.

iv) pay on the closing date of the repurchase and/or redemption operation, without need for a settlement of funds for the amount equivalent, the costs of issuing or other services provided by non-residents within the framework of the issuance of new debt securities issued and/or the repurchase and/or redemption operation.

3.6.4.5. Prepayment of principal and interest on a debt security included in this point 3.6. simultaneously with the settlement of other financial debts included in point 3.5.

i) The prepayment of capital and interest is carried out in a simultaneously with the liquidated funds from a new debt financial included in point 3.5; and

ii) the average life of the new debt is greater than the life average remaining amount of the debt security that is prepaid; and

iii) the accumulated amount of the capital maturities of the new indebtedness at any time, until the maturity date of the debt that is cancelled may exceed the amount that would have been accumulated the principal maturities of the debt security being cancelled.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.6.4.6. Prepayment of principal and interest on a debt security covered by this point 3.6. simultaneously with the settlement of a new debt security of the same type.

i) Prepayment of capital and interest on a debt security included in this point 3.6. is carried out simultaneously with the funds liquidated by the issuance of a new debt security with public registry in the country not included in point 3.5., called and subscribed in foreign currency and whose services are payable in foreign currency, and

ii) the average life of the new title is greater than the average life remainder of the debt security that is prepaid; and

iii) the accumulated amount of the principal maturities of the new title debt at any time, until the debt maturity date that is cancelled, may exceed the amount that would have been accumulated by the principal maturities of the debt security being cancelled.

3.6.4.7. Prepayment of principal and interest by a VPU affiliated with the RIGI.

The client is a Single Project Vehicle (SVPU) participating in the Large Investment Incentive Scheme (RIGI) that prepays principal or accrued interest on debts included in this section 3.6, within the framework of the provisions of section 14.2.1.

3.6.5. The amount of foreign currency purchases made by individuals for the purpose of settling debts included in this point 3.6., including the cancellation of financing granted by local financial institutions for foreign currency purchases made using credit or purchase cards,

Starting with the following calendar month and for any subsequent months necessary to complete the amount acquired since 09/01/20, the amount will be deducted from the limit established in point 3.8. for the purchase of foreign currency by individuals for the formation of external assets, the remittance of family support, and for derivatives transactions.

Notwithstanding the foregoing, as long as the conditions provided for are met, the individual may continue to access the foreign exchange market to settle foreign currency financing included in point 3.6.

3.6.6. Issues of debt securities with public registration in the country that meet the conditions provided in this point 3.6. for access to the foreign exchange market
They will be entitled to cancel their capital and interest services from their maturity by applying in the country collections from exports of goods and services, as long as the requirements provided in point 7.9 are met.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

**3.7. Payments of foreign currency debts of residents by trusts established in the country to guarantee the provision of services.**

Entities may provide access to the foreign exchange market to make principal and/or interest payments to trusts established in the country by a resident to guarantee the payment of principal and interest on their obligations, provided they verify that the debtor would have had access to make the payment in their name by complying with the applicable regulatory provisions.

**3.8. Purchase of foreign currency by resident individuals for training of external assets, the remittance of family support and through derivatives operations.**

Entities may provide access to the foreign exchange market to resident individuals for the formation of external assets (concept codes A01, A02, A03, A04, A06, A07, A08, A09, and A14), the remittance of family support, and for derivatives transactions (concept code A05) to the extent that they do not fall under point 3.12.1., without the prior approval of the BCRA, provided that all of the following requirements are met:

3.8.1. The client does not exceed, in the calendar month for all entities and for all the concepts indicated, the equivalent of USD 200 (two hundred US dollars) net of the deductions that must be applied for the following operations:

3.8.1.1. The settlement of obligations between residents within the framework of the provisions of point 3.6, including financing granted by local financial institutions for purchases in foreign currency made using credit or purchase cards;

3.8.1.2. the purchase of foreign currency to be applied simultaneously to the purchase of real estate in the country with mortgage loans within the framework of the provisions of point 3.9.;

3.8.1.3. Cash withdrawals with debit cards made abroad with debit to the client's local peso accounts as provided in point 4.1.1.;

3.8.1.4. Consumptions made with a debit card abroad with debit in local account in pesos as provided in point 4.1.2.

3.8.2. The transaction is carried out with a debit from the client's account in local financial institutions or the client's use of local currency cash does not exceed the equivalent of USD 100 (one hundred US dollars) in the calendar month in all the entities and for all the concepts indicated.

3.8.3. The client has not exceeded the limits mentioned above in the previous calendar month.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|------------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.8.4. The client undertakes not to enter into, directly or indirectly or on behalf of third parties, securities transactions with settlement in foreign currency in the country from the moment access is requested and for the following 90 (ninety) calendar days.

3.8.5. The client does not register pending financing cancellation that corresponds to:

3.8.5.1. Refinancings duly provided for in point 1.1.1 of the regulations on "Financial services within the framework of the health emergency established by Decree 260/20 Coronavirus (COVID-19)".

3.8.5.2. "Zero-Rate Loans", "Zero-Rate Loans 2021", "Zero-Rate Loans for Culture" or "Subsidized Loans for Companies", duly provided for in points 1.1.2 and 1.1.3 of the regulations on "Financial services within the framework of the health emergency established by Decree 260/20 Coronavirus (COVID-19)".

3.8.5.3. Financing in pesos duly provided for in point 2 of Communication A 6937, in points 2 and 3 of Communication A 7006 and complementary regulations.

3.8.6. The client is not entitled to the update of the quota value within the framework of the provisions of Article 2 of Decree 319/20 and complementary and regulatory norms.

3.8.7. The client does not hold the status of a national public official above the rank of Undersecretary of State (or equivalent rank) nor is a member of the boards of directors of national public banks or the BCRA.

3.8.8. The client is not covered by Joint Resolution 12/20 of the President of the Honorable Senate of the Nation and the President of the Honorable Chamber of Deputies of the Nation of October 1, 2020.

3.8.9. The customer is not a public service user who is eligible for subsidies on natural gas and/or electricity supply rates, whether they received them by request or automatically, and/or for subsidies on drinking water rates.

3.8.10. The client has no outstanding debt as a beneficiary of the "Pension Debt Payment Plan" provided for in Law 27.705 or any other pension debt regularization plan.

3.8.11. The client has no outstanding debt as a beneficiary of the "ANSES CREDITS" provided for in Resolution 144/23 of the National Social Security Administration (ANSES).

3.8.12. The client has no outstanding debt for the financing provided for in Decree 463/23 for beneficiaries of the Argentine Integrated Pension System (SIPA) and workers contributing to the aforementioned SIPA.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.8.13. The entity has a sworn statement from the client stating that the client meets the aforementioned requirements.

3.8.14. The entity has verified in the online system implemented for this purpose that the client's declaration is compatible with the data held by the BCRA.

Any request to correct or update the information included in this system must be submitted to the Superintendency of Financial and Exchange Entities (SEFyC) through a letter signed by the interested party, explaining the reasons why they believe the information is inadequate. This request must include all supporting evidence for the circumstances invoked.

3.8.15. If the transaction involves items included in the client's external assets, the selling entity must deliver the banknotes or traveler's checks in foreign currency or credit the funds to a foreign currency account held by the client in a local financial institution or to a bank account held by the client abroad, as appropriate.

In all cases, the entity must obtain evidence that the client has income and/or assets consistent with savings in foreign currency. It is not acceptable for the client to be a beneficiary of any plan or program characterized as social assistance—including food subsidies—without prejudice to the possibility of receiving social security benefits derived from the employment relationship—such as family allowances.

### 3.9. Purchase of foreign currency by resident individuals to be used simultaneously for the purchase of real estate in the country with mortgage loans.

Entities may provide access to the foreign exchange market to resident individuals for the purchase of foreign currency to be applied simultaneously to the purchase of real estate in the country intended for sole, family, and permanent residence, provided that:

3.9.1. The funds are from mortgage loans granted by local financial institutions. If the purchase transaction is completed within the framework of the Procrear Program, funds from subsidies under that program may also be used;

3.9.2. In the case of co-debtors, access will be registered individually in the name of each natural person up to the prorated amount that corresponds to them;

3.9.3. Considering the total number of co-debtors, access will be granted up to the loan amount or the equivalent of USD 100,000 (one hundred thousand US dollars), the amount that is less;

3.9.4. Each co-debtor signs a sworn statement in which they agree not to access the foreign exchange market for transactions related to the formation of external assets, remittance of family support, and derivatives operations, as stated in point 3.8., within the limits applicable to them, for as long as necessary to complete the amount acquired under this regime; and

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.9.5. All funds allocated for the purchase, both in local and foreign currency, must be deposited or transferred simultaneously to an account at a financial institution in the name of the property seller.

The requirement set forth in point 3.9.5 will be deemed fulfilled for payments attributed to the purchase that are proven to have been made prior to 09/19/19 or that correspond to payments of up to the equivalent of USD 1,000 (one thousand US dollars) made as a reservation of ownership.

The validity of this point has been suspended since 11/24/23.

3.10. Purchase of foreign currency by other residents – excluding entities – for the formation of external assets and through derivatives operations.

Access to the foreign exchange market by legal entities other than entities authorized to operate in foreign exchange, local governments, Mutual Funds, Trusts and other entities established in the country, will require the prior approval of the BCRA for the formation of external assets (concept codes A01, A02, A03, A04, A06, A07, A08, A09 and A14) and for operations with derivatives (concept code A05) to the extent that it does not fall under point 3.12.1.

3.11. Other purchases of foreign currency by residents with specific application.

3.11.1. Entities may provide access to the foreign exchange market to residents with debts or to trusts established in the country to guarantee the payment of principal and interest on such debts, for the purchase of foreign currency to provide collateral for the amounts payable in debt contracts under the following conditions:

3.11.1.1. In the case of commercial debts for imports of goods and/or services with a foreign financial institution or official export credit agency, or financial indebtedness included in point 3.5. with unrelated creditors who, by law, have access to the foreign exchange market for repayment, whose contracts provide for the crediting of funds in guarantee accounts for future servicing of foreign debts;

3.11.1.2. The acquired funds are deposited in accounts opened in local financial institutions within the framework of the conditions established in the

Contracts. The provision of collateral in accounts opened in foreign financial institutions will only be permitted when this is the sole and exclusive option provided for in debt contracts entered into prior to 31/08/19;

3.11.1.3. The guarantees accumulated in foreign currency, which may be used for the payment of services, do not exceed the amount to be paid at the next due date for services;



| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.11.1.4. The daily access amount does not exceed 20% (twenty percent) of the amount provided for in the previous point; and

3.11.1.5. The intervening entity has verified the debt documentation and has the elements that allow it to guarantee that access is granted under the conditions established in these provisions.

3.11.2. Entities may grant access to the foreign exchange market to residents who must make payments for financial debt services included in point 3.5. or for debt securities publicly registered in the country with access to the foreign exchange market in accordance with the provisions of point 3.6.1.3., for the purchase of foreign currency before the deadline allowed by the regulations for each case, under the following conditions:

3.11.2.1. The acquired funds are deposited in foreign currency accounts of their ownership opened in local financial institutions;

3.11.2.2. The intervening entity has verified that the debt, the service of which will be paid with these funds, complies with the current exchange regulations that allow such access; and

3.11.2.3. Client access falls into one of the following situations:

i) is finalized within 60 (sixty) calendar days prior to the date of maturity for a daily amount not exceeding 10% (ten per percent) of the amount to be cancelled; or

ii) is finalized within 5 (five) business days prior to the deadline normative admitted in each case for a daily amount that does not exceed the 20% (twenty percent) of the amount to be paid.

3.11.3. Entities may provide access to the foreign exchange market to residents with debts originated from 01/07/21 that are included in point 7.9. or to trusts established in the country to guarantee the attention of the capital and interest services of such debts, for the purchase of foreign currency for the constitution of guarantees in foreign currency accounts opened in local or foreign financial entities - when it is a financial debt included in point 3.5. -, for the amounts due in the debt contracts, under the following conditions:

3.11.3.1. Purchases are made simultaneously with the settlement of foreign currency and/or from funds deposited in the exporter's name into a correspondent account abroad held by a local entity; and

3.11.3.2. The guarantees accumulated in foreign currency do not exceed the equivalent of 125% (one hundred twenty-five percent) of the services for capital and interest to be paid in the current month and the following six calendar months, in accordance with the service maturity schedule agreed with the creditors.



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.11.4. In all cases, funds in foreign currency not used to pay the debt service and/or maintain the required guarantee amount must be liquidated in the foreign exchange market within 5 (five) business days after the due date.

3.11.5. For the purposes of recording the transactions admitted in points 3.11.1., 3.11.2. and 3.11.3., the intervening entity must prepare an exchange ticket under the concept "A19. Creation of deposits in foreign currency to be applied to the payment of debt service", and at the time of applying the acquired funds, a purchase ticket must be made under the same concept and another sale ticket for the concept corresponding to the cancellation of the debt service.

For the operations of point 3.11.3., the entity must prepare the ticket for the concept of collection of exports of goods or services, as appropriate.

3.11.6. Entities may provide access to the foreign exchange market to all business organizations, regardless of their corporate form, where the National State holds a majority stake in the capital or in the formation of corporate decisions, to carry out the formation of external assets with specific application to the payment of fuel or energy imports when the conditions provided in point 10.6.7 are met.

## 3.12. Purchase of foreign currency for financial derivatives transactions.

3.12.1. Entities may provide access to the foreign exchange market for the payment of premiums, the provision of guarantees, and the cancellation of interest rate hedging contracts for the obligations of residents abroad declared and validated, where applicable, in the "Survey of external assets and liabilities," as long as they do not cover risks greater than the external liabilities actually recorded by the debtor at the interest rate whose risk is being covered by entering into the contracts.

The client who accesses the foreign exchange market using this mechanism must nominate an entity to monitor the operation and sign a sworn statement in which he/she undertakes to enter and settle the funds resulting in favor of the local client as a result of said operation, or as a result of the release of the funds from the constituted guarantees, within the following 5 (five) business days.

3.12.2. Any remaining financial derivative transactions that residents other than entities authorized to operate in foreign exchange markets wish to conduct with access to the foreign exchange market shall be governed by the provisions of sections 3.8 and 3.10, as applicable.

3.12.3. All settlements of futures transactions on regulated markets, forwards, options, and any other type of derivatives arranged in the country carried out by entities as of 09/11/19 must be made in local currency.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

**3.13.** Repatriations of direct investments and other purchases of foreign currency by non-investors residents.

3.13.1. Access to the foreign exchange market for the repatriation of non-resident investments and other purchases of foreign currency by non-resident clients will require the prior approval of the BCRA, except for the following operations:

3.13.1.1. International organizations and institutions that perform functions of official credit agencies.

3.13.1.2. Diplomatic and consular representations and diplomatic personnel accredited in the country for transfers made in the exercise of their functions.

3.13.1.3. Representations in the country of Courts, Authorities or Offices, Special Missions, Commissions or Bilateral Bodies established by International Treaties or Conventions, to which the Argentine Republic is a party, to the extent that the transfers are made in the exercise of their functions.

3.13.1.4. Transfers abroad in the name of natural persons who are beneficiaries of retirements and/or pensions paid by the National Administration of Social Security (ANSES) or other social security organizations and/or pension annuities provided for in art. 101 of Law 24.241, up to the amount received by such persons.

concepts in the last 30 calendar days and to the extent that the transfer is made to a bank account owned by the beneficiary in his or her registered country of residence.

3.13.1.5. Purchase of banknotes in foreign currency by non-resident individuals for tourism and travel purposes for up to a maximum amount equivalent to USD 100 (one hundred US dollars) across all entities, provided that the entity has verified in the online system implemented by the BCRA that the client has settled an amount greater than or equal to the amount they wish to purchase within the previous 90 (ninety) calendar days.

This transaction will be enabled once the foreign currency sale settled by the client has been registered with the BCRA by the participating entity in accordance with standard guidelines.

Settlements carried out during the validity period under securities transactions on behalf of non-resident tourists will not be taken into account for the purposes of this section.

3.13.1.6. Transfers to bank accounts abroad of individuals for funds received in the country associated with benefits granted by the National State within the framework of Laws 24.043, 24.411 and 25.914 and related laws.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

3.13.1.7. Repatriation of direct investments by non-residents in companies that are not controlling entities of local financial entities, provided that the capital contribution has been entered and settled through the foreign exchange market as of 02/10/20 and the repatriation takes place at least 2 (two) years after its entry.

3.13.1.8. Repatriation of direct investments from non-residents up to the amount of investment contributions received and settled through the foreign exchange market as of 11/16/2020, provided that all of the following conditions are met:

i) the destination of the funds has been the financing of projects framed in the "Plan for the promotion of gas production Argentine natural – Supply and demand scheme 2020-2024" established Article 2 of Decree 892/20;

ii) the entity has documentation that proves the effective income from direct investment in the resident company; and

iii) access occurs no earlier than 2 (two) calendar years from the settlement date in the foreign exchange market of the transaction that allows the framing at the present point.

3.13.1.9. Repatriation of direct investments by non-residents in companies that are not controlling entities of local financial institutions, provided that they have a "Certification by the foreign exchange access regimes for the incremental production of oil and/or natural gas (Decree 277/22)", issued within the framework of the provisions of point 3.17, for the equivalent of the amount to be repatriated.

3.13.1.10. Repatriation of non-resident portfolio investments originating from profits and dividends collected in the country since 09/01/19, based on the distribution determined by the shareholders' meeting based on closed and audited balance sheets, to the extent that the transaction is carried out through an exchange and/or arbitration with funds deposited in a local account and originating from collections in foreign currency of capital or interest on BOPREAL bonds.

3.13.1.11. Repatriation of direct investments of non-residents in companies through the access of the resident who acquired his/her capital participation in a resident company to the extent that:

i) access is finalized simultaneously with the liquidation of funds brought in from abroad for financial debts included in point 3.5. or funds from a loan financial in foreign currency granted by a financial institution local from a line of credit from a foreign financial institution, that have an average life of not less than 4 (four) years and that contemplate at least 3 (three) years of grace for the payment of capital;

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

ii) the resident company whose capital is transferred is included among the following sectors: forestry industry, tourism, infrastructure, mining, technology, steel, energy, oil and gas; and

iii) the operation involves the transfer of at least 10% (ten percent) of the capital of the resident company.

If at the time of obtaining access the client does not have the documentation proving that he has taken possession of the share in the capital being paid, he must make a sworn statement in which he undertakes to present it within 60 (sixty) calendar days of obtaining access to the foreign exchange market.

3.13.1.12 Repatriations of direct investment contributions from non-residents in a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) included in point 14.2.3.

If a repatriation of a direct investment by non-residents consists of a capital reduction and/or return of irrevocable contributions made by the local company, in addition to the requirements provided for in each case, the entity must have the documentation that demonstrates that the legal mechanisms provided for have been complied with and have verified that the liability in pesos with abroad generated from the date of non-acceptance of the irrevocable contribution or the capital reduction, as appropriate, has been declared, if applicable, in the last due presentation of the "Survey of external assets and liabilities."

3.13.2. The repatriation of direct investment contributions through the application of foreign currency from receipts from exports of goods and services will be permitted provided that the requirements set forth in point 7.9 are met.

3.13.3. Non-resident clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the equivalent amount in local currency of the profits and dividends collected as of 09/01/19 according to the distribution determined by the shareholders' meeting, adjusted by the latest Consumer Price Index (CPI) available as of the subscription date, provided that the requirements set forth in point 4.6.2 are met.

3.14. Swaps and arbitrage with clients not associated with foreign currency earnings.

Entities may carry out exchange and arbitrage transactions with their clients not associated with the inflow of foreign currency from abroad in the following cases:

3.14.1. Transfer of foreign currency abroad by individuals from their accounts local foreign currency to own bank accounts abroad.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.14.2. Transfer of foreign currency abroad by local collective securities depository centers for funds received in foreign currency by the capital and securities income services of the National Treasury or the BCRA, which operation is part of the payment process at the request of the collective securities depository centers abroad.

3.14.3. Transfer of foreign currency abroad to pay for imported goods and services under the provisions of sections 10.10.2.12, 10.10.2.13, and 13.3.9, using foreign currency funds deposited in local financial institutions.

3.14.4. Arbitrage transactions that do not involve transfers abroad may be carried out without restrictions as long as the funds are debited from the client's foreign currency account at a local financial institution.

To the extent that the funds are not debited from the client's foreign currency account, these transactions may only be carried out, without prior approval from the BCRA, by individuals up to the amount permitted for cash use in points 3.8 and 3.13.

3.14.5. Exchange and arbitrage transactions with funds deposited in a local account and originating from collections of principal and interest in foreign currency from BOPREAL bonds, to the extent that the applicable requirements are met, are intended for:

3.14.5.1. Payment of commercial debts for imports of goods with customs entry registration up to 12/12/23, eligible in accordance with the provisions of point 4.4.

3.14.5.2. Payment of commercial debts for imports of services rendered or accrued up to 12/12/23, eligible in accordance with the provisions of point 4.5.

3.14.5.3. Payment of debts to non-resident shareholders for eligible profits and dividends in accordance with the provisions of point 4.6.1.

3.14.5.4. The repatriation of non-resident portfolio investments originating from profits and dividends collected in the country since 09/01/19, based on the distribution determined by the shareholders' meeting based on balance sheets. closed and audited, eligible in accordance with the provisions of point 4.6.2.

3.14.6. Transfer of foreign currency abroad by a local government from its foreign currency holdings deposited in local financial institutions, including those that constitute a surplus as provided for in point 3.16.2., to the extent that the regulatory requirements that would be applicable to the type of operation to be carried out if it were carried out in pesos are verified.

3.14.7. The remaining exchange and arbitration transactions may be carried out with clients without the prior approval of the BCRA, provided that, if implemented as individual transactions in pesos, they may be carried out without such approval in accordance with current exchange regulations.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 3. Specific provisions for expenditures through the foreign exchange market |

This also applies to local collective securities depository centers for funds received in foreign currency for capital and income services on foreign currency securities paid in the country.

If the transfer is in the same currency as the account, the entity must debit the amount sent abroad.

When the entity decides to charge a commission and/or fee for these transactions, it must be implemented through a specifically individualized concept.

3.15. Cancellation by financial institutions of foreign credit lines applied to finance foreign trade operations and financial guarantees granted.

3.15.1. Cancellation of foreign credit lines applied by the entities to the financing of foreign trade operations.

Financial institutions will have access to the foreign exchange market upon maturity to repay lines of credit granted by foreign financial institutions and used to finance residents' export or import operations.

The cancellation of the lines intended for the financing of import operations for goods and services will also be subject to the specific conditions provided for in points 10.7 and 13.6, respectively.

They will also be able to access these lines of credit to prepay their loans, provided that the financing provided by the local entity has been prepaid by the debtor. Clients' access to the foreign exchange market to prepay these loans will require prior approval from the Central Bank of Argentina (BCRA).

The entity must have the validation of the entity's "Survey of external assets and liabilities" declaration, to the extent applicable.

3.15.2. Cancellation of financial guarantees granted by local financial institutions.

Local financial institutions will be able to access the foreign exchange market to meet their obligations to non-residents for financial guarantees granted as of 10/01/21, provided that all of the following conditions are met:

3.15.2.1. The granting of the guarantee was a requirement for the execution of a contract for works or the provision of goods and/or services that involved, directly or indirectly, the export of goods and/or services from Argentine residents.

3.15.2.2. The guarantee is issued at the request of the resident who will provide the goods or services and is associated with the fulfillment of the works or contracts.
provision of goods and/or services by you or by a non-company
resident under its control who will be responsible for the execution of the contract.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.15.2.3. The counterparty to the aforementioned contract is a non-resident not related to the resident who will export the goods and/or services.

3.15.2.4. The beneficiary of the payment is the non-resident counterparty or a foreign financial institution that has provided guarantees for the faithful performance of contracts for works or the provision of goods and/or services by the exporter or a non-resident company it controls.

3.15.2.5. The amount of the guarantee provided by the local financial institution does not exceed the value of the exports of goods and/or services that the resident will carry out following the execution of the contract for works or provision of goods and/or services.

3.15.2.6. The warranty period does not exceed 180 (one hundred and eighty) calendar days from the date of shipment of local goods or completion of the provision of services related to the contract subject to the warranty.

### 3.16. Additional requirements for foreign exchange market expenditures.

3.16.1. Information regime for "Advance of foreign exchange operations".

Entities must submit to the BCRA, at the close of each trading day and with 2 (two) business days' notice, information on transactions to be carried out at the request of clients or the entity's own transactions as a client, which involve access to the foreign exchange market for a daily amount equal to or greater than the equivalent of USD 100,000 (one hundred thousand US dollars), for each of the 3 (three) business days counted from the first reported day. Accesses for the cancellation of financing from local entities for consumption in foreign currency through credit or purchase cards should not be taken into account.

That is, at T = 1 they will report the operations of T = 3, T = 4 and T = 5, at T = 2 they will report the operations of T = 4, T = 5 and T = 6 and so on.

Clients of authorized entities must inform them with sufficient advance notice to enable them to comply with the requirement established in the preceding point, so that they can process the exchange transaction, provided that the remaining requirements in force in the regulations are simultaneously met.

On the day of the transaction or transactions, the client may choose to process the transactions reported by any authorized entity. In these cases, the intervening entity must have proof from the reporting entity that the transaction has been duly reported.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.16.2. Client's sworn statement regarding his holdings of liquid external assets and/or Argentine deposit certificates representing foreign shares.

The entity must have prior approval from the BCRA unless it has, at the time of accessing the foreign exchange market, a sworn statement from the client stating that:

3.16.2.1. All of its foreign currency holdings in the country are deposited in accounts with financial institutions and it did not hold, at the beginning of the day on which it requests market access, Argentine deposit certificates representing foreign shares (CEDEARs) and/or available liquid external assets that jointly have a value greater than the equivalent of USD 100,000 (one hundred thousand US dollars).

The following will be considered liquid external assets, among others: holdings of foreign currency banknotes and coins, availability of gold coins or bars of good delivery, demand deposits in financial institutions abroad and other investments that allow for immediate availability of foreign currency (for example, investments in external public securities with custody in the country or abroad, funds in investment accounts with investment managers based abroad, cryptoassets, funds in accounts of payment service providers, etc.).

Funds deposited abroad that cannot be used by the client because they are reserve or guarantee funds established pursuant to the requirements set forth in foreign debt contracts or funds established as collateral for derivative transactions entered into abroad should not be considered available liquid external assets.

In the event that the client had liquid external assets available and/or CEDEARs for an amount greater than that established in the first paragraph, the entity may also accept a sworn statement from the client stating that such amount is not exceeded, considering that, partially or totally, the liquid external assets:

i) were used during that day to make payments that would have had access to the local exchange market;

ii) were transferred in favor of the client to a correspondent account of a local entity authorized to operate in exchanges;

iii) are funds deposited in bank accounts abroad at your discretion. names that originate from collections of exports of goods and/or services or advances, pre-financing or post-financing of exports of goods granted by non-residents, or in the disposal of non-produced non-financial assets for which the period of 20 (twenty) business days has not elapsed since its perception.



| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

iv) are funds deposited in bank accounts abroad at your discretion.
name originated from financial debts included in
point 3.5. and its amount does not exceed the equivalent to pay for capital
and interest in the next 365 (three hundred sixty-five) days
corridos.

v) are funds deposited in bank accounts abroad at your disposal.
names originated in the last 180 (one hundred eighty) calendar days
for disbursements abroad received from 11/29/24
financial debts included in point 3.5.

vi) are funds deposited in bank accounts abroad at your disposal.
name originated from sales of securities with settlement in
foreign currency referred to in point 3.16.3.6.iii).

vii) are funds deposited in bank accounts abroad at your discretion.
name originated in debt securities issues made in
the 120 (one hundred and twenty) calendar days prior and susceptible to being
included in the provisions of points 7.11.1.5 and 7.11.1.6.

This final sworn statement by the client must expressly state the value of its
liquid external assets available at the beginning of the day and the amounts
allocated to each of the situations described in sections i) to vii) that are
applicable.

3.16.2.2. It undertakes to settle in the foreign exchange market, within 5 (five) business
days of their availability, those funds it receives.
abroad originating from the collection of loans granted to third parties, the
collection of a term deposit or the sale of any type of asset, when the asset has
been acquired, the deposit constituted or the loan granted after 05/28/20.

This requirement will not apply to those expenditure operations that correspond to:

(i) client transactions carried out within the framework of points 3.8., 3.13. and
3.14.1. to 3.14.3;

ii) operations of an entity as a client;

iii) cancellations of financing in foreign currency granted by entities
local financial institutions for foreign currency consumption
by credit or purchase cards; or

iv) payments abroad from non-financial card issuing companies for the use
of credit, purchase, debit or prepaid cards issued in the country.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.16.3. Client's affidavit regarding transactions with securities and others
assets.

The entity must have prior approval from the BCRA unless it has a sworn statement from the
client stating that:

3.16.3.1. On the day you request market access and in the previous 90 (ninety) calendar days, directly or indirectly
or on behalf of and on behalf of third parties:

(i) has not entered into sales in the country of securities with settlement
in foreign currency;

ii) has not exchanged securities issued by residents for
external assets;

iii) has not made transfers of securities to entities
foreign depositaries;

iv) has not acquired in the country securities issued by non-residents
with settlement in pesos;

v) has not acquired representative Argentine deposit certificates
of foreign shares;

vi) has not acquired securities representing private debt
issued in a foreign jurisdiction;

vii) has not delivered funds in local currency or other local assets
(except funds in foreign currency deposited in entities
local financial institutions) to any natural or legal person, resident
or non-resident, linked or not, receiving as consideration
prior or subsequent, directly or indirectly, by itself or through
through a related, controlled or controlling entity, assets
external, crypto assets or securities deposited abroad.

3.16.3.2. undertakes that from the moment it requests access to the exchange market and for
the following 90 (ninety) calendar days, directly or indirectly or on behalf of and on
behalf of third parties:

(i) will not arrange sales in the country of securities with settlement in
foreign currency;

ii) will not exchange securities issued by residents for
external assets;

iii) will not make transfers of securities to depository entities
from abroad;

iv) will not acquire in the country securities issued by non-residents with
settlement in pesos;

| Version: 4a. | COMMUNICATION "A" 8191 | Validity: 11/02/2025 | Page 31 |
|---|---|---|---|



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

v) will not acquire Argentine deposit certificates representing
foreign shares;

vi) will not acquire securities representing private debt issued
in foreign jurisdiction;

vii) will not deliver funds in local currency or other local assets (except
funds in foreign currency deposited in financial institutions
local) to any natural or legal person, resident or not
resident, linked or not, to receive as prior consideration or
subsequently, directly or indirectly, by itself or through
a related, controlled or controlling entity, external assets,
cryptoassets or securities deposited abroad.

If the client is a legal entity, in order for the transaction not to be covered by the prior compliance requirement,
the entity must additionally provide a sworn statement stating:

3.16.3.3. Details of the natural or legal persons who exercise direct control over the client and other legal
persons with whom they form part of the same economic group.

For the purposes of determining the existence of a direct control relationship, the types of
relationships described in section 1.2.2.1 of the "Large Credit Risk Exposures" rules must be
considered.

Companies that share a control relationship of the type defined in sections 1.2.1.1 and 1.2.2.1 of
the "Large Exposures to Credit Risk" rules must be considered as part of the same economic
group.

3.16.3.4. that on the day it requests market access and in the previous 90 (ninety) calendar days it has not
delivered in the country funds in local currency or other liquid local assets - except funds in foreign
currency deposited in local financial institutions - to any natural or legal person exercising a
relationship of direct control over it, or to others.

companies with which it forms part of the same economic group, except those
directly associated with routine operations between residents of
acquisition of goods and/or services.

3.16.3.5. The provisions of points 3.16.3.1. to 3.16.3.4. shall not apply to those expenditure operations
corresponding to:

i) client transactions carried out within the framework of points 3.14.2.
a 3.14.3.;

ii) cancellations of foreign currency financing granted by
local financial institutions, including payments for consumption
in foreign currency made by credit or debit card
buys;

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

iii) operations included in point 3.13.1.4. to the extent that they are automatically processed by the entity in its capacity as representative of the non-resident beneficiary.

Entities, in their own operations as clients, must comply only with the provisions of points 3.16.3.3 and 3.16.3.4.

3.16.3.6. In the sworn statements prepared to comply with the points 3.16.3.1. and 3.16.3.2. shall not be taken into account:

(i) Transfers of securities to foreign depository institutions, made or to be made by the client for the purpose of participating in an exchange or repurchase transaction of debt securities issued by the National Government, local governments, or other resident private sector issuers. The client must undertake to present the corresponding certification for the exchanged debt securities.

ii)    The delivery of local assets for the purpose of settling a debt with an official credit agency or a foreign financial institution, provided that it occurs after maturity as a result of a guarantee clause provided for in the debt contract.

iii) Sales of securities with settlement in foreign currency in the country or abroad when all the funds obtained from such settlements have been used or will be used within 10 (ten) calendar days for the following operations:

a) Payments from the maturity of capital or interest of new financial debts included in point 3.5., disbursed from 02/10/23 and that contemplate at least 1 (one) year of grace for the payment of capital.

b) Repatriations of capital and income associated with direct investments of non-residents received from 02/10/23, provided that the repatriation occurs at least 1 (one) year after the capital contribution is made and the legal mechanisms provided for in such cases have been complied with.

c) Payments from the maturity of capital or interest on debt securities issued from 02/10/23 with public registration in the country not included in point 3.5., denominated and subscribed in foreign currency, with services payable in foreign currency and that contemplate at least 2 (two) years of grace for the payment of capital.

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

d) Payments from the maturity of capital or interest
financial indebtedness included in point 3.5.
do not generate disbursements because they are capital refinancing and/or
interest on operations contemplated in sections a) and c)
precedents, to the extent that refinancing does not anticipate
the maturity of the original debt.

e) Payments from the maturity of capital or interest on securities
issued with public registration in the country not included in the
point 3.5., denominated in foreign currency, with services
payable in foreign currency and not generating disbursements
for being refinancings of capital and/or interests of operations
contemplated in the preceding paragraph c) to the extent that the
refinancing does not anticipate the maturity of the original debt.

In all cases, the client must submit a sworn statement certifying that the
funds received in due time for the operations detailed in sections a) to c)
above were used in their entirety to make payments in the country
related to the implementation of investments in the Argentine Republic.

iv) sales with settlement in foreign currency in the country or in the
exterior of the Bonds for the Reconstruction of a Free Argentina
(BOPREAL) or transfers of these bonds to depositaries in the
abroad, when they are made for up to the amount acquired in the
primary subscription by those who participated in said instance.

v) sales with settlement in foreign currency abroad or
transfers to foreign depositaries that are carried out, starting from the
01/04/24, importers of goods and services that have acquired
in a primary subscription Bonds for the Reconstruction of a
Free Argentina (BOPREAL) for debts on imports of goods and
services eligible in points 4.4. and 4.5., when the value of
market for these operations does not exceed the difference between the value
obtained from the sale with settlement in foreign currency in the
exterior of BOPREAL bonds acquired in the subscriptions
primaries cited and their nominal value, if the first is lower.

3.16.3.7. The entity may also consider the provisions of points 3.16.3.3 and 3.16.3.4 to be
fulfilled when:

i) the client has submitted a sworn statement attesting
that within the period provided for in point 3.16.3.4., except for those
directly associated with routine operations within the framework of the
development of its activity, has not delivered funds in the country in
local currency or other liquid local assets - except funds in
foreign currency deposited in local financial institutions-
no natural or legal person,

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

ii) the client has submitted a signed affidavit for each natural or legal person detailed in point 3.16.3.3. to which the client has delivered funds to him in the terms provided in point 3.16.3.4., recording what is required in points 3.16.3.1., 3.16.3.2. and 3.16.3.4.

iii) the client has submitted a signed affidavit for each natural or legal person detailed in point 3.16.3.3., in which note that:

a) that meets the requirements of points 3.16.3.1 and 3.16.3.2; or

b) that within the period specified in point 3.16.3.4., except for those directly associated with routine operations between residents of acquisition of goods and/or services, has not received in the country funds in local currency or other liquid local assets - except funds in foreign currency deposited in entities local financial institutions - that have come from the client or from some person detailed in point 3.16.3.3. to whom the client has delivered funds under the terms provided in point 3.16.3.4.

If any of the persons detailed in point 3.16.3.3. is an entity belonging to the national public sector, it will not be necessary for that entity to submit the sworn declaration required in points ii) or iii) above to consider the requirements fulfilled.

3.16.4. Clients included based on ARCA invoices or apocryphal documents.

The entity must have prior approval from the BCRA if the client is a natural or legal person included by the Customs Collection and Control Agency (ARCA) in the database of invoices or equivalent documents classified as counterfeit.

The list of individuals or legal entities included in this database by the ARCA is available at the following Internet address: https://servicioscf.afip.gob.ar/Facturacion/facturasApocrifas/default.aspx.

This requirement will not apply to market access for the settlement of foreign currency financing granted by local financial institutions, including payments for purchases in foreign currency made using credit or purchase cards.

3.16.5. List of CUITs with inconsistent operations.

Before processing operations involving the withdrawal of funds abroad, the entity must verify whether the client is included in the list of CUITs with inconsistent transactions in the online system implemented by the BCRA for this purpose. If so, it must strengthen control measures to determine the reasonableness and authenticity of the transactions. Entities must retain a copy of the tasks performed in the client's file.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

If inconsistencies are detected in the documentation submitted by a client seeking to complete a transaction, entities must refrain from processing the transaction and enter the client's identification data into the online system.

In all cases where signs of foreign exchange fraud are detected, entities must file the corresponding complaints with the BCRA in accordance with the Foreign Exchange Criminal Regime Law.

3.16.6. VPU adhered to the RIGI with benefits in terms of export collections goods and services.

If the client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) that has declared to the Enforcement Authority that it plans to make use of the benefits established in article 198 of Law 27.742 regarding the collection of export taxes for goods and services, the additional requirement provided for in point 14.4 must be met.

### 3.17. Access with "Certification for foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)."

3.17.1. A client who holds a "Certification for the foreign exchange access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" may access the foreign exchange market for up to the amount of the certification to carry out:

3.17.1.1. Payments of principal on debts arising from the importation of goods with customs entry registration as of 12/13/23 before the deadline specified in point 10.10.1.1 and/or with customs entry registration up to 12/12/23.

3.17.1.2. Payments of principal on debts arising from the import of services rendered or accrued from 13/12/23 onwards before the deadline specified in point 13.2 and/or rendered or accrued up to 12/12/23.

3.17.1.3. Interest payments on commercial debts for the import of goods and services whose creditor is a counterparty linked to the debtor without the prior consent required in point 3.3.3.

3.17.1.4. Payments of profits and dividends to non-resident shareholders to the extent that the requirements set out in points 3.4.1 to 3.4.3 are verified.

3.17.1.5. Payments of principal and interest on foreign financial debts whose creditor is a counterparty linked to the debtor without the prior consent required in point 3.5.6.

3.17.1.6. Repatriation of direct investments by non-residents in companies that are not controlling entities of local financial institutions within the framework of the provisions of point 3.13.

In all cases, compliance with the remaining general and specific requirements applicable to the transaction under current foreign exchange regulations must be demonstrated.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

In the event that the client has obtained the benefit by virtue of a transfer from the original beneficiary under Decree 277/22, the entity must have a certification from the entity in charge of monitoring the benefits of Decree 277/22 for the original beneficiary, in which it states that it has been informed of the transfer and that it is consistent with the provisions of point 3.17.3.

3.17.2. Beneficiaries of the Foreign Exchange Access Regime for Incremental Oil Production (RADPIP) and/or the Foreign Exchange Access Regime for Incremental Natural Gas Production (RADPIGN) must nominate a single local financial institution that will be responsible for issuing the "certifications for the foreign exchange access regimes for incremental oil and/or natural gas production (Decree 277/22)" and sending them to the entities through which the client wishes to access the foreign exchange market.

If the client is a direct beneficiary of Decree 277/22, to be authorized to issue certifications, the entity must also be nominated by the client as responsible for:

3.17.2.1. the issuance of the "Certifications of increased exports of "goods" within the framework of point 3.18.

3.17.2.2. Monitoring of all operations that fall under the points 7.9 and 7.10.

If it is necessary to modify the nominated entity responsible for the purposes indicated in points 3.17.2.1 and/or 3.17.2.2, the new entity will be considered responsible once the change of entity has been registered with the BCRA and the previous entity has sent it the details of the certifications issued in the client's name up to that point.

3.17.3. The nominated entity must record the amounts of benefits recognized by the Ministry of Energy within the framework of Decree 277/22 in favor of the client, recording the period to which the benefit corresponds and the total amount of the benefit in US dollars obtained for the period.

In the event that the client is a direct beneficiary of Decree 277/22, the entity may issue "certifications of the foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" for up to the amount resulting from considering the accumulated amount of the total benefits recognized to the client by the Ministry of Energy net of the accumulated amounts for the concepts detailed below:

3.17.3.1. The benefits obtained by the client under Decree 277/22 that have been transferred to direct suppliers with the validation of the Ministry of Energy.

3.17.3.2. The amount of foreign currency applications from export receipts for goods to settle the principal of financial debts included in point 3.5. and/or the repatriation of direct investments, contemplated within the framework of the provisions of points 7.9. and/or 7.10., recorded as of 01/07/22.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.17.3.3. The amount of capital maturities that will be recorded in the following 365 (three hundred sixty-five) calendar days, those financial indebtedness included in point 3.5. that must be met with the application of collections from exports of goods within the framework of the provisions of points 7.9. and/or 7.10.

3.17.3.4. The amount of the "Certifications of Increased Exports of Goods" issued in the name of the beneficiary under point 3.18, as of 07/01/22.

3.17.3.5 the equivalent amount of the payments made since 01/07/22 by the beneficiary within the framework of the provisions of points 3.4.4.1. and/or 3.4.4.2., for profits and dividends generated by direct investment contributions settled as of 01/17/20 and/or by projects framed within the "PLAN GAS", respectively.

3.17.4. The financial institution designated by the beneficiary to issue the "certifications for the foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" must:

3.17.4.1. notify the Senior Management of Foreign Affairs and Foreign Exchange of your appointment of the BCRA within 10 (ten) calendar days of its occurrence.

3.17.4.2. Keep a record of the benefits obtained by the client, the certifications issued, and the amounts corresponding to the provisions of points 3.17.3.1. to 3.17.3.5 available to the SEFyC.

3.17.4.3. Comply with the information requirements established by the BCRA regarding this mechanism.

3.17.5. When the beneficiary wishes to modify the entity nominated for issuing the certifications, the entity in charge of monitoring must notify the new entity of the beneficiary's wishes.

If the beneficiary accepts the change, the new entity will be authorized to issue new certifications once the BCRA has been notified of the change of entity and the previous entity has sent the details of the certifications issued in the beneficiary's name up to that point.

3.18. Access with "Certification of Increased Exports of Goods."

3.18.1. Clients who have a "Certification of Increased Exports of Goods in 2021" or "Certification of Increased Exports of Goods in 2022" or "Certification of Increased Exports of Goods in 2023" may access the foreign exchange market for up to the amount of the certification to carry out:

3.18.1.1. Interest payments on commercial debts for the import of goods and services whose creditor is a counterparty linked to the debtor without the prior consent required in point 3.3.3.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.18.1.2. Payments of profits and dividends to non-resident shareholders to the extent that the requirements set out in points 3.4.1 to 3.4.3 are verified.

3.18.1.3. Payments of principal and interest on financial debts included in point 3.5. whose creditor is a counterparty linked to the debtor without the prior consent required in point 3.5.6.

In all cases, compliance with the remaining general and specific requirements applicable to the transaction under current foreign exchange regulations must be demonstrated.

This mechanism cannot be used for increases in exports of goods in 2023 by legal entities that are beneficiaries of the export promotion regime for the knowledge economy (Chapter II of Decree 679/22).

3.18.2. To process a "Certification of Increased Exports of Goods," the exporter must nominate a single local financial institution that will be responsible for issuing the corresponding certifications and forwarding them to the entities through which the client wishes to access the market.

The nominated entity may issue a "Certification of Increase in Exports of Goods in Year t" when all of the following requirements are met:

3.18.2.1. The FOB value of exports of goods included in items 7.1.1.2. to 7.1.1.5. shipped in year t y that have a certification of compliance within the framework of SECOEXPO, is higher than the FOB value of its exports for that same set of goods shipped in the entire year t-1.

For the purposes of this calculation, goods exported through operations exempted from monitoring pursuant to the provisions of point 8.5.17, exports for consumption with temporary import clearance (DIT) or those that have the customs advantages "EXPONOTITONEROSO" or "PROMOEXPO" should not be considered.

3.18.2.2. The exporter does not register permits with expired deadlines for the entry and settlement of foreign currency in non-compliance at the date of issue.
Permits that are considered "non-compliant with collection management" will not be considered for these purposes.

3.18.2.3. The exporter recorded exports of goods in year t-1.

3.18.2.4. The amount of the issued certifications, including the one requested to be issued, does not exceed the equivalent in foreign currency of the maximum amount established for the exporter by the provisions of point 3.18.3.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 3. Specific provisions for expenditures through the foreign exchange market |

3.18.2.5. The entity has a sworn statement from the exporter stating that the increase in exports corresponds to new, genuine commercial transactions and not to exports of goods previously made by third parties registered in its name under agreements with the third party or others.

3.18.2.6. The entity has a sworn statement from the exporter stating that, if both the exporter and his economic group were invited to a price agreement by the National Government, they have not refused to participate in such agreements nor have they breached the agreement if they have a current program.

3.18.3. The maximum amount of certifications for each year will be calculated by considering the lower of the total increase arising from the calculation provided for in point 3.18.2.1 and the equivalent of 30% (thirty percent) of the FOB value of the exports computed for year t-1.

The maximum amount of certifications for exporters, which will be notified to the entities by the BCRA, will be determined by assigning the following coefficients according to the type of goods in which the increase was recorded:

3.18.3.1. 5% (five percent) when it corresponds to goods that have been assigned a term of 30 (thirty) calendar days pursuant to the provisions of point 7.1.1.2.

3.18.3.2. 10% (ten percent) when it corresponds to goods that have been assigned a term of 60 (sixty) calendar days pursuant to the provisions of point 7.1.1.3.

3.18.3.3. 15% (fifteen percent) when it corresponds to goods that have been assigned a term of 180 (one hundred eighty) or more calendar days pursuant to the provisions of points 7.1.1.4. and 7.1.1.5.

In the event that the exporter combines increases and decreases in the different types of goods and/or the total increase exceeds the equivalent of 30% (thirty percent) of the computable amount for year t-1 from increases recorded in different types of goods, the computation will be based on a distribution between the different categories in which there was an increase.

When the client is a direct beneficiary of Decree 277/22, the amounts of the "certifications for the foreign currency access regimes for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17., must be deducted from the amount of "Certification of increase in exports of goods" that may be issued.

3.18.4. The entity nominated by the exporter to monitor this mechanism, before issuing each certification, must verify in the information provided by the BCRA for this purpose: the maximum total amount that the certifications issued in favor of an exporter can accumulate and that the exporter does not have permits in non-compliance.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 3. Specific provisions for expenditures through the foreign exchange market |

The BCRA will initially consider the entity nominated by the exporter for issuing the "Certification of Increase in Exports of Goods" to be the entity that, as of 04/06/21, was the nominated entity for the largest number of permits shipped by the exporter in 2021. If the exporter makes its first eligible export after that date, the nominated entity will be selected.

When the exporter wishes to change the entity nominated to issue the certifications, the entity in charge of monitoring must notify the new entity of the exporter's intention. If the exporter accepts, the new entity will be authorized to issue new certifications once the change of entity has been registered with the BCRA and the previous entity has sent the details of the certifications issued in the exporter's name to that point.

Machine Translated by Google



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 4. Other specific provisions. |

**4.1. Credit, purchase, debit, and prepaid card transactions.**

4.1.1. Cash withdrawals from abroad.

Cash withdrawals abroad with local debit cards can be made by debiting the customer's local accounts in pesos or foreign currency.

Financial institutions must offer their customers the ability to remotely select and modify the account associated with their debit card from which debits will be made. In these cases, the customer's foreign currency account must be used as the primary account by default, if the customer holds a foreign currency account.

A withdrawal with a debit card using balances in a local peso account or with a prepaid card issued in the country with a balance in pesos will be considered a formation of foreign assets by the resident, eligible for the limits established in section 3.8. The other requirements applicable to these concepts must be met. The entity must first make the corresponding verification in the online system and record the transaction as a purchase of foreign currency banknotes (concept code A09).

Financial institutions and other local credit and/or purchase card issuers may grant cardholders abroad a maximum cash advance of USD 50 (fifty US dollars) per transaction.

This limit is increased to USD 200 (two hundred US dollars) per transaction for cash withdrawals made in non-bordering countries.

4.1.2. Consumption abroad with debit cards or prepaid cards.

Consumption abroad with a debit card can be made by debiting local accounts in pesos or foreign currency.

Financial institutions must offer their customers the option to select and modify the account associated with their debit card from which debits will be made. In these cases, the customer's foreign currency account must be used as the primary account by default, if they have one.

Consumption abroad with a debit card that uses balances in a local account in pesos or with prepaid cards issued in the country with a balance in pesos, starting from the following calendar month and for subsequent months as necessary to complete the total amount consumed since 1.9.2020, will be deducted from the limit established in point 3.8. for the purchase of foreign currency by individuals for the formation of external assets, remittance of family support, and for derivatives transactions.

Regardless of the above, as long as the established conditions are met, individuals may continue to make purchases abroad with debit cards that use balances in their local account in pesos or with prepaid cards issued in the country with a balance in pesos.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

4.1.3. Cancellation of purchases in foreign currency made with credit card and/or of purchase.

    4.1.3.1. When the card issuer is a financial institution, the cardholder may pay for purchases made in foreign currency in the latter currency or in pesos. In this case, the card issuer must apply the maximum exchange rate (applicable for transactions made over the counter or electronically, as applicable) at the time of cancellation (or the immediately preceding business day when payment is made on a non-business day).

    In cases where customers have agreed to automatically debit their card statement from their accounts with the issuing institution, the exchange rate applicable to transactions made through electronic payment methods will apply as of the closing date of the same business day as the payment.

    4.1.3.2. In the case of non-financial companies issuing credit and/or purchase cards, the cardholder may pay for purchases made in foreign currency in the latter currency or in pesos. The exchange rate used by electronic channels published by the Banco de la Nación Argentina on the same business day as the payment date or the immediately preceding business day when payment is made on a non-business day will apply.

Payments in pesos for financing granted for foreign currency purchases made using credit and/or purchase cards, starting the following calendar month and for subsequent months as necessary to complete the amount paid since 1.9.2020, will be deducted from the limit established in point 3.8 for the purchase of foreign currency by individuals for the formation of external assets, remittance of family support, and for derivatives transactions.

    Notwithstanding the foregoing, individuals may continue to make purchases in foreign currency using credit and/or purchase cards and, provided the established conditions are met, access the foreign exchange market to repay foreign currency financing granted for such purchases.

4.1.4. Payments abroad for the use of credit, purchase, debit or prepaid cards issued in the country.

    Financial institutions and non-financial companies issuing local cards must have prior approval from the BCRA to access the foreign exchange market to make payments abroad for the use of said cards, when such payments originate, directly or indirectly through the use of international payment networks, in the following transactions:

    4.1.4.1. Participation in games of chance and betting of various kinds, and/or

    4.1.4.2. the transfer of funds to accounts with Payment Service Providers,



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

4.1.4.3. the transfer of funds to investment accounts with investment managers investments located abroad, and/or

4.1.4.4. the execution of foreign exchange transactions abroad, and/or

4.1.4.5. the acquisition of cryptoassets in their different forms, and/or

4.1.4.6. the acquisition of jewelry, precious stones and precious metals (gold, silver, platinum, etc.), and/or

4.1.4.7. The purchase of gift cards or equivalent from stores or establishments located abroad.

**4.2. Operations carried out through the Local Currency System (LCS).**

Resident clients will be able to conduct the following transactions through the SML implemented by the BCRA with the central banks of the Federative Republic of Brazil, the Eastern Republic of Uruguay, and the Republic of Paraguay:

4.2.1. Advances and collections of Argentine exports of goods and related services to the indicated countries that are documented in Argentine pesos.

4.2.2. Payments for Argentine imports of goods and related services from the indicated countries that are documented in the legal tender of the counterparty country.

4.2.3. Payments of pensions and other pension benefits by the countries' pension institutions when a bilateral agreement has been signed between the institutions.

4.2.4. Refunds of transactions previously processed through this system.

In the case of the Republic of Paraguay and the Eastern Republic of Uruguay, the following operations and their refunds may additionally be carried out:

4.2.5. Advances and collections of Argentine exports of goods and related services to that country that are documented in the currency of the country of destination of the export.

4.2.6. Payments for Argentine imports of goods and related services from that country that are documented in Argentine pesos.

4.2.7. Collections of services not related to foreign trade in goods, except financial services, provided by Argentine residents to Paraguayan and Uruguayan residents and documented in Argentine pesos or in the currency of the country of destination of the export.

4.2.8. Payments for services not related to foreign trade in goods, except for financial services, provided by Paraguayan or Uruguayan residents to Argentine residents and documented in Argentine pesos or in the currency of the country of the service provider.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
|  | Section 4. Other specific provisions. |

4.2.9. Income and remittance of transfers for family support, the latter subject to compliance with the provisions of point 3.8.

In the case of the Federative Republic of Brazil, commercial operations may not have a payment term exceeding 360 (three hundred sixty) calendar days.

In all cases, the entity must require a sworn declaration from the client that the transaction falls within the scope of this system and that the specific and general provisions applicable to it are met.

The entity must issue a currency exchange purchase and/or sale ticket, as appropriate, in accordance with the provisions of point 5.3.

4.3. Securities transactions.

4.3.1. Securities transactions arranged abroad may not be settled in pesos in the country; only those transactions arranged in the country may be settled in pesos in the country.

4.3.2. Securities purchase and sale transactions carried out with settlement in foreign currency must be paid for using one of the following mechanisms:

4.3.2.1. By transferring funds to and from current accounts in the client's name at local financial institutions; or

4.3.2.2. against wire transfers on bank accounts in the client's name in a foreign entity not incorporated in countries or territories where the Financial Action Task Force Recommendations do not apply or are insufficiently applied.

4.3.2.3. against a third-party account abroad that is not located in countries or territories where the Financial Action Task Force Recommendations do not apply or are insufficiently applied, when it involves the sale of BOPREAL bonds acquired by the seller in a primary subscription for eligible transactions in points 4.4., 4.5. and 4.6.1.

Other sales of securities completed from 01/04/24 onwards may also be settled under the conditions indicated, provided that the market value of these transactions does not exceed the difference between the value obtained from the sale with settlement in foreign currency abroad of the BOPREAL bonds acquired by the seller in a primary subscription for debts for imports of goods and services eligible in points 4.4. and 4.5. and their nominal value, if the former is lower.

Under no circumstances is the settlement of these transactions permitted by payment in foreign currency bills or by depositing them in custodial accounts or third-party accounts, except in the case of wire transfer transactions using third-party accounts within the framework of the provisions of section 4.3.2.3 or Decree 28/23.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

The requirements set forth in points 4.3.2.1 and 4.3.2.2 shall not apply to purchases of securities that:

    i) are made by clients with funds received in foreign currency within 15 (fifteen) business days prior to the collection of capital and/or interest of debt securities issued by residents; and

    ii) the reinvestment of the funds by the beneficiary is neutral in terms of taxation regarding the operation of accreditation of funds in a the beneficiary's checking account in a financial institution and its subsequent debit for the purchase of securities.

## 4.4. Subscription of BOPREAL bonds by debtors of imports of goods with customs entry record until 12/12/23.

Importers of goods may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the amount of the outstanding debt for their imports of goods with customs entry registration until 12/12/23.

The entity that finalizes the subscription offer on behalf of the client must have the respective certifications on the outstanding amount issued by the entity(ies) in charge of monitoring the officializations involved in the Monitoring of Payments for Imports of Goods (SEPAIMPO), which must verify that:

4.4.1. The obligation qualifies as a debt for imports of goods as indicated in point 10.2.4.

4.4.2. The transaction is declared, if applicable, in the last due submission of the "Survey of external assets and liabilities."

4.4.3. The conditions provided for in point 10.3.2.1. for access to the foreign exchange market are met, except for that provided for in section viii).

4.4.4. The client meets the additional requirements provided for in points 3.16.2. to 3.16.5.
.

4.4.5. There is a sworn statement from the client stating that the debt for which you are requesting subscription is pending payment.

If the import of goods falls under points 10.3.3., 10.9.1., 10.9.2., and 10.9.3., the entity finalizing the subscription offer on behalf of the client must directly verify the provisions of points 4.4.1. to 4.4.5. and, additionally, have a sworn statement from the client stating that they have not requested the use of this mechanism from another entity for that debt. The entity must also carry out the corresponding customs documentation audit.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 4. Other specific provisions. |

Additionally, the aforementioned entity must issue a currency exchange ticket in the importer's name using the concept code "B26. Record of imports of goods through the award of BOPREAL bonds," stating the face value in foreign currency of the BOPREAL bonds awarded to the importer and the corresponding official registration number.

**4.5. Subscription of BOPREAL bonds by debtors of non-resident services provided or accrued up to 12/12/23.**

Service importers may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the amount of the outstanding debt for their service imports in which the provision or accrual of the service by the non-resident took place until 12/12/23.

The entity that finalizes the subscription offer on behalf of the client must have the documentation that supports the existence of the service, the amount owed as of the subscription date, and verify that:

4.5.1. The obligation qualifies as a debt for services imports as indicated in the second paragraph of point 13.1.2.

4.5.2. The transaction is declared, if applicable, in the last due submission of the "Survey of external assets and liabilities."

4.5.3. The client meets the additional requirements provided for in points 3.16.2. to 3.16.5.

4.5.4. has a sworn statement from the client stating that the debt for which the subscription is being requested is outstanding and that the client has not requested the use of this mechanism from another entity for this debt.

Additionally, the aforementioned entity must issue a currency exchange ticket in the importer's name under the concept code "S33. Registration of service imports through the award of BOPREAL bonds," recording the nominal value in foreign currency of the BOPREAL bonds awarded to the importer.

**4.6. Subscription of BOPREAL bonds for profits and dividends of non-resident shareholders pending payment or already received in the country.**

4.6.1. Subscription of BOPREAL bonds for profits and dividends pending payment to non-residents as of the distribution determined by the shareholders' meeting.

Clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the equivalent amount in local currency of the profits and dividends outstanding to non-resident shareholders as of the distribution determined by the shareholders' meeting.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

The entity that finalizes the subscription offer on behalf of the client must verify compliance with the following requirements:

4.6.1.1. You have the documentation to support the claim that the outstanding debt corresponds to profits and dividends from closed and audited balance sheets.

4.6.1.2. The operation is declared, if applicable, in the last overdue submission of the "Survey of external assets and liabilities".

4.6.1.3. The client meets the additional requirements provided for in points 3.16.2 to 3.16.5.

4.6.1.4. You have a sworn statement from the client in which he/she records that:

i) the profits and dividends for which the subscription is requested are find outstanding payments,

ii) has not requested the use of this mechanism in another entity by this debt and

iii) becomes aware that he will not have access to the foreign exchange market to pay the equivalent of the debt for which it was subscribed except that the payment is made through an exchange and arbitration with the funds deposited in a local account and originated from capital collections and foreign currency interest on BOPREAL bonds.

The affidavit must be signed by the legal representative of the resident company or a representative with sufficient authority to assume this commitment on behalf of the company.

Additionally, the aforementioned entity must issue a currency exchange ticket in the client's name under the concept code "I09. Record of profits and dividends from the award of BOPREAL bonds," recording the face value in foreign currency of the BOPREAL bonds awarded to the client.

4.6.2. Subscription of BOPREAL bonds by non-resident clients for profits and dividends collected since 09/01/19.

Non-resident clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the equivalent amount in local currency of the profits and dividends collected since 09/01/19, starting from the distribution determined by the shareholders' meeting, adjusted by the latest Consumer Price Index (CPI) available on the subscription date.

The entity that finalizes the subscription offer on behalf of the client must verify the following requirements:

4.6.2.1. You have documentation that allows you to confirm that the amount in pesos received by the non-resident originates from the collection in the country of profits and dividends from closed and audited balance sheets as of 09/01/19.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|-----------------------|
|      | Section 4. Other specific provisions. |

4.6.2.2. The resident who paid the profits and dividends meets the requirements additional services provided for in points 3.16.2 to 3.16.5.

4.6.2.3. You have a sworn statement from the client in which he/she records that:

> i) the amount for which you request the subscription comes from funds received into a local account in your name as of 09/01/19 for utilities and dividends collected in the country, and that such funds have not been remitted abroad from the date of collection until the date of subscription of the BOPREAL bond, and

> ii) has not requested the use of this mechanism in another entity by These funds collected in the country, and

> iii) becomes aware that he will not have access to the foreign exchange market to repatriate the equivalent of these funds collected in the country, by which subscribed to BOPREAL bonds, except that the repatriation was concrete from an exchange and/or arbitration with the funds deposited in a local account and originated from capital and interest collections in foreign currency of BOPREAL bonds.

The affidavit must be signed by the non-resident client or their legal representative or an attorney with sufficient authority to assume this commitment on behalf of the client.

Additionally, the entity must issue a currency exchange ticket in the name of the company that paid the profits and dividends under code "P21.
Record of funds paid in the country for profits and dividends from the award of BOPREAL bonds; recording the nominal value in foreign currency of the BOPREAL bonds awarded to the client.

4.7. Complementary provisions associated with the Bonds for the Reconstruction of a Free Argentina (BOPREAL).

4.7.1. Clients may, provided they meet the applicable requirements, access the foreign exchange market by performing an exchange and/or arbitrage with funds deposited in a local account and originating from collections of principal and interest in foreign currency from BOPREAL bonds to carry out:

4.7.1.1. Payment of commercial debts for imports of goods with customs entry registration up to 12/12/23, which were eligible in accordance with the provisions of point 4.4.

4.7.1.2. Payment of commercial debts for imports of services rendered or accrued up to 12/12/23, which were eligible in accordance with the provisions of point 4.5.

4.7.1.3. Payment of debts to non-resident shareholders for profits and dividends, which were eligible in accordance with the provisions of point 4.6.1.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

4.7.1.4. The repatriation of non-resident portfolio investments originating from profits and dividends collected in the country since 09/01/19, based on the distribution determined by the shareholders' meeting based on closed and audited balance sheets, which were eligible in accordance with the provisions of point 4.6.2.

Eligible payments processed through the Local Currency System (LCS) from the sale of funds deposited in a local account and originating from collections of principal and interest in foreign currency from BOPREAL bonds may also be considered to fall under sections 4.7.1.1 and 4.7.1.2.

4.7.2. Clients who have acquired BOPREAL bonds in a primary subscription under the provisions of points 4.4, 4.5 and 4.6 shall not be required to take into account, for the purposes of preparing the sworn statements provided for in points 3.16.3.1 and 3.16.3.2, sales with settlement in foreign currency in the country or abroad of BOPREAL bonds or transfers of these bonds to depositories abroad, when made for up to the amount acquired in the primary subscription.

They shall also not take into account in the indicated sworn statements, the sales of securities with settlement in foreign currency abroad or the transfers of securities to depositories abroad, both completed as of 04/01/24, when the market value of these operations does not exceed the difference between the value obtained from the sale with settlement in foreign currency abroad of BOPREAL bonds acquired in a primary subscription for debts of imports of goods and services eligible in points 4.4. and 4.5. and their nominal value, if the former is lower.

4.7.3. Clients who have acquired BOPREAL bonds in a primary subscription under the provisions of points 4.4, 4.5, and 4.6.1 may sell securities against wire transfers to a third-party account abroad, provided that the requirements set forth in point 4.3.2.3 are met, in the case of the sale of BOPREAL bonds acquired by the seller in the aforementioned primary subscriptions.

They may also liquidate, under the conditions indicated in the preceding paragraph, other sales of securities made from 01/04/24 onwards, to the extent that the market value of these operations does not exceed the difference between the value obtained from the sale with settlement in foreign currency abroad of the BOPREAL bonds acquired in a primary subscription for debts of imports of goods and services eligible in points 4.4. and 4.5. and their nominal value, if the former is the case. minor.

4.7.4. Clients who subscribed to BOPREAL Series 1 prior to 01/31/24 for an amount equal to or greater than 50% (fifty percent) of the total outstanding for their eligible debts for points 4.4. and 4.5., may access the foreign exchange market to pay capital of eligible debts for which a BOPREAL security was not subscribed, when any of the following conditions are verified:

4.7.4.1. The total amount paid by this mechanism does not exceed the equivalent of 5% (five percent) of the subscribed amount of BOPREAL Series 1; or



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 4. Other specific provisions. |

4.7.4.2. Simultaneously complete the settlement for an amount equivalent to that paid for deferred collections of exports of goods that should have been entered into as of 03/01/25 according to the established regulatory deadlines and the total amount of debts paid in the calendar month under this mechanism does not exceed 10% (ten percent) of the amount of eligible debts for which a BOPREAL title was not subscribed; or

4.7.4.3. Simultaneously, complete the settlement for an amount equivalent to that paid for advance collections of exports of goods that will be cancelled with shipments whose collections would have been due from 03/01/25 onwards at a rate of a monthly maximum equivalent to 10% (ten percent) of the total amount of the advances that were included in this mechanism.

The entity must have a sworn statement from the importer stating that prior approval from the BCRA will be required for the payment of these advance payments for exported goods before the stipulated deadlines.

In addition to the remaining applicable regulatory requirements, the entity must have a sworn statement from the client stating the subscribed amount of BOPREAL Series 1, the amounts of eligible commercial debts for goods and services for transactions prior to 12/13/23, and that the payment falls within the established limits.

4.7.5. Clients who subscribed to BOPREAL Series 1 prior to 01/31/24 for an amount equal to or greater than 25% (twenty-five percent) of the total outstanding for their eligible debts for points 4.4. and 4.5., may access the exchange market to pay capital of eligible debts for which a BOPREAL security was not subscribed in the measure that the payment does not exceed the equivalent of 50% (fifty percent) of the amount liquidated simultaneously as advance collections for exports of goods that will be cancelled with shipments whose collections would have been due from 03/01/25 at a rate of a monthly maximum equivalent to 10% (ten percent) of the total amount of the advances that were included in this mechanism.

The entity must have a sworn statement from the importer in which he states that the prior approval of the BCRA will be necessary for the cancellation.
of these advance payments for exports of goods before the stipulated deadlines.

In addition to the remaining applicable regulatory requirements, the entity must have a sworn statement from the client stating the subscribed amount of the BOPREAL Series 1 and the amounts of commercial debts for goods and services for transactions prior to 12/13/23 that are eligible, and that the payment falls within the established limits.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 4. Other specific provisions. |

4.7.6. In the event that a client has entered into a sale transaction with a repurchase obligation using BOPREAL bonds acquired in a primary subscription, the following additionally applies:

4.7.6.1. The sale of the securities at the origin of the transaction shall not be taken into account for the purposes of preparing the sworn statements provided for in points 3.16.3.1. and 3.16.3.2., in line with the provisions of the first paragraph of point 4.7.2.

4.7.6.2. The aforementioned sale will not enable the client to carry out securities transactions for the difference between the value obtained from the sale and the nominal value of the securities contemplated in the second paragraph of point 4.7.2.

4.7.6.3. Once the client has regained ownership of the BOPREAL bonds, the securities will be treated in the same way as securities purchased in a primary subscription.

Machine Translated by Google

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 5. Operational Guidelines. |

**5.1. Opening hours of the foreign exchange market.**

Entities may operate without time limits.

**5.2. Retail exchange rate.**

5.2.1. BCRA quotation publication system.

The BCRA's website offers retail exchange rates offered in the Autonomous City of Buenos Aires by entities participating in the system.

Buyer and seller quotes for the US dollar and the euro reported by participating entities will be available for their over-the-counter and online transactions.

Likewise, you can consult the reference retail exchange rates (TCMR) for buyers and sellers, calculated by the BCRA based on the reported values.

5.2.2. Operations in ports, international airports and international land transport terminals.

For exchange offices located in ports, international airports, and international land transport terminals, the retail buying and selling exchange rates offered may not differ by more than 3% from those operated by Banco de la Nación Argentina on the same day, without fees. For transactions outside of financial institutions' business hours, the comparison will be made against the latest closing retail exchange rates from Banco de la Nación Argentina.

**5.3. Exchange tickets.**

The exchange ticket must contain a sworn statement by the person ordering the exchange transaction regarding all information contained therein, including the purpose of the transaction and compliance with the limits and requirements established by these regulations. The intervening entity must verify the genuine nature of the transaction and compliance with any applicable limits.

The signature of the customer making the exchange transaction must appear on the tickets, and the customer must be identified by the entity in accordance with the provisions of point 5.4.

**5.4. Customer identification.**

The identification of the client in whose name the transaction will be registered must be carried out by the entity through the following mechanisms:

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 5. Operational Guidelines. |

5.4.1. Operations carried out in person.

The client must present an identity document admissible under the regulations on "Valid Identification Documents" or other enabling documents in the case of tourists and, where applicable, the documents that allow the person presenting themselves to act on behalf of and on behalf of natural or legal persons, assets, or other entities.

5.4.2. Operations through electronic channels and/or electronic or digital signature.

Customer identification will be carried out by using:

5.4.2.1. Electronic and/or digital signatures, provided that the conditions established by Law 25506 and its regulatory provisions are met; or

5.4.2.2. electronic channels, as long as the provisions of Section 6 of the regulations on "Minimum requirements for management, implementation and control of risks related to information technology, information systems and associated resources for financial institutions" or in points B.6. and B.7. of the regulations on "Minimum operational requirements for technology and

information systems for exchange houses and agencies", according to deal with financial or exchange entities, respectively.

**5.5. Minimum information on transfers of funds to and from abroad.**

It must be:

5.5.1. Include complete information regarding the sender and the beneficiary in all foreign fund transfers and their respective messages. At a minimum, include the following:

5.5.1.1. Ordering party:

i) surnames and full names or company name, as appropriate corresponds;

ii) address or DNI number or CUIT, CUIL, CDI or CIE number;

iii) customer identification number at the ordering entity; and

iv) account number or International Bank Account Number (IBAN)

5.5.1.2. Beneficiary:

i) surnames and full names or company name, as appropriate corresponds; and

ii) transaction number.

| Version: 4a. | COMMUNICATION "A" 7914 | Validity: 07/12/2023 | Page 2 |
|--------------|------------------------|----------------------|--------|



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 5. Operational Guidelines. |

5.5.2. Have effective procedures in place to detect transfers received from abroad and their respective messages with incomplete information about the sender and/or beneficiary, as provided in section 5.5.1.

5.5.3. Retransfers of funds to correspondents of other local authorities, or the return of funds to the sender, or any other retransfer of funds, should only be made after the missing data for transfers received in the local authority's correspondent account has been completed.

When participating in the electronic funds transfer payment chain, local entities must verify compliance with the minimum information required (both from the sender and the beneficiary) in accordance with the terms of section 5.5.1.

5.5.4. Keep pending settlement in the foreign exchange market and/or crediting to local foreign currency accounts any transfer of funds that do not contain the aforementioned minimum information of the sender and/or beneficiary until such time as this information is completed.

**5.6. Notification to the client of the crediting of funds to correspondent accounts.**

Entities must have procedures that allow them to inform the beneficiary of the receipt of funds within a period of no more than one business day following the date of crediting of the funds to the correspondent account, making them available for

the arrangement of exchange or for its crediting in foreign currency accounts opened in a local financial institution.

**5.7. Registration of client transactions with the BCRA.**

5.7.1. The entity must register with the BCRA all operations it carries out in the stock market. changes.

5.7.2. These transactions must be recorded on the date they are entered into on the foreign exchange market.

5.7.3. For these purposes, the CUIT, CUIL, CDI, CIE, or DNI of the client carrying out the transaction will be used. In the situations detailed below, the following will also be permitted:

5.7.3.1. Passport number or other document authorizing entry into the country in the case of non-resident individuals or diplomatic personnel accredited in the country, and the full name and surname of the non-resident (as stated in the document in question) and the country issuing the instrument must be stated.

5.7.3.2. Code assigned by the National Securities Commission when it is a mutual fund.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 5. Operational Guidelines. |

5.7.3.3. CUIT (Tax Identification Number) of the local financial institution when it accesses the foreign exchange market as a representative of a non-resident or within the framework of operations for income and capital services, redemptions, and sales of securities for which it is the custodian of non-resident holdings. The full name and surname or company name (without abbreviations), as applicable, of the non-resident who is the final beneficiary of the operation must be recorded in the transaction record.

5.7.3.4. CUIT or CUIL of the resident individual acting as a representative of a non-resident. The full name and surname or company name (without abbreviations), as applicable, of the non-resident who is the final beneficiary of the transaction must be recorded in the transaction record.

### 5.8. Daily global tickets.

Entities may prepare a daily global ticket for the situations detailed below, provided that all the conditions indicated in each case are verified.

In all cases, a detailed list of the beneficiaries/originators of the payments included in said ticket must be requested, and at a minimum, the following information must be provided regarding them: full names and surnames or company name (as applicable), CUIT, CUIL or CDI (Tax Identification Number), and the corresponding amount.

5.8.1. Operations for collections and payments of retirement and pensions.

They must correspond to transfers made by official or private organizations from retirement and pension funds or compensatory provision funds, to individuals residing in the country (exchange purchases) or abroad (exchange sales) and identify the payment at the level of each beneficiary in the country or abroad.

The ticket must be issued in the name of the entity processing the transaction.

5.8.2. Foreign currency income through payment processing companies.

On behalf of the local company acting as the payment processing company's representative in the country, provided the following conditions are met:

5.8.2.1. There is an agreement between the resident legal entity acting as a client and a foreign company authorizing the former to act as a paying agent in the Argentine Republic and in which it is stipulated that the funds received will be allocated within 2 (two) business days to the payment in the country of those who are final beneficiaries by crediting their local accounts in national or foreign currency.

5.8.2.2. The transfers must be made by the foreign company that signed the agreement and channeled through a foreign financial institution whose parent or controlling company is located in a member country of the Basel Committee on Banking Supervision.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 5. Operational Guidelines |

5.8.2.3. All companies in the payment processor's economic group, including the local subsidiary, if any, implement programs based on international standards for the prevention of money laundering and terrorist financing and, likewise, have policies and practices aimed at ensuring that their clients do not use the payment processing system for illegal or inappropriate transactions.

5.8.2.4. The payment processing company receives funds exclusively through the financial infrastructure of accounts in financial institutions, regardless of the payment method used by the local paying customer abroad.

For income received from exports of goods and services, the entity receiving the transfer will issue, at the exporter's request, a certificate of receipt and settlement of foreign currency for the funds received in local currency.

## 5.9. General exchange position and foreign currency holdings of entities.

5.9.1. Financial institutions may freely determine the level of their overall position of changes (PGC).

5.9.2. Foreign exchange houses and agencies may not increase, without prior approval from the BCRA, their foreign currency holdings relative to the average of their holdings in August 2019 or the "stock" at the close of the day prior to 09/02/19, whichever is higher.

Exchange houses and agencies registered before 09/01/19 and that had not operated by that date must consider the foreign currency holdings recorded at the beginning of the day they began operating.

5.9.3. Entities may not purchase securities on the secondary market with settlement in foreign currency.

5.9.4. Entities may not use funds from their PGC to make payments to suppliers. locals.

5.9.5. When entities acquire securities in primary subscription with wire settlement in foreign accounts, they may only sell them on the secondary market with settlement in foreign currency in the country after 90 (ninety) calendar days have elapsed from the date of acquisition. This period does not apply to sales made with wire settlement in foreign accounts.

This measure applies to all primary subscriptions with settlement as of 01/20/25.

Machine Translated by Google

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 5. Operational Guidelines |

**5.10. Operations of the entities.**

5.10.1. Entities must prepare exchange tickets in their own name when the they correspond to:

5.10.1.1. Collections or payments in foreign currency for your own exchange transactions as a client.

5.10.1.2. Exchange, barter, or arbitration operations with the BCRA and other financial or exchange entities in the country.

5.10.2. The entity's own operations must be recorded on the date on which the effect on its PGC occurs.

5.10.3. Foreign currency transactions in the country associated with its credit and deposit operations will not be recorded in the name of the entity itself.

5.10.4. When an entity's own operation is subject to the obligation to deposit and settle foreign currency in the foreign exchange market, the requirement will be considered fulfilled when the funds are deposited into the entity's PGC.

**5.11. Exchange operations between entities.**

These operations must be carried out through SIOPEL.

Movements in pesos resulting from the settlement of foreign exchange transactions between entities must be made through accounts opened at the BCRA or local financial institutions.

**5.12. Arbitration and swap operations abroad by entities.**

These entities may carry out arbitration and swap operations abroad provided that the counterparty is:

5.12.1. branch or agency abroad of local official banks; or

5.12.2. a foreign financial institution wholly or majority-owned by foreign states; or

5.12.3. A foreign financial or foreign exchange entity that is not incorporated in countries or territories where the Financial Action Task Force Recommendations do not apply, or are insufficiently applied; or

5.12.4. A foreign company engaged in the purchase and sale of banknotes from different countries and/or precious metals in coins or bars for delivery, and whose parent company is located in a member country of the Basel Committee on Banking Supervision.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 5. Operational Guidelines |

**5.13.** Operations involving the import and/or export of national currency.

Entities may carry out exchange transactions involving the import and/or export of Argentine peso coins and banknotes, provided that the counterparty is one of those specified in section 5.12. Transactions involving the import of Argentine peso banknotes will also be subject to the provisions established for the purchase of foreign currency by non-residents.

The settlement of foreign currency remitted to the local entity by the counterparty for the purchase of local currency banknotes shall be exempt from the provisions of the first paragraph of point 2.9, provided that there is a commitment from the counterparty that said funds will be marketed for the purpose of meeting tourism and travel demand and the export is carried out within a period of no more than 30 (thirty) calendar days from the date of the exchange agreement.

**5.14.** Settlement of foreign currency financing granted by financial institutions locals.

Funds received by clients through foreign currency financing provided by local financial institutions must be settled in the foreign exchange market at the time of disbursement.

The foregoing shall not apply to financing granted through the primary subscription of debt securities or other debt securities referred to in point 3.6. Settlement of the funds by the issuer shall be subject to the rules applicable to the instrument.

**5.15.** Suspension of operations due to failure to register with the BCRA.

Financial institutions must suspend their foreign currency operations if they experience a delay of more than 4 (four) business days in the validation of any section of the information regime for foreign exchange operations.

Exchange entities must suspend their operations if they find themselves in the situation indicated above.

The suspension will proceed without any communication from the BCRA and will remain in place until the information situation is regularized.

Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 6. Definitions. |

Within the framework of these provisions, the following concepts are defined:

## 6.1. Instruments traded on the foreign exchange market.

6.1.1. Coins and banknotes in foreign currency.

It includes coins and banknotes issued by a foreign state.

6.1.2. Foreign currency.

They are payment instruments expressed in a currency issued by a foreign state and generally accepted in transnational transactions: international bank transfer, money order, money order, traveler's check, check on foreign accounts, etc.

Excluded from this definition are foreign currency coins and banknotes, gold coins, and gold bars for delivery.

6.1.3. Coined gold.

It covers gold coins with monetary value, including those issued by the Argentine Republic.

6.1.4. Gold bars for good delivery.

It includes bars of varying weight, with a fineness of no less than 995 thousandths fine, and which are recognized in traditional gold markets for bearing the seal of internationally accepted refining, smelting, and assaying firms.

## 6.2. Type of operations carried out in the foreign exchange market.

6.2.1. Purchase and sale of foreign exchange with settlement in local currency.

These are transactions in which local currency is delivered or received in exchange for one of the instruments traded on the foreign exchange market.

6.2.2. Exchanges.

These are operations in which two instruments traded in the foreign exchange market expressed in the same foreign currency are exchanged with the same counterparty.

6.2.3. Arbitrations.

These are operations in which instruments traded in the foreign exchange market that are expressed in different foreign currencies are exchanged with the same counterparty.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 6. Definitions. |

## 6.3. Cash transactions.

It includes operations in which settlement by both parties is agreed within a period of up to 2 (two) business days from the date of its agreement.

These transactions are considered as access to the foreign exchange market according to their date of agreement.

## 6.4. Forward transactions.

It includes operations in which the settlement is agreed upon within a period of more than 2 (two) business days from the date of its agreement.

In the event that the effective delivery of instruments traded on the foreign exchange market is anticipated, these transactions are subject to foreign exchange regulations and are considered access to the foreign exchange market to be finalized on the settlement date.

These rules do not apply to the arrangements and cancellations of futures transactions on regulated markets, as well as forwards, options, and any other type of derivative, provided they are implemented under Argentine law and their settlement is carried out in Argentina through compensation in domestic currency. This does not generate present or future obligations to make payments in foreign currency.

## 6.5. Resident.

6.5.1. Human person.

A natural person shall be considered a resident of the country within whose borders their center of economic interest or principal activity is located. Therefore, a natural person shall be presumed to be a resident of a country if they remain or intend to remain there for at least one year.

6.5.2. Legal entity.

A legal entity (including de facto partnerships or others that do not meet the requirements of the General Companies Law) shall be considered a resident of the country where it is incorporated.

Branches in one economy of legal entities of another economy will be considered residents of the first country when they are registered for the purpose of being able to carry out activities in the country on a regular basis.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 6. Definitions. |

6.5.3. Patrimonies and other universalities.

The residence of assets and other universalities (for example: trusts, mutual funds, undivided estates, temporary business associations, business collaboration groups, cooperation consortia or other associative multilateral contracts) will be determined by the residence of the trustee or the person exercising their legal representation.

## 6.6. Transactions with related counterparties.

Transactions with related counterparties will be considered those involving a resident and a counterparty who maintain the types of relationships described in section 1.2.2 of the "Large Exposures to Credit Risk" regulations.

## 6.7. General gear position (PGC).

This will include all of the entity's liquid external assets, net of correspondent debit balances arising from foreign exchange market transactions. Purchases and sales arranged on the foreign exchange market and pending settlement will also be included.

The following will be considered liquid external assets of the entity: foreign currency coins and banknotes, available gold coins or bars of good delivery, correspondent credit balances (including transfers to third parties without agreed settlement), other demand deposits in foreign financial institutions, investments in foreign government securities, and time deposit certificates.

The following will not be included in the PGC: direct investments abroad, third-party external assets in custody, forward sales and purchases of foreign currency or external securities, deposits with the BCRA in foreign currency in accounts in the entity's name, and other local assets in foreign currency.

## 6.8. Services.

Services are the result of a productive activity that changes the conditions of the units that consume them, or facilitates the exchange of products or financial assets.

In international trade, the provision of a service is subject to a prior agreement between a person or company providing the service and who is a resident of one economy and a consumer or group of consumers of that service who are residents of another economy, regardless of the economy in which the service is provided.

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 6. Definitions. |

This includes, among others, freight, passenger services, other transport services, tourism and travel, construction services, insurance, financial services, telecommunications, information and computer services, charges for the use of intellectual property, research and development services, professional and management consulting services, technical services related to trade and other business services, audiovisual and related services, personal, cultural and recreational services (including the rights and prizes of athletes and/or sports entities) and government services.

### 6.9. Income (primary income).

This includes compensation of employees and investment income. The former includes wages and other remuneration of temporary workers received for personal work performed by a resident of one economy for a resident of another economy. Investment income includes income transactions by residents of one economy from holding financial assets issued or owed by residents of another economy. This includes interest payments, profits, and dividends.

This concept also includes income from direct investments in real estate. However, income from renting real estate located in the country to non-residents constitutes the resident's income from rental services.

### 6.10. Current transfers (secondary income).

A transfer between two economies occurs when a resident of one economy provides goods, services, financial assets, or other non-produced assets to a resident of another economy without receiving any consideration of economic value in return.

Current transfers affect the level of disposable income and influence the consumption of goods and services, reducing them for the donor and increasing them for the recipient. These include, among others, personal transfers, donations, retirement benefits, and pensions.

Personal transfers correspond to transfers between natural persons, residents and non-residents, regardless of the relationship between them.

### 6.11. Non-produced non-financial assets.

Acquisitions or disposals of non-produced non-financial assets include transactions involving the transfer of intangible assets associated with economic property rights, including fishing rights, mineral rights, airspace and electromagnetic rights, athlete transfers (including athlete training rights received from transactions between third parties) and, if sold separately from the owner company: patents, copyrights, concessions, leases, trademarks, logos and internet domains.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 6. Definitions. |

**6.12. Local governments.**

It includes the central administration of the provinces, the Autonomous City of Buenos Aires, and the country's municipalities.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

### 7.1. Obligation to pay and settle within the established deadlines.

7.1.1. Exports officially approved as of 09/02/19.

The foreign currency equivalent of the export, up to the invoiced value according to the agreed sales conditions, must be brought into the country and settled in the foreign exchange market.

For exports covered by Decree 28/23, the above will be considered fulfilled when the exporter has entered and settled in the exchange market an amount not less than 80% (eighty percent) of the invoiced value and for the unsettled portion has carried out purchase and sale operations with securities, in which the securities are acquired with settlement in foreign currency and sold with settlement in local currency in the country.

In the event that the client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) that declared before the Enforcement Authority that it planned to make use of the benefits established in article 198 of Law 27.742 regarding the collection of export taxes for goods and services, the provisions of points 14.1.1. and 14.1.2., as appropriate, shall apply.

The entry and settlement of foreign currency through the foreign exchange market and transactions with securities must be completed within the following time periods, starting from the date of clearance granted by Customs:

7.1.1.1. 30 (thirty) calendar days for exports of goods corresponding to tariff items: 1001.19.00, 1001.99.00, 1005.90.10 (except popcorn), 1201.90.00, 1208.10.00, 1507.10.00, 1507.90.19, 1517.90.90 (except those that do not contain soybeans), 2304.00.10 and 2304.00.90.

7.1.1.2. 30 (thirty) calendar days for exports of goods corresponding to tariff items 1003.90.10, 1003.90.80, 1007.90.00 and those corresponding to chapter 27 (except item 2716.00.00).
.

7.1.1.3. 60 (sixty) calendar days for transactions with related counterparties that do not correspond to the goods indicated in points 7.1.1.1. and 7.1.1.2. and exports corresponding to chapters 26 (except positions 2601.11.00, 2603.00.90, 2607.00.00, 2608.00.10, 2613.90.90, 2616.10.00, 2616.90.00 and 2621.10.00) and 71 (except positions 7106.91.00, 7108.12.10 and 7112.99.00).

Exporters who carried out transactions with related parties corresponding to goods included in point 7.1.1.4., in which the importer is a company controlled by the Argentine exporter, may request the entity in charge of monitoring the destination to extend the deadline until:

(i) the period provided for in that point when the exporter has not registered exports with a total value greater than the equivalent of USD 50,000,000 (fifty million US dollars) in the year calendar immediately prior to the officialization of the destination;



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

ii) a period of 120 (one hundred and twenty) calendar days when the exporter has exceeded the amount indicated in the preceding point and the assets exported correspond to the positions detailed below: 0202.30.00.111D, 0202.30.00.115M, 0202.30.00.117R; 0202.30.00.118U, 0202.30.00.121G, 0202.30.00.124N, 0202.30.00.126T, 0202.30.00.131K, 0202.30.00.133P, 0202.30.00.136W, 0202.30.00.137Y, 0202.30.00.141N, 0202.30.00.142Q, 0202.30.00.146Z, 0202.30.00.147B, 0202.30.00.151R, 0202.30.00.943L, 0202.30.00.991Y, 0202.30.00.992A, 0202.30.00.995G, 0203.21.00.000J, 0206.29.90.300P, 0207.14.00.100K, 1901.90.20 (in immediate packagings of a net content not exceeding 1 kg) and 2204.21.00.

7.1.1.4. 180 (one hundred and eighty) calendar days for the rest of the goods.

7.1.1.5. 365 (three hundred sixty-five) calendar days for operations carried out under the "SIMPLE EXPORT" regime, regardless of the type of goods exported.

Regardless of the above maximum time periods, export collections must be deposited and settled in the foreign exchange market within 20 (twenty) business days of the collection date. The possibility of using this period will be subject in all cases to compliance with the time periods provided in points 7.1.1.1. to 7.1.1.5.

Amounts in foreign currency arising from claims collections for contracted coverage, to the extent that they cover the value of the exported goods, are covered by this obligation.

The exporter must select an entity to monitor foreign exchange transactions for goods exports. The obligation to enter and settle foreign exchange for a shipping permit will be considered fulfilled when the entity has certified this situation through the mechanisms established for this purpose.

7.1.2. Exports officially registered before 02/09/19.

Collections of exports made official prior to 02/09/19 that were pending collection on that date must be entered and settled in the exchange market within 20 (twenty) business days of the date of collection or disbursement abroad or in the country.

Exporters who have obtained shipping permits during this period will be subject to specific monitoring, the details of which will be announced separately.

7.1.3. Advances, pre-financing and post-financing from abroad.

Advances, pre-financing and post-financing from abroad must be entered and settled in the foreign exchange market within 20 (twenty) business days of the date of collection or disbursement abroad.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 7. Collections from exports of goods. |

For exports covered by Decree 28/23, the above will be considered fulfilled when, within the specified time periods, the exporter has entered and settled in the foreign exchange market an amount not less than 80% (eighty percent) of the equivalent of the advances, pre-financing and post-financing and for the unsettled portion has carried out purchase and sale operations with securities, in which the securities are acquired with settlement in foreign currency and sold with settlement in local currency in the country.

In the event that the client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) that declared before the Enforcement Authority that it planned to make use of the benefits established in article 198 of Law 27.742 regarding the collection of export taxes for goods and services, the provisions of point 14.1.4 shall apply.

The term will be extended to 180 (one hundred and eighty) calendar days from the date of collection or disbursement abroad, when the client meets all of the following conditions:

7.1.3.1. the transfer of foreign currency has entered the local entity's correspondent account between 04/10/23 and 12/31/24.

7.1.3.2. The client has registered foreign currency settlements in the foreign exchange market for advances, pre-financing and/or post-financing from abroad in 2022 for an amount equal to or greater than the equivalent of USD 100,000,000 (one hundred million US dollars).

7.1.3.3. The client deposits the funds for credit into a "Special Account for Crediting Export Financing" in his or her name until the foreign currency settlement is finalized, or agrees that the funds will remain credited to the entity's correspondent account until their entry through the foreign exchange market is finalized.

The retransfer abroad of funds that remain pending settlement will require prior approval from the BCRA.

For the funds received that are credited to a foreign currency account held by the client, the entity must prepare a purchase ticket for the concept "A15. Foreign currency income pending settlement linked to exports of goods and services or to the sale of non-produced non-financial assets" and a sales ticket for the concept "A10. Foreign currency debit/credit in local accounts for transfers abroad."

At the time the funds are settled, the entity must prepare a purchase ticket for the item corresponding to the settled transaction, noting on the ticket that the transaction is being carried out within the framework of this transaction. The client may only settle for the items "B02. Advance collections for exports of goods" or "B03. Foreign financing for exports of goods" up to the amount of the foreign financing.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

Funds that remain as transfers pending settlement by virtue of the extension of the term to 180 (one hundred and eighty) calendar days, must be transferred by the entities to the Central Bank, on the day the funds enter the correspondent or if there are operational problems, on the next business day.

7.1.4. Pre-financing, post-financing, and financing for foreign importers
granted by local financial institutions.

They must be settled in the foreign exchange market at the time of disbursement.

In the event that the client is a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) that declared before the Enforcement Authority that it planned to make use of the benefits established in article 198 of Law 27.742 regarding the collection of export taxes for goods and services, the provisions of point 14.1.4 shall apply.

7.2. Settlements and other income attributable to compliance with a shipping permit.

7.2.1. Collection of exports.

Foreign currency income attributed to exports of goods that is settled by the exporter in the foreign exchange market after the shipment clearance granted by Customs for the export.

7.2.2. Income from exporters' own funds to fulfill the obligation.

When exporters advance funds from their foreign accounts to comply with the obligation to settle exports made and pending collection.

7.2.3. Income through payment processing companies.

Settlement of foreign currency carried out by payment processors in the foreign exchange market, the proceeds of which were credited to local accounts in the national currency in the name of the exporter.

7.2.4. Income through the Local Currency System.

For the amount credited in national currency to the exporter's account by virtue of export collections channeled through the SML.

In case the income corresponds to exports to Paraguay or Uruguay
invoiced in the currency of the country of destination of the export, the equivalent in said currency of the credited amount will be computed.

7.2.5. Income from collections from exports of goods exempt from liquidation pursuant to the provisions of points 2.6 and 2.7.

Income from export collections of goods that fall under the exceptions provided for in points 2.6 and 2.7, in compliance with the conditions applicable in each case.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

The intervening entity must request a sworn statement from the exporter regarding the compliance of the operation with the aforementioned and details of the respective shipping permits.

When two or more export destinations for consumption are involved in the same settlement, the shipping permit number and the amount in foreign currency allocated to the permit must be recorded individually in the currency being settled.

### 7.3. Application of foreign currency for export collections.

There is an application of foreign currency for export receipts from goods when it has been certified that the exported goods themselves or the foreign currency collected for them were used to settle the capital, interest and/or expenses of granting financing operations, pay profits and dividends and/or carry out the repatriation of a direct investment of a non-resident shareholder in the cases admitted in points 7.3.1. to 7.3.11.

In order for the export charges applied to be attributed to compliance with shipping permits issued as of 02/09/19, it will be necessary in all cases to have a certification of application issued by the entity in charge of "Monitoring advances and other export financing of goods."

Exporters who carry out foreign currency settlements associated with the transactions included in points 7.3.1 to 7.3.10 must request the intervening entity to assign them an identification number (APX number) and incorporate it into the aforementioned monitoring.

In the case of transactions included in point 7.3.8. that do not register settlements in the foreign exchange market because they are refinancings of pre-existing debts, the entity nominated by the exporter, in accordance with the provisions of point 7.9.3., must incorporate them into the aforementioned monitoring, using the consecutive number assigned to the client's transaction for identification (ECO number: Entity-CUIT-Transaction No.).

7.3.1. Advance payment on exports of goods settled.

Advance in foreign currency made in the name of the foreign importer as partial or total payment of the purchase or supply order made to the exporter, settled in the exchange market prior to the granting of the fulfillment of shipment of the merchandise by Customs.

7.3.2. Pre-financing of goods exports settled.

Financing granted to the exporter by a local financial institution or by a non-resident other than the foreign importer, for the purpose of financing the purchase of inputs, production, and export of goods, settled in the foreign exchange market prior to the completion of the shipment of the merchandise by Customs.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

7.3.3. Post-financing of goods exports settled.

> Financing granted to the exporter by a local or foreign financial institution or by international companies dedicated to discounting export credits, based on their collection rights against a foreign buyer for goods already delivered.

7.3.4. Settlements associated with exports that have financing provided to foreign importers by local financial institutions.

> Settlements of funds in foreign currency delivered to the exporter by a local financial institution within the framework of financing to foreign importers, either directly or through credit lines or foreign banks, for the acquisition of goods produced in the country, as provided for in section 2.1.16 of the "Credit Policy" regulations.

7.3.5. Financial loans with contracts in force as of 8/31/19, the terms of which provide for the provision of services through the application abroad of the flow of funds from exports of goods.

> In the case of transactions settled on the foreign exchange market between 09/16/05 and 11/10/17, the application of foreign currency to the principal, interest, and other permitted items will only be admissible when the settlement was covered by provisions that allowed the application of foreign currency from exported goods to their settlement.

7.3.6. Pre-financing and export financing granted or guaranteed by local financial institutions pending as of 08/31/19 that were not settled in the foreign exchange market.

7.3.7. Advances and pre-financing of foreign exports pending as of 08/31/19 that were not settled in the foreign exchange market, provided that prior approval is obtained or the mechanism described in point 9.3.3.2 is applied.

> Exporters intending to apply these operations to shipments registered after 02/09/19 must nominate a single entity to monitor all of their operations.

> Requests for compliance must be submitted to the BCRA exclusively by the entity nominated by the exporter.

7.3.8. Financial operations enabled to apply collections for exports of goods and services.

> The financial operations listed in point 7.9, provided that the requirements and procedures stipulated for being authorized for the collection of export charges for goods and services are met.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.3.9. Operations authorized for the application of export collections for goods within the framework of the investment promotion regime for exports (Decree 234/21).

The operations listed in point 7.10, provided that the requirements and procedures stipulated for being authorized to apply for collections on exports of goods are met.

7.3.10. Financing associated with imports of goods enabled for the application of collections on exports of goods

Commercial or financial financing associated with making deferred payments or in sight of imports of goods that meet the conditions and requirements provided for in point 7.11.

7.3.11. Advances, pre-financing and post-financing from abroad with partial settlement pursuant to the provisions of Decrees 492/23, 549/23, 597/23 and 28/23.

The application of foreign currency to the cancellation of the capital and interest corresponding to the unliquidated portion of advances, pre-financing and post-financing from abroad will be admitted based on the provisions of Decrees 492/23, 549/23, 597/23 and 28/23, to the extent that the client demonstrates that, under the conditions stipulated in the aforementioned Decrees, he/she entered and settled foreign currency in the exchange market for an amount not less than the minimum percentage required for the operation and for the unliquidated portion of the collection he/she carried out purchase and sale operations with securities, in which the securities are acquired with settlement in foreign currency. foreign and sold with settlement in local currency in the country.

The application of the unliquidated portion must be certified by the entity responsible for "Monitoring Advances and Other Export Financing of Goods" for the liquidated portion of the transaction, and the remaining standard requirements must be verified. If the transaction has been liquidated by more than one entity, each may certify the application of the unliquidated portion in proportion to its share of the liquidated portion.

If the acquisition of securities was completed with settlement in the country of the foreign currency, certification from the entity that carried out the exchange and/or arbitration transaction for the entry of foreign currency through the foreign exchange market must be obtained.

7.4. Other charges admitted in the fulfillment of the obligation of income and settlement.

The exporter may request the responsible entity to consider the monitoring of a shipping permit as partially or fully completed when the operation falls under one of the situations detailed in point 8.5 and the conditions established in each case are verified.

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

**7.5. Extensions to the deadline for the entry and settlement of foreign currency.**

The entity responsible for monitoring the permit may grant extensions to the payment and settlement deadline in the following circumstances:

7.5.1. Minimum term for financing the import in the country of destination.

When the destination country has a minimum import financing period that is longer than the maximum settlement period for export collection, the period in force in the destination country will apply.

7.5.2. Exports fully pre-financed and/or post-financed locally or from the abroad.

When the outstanding amount of income from operations has been fully pre-financed and the funds have been settled in the foreign exchange market as pre-financing for local and/or foreign exports, the deadline for settlement of foreign currency for the shipment may be extended until the due date of the corresponding financing.

If the exporter demonstrates that he has settled post-financing for exports on the foreign exchange market before the deadline, covering the entire amount pending payment of the permit, without meeting the conditions set forth in points 9.3.4 and 9.3.5 for the issuance of the corresponding application certificate, the deadline for settling the shipment's foreign currency may be extended until the date on which the longer-term credit discounted and/or assigned by the exporter matures.

The latter will also apply when the exporter has partially pre-financed the transaction and can demonstrate that he has settled post-export financing on the foreign exchange market before the due date, covering the remaining amount due.

This extension of the term may also be granted to exports of goods included in the provisions of Decrees 492/23, 549/23, 597/23 and 28/23, to the extent that the client demonstrates that, under the conditions stipulated in the aforementioned Decrees, it entered and settled foreign currency in the foreign exchange market for an amount not less than the minimum percentage required for the advance, pre-financing or post-financing and the unsettled portion carried out purchase and sale transactions with securities, in which the securities are acquired with settlement in foreign currency and sold with settlement in local currency in the country.

If the acquisition of securities was completed with settlement in the country of the foreign currency, certification from the entity that carried out the exchange and/or arbitration transaction for the entry of foreign currency through the foreign exchange market must be obtained.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 7. Collections from exports of goods. |

7.5.3. Permits whose funds are retained in the accounts associated with the financial debts referred to in points 7.3.5., 7.9. and 7.11.

If the date until which the collections from a permit must remain deposited pursuant to the financing contract is later than the expiration of the term for the liquidation of foreign currency for the permit, the exporter may request that this term be extended to the fifth business day after that date.

This option will be available until reaching 125% (one hundred twenty-five percent) of the services for capital and interest to be paid in the current month and the following six calendar months.

7.5.4. Transactions with linked counterparties eligible for an extension.

7.5.4.1. When the entity has verified that the export destination corresponds to an operation in which the conditions provided for in the second paragraph of point 7.1.1.3. are met, it may extend the period to that applicable to the products in accordance with point 7.1.1.

7.5.4.2. When the entity has verified that the export destination was erroneously declared to Customs as a transaction with a related party, the period may be extended to the period applicable to the products in accordance with point 7.1.1.

7.5.5. Indetermination of the final price for exports under the revisable price regimes or mineral concentrates.

When at the expiration of the term it has not been possible, for reasons beyond the control of the exporter, to determine the final price of the goods included in the operation, the entity may extend the term up to 120 calendar days from the date of completion of shipment that appears in the provisional shipping permit.

To do so, the entity in charge of monitoring must verify compliance with the following conditions:

7.5.5.1. The exporter has registered imputations for the admitted modalities for at least 85% (eighty-five percent) of the value of the provisional shipping permit, and

7.5.5.2. The exporter has submitted a sworn statement stating the reasons beyond his control for which it has not been possible to determine the final price of the goods included in the transaction to date.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.5.6. Collections eligible for the mechanism provided for in point 7.10, which are deposited until their application to the permitted uses.

If the outstanding amount of a permit is fully covered by export collections eligible for the mechanism provided in point 7.10 and, pending application for permitted uses, are deposited in correspondent accounts abroad with local financial institutions and/or in local foreign currency accounts with local financial institutions, the exporter may request the entity responsible for monitoring the permit to extend the deadline until the date on which the application is estimated to be made.

7.5.7. Collections covered by the settlement exception for beneficiaries of the export promotion scheme for the knowledge economy.

The entity responsible for monitoring may extend the deadline for the settlement of a boarding permit to the extent that:

7.5.7.1. the client has used the mechanism provided in point 7.8.4. for the entire amount pending settlement; and

7.5.7.2. The funds remain deposited in a "Special Account for the Knowledge Economy Promotion Scheme. Decree No. 679/22" owned by the client.

**7.6. Defaults in debt collection management.**

A shipping permit will be recorded by the monitoring entity as "Defaulting on collection management" when it has been verified that the non-compliance is due to the importer's non-payment, having demonstrated the situations provided for in points 7.6.1. to 7.6.3.

In all cases, the entity must obtain a sworn statement on the authenticity of the declaration, signed by the exporter or his or her legal representative, or an agent with sufficient authority to assume this commitment on behalf of the exporter.

Except in cases where the importer's failure to pay is due to exchange controls in the importer's country, the "Default in Collection Management" status cannot be applied by the monitoring entity when dealing with transactions with related parties.

If, once the existing inconveniences have been overcome, the importer makes the payment, the Argentine exporter or, where appropriate, the export credit insurance company must enter the foreign currency within 20 (twenty) business days from the date the funds are made available.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

7.6.1. Exchange control in the importer's country.

When the non-payment by the foreign importer is due to the existence of at least one of the following situations:

7.6.1.1. The country of destination of the export has implemented restrictions on foreign currency transfers to pay for imports after the shipment of the goods, and for as long as these restrictions last, which will be accredited by a consularly legalized copy of the regulations that provide for said exchange control.

7.6.1.2. In the destination country, access to the foreign exchange market for payment of imported goods is subject to the requirement of prior authorization, provided that there is documentation that allows the intervening entity to consider that there is a delay in granting these authorizations, which is not attributable to the parties involved in the commercial transaction or the participating financial institutions.

7.6.2. Subsequent insolvency of the foreign importer.

When the foreign importer has become insolvent after the shipment of the goods and the exporter provides the following documentation:

7.6.2.1. Proof of publications announcing the start of the bankruptcy process, as required by the legislation in force in the country where the process is being carried out.

7.6.2.2. Proof of the submission made by the exporter to obtain recognition and payment of his claim, certified by the authority involved in the process, in accordance with the procedure applicable in the country where it should have been made.

The documentation must be legalized by a consular authority or in accordance with the provisions of the Hague Convention of October 5, 1961, where applicable.

7.6.3. Delinquent debtor.

When the exporter maintains legal action against the importer, or another party obligated to make payment, accrediting this with a copy of the written notice of initiation of the claim certified by the intervening court as to its start date and filing date.

The documentation must be legalized by a consular authority or in accordance with the provisions of the Hague Convention of October 5, 1961, where applicable.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

Cases may also be included in this category, without the exporter having initiated and maintaining legal action, when any of the following situations are verified:

7.6.3.1. The exporter must demonstrate that the transaction was covered by an export credit insurance policy and has settled the amounts covered by the insurance company for the unpaid credit, with the insurance company subrogating the rights to carry out both judicial and extrajudicial collection procedures directly against the debtor.

7.6.3.2. When the importer is a public sector entity in the recipient country, and the exporter demonstrates its collection efforts through claims filed within the framework of the legislation applicable to the transaction.

7.6.3.3. The exporter can reliably demonstrate its debt collection efforts through claims made to the payer by export credit insurance companies without the transaction having been covered by them, or by entities established as domestic or foreign recovery agencies hired by the exporter for this purpose. This option will only be valid to the extent that the accumulated outstanding value owed to the exporter by the non-resident does not exceed the equivalent of USD 200,000 (two hundred thousand US dollars).

7.6.3.4. The exporter can reliably demonstrate its collection efforts through claims made to the payer without initiating legal proceedings. This option will only be valid if, in the calendar year, considering the officialization dates of the shipping permits, the accumulated outstanding value of these permits does not exceed the equivalent of USD 100,000 (one hundred thousand US dollars).

In the cases covered by points 7.6.3.2. and 7.6.3.4., to the extent that the amount exceeds the equivalent of USD 25,000 (twenty-five thousand US dollars), the entity must additionally request the presentation of an external auditor's report, certifying: outstanding amount to be collected, accounting registration of the credit, its provisions or penalties, actions initiated for collection, attaching a copy of the supporting documentation for said management (notes, emails, telegrams, certified letters, contracts, proof of the steps taken, etc.).

**7.7. Cancellation of advances or other export financing without application of foreign currency by collections from exports of goods.**

Given the characteristics that define advances, pre-financing of exports - local or external - and other export financing, these operations must be cancelled with funds originated from the collection of exports of goods, unless the client can demonstrate that he cannot do so in this way for reasons beyond his control (for example: withdrawal from the operation by the external buyer, lack of payment by the external buyer, etc.).



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

Access to the local foreign exchange market to settle advances or other financing for foreign exports without applying foreign currency to collections from exports of goods will be governed by the rules for the settlement of capital services for financial loans.

Clients' access to the foreign exchange market for the prepayment of export financing granted by local financial institutions will be subject to prior approval by the Central Bank of Argentina (BCRA). This requirement will be considered fulfilled if, on the date of market access, the client records settlements for export collections of goods for an amount equal to or greater than the amount prepaid to the local financial institution.

In the case of transactions included in the "Monitoring of advances and other export financing of goods" (Section 9), the entity granting access to the foreign exchange market must have the corresponding certification from the entity in charge of monitoring the financing.

Exporters who record advances or other export financing included in the "Monitoring of Advances and Other Export Financing of Goods" section for direct debts not guaranteed by local financial institutions must notify the entity responsible for their monitoring of any decrease in the amount of principal owed that does not result from the application of export collections.

### 7.8. Other provisions.

7.8.1. Exports on behalf of and by order of third parties.

In cases of exports made on behalf of and by order of third parties within the framework of General Resolution 616/99 of the AFIP in which agents, consignees or other intermediaries carry out the sale of goods abroad on behalf of and by order of the owner of the merchandise the following will apply:

7.8.1.1. To the extent nominated in the shipping permit, both parties (documentary and owner of the merchandise) are responsible for fulfilling the obligation to enter and settle foreign currency for the transaction.

7.8.1.2. The entity responsible for monitoring the permit may compute the settlements and/ or applications of foreign currency made in accordance with current regulations by both the exporter and the documenting party, to the extent that they appear as such on the shipping permit.

7.8.2. Exports under the revisable price regimes or mineral concentrate.

In the case of exports of products that are marketed on the basis of FOB prices subject to a determination subsequent to the time of registration of the operation (Export of goods with revisable prices - General Resolution 4073-E/17 of the AFIP) or under the Mineral Concentrates Regime (General Resolution 2108/06 of the AFIP) the following will apply:



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.8.2.1. The period for the entry and settlement of foreign currency shall be counted from the date of completion of shipment as shown on the provisional shipping permit: "Suspension Destination for Export of Goods with Revised Prices" (ES02) or "Export Destination of Mineral Concentrates with Provisional FOB Value" (ES03).

7.8.2.2. The amount covered by the obligation to enter and settle foreign currency shall be calculated based on the FOB value stated in the final shipping permits: "Final export destination of merchandise previously exported under revisable prices" (EC08) or "Export destination for consumption of mineral concentrates"

(EC09).

7.8.2.3. Settlements and/or applications charged to the provisional boarding permit may also be computed as charges to the definitive boarding permit and vice versa.

7.8.2.4. When the final shipping permit has not yet been officially issued upon expiration of the deadline, the entities may grant the provisional shipping permit, taking into consideration the charges recorded up to that point against the data arising from the provisional shipping permit and any other documentation justifying the amount settled by the exporter (such as the invoice for the amount corresponding to the final price).

If, by that date, it has not been possible to determine, for reasons beyond the exporter's control, the final price of the goods included in the transaction, the exporter may request an extension of the deadline from the entity in charge of monitoring, provided that the conditions provided for in point 7.5.5 are verified.

7.8.2.5. In the event that a definitive boarding permit is associated with a provisional boarding officialized prior to 02/09/19, entities may confirm the boarding of the definitive permit.

7.8.3. Application of foreign currency from advances, pre-financing, or post-financing of exports from abroad to the cancellation of pre-financing of exports.

The exporter may apply the foreign currency from advance payments and new pre- or post-financing from abroad to the settlement of local and/or foreign pre-financing.

The entity responsible for monitoring the canceled pre-financing will simultaneously record a settlement and a foreign currency outflow in the client's name for the amount of the cancellation, and the settlement will be included in the "Monitoring of Advances and Other Export Financing of Goods" record from the date of its registration.

In the case of pre-financing for foreign exports pending as of August 31, 2019 and not settled in the foreign exchange market, prior approval from the Central Bank of Argentina will be required.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.8.4. Settlement exception for collections from exports of goods from beneficiaries of the export promotion scheme for the knowledge economy.

They will be exempt from the obligation of liquidation, to the extent that they enter
Within the established regulatory deadlines, collections from exports of goods from legal entities that are beneficiaries of the export promotion regime for the knowledge economy (Chapter II of Decree 679/22) and all of the following conditions are met:

7.8.4.1. The intervening entity must have a sworn statement from the client stating that the unpaid collections correspond to exports of goods related to activities linked to the knowledge economy.

7.8.4.2. Foreign currency funds shall be credited to a "Special Account for the Knowledge Economy Promotion System. Decree 679/22" owned by the client until they are used to pay, in foreign currency, the salaries of duly registered employees assigned to knowledge economy activities, in accordance with the criteria established in Decree 679/22 and Resolution 234/22 of the Ministry of Economy.

7.8.4.3. The client has a "Certification of Increased Exports Associated with the Knowledge Economy (Decree 679/22)" issued under the terms set forth in point 2.6.2, equivalent to the amount not to be settled.

The amounts of foreign currency to be allocated under the provisions of Chapter II of Decree 679/22 may not be subject to any other differential exchange treatment other than that provided for in said chapter.

For the purposes of recording these transactions, two tickets without any movement of pesos must be prepared. The purchase ticket will be issued for the corresponding export collections, and the sales ticket must be registered under the concept code "A22. Accreditation of collections for exports of goods and services."

To attribute the amount received to compliance with the shipping permit, the exporter must submit documentation to the entity responsible for monitoring the amount, proving that the amount was transferred in foreign currency from the "Special Account for the Knowledge Economy Promotion System. Decree 679/22" for the payment of salaries to employees.

Furthermore, the entity responsible for monitoring the shipping permit may extend the permit settlement period when, for the amount still pending settlement, the client has used this mechanism and the funds remain deposited in the client's "Special Account for the Knowledge Economy Promotion System. Decree 679/22."

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
|  | Section 7. Collections from exports of goods. |

**7.9. Financial operations enabled to apply collections for exports of goods and services.**

7.9.1. The application of export and service charges will be enabled, provided that the conditions stated in each case are met, in the following cases:

7.9.1.1. Payment of principal and interest on financial debts included in point 3.5. whose funds have been entered and settled in the foreign exchange market as of 02/10/20 and destined to finance projects that meet the conditions provided for in point 7.9.2., to the extent that their average life is not less than 1 (one) year, considering payments of principal and interest services.

7.9.1.2. Repatriation of direct investments by non-residents in companies that are not controlling entities of local financial entities whose funds have been entered and settled in the foreign exchange market as of 02/10/20 and destined to the financing of projects that meet the conditions provided for in point 7.9.2., to the extent that the repatriation occurs after the date of completion and implementation of the investment project and, at least, 1 (one) year after the entry of the capital contribution in the foreign exchange market.

If the client is a direct beneficiary of Decree 277/22, the application may only be validated by the entity in charge of monitoring up to the amount resulting from subtracting the value of the benefits of Decree 277/22, used by the client directly or indirectly.

7.9.1.3. Payment of principal and interest on issues of debt securities publicly registered in the country that fall under point 3.6.1.3. and whose funds have been settled in the foreign exchange market as of 10/16/20 and are intended to finance projects that meet the conditions set forth in point 7.9.2., provided that their average life is not less than 1 (one) year, considering the maturities of principal and interest.

7.9.1.4. Payment of capital and interest on issues of debt securities with public registration in the country, denominated in foreign currency and whose services are payable abroad or in foreign currency in the country or issues of debt securities with public registration abroad, agreed upon from 09/10/20 to 31/12/23, with an average life of no less than 2 (two) years and whose delivery to creditors has taken place as part of the refinancing plan duly required in point 7 of Communication A 7106 and related provisions (provisions received in

point 3.17 of the Annex to Communication A 7914), based on the following parameters:

i) the amount of capital for which the foreign exchange market was accessed until on 12/31/23 did not exceed 40% (forty percent) of the capital amount that was due, except when for an amount equal to or greater than the surplus the debtor:

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

a) recorded settlements in the foreign exchange market as of 09/10/20 for issues of debt securities with public registration in foreign or other financial indebtedness with foreign countries; or

b) recorded settlements in the foreign exchange market as of 09/10/20 for issues of debt securities with public registration in the country denominated and subscribed in foreign currency and whose services were payable in foreign currency in the country; or

c) had a "Certification of increased exports of goods" for the years 2021 to 2023 issued within the framework of point 3.18.; or

d) had a "Certification for the access regimes to foreign currency for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17.

ii) the remainder of the maturing capital was, at a minimum, refinanced with a new foreign debt with an average life of 2 (two) years greater than the average remaining life of the refinanced capital.

7.9.1.5. Payment of principal and interest on debt securities publicly registered abroad and other foreign financial indebtedness whose funds were deposited and settled in the foreign exchange market between 10/16/20 and 12/31/23 and have allowed the refinancing parameters provided for in point 7.9.1.4 to be met.

7.9.1.6. Payment of principal and interest on debt securities issued publicly registered in the country, denominated and subscribed in foreign currency and with services payable in foreign currency in the country, the funds of which were settled in the foreign exchange market between 10/16/20 and 12/31/23 and have allowed the refinancing parameters provided for in point 7.9.1.4 to be achieved.

7.9.1.7. Payment of principal and interest on issues of debt securities publicly registered in the country denominated in foreign currency and whose services are payable in foreign currency in the country or issues of debt securities publicly registered abroad, to the extent that:

i) its issuance took place between 01/07/21 and 12/31/23;

ii) were delivered to creditors in the framework of exchange operations debt securities or refinancing of principal and/or interest maturities of the following 2 (two) years for indebtedness with foreign countries whose final maturity was later than the period considered at the date of its issuance in point 7 of Communication A 7106 and related communications (provisions included in point 3.17 of the Annex to the Communication A 7914);

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

iii) considering the operation as a whole, the average life of the new debt implies an increase of no less than 18 (eighteen) months with respect to refinanced maturities.

7.9.1.8. Payment of capital and interest on financial debts included in point 3.5., the funds of which have been liquidated in the foreign exchange market as of 04/19/24, provided that their average life is not less than 3 (three) years, and the first payment of capital is not recorded before the year of receipt of the funds.

7.9.1.9. Payment of principal and accrued interest up to the application date by a client that is a Single Project Vehicle (SVPU) adhering to the Large Investment Incentive Regime (RIGI) to the extent that these are transactions covered by point 14.2.1.

7.9.1.10. Repatriation of direct investment contributions from non-residents in a Single Project Vehicle (VPU) adhering to the Large Investment Incentive Regime (RIGI) included in point 14.2.3.

7.9.2. The operations of points 7.9.1.1. to 7.9.1.3. will be eligible to the extent that the liquidated funds are used to finance investment projects in the country that generate:

7.9.2.1. An increase in the production of goods that will, for the most part, be placed in external markets and/or that will allow for the substitution of imported goods.

The preceding condition will be deemed to be fulfilled when it is reasonably demonstrated that at least two thirds of the increase in the production of goods as a result of the project will be destined for external markets and/or the substitution of imports in the 3 (three) years following the completion of the project, with a positive effect on the exchange balance of goods and services, and/or

7.9.2.2. An increase in the transport capacity for exports of goods and services through the construction of infrastructure works in ports, airports, and international land transport terminals.

7.9.3. Exporters opting for this mechanism must designate a local financial institution to monitor the transaction, which will be responsible for:

7.9.3.1. Certify compliance with the eligibility conditions of the financing operations to which the foreign currency will be applied,

7.9.3.2. Monitor shipping permits whose collections are maintained abroad in accordance with the provisions of this standard,

7.9.3.3. Monitor the guarantees provided and the special accounts that are established, and



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.9.3.4. Comply with the information requirements established by the BCRA regarding these operations.

In the case of operations intended for projects included in point 7.9.2., the entity in charge of monitoring must additionally:

7.9.3.5. certify compliance with the conditions for project eligibility,

7.9.3.6. Monitor project execution and financing.

7.9.4. For those operations for which exporters exercise the option provided for in this point, the designated financial institution must send, by note addressed to the Main Management of Foreign Affairs and Exchange within 90 (ninety) calendar days after the first entry of funds, the corresponding certification that the conditions that allow the operation to be classified have been met.

The certification submitted to the BCRA must contain, at a minimum, details of the regulatory point under which the transaction falls, its identification number within the framework of "Monitoring of advances and other export financing of goods," and, if there are debts that contemplate the maintenance of guarantee accounts or specific accounts without being guaranteed, identification of the type of account and local or foreign financial institution.

The identification number to be recorded will be the APX number for operations with settlement in the market or the ECO number (Entity-CUIT-Operation No.) for those operations without settlements because they are refinancings of pre-existing debts.

In the case of operations intended to finance projects included in point 7.9.2., the entity must also submit certification of compliance with the conditions for project eligibility, which must contain, at a minimum, a description of the project, the projected amount to be invested, and the composition of the financing.

The certification issued by the financial institution must be based on projections of the expected annual increase in the production of exportable goods or goods that allow import substitution, foreign sales based on the analysis of placement possibilities or, where applicable, imports to be substituted, the proportion of future foreign sales or import substitution to be covered by the production of the new project, expected foreign currency flows, and foreign currency flows affecting the provision of financing services.

The entity will request the professional opinions it deems necessary to ensure the reasonableness and genuineness of the transaction in its economic and financial aspects. These opinions must be supplemented with opinions on the technical aspects of the project when it has not been approved under the terms of Law 26.360.

The documentation used by the financial institution and the worksheets supporting the issuance of the certification must be filed within the institution and made available to the BCRA.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.9.5. For financial debts included in point 3.5 that have been entered and settled through the foreign exchange market as of 01/07/21, funds originating from the collection of exports of the debtor's goods and services will be allowed to be accumulated in foreign and/or domestic accounts intended to guarantee the payment of the maturities of the issued debt.

This option will be available until reaching 125% (one hundred twenty-five percent) of the services for capital and interest to be paid in the current month and the following six calendar months, in accordance with the schedule of maturities of the services agreed with the creditors, with the surplus funds to be entered and settled in the exchange market within the terms provided in the general regulations on the matter.

If the date until which the collections must remain deposited pursuant to the financing contract is later than the expiration of the foreign currency settlement deadline, the exporter may request that this deadline be extended to the fifth business day after that date.

7.9.6. Residents with debts included in point 7.9.1. and originated from 01/07/21 or trusts established in the country to guarantee the attention of the capital and interest services of such debts, may access the market, as long as the conditions provided in point 3.11.3. are met., for the purchase of foreign currency for the constitution of guarantees in foreign currency accounts opened in local or foreign financial entities -when it is a financial debt included in point 3.5.-, by

the amounts payable in the debt contracts.

7.10. Operations authorized for the application of export collections for goods within the framework of the investment promotion regime for exports (Decree 234/21).

7.10.1. Collections in foreign currency will be permitted for exports of goods corresponding to projects included in the investment promotion regime for exports (Decree 234/21) and under the terms established by the implementing authority for the following operations:

7.10.1.1. Payment upon maturity of principal and interest on debts for the import of goods and services.

7.10.1.2. Payment from maturity of principal and interest on financial debts included in point 3.5.

7.10.1.3. Payment of profits and dividends corresponding to closed and audited balance sheets.

7.10.1.4. Repatriation of direct investments of non-residents in companies that do not are controllers of local financial entities.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.10.2. The application of foreign currency to the indicated operations will be admitted provided that all of the following conditions are met:

7.10.2.1. The amount applied does not exceed 20% (twenty percent) of the amount in foreign currency corresponding to the export permit for which the charges are applied.

7.10.2.2. The amount applied in the calendar year does not exceed the equivalent of 25% (twenty-five percent) of the gross amount of the investments entered to finance the development of the project that generates the applied exports.

The gross amount of the investments entered to be computed will arise from the sum of the amounts accumulated by:

(i) settlements made in the foreign exchange market from the date onwards 04/07/21 in the concept of financial indebtedness included in point 3.5. and contributions from foreign direct investment.

ii) the FOB value of imports of capital goods incorporated into the investment project whose customs entry registration has been produced from 04/07/21 and that have had financing of a foreign creditor with an average life of not less than 1 (one) year that was not computed in the previous point or has constituted a direct investment contribution in kind to the resident company.

Investments may be computed after one calendar year has elapsed since their settlement in the foreign exchange market and/or the registration of the capital goods through customs, as applicable.

In the case of direct investment contributions, the client must submit documentation supporting the final capitalization of the contribution. If this documentation is not available, the client must submit proof of the initiation of the registration process with the Public Registry of Commerce of the decision to definitively capitalize the capital contributions computed in accordance with the corresponding legal requirements and undertake to submit the documentation of the final capitalization of the contribution within 365 (three hundred sixty-five) calendar days from the start of the process.

7.10.2.3. In the event that the client is a direct beneficiary of Decree 277/22, the
The application of foreign currency may only be validated by the entity in charge of monitoring up to the amount resulting from subtracting the value of the benefits of Decree 277/22, used by the client directly or indirectly.

7.10.2.4. Exporters opting for this mechanism must designate a local financial institution to monitor the project covered by the aforementioned regime, which will be responsible for:

i) Verify that the exporter has an "Investment Certificate for Export" issued by the Enforcement Authority.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|-----------------------|
|      | Section 7. Collections from exports of goods. |

ii) Certify that the exports of goods whose collections are intended
apply are linked to the project approved by the Authority
Application.

iii) Monitor shipping permits whose collections
It is intended to be applied in accordance with the provisions of this point.

iv) Carry out the registration of imports of capital goods that
comply with the provisions of point 7.10.2.2.ii) and monitor
of the corresponding import clearances.

v) Monitor pending application funds.

vi) Comply with the information requirements established by the
BCRA regarding these operations.

The entity nominated by an exporter must notify the BCRA of such situation by
means of a note addressed to the Main Management of Foreign Affairs and
Exchange within 30 (thirty) calendar days of its nomination.

The note to be submitted to the BCRA must contain, at a minimum, a copy of the
"Export Investment Certificate," a description of the project, the projected
investment amount, and the financing structure.

Likewise, the BCRA must be notified of each investment entered to finance the
project, reporting its amount, its characteristics and, if applicable,
Whether it is a debt, the established payment terms. The note must include the
transaction identification number (APX number) within the framework of
"Monitoring of advances and other export financing of goods" and indicate
whether the transaction falls within the provisions of point 7.9.

If the investment corresponds to an operation included in point 7.10.2.2.ii), the
corresponding officialization number must also be recorded in the note.

7.10.2.5. To record the transactions in point 7.10.2.2.ii) in the foreign exchange transactions
reporting system (RIOC), the entity responsible for monitoring must prepare two
tickets without movement of funds with the following characteristics:

i) The purchase ticket will be prepared by a concept code that
identify that it is an operation included in the
mentioned point, and the identification of the person must be recorded
creditor or the person making the contribution, as appropriate, and assign a
identification number (APX number) that will allow incorporation
from the operation to the "Monitoring of advances and other financing of
export of goods."



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

ii) The sales ticket will be prepared with the concept code that reflects the deferred payment for imported goods that is made, stating that the payment falls within the present mechanism.

iii) Tickets must be registered on the date the incident occurred. customs entry record of capital goods, regardless of the time at which the client requests your registration with the financial institution.

7.10.3. Export proceeds from goods received by an exporter that are eligible for the mechanism provided for in this point and are not applied simultaneously to the permitted uses may be deposited until their application in the correspondent accounts abroad of local financial institutions and/or in local accounts in foreign currency of local financial institutions.

If the application has not been made by the time the deadline for the settlement of foreign currency for the corresponding permit expires, the exporter may request that the entity in charge of monitoring the permit extend the deadline until the date on which the application is estimated to be made.

7.10.4. The cases provided for in point 1) of article 8° bis incorporated by Decree 836/21 to Decree 234/21, may apply for 2 (two) consecutive calendar years for each calendar year in which the benefit is not used, up to 40% (forty percent) of the value of the permits shipped during the years in which the extended benefit is used, to the extent that the annual amount applied does not exceed the equivalent of 40% (forty percent) of the gross amount of foreign currency entered to finance the development of the project that generates the applied exports.

The option indicated in the preceding paragraph will be available after the second calendar year has elapsed since the first inflow of foreign currency to initiate the project. This period may be counted as part of the non-use period that gives rise to the use of the extended benefit.

In addition to the provisions of the first paragraph of point 7.10.3., funds may also be held in bank accounts of foreign financial institutions not incorporated in countries or territories where the recommendations of the Financial Action Task Force are not applied or insufficiently applied.

7.10.5. The cases provided for in point 2) of article 8° bis incorporated by Decree 836/21 to Decree 234/21, may apply for 2 (two) consecutive calendar years for each calendar year in which the benefit is not used, up to 60% (sixty percent) of the value of the permits shipped during the years in which the extended benefit is used, to the extent that the annual amount applied does not exceed the equivalent of 60% (sixty percent) of the gross amount of foreign currency entered to finance the development of the project that generates the applied exports.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

The option indicated in the preceding paragraph will be available after the second calendar year has elapsed since the first inflow of foreign currency to initiate the project. This period may be counted as part of the non-use period that gives rise to the use of the extended benefit.

In addition to the provisions of the first paragraph of point 7.10.3., funds may also be held in bank accounts of foreign financial institutions not incorporated in countries or territories where the recommendations of the Financial Action Task Force are not applied or insufficiently applied.

7.10.6. In the case of operations included in the investment promotion regime for exports (Decree 234/21) that also fall under the provisions of point 7.9., exporters may use the mechanisms provided for in said point in addition to those provided for in points 7.10.1. and 7.10.3.

When the use of the mechanisms in point 7.9 results in an amount that exceeds the amount provided for in this point, the entity in charge of monitoring must take the excess amounts into account and promptly deduct them from the benefits that correspond to the client under this point in future periods until reaching an amount equivalent to the recorded excess.

**7.11. Financing associated with imports of goods enabled for the application of collections of exports of goods.**

7.11.1. The application of foreign currency from export receipts for goods to settle principal and interest due on the following transactions will be permitted:

7.11.1.1. Commercial financing for the import of goods granted by the foreign supplier.

These financing options may, if the parties so agree, be guaranteed by local or foreign financial institutions, official foreign export credit agencies, or others.

7.11.1.2. Commercial financing for the import of goods where the disbursements in foreign currency were applied, net of expenses, directly and entirely to advance, sight and/or deferred payments to the foreign supplier and/or to direct payments to the freight service provider for imports of goods not included in their agreed purchase condition, which have been granted by:

i) a foreign financial institution or official credit agency to which export from abroad.

ii) a local financial institution from a line of credit from a foreign financial institution.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 7. Collections from exports of goods. |

7.11.1.3. Financial loans granted by counterparties linked to the client in which the disbursements in foreign currency were applied directly and entirely to advance, sight and/or deferred payments for imports of goods to the foreign supplier and/or to direct payments to the freight service provider for imports of goods not included in their agreed purchase condition.

7.11.1.4. Financial loans granted by the creditors referred to in points 7.11.1.2 and 7.11.1.3, which are settled in the foreign exchange market and which were simultaneously used to make advance, demand, and/or deferred payments for imported goods to the foreign supplier and/or to the freight service provider for imported goods not included in the agreed purchase condition.

7.11.1.5. Issues of debt securities with public registration abroad or with public registration in the country denominated in foreign currency that contemplate that their services will be payable in the country or abroad, to the extent that:

i) the issue has been completed as of 09/21/23 and the funds have have been fully subscribed abroad.

ii) the title does not register capital maturities for at least 2 (two) years.

iii) all funds obtained have been applied within a period of 120 (one hundred and twenty) calendar days from receipt to finalize payments advance and/or sight and/or deferred imports of goods to foreign supplier and/or direct payments to the supplier freight services for imports of goods not included in your agreed purchase condition.

7.11.1.6. Issues of debt securities with the characteristics provided for in point 7.11.1.5 and that meet the conditions stated in paragraphs i) and ii), which have been settled in the foreign exchange market and simultaneously Used to make advance and/or sight and/or deferred payments for imports of goods to foreign suppliers and/or direct payments to freight service providers for imports of goods not included in their agreed purchase condition.

7.11.2. The application of foreign currency to the indicated operations will be admitted provided that all of the following conditions are met:

7.11.2.1. The date of origin of the financing has taken place from 19/05/23 for the operations of points 7.11.1.1. to 7.11.1.4. and from 21/09/23 for the operations of points 7.11.1.5. and 7.11.1.6.

When the financing party is the foreign supplier of the goods, the date of origin will be considered the date on which the agreed purchase condition was met. Meanwhile, the date on which the foreign supplier received the funds will be considered when payments are made directly from abroad by the financier.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 7. Collections from exports of goods. |

7.11.2.2. If the origination date of the financing was before 12/12/23, it must be verified that:

(i) the importer has demonstrated that at the date of origin of the financing had a SIRA declaration in "EXIT" status or "CANCELED" for the goods included in the operation and that the goods do not correspond to the tariff items included in point 12.2 of the Annex to Communication A 7914.

ii) if there are funds destined for the payment of freight for imports of Goods not included in the purchase condition must be demonstrated that at the date of origin of the financing had a SIRASE declaration in "APPROVED" status.

For the operations covered by points 7.11.1.2 to 7.11.1.6, the requirements for SIRA or SIRASE declarations apply at the time payment is made to the supplier of goods or freight services, as applicable.

7.11.2.3. The importer has demonstrated the customs entry record of the goods for a value equivalent to the total amount of the financing to be settled using this mechanism. For the purposes of the value of the goods, any item that is part of the agreed purchase condition recorded on the invoice issued by the foreign supplier may be taken into account.

If there are funds designated for the payment of freight charges for imports of goods not included in the purchase condition and the importer has demonstrated the customs entry record of the goods for which freight charges were paid, the value of the freight charges recorded in the transport documentation associated with the customs entry record of the goods may also be computed.

In the case of transactions covered by section 7.11.1.6, interest may also be cancelled from the date the financing is fully repaid, without requiring a customs entry record of the goods at that time.

7.11.2.4. The financing of points 7.11.1.1. to 7.11.1.4. shall not have principal and/or interest maturities until 240 (two hundred and forty) calendar days have elapsed since the registration of the customs entry of the goods and the financing of points 7.11.1.5. to 7.11.1.6. shall not register principal maturities during the first 2 (two) years from their issuance.

7.11.2.5. The final maturity date must be at least 365 (three hundred and sixty-five) calendar days after the customs entry registration of the goods for the financing of points 7.11.1.1. to 7.11.1.4. and 2 (two) years after the issuance date for the financing of points 7.11.1.5. to 7.11.1.6.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

7.11.2.6. The cumulative amount of principal maturities shall at no time exceed the amount resulting from calculating the equivalent of one-fifth of the total value of the capital financed for each calendar month starting from the eighth month of the customs entry record.

7.11.2.7. The charges to be applied correspond to exports of goods completed after the registration of the entry of the goods.

In the case of transactions included in section 7.11.1.6, interest may also be cancelled by applying collections from exports of goods carried out from the date on which the financing was fully received.

7.11.2.8. The importer has nominated a local financial institution to monitor the transaction within the framework of the "Monitoring of Advances and Other Export Financing of Goods" program. The institution must register with the BCRA that the importer has exercised the option to include the financing within this mechanism.

The entity must verify the usual requirements for certifying the application of foreign currency to the settlement of the financing.

7.11.3. The financial institution responsible for "Monitoring advances and other export financing for goods" for transactions covered in point 7.11.1 must complete its registration with the BCRA through the Foreign Exchange Operations Information System (RIOC).

In the case of payments made through financing from local financial institutions or foreign creditors settled in the foreign exchange market, the use of this mechanism must be recorded both on the purchase receipt reflecting the client's settlement and on the sales receipt for the corresponding payment for imported goods.

In the case of the supplier's own financing or those involving direct payments to the supplier by the foreign creditor, for the purposes of registration with the BCRA, two tickets without movement of funds must be prepared with the following characteristics:

7.11.3.1. The purchase ticket will be prepared using a concept code that identifies the financing covered by the mechanism in point 7.11.1. It must also record the creditor's identification and assign an identification number (APX number) that will allow inclusion in the aforementioned monitoring.

7.11.3.2. The sales ticket will be prepared with the concept code that reflects the type of payment for imported goods being made, certifying that the payment is made using this mechanism.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 7. Collections from exports of goods. |

For payments with a customs entry record, the corresponding certification from the entity responsible for monitoring payment for imported goods (SEPAIMPO) must be provided. For payments with a pending customs entry record, the transaction will be included in the corresponding monitoring procedure provided for in point 10.5. The general regulatory deadlines for demonstrating the customs entry record of the goods will apply.

7.11.3.3. Tickets must be registered on the date the financing originated, regardless of when the client requests registration with the financial institution.

If there are funds from the operations contemplated in points 7.11.1.2. to 7.11.1.6. destined for the direct payment to the freight service provider for imports of goods not included in their agreed purchase condition, for the purposes of registering the operation with the BCRA under the terms provided in this point, the entities must issue the corresponding sales ticket, certifying payment for such freight.

7.11.4. The requirement for the entry and settlement of foreign currency for the financing contemplated in points 7.11.1.1., 7.11.1.2., 7.11.1.3. and 7.11.1.5., where applicable, shall be deemed to have been fulfilled to the extent that the customs entry record of goods with a value equivalent to the financing received is demonstrated.

7.11.5. For the issuance of debt securities included in sections 7.11.1.5 and 7.11.1.6, funds originating from the collection of exports of the debtor's goods and services may be accumulated in foreign and/or domestic accounts intended to guarantee the payment of the maturities of the issued debt.

This option will be available until reaching 125% (one hundred twenty-five percent) of the capital and interest to be paid in the current month and the following six calendar months, in accordance with the schedule of service maturities agreed with the creditors, with the surplus funds to be entered and
settled in the foreign exchange market within the time limits provided for in the general rules on the matter.

If the date until which the collections must remain deposited pursuant to the financing contract is later than the expiration of the foreign currency settlement deadline, the exporter may request that this deadline be extended to the fifth business day after that date.

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

## 8.1. Operations included.

This monitoring includes all exports of goods whose officialization has been completed as of 02/09/19 and that have obtained the relevant customs shipment compliance, except for the customs operations detailed in point 8.5.17.

Regardless of whether an export is considered exempt from monitoring, if the exporter receives payments for such exports, these will also be subject to the obligation to enter and settle foreign currency.

## 8.2. Entity nominated by the exporter.

For each export transaction, the exporter must select an entity responsible for its monitoring. The exporter will initially designate the entity when formalizing the shipping permit with the Customs Collection and Control Agency (ARCA).

If the exporter has not made the nomination at that time, they must appear before the entity they wish to designate and agree to its assumption of the task. The entity must inform the BCRA of this assumption.

All financial institutions and exchange houses will be eligible for export, except those that have notified the BCRA that they have chosen not to operate in foreign trade, and are obligated to carry out the responsibilities associated with this follow-up.

The exporter may modify the entity in charge of monitoring in the following cases:

8.2.1. At will, as long as the expiration of the expected term has not occurred for the settlement of permit fees.

8.2.2. When the entity nominated by the exporter has chosen not to operate in foreign trade and its last such operation occurs prior to the official date of the shipping permit involved.

In such cases, the entity in charge of monitoring must notify the new entity of the exporter's intention. The latter's acceptance will release the previous entity from its obligations going forward.

## 8.3. Information on export destinations available to entities.

The SECOEXPO system provided by the BCRA will allow the entity to learn about the shipping permits for which it has been designated by an exporter.

Through this system, entities will have access to the information available in ARCA that is relevant for the purposes of fulfilling its responsibilities as the entity nominated for monitoring a boarding permit.

| Version: 2a. | COMMUNICATION "A" 8191 | Validity: 11/02/2025 | Page 1 |
|--------------|------------------------|---------------------|--------|



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

If the exporter believes there are errors in the way a shipping permit has been reported in the SECOEXPO system, they must process the corresponding correction directly with ARCA.

The entity may consider the information rectified when it is reflected in the SECOEXPO or when the entity has documentation issued by the ARCA in which it is indicated
expressly stating that said body considers the data indicated by the exporter to be valid in your request for rectification.

**8.4. Responsibilities of the entity nominated for monitoring the permit.**

8.4.1. Determination of the amount to be entered and settled.

The entity will calculate the amount of the obligation based on the information available in the SECOEXPO system and the commercial documentation provided by the exporter. It must also verify that the latter documentation is consistent with the customs records, taking into account the applicable customs declaration regulations.

The amount in foreign currency to be entered and settled for an export will be determined by the FOB value of the merchandise registered with Customs plus the value of the other concepts included in the price according to the sales condition agreed with the buyer.
of the goods.

Since commercial documentation is essential to reliably establish the value of the payment and settlement obligation, its presentation by the exporter and verification of its consistency with the data in customs records are essential requirements for the entity to issue a certificate of compliance for the permit.

8.4.2. Determining the deadline for the entry and settlement of foreign currency.

The entity must determine the period applicable to each export based on the provisions of point 7.1.1.

In the event that an export consists of different products, the applicable term will be the one that represents the greatest proportion of the total FOB value of the export.

The expiration date for an export will be the result of adding the applicable period to the shipment completion date granted by Customs. If the resulting date falls on a non-business day, the expiration date will be moved to the next business day.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

In the event of an extension to the deadline for a product, the new deadline will apply to both exports shipped from the date the extension is in effect and to previously shipped exports whose entry and settlement deadline has not expired at that time. In the event of a reduction in the current deadline, the reduced deadline will only apply to transactions formalized from the date the new deadline is in effect.

8.4.3. Record of charges for monitoring the permit.

The entity responsible for monitoring a shipping permit must record the amounts charged to it by one of the following accepted methods:

8.4.3.1. Collections from exports of goods registered in the foreign exchange market.

If the transaction has not been processed on the foreign exchange market, the entity must have a settlement certificate issued by the entity that processed it or, failing that, a certificate confirming the use of the settlement exceptions provided for in sections 2.6 and 2.7.

If the transaction falls under the exception provided for in point 2.6, the entity must also provide documentation demonstrating that the amount to be charged to compliance with the permit was transferred in foreign currency from the "Special Account for the Knowledge Economy Promotion Regime. Decree 679/22" for the payment of salaries to employees.

8.4.3.2. Application of foreign currency from the collection of exported goods admitted by this regulation.

The entity must have a certificate of application issued by the entity responsible for monitoring the transaction for which the foreign currency was applied.

8.4.3.3. Other charges admitted in the fulfillment of the monitoring.

The entity responsible for monitoring will be responsible for verifying compliance with the conditions and requirements set forth in each of the situations considered in point 8.5.

When the monitoring of a boarding permit is considered partially or fully completed by applications and/or by the situations considered in point 8.5., the entity must report it to the BCRA within 5 (five) business days of the entity validating the imputation.

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.4.4. Issuance of the certificate of completion.

The entity must issue a certificate of compliance for those export destinations for consumption that have accumulated admitted charges until reaching the total amount to be entered and settled.

Certification of compliance, in addition to being required for exchange purposes, will result in the release of payments from ARCA within the applicable customs and tax regulations.

8.4.5. Report of non-compliance.

The entity responsible for monitoring must report a non-compliance with a permit when, after the deadline established by current regulations has expired, the conditions required for issuing the certificate of compliance for the permit have not been met.

The entity must file the complaint within 10 (ten) business days from the expiration date of the deadline for the settlement of the permit's foreign currency.

If the entity has been notified through the SECOEXPO system of its responsibility for monitoring a permit after the expiration of the corresponding foreign currency settlement deadline, the deadline for filing the complaint will begin on the date it became aware of its responsibility for the permit.

8.4.6. Updating and closing the non-compliance report.

The entity must notify any change in the status of a boarding permit that was previously reported as non-compliant by it.

In particular, if the permit has been certified as fulfilled, the entity must also report the closure of the non-fulfilled permit, including the fulfillment number assigned by the entity to the permit, the date on which the entry of foreign currency was completed, and detailing all the transactions that have allowed the entity to consider it fulfilled.

The closure of the non-compliant must be carried out within 5 (five) business days of the certification of compliance being sent.

8.4.7. Certification of "Default in collection management".

When the entity in charge of monitoring verifies that the conditions provided for in point 7.6 have been met, in addition to the non-compliance report, it must send the BCRA the "Non-compliance in collection management" certification for the permit.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

If a shipping permit should have been considered "Unfulfilled in collection management" and this condition was not reported to the BCRA prior to the issuance of the fulfilled permit, the financial institution must make the necessary corrections so that this situation is duly recorded in the monitoring.

8.4.8. Extensions of the permit expiration date.

The entity responsible for monitoring must report when it grants extensions to the settlement period under the circumstances provided for in point 7.5.

8.5. Other charges admitted in the fulfillment of the monitoring.

The entity may consider the monitoring of a shipping permit to be partially or fully completed when it has the elements that allow it to consider that the operation falls into one of the situations detailed below and the conditions foreseen in each case are verified.

The documentation used to certify the concept and amount of foreign currency allocated in each case must be filed in the entity at the disposal of the BCRA.

8.5.1. Concepts included in the FOB value at Customs that are not part of the agreed sales condition.

For the value corresponding to concepts that appear in the FOB value declared to Customs in compliance with customs regulations and that are not part of the sales condition agreed between the parties in the case of exports made under the sales conditions EXW (ex works), FAS (free alongside ship) or FCA (free carrier).

This mechanism will also apply to the value of expenses recorded as supplementary data "GTOSANT736CA" in the case of exports of goods in which the expenses included in the FOB price agreed with the foreign importer do not include all of the expenses actually incurred up to the place determined by article 736 of the Customs Code (supplementary data "PLACE ART736CA").

The entry of foreign currency corresponding to local transportation costs incurred by the buyer to the location determined by the aforementioned Article 736 is governed, where applicable, by the rules applicable to the export of services.

8.5.2. Bank charges associated with the execution of the collection.

For the amount equivalent to the expenses charged by the foreign financial institutions involved, according to the customs and practices of banking operations associated with the collection of exports and/or their financing.



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

**8.5.3. Exports that by their nature are not likely to generate a counter value** in foreign currency.

For the value of the goods that the entity may consider, based on the description and documentation of the transaction provided by the exporter, to correspond to an export of goods that, by their nature, are not likely to generate a foreign currency equivalent, when all of the following conditions are met:

8.5.3.1. The shipping permit states that the export of the goods involved officially granted the customs benefit "EXPON O TITONEROSCE. low the

If the exporter has failed to incorporate them at the time of officialization, this condition may also be considered satisfied when the exporter proves that a rectification of the permit has been requested from the ARCA in order to incorporate any of the indicated advantages.

8.5.3.2. The commercial documentation associated with the operation states that the ownership of the goods involved has been handed over free of charge.

8.5.3.3. The intervening entity must have a sworn statement from the exporter that accurately describes the transaction by which ownership of the goods was transferred to the non-resident and details the reasons why it is considered an operation that, by its nature, is not likely to generate a foreign currency equivalent.

8.5.3.4. To the extent that the amount to be charged to the permit by this mechanism exceeds the equivalent of USD 25,000 (twenty-five thousand US dollars), the entity must have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting and non-accounting records and any other additional documentation provided.

**8.5.4. Re-shipment of goods from national free zones (ZFRE sub-regime).**

For the value of goods re-shipped from national free zones, provided that there is a sworn statement from the exporter identifying the entry document to a national free zone (ZFI) associated with the exported goods and the corresponding certification of affectation issued by the entity in charge of monitoring the ZFI in the SEPAIMPO (Section 11).

**8.5.5. Re-exportation of merchandise entered into the Factory Customs Regime (RAF) and not used (sub-regime RR01).**

For the value of the re-export of unused merchandise that was brought in by the Factory Customs Regime (General Resolution 1673/04 of the AFIP) which is registered through sub-regime RR01 to the extent that it has a sworn statement from the exporter in which he identifies the RAF entry document (DIR) associated with the re-exported goods and the corresponding certification of affectation issued by the entity in charge of monitoring the DIR in the SEPAIMPO (Section 11.).



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.6. Merchandise rejected in whole or in part at destination and reimported.

Up to an amount proportional to the relationship between the total FOB amount in foreign currency shown in the reimport clearance of the goods and the total FOB amount in foreign currency of the export that was rejected.

The entity must have the corresponding certification of affectation issued by the entity in charge of monitoring in the SEPAIMPO (Section 11) of the dispatch by which the reimportation of the exported merchandise took place.

If export charges and/or foreign currency applications have been charged to the original permit for the portion of the merchandise rejected and subsequently reimported, the amount arising from the use of this mechanism may be charged to the shipment by which the goods were sent in replacement of the rejected merchandise.

8.5.7. Exports that incorporate temporarily imported goods without the use of foreign currency.

For the value of goods temporarily imported without the use of foreign currency that were incorporated into the value of goods exported through the EC03 sub-regimes (Export for consumption with temporary import clearance (DIT) with transformation), EG03 (Export for consumption with DIT with transformation) Operator), EC04 (Export for consumption with DIT entered for transformation exited without transformation) or EG13 (Export for Consumption with DIT with Transformation Large Operator with Authorization) to the extent that the entity has with:

8.5.7.1. Export invoice for the net amount between the value of the shipping permit and the value of the inputs temporarily imported without foreign currency transfer that are being cancelled.

8.5.7.2. Invoice or pro forma invoice from the supplier of the temporarily imported goods, for the amount of the shipment to the corresponding location, stating that the goods were sent free of charge.

8.5.7.3. The certification of affectation issued by the entity in charge of monitoring in SEPAIMPO (Section 11) the temporary import clearance for transformation for which the customs entry registration of the exported merchandise was produced.

8.5.8. Missing items, losses and deficiencies recorded in the shipping permits.

For the value corresponding to the price deductions agreed with the foreign customer arising from differences between the quantities or volumes of goods shipped and those arriving at the destination or from the arrival of defective goods or goods that did not meet the expected quality conditions.

In cases where the original importer of the goods has rejected the goods due to deficiencies and the exporter has resold the goods to another foreign buyer at a lower value, the amount arising from the difference between the amount invoiced to both buyers may be charged.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

If the total amount to be charged to the permit does not exceed the equivalent of USD 25,000 (twenty-five thousand US dollars), it will be sufficient for the entity to have the sworn statement of the exporter and a certified copy of the documentation exchanged with the importer, from which the concept and the unpaid amount arise.

If the amount to be charged is higher than the indicated value, the entity must provide additional documentation to certify the genuine nature of the transaction and that the unpaid amount corresponds to the indicated concepts.

If export charges and/or foreign currency applications have been charged to the original permit for the missing portion of the goods, with losses and/or deficiencies, the amount arising from the use of this mechanism may be charged to the shipment by which the goods were sent to replace those with problems.

8.5.9. Temporarily exported goods whose reimportation is not reasonable due to loss of value.

For the value of goods that were temporarily exported, with or without transformation, whose reimportation into the country is not reasonable given the loss of value of the exported goods due to their degree of deterioration or because they cannot be repaired.

The entity must have a sworn statement from the exporter indicating that they have not received and will not receive any compensation for the goods not reimported, and the technical documentation that allows them to certify the loss of commercial value and/or destruction of the goods abroad.

To the extent that the amount to be charged to the permit by this mechanism exceeds the equivalent of USD 25,000 (twenty-five thousand US dollars) and the destruction of the goods abroad cannot be demonstrated, the entity must have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting records, extra-accounting records and any other additional documentation provided.

8.5.10. Merchandise damaged prior to delivery of the goods in the condition of purchase agreed between the exporter and importer.

For the value of the damaged goods, provided that the intervening entity has the exporter's sworn statement, the transport documentation, the claim report to the insurance company, and the insurance settlement.

If payment was made in foreign currency, certification of the settlement of the payment in the foreign exchange market will be required. If the claim was settled in local currency, a copy of the financial institution deposit account statement showing the claim payment.

If export charges and/or foreign currency applications have been charged to the original permit for the portion of the goods that suffered the damage, the amount arising from the use of this mechanism may be charged to the shipment by which the goods were sent to replace the damaged property.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.11. Discounts and service charges payable abroad that appear in the boarding permit documentation.

For the value of discounts and service charges payable abroad that appear on the shipping permit, provided that the entity has the exporter's sworn statement regarding the genuine nature of the transaction and the documentation from which the corresponding amounts arise.

To the extent that the amount to be charged to the permit through this mechanism exceeds the equivalent of USD 25,000 (twenty-five thousand US dollars), the entity must have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting and non-accounting records and any other additional documentation provided.

8.5.12. Expenses related to the placement of assets abroad and not incorporated on the boarding permit.

For the value of expenses directly related to the placement of goods abroad and which were not determined at the date of shipment of the goods, such as expenses for commercial promotions and discounts debited by the importer according to the uses and customs of placement of the exported product in the country of destination, to the extent that the entity has the sworn statement of the exporter regarding the genuine nature of the operation and the documentation from which the corresponding amounts arise.

To the extent that the amount to be charged to the permit through this mechanism exceeds the equivalent of USD 25,000 (twenty-five thousand US dollars), the entity must have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting and non-accounting records and any other additional documentation provided.

8.5.13. Fines for delays by the exporter in delivering goods to the importer with respect to the agreed deadlines.

For the value of fines applied by the importer for delays in the delivery of the goods, provided that all of the following conditions are met:

8.5.13.1. The application of fines is specifically provided for in the contract of international sale concluded between the parties,

8.5.13.2. the signing of said contract is prior to the date of shipment,

8.5.13.3. The delay on the part of the resident exporter with respect to the conditions agreed between the parties is reliably accredited, and

8.5.13.4. The exporter and the importer are not directly or indirectly related in accordance with the provisions of point 6.6.

| Version: 2a. | COMMUNICATION "A" 7914 | Validity: 07/12/2023 | Page 9 |
|---|---|---|---|

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------------------------------------------------------------------|
|      | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.14. Tax withholdings in the country of destination.

For the amount withheld from the exporter abroad in the event that the tax regulations of the country of destination of the goods establish tax withholdings on payments to be made by the importer, provided that the entity has duly certified documentation that proves:

8.5.14.1. the applicable tax regulations,

8.5.14.2. the amount withheld from the exporter abroad, and

8.5.14.3. the correspondence of the withholding with the collection of the permit to be charged.

8.5.15. Allocations to the complement of the same operation of revisable prices or mineral concentrates.

For amounts corresponding to settlements, applications or other mechanisms already charged to compliance with the provisional permit that constitutes a single operation with the definitive permit to which it is charged by this mechanism, or vice versa, in operations with revisable prices or mineral concentrates within the framework of the operation described in point 7.8.2.

Likewise, if the FOB value of the definitive permit is lower than the FOB value of the provisional permit, the difference between the two may also be applied to compliance with the latter.

8.5.16. Income settled through payment processing companies.

For the amount of foreign currency entered and settled by a payment processing company in the foreign exchange market, the proceeds of which were credited to local currency accounts in the name of the exporter, which are attributed to the shipping permit.

The entity must have the settlement certification issued by the entity that processed the entry and settlement of funds on behalf of the payment processor.

8.5.17. Customs operations exempt from monitoring.

For the value corresponding to customs benefits or other situations provided for in the following list of operations:

8.5.17.1. Regime of customs operations carried out by means of war, security or police transport (articles 472 to 484 of Law 22415).

8.5.17.2. Ranch regime (articles 506 to 516 of Law 22415) to the extent that they correspond to national flag transportation means.

8.5.17.3. Cheap-trade regime (articles 517 to 528 of Law 22415).

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.17.4. Diplomatic franchise regime (articles 529 to 549 of Law 22415).

8.5.17.5. Sampling regime (articles 560 to 565 of Law 22415).

8.5.17.6. Promotional material regime (AFIP General Resolution No. 2345/07).

8.5.17.7. Baggage regime (articles 488 to 505 of Law 22415).

8.5.17.8. Export regime to compensate shipments with deficiencies (items 573 to 577 of Law 22415).

8.5.17.9. System for sending assistance and rescue (articles 581 to 584 of Law 22415).

8.5.17.10. Trade broker regime (ANA Resolution No. 122/93).

8.5.17.11. Organ and human blood donation regime (ANA Resolution No. 384/97).

8.5.17.12. Consignment export regime (as long as it remains within the regime, according to Decree No. 637/79).

8.5.17.13. Removal regime (articles 386 to 396 of Law 22415).

8.5.17.14. Exports from the Special Customs Area to national free zones and to the rest of the territory of the Nation.

Regarding exports from the Special Customs Area to the free zone, the exemption from the entry of foreign currency is applicable as long as they involve the supply of the free zone itself and there is no subsequent re-exportation (at the decision of the General Directorate of Customs, according to the second section of article 12 of Decree No. 9208/72).

8.5.17.15. Exports from the Continental National Territory to the free zone (art. 18 of Law 19640).

Regarding exports from the Continental National Territory to the free zone, the exemption from the entry of foreign currency is applicable as long as they involve supplying the free zone and there is no subsequent re-exportation (at the decision of the General Directorate of Customs, according to the first section of article 17 of Decree No. 9208/72).

8.5.17.16. Exports from the Continental National Territory to the Special Customs Area – Article 20 a) of Law 19640–.

8.5.17.17. Export for consumption with Temporary Import Destination, without transformation (subregimes EC02, EG02, or PER1). This refers to the export for consumption of goods that return in compliance with an obligation assumed under the temporary import regime, leaving the country in the same state in which they were imported.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.17.18. Exportation for consumption of goods that are excluded from the Baggage Regime – art. 59 inc. B) of Decree No. 1001/82–: are those goods (for example: automobiles, motorcycles, inboard or outboard engines, aircraft, boats, etc.) that a resident of the country exports due to his/her residence abroad.

8.5.17.19. Export for consumption of goods that make up the traveler's unaccompanied baggage but are exported outside the time limits established in section c) paragraph 3 of article 60 of Decree No. 1001/82.

8.5.17.20. Exports of goods sent abroad for promotional purposes covered by Customs Resolution No. 772/92, up to a limit of USD 5,000 (five thousand US dollars).

8.5.17.21. Suspensive destinations of temporary exports (articles 349 to 373 of the Customs Code).

8.5.17.22. Exports to national free zones.

8.5.17.23. Transshipment operations (articles 410 to 416 of Law 22415).

8.5.17.24. Re-shipment operations recorded under sub-regimes RE01, RE04, RE05, RE06, REP1, REP4 or REP6.

8.5.17.25. Exportation for consumption of domestically manufactured motor vehicles, their parts and pieces under Law 19486 and Decree No. 5529/72.

8.5.17.26. Exports of personal effects that are part of the profession or trade of individuals who establish their residence abroad, provided that said operations have been authorized by Customs.

8.5.17.27. Exports of securities (banknotes, coins, etc.) through the regime EC51.

8.5.17.28. Customs operations of the "BARA" and "VMI1" sub-regimes within the framework of the operations of fuel suppliers for means of transport.

8.5.18. Local charges for exports from the ranch regime to means of transport foreign flag.

The entity may consider the follow-up of a shipping permit to be partially or fully completed for the amount equivalent to the amounts paid locally in pesos and/or foreign currency to the exporter by a local agent of the company owning the foreign-flagged means of transport, provided that the following conditions are met:



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.18.1. The documentation confirms that the exported goods were delivered in the country, that the local agent of the company owning the foreign-flagged means of transport made the payment to the exporter locally, and the currency in which said payment was made.

8.5.18.2. The entity has a certification issued by an entity in which It is noted that the aforementioned local agent would have had access to the foreign exchange market for the equivalent amount in foreign currency that is intended to be charged to the permit.

The entity issuing the aforementioned certification must first:

i) verify compliance with all requirements established by the foreign exchange regulations for access to the foreign exchange market, with the exception of that provided for in point 3.16.1., and

ii) have a sworn statement from the aforementioned local agent stating that he has not transferred nor will transfer funds abroad for the proportional part of the operations included in the certification.

8.5.18.3. If the amounts were received in foreign currency in the country, the entity must have certification of the settlement of the funds in the foreign exchange market.

8.5.18.4. The local agent has not used this mechanism for an amount exceeding the equivalent of USD 2,000,000 (two million US dollars) in the calendar month being charged.

In all cases, the calendar month charged must correspond to the date of shipment of the permit or be later.

8.5.19. Exportation included in the provisions of Decree No. 443/23, the required foreign currency settlement of which was completed by 30.9.23.

The entity may consider the follow-up of a shipping permit for the equivalent of up to 25% of the invoiced value according to the agreed sales condition to be completed, provided that the following conditions are verified:

8.5.19.1. The entity has documentation that allows it to verify that the export operation complies with the provisions of Decree No. 443/23, through a sworn statement by the exporter.

8.5.19.2. The remainder of the invoiced value according to the agreed sales condition has been completed by:

(i) collections from exports of goods associated with the covered transaction that were settled by the foreign exchange market until 30.9.23; or

Machine Translated by Google



| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

ii) the application of foreign currency to the cancellation of capital or interest on advances, pre-financing and/or post-financing from abroad associated with the covered transaction that were settled in the foreign exchange market until 30.9.23; or

iii) other charges admitted in the fulfillment of the monitoring as provided for in points 8.5.1 to 8.5.18.

8.5.20. Export tax collected after unsettled shipment pursuant to the provisions of Decrees No. 492/23, 549/23, 597/23 and 28/23.

The entity may consider the monitoring of a shipping permit to be completed for up to the percentage of the invoiced value according to the agreed sales condition that, under the conditions provided for in the Decree applicable to the operation, could be channeled through securities purchase and sale transactions, provided that the following conditions are met:

8.5.20.1. In the case of an operation covered by Decree No. 492/23, the entity must have a sworn statement from the exporter stating that the operation falls under this Decree.

8.5.20.2. The exporter has demonstrated that the value to be affected corresponds to export collections received after the shipment of the goods that were used to acquire securities with settlement in foreign currency that were sold with settlement in local currency in the country under the conditions stipulated in the aforementioned decrees.

If the acquisition of securities was completed with settlement in the country of the foreign currency, certification from the entity that carried out the exchange and/or arbitration transaction for the entry of foreign currency through the foreign exchange market must be obtained.

8.5.20.3. The remainder of the invoiced value according to the agreed sales condition has been completed by:

(i) collections from exports of goods associated with the covered transaction that were settled by the foreign exchange market during the period provided for in the aforementioned decrees; or

ii) the application of foreign currency to the cancellation of capital or interest on advances, pre-financing and/or post-financing from abroad associated with the covered operation that were settled in the foreign exchange market during the period provided for in the aforementioned decrees; or

iii) other charges admitted in the fulfillment of the monitoring as provided for in points 8.5.1 to 8.5.18.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 8. Monitoring of foreign exchange negotiations for exports of goods (SECOEXPO). |

8.5.21. Exports achieved by the exchange benefits of the Incentive Regime for Large Investments (RIGI).

At the request of a client who is a Single Project Vehicle (VPU) attached to the RIGI and who has declared to the Enforcement Authority that they plan to use these benefits, the entity may consider the permit monitoring completed for up to an amount equivalent to the percentage of collections from exports of goods that are freely available to the exporter as detailed in points 14.1.1. and 14.1.2., as applicable.

8.5.22. Exports achieved through the exchange benefits of the Investment Promotion Regime for the Exploitation of Hydrocarbons (Decree 929/13).

At the request of a client with a project included in the Investment Promotion Regime for the Exploitation of Hydrocarbons established by Decree 929/13, the entity may consider the monitoring of a shipping permit completed for the part of the permit that is covered by a "DECREE 929/13 Certificate" issued based on the provisions of Resolution 26/23 of the Ministry of Energy.

## 8.6. Reports from entities in the monitoring.

The entities responsible for monitoring must complete the information reports established in the reporting regime associated with this monitoring.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 9. Monitoring of advances and other export financing of goods. |

## 9.1. Operations included.

9.1.1. All foreign exchange settlements on the foreign exchange market as of 2.9.19 that correspond to advance collections, pre-financing, or other financing for which the application of foreign exchange from export collections is permitted.

9.1.2. Pre-financing and export financing pending as of 8/31/19 that were granted or guaranteed by local financial institutions.

9.1.3. Advances and pre-financing of foreign exports pending as of 8/31/19 that were settled on the foreign exchange market and for which the exporter requests their application to official shipping permits as of 9/2/19.

9.1.4. Advances and pre-financing of foreign exports pending as of 8/31/19 that were not settled in the foreign exchange market, for which the exporter requests their application to official shipping permits as of 9/2/19.

9.1.5. Financial loans with contracts in force as of 8/31/19 whose terms provide for the provision of services through the application of export cash flows abroad and for which the exporter requests their application to official shipping permits as of 9/2/19.

9.1.6. Financial debt with foreign countries and debt securities denominated in foreign currency with public registration in the country, admitted in points 7.9 or 7.10.

9.1.7. Contributions of foreign direct investment admitted in points 7.9. or 7.10.

9.1.8. Financing associated with imports of goods enabled for the application of collections from exports of goods contemplated in point 7.11.

## 9.2. Entity nominated by the exporter.

For each operation included, the exporter must select an entity responsible for its monitoring.

This entity will be solely responsible for issuing the application certificates that enable export collections to be allocated to the corresponding permits.

In the case of financing granted by local financial institutions, the entity that granted the financing will be responsible for monitoring the loan until it is fully repaid.

For the operations covered by points 9.1.6 and 9.1.7, monitoring will be the responsibility of the nominated entity in compliance with the provisions of points 7.9 and 7.10.

In the case of transactions covered in section 9.1.8, monitoring will be the responsibility of the entity that, at the exporter's request and after verifying compliance with the requirements set forth in section 7.11, registered the transaction with the BCRA.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|------------------------|
|      | Section 9. Monitoring of advances and other export financing of goods. |

In the remaining cases, the follow-up will initially be the responsibility of the entity that processes the settlement through the foreign exchange market, and the exporter may modify it later as long as no foreign currency applications have been recorded upon settlement.

If the exporter requests a change, the entity in charge of monitoring must notify the new entity of the exporter's intention. The latter's acceptance will release the previous entity from its obligations going forward.

## 9.3. Certifications of application of export collections.

At the exporter's request, the monitoring entity will issue application certificates to the extent that the conditions provided for in points 9.3.1 to 9.3.13 are verified.

The entity must record the application certifications issued for each of the operations under its monitoring.

9.3.1. Advances and pre-financing from abroad settled in the foreign exchange market from 2.9.19 and local pre-financing.

The entity may issue certificates of application of foreign currency to the payment of principal and interest provided that the following conditions are met:

9.3.1.1. The entity has documentation that allows it to verify:

i) the genuine nature of the financing operation and its agreement with the declared type of operation;

ii) that the exporter has paid the creditor after 2.9.19 an amount equivalent to that for which the application certification is requested, as a result of the use of the currencies corresponding to the permission indicated;

iii) that, if applicable, the cancelled operation has been given compliance with the "Survey of external assets and liabilities".

9.3.1.2. That the amount to be certified for an application to the cancellation of capital is less than or equal to the pending liquidated balance recorded by the entity for the operation in question.

In the case of a foreign operation partially settled during the validity of Decrees No. 492/23, No. 549/23, No. 597/23 and No. 28/23, certifications may also be issued for the unsettled portion as long as the provisions of point 7.3.11 are verified.

9.3.1.3. That the amount of the certification for an application of interest or other admitted concepts is consistent with those agreed upon for the operation and reflects market conditions.

Machine Translated by Google



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 9. Monitoring of advances and other export financing of goods. |

The entity may also issue application certificates with imputation to a transaction under its supervision, provided that the exporter can reliably demonstrate that the foreign currency from the permit was used to settle the original debt that was assigned to another external creditor by the originally declared creditor, or a renewal of the original transaction with the same creditor.

9.3.2. Advances and pre-financing from abroad pending as of 8/31/19 that were settled by the exchange market.

The entity may issue certifications for the application of foreign currency to the payment of principal and interest provided that, in addition to verifying the conditions indicated in section 9.3.1, the entity has a sworn statement from the exporter detailing the outstanding amount of the debt as of August 31, 2019, and the payments made.

If the amount owed exceeds USD 25,000 (twenty-five thousand US dollars), the entity must also have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting records, extra-accounting records, and any other additional documentation provided.

9.3.3. Advances and pre-financing of foreign exports pending as of 8/31/19 settled on the foreign exchange market.

The entity nominated by the exporter to monitor all of its transactions that fall under this point must, for each transaction submitted by the exporter, in addition to verifying the conditions indicated in point 9.3.1., request a sworn statement from the exporter detailing the outstanding amount of the debt as of August 31, 2019, and the payments made.

If the amount owed exceeds USD 25,000 (twenty-five thousand US dollars), the entity must also have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting records, extra-accounting records, and any other additional documentation provided.

The entity may issue a certificate of application of foreign currency to the payment of principal and interest on any of these transactions only if one of the following situations is verified:

9.3.3.1. the prior approval of the BCRA is obtained; or

9.3.3.2. The cumulative amount of capital and interest applications issued for the exporter's operations included in this section does not exceed 75% of the value of the new settlements of advances and pre-financing from abroad settled by the exporter in the foreign exchange market as of 2.9.19.



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 9. Monitoring of advances and other export financing of goods. |

9.3.4. Post-financing from abroad through discounts and/or transfers of credits to the export.

Certificates of application of foreign currency to the payment of principal and interest corresponding proportionally to the amount settled may be issued, as evidenced by the copy of the settlement made.

In the case of a transaction partially settled during the validity of Decrees No. 492/23, No. 549/23, No. 597/23 and No. 28/23, certifications may also be issued for the unsettled portion as long as the provisions of point 7.3.11 are verified.

Certifications may only be issued if the entity has proof that the exporter has been released from his contingent obligations abroad.

9.3.5. Post-financing from local financial institutions through discounts and/or transfers.

Certificates of application of foreign currency to the payment of capital and/or interest corresponding proportionally to the amount settled may be issued, provided that the entity's account has been credited with foreign currency income corresponding to:

9.3.5.1. The effective collection of the foreign currency from the shipment that originated the credit.

9.3.5.2. The non-recourse transfer of the operation to a foreign entity.

9.3.5.3. The discount of the operation in a foreign entity, with the local entity and the exporter being released from their contingent obligations abroad.

In the latter two cases, for the purposes of issuing the certification, the amount of the discounted or transferred document will be computed, as the case may be, and the entity must make the corresponding registration in its name for the interest paid for the discount or transfer of the transaction abroad.

9.3.6. Financing from local financial institutions to foreign importers.

Application certificates may be issued for amounts settled by the exporter that are proportional to the amounts received by the entity as payment of the financing capital.

9.3.7. Financial loans with contracts in force as of 8/31/19 whose terms provide for the provision of services through the application abroad of the flow of export funds for which the exporter has requested their application to official shipping permits as of 9/2/19.

The entity may issue certifications of application of foreign currency for cancellation as of the maturity of the principal, interest, and other admitted concepts to the extent that, in addition to verifying the conditions indicated in point 9.3.1., the entity has a sworn statement from the exporter detailing the outstanding amount of the debt as of 8/31/19 and the cancellations made.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 9. Monitoring of advances and other export financing of goods. |

If the amount owed exceeds USD 25,000 (twenty-five thousand US dollars), the entity must also have a certification from an external auditor stating that the exporter's declaration is consistent with the information arising from the review of accounting records, extra-accounting records, and any other additional documentation provided.

9.3.8. Financial debts with foreign countries admitted in points 7.9. or 7.10.

The entity may issue certifications of application of foreign currency to the repayment of principal, interest, and other permitted items, provided that it verifies the conditions indicated in point 9.3.1., confirms that the repayment took place as of the due date, and has the documentation that allows it to verify compliance with the requirements established in points 7.9. or 7.10., as applicable.

9.3.9. Debt securities with public registration in the country denominated in foreign currency admitted in point 7.9.

The entity may issue certifications of application of the foreign currency to the cancellation from the maturity of the capital, interest and other admitted concepts, provided that it verifies the conditions indicated in point 9.3.1., confirms that the cancellation took place from the maturity date and has the documentation that verifies compliance with the requirements established in point 7.9.

9.3.10. Repatriation of direct investment contributions from non-residents in companies that are not controlling entities of local financial institutions admitted in points 7.9 or 7.10.

The entity may issue the application certification to the extent that the entity has the documentation that allows it to verify:

9.3.10.1. compliance with the requirements set out in points 7.9. or 7.10.;

9.3.10.2. that the non-resident shareholder who made the repatriation received an amount equivalent to the amount for which the application certification is requested, as a result of the use of the foreign currency corresponding to the indicated permit;

9.3.10.3. The legal mechanisms provided for in the case of a capital reduction and/or return of irrevocable contributions made by the local company have been completed;

9.3.10.4. The liabilities in pesos abroad generated from the date of non-acceptance of the irrevocable contribution or capital reduction, as applicable. This is declared in the most recent due submission of the "Survey of Foreign Assets and Liabilities," if applicable;

9.3.10.5. In the case of an application under a transaction admitted in point 7.9, the cumulative amount of the certifications applied does not exceed the amount of the contribution duly entered and settled in the foreign exchange market.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 9. Monitoring of advances and other export financing of goods. |

9.3.11. Commercial debts for the import of goods and services under the provisions of point 7.10.

The entity may issue certificates of application of the foreign currency for cancellation as of the maturity of the eligible principal and interest, provided it verifies the conditions indicated in section 9.3.1 and has the documentation to verify compliance with the requirements established in section 7.10.

In the case of cancellations of the capital of commercial debts for imported goods, the entity must have the corresponding certification of affectation issued by the entity in charge of monitoring in SEPAIMPO (Section 11) of the clearance by which the customs entry registration of the goods giving rise to the debt was produced.

9.3.12. Profits and dividends within the framework of the provisions of point 7.10.

The entity may issue certificates of application of foreign currency to the payment of profits and dividends to non-resident shareholders, provided that all of the following conditions are met:

9.3.12.1. Profits and dividends correspond to closed and audited balance sheets.

9.3.12.2. The total amount paid under this concept to non-resident shareholders, including the payment whose application is being requested, does not exceed the amount in local currency corresponding to them according to the distribution determined by the shareholders' meeting.

The entity must have a sworn statement signed by the legal representative of the resident company or a representative with sufficient authority to assume this commitment on behalf of the company.

9.3.12.3. The entity must verify that the client has complied, where applicable, with the declaration of the last overdue submission of the "Survey of external assets and liabilities" for the transactions involved.

9.3.13. Financing associated with imports of goods enabled for the application of collections from exports of goods contemplated in point 7.11.

The entity may issue certifications of application of foreign currency to the repayment of principal and interest to the extent that, in addition to verifying the conditions indicated in point 9.3.1., it has the documentation that allows verifying compliance with the requirements established in point 7.11.

**9.4. Date of application of foreign currency.**

It will be determined by the effective cancellation date of the concept to which the foreign currency from export collections were applied.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 9. Monitoring of advances and other export financing of goods. |

**9.5. Minimum data that make up the certification.**

The application certification must contain, as a minimum, the following information: CUIT and name of the exporter, date of issue of the certification, shipping permit to which the applied charges correspond, application date, type of cancelled operation, concept cancelled (capital and/or interest), currency and amount of the application charged to it.

The amounts must be expressed in the currency that was promptly settled by the exchange market.

**9.6. Other circumstances that reduce the amount pending application.**

The entity must also record in its databases any other circumstance of which it becomes aware and which implies a reduction in the amount of the capital owed and available for application, not derived from the application of collections from export of goods, such as: cancellation of pre-financing with application of advances, cancellations finalized with the application of services, repayment of foreign financing through the foreign exchange market, creditor forgiveness, etc.

**9.7. Operations carried out through the Local Currency System (SML).**

In the case of advances processed by the SML as of 9/2/19, the entity to which the funds were credited to the exporter must assume the "Monitoring of advances and other export financing for goods," taking as the deposited amount the amount in local currency credited to the exporter's account. In the case of advances for exports to Paraguay or Uruguay invoiced in the currency of the destination country of the export, the equivalent in that currency of the credited amount will be computed.

From the moment they are incorporated into the monitoring, the general rules on the matter will apply.

**9.8. Compliance with the BCRA's reporting regime.**

The entity must comply with the provisions made known by the information regime associated with this monitoring.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

## 10.1. General provisions.

Entities may provide access to the foreign exchange market to make payments abroad for Argentine imports of goods and other purchases of goods when the conditions specified in these regulations are met.

Financial institutions may also access the foreign exchange market to meet their foreign obligations for guarantees or endorsements issued in connection with Argentine import transactions, and to repay foreign credit lines applied to finance Argentine imports of goods, provided that the established conditions are met.

The specified conditions will also apply to payments for Argentine imports of goods and related services that can be channeled through the Local Currency System (SML) if they meet the requirements set forth in said system.

## 10.2. Definitions.

10.2.1. Payments for Argentine imports of goods.

Argentine imports of goods are considered to be those transactions that have the corresponding customs entry registration of the goods with the Customs of the Argentine Republic.

Payment for imported goods includes any item that is part of the agreed purchase condition recorded on the invoice issued by the foreign supplier.

This regulation distinguishes two types of payments for Argentine imports of goods:

10.2.1.1. Payments for imports that have a customs entry record.

10.2.1.2. Payments for imports of goods with pending customs entry registration.

In the latter case, payments made will be subject to monitoring to verify that the goods are registered for customs entry within the timeframes stipulated in the regulations.

10.2.2. Customs entry record.

For the purposes of this regulation, an import of goods is considered to have a customs entry record when the importer has formalized the import clearance for subsequent release of the goods to the customs office.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

This registration is also complied with when goods are brought into the country through a Private Request or Courier, or when the customs procedure for the entry of goods from abroad into national free zones has been completed and said entry corresponds to a sale of goods from a non-resident to a resident.

Customs records for suspended imports from storage warehouses and entries from temporary imports without foreign currency transfer are not included.

10.2.3. Agreed purchase condition.

Condition agreed between the parties that establishes the moment at which the obligation to deliver the goods from the exporter to the importer is considered fulfilled, with the costs borne by each of the parties being established.

10.2.4. Commercial debt for the import of goods.

For the purposes of access to the foreign exchange market, the following debts are considered commercial debts for financing the import of goods:

10.2.4.1. Financing at any term granted by the foreign supplier.

10.2.4.2. Financing at any term provided by a foreign export credit agency to finance the purchase of Argentine imports of goods or other debts arising from import transactions in which the creditor is an official export credit agency.

10.2.4.3. Financing at any term granted by a foreign financial institution, where disbursements in foreign currency are applied, net of expenses, directly and fully to advance and/or sight and/or deferred payment to the foreign supplier.

10.2.4.4. Financing at any term granted by a local financial institution where disbursements in foreign currency are applied, net of expenses, directly and entirely to the advance payment and/or on demand to the foreign supplier.

10.2.4.5. Financing with terms not exceeding 365 (three hundred sixty-five) calendar days from the date of shipment, granted by a local financial institution as a complement to foreign financing.

10.2.4.6. Financing at any term provided by a local financial institution as a complement to the foreign financing contemplated in the previous points, provided that it is granted with the opening of a letter of credit or guaranteed bills of exchange, or with a credit approved by the institution, prior to the shipment date.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

In these cases, the entity must have: a) the shipping documents within 50 (fifty) business days following the shipment date; and b) reliable documentation proving that the credit was granted by the local entity prior to the shipment date of the goods.

10.2.4.7. Outstanding installments on rental contracts for goods with the option to replace, purchase, or return.

10.2.4.8. Foreign financing operations granted under the conditions of the immediately preceding points, which record changes in the external creditor without modifying the financial conditions of the same and the remaining contractual clauses of the original financing.

10.2.4.9. Refinancing of any of the operations of the points immediate precedents that were granted by the creditor.

Payments for debts arising from the import of goods that do not qualify as commercial import debts shall be governed by the rules applicable to the repayment of capital services for financial loans.

10.2.5. Foreign supplier.

For the purposes of foreign exchange regulations, a foreign supplier will be considered to be the person who has issued or will issue the commercial invoice abroad in the name of the resident buyer accessing the foreign exchange market.

Likewise, entities may consider payments made to a foreign beneficiary other than the party that issued the commercial invoice as equivalent to a payment to a foreign supplier, provided that they have documentation that proves that both foreign companies are part of the same economic group and that the involvement of both in the transaction is associated with internal administrative and/or operational issues within said group, which are beyond the control of the Argentine importer.

Entities may also accept the transfer of goods sent by a company other than the beneficiary of the payment without a customs entry record when the provisions of the preceding paragraph are met.

10.2.6. Import Payment Tracking System (SEPAIMPO).

The "Import Payment Tracking" (SEPAIMPO) system allows for monitoring payments associated with an import authorization, as well as proof of the entry of goods into the country in relation to payments made prior to the goods' customs entry registration.

The SEPAIMPO system incorporates information from import officializations, operations carried out by the exchange market associated with imports of goods and the data that must be provided to the system by the entities in charge of the monitoring of officializations and payments made prior to customs entry registration.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

The entity nominated by the importer to monitor import officializations within the framework of SEPAIMPO is responsible for verifying compliance with the conditions stipulated in these regulations that will enable access to the exchange market and/or the allocation of an officialization to the regularization of a payment with pending customs registration.

10.2.7. Debt of financial institutions for foreign credit lines applied to the financing of imports of goods.

This corresponds to the debt of local financial institutions for the use of foreign credit lines applied to the financing of Argentine imports of goods and services contained in the agreed purchase condition, to the extent that it qualifies as commercial debt according to the provisions of point 10.2.4.

10.2.8. Other purchases of goods from abroad.

It includes the following cases:

10.2.8.1. Supplies, equipment and spare parts intended for the construction, repair, maintenance or replacement of parts of offshore hydrocarbon production and treatment facilities.

10.2.8.2. Goods intended for sale in duty-free shops under Law 22056.

10.2.8.3. Goods entered into free warehouses authorized in accordance with the ANA Resolution No. 2676/79.

10.2.8.4. Purchases of goods that do not pass through the country and are sold abroad.

10.3. Payments for imports of goods that have a customs entry record.

10.3.1. Operations included.

To the extent that it corresponds to operations that have a customs entry record, they are included

10.3.1.1. Payments against presentation of shipping documentation.

10.3.1.2. Payments of commercial debts for imported goods.

10.3.1.3. Cancellation by financial institutions of commercial guarantees for imported goods.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

10.3.2. Access requirements for the payment of import officializations included in SEPAIMPO.

The intervening entity may provide access to the foreign exchange market for payment abroad for imported goods that have a customs entry record in the SEPAIMPO, provided that it previously verifies all of the following requirements:

10.3.2.1. Certifies as the entity responsible for monitoring the officialization that the conditions stated below are met or has a certification to make the payment issued by the entity that has such responsibility.

i) Has proof of customs registration of entry into the country of the assets that give rise to the payment to be cancelled.

ii) Has a copy of a commercial invoice issued abroad to name of the customer residing in the country, who makes the purchase to exterior, where the name and address of the issuer, name of the Argentine importer, the quantity and description of the merchandise, condition of sale and invoice value.

iii) Has a copy of the Transport Document (Bill of Lading) Boarding – Bill of Lading – Air Waybill).

iv) That the information arising from the commercial invoice and the Transport Document is consistent with that shown in the customs records, considering the declaration rules applicable customs.

v) That the documentation presented allows you to establish the date of maturity of the importer's obligation abroad or, failing that, that the operation does not have an expiration date agreed upon.

vi) That, in the case of financed operations, the The documentation presented allows you to qualify it as a debt for imports of goods as provided in point 10.2.4.

vii) That the total of payments made with imputation to the officialization import, including the payment for which the course is being requested, not exceeds the amount invoiced under the agreed purchase condition.

viii) That the beneficiary of the payment to be made is the foreign supplier or, where appropriate, the foreign financial institution or official agency credit that financed the purchase from the foreign supplier to the extent that the operations are classified as commercial debt for imports of goods, or the non-resident who purchased the credit from foreign commercial creditor and as long as they are not modified the conditions under which the credit was granted.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

ix) There is proof that the transaction is declared, if applicable, in the last due submission of the "Survey of external assets and liabilities".

x) In the case of imports made official before 11/01/19, there is a sworn statement stating the outstanding debt balance to date, signed by the importer or whoever exercises his legal representation or an attorney with sufficient powers to assume this commitment on behalf of the importer.

10.3.2.2. The sale of foreign currency is processed by debiting the client's accounts with local financial institutions using one of the current payment methods.

10.3.2.3. Payment is not made prior to the due date of the foreign obligation.

This requirement will not apply when the client is a Single Project Vehicle (SVPU) adhering to the Large Investment Incentive Regime (RIGI) and commercial financing is cancelled under the provisions of point 14.2.1.

10.3.2.4. Affidavit committing to liquidate in the foreign exchange market, within 20 (twenty) business days of its availability, any foreign currency that may be received as reimbursement for import payments made with access to the foreign exchange market. This declaration must be signed by the importer or his or her legal representative, or an agent with sufficient authority to assume this commitment on behalf of the importer.

10.3.2.5. If the goods are imported with a customs entry registration as of 13/12/23 and not included in point 10.6.6, the entity must additionally verify that the deferred payment meets one of the following conditions:

(i) is carried out in compliance with the deadlines detailed in point 10.10.1, depending on the imported good; or

ii) is carried out before the deadlines detailed in point 10.10.1. because the operation falls into one of the situations provided for in point 10.10.2.

10.3.2.6. If the goods are imported with a customs entry record up to 12/12/23, the entity must verify that the transaction falls under one of the situations provided for in point 10.11.

Clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the amount of the outstanding debt for these operations, provided that the requirements set forth in section 4.4 are met.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

10.3.2.7. In all cases, the entity must, at the time of granting access to the foreign exchange market, have the transaction status validated in the online system implemented by the BCRA for such purposes.

Cases that do not fall under the aforementioned criteria are subject to prior approval by the BCRA, and requests must be channeled through an entity authorized to make this type of payment.

10.3.3. Access requirements for payments for imported goods entered by Private Request or Courier that are not registered in SEPAIMPO.

The intervening entity may provide access to the foreign exchange market for payment abroad for imported goods entered by Private Request or Courier and which are not recorded in the SEPAIMPO, provided that it previously verifies that all the requirements detailed in point 10.3.2. are met, including those stated in point 10.3.2.1.

The entity must submit a copy of the "Special Request" authenticated by the intervening Customs Service, proving the effective nationalization of the goods, recording the date and amount paid abroad. This documentation must include the invoice identification, allowing the details and amount of the goods cleared to be determined.

For transactions carried out prior to 09/02/19, the entity must audit the customs documentation, recording the amount of outstanding debt as of 08/31/19 declared by the importer.

10.3.4. Additional requirements for the cancellation of imports of war material secret.

The entity involved must also consider the following elements:

10.3.4.1. In the event that the right to dispose of the merchandise has been transferred in the transport document, prior to its importation, an invoice issued in the country by the resident natural person or legal entity that appears as the buyer in the invoice issued by the supplier, stating the quantity and description of the merchandise, unit and total price and other requirements established by the ARCA, issued in the name of the resident natural person or legal entity that invoices the sale of the goods on behalf of the Armed Forces or Security Forces that carry out the dispatch of the goods to the market.

10.3.4.2. Copy of the exit document from the primary customs zone.

10.3.4.3. Copy of the Particular Application authenticated by customs authority competent authority in which the exit to the market of the goods is recorded.

10.3.4.4. To the extent that the verification of the merchandise by Customs is not included in the Particular Request, a copy of the certificate and/or proof of authorization issued by the intervening Armed Forces or Security Forces, addressed to the Customs Service, containing the details of the operation in question, in accordance with the terms of Decree 2.921/70.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

10.3.5. Payments for imported goods from free trade zones with customs transfer of ownership from the exporter to the importer.

The intervening entity may provide access to the foreign exchange market for payment abroad for goods imported from free trade zones with customs transfer of ownership from the exporter to the importer, provided that it previously verifies that all the requirements detailed in point 10.3.2. have been met, replacing the requirements in paragraphs i), iii) and iv) of point 10.3.2.1. with the following:

10.3.5.1. The ZFE form for officialization of the entry of goods is submitted to the country.

10.3.5.2. The Customs Transfer of Ownership document authorized by customs is presented from the non-resident exporter to the local importer who registers the entry of the goods into the country.

10.3.5.3. The information appearing on the commercial invoice is consistent with the information appearing on the ZFE form of the customs entry record, taking into account the applicable customs declaration rules.

10.3.5.4. The entity in charge of monitoring the ZFI has certified that the customs entry registration form for the free zone has been disabled for payment because it does not correspond to a sale from a non-resident to a resident, and that the ZFE presented has been reported as associated with the ZFI.

The entity processing the payment abroad must audit the ZFE customs document corresponding to the entry of goods into the country from the free trade zone.

10.3.6. Payments for imports with letters of credit or guaranteed bills issued or granted by local financial institutions.

The entity will have access to the foreign exchange market to cancel letters of credit or guaranteed bills of exchange issued or granted to guarantee import transactions of goods that have the customs registration of the goods, even when the requirements established for the client's access are not met, as long as it has documentation demonstrating that, at the time of opening or issuance by the entity, the conditions applicable according to the date on which the letter of credit or guaranteed bill of exchange was issued or granted and the type of transaction guaranteed by the entity were met.

In the case of letters of credit or guaranteed letters of credit issued or granted as of 13.12.23, the entity must have documentation demonstrating that, at the time of opening or issuance, the guaranteed operation corresponded to an import of goods with a customs entry record as of that date and, unless the operation fell under the situation provided for in point 10.10.2.9., that the guaranteed payment had to be made by the client as of the date resulting from adding the term in calendar days corresponding to the good by point 10.10.1. plus another 15 (fifteen) calendar days to the estimated date of arrival of the goods to the country.

| Version: 7a. | COMMUNICATION "A" 8035 | Validity: 04/06/2024 | Page 8 |
|--------------|------------------------|----------------------|--------|



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

The conditions applicable to letters of credit or guaranteed bills of exchange issued or granted until 12/12/23 were duly received in point 10.3.6 of the Annex to Communication A 7914.

The sales receipt must be issued in the name of the entity itself as a client under the heading "B14. Cancellation of commercial guarantees from financial institutions for imported goods with customs entry registration."

10.3.7. Exchange record of import payments with customs entry record.

The sales exchange ticket will be made for the concepts "B06. Deferred payments for imported goods (except capital goods)", "B14. Cancellation of commercial guarantees from financial entities for imported goods with customs entry registration", "B15. Payments of commercial debts for the import of goods with official credit agencies or a financial entity abroad or that has a guarantee granted by them" or "B22. Deferred payments for imported capital goods", as appropriate, and must identify the number of the officialization of the import clearance or the document by which the customs entry registration was produced.

The aforementioned items will apply to any amount paid that is part of the agreed purchase condition recorded on the invoice associated with the officialization of the import clearance. If the total transfer amount includes other items not included in the agreed purchase condition, separate tickets must be prepared with the usual formalities for each item involved.

When the exchange agreement for the sale of foreign currency for the payment of imports to the same foreign beneficiary involves the payment of two or more official import clearances, a single exchange ticket may be prepared for the total amount of the transfer. This ticket must contain an annex signed by the client, listing the official import clearances and the amount in foreign currency paid for each one.

10.4. Payments for imported goods with pending customs entry registration.

10.4.1. Operations included.

Payments abroad for imported goods that do not have customs registration at the date of access to the foreign exchange market include:

10.4.1.1. Advance payments abroad on the date of delivery of the goods by from the foreign supplier.

10.4.1.2. Payments at sight against presentation of shipping documentation.

10.4.1.3. Payments of foreign trade debts (transactions in which the purchase condition agreed between the exporter and importer was met).

10.4.1.4. Cancellation of commercial guarantees for imported goods granted by local entities.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

In all these cases, payments made will be subject to payment tracking for imports with pending customs entry registration.

The entity through which the payment was processed will be responsible for monitoring the payment and making the corresponding records in SEPAIMPO.

10.4.2. Access requirements for advance payment of imports.

The entity may provide access to the foreign exchange market for payments abroad provided it has previously verified that all of the following requirements are met:

10.4.2.1. Documentation that allows determining the existence of a purchase of goods from abroad, where an advance payment of part or all of the funds is required prior to the delivery date of the goods in the agreed purchase condition. This documentation must allow determining the details of the goods to be imported, the agreed purchase condition, delivery times, and payment terms.

10.4.2.2. The beneficiary of the payment is the foreign supplier.

10.4.2.3. The sale of foreign currency will be processed by debiting the client's accounts with local financial institutions using one of the current payment methods.

10.4.2.4. It has the client's sworn statement that they agree to demonstrate the registration of the customs entry of the goods within the corresponding period according to the type of goods to be imported, or failing that, to proceed within that period to the liquidation in the foreign exchange market of the funds associated with the refund of the payment made.

In the case of advance payments for capital goods, the deadline for proving the customs entry record will be 270 (two hundred seventy) calendar days from the date of access to the foreign exchange market. For this purpose, tariff items classified as BK (Capital Goods) in the MERCOSUR Common Nomenclature (Decree 690/02 and supplementary regulations) must be considered.

For the rest of the goods, the term will be 90 (ninety) calendar days from the date of access to the exchange market.

If a single advance payment includes both capital goods and non-capital goods, the transaction will be governed by the term of the type of asset that represents the largest proportion of the total value paid.

If the nationalization of the assets requires a longer period and the advance payment is made within the framework of the provisions of points 10.10.2.1. to 10.10.2.4. or 10.10.2.13.ii), the entity may consider that the aforementioned period extends until the date that arises from adding 15 (fifteen) calendar days to the estimated date of arrival of the assets considered for the purposes of determining the maturity required for the corresponding financing.

The entity must report the extension granted to the SEPAIMPO.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

If the foreign supplier is a counterparty linked to the importer or longer periods are needed for the official clearance of the import, prior approval from the BCRA will be required beforehand access to the foreign exchange market.

Requests to the BCRA must be channeled through an entity authorized to make this type of payment.

10.4.2.5. It has elements that allow it to guarantee the reasonableness of the amounts to be paid, considering the client's importing activity in recent years and/or the business plans presented by the importer.

Additionally, if the client is not a natural person and was established up to 365 (three hundred sixty-five) calendar days before the date of access to the foreign exchange market, prior approval from the BCRA will be required to process new payments when the amount pending adjustment for advance payments on imports exceeds the equivalent of USD 5 million (five million US dollars), including the amount for which access to the foreign exchange market is requested. If the client is a temporary union, the date of incorporation of the oldest company that comprises it will be taken into account.

For importers included in the previous paragraph, entities must check the "SEPAIMPO Information System" section of the website www3.bcra.gob.ar to see if the outstanding balance for advance payments on imports from the client is within the established limit.

10.4.2.6. The client does not report any delays in regularizing payments with pending customs entry registration made as of 9/2/19.

Payments for imports of goods with a pending customs entry registration, made between 2.9.2019 and 31.10.2019, for transactions included in points 10.4.1.2. to 10.4.1.4., which have not been regularized as provided in point 10.5., are considered to be in arrears as of 2.11.2020.

Entities should check the "SEPAIMPO Information System" section of the website www3.bcra.gob.ar to see if the client has recorded delays in the system for all entities.

This requirement will not apply to:

i) the public sector;

ii) all business organizations, regardless of their form corporate, in which the National State has a majority stake in the capital or in the formation of corporate decisions;

iii) trusts established with contributions from the national public sector; and



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 10. Payments for imports and other purchases of goods abroad. |

iv) legal entities that are responsible for the provision of
critical medications to patients when they make advance payments
for that type of goods to be entered by Particular Request by the
beneficiary of said medical coverage.

10.4.2.7. Prior approval from the BCRA will be required when the client records a conviction or
a pending criminal investigation into foreign exchange transactions prior to 2.9.19,
in both cases, for violations of Article 1, paragraph c) of Law 19359 relating to
payment regimes for the import of goods. Convictions issued up to 5 (five) years
prior to the date of the transaction will be considered.

Entities must consult the "SEPAIMPO Information System" section of the website
www3.bcra.gob.ar to see if the client is in the situation described in the preceding
paragraph.

This requirement will not apply to:

i) the public sector;

ii) all business organizations, regardless of their form
corporate, in which the National State has a majority stake
in the capital or in the formation of corporate decisions; and

iii) trusts established with contributions from the national public sector.

10.4.2.8. Prior approval from the BCRA will be required except when the entity determines that
the payment falls under one of the situations provided for in point 10.10.2 or point
10.6.6.

10.4.2.9. At the time of granting access to the foreign exchange market, the entity must have
the transaction status validated in the online system implemented by the BCRA for
such purposes.

10.4.3. Access requirements for payment of commercial or sight debts against the
presentation of shipping documentation.

The intervening entity may grant access to the foreign exchange market for foreign payments
provided it has previously verified that all of the following requirements are met:

10.4.3.1. Provide a copy of the commercial invoice issued abroad in the name of the individual
or legal entity resident in the country making the purchase abroad, which includes
the name and address of the issuer, the name of the Argentine importer, the quantity
and description of the merchandise, the sales condition, and the invoice value.

10.4.3.2. You have a copy of the Transport Document (Bill of Lading – Waybill – Air Waybill).

10.4.3.3. You have documentation that allows you to establish that partial or total payment for
the goods must be made against presentation of the shipping documentation.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 10. Payments for imports and other purchases of goods abroad. |

10.4.3.4. The beneficiary of the payment is the foreign supplier, the foreign financial institution, or the official credit agency that financed the advance payment to the foreign supplier.

10.4.3.5. The sale of foreign currency is processed by debiting the client's accounts with local financial institutions using one of the current payment methods.

10.4.3.6. It has the client's sworn statement that he/she undertakes to demonstrate the customs entry record of the goods within 90 (ninety) calendar days of the date of access to the foreign exchange market, or failing that, to proceed within that period, to the re-entry of the foreign currency from abroad.

10.4.3.7. Prior approval from the BCRA will be required except when the entity determines that the payment falls under one of the situations provided for in point 10.10.2 or in point 10.6.6.

10.4.3.8. At the time of granting access to the foreign exchange market, the entity must have the transaction status validated in the online system implemented by the BCRA for such purposes.

10.4.4. Cancellation of commercial guarantees for imported goods granted by local financial institutions.

The entity will have access to the foreign exchange market to cancel letters of credit or guaranteed bills of exchange issued or granted to guarantee import transactions for goods that have pending customs registration, even when the requirements established for client access are not met, as long as it is verified that the conditions applicable according to the date on which the letter of credit or guaranteed bill of exchange was issued or granted and the type of transaction guaranteed by the entity were met.

In the case of letters of credit or guaranteed letters of credit issued or granted as of 13.12.23, the entity must have documentation demonstrating that, at the time of opening or issuance, the guaranteed operation corresponded to an import of goods with a customs entry record as of that date and, unless the operation fell under the situation provided for in point 10.10.2.9., that the guaranteed payment had to be made by the client as of the date resulting from adding the term in calendar days corresponding to the good by point 10.10.1. plus another 15 (fifteen) calendar days to the estimated date of arrival of the goods to the country.

The conditions applicable to letters of credit or guaranteed bills of exchange issued or granted until 12.12.23 were duly received in point 10.3.6 of the Annex to Communication "A" 7914.

The sales receipt must be issued in the name of the entity itself as the client for the item "B11. Cancellation of commercial guarantees from financial institutions for imported goods without customs entry registration."



**BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

For payments made, the entity must inform SEPAIMPO within 5 (five) business days, the CUIT of the importer through whom the payment has been made.

To the extent that the entity does not have the record of the officialization of the import clearance within 90 (ninety) calendar days of the date of access to the exchange market, the entity must make the corresponding complaint.

10.4.5. Exchange record of import payments with customs entry record earring.

The sales change ticket will be issued for the concept corresponding to the transaction carried out.

For all access to the foreign exchange market for payments for Argentine goods imports with pending customs entry registration, including guarantee cancellations, the entity will generate a unique key number for identification in tracking payments for imports with pending customs registration.

In the case of refunds of advance payments for imported goods, the foreign payment to which the returned currency corresponds must be identified. To this end, the intervening entity must request a sworn statement from the importer identifying the entity through which the payment was made, with pending customs registration, the date on which it was made, and the identification number duly issued to the importer by the entity.

**10.5. Tracking payments for imports with pending customs entry registration.**

All import payments with pending customs entry registration made after September 2, 2019 will be subject to monitoring from the date of access to the foreign exchange market until the date of regularization.

The status of these payments will be considered regularized for exchange purposes when the entity responsible for monitoring the payment is demonstrated, up to the amount issued, to the existence of:

(i) the customs entry record in your name or in the name of a third party to the extent that the conditions established in these regulations are met; and/or

ii) the settlement in the foreign exchange market of the currencies associated with the return of the payment made; and/or

iii) other forms of regularization provided for in this standard according to the conditions and limits established in each case; and/or

iv) the approval granted by the BCRA to regularize part or all of the operation. The order can only be processed by the entity in charge of the payment tracking and must be duly justified by the same.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 10. Payments for imports and other purchases of goods abroad. |

10.5.1. Requirements for the allocation of import officializations included in the SEPAIMPO.

The entity in charge of monitoring the payment may affect the customs entry record of an import officialization to the regularization of an operation under its charge, as long as it certifies that the requirements stated in point 10.3.2.1 are met. as the entity in charge of monitoring the officialization or has a certification for affectation issued by the entity that has such.
responsibility.

The allocations attributed to a payment must be entered into the SEPAIMPO by the entity in charge of monitoring the payment.

10.5.2. Requirements for the allocation of imports entered by private request or courier not included in the SEPAIMPO or entered from free zones with customs transfer of ownership from the exporter to the importer.

The entity responsible for payment monitoring may affect imports of goods entered by Particular Request or Courier not included in the SEPAIMPO or those entered from free zones with customs transfer of ownership from the exporter to the importer as long as the conditions stipulated for each type of operation in point 10.3 are verified.

The entity must audit the customs documentation, recording the date, identification of the payment pending customs clearance, and the amount allocated to it.

10.5.3. Requirements applicable to other forms of regularization of a payment with pending customs registration.

In the case of a refund of funds from abroad associated with a payment pending customs registration, the entity must have the certification issued by the entity that processed the settlement in the foreign exchange market.

For the mechanisms provided for in points 10.5.4., 10.5.5.1. and 10.5.5.2., the entity must verify compliance with the conditions provided for in each case.

10.5.4. Exceptions to the demonstration of income from abroad.

In cases of outstanding balances, differences due to the application of exchange rates, or non-compliance with delivery by the external supplier, the importer may choose to request the entity in charge of monitoring to consider its obligation to demonstrate official confirmation of the entry of goods and/or the entry of foreign currency from abroad, provided that it has not made use of this alternative for an amount greater than the equivalent of USD 10,000 (ten thousand US dollars) in the calendar year by payment date.

In this regard, the entity must require a sworn statement on the genuine nature of the stated reasons, signed by the importer or his or her legal representative, or an agent with sufficient authority to assume this commitment on behalf of the importer.

| Version: 7a. | COMMUNICATION "A" 7953 | Validity: 01/27/2024 | Page 15 |
| --- | --- | --- | --- |



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

The entity in charge of monitoring must incorporate the corresponding records into SEPAIMPO.

10.5.5. Extensions of deadlines for proof of customs entry record.

Extensions to the deadline for providing proof of customs entry registration for imports will be granted by the entity in charge of monitoring payments made without a customs entry registration, under the conditions established by these regulations or with the prior approval of the BCRA.

These extensions must be recorded by the entity responsible for monitoring the payment in the SEPAIMPO system.

10.5.5.1. Merchandise damaged after delivery of the goods to the agreed purchase condition:

The entity in charge of monitoring may grant up to five successive extensions of 180 (one hundred and eighty) calendar days until the date of the insurance settlement, when the following requirements are met:

i) the total or partial lack of official documentation customs is justified by an accident;

ii) the shipment has insurance to cover the incident of the merchandise; and

iii) the invoice issued by the exporter is available; insurance policy covering the damaged shipment; transport documentation; Report the accident to the insurance company and police authorities or other supporting documentation of the accident.

Once the insurance has been settled, the corresponding documentation will be completed with:

iv) the insurance settlement, stating the date, place and currency of the insurance. pay;

v) if payment was made in foreign currency, documentation by which the currencies were settled in the foreign exchange market. amount received in foreign currency for the collection of insurance must be entered and settled in the foreign exchange market within 20 (twenty) business days following the effective date of receipt; and

vi) if the claim was settled in local currency, a copy of the statement bank statement showing the deposit of the check with which it was cashed the sinister.

In all cases, the entity must require, in addition to the documentation indicated, a sworn statement on the genuine nature of what is declared, signed by the importer or whoever exercises his legal representation or an attorney with sufficient powers to assume this commitment in name of the importer.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

Once the maximum periods have been reached, along with their successive renewals, the entity will record the status of total or partial non-recovery of the funds in the SEPAIMPO, thus terminating its payment tracking. This is independent of the importer's obligation to enter any recovery recorded in foreign currency in connection with said payment through the foreign exchange market within 20 (twenty) business days of the collection date.

10.5.5.2. Operations in debt collection management due to supplier non-compliance.

The entity in charge of monitoring the payment made may record it in SEPAIMPO as "collection management" when any of the following conditions apply:

i) Exchange control in the exporter's country.

The importer can demonstrate his collection management and that the lack of income is due to the fact that, in the country of the foreign supplier, there are Delays due to restrictions on foreign currency transfers. Which will be accredited by means of a copy with consular legalization of the regulations which provides for said exchange control.

ii) Subsequent insolvency of the foreign supplier, not having money-back guarantees.

To the extent that the Argentine importer provides the following: documentation:

a) proof of the publications that make known the beginning of the bankruptcy procedure in accordance with the requirements of current legislation in the country in which it is processed; and

b) proof of the presentation made to obtain the recognition and payment of your debt, certified by the authority intervening in the process, in accordance with the procedure applicable in country where it should have been carried out.

The documentation must be legalized by a consular authority or in accordance with the provisions of the Hague Convention of October 5, 1961, where applicable.

iii) Delinquent debtor.

To the extent that any of the following situations are verified:

a) The importer demonstrates in a reliable manner his collection management through claims made to the party liable for payment by export credit insurance companies or entities constituted as national or foreign recovery agencies contracted by the importer for this purpose. This alternative only It will be valid to the extent that the value owed to the importer for the non-resident does not exceed the equivalent of USD 100,000 (dollars one hundred thousand Americans); and/or

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
|  | Section 10. Payments for imports and other purchases of goods abroad. |

b) The Argentine importer has initiated and maintains actions
judicial proceedings against the foreign supplier or against whomever
appropriate, proving it with a copy of the initiation document
claim certified by the intervening court as to its
start date and filing date. The documentation must be
legalized by consular authority or as provided by the
Hague Convention of 5 October 1961, when it is necessary
applicable.

In all cases, the entity must require, in addition to the documentation indicated,
a sworn statement on the genuine nature of what is declared, signed by the
importer or whoever exercises his legal representation or an attorney with
sufficient powers to assume this commitment in
name of the importer.

If the importer receives an amount in foreign currency, it must be entered and
settled in the exchange market within 20 (twenty) business days following the
effective date of receipt.

In all these cases, the transaction may remain in "collection management"
while the validity of the claim and the conditions explaining the delay in
executing the transfer are demonstrated. For these purposes, the entity will
grant up to five successive extensions of up to 180 (one hundred and eighty)
calendar days.

Once the maximum periods have been reached, along with their successive
renewals, the entity will record the status of total or partial non-recovery of the
funds in the SEPAIMPO, thus terminating its payment tracking. This is
independent of the importer's obligation to enter any foreign currency recovery
recorded in connection with said payment through the foreign exchange market
within 20 (twenty) business days of the collection date.

10.5.5.3. Other causes beyond the importer's control.

In cases of delays in the customs entry registration of the officialization of import, due to causes
beyond the control of the importer that affect the majority of the amount pending regularization of
the operation, the intervening entity may grant an extension of the terms established above, which
may not exceed 545 (five hundred and forty-five) calendar days for advance payments of capital
goods or 365 (three hundred and sixty-five) calendar days for the remaining payments, counting
the indicated terms from the date of access to the exchange market.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
| | Section 10. Payments for imports and other purchases of goods abroad. |

Examples of causes beyond the importer's control include delays in production and/or shipment by the foreign supplier not resulting from non-compliance by the importer, transportation problems, problems obtaining the necessary certifications for the officialization of the import of goods, or customs administrative actions that make it impossible to formalize the import until their resolution. Conversely, delays in formalizing the import due to decisions by the importer based on financial or market issues are not included among the accepted causes.

Documentation supporting the reason for the delay that supports the extension granted by the entity must be filed by the entity and made available to the BCRA.

Once the deadlines granted by the entity in charge of monitoring have expired, the latter may request the BCRA's approval for a further extension if there are still reasons for delay beyond the importer's control.

10.5.6. Complaint for failure to regularly complete a payment with pending customs registration on time.

The entity in charge of monitoring payments with pending customs entry registration must, within 5 (five) business days following the expiration date of the deadlines established in this regulation, report to SEPAIMPO the operations of importers who have not regularized their situation.

10.5.7. Payments made in currencies other than the purchase invoice currency.

For the purposes of determining outstanding amounts in cases of invoices in currencies other than the transfer currencies, the entity responsible for monitoring the payment must consider the exchange rates corresponding to the date of transfer to the beneficiary of the funds.

**10.6. Other provisions.**

10.6.1. Goods imported under lease agreements with option to purchase replacement, purchase and/or return.

Payments abroad for imported goods under lease agreements with replacement, purchase, and/or return options are governed by the exchange regulations governing payment for imported goods.

In the event that the payments to be made under the contract exceed the value of the imported good according to the agreed purchase condition recorded on the invoice issued by the foreign supplier, the entity must verify that each installment is separated into the payment component of commercial capital and commercial interest income, according to the effective interest rate implicit in the financing, relating the schedule and amounts of payments to be made and the value of the good in the invoice.



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 10. Payments for imports and other purchases of goods abroad. |

10.6.2. Legal entities responsible for providing medicines to patients.

As long as the general requirements are met, legal entities responsible for providing medications to patients will have access to the foreign exchange market to make payments abroad for medications imported through a Private Request by the beneficiary of said medical coverage.

Likewise, they will have access to make payments with pending customs entry registration for medications that will be imported by the beneficiary of the coverage.

10.6.3. Local governments for infrastructure works.

Provided the general requirements are met, local governments will have access to payment for imported goods abroad under infrastructure contracts, provided they have official customs entry records issued by entities, departments, and agencies that are part of the Provincial State and/or by companies that, while they may have their own legal status, are wholly owned by the Provincial State.

Likewise, local governments will have access to the foreign exchange market to make payments pending customs registration for goods that will be imported as part of infrastructure projects for any of the purposes mentioned in the preceding paragraph.

10.6.4. Domestic sales prior to customs registration.

In cases where the foreign buyer sells the goods locally to a third party who carries out the customs registration of the entry of the goods, in addition to the general requirements established for access to the foreign exchange market for a deferred payment or the allocation of the officialization to a previous payment, the commercial invoice issued in the country by the natural or legal person who appears as the buyer in the exporter's commercial invoice must be presented, in the name of the natural or legal person who appears as the importer in the customs entry record.

10.6.5. Goods donated to the Ministry of Health of the Nation to strengthen the capacity of medical or health care in the country.

In cases where the foreign buyer has acquired goods related to medical and/or health care for the population and has donated them to the Ministry of
Health of the Nation prior to the registration of customs entry of the goods,
The effects of access to the foreign exchange market for a deferred payment or the impact of officialization on a payment with a pending customs entry record must be verified according to the requirements established in each case by replacing the proof of customs entry of the goods with proof of acceptance of the donation by the Ministry of Health of the Nation.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

10.6.6. Temporary imports of tariff item 12.01.90.00 of the NCM (soybeans excluded for sowing).

Entities to grant access to the exchange market for the payment of temporary imports of tariff item 1201.90.00 of the NCM (soybeans excluded for planting) with customs entry registration as of 12/13/23,
In addition to the remaining applicable regulatory requirements, they must verify that the client for the amount he intends to pay:

10.6.6.1. has settled export collections associated with exports for consumption with temporary import clearance (DIT) with transformation carried out from the temporarily imported goods that are being paid for, and/or

10.6.6.2. Simultaneously settles advance payments or pre-financing of exports from abroad or pre-financing of exports granted by local financial institutions with funding in lines of credit from abroad, which have a maturity date equal to or later than the date on which the export of the goods manufactured from those temporarily imported that are being paid for will take place.

10.6.7. Formation of external assets with specific application to the payment of imports of fuels or energy.

Entities may provide access to the foreign exchange market to all business organizations, regardless of their corporate form, where the National State has a majority stake in the capital or in the formation of corporate decisions, to carry out the formation of external assets with specific application to the payment of fuel or energy imports with customs entry registration as of 13.12.23 when the following conditions are met:

10.6.7.1. The acquired funds are deposited in foreign currency accounts owned by the client and opened in financial institutions abroad,

10.6.7.2. The entity has verified that at the time of market access the client complies with the requirements established by the current exchange regulations for the payment of imports of goods that are intended to be made with the funds,

10.6.7.3. The entity has a sworn statement from the client, signed by its legal representative, in which, on behalf of this client, it undertakes that:

i) the funds will be applied to the payment of fuel imports or energy within 5 (five) business days from the date of access to the exchange market,

ii) will be presented to the entity that gave you access to the documentation that allows you to corroborate the allocation of funds to the destination specific and make the corresponding registration with the BCRA,



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|------------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

iii) funds in foreign currency that are not used for the intended purpose specific planned will be re-entered and settled in the market of changes within 8 (eight) business days after the date of the access.

For the purposes of recording the transactions provided for in point 10.6.7., the intervening entity must prepare a foreign exchange sales ticket under the concept code "A23. Creation of deposits abroad to affect the payment of fuel or energy imports", and at the time of applying the acquired funds, a purchase ticket must be made under the same concept and another sales ticket for the concept corresponding to the cancellation of the debt with abroad.

**10.7. Lines of credit from financial institutions applied to the financing of imports of estate.**

10.7.1. Cancellation by financial institutions.

The financial institution will have access to the exchange market, under the conditions provided for in point 3.15.1., for the cancellation of foreign credit lines applied to the financing of Argentine imports of goods and services contained in the agreed purchase condition, to the extent that it qualifies as commercial debt according to the provisions of point 10.2.4. and the entity has
Documentation demonstrating that, at the time the financing was granted to the importer, the conditions applicable at that time to the type of operation financed by the entity were met.

In the case of financing granted from 13.12.23, the entity must have documentation demonstrating that:

i) the financed operation corresponded to an import of goods with registration of customs entry from 13.12.23

ii) the maturity date of the financing granted was compatible with the terms provided for in point 10.10.1. as provided for in point 10.10.2.1., unless the operation falls within the provisions of the situation envisaged in the point 10.10.2.9.

The conditions applicable to financing granted until 12.12.23 were duly received in point 10.7 of the Annex to Communication "A" 7914.

Cases that do not meet the required conditions will be subject to prior approval by the BCRA.

10.7.2. Exchange record of associated flows.

The use of a line of credit, materialized by the crediting of funds to the financial institution's account with its foreign correspondent, must be reflected as a purchase of foreign currency under the heading "Foreign Credit Lines" in the name of the institution itself as a client.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

When the entity cancels the line of credit with the foreign financial institution,
It is necessary to make a sales ticket for the concept "Foreign credit lines" in the name of the entity itself as a client.

In the case of commercial financing for Argentine imports using foreign credit lines, at the time the intervening entity transfers the foreign currency in payment to the exporter of the goods, simultaneous foreign currency purchase and sale tickets must be recorded in the name of the client receiving the financing:

    i) In the case of purchase, the concept "P12. Other financing" will be used.
       local granted by the entity (excluding export financing and
       credit cards)".

    ii) For the sale, the concepts for the payment of imports that will be used will be
       correspond to the amounts included in the agreed purchase condition or
       corresponding services (freight and import insurance) when they are not part of the
       part of the agreed purchase condition and are financed by the entity.

In cases where payments have pending customs entry registration, the customer must subsequently demonstrate this in accordance with the general regulations on the matter.

When the payment in the name of the client falls under point 10.10.2.1., this circumstance must be recorded when reporting the sales ticket in the name of the client in the Information System for Foreign Exchange Operations.

**10.8. Cancellation of foreign debts arising from the Argentine import of goods that do not qualify as commercial debts.**

The intervening entity may provide access to the foreign exchange market for the settlement of foreign debts arising from the Argentine import of goods that do not qualify as commercial debts, provided that the conditions set forth in points 10.3.2 or 10.3.3, as applicable, are met, in addition to the regulations applicable to the settlement of financial debts.

The certification issued by the entity responsible for monitoring import officialization must state that the payment must be made in accordance with the regulations applicable to the settlement of financial debts.

These payments will be made with a sales ticket in the customer's name for the concept "P13.
Payments of principal on foreign financial debts arising from imported goods."



Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 10. Payments for imports and other purchases of goods abroad. |

**10.9. Other purchases of goods from abroad.**

10.9.1. Payments for supplies, equipment, and spare parts for the construction, repair, maintenance, or replacement of parts of offshore hydrocarbon production and processing facilities.

The intervening entity may provide access to the foreign exchange market for foreign payments for supplies, equipment, and spare parts intended for the construction, repair, maintenance, or replacement of parts of offshore hydrocarbon production and processing facilities.

For this purpose, it must first verify that all established requirements are met, replacing the requirement for customs entry registration with proof that the goods paid for are subject to the customs regime corresponding to their use in the Territorial Sea or the Exclusive Economic Zone.

The intervening entity must audit the customs documentation for the payments made.

10.9.2. Payments for goods intended for sale in duty-free shops under Law 22056.

The intervening entity may provide access to the foreign exchange market for payments abroad for purchases of goods intended for sale in duty-free stores under the provisions of Law 22056.

To this end, it must first verify that all established requirements are met, replacing the customs entry registration requirement with proof that the paid goods have been subjected to the customs regime applicable to their sale in duty-free stores.

The intervening entity must audit the customs documentation for the payments made.

10.9.3. Payments for goods entered into free warehouses authorized in accordance with Resolution No. ANA 2676/79.

The intervening entity may provide access to the foreign exchange market for payment abroad for purchases of goods entered into free trade warehouses authorized in accordance with Resolution No. ANA 2676/79.

For this purpose, it must first verify that all established requirements are met, replacing the requirement for customs entry registration with proof that the paid goods have been subjected to the customs regime corresponding to their entry into free warehouses.

The intervening entity must audit the customs documentation for the payments made.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

10.9.4. Purchases of goods that do not pass through the country and are sold abroad.

The intervening entity may provide access to the foreign exchange market for payments abroad for purchases of goods sold abroad without transiting the country.

For this purpose, you must first verify that all the requirements detailed in point 10.3.2. are met, replacing the requirements in paragraphs i) and iv) of point 10.3.2.1. with the following:

  i) Commercial invoice issued by the buyer to his client abroad where
     state the quantity and description of the merchandise, the condition of sale and value
     of the invoice.

  ii) The entity verified that the quantities and descriptions of the merchandise in the
     sales invoice are consistent with those listed on the invoice
     commercial that supports the purchase for which payment is to be made.

  iii) That the intervening entity is aware that the Argentine buyer has liquidated
     currencies in the exchange market associated with the sale of merchandise for a
     amount not less than the value of the payments made for the obligation abroad,
     including the payment for the course being requested.

Collections and payments associated with this transaction must be processed using the concept "B09. Purchase and sale of goods without transit through the country and sold to third countries."

**10.10. Complementary provisions for imports of goods with entry registration customs from 12/13/23.**

10.10.1. Deadlines for deferred payments for imports of goods with entry registration
     customs from 12/13/23.

Entities may provide access to the foreign exchange market to process deferred payments for imports of goods with customs entry registration as of 12/13/2023 when, in addition to the other applicable regulatory requirements, it is verified that the payment complies with the schedule presented below according to the type of good:

10.10.1.1. Payment for the following goods may be made from your customs entry record:

        (i) petroleum oils or bituminous mineral oils, their preparations and their
            waste (subchapters 2709, 2710 and 2713 of the NCM).

        ii) petroleum gases and other gaseous hydrocarbons (subchapter
            2711 of the NCM).

        iii) non-agglomerated bituminous coal (tariff item 2701.12.00 of
            the NCM), when the import is carried out by a central
            electricity generation.



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 10. Payments for imports and other purchases of goods abroad. |

iv) electrical energy (tariff item 2716.00.00 of the NCM).

v) official imports from 04/15/24 of natural uranium, enriched uranium and its compounds (tariff items 2844.10.00 and 2844.20.00 of the NCM), heavy water (position tariff 2845.10.00) or zirconium and articles thereof when correspond to tariff item 8109.91.00, which are intended for the production of energy or fuels.

10.10.1.2. For the remaining goods, payment may be made starting 30 (thirty) calendar days from the registration of the customs entry of the goods.

10.10.2. Deferred payments for imported goods with customs entry registration as of 13/12/23 before the deadlines specified in point 10.10.1. or payments for imported goods with pending customs entry registration.

Entities may provide access to the foreign exchange market to process deferred payments for imported goods with customs entry registration as of 12/13/2023, before the deadlines specified in section 10.10.1 and/or payments with pending customs entry registration when, in addition to the other applicable requirements, one of the following situations is verified:

10.10.2.1. The client accesses the foreign exchange market with funds originating from a financing of goods imports granted by a local financial institution from a foreign credit line, provided that the following conditions are met at the time of granting:

i) the maturity dates and the amounts of principal payable of the financing granted is compatible with those provided in point 10.10.1.:

a) if the granting of financing is prior to the date upon arrival of the goods in the country, the deadlines provided for in the point 10.10.1. will be computed from the estimated date from the arrival of the goods to the country plus 15 (fifteen) calendar days.

b) if the granting of financing is after arrival at the country of the goods but prior to their entry registration customs, the deadlines provided for in point 10.10.1. are will be computed from the date of granting plus 15 (fifteen) calendar days.

c) if the granting of financing is after the date of registration of customs entry of goods, the deadlines provided for in point 10.10.1. shall be computed from said registration date.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
| | Section 10. Payments for imports and other purchases of goods abroad. |

ii) when the operation falls under sections a) and b) of point
precedent, the entity must additionally have a
sworn statement by the importer in which he undertakes, except
situations of force majeure beyond its control, to specify the
customs entry record of goods within 15
(fifteen) calendar days from his/her arrival in the country or from the date of
granting of financing, as appropriate.

10.10.2.2. The client accesses the foreign exchange market simultaneously with the settlement of funds in
the form of advances or pre-financing of exports from abroad or pre-financing of exports
granted by local financial institutions with funding in lines of credit from abroad, provided
that the conditions stipulated in points 10.10.2.1.i) and 10.10.2.1.ii) above are met.

The entity must also have a sworn statement from the importer stating that prior approval
from the BCRA will be required for the application of foreign currency for export collections
prior to the due date arising from the term conditions stipulated for situations associated
with financing.

10.10.2.3. The client accesses the foreign exchange market simultaneously with the settlement of funds
originating from a financial debt included in point 3.5., provided that the conditions stipulated
in points 10.10.2.1. i) and 10.10.2.1.ii) above are met.

The portion of financial debt used pursuant to the provisions of this point may not be
counted for the purposes of other specific mechanisms that enable access to the foreign
exchange market upon entry and/or settlement of such transactions.

10.10.2.4. This is a payment for imported goods within the framework of the mechanism provided for in
point 7.11.

10.10.2.5. These are payments for capital goods imports that are made simultaneously with the settlement
of funds originating from a financial debt included in point 3.5 or a contribution of foreign
direct investment that falls under point 7.10.2.2.

10.10.2.6. The client agrees to make a principal payment on commercial debts for the import of goods as
provided in section 10.2.4. The client has a "Certification for the access to foreign currency
regimes for the incremental production of oil and/or natural gas (Decree 277/22)" issued
within the framework of the provisions of section 3.17, equivalent to the value paid.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|  | Section 10. Payments for imports and other purchases of goods abroad. |

10.10.2.7. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 12/13/2023 by local or foreign financial institutions; or

10.10.2.8. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 12/13/2023 by international organizations and/or official credit agencies; or

Entities may also consider as a transaction guaranteed by an official credit agency one that is covered by a guarantee issued by an insurer.

private enterprise on behalf of and by order of a national government of another country. In all cases, the intervening entity must have documentation explicitly stating this situation.

10.10.2.9. These are payments for imports of goods processed by a natural or legal person for the provision of a critical medicine, the customs entry registration of which is specified through a Special Request; or

10.10.2.10. Payments for imported goods with customs entry registration pending for up to 20% (twenty percent) of the FOB value of capital goods, according to the Common Nomenclature of MERCOSUR (Decree 690/02 and complementary), processed by natural persons or legal persons that classify as MiPyMe according to the provisions of the rules of "Determination of the condition of micro, small and medium-sized enterprise", to the extent that they are not goods that correspond to the tariff items detailed in point 12.1.

10.10.2.11. This is a payment for imports of goods officially registered as of June 13, 2024, as part of the implementation and execution of an action plan established by the Ministry of Economy's Transportation Secretariat within the framework of the public emergency in railway matters for passenger and freight transportation services within national jurisdiction established in Decree 525/24.

The entity must have documentation issued by the Ministry of Transportation certifying that the goods to be paid for are included in the Action Plan established by that ministry.

10.10.2.12. Payment on demand and/or deferred payment for imported goods that are carried out:

i) by carrying out an exchange and/or arbitration with the funds deposited in a foreign currency account in an entity local financial institution; and/or



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
| | Section 10. Payments for imports and other purchases of goods abroad. |

      ii) simultaneously with the settlement of financing in
         foreign currency granted to the client by financial institutions
         premises that meet the conditions stipulated in the points
         10.10.2.1.i) and 10.10.2.1.ii).

10.10.2.13. Advance payments for capital goods as they are made:

      i) by carrying out an exchange and/or arbitration with the funds
         deposited in a foreign currency account in an entity
         local financial institution; and/or

      ii) simultaneously with the settlement of financing in
         foreign currency granted to the client by financial institutions
         premises that meet the conditions stipulated in the points
         10.10.2.1.i) and 10.10.2.1.ii).

10.10.2.14. This is a deferred payment for imports of capital goods carried out by a Single
         Project Vehicle (SVPU) attached to the
         Large Investment Incentive Regime (RIGI) for commercial financing included
         in points 14.2.1.7., 14.2.1.8. or 14.2.1.9. that can be computed as received
         and settled by the foreign exchange market.

The following may be considered as imports of capital goods: i) those corresponding to
goods whose tariff items are classified as BK in the Common Nomenclature of MERCOSUR
(Decree 690/02 and complementary) and ii) those that include other goods to the extent that
the goods classified as BK represent at least 90% (ninety percent) of the total FOB value of
the operation and the entity has a declaration.

sworn statement from the client stating that the remaining goods are spare parts, accessories
or materials necessary for the operation, construction or installation of the capital goods
being acquired.

**10.11. Complementary provisions for imports of goods with entry registration
        customs until 12/12/23.**

Prior approval from the BCRA will be required for access to the foreign exchange market to make import
payments for goods with customs entry registration until 12/12/23, except when, in addition to the other
applicable requirements, the entity verifies that:

10.11.1. The payment corresponds to the cancellation of debts for operations financed or guaranteed
         prior to 13/12/23 by local or foreign financial institutions; or

10.11.2. The payment corresponds to the cancellation of debts for operations financed or guaranteed
         prior to 12/13/2023 by international organizations and/or official credit agencies; or

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

Entities may also consider a transaction covered by a guarantee issued by a private insurer on behalf of and on behalf of a national government of another country to be guaranteed by an official credit agency. In all cases, the participating entity must have documentation explicitly stating this status.

10.11.3. The client has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17, equivalent to the amount payable; or

10.11.4. Payment is made through an exchange and/or arbitration with funds deposited in a local account and originating from collections of principal and interest in foreign currency from the Bonds for the Reconstruction of a Free Argentina (BOPREAL); or

10.11.5. Payment is made within the framework of the provisions of point 4.7.4. by a client who subscribed to BOPREAL Series 1 for an amount equal to or greater than 50% (fifty percent) of the total outstanding for their debts eligible for points 4.4. and 4.5. prior to 01/31/2024; or

10.11.6. Payment is made within the framework of the provisions of point 4.7.5. by a client who subscribed to BOPREAL Series 1 for an amount equal to or greater than 25% (twenty-five percent) of the total outstanding debts for their eligible debts under points 4.4. and 4.5.
prior to 01/31/24; or

10.11.7. Payment is made on or after 10/02/24 by a natural person or legal entity classified as an MSME according to the regulations for "Determining the Status of Micro, Small and Medium-Sized Enterprises" and all of the following conditions are met :

10.11.7.1. The total amount of your debts for imports of goods and services prior to 12/13/23 pending payment as of 01/24/24 was less than or equal to the equivalent of USD 500,000 (five hundred thousand US dollars).

10.11.7.2. The client has registered all of its import debts of goods and services in the "Commercial Debt Registry for Imports with Foreign Suppliers" established by Joint General Resolution 5466/23 of the AFIP and the Ministry of Commerce and related resolutions.

10.11.7.3. Payments for debts of goods or services made within the framework of the mechanisms provided for in this point and/or in point 13.4.8., in all entities and for all concepts, do not exceed the equivalent of the amount declared in the aforementioned registry.

10.11.7.4. The transaction is declared, if applicable, in the last due submission of the "Survey of external assets and liabilities."



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 10. Payments for imports and other purchases of goods abroad. |

10.11.7.5. The entity has a sworn statement from the client stating that:

    i) all of its debts for imports of goods and services
       prior to 12/13/23 have been declared in the "Debt Registry"
       Commercial for Imports with Foreign Suppliers" and the
       total amount owed as of the closing date of the aforementioned record
       does not exceed the equivalent of USD 500,000 (US dollars)
       five hundred thousand).

    ii) the amounts paid by this mechanism in the set of
       entities and the set of concepts do not exceed the limits
       provided for in point 10.11.7.3.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 11. Import payment tracking system (SEPAIMPO). |

**11.1. Monitoring import officializations.**

This will include all import officializations that occurred from 11/01/19 onwards, as well as any prior imports for which payments are requested through the foreign exchange market from that date onwards.

For each import clearance formalization, the importer must nominate an entity to be responsible for monitoring the formalization. This entity will be responsible for verifying compliance with the conditions stipulated in these regulations that will enable access to the foreign exchange market and/or the allocation of a formalization to the regularization of a payment pending customs registration.

The entity will be originally nominated by the importer to ARCA, and the importer may subsequently modify it provided that, as of the date of the request for change of entity, there are no issued certifications for access to the foreign exchange market that are pending use.

If the importer has not nominated an entity at the time of officialization, they may subsequently select an entity to handle follow-up.

All financial institutions and exchange houses will be eligible for importers, except those that have notified the BCRA that they have opted not to operate in foreign trade, and are obligated to carry out the responsibilities associated with this follow-up.

11.1.1. Responsibilities of the nominated entity.

The entity nominated by the importer to monitor the officialization of the import clearance will be responsible for:

11.1.1.1. Verify that the documentation submitted by the importer is consistent with the customs records, taking into account the applicable customs declaration regulations.

11.1.1.2. Ensure that the amount of payments and other transactions recorded for dispatch does not exceed the invoiced amount according to the agreed purchase conditions.

The entity must report to SEPAIMPO when an amount included in the invoiced value is validated according to the agreed purchase condition and is not recorded in customs records due to the application of customs declaration regulations.

11.1.1.3. In the case of financed transactions, verify that they are classified as a debt for imported goods as provided in point 10.2.4.

11.1.1.4. Issue, at the importer's request, certifications that will enable access to the foreign exchange market for the payment of commercial debts for imports with imputation to import officializations under its monitoring.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 11. Import payment tracking system (SEPAIMPO). |

Prior to issuing each certification, the entity must verify compliance with the requirements established at the date of issuance of the certification.

11.1.1.5. In the case of an import certified by 10/31/19, prior to issuing the first certification after the indicated date, the nominated entity must provide a sworn statement detailing the payments made with imputation for said certification and the outstanding debt balance to date for said certification.

This declaration must be signed by the importer or his or her legal representative, or by an agent with sufficient authority to assume this commitment on behalf of the importer.

11.1.1.6. Issue, at the importer's request, certifications to formalize import clearance under monitoring of import payments with pending customs registration.

The entity must verify, prior to issuing each certification, that the payment corresponds to the official transaction.

11.1.1.7. Issue, at the importer's request, certifications that will enable access to the foreign exchange market for the settlement of foreign debts arising from the Argentine import of goods that do not qualify as commercial debts.

Prior to issuing each certification, the entity must verify compliance with the requirements established at the date of issuance of the certification.

11.1.1.8. Issue, at the importer's request, the certifications that will enable the subscription of Bonds for the Reconstruction of a Free Argentina (BOPREAL) for shipments with customs entry registration until 12/12/23 when the requirements provided in point 4.4 are met.

11.1.1.9. For goods imported into the free zone without a sale of goods from a non-resident to a resident, the entity must disable the ZFI for making payments and report to SEPAIMPO the ZFEs with customs transfer of ownership associated with the ZFI for which the issuance of a certification has been requested. These certifications may only be issued once the ZFI has been disabled.

11.1.1.10. Issue, at the importer's request, detailed certifications so that the entity responsible for monitoring the inflow of foreign currency from exported goods can attribute them to compliance with the shipping permit in accordance with applicable regulations.

11.1.1.11. Issue, at the importer's request, detailed certifications so that the entity responsible for "Monitoring advances and other export financing for goods" can validate the application of foreign currency within the framework of the mechanism provided in point 7.11.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 11. Import payment tracking system (SEPAIMPO). |

11.1.1.12. Report to the BCRA all other circumstances of which they become aware and which modify the importer's obligations abroad for clearance.

11.1.1.13. Record in SEPAIMPO the reduction of the value corresponding to the difference between the customs value of the clearance corresponding to the agreed purchase condition and the value stated on the purchase invoice, when the latter is lower. For conditions met prior to the FOB condition, for the purposes of recording the difference, the FOB value from the official import clearance will be taken.

11.1.1.14. Maintain a record of issued certifications, those cancelled, and other transactions attributed to the office. This record will be considered information available to the BCRA.

11.1.1.15. File all documentation used in the context of dispatch monitoring at the BCRA's disposal.

11.1.2. Information from customs records of official clearance of goods import available to entities.

Basic identification data (registration number, CUIT, and the importer's and nominated entity's legal name) will be available through a specific query for all entities, allowing them to identify the entity responsible for monitoring the officialization of the clearance at that time in order to request the necessary certifications.

The entity listed with the BCRA as the last entity nominated by the importer for follow-up will have access to detailed information on the officialization, allowing it to fulfill its corresponding responsibilities.

11.1.3. Certification for access to the exchange market for payment of imports of goods with customs entry record.

At the importer's request, the entity will issue the certification that enables the importer to access the foreign exchange market to make a payment with the import clearance being tracked by the entity, by any entity operating in foreign trade.

The issuance of a certification by the entity implies that, on the date of its issuance, all the regulatory requirements provided for in point 10.3.2.1 are verified.

The certification issued by the entity to enable access to the foreign exchange market must include at least the following information:

11.1.3.1. Code of the entity issuing the certification.

11.1.3.2. Date of issue of the certification.

11.1.3.3. Importer's CUIT.

11.1.3.4. Full name or business name of the importer.

Machine Translated by Google



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 11. Import payment tracking system (SEPAIMPO). |

11.1.3.5. Official import clearance number.

11.1.3.6. Currency in which the foreign debt is contracted.

11.1.3.7. Amount of the certification in said currency.

11.1.3.8. Next due date.

11.1.3.9. Code of concept of the information regime for exchange operations.

11.1.3.10. Full name or company name of the foreign beneficiary.

11.1.3.11. Country of residence of the foreign beneficiary.

### 11.1.3.12. Foreign financial institution to which the funds will be transferred.

The certifications will be valid for 10 (ten) business days from the date of issue and will be transmitted by the issuing entity to the entity through which the payment is made by a secure means, provided that the importer has submitted the corresponding documentation and the requirements for its issuance are met.

The return of unused certifications will be handled by the entities involved. The entity in charge of monitoring must consider any unreturned certification as used.

11.1.4. Certification for allocation of clearance to payments with customs entry record
earring.

At the importer's request, the entity will issue the certification that enables the entity responsible for monitoring the payment with pending customs entry registration to allocate the payment to the official import process.

The certification issued by the entity must include at least the following information:

11.1.4.1. Code of the entity issuing the certification.

11.1.4.2. Date of issue of the certification.

11.1.4.3. Importer's CUIT.

11.1.4.4. Full name or business name of the importer.

11.1.4.5. Official import clearance number.

11.1.4.6. Date of official import clearance.

11.1.4.7. Name of the foreign supplier.

### 11.1.4.8. Currency in which the FOB value of the destination is expressed.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 11. Import payment tracking system (SEPAIMPO). |

11.1.4.9. Amount for which the importer requests to affect the dispatch in the purchase currency.

11.1.4.10. Code of the entity through which the payment was made.

11.1.4.11. Date of access to the foreign exchange market.

The certifications will be transmitted via a secure medium between the issuing entity and the entity through which the payment was made.

The BCRA will be informed of the use of this certification through the report to SEPAIMPO by the entity responsible for monitoring the payment with pending customs entry registration.

11.1.5. Report to the BCRA of other circumstances that modify the obligations with the importer's exterior.

The entity in charge of monitoring the officialization of the import clearance must report to the SEPAIMPO any circumstance that it takes into account.
knowledge and implies a modification of the importer's obligations abroad.

The circumstances that must be reported include:

11.1.5.1. Items included in the invoiced value according to the agreed purchase condition that are not recorded in the customs records due to the application of customs declaration rules.

11.1.5.2. Payments abroad with freely available funds, which must be reported by the importer to the monitoring entity.

11.1.5.3. Attribution of officialization in whole or in part to the exception of income and settlement of collections of an export destination.

11.1.5.4. Credit note. Forgiveness of the creditor's debt.

11.1.5.5. Debt capitalization / Capital contribution in kind.

11.1.5.6. Others.

11.1.6. Report to the BCRA of the change in the entity in charge of monitoring.

The entity responsible for monitoring the officialization of import clearance must report to the BCRA within the framework of SEPAIMPO when, at the importer's request, it transfers its monitoring to another entity in the market.

In order for the transfer to be completed, the following conditions must be verified:

11.1.6.1. The transferring entity does not record issued but not returned certifications whose validity period has not yet expired.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
| --- | --- |
| | Section 11. Import payment tracking system (SEPAIMPO). |

11.1.6.2. For issued but unreturned certificates, you can confirm that they were used by the entity that provided access to the foreign exchange market and/or that they were used for a pending payment.

11.1.6.3. The transferor entity has received notification from the newly designated entity accepting the designation.

11.1.6.4. The transferor entity has reliably informed the entity recipient of the new designation, all the certifications that it has issued with imputation to the office.

**11.2. Tracking import payments made prior to entry registration customs.**

This includes all import payments with pending customs entry registration processed by the foreign exchange market as of 09/02/19, with the entity that processed it being responsible for follow-up.

The transactions carried out will be incorporated into SEPAIMPO upon their reporting in the Foreign Exchange Operations Information System (RIOC).

The data associated with each payment may be submitted and/or consulted in SEPAIMPO exclusively by the entity that processed the payment.

11.2.1. Responsibilities of the entity in charge of monitoring payments with pending customs entry registration.

As the payment follower, the entity will be responsible for:

11.2.1.1. Verify the importer's compliance with the deadlines established for registering the officialization of import clearances or the re-entry of foreign currency, reporting to the BCRA any non-compliance by the importer, to the extent that the transaction has not been regularized.

11.2.1.2. SEPAIMPO will report to the BCRA the effects of import clearances attributed to payment, based on the certifications issued by the entities in charge of monitoring the officialization of import clearance.

11.2.1.3. Report to SEPAIMPO any extensions granted to the operations under its supervision, indicating the new due date and the reason for the extension.

11.2.1.4. Record foreign currency settlements associated with payment refunds based on certification from the entity through which the funds were transferred. In SEPAIMPO, the information will be derived from data submitted by entities within the framework of the Foreign Exchange Transaction Reporting System.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 11. Import payment tracking system (SEPAIMPO). |

11.2.1.5. Report to SEPAIMPO within 5 (five) business days following the date of access to the foreign exchange market, the CUIT and name of the client through which the foreign exchange market was accessed in cases of cancellation of guarantees granted for the import of goods.

11.2.1.6. Report to SEPAIMPO all other circumstances of which it becomes aware and which modify the amount pending adjustment, such as: uses of regulatory margins and treatments provided for in the regulation for claims cases and in collection management.

11.2.1.7. Maintain a record of all transactions attributed to import payments with pending customs entry registration. This record will be available to the BCRA.

11.2.1.8. File at the disposal of the BCRA all documentation used in the framework for monitoring the payment made.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 12. NCM tariff items with specific treatment in the import regulations for goods. |

12.1. Tariff items referred to in point 10.10.2.10.

| NCM Position | Observations |
|--------------|--------------|
| 8802.11.00 | |
| 8802.12.10 | |
| 8802.12.90 | |
| 8802.20.10 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.20.21 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.20.22 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.20.90 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.10 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.21 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.29 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.31 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.39 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.30.90 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.40.10 | Imports made by companies that provide aircraft navigation services are exempt. |
| 8802.40.90 | Imports made by companies that provide aircraft navigation services are exempt. |

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 13. Payments for services rendered by non-residents. |

## 13.1. General provisions.

Entities may provide access to the foreign exchange market for payments for services rendered by non-residents provided the following conditions are met:

13.1.1. The client has the documentation that supports the existence of the service.

13.1.2. In the case of commercial debts for services, access is granted from the due date, provided that it is verified that the transaction has been declared, where applicable, in the most recent due submission of the "Survey of External Assets and Liabilities."

For the purposes of access to the foreign exchange market, commercial debts for the import of services shall be considered to be debts arising from the acquisition of services from non-residents that are similar to those stated in point 10.2.4 for the import of goods.

Payments for debts arising from the acquisition of services from non-residents that do not qualify as commercial debts shall be governed by the rules applicable to the cancellation of capital services for financial loans.

13.1.3. If the services were or will be provided or accrued on or after 13.12.23, the entity must additionally verify that the payment meets one of the following conditions:

i) is carried out in compliance with the deadlines detailed in point 13.2. according to the type of service; or

ii) is carried out before the deadlines detailed in point 13.2. because the operation falls into one of the situations provided for in point 13.3.

13.1.4. If the payment relates to debts for services rendered and/or accrued by non-residents until 12/12/23, the entity must verify that the transaction falls under one of the situations described in point 13.4.

Clients may subscribe to Bonds for the Reconstruction of a Free Argentina (BOPREAL) for up to the amount of the outstanding debt for these operations, provided that the requirements set forth in section 4.5 are met.

13.1.5. In all cases, the entity must, at the time of granting access to the foreign exchange market, have the transaction status validated in the online system implemented by the BCRA for such purposes.

Cases that do not fall under the aforementioned criteria are subject to prior approval by the BCRA, and requests must be channeled through an entity authorized to make this type of payment.

Machine Translated by Google



**BANCO CENTRAL
OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 13. Payments for services rendered by non-residents. |

**13.2. Payments for services that were or will be provided or accrued from 12/13/23.**

Entities may provide access to the foreign exchange market to process payments for services rendered or to be rendered by non-residents on or after 12/13/2023 when, in addition to the other applicable regulatory requirements, the transaction falls under one of the following situations:

13.2.1. The payment corresponds to an operation that falls under the following codes: concept:

S03. Passenger transport services.
S06. Travel (excluding transactions associated with withdrawals and/or purchases made with resident cards from non-resident providers or from non-residents to Argentine providers).
S23. Audiovisual and related services.
S25. Government services.
S26. Health services provided by travel assistance companies.
S27. Other health services.
S29. Transactions associated with withdrawals and/or purchases with resident cards from non-resident suppliers or from non-residents to Argentine suppliers.

13.2.2. The expenses paid by entities abroad for their regular operations.

13.2.3. The payment corresponds to an operation that falls under the concept "S31. Freight services for export operations of goods" in which freight is part of the sales condition agreed upon with the buyer of the goods and is finalized once the export has been cleared for shipment by Customs.

13.2.4. The payment corresponds to an operation that falls under the concept "S30. Freight services for goods import operations" and is finalized once, from the date of provision of the service, a period equivalent to that during which deferred payment for the transported goods could begin, as provided in point 10.10.1.

13.2.5. The payment corresponds to an operation that falls under the concept "S24. Other personal, cultural, and recreational services" and is finalized after a period of 90 (ninety) calendar days from the date the service was provided or accrued. This period will be reduced to 30 (thirty) calendar days for services provided or accrued from 11/29/24 onwards by a counterparty not related to the resident.

13.2.6. The payment corresponds to a service not included in points 13.2.1. to 13.2.5. provided by a counterparty not linked to the resident and is made after a period of 30 (thirty) calendar days from the date of provision or accrual of the service.

This period will also apply to transactions involving transfers abroad by local agents for their collections in the country of funds corresponding to services provided by non-residents to residents.



| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 13. Payments for services rendered by non-residents. |

13.2.7. The payment corresponds to a service not included in points 13.2.1. to 13.2.5. provided by a counterparty linked to the resident and is made after a period of 180 (one hundred and eighty) calendar days from the date of provision or accrual of the service.

Transactions originating from the provision of services by related counterparties will continue to be covered by this requirement even if there is a change in the creditor or debtor that results in the relationship between the creditor and the resident debtor no longer existing.

**13.3. Payments for services that were or will be provided or accrued from 13/12/23 onwards, prior to the amount provided for in points 13.2.3. to 13.2.7.**

Access will also be admissible for payment of services that were or will be provided or accrued from 13/12/23 onwards, in advance of the deadlines provided in points 13.2.3. to 13.2.7., when, in addition to the remaining regulatory requirements, the following situations apply:

13.3.1.   The client accesses the foreign exchange market with funds originating from foreign currency financing for imports of services granted by a local financial institution to the extent that the maturity dates and the amounts of capital to be paid of the financing granted are compatible with those provided for in point 13.2.

If the financing is granted prior to the date of provision or accrual of the service, the terms provided in point 13.2. will be calculated from the estimated date of provision or accrual plus 15 (fifteen) calendar days.

If the financing is granted after the date the service is rendered or accrued, the periods provided for in section 13.2. will be calculated from the latter date.

13.3.2. The client accesses the foreign exchange market simultaneously with the settlement of funds for advances or pre-financing of foreign exports or pre-financing of exports granted by local financial institutions with funding from foreign credit lines, provided that the provisions of section 13.3.1 regarding maturity dates and the amounts of principal payable on the financing are met.

The entity must also have a sworn statement from the importer stating that prior approval from the BCRA will be required for the application of foreign currency for export collections prior to the due date arising from the term conditions stipulated for situations associated with financing.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 13. Payments for services rendered by non-residents. |

13.3.3. The client accesses the foreign exchange market simultaneously with the settlement of funds originating from a financial debt covered by point 3.5, provided that the provisions of point 13.3.1 regarding maturity dates and the amounts of principal payable on the financing are met.

The portion of the financial debt used pursuant to the provisions of this point may not be counted for the purposes of other specific mechanisms that enable access to the foreign exchange market upon entry and/or settlement of this type of transaction.

13.3.4. This is a payment for imports of services framed within the mechanism provided for in point 7.11.

13.3.5. The customer has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17, equivalent to the amount paid; or

13.3.6. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 12/13/2023 by local or foreign financial entities; or

13.3.7. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 12/13/23 by international organizations and/or official credit agencies.

Entities may also consider a transaction covered by a guarantee issued by a private insurer on behalf of and on behalf of a national government of another country to be guaranteed by an official credit agency. In all cases, the participating entity must have documentation explicitly stating this status.

13.3.8. The payment is made on the closing date of a repurchase and/or redemption transaction for debts covered by points 3.5.3.1. or 3.6.4.4. and corresponds to services provided by non-residents arising from the issuance of the new debt securities and/or the repurchase and/or redemption transaction.

13.3.9. Payment is made to a counterparty not linked to the client and is made through an exchange and/or arbitrage with funds deposited in a foreign currency account at a local financial institution.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 13. Payments for services rendered by non-residents. |

**13.4. Payments for services rendered or accrued by non-residents until 12/12/23.**

Prior approval from the BCRA will be required for access to the foreign exchange market to make payments for services rendered or accrued by non-residents until 12/12/23, except when, in addition to the other applicable requirements, the entity verifies that:

13.4.1 the payment corresponds to services included in points 13.2.1. or 13.2.2.; or

13.4.2. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 13/12/23 by local or foreign financial institutions; or

13.4.3. The payment corresponds to the cancellation of debts for operations financed or guaranteed prior to 12/13/2023 by international organizations and/or official credit agencies; or

Entities may also consider a transaction covered by a guarantee issued by a private insurer on behalf of and on behalf of a national government of another country to be guaranteed by an official credit agency. In all cases, the participating entity must have documentation explicitly stating this status.

13.4.4. The client has a "Certification for the access to foreign currency regimes for the incremental production of oil and/or natural gas (Decree 277/22)" issued within the framework of the provisions of point 3.17, equivalent to the amount payable; or

13.4.5. Payment is made through an exchange and/or arbitration with funds deposited in a local account and originating from collections of principal and interest in foreign currency from the Bonds for the Reconstruction of a Free Argentina (BOPREAL); or

13.4.6. Payment is made within the framework of the provisions of point 4.7.4. by a client who subscribed to BOPREAL Series 1 for an amount equal to or greater than 50% (fifty percent) of the total outstanding for their eligible debts for points 4.4. and 4.5. prior to 01/31/2024; or

13.4.7. Payment is made within the framework of the provisions of point 4.7.5. by a client who subscribed to BOPREAL Series 1 for an amount equal to or greater than 25% (twenty-five percent) of the total outstanding for their debts eligible for points 4.4. and 4.5. prior to 01/31/24; or

13.4.8. Payment is made from 10/02/24 by a natural person or a legal entity that classifies as an SME according to the regulations of "Determination of the status of micro, small and medium-sized enterprise" and all of the following conditions are met:

i) The total amount of its debts for imports of goods and services prior to 12/13/23 pending payment is less than or equal to the equivalent of USD 500,000 (five hundred thousand US dollars).



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 13. Payments for services rendered by non-residents. |

ii) The client has registered all of its debts for imports of
goods and services in the "Registry of Commercial Debt for Imports with
"Foreign Suppliers" established by Joint General Resolution
5466/23 of the AFIP and the Ministry of Commerce and related regulations.

iii) Payments for debts of goods or services carried out within the framework of the
mechanisms provided for in this point and/or in point 10.11.7., in the set of
the entities and for the set of concepts, do not exceed the equivalent of
amount declared in the aforementioned register.

iv) The operation is declared, if applicable, in the last
overdue submission of the "Survey of external assets and liabilities".

v) The entity has a sworn statement from the client stating that:

a) all of its debts for previous imports of goods and services
as of 12/13/23 have been declared in the "Commercial Debt Registry by
Imports with Foreign Suppliers" and the total amount owed to the
closing date of the aforementioned registry does not exceed the equivalent of USD
500,000 (five hundred thousand US dollars).

b) the amounts paid by this mechanism in all entities
and for the set of concepts they do not exceed the limits provided for in the
point iii) above.

### 13.5. Cancellation of letters of credit or guaranteed letters issued or granted by entities financial to guarantee imports of services.

Financial institutions will have access to the foreign exchange market to process their own payments for letters of credit
or guaranteed bills of exchange issued or granted to guarantee service import transactions, provided that they meet the
conditions applicable on the date the letter of credit or guaranteed bill of exchange was issued or granted.

In particular, in the case of letters of credit or guaranteed letters issued or granted as of 12/13/23,
the entity must have documentation demonstrating that, at the time of opening or issuance, the
guaranteed operation corresponded to a service provided or accrued as of 12/13/23 and the
guaranteed payment had to be made by the client as of the date resulting from adding the term
in calendar days corresponding to the service by point 13.2. plus another 15 (fifteen) calendar
days to the estimated date of provision or accrual of the service.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|------|---------------------|
|      | Section 13. Payments for services rendered by non-residents. |

### 13.6. Lines of credit from financial institutions applied to the financing of imports of services.

The financial institution shall have access to the foreign exchange market, under the conditions set forth in point 3.15.1., for the settlement of foreign credit lines applied to the financing of Argentine imports of services, to the extent that the debt qualifies as commercial debt pursuant to the second paragraph of point 13.1.2. and the institution has documentation demonstrating that, at the time the financing was granted to the importer, the conditions applicable at that time to the type of operation financed by the institution were met.

For financing granted from 12/13/23, the entity must have documentation demonstrating that:

(i) the financed operation corresponded to an import of services provided or accrued from 12/13/23.

ii) the maturity date of the financing granted was compatible with the terms provided for in point 13.2:

a) if the granting of financing is prior to the date of provision or accrual of service, the periods provided for in point 13.2. will be computed from the estimated date of provision or accrual of the service plus 15 (fifteen) calendar days.

b) if the granting of financing is after the date of provision or accrual of service, the periods provided for in point 13.2. will be computed since the last mentioned date.

Cases that do not meet the required conditions will be subject to prior approval by the BCRA.



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

This section details the complementary provisions on foreign exchange matters that, to the extent that the general provisions are not more favorable, are applicable to a Single Project Vehicle (VPU) adhering to the Incentive Regime referred to the "Incentive Regime for Large Investments" (RIGI) established in Title VII of Law 27,742 and regulated by Decree 749/24 and concordant provisions.

### 14.1. Benefits related to the entry and/or settlement of collection of exports of goods and services.

For a VPU adhering to the RIGI that has declared before the Enforcement Authority that it planned to make use of the benefits established in Article 198 of Law 27.742 regarding the collection of export taxes on goods and services, the following will apply:

14.1.1. Exports of goods made by a VPU adhering to the RIGI for a project declared as a Long-Term Strategic Export will be exempt from the obligation to enter and/or settle the equivalent value in foreign currency for a percentage of the value received according to the condition of sale that will be
determined based on the date on which the export is completed in relation to the date of implementation of the VPU reported to the BCRA by the Implementing Authority:

i) 0% (zero percent) ii)          shipped within the year period.
20% (twenty percent) iii)          shipped after a period of 1 (one) year.
40% (forty percent) shipped after the period of 2 (two) years.
iv) 100% (one hundred percent) shipped after the period of 3 (three) years.

14.1.2. Exports of goods made by a VPU adhering to the RIGI for a project that was not declared a Long-Term Strategic Export will be exempt from the obligation to enter and/or settle the equivalent value in foreign currency for a percentage of the value received according to the sales condition, which will be determined based on the date on which the export is completed in relation to the VPU start-up date reported to the BCRA by the Implementing Authority:

i) 0% (zero percent) shipped within 2 (two) years.
ii) 20% (twenty percent) shipped after the period of 2 (two) years.
iii) 40% (forty percent) shipped after the period of 3 (three) years.
iv) 100% (one hundred percent) shipped after the period of 4 (four) years.

14.1.3. Charges for the provision of services to a non-resident by a VPU holding a project affiliated with the RIGI will be exempt from the obligation to pay and/or settle the entire foreign currency equivalent, provided that the service has been provided or accrued as of the VPU's implementation date, as reported by the Enforcement Authority to the BCRA.

14.1.4. Advance payments for exports of goods, pre-financing, and post-financing, whether local or foreign, shall be exempt from the obligation of payment and settlement in the same percentage that will be applicable to the export being financed.

Machine Translated by Google



**BANCO CENTRAL**
**DE LA REPÚBLICA ARGENTINA**

| | |
|---|---|
| | EXTERIOR AND CHANGES |
| BCRA | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

If the export of goods is ultimately completed on a date for which it should be exempted by a percentage lower than that considered at the time of settlement of the advance or pre-financing, the exporter must demonstrate the receipt and settlement of the difference generated to obtain certification of compliance with the corresponding permit.

14.1.5. Collections from exports of goods and services, advances, pre-financing, and post-financing of exports not covered by the exceptions set forth in the preceding points shall be subject to the obligation of payment and settlement through the foreign exchange market within the time limits applicable in each case.

**14.2. Benefits related to access to the foreign exchange market for outgoing transactions.**

In addition to the provisions of the general regulations on foreign exchange market expenditures, as long as the remaining requirements applicable to each transaction are met, for those financing or direct investment contributions received by the VPU adhered as of the effective date of Law 27,742, entities may also grant access in the following situations:

14.2.1. Within the framework of the provisions of points 3.3., 3.5., 3.6. and 10.3.2., as applicable, without the need for prior approval from the BCRA if such requirement is in force, entities may give the client access to pay, even before the due date, the interest accrued up to the access date that is unpaid and/or the outstanding capital of:

14.2.1.1. Issues of debt securities registered abroad and other foreign financial indebtedness entered and settled in the foreign exchange market.

14.2.1.2. Issues of debt securities registered in the country, fully subscribed abroad, and entered and settled in the foreign exchange market.

14.2.1.3. Other issues of debt securities registered in the country denominated in foreign currency and entered and/or settled in the foreign exchange market.

14.2.1.4. Publicly offered promissory notes issued under General Resolution 1003/24 of the National Securities Commission (CNV) and related instruments, denominated and subscribed in foreign currency, with principal and interest services payable in foreign currency in the country and settled on the foreign exchange market.

14.2.1.5. Foreign currency financing provided by local financial institutions that were not funded by a line of credit from a foreign financial institution, settled in the foreign exchange market.



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

14.2.1.6. Financial financing in foreign currency granted by local financial institutions funded by a line of credit from a foreign financial institution, settled in the foreign exchange market.

14.2.1.7. Trade financing in foreign currency granted by a local financial institution funded from a line of credit from a foreign financial institution in which the disbursements were applied simultaneously to making payments through the foreign exchange market for imports of capital goods to the foreign supplier or to paying freight for imports of capital goods, according to the provisions applicable in each case.

14.2.1.8. Commercial financing granted by the foreign supplier for the import of capital goods, to the extent that they can be computed as received and settled in the foreign exchange market by meeting the requirements set forth in point 14.5.3.

14.2.1.9. Commercial financing granted by a foreign financial institution and/or foreign credit agency applied to the import of capital goods, to the extent that they can be computed as received and settled in the foreign exchange market by meeting the requirements set forth in section 14.5.3.

14.2.1.10. Foreign financial loans granted by counterparties linked to the client applied directly to the import of capital goods to the extent that they can be computed as entered and settled in the foreign exchange market by meeting the requirements set forth in point 14.5.3.

14.2.1.11. Issues of debt securities denominated in foreign currency to the extent that the funds have been fully subscribed abroad and applied directly to the import of capital goods, to the extent that they can be computed as received and settled in the foreign exchange market by meeting the requirements set forth in point 14.5.3.

In the event that all of the funds obtained from the financing cannot be computed as entered and settled in the foreign exchange market, the entities may also provide access to the adhered VPU, without the need for prior approval from the BCRA if such a requirement is in force, to carry out:

i) interest payments accrued up to the access date that are unpaid and corresponding to the portion of the capital equivalent to the proportion of the funds received by the VPU for the financing that can be computed as entered and settled by the exchange market.

ii) payments for outstanding capital corresponding to the portion of the capital equivalent to the proportion of the funds received by the VPU for the Financing that can be counted as received and settled by the market of changes.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

14.2.2. Within the framework of the provisions of point 3.4, entities may also grant VPU access to the foreign exchange market to pay profits and dividends to their non-resident shareholders, without the need for prior approval from the BCRA if this requirement is in force, when the payment corresponds to amounts outstanding with the non-resident shareholder for:

(i) the proportion of their direct investment contributions in the VPU that was entered and settled by the exchange market, or

ii) for its direct investment contributions in kind implemented through the delivery to the VPU of capital goods that meet the conditions provided for in point 14.5.4.

14.2.3. Within the framework of the provisions of point 3.13., entities may also provide access to a VPU adhering to the RIGI to carry out, without the need to have prior approval from the BCRA or to respect minimum permanence periods if any of these requirements are in force, the repatriation of direct investment contributions from its non-resident shareholders that were destined to finance the project, to the extent that the accumulated amount of the non-resident capital repatriations is less than or equal to the sum of the contributions contemplated in sections i) and ii) of point 14.2.2. above.

14.2.4. Entities may also, within the framework of point 3.13, without prior approval from the BCRA if the requirement is in force, transfer funds received in the country to a non-resident client for the transfer abroad of funds received in the country due to their status as creditor for a foreign debt granted to a VPU, to the extent that:

i) the funds correspond to a collection of the capital and/or interest of the debt from payments made by the VPU or from any modality that has allowed collection in the country from a breach of the VPU; as be paid by another resident - including companies linked to the VPU - in guarantor character.

ii) the entity verifies that the debtor had access to make the payment to your name to comply with the applicable regulatory provisions, and must The identification of the VPU must be recorded on the sales exchange ticket whose indebtedness has allowed access.

In the case of a repatriation of a capital collection, the entity must register the transaction in the online system in the name of the VPU and obtain the corresponding validation regarding compliance with the provisions of point 14.4.1.

iii) access to the exchange market is completed within 10 (ten) days business days following the availability of funds by the non-resident.

Machine Translated by Google



BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | EXTERIOR AND CHANGES |
|---|---|
| | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

### 14.3. Other benefits.

14.3.1. Within the framework of the provisions of point 7.9, VPUs adhering to the RIGI are permitted to apply collections for exports of goods and services subject to the obligation of entry and settlement in the foreign exchange market for:

i) unpaid accrued interest payments up to the application date and/or outstanding capital from the operations stated in points 14.2.1.1. to 14.2.1.11. to the extent that they correspond to the portion of the capital equivalent to the proportion of the funds received by the VPU for the financing that can be computed as entered and settled by the exchange market.

ii) repatriations of direct investment contributions from its shareholders residents who were allocated to finance the project to the extent that the the accumulated amount of the non-resident's capital repatriations is less than or equal to the sum of their direct investment contributions in the VPU that they can be computed as entered and settled by the foreign exchange market.

In all cases, the transaction must be included in the "Monitoring of Advances and Other Export Financing of Goods" section and be assigned the corresponding identification number (APX number).

14.3.2. It is admitted under the terms provided in point 7.9.5. that the funds originated from the collection of exports of goods and services by an adhering VPU, which are subject to the obligation of entry and settlement in the exchange market, be accumulated in accounts abroad and/or in the country destined for ensure the cancellation of the maturities of the debts included in point 3.5.

### 14.4. Supplementary requirement for expenditures for a VPU that plans to use the benefits in the area of collections for exports of goods and services.

To grant access to the foreign exchange market for any expenditure concept to a VPU that has requested registration with the RIGI, indicating to the Enforcement Authority that it plans to use the benefits established in the regime regarding the collection of export taxes on goods and services, in addition to the remaining requirements applicable to the operation, the entities must:

14.4.1. have a sworn statement from the legal representative of the VPU, or an attorney with sufficient authority to assume this commitment on behalf of the VPU, certifying that the total amount of foreign currency entered from abroad and settled in the foreign exchange market for any reason by the adhering VPU is, at the time of each access, equal to or greater than the amount resulting from adding the amount of the transaction to be processed to the total amount of accesses to the VPU's foreign exchange market for disbursements for any reason except for the admitted payments of interest and/or profits and dividends and/or the capital of local financing contemplated in points 14.2.1.3. to 14.2.1.5.

Machine Translated by Google



BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

The settlement in the foreign exchange market of foreign currency financing granted to the VPU by a local financial institution from a foreign credit line must also be computed in favor of the VPU as part of the foreign currency brought in from abroad.

14.4.2. Record the transaction in the online system implemented by the BCRA and obtain the corresponding validation regarding compliance with the provisions of point 14.4.1, considering the income and expenses recorded in the system.

The online system will only consider foreign currency receipts from abroad and applications of export collections to interest payments that have been directly incorporated into the system. The corresponding entry of a receipt will be the responsibility of the entity involved in the transaction.

This additional requirement will not be applicable when access to the VPU exchange market is for the purpose of carrying out any of the following operations:

i) interest payments admitted for the financing contemplated in points 14.2.1.1. to 14.2.1.11.

ii) payments of profits and dividends to non-resident shareholders admitted in point 14.2.2.

iii) capital payments of local financing referred to in points 14.2.1.3. to 14.2.1.5.

14.5. Other provisions.

14.5.1. RIGI exchange benefits cannot be combined with other incentives . existing or future exchange rates .

14.5.2. In the event that the VPU cannot compute all of the funds obtained from the financing included in points 14.2.1.1. to 14.2.1.11. as received and settled in the foreign exchange market, any mechanism provided for in the foreign exchange regulations that takes into account the outstanding value of the debt and/or the value of the next capital or interest installments will only be available to the VPU up to the proportion of the funds received from the financing that can be computed as received and settled in the foreign exchange market.

Likewise, any mechanism provided for in the exchange regulations that takes into consideration the value of foreign direct investment contributions will only be available to the participating VPU up to the value arising from the sum of the contributions contemplated in sections i) and ii) of point 14.2.2.



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

14.5.3. The financing described in points 14.2.1.8 to 14.2.1.11 may be recorded as received and settled in the foreign exchange market by a VPU affiliated with the RIGI when a local financial institution selected by the VPU has verified compliance with all of the following conditions:

    i) There is documentation that proves that this is a financing granted directly by the foreign supplier of the capital goods or granted by an authorized third party whose disbursements in foreign currency were applied, net of expenses, directly to advance payments, on demand and/or deferred to the supplier from outside the capital good and/or direct payments to the supplier of freight services for imports of capital goods not included in the agreed purchase condition.

    ii) The VPU has demonstrated the customs entry record of the goods for a value equal to or greater than the total amount of financing that will be computed as entered and settled in the foreign exchange market.

    For the purposes of the value of the goods, any item that is part of the agreed purchase condition recorded in the invoice issued by the foreign supplier may be taken into account.

    If there are funds designated for the payment of freight charges for imports of goods not included in the purchase condition and the importer has demonstrated the customs entry record of the goods for which freight charges were paid, the value of the freight charges recorded in the transport documentation associated with the customs entry record of the goods may also be computed.

    The transaction may include goods that do not qualify as capital goods, provided that those that do represent at least 90% (ninety percent) of the total FOB value paid and the entity has a sworn statement from the client stating that the remaining goods are spare parts, accessories or materials necessary for the operation, construction or installation of the capital goods being acquired.

    The entity must have the corresponding certification from the entity responsible for monitoring payment for imported goods (SEPAIMPO).

    iii) The financial institution has registered the financing with the BCRA through the information regime of exchange operations (RIOC), once verified the customs entry record of the goods, by preparing of two tickets without movement of funds with the following characteristics:

    a) Tickets must be registered, regardless of the moment in which the client requests registration with the financial institution, in the date on which the customs entry of the goods was registered or the date of application of the disbursement in foreign currency of the financing, if this the latter was later than the previous one.



Machine Translated by Google

**BANCO CENTRAL OF THE ARGENTINE REPUBLIC**

| | EXTERIOR AND CHANGES |
|---|---|
| BCRA | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

b) The purchase ticket will be prepared by a concept code that identify that it is a financing included in this mechanism, and must record the identification of the creditor.

If the financing was provided by the supplier itself, the ticket will be recorded for the outstanding amount as of the date the goods are registered for customs entry.

If the financing was granted by other foreign creditors authorized on the ticket as of the customs entry registration date, the sum of the creditor's foreign currency disbursements applied up to that date, net of expenses, will be recorded directly to advance, sight, and/or deferred payments to the foreign supplier of the capital good or to direct payments to the freight service provider for imports of capital goods not included in the agreed purchase condition. If the application of the foreign currency disbursement occurs after the customs entry registration date, a specific ticket will be issued on the date the supplier received the payment.

If the VPU considers applying collections from exports of goods to the repayment of the principal or interest of the financing, the entity must assign the corresponding identification number (APX number) for "Monitoring of advances and other export financing of goods," which will be the responsibility of the entity itself.

c) The sales ticket will be prepared for the amount corresponding to the concept code for deferred payments for imports of goods capital or payment of freight for imports of goods, as appropriate corresponding, leaving a record that the payment is made hereby mechanism.

14.5.7. Direct investment contributions in kind implemented through the delivery of capital goods to the VPU may be computed as received and settled in the foreign exchange market to the extent that:

i) The VPU has demonstrated the customs entry record of the capital good by a value consistent with the amount of the contribution that will be computed as entered and settled in the foreign exchange market.

The transaction may include goods that do not qualify as capital goods, provided that those that do represent at least 90% (ninety percent) of the total FOB value paid and the entity has a sworn statement from the client stating that the remaining goods are spare parts, accessories or materials necessary for the operation, construction or installation of the capital goods being acquired.

The entity must have the corresponding certification from the entity responsible for monitoring payment for imported goods (SEPAIMPO).

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 14. Complementary provisions associated with the Large Investment Incentive Regime (RIGI). |

ii) The VPU must present the documentation that supports the final capitalization of the contribution. If you do not have it, you must present proof of the start of the procedure for registration before the Public Registry of Commerce of the decision of definitive capitalization of the capital contributions computed in accordance with the corresponding legal requirements and undertake to submit the documentation of the final capitalization of the contribution within 365 days (three hundred and sixty-five) calendar days from the start of the procedure.

iii) A financial institution has registered the capital contribution in the regime computerized exchange operations (RIOC) by preparing two non-transferable exchange tickets with the following characteristics:

a) Tickets must be registered on the date the incident occurred. customs entry record of the goods, regardless of which the moment in which the client requests registration with the entity financial.

b) The purchase ticket will be made with a concept code that identify that it is a contribution included in this mechanism.

If the VPU considers applying export charges for goods to repatriate the contribution, the entity must assign the corresponding identification number (APX number) for "Tracking Advances and Other Financing for Export of Goods," which will be the entity's responsibility.

c) The sales ticket will be prepared with the payment concept code deferred imports of capital goods, leaving a record that the payment is framed within the present mechanism.

### 14.6. Exchange rate stability applicable to the VPU.

The regulations governing the exchange rate stability contemplated in Articles 201 and 205 of Law 27,742 shall be applicable to the VPU, in accordance with the provisions of those articles, on the date of adherence to the RIGI as established by the certificates issued by the Implementing Authority.

Machine Translated by Google



**BANCO CENTRAL**
**OF THE ARGENTINE REPUBLIC**

| BCRA | EXTERIOR AND CHANGES |
|------|----------------------|
|      | Section 15. Legal provisions determining the general structure of the foreign exchange market |

The relevant part of the legal provisions that determine the general structure of the foreign exchange market is transcribed below:

### 15.1. Articles 1 and 2 of Decree 260/02.

"ARTICLE 1.- *(Article replaced by art. 132 of Law No. 27444 BO 06/18/18)*
A free exchange market is hereby established, through which exchange transactions carried out by financial institutions and other persons authorized by the Central Bank of the Argentine Republic to engage permanently or regularly in the purchase and sale of foreign coins and banknotes, gold coins or bullion for safe delivery, and traveler's checks, drafts, transfers, or similar transactions in foreign currency will be processed.

ARTICLE 2.- Foreign currency exchange operations will be carried out at the freely agreed exchange rate and must be subject to the requirements and regulations established by the CENTRAL BANK OF THE ARGENTINE REPUBLIC."

### 15.2. Articles 1, 2 and 3 of Decree 609/19.

"ARTICLE 1.- *(Article replaced by art. 1 of Decree No. 91/19 BO 12/28/19)*
It is established that the equivalent value of the export of goods and services must be entered into the country in foreign currency and/or negotiated in the exchange market under the conditions and terms established by the Central Bank of the Argentine Republic.

ARTICLE 2.- The CENTRAL BANK OF THE ARGENTINE REPUBLIC, in accordance with the provisions of its Organic Charter, shall establish the circumstances in which access to the foreign exchange market for the purchase of foreign currency and coined precious metals and transfers abroad shall require prior authorization, based on objective guidelines in accordance with the conditions in force in the foreign exchange market and distinguishing between the situation of natural persons and that of legal persons.

ARTICLE 3.- The CENTRAL BANK OF THE ARGENTINE REPUBLIC is hereby empowered to establish regulations to prevent practices and operations aimed at circumventing, through public securities or other instruments, the provisions of this measure."

### 15.3. Article 1 of Decree 28/23.

"ARTICLE 1.- It is established that the counter value of the export of services provided included in section c) of paragraph 2 of article 10 of Law No. 22,415 (Customs Code) and its amendments and the export of merchandise included in the Common Nomenclature of MERCOSUR (NCM), including the cases of pre-financing and/or post-financing of exports from abroad or an advance settlement, must be entered into the country in foreign currency and/or negotiated, EIGHTY PERCENT (80%) through the Free Exchange Market (MLC), the exporter must, for the remaining TWENTY PERCENT (20%), carry out purchase and sale operations with negotiable securities acquired with settlement in foreign currency and sold with settlement in local currency."

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| BCRA | ORIGIN OF THE PROVISIONS CONTAINED IN THE RULES ON "EXTERIOR AND CHANGES" |
|------|-------|

| ORDERED TEXT | | | STANDARD OF ORIGIN | | | OBSERVATIONS |
|---|---|---|---|---|---|---|
| Section Point | Paragraph | Com. | | Chap./ Annex I | Paragraph Point | |
| 1. | 1.1. | | A 6244 | | 1.2. | According to Com. A 6436 and 6844. |
| | 1.2. | | A 6244 | . | 1.1. | According to Com. A 6770 and 6844. |
| | 1.3. | | A 6244 | . | 1.3. | |
| | 1.4. | | A 6770 | | 18. | |
| | 1.5. | | A 6244 | . | 1.6. | |
| | 1.6. | | A 6244 | | 1.7. | |
| | 1.7. | | A 6244 | | 1.8. | |
| | 1.8. | | A 6770 | | 21. | |
| | 1.9. | | A 6244 | . | 2.2. | According to Com. A 6401. |
| 2. | 2.1. | | A 6770 | | 1. to 3. | |
| | 2.2. | | A 6770 | | 4. | Includes normative interpretation. According to Com. A 7123, 7138, 7196, 7272, 7308, 7518, 7553, 7630, 7607, 7664, 7762, 7766, 7834, 7867, 7953, 8074, 8099, 8116, 8137, 8153 and 8191. |
| | 23. | | A 6780 | | 1.7. | Includes normative interpretation according to Com. A 7272, 7873, 7894 and 8137. |
| | 2.4. | | A 6770 | | 8. | Includes normative interpretation. According to Com. A 6776, 7953, 8055 and 8191. |
| | 2.5. | | A 6838 | | 1. | According to Com. A 7953, 8031, 8055, 8160 and 8191. |
| | 2.6. | | A 7664 | | 1., 2. and 19. | According to Com. A 7766. |
| | 2.7. | | A 6814 | | 4 | According to Com. A 6838, 7953 and 8191. Includes normative interpretation. |
| | 2.8. | | A 6244 | . | 2.5. | According to Com. A 6770, 6776 and 7272. According to normative interpretation. |
| | 2.9. | | A 6244 | . | 2.9. | |
| 3. | 3.1. | | A 6770 | | 12., 13. and 19. | |
| | 3.2. | | A 6770 | | 12. and 14. | According to Com. A 7953. |
| | 3.3. | | A 6770 | | 12 and 19. | According to Com. A 7001, 7042, 7746, 7770, 7798, 7915, 7916, 7935, 8059, 8099, 8161 and 8191. Includes regulatory interpretation. |
| | 3.4. | | A 6770 | | 10. | According to Com. A 6869, 7001, 7042, 7168, 7272, 7301, 7416, 7626, 7664, 7915, 7916, 7999 and 8099. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR AND CHANGES | | | | | | |
|---|---|---|---|---|---|---|
| ORDERED TEXT | | | STANDARD OF ORIGIN | | | |
| Section | Point | Paragraph | Com. | Chap./ Exhibit | Paragraph | Point | OBSERVATIONS |
| 3. | 3.5. | | A 6770 | | 8., 11. And 19. | | Includes normative interpretation. According to Com. A 6780, 6792, 6814, 7001, 7030, 7042, 7052, 7079, 7094, 7106, 7123, 7133, 7151, 7168, 7193, 7196, 7218, 7230, 7239, 7272, 7301, 7313, 7416, 7422, 7466, 7490, 7621, 7626, 7664, 7746, 7770, 7799, 7845, 7898, 7904, 7915, 7916, 7917, 7935, 7953, 7994, 8055, 8059, 8099, 8112, 8129, 8161 and 8191. |
| | 3.6. | | A 6770 | | 9. | | Includes normative interpretation. According to Com. A 6776, 6792, 6838, 7003, 7106, 7133, 7138, 7196, 7230, 7272, 7308, 7416, 7422, 7466, 7532, 7621, 7845, 7915, 7916, 7953, 8031, 8055, 8099, 8112, 8160 and 8191. |
| | 3.7. | | A 6780 | | 1.6. | | According to Com. A 6792, 7915 and 7916. |
| | 3.8. | | A 6770 | | 6. | | According to Com. A 6780, 6804, 6814, 6815, 6883, 6948, 6993, 7001, 7006, 7082, 7106, 7126, 7272, 7342, 7398, 7401, 7556, 7606, 7609, 7610, 7735, 7746, 7810, 7838, 7840, 7915, 7916, 8108 and C 93169. |
| | 3.9. | | A 6787 | | 1. | | According to Com. A 6815 and 7895. |
| | 3.10. | | A 6770 | | 5. | | According to Com. A 6780, 6814, 7556, 7915, 7916 and C 93169. |
| | 3.11. | | A 6796 | | 1. and 2. | | According to Com. A 6814, 6825, 7196, 7272, 7798, 7904, 7915, 7916, 7917, 8055, 8129 and 8191. |
| | 3.12. | | A 6770 | . | 5. and 6. | | According to Com. A 6780, 6814, 7272, 7915 and 7916. |
| | 3.13. | | A 6770 | | 7. | | According to Com. A 6776, 6815, 6855, 6883, 6915, 7052, 7123, 7168, 7272, 7528, 7551, 7626, 7664, 7830, 7915, 7916, 7999, 8006, 8099, 8108 and 8191. Includes regulatory interpretation. |
| | 3.14. | | A 6244 | . | 2.5. | | According to Com. A 6770, 6776, 6780, 6782, 6799, 6948, 7272, 7401, 7622, 7664, 7746, 7898, 7904, 7915, 7916, 7925, 7911, 7999, 8006, 8133 and 8191. Includes regulatory interpretation. |
| | 3.15. | | A 6908 | . | 1. | | According to Com. A 7003, 7201, 7272, 7374, 7553, 7915, 7916, 7917 and 7953. |

| EXTERIOR AND CHANGES | | | | | | |
|---|---|---|---|---|---|---|
| ORDERED TEXT | | | STANDARD OF ORIGIN | | | |
| Section | Point | Paragraph | Com. | Chap./ Exhibit | Paragraph | Point | OBSERVATIONS |
| | 3.16. | | A 6815 | | 7. and 8. | According to Com. A 7001, 7021, 7030, 7042, 7094, 7138, 7193, 7200, 7272, 7273, 7293, 7308, 7327, 7375, 7385, 7401, 7422, 7490, 7552, 7556, 7586, 7746, 7766, 7772, 7833, 7838, 7845, 7852, 7911, 7925, 7935, 7953, 7999, 8006, 8085, 8099, 8108, 8112, 8137, 8191, B 12082 and C 91566 and interpretation 96983.<br><br>Includes regulations. |
| 3. | 3.17. | | A 7626 | | 1. to 5. | According to Com. A 7803, 7898, 7953, 8055 and 8191. |
| | 3.18. | | A 7301 | | 1. | According to Com. A 7416, 7466, 7532, 7553, 7622, 7626, 7746, 7664, 7917 and 7953. |
| | 4.1. | | A 6664 | | 2.10. | According to Com. A 6815, 6823, 6948, 7001, 7106, 7272, 7766 and 8035.<br>Includes normative interpretation. |
| | 4.2. | | A 6244 | . | 23. | According to Com. A 6770, 6788, 7308 and 7834. |
| 4. | 4.3. | | A 6799 | | 1. | According to Com. A 6993, 7001, 7006, 7082, 7106, 7126, 7142, 7272, 7327, 7340, 7342, 7385, 7398, 7422, 7586, 7606, 7609, 7610, 7735, 7810, 7840, 7940, 7952. 7968, 7999, 8035, 8042, 8073, 8191 and B 11892. Includes normative interpretation. |
| | 4.4. | | A 7925 | | 1. | Includes normative interpretation.<br>According to Com. A 8191. |
| | 4.5. | | A 7925 | | 2. | Includes normative interpretation.<br>According to Com. A 8191. |
| | 4.6. | | A 7999 | | 1. and 2. | Includes normative interpretation.<br>According to Com. A 8191. |
| | 4.7. | | A 7925 | | 3. to 5. | Includes normative interpretation.<br>According to Com. A 7935, 7940, 7941, 7952, 7999, 8035, 8055, 8191, C 96983 and 97065. |
| | 5.1. | | A 6244 | . | 2.1. | According to Com. A 6363 and 6436. |
| | 5.2. | | A 6244 | . | 2.4. | According to Com. "A" 6378 and 6419 and B 9791. |
| | 5.3. | | A 6770 | | 18. | |
| 5. | 5.4. | | A 6244 | . | 3.1. | According to Com. A 6378 and 7272. Includes normative interpretation. |
| | 5.5. | | A 6244 | | 3.2. | According to Com. A 7762. |
| | 5.6. | | A 6244 | . | 2.7. | According to Com. A 6844. |
| | 5.7. | | A 6244 | . | 3.3. | |
| | 5.8. | | A 6244 | . | 3.4. | According to Com. A 6363 and 6844. |

Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR AND CHANGES | | | | | | |
|---|---|---|---|---|---|---|
| ORDERED TEXT | | | STANDARD OF ORIGIN | | | OBSERVATIONS |
| Section | Point Paragraph Com. | | | Chap./ Exhibit | Paragraph Point | |
| | 5.9. | | A 6244 | . | 1.4 | According to Com. A 6770, 6780, 7551, 8006 and 8178. |
| | 5.10. | | A 6244 | . | 3.5. | According to Com. A 6844 and 7953. |
| | 5.11. | | A 6244 | . | 3.6. | According to Com. A 6443, 6815 and 7828. |
| | 5.12. | | A 6244 | . | 3.7. | According to Com. A 6436. |
| 5. | 5.13. | | A 6244 | . | 3.8. | According to Com. A 6363 and 7272. Includes normative interpretation. |
| | 5.14. | | A 6776 | | 2. | Includes normative interpretation. According to Com. A 8031, 8160 and 8191. |
| | 5.15. | | A 6244 | | 3.9. | |
| | 6.1. | | A 6244 | . | 4.1. | |
| | 6.2. | | A 6244 | | 4.2. | |
| | 6.3. | | A 6244 | | 4.3. | |
| | 6.4. | | A 6244 | . | 4.4. | |
| | 6.5. | | A 6244 | . | 4.5. | |
| 6. | 6.6. | | A 6776 | | 1.7. | Includes interpretive clarification. |
| | 6.7. | | A 6244 | . | 4.7. | Includes interpretive clarification. According to Com. A 6312. |
| | 6.8. | | A 6844 | | 6.8. | |
| | 6.9. | | A 6844 | | 6.9. | |
| | 6.10. | | A 6844 | | 6.10. | |
| | 6.11. | | A 6844 | | 6.11. | |
| | 6.12. | | A 6844 | | 6.12. | |
| | 7.1. | | A 6770 | | 1. to 3. | According to Com. A 6776, 6780, 6788, 6805, 6882, 7374, 7532, 7570, 7571, 7649, 7740, 7826, 7833, 7853, 7867, 7898, 7935, 7953. 8035, 8099 and 8137. |
| | 7.2. | | A 6788 | . | 1.2. | According to Com. A 7308, 7664, 7834 and 7953. |
| | 7.3. | | A 6788 | . | 1.3. | According to Com. A 7123, 7138, 7196, 7259, 7272, 7770, 7853, 7867 and 7953. |
| 7. | 7.4. | | A 6788 | . | 1.4. | According to Com. A 7217. |
| | 7.5. | | A 6788 | . | 1.5. | According to Com. A 7196, 7229, 7272, 7374, 7664, 7770, 7853, 7867 and 7953. Includes normative interpretation. |
| | 7.6. | | A 6788 | . | 1.6. | According to Com. A 6844 and 8137. |
| | 7.7. | | A 6788 | . | 1.7. | According to Com. A 7003 and 7272. Includes normative interpretation. |
| | 7.8. | | A 6788 | . | 1.8. | According to Com. A 6805, 7374, 7664 and 8191. Includes normative interpretation. |

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| EXTERIOR AND CHANGES | | | | | | | |
|---|---|---|---|---|---|---|---|
| ORDERED TEXT | | | STANDARD OF ORIGIN | | | | OBSERVATIONS |
| Section | Point | Paragraph | Com. | | Chap./ Exhibit | Paragraph | Point | |
| | | | | | | | |
| 7. | 7.9. | | A 7123 | | | 1. | | According to Com. A 7138, 7196, 7272, 7308, 7416, 7626, 7994, 8099 and 8191.   Includes normative interpretation. |
| | 7.10. | | A 7259 | | | 1. to 3. | | According to Com. A 7272, 7626, 7799 and 8191. |
| | 7.11. | | A 7770 | | | 1. to 3. | | According to Com. A 7845, 7852, 7898, 7917 and 8191. |
| 8. | 8.1. | | A 6788 | . | 2.1. | | According to Com. A 8191. |
| | 8.2. | | A 6788 | . | 2.2. | | |
| | 8.3. | | A 6788 | . | 2.3. | | According to Com. A 6844 and 8191. |
| | 8.4. | | A 6788 | . | 2.4. | | According to Com. A 7664 and 8191. |
| | 8.5. | | A 6788 | . | 2.5. | | According to Com. A 7217, 7272, 7313, 7507, 7664, 7780, 7833, 7853, 7867, 7917, 7953, 8099, 8155 and 8191.   Includes normative interpretation. |
| | 8.6. | | A 6788 | . | 2.6. | | |
| 9. | 9.1. | | A 6788 | . | 3.1. | | According to Com. A 7123, 7138, 7259, 7272 and 7770. |
| | 9.2. | | A 6788 | . | 3.2. | | According to Com. A 7272 and 7770. |
| | 9.3. | | A 6788 | . | 3.3. | | According to Com. A 7123, 7138, 7272, 7770, 7853, 7867 and 7953. |
| | 9.4. | | A 6788 | . | 3.4. | | |
| | 9.5. | | A 6788 | . | 3.5. | | |
| | 9.6. | | A 6788 | . | 3.6. | | |
| | 9.7. | | A 6788 | . | 3.7. | | According to Com. A 7308 and 7834. |
| | 9.8. | | A 6788 | . | 3.8. | | |
| 10. | 10.1. | | A 6818 | | 1. | | |
| | 10.2. | | A 6818 | | 2. | | According to Com. A 6844 and 7562. |
| | 10.3. | | A 6770 | | 12., 13. and 19. | | According to Com. A 6776, 6780, 6818, 7001, 7030, 7042, 7052, 7079, 7094, 7138, 7151, 7193, 7201, 7239, 7272, 7313, 7416, 7433, 7466, 7469, 7471, 7472, 7488, 7490, 7516, 7547, 7622, 7638, 7866, 7915, 7916, 7917, 7953, 8035, 8099, 8137 and 8191. Includes regulatory interpretation. |
| | 10.4. | | A 6770 | | 19. | | According to Com. A 6815, 6818, 6825, 6844, 6903, 7030, 7052, 7079, 7094, 7138, 7151, 7193, 7201, 7239, 7272, 7313, 7416, 7466, 7469, 7471, 7472, 7488, 7490, 7547, 7622, 7638 7866, 7915, 7916, 7917, 7953, 8035, 8133 and   8191.   Includes normative interpretation. |

Machine Translated by Google

BANCO CENTRAL
DE LA REPÚBLICA ARGENTINA

| ORDERED TEXT | | | | STANDARD OF ORIGIN | | | | OBSERVATIONS |
|---|---|---|---|---|---|---|---|---|
| Section | Point | Paragraph | Com. | | Chap./Exhibit | Paragraph | Point | |
| 10. | 10.5. | | | A 6818 | . | 5. | | According to Com. A 6915, 7253 and 8137. Includes normative interpretation. |
| | 10.6. | | | A 6818 | . | 6. | | According to Com. A 7293, 7763, 7798 and 7917. |
| | 10.7. | | | A 6818 | . | 7. | | According to Com. A 6908, 7201, 7466, 7469, 7471, 7472, 7488, 7490, 7507, 7553, 7622, 7915, 7916, 7917 and 7953. |
| | 10.8. | | | A 6818 | . | 8. | | According to Com. A 7490. |
| | 10.9. | | | A 6818 | . | 9. | | According to Com. A 7313. Includes normative interpretation. |
| | 10.10. | | | A 7917 | | 1. and 3. | | According to Com. A 7945, 7953, 7980, 7990, 7998, 8035, 8054, 8074, 8094, 8099, 8108, 8118, 8133 and 8191. |
| | 10.11. | | | A 7917 | | 1.5. | | According to Com. A 7925, 7935, 7941, 7952, 7953, 8035 and 8191. Includes regulatory interpretation. |
| 11. | 11.1. | | | A 6818 | . | 10.1. | | According to Com. A 7925, 8035 and 8191. Includes interpretation regulations. |
| | 11.2. | | | A 6818 | | 10.2. | | |
| 12. | 12.1. | | | A 7201 | | 2. | | According to Com. A 7433, 7490, 7532 and 7622, 7917, 7953, 8118, 8191 and C 97215. |
| 13. | 13.1. | | | A 6770 | | 12th and 14th | | According to Com. A 6776, 6780, 6829, 6972, 7001, 7042, 7272, 7301, 7308, 7348, 7416, 7433, 7490, 7516, 7532, 7542, 7547, 7553, 7594, 7606, 7622, 7626, 7664, 7746, 7762, 7771, 7815, 7864, 7866, 7893, 7903, 7915, 7916, 7917, 7925, 7935, 7941, 7945, 7952, 7953, 8035 and C 96844. Includes normative interpretation. |
| | 13.2. | | | A 7917 | | 2.2. | | According to Com. A 7953, 7998, 8035, 8118, 8122, 8133, 8137, 8191 and C 96844. Includes normative interpretation. |
| | 13.3. | | | A 7917 | | 2.3. and 4. | | According to Com. A 7945, 7953, 8035, 8112, 8133, 8191 and C 96844. Includes normative interpretation. |
| | 13.4. | | | A 7917 | | 2.4. | | According to Com. A 7925, 7935, 7941, 7952, 7953, 8035, 8191 and C 97065. Includes normative interpretation. |
| | 13.5. | | | A 6770 | | 12. and | | According to Com. A 7917. |
| | 13.6. | | | A" 6770 | | 14. 12. and 14. | | According to Com. A 7917. |

BANCO CENTRAL
OF THE ARGENTINE REPUBLIC

BANCO CENTRAL
DE LA REPUBLICA ARGENTINA

| ORDERED TEXT | | | | STANDARD OF ORIGIN | | | | OBSERVATIONS |
|---|---|---|---|---|---|---|---|---|
| Section | Point | Paragraph | Com. | | Chap./Exhibit | Paragraph | Point | |
| | 14. | 14.1. | | A 8099 | | 1. | | |
| | | 14.2. | | A 8099 | | 3. | | According to Com. A 8191. |
| | | 14.3. | | A 8099 | | 5. and | | According to Com. A 8191. |
| | | 14.4. | | A 8099 | | 6. | | According to Com. A 8191. |
| | | 14.5. | | A 8099 | | 2. 4., 7., 8. and 9. | | |
| | | 14.6. | | A 8099 | | 10. | | |
| | 15. | 15.1. | | A 6844 | | | | |
| | | 15.2. | | A 6844 | | | | According to Com. A 6862. |
| | | 15.3. | | A 7953 | NB | 14.3. | | |

## Communications that make up the history of the standard

**Latest modifications:**

05/05/22: A 7507

05/19/22: A 7516

01/26/24: A 7953

03/06/24: A 8035

10/02/25: A 8191

**Latest versions of the standard - Update up to:**

| | |
|---|---|
| 09/11/17 | 01/25/24 |
| 12/30/17 | 02/03/24 |
| 18/01/18 | 09/02/25 |
| 01/25/18 | |
| 05/03/18 | |
| 01/24/19 | |
| 03/07/19 | |
| 04/12/19 | |
| 12/01/20 | |
| 01/15/20 | |
| 01/29/20 | |
| 27/02/20 | |
| 04/26/21 | |
| 05/27/21 | |
| 06/17/21 | |
| 06/23/21 | |
| 12/15/21 | |
| 11/04/22 | |
| 04/05/22 | |
| 05/18/22 | |
| 02/15/23 | |
| 06/12/23 | |

**Base text:**

**Communication A 6312: Ordered text of the regulations on "Exterior and changes"**

Communications that gave rise to and/or updated this standard:

**A 6244: New rules governing the Single Free Exchange Market.**

**A 6363: "External Accounts and Changes." "Credit Policy." Adjustments.**

**A 6378: Exchange houses, agencies, and offices. Exterior and exchanges. Adaptations.**

**A 6384: Houses, agencies, and currency exchange offices. Exterior and currency exchange. Adaptations.**

**A 6419: Communication by electronic means for environmental protection.
          equations.**

**A 6436: Adjustments to the "Exterior and Exchange" regulations.**

**A 6443: Decree No. 27/18. Exchange houses, agencies, and offices. Adjustments. Operators
          of change.**

**A 6462: Communication A 6419. Updates.**

**A 6639: Communication A 6599. Updating ordered texts.**

**A 6664: "Protection of Financial Services Users." "Electronic Communication for Environmental Protection." "Foreign
          Affairs and Foreign Exchange." "Interest Rates on Credit Transactions." Adjustments.**

**A 6770: Exterior and changes. Adaptations.**

**A 6776: Exterior and changes. Adaptations.**

**A 6780: Exterior and changes. Adjustments and clarifications.**

**A 6782: Exterior and changes. Adaptations.**

**A 6787: Exterior and changes. Adaptations.**

**A 6788: Foreign Affairs and Foreign Exchange. Regulations on the export of goods.**

**A 6792: Exterior and changes. Adaptations.**

**A 6796: Exterior and changes. Adaptations.**

**A 6799: Exterior and Changes. Adaptations.**

**A 6804: Exterior and changes. Adaptations.**

**A 6805: Foreign Affairs and Foreign Exchange. Export regulations for goods. Adjustments.**

**A 6814: Exterior and Changes. Adaptations.**

**A 6815: Exterior and Changes. Adaptations.**

**A 6818: Foreign Affairs and Exchange. Regulations on payments for imports and other purchases of
          assets abroad.**

**A 6823: Exterior and changes. Adaptations.**

A 6825: Exterior and Changes. Adaptations.

A 6829: Exterior and Changes. Adaptations.

A 6838: Exterior and Changes. Adaptations.

A 6844: Ordered Text of the Regulations on Foreign Affairs and Exchanges.

A 6854: Exterior and Changes. Validity.

A 6855: Exterior and changes. Adaptations.

A 6856: Exterior and changes. Adaptations.

A 6862: Revised text of the regulations on "Exterior and Changes." Update.

A 6869: Revised text of the regulations on "Exterior and Changes." Adjustments.

A 6882: Revised text of the regulations on "Exterior and Changes." Adjustments.

A 6883: Exterior and changes. Adaptations.

A 6903: Exterior and changes. Adaptations.

A 6908: Exterior and changes. Adaptations.

A 6915: Revised text of the regulations on "Exterior and Changes." Update.

A 6948: Adjustments to current regulations

A 6972: Exterior and changes. Adaptations.

A 6993: Zero-rate loans (Decree No. 332/2020). Minimum cash. Foreign exchange and foreign currency. Adjustments. Communication A 6992. Update.

A 7001: Exterior and changes. Adaptations.

A 7003: Net global foreign currency position. Minimum cash balance. Credit policy. Exterior and changes. Adaptations.

A 7006: Credit assistance to MSMEs. Net position in LELIQ (Leyliq). Cash and forward transactions, repurchase agreements, guarantees, other derivatives, and mutual funds. Minimum cash. Foreign exchange and foreign exchange. Adjustments.

A 7021: Exterior and changes. Adaptations.

A 7030: Exterior and changes. Adaptations.

A 7042: Exterior and changes. Adaptations.

A 7052: Exterior and changes. Adaptations.

A 7068: Exterior and changes. Adaptations.

A 7079: Exterior and changes. Adaptations.

A 7082: Subsidized Loans for Businesses. Zero-Rate Loans for Culture. Decree No. 332/2020. Financial services within the framework of the health emergency established by Decree No. 260/2020 Coronavirus (COVID-19). Minimum cash. Term deposits and investments. Foreign exchange and foreign exchange. Adjustments.

A 7094: Exterior and changes. Adaptations.

A 7106: Exterior and changes. Adaptations.

A 7123: Exterior and changes. Adaptations.

A 7126: Exterior and changes. Adaptations.

A 7133: Exterior and changes. Adaptations.

A 7138: Exterior and changes. Adaptations.

A 7142: Exterior and changes. Adaptations.

A 7151: Exterior and changes. Adaptations.

A 7168: Exterior and changes. Adaptations.

A 7193: Exterior and changes. Adaptations.

A 7196: Exterior and changes. Adaptations.

A 7200: Exterior and changes. Adaptations.

A 7201: Exterior and changes. Adaptations.

A 7217: Exterior and changes. Adaptations.

A 7218: Exterior and changes. Adaptations.

A 7229: Exterior and changes. Adaptations.

A 7230: Exterior and changes. Adaptations.
:

A 7239: Exterior and changes. Adaptations.

A 7253: Exterior and changes. Adaptations.

A 7259: Exterior and changes. Adaptations.

A 7272: Revised text of the regulations on "Exterior and Changes." Update.

A 7273: Exterior and changes. Adaptations.

A 7293: Consolidated text of the "Exterior and Changes" regulations. Adjustments and updates tion.

A 7301: Exterior and changes. Adaptations.

A 7308: "Exterior and Changes" Standards. Adjustments and updates to the ordered text.

A 7313: Exterior and changes. Adaptations.

A 7327: Exterior and changes. Adaptations.

A 7340: Exterior and changes. Adaptations.

A 7342: Zero-Rate Loans 2021 (Decree No. 512/21). Financial services within the framework of
the health emergency established by Decree No. 260/2020 Coronavirus (COVID-19).
Minimum cash. Foreign currency and changes. Adjustments.

A 7348: Exterior and changes. Adaptations.

A 7374: Exterior and changes. Adaptations.

A 7375: Exterior and changes. Adaptations.

A 7385: Exterior and changes. Adaptations.

A 7398: Exterior and changes. Adaptations.

A 7401: Exterior and changes. Adaptations.

A 7408: Exterior and changes. Adaptations.

A 7416: Exterior and changes. Adaptations.

A 7420: Exterior and changes. Adaptations

A 7422: Revised text of the "Exterior and Changes" regulations. Update.

A 7433: Exterior and changes. Adaptations.

A 7466: Exterior and changes. Adaptations.

A 7469: Exterior and changes. Adaptations.

A 7471: Exterior and changes. Adaptations.

A 7472: Exterior and changes. Adaptations.

A 7488: Exterior and changes. Adaptations.

A 7490: Revised text of the "Exterior and Changes" regulations. Update.

A 7507: Exterior and changes. Adaptations.

A 7516: Exterior and changes. Adaptations.

A 7518: Exterior and changes. Adaptations.

A 7528: Exterior and changes. Adaptations.

A 7532: Exterior and changes. Adaptations

A 7542: Exterior and changes. Adaptations.

A 7547: Exterior and changes. Adaptations.

A 7551: Exterior and changes. Adaptations.

A 7552: Exterior and changes. Adaptations.

A 7553: Exterior and changes. Adaptations.

A 7556: Foreign currency and foreign exchange. Savings deposits, salary accounts, and special accounts. Minimum cas
mo. Net global foreign currency position. Adjustments.

A 7562: Exterior and changes. Adaptations.

A 7565: Exterior and changes. Adaptations.

A 7570: Foreign currency and foreign exchange. Savings deposits, salary accounts, and special accounts. Minimum cas
mo. Credit policy. Adjustments.

A 7571: Foreign exchange and foreign exchange. Savings, salary, and special deposits. Minimum cash. Net overall
foreign currency position. Credit policy. Adjustments.

A 7586: Exterior and changes. Adaptations.

A 7594: Exterior and changes. Adaptations.

A 7601: Exterior and changes. Adaptations.

A 7606: Exterior and changes. Adaptations.

A 7609: Exterior and changes. Adaptations.

A 7610: Exterior and Changes. Clarification.

A 7621: Exterior and changes. Adaptations.

A 7622: Exterior and changes. Adaptations.

A 7624: Exterior and changes. Adaptations.

A 7626: Exterior and Changes. Adaptations

A 7629: Exterior and changes. Adaptations.

A 7630: Exterior and changes. Adaptations.

A 7638: Exterior and changes. Adaptations.

A 7643: Exterior and changes. Adaptations.

A 7649: Exterior and changes. Adaptations.

A 7662: Exterior and changes. Adaptations.

A 7664: Foreign and foreign exchange. Savings deposits, salary accounts, and special accounts. Adjustments

A 7676: Exterior and changes. Adaptations.

A 7682: Exterior and changes. Adaptations.

A 7686: Exterior and changes. Adaptations.

A 7709: Exterior and changes. Adaptations.

A 7733: Exterior and changes. Adaptations.

A 7735: Exterior and changes. Adaptations.

A 7740: Exterior and changes. Adaptations.

A 7746: Exterior and changes. Adaptations.

**A 7762: Exterior and changes. Adaptations.**

**A 7763: Exterior and changes. Adaptations.**

**A 7766: Exterior and changes. Adaptations.**

**A 7770: Exterior and changes. Adaptations.**

**A 7771: Exterior and changes. Adaptations.**

**A 7772: Exterior and changes. Adaptations.**

**A 7780: Exterior and changes. Adaptations.**

**A 7781: Exterior and changes. Adaptations.**

**A 7782: Exterior and changes. Adaptations.**

**A 7798: Exterior and changes. Adaptations.**

**A 7799: Exterior and changes. Adaptations.**

**A 7810: Exterior and changes. Adaptations.**

**A 7815: Exterior and changes. Adaptations.**

**A 7826: Exterior and changes. Adaptations.**

**A 7828: Exterior and changes. Adaptations.**

**A 7830: Exterior and changes. Adaptations.**

**A 7833: Exterior and changes. Adaptations.**

**A 7834: Exterior and changes. Adaptations**

**A 7838: Exterior and changes. Adaptations.**

**A 7840: Exterior and changes. Adaptations.**

**A 7845: Exterior and changes. Adaptations.**

**A 7851: Exterior and changes. Adaptations.**

**A 7852: Exterior and changes. Adaptations.**

**A 7853: Exterior and changes. Adaptations.**

**A 7864: Exterior and changes. Adaptations.**

**A 7866: Exterior and changes. Adaptations.**

**A 7867: Exterior and changes. Adaptations.**

**A 7873: Exterior and changes. Adaptations.**

**A 7874: Exterior and changes. Adaptations.**

**A 7893: Exterior and changes. Adaptations.**

**A 7894: Exterior and changes. Adaptations.**

A 7895: Exterior and changes. Adaptations.

A 7903: Exterior and changes. Adaptations.

A 7904: Exterior and changes. Adaptations.

A 7911: Exterior and changes. Adaptations.

A 7914: Exterior and changes. Adjustments and updates to the ordered text

A 7915: Exterior and changes. Adaptations.

A 7916: Exterior and changes. Adaptations.

A 7917: Exterior and changes. Adaptations.

A 7925 Exterior and changes. Adaptations.

A 7935: Exterior and changes. Adaptations.

A 7940: Exterior and changes. Adaptations.

A 7941: Exterior and changes. Adaptations.

A 7945: Exterior and changes. Adaptations.

A 7952: Exterior and changes. Adaptations.

A 7953: Exterior and changes. Adjustments and updates to the ordered text.

A 7968: Exterior and changes. Adaptations.

A 7980: Exterior and changes. Adaptations.

A 7990: Exterior and changes. Adaptations.

A 7994: Exterior and changes. Adaptations.

A 7998: Exterior and changes. Adaptations.

A 7999: Exterior and changes. Adaptations.

A 8006: Savings deposits, salary accounts, and special accounts. Foreign and foreign exchange. Adjustments

A 8031: Exterior and changes. Adaptations.

A 8035: Exterior and changes. Adjustments and updates to the ordered text.

A 8042: Exterior and changes. Adaptations.

A 8054: Exterior and changes. Adaptations.

A 8055: Exterior and changes. Adaptations.

A 8059: Exterior and changes. Adaptations.

A 8073: Exterior and changes. Adaptations.

A 8074: Exterior and changes. Adaptations.

**A 8085: Exterior and changes. Adaptations.**

**A 8094: Exterior and changes. Adaptations.**

**A 8099: Exterior and changes. Adaptations.**

**A 8108: Exterior and changes. Adaptations.**

**A 8112: Exterior and changes. Adaptations.**

**A 8116 Exterior and changes. Adaptations.**

**A 8118: Exterior and changes. Adaptations.**

**A 8122: Exterior and changes. Adaptations.**

**A 8129: Exterior and changes. Adaptations.**

**A 8133: Exterior and changes. Adaptations.**

**A 8137: Exterior and changes. Adaptations.**

**A 8153: Exterior and changes. Adaptations.**

**A 8155: Exterior and changes. Adaptations.**

**A 8160: Exterior and changes. Adaptations.**

**A 8161: Exterior and changes. Adaptations.**

**A 8178: Exterior and changes. Adaptations.**

**A 8191: Exterior and changes. Updated sorted text.**

**B 12020: Foreign Trade and Exchange. Prior Compliance Orders for Import Payments goods (Communications A 7001 and 7030).**

**B 12082: Operational Matters. Inconsistent Operations.**

**B 12083: CAMEX Circular 1 - 869. Online system to verify sworn statements.**

**C 89971: Communication A 7293. Errata.**

**C 91566: Exterior and changes. Errata.**

**C 93169: Exterior and changes. Communication A 7556. Clarifications.**

**C 93180: Exterior and changes. Communication A 7562. Errata.**

**C 96844: Exterior and changes. Communication A 7917. Errata.**

**C 96983: Exterior and changes. Communication A 7935. Errata.**

**C 97065: Exterior and changes. Communication A 7941. Errata.**

**C 97215: Exterior and changes. Communication A 7953. Errata.**

**Communications related to this standard (related and/or complementary):**

**B 11627: Foreign Exchange Trading Regime for Exported Goods. Deletion of modules KAA, KAB, KAC, KAD, KAE, and KAJ.**

**B 11892: Communication A 6799. Regulatory Clarification.**

**B 11900: Point 3.9 of the Consolidated Text of the Regulations on Foreign Affairs and Exchange.**

**B 11944: Exterior and changes. Adaptations. Online system to verify authorization to carry out change operations.**

**B 11957: Exterior and changes. Online system to verify authorization to carry out operations. exchange rations.**

**B 12188: Certifications of increased exports planned in Com. A 7301. Proce- emission performance.**

**Related external legislation and/or regulations:**

**Decree 260/02.**

**Decree 609/19.**

**Decree 91/19.**

**Decree 597/23**

**General Resolution 841/2020**