UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
"IN ADMIRALTY"
Miami Division

| | |
|---|---|
| EN MAY MARITIME LLC, <br><br>          Plaintiff, <br><br>     - against - <br><br> PROIOS S.A., <br><br>          Defendant. | Case No. 24-cv-23417-RKA |

## MOTION TO COMPEL

Plaintiff, En May Maritime LLC ("En May"), by and through undersigned counsel, hereby moves this Honorable Court for an Order compelling Defendant, Proios S.A. ("Proios") to produce certain additional information and documentation based on its responses to the Court's July 18 Order (Dkt. 51), and as grounds therefore would state as follows:

### The Underlying Action

1. As this Court is aware, Plaintiff En May initiated this Rule B action seeking security in the form of a Rule B maritime attachment and garnishment arising from a contractual dispute over the repair of a ship. (Dkt. 1). That dispute is currently proceeding in London arbitration.

2. The Court subsequently directed the Clerk of Court to issue Process of Maritime Attachment and Garnishment ("PMAG"). (Dkt. 11).

3. The Clerk of Court issued the PMAG directing the garnishee to restrain property belonging to Defendant Proios S.A. ("Proios") up to the amount of $1,844,426.98, "including but not limited to such property situated in the bank account(s) at Interaudi [Bank] bearing account number 643973-401-01 by, on behalf of, or for the benefit of Defendant Proios." (Dkt. 12).

4. The PMAG was served on Garnishee, Interaudi Bank ("Interaudi"), on a daily basis between issuance and entry by the parties into the stipulation, under which Proios agreed that the funds being held by Interaudi were property of Proios, and not of intervenor, Axion Management Ship LLC ("Axion"), as Proios/Axion had previously told the Court in their submissions.

5. During that time, $1,644,403.01 was already deposited or had flowed into the Interaudi Account(s) and those funds were restrained pursuant to the attachment. (*See* Dkt. 20-1, at Appendix A). Therefore, as of the time the parties entered into the stipulation, on March 17, 2025, a balance of $200,023.97 that Plaintiff En May sought to attach had yet to be restrained. In exchange for En May's agreement to lift the attachment (in effect, "unfreezing" Proios's accounts at Interaudi), Proios agreed to promptly deposit $200,023.97 in the Court's registry (with the $1,644,403.01 being held by Interaudi to be deposited into the Court's registry by Interaudi). (Dkt. 34 ¶¶ 3-4).

6. In the stipulation, Proios and Interaudi agreed to deposit the funds as specified in the Paragraph above "on or before the first banking day on or before five (5) days after the Court orders that Interaudi and Proios may so deposit those amounts." (*Id*.)

7. In its Order, the Court directed the parties to comply with the terms agreed to in the stipulation. (Dkt. 39 ¶ 2).

### Proios's Delay in Depositing Funds Under the Order

8. Since entering into the Stipulation (Dkt. 34), which resulted in the Court's Order (Dkt. 39), Proios has deposited only $25,000 of the $200,023.97 it is obligated to deposit. (Dkt. 46). For the balance, Proios has thus far sought three extensions of time to make the required deposit: first, on March 31, requesting an extension to May 2 (Dkts. 41, 43); second, on May 2,

requesting an extension to July 11 (Dkt. 45); and third, on July 10, requesting an extension to October 10 (Dkt. 48).

9. The predicate for each of those requests was that as an Argentina-based entity, Proios "is subject to strict Argentina government controls and reporting concerning the payment of United States Dollar funds out of Argentina. Proios requires additional time to comply with Argentina government controls and reporting to access the Proios Amount in United States Dollar funds for deposit with this Court's Registry." (Dkt. 43 ¶ 3); (Dkt. 45 ¶¶ 4-5) (discussing the foreign exchange controls and stating that the bank "continues to apply" for "permission to release the further deposit amount"); (Dkt. 45 ¶¶ 4-5) (same).

10. These repeated extension requests raised concerns for En May for several reasons.

11. First, the foreign exchange controls purportedly prohibiting Proios from depositing the funds had been in place in Argentina since before the Stipulation was entered into and nevertheless Proios agreed to deposit the required funds in the Court's Registry within a matter of days, as noted above, without so much as intimating that delays would follow.

12. Second, virtually no evidence was presented to show that Proios had actually engaged in any efforts to seek release of funds from Argentina beyond an affidavit from Proios's bank in Argentina – no written communications to the relevant authorities, applications, or the like have been produced.

13. Third, En May was aware, considering that some $350,000+ dollars had been deposited into Proios's account at Interaudi Bank (held in the name of Axion) between the date of the attachment and the date of the stipulation, that Proios had access to a stream of hundreds of thousands of dollars *outside* of Argentina which could be used to satisfy the Court's Order. *Compare* Ex. A to the Declaration of Yaakov U. Adler ("Adler Decl."), Interaudi Bank's Rule B

Case No. 24-cv-23417-RKA

Interrogatory Responses dated October 4, 2024, at p. 2 (showing that $1,285,447.77 had been restrained pursuant to the writ of attachment) with Dkt. 40, Clerk's Receipt for Deposit into Court's Registry (showing $1,644,403.01 had been restrained by the time the parties entered into the Stipulation in March 2025).

### The Court Orders Proios to Produce Additional Information

14. As a result, En May requested that Proios produce information regarding the specific steps that have been taken by Proios to comply with the Court's Order and to advise whether "Proios or Axion or any other entity controlled by Proios or Axion or by Jorge or Eva Proios presently have assets, accounts receivable, or bank accounts in the United States or any other jurisdiction in which funds being held by, for the benefit of, or belonging to Proios [] could be used to satisfy Proios's obligation to promptly comply with the parties' stipulation and the Court's Order." (Dkt. 50).

15. The Court ordered Proios, as follows:

> By July 22, 2025, Proios must tell us what steps it's taken to deposit the remaining funds. It must attach as exhibits any communication it's had with Argentine foreign exchange authorities about the funds (e.g., emails, call logs). If there's any communication Proios can't produce, it must attach an affidavit to explain the missing communication. By the same date, Proios must tell us whether it has any other "assets, accounts receivable, or bank accounts" in the United States or anywhere else that could be used to cover its remaining obligation to En May. Ibid. That includes any Axion accounts or any accounts controlled by Jorge or Eva Proios themselves. Finally, Proios must explain why "an additional 90 days minimum" is necessary to release the funds. The Court has permitted Proios until August 18, 2025 to advise whether additional time is needed to comply with the Court's Order, but this Motion is necessary regardless considering the serious questions raised by Proios's submission.

### Proios's Responses to the Court's Order Raise More Questions than they Answer

16. In response, Proios submitted a declaration from Eva Proios with two exhibits, Exhibit A purporting to be "the FX regulation of the Central Bank of Argentina (BCRA)" and

4

Exhibit B purporting to be "communications that Proios has had with Argentine foreign exchange authorities about the funds (e.g., emails, call logs)." (Dkt. 50).[1]

17.     Exhibit B contains what appear to be two separate incomplete emails chains. The first chain includes emails exchanged between Proios and the underwriter Chubb from December 2-4, 2024. The second chain includes exchanges between Proios and its Argentina-based bank, Banco Macro SA, from December 3, 2024 – July 21, 2025.

18.     These emails are incomplete or have been altered in some way. Though they appear as a single email chain, they clearly contain two separate chains, and emails therein appear out of chronological order, but seem to have been copied and pasted into a document in a way that would make them appear to be part of the same chain. (*See* Dkt. 52-3, at pp. 22-24 (the email that appears at the top of page 23 is an email dated December 3, 2024, and the email that appears below that – in a position which would indicate it is chronologically earlier in the chain – is dated April 29, 2025, which would not happen absent some manipulation).

19.     Apart from the fact that the emails appear excerpted from larger email chains and there are questions concerning the accuracy of the translations (*see* n.1 above), the emails are also notable for what they reveal about what Proios did or did not do in response to the Court's Order.

20.     For example, the discussions with Chubb in the first email chain relate to Proios's request to Chubb **in December 2024** (in other words, months before the parties entered into the Stipulation) for issuance of a guarantee / bond to obtain release of the attachment.  These communications occurred entirely before Proios stipulated to deposit the approximately $200,000 into the Court's registry in Florida.  They do not evidence any effort to contact foreign exchange

---

[1] The exhibits appear lengthier than they really are due to the fact that they appear first in Spanish followed by English translations. It is not clear who performed the translation or whether the translations are in fact accurate. Indeed, some of the translations appear not to be accurate based on different translations having been generated using online tools, such as Google Translate.

authorities or the BCRA (Argentina's central bank) to authorize release of the funds in response to the parties' stipulation or the Court's Order.  Indeed, reliance on these communications to establish knowledge of an inability to deposit the funds as agreed/ordered as of December 2024 suggests the Stipulation, under which Proios agreed to deposit the money within a matter of days, was not entered into by Proios in good faith.

21. The email chain with Banco Macro consists of 3 emails.  The first, on April 25, 2025, is an email from Eva Proios to Cecilia Tasca at Banco Macro, in which Proios asks in perfunctory fashion whether a transfer can be made to satisfy the Court's Order and then – without receiving a response – suggests that the Court simply be told it can't be done without going through the Bank's controls due to BCRA regulations. Then Proios provides a draft of what appears to have ultimately become the Tasca Declaration that was submitted to the Court. It appears emails have been cut out because there is no response to this email produced.

22. The next email in the chain is from Banco Macro to Proios *on July 21, 2025*. In that email, the Bank advises that there is nothing specific in the BCRA that regulates this type of payment, but that prior approval should nonetheless be sought from BCRA, *that an application can be filed* and this costs USD 250, that once submitted a file number will be assigned, etc.

23. That the bank provided this information to Proios on July 21, 2025 indicates that no application had been filed with BCRA as of that date, despite the fact that *each of Proios's extension requests made to this Court predated that date* and, at a minimum, implied to the Court that an application had been made. *See* ¶ 9 above.

24. The next email in the chain is a response from Proios to the bank on July 21 in which Proios states that it cannot make the payment for "economic reasons" (as opposed to for reasons of foreign exchange controls) and, again, suggests that the Court simply be told there are

BCRA regulations "in order to demonstrate that the restrictions on companies have not been lifted." (Dkt. 52-3, at p. 26).

25. This email contains a redaction stating "**[Confidential and Privileged – To/ from US Counsel – Redacted]**". Of course, Proios's decision to send the comments of its counsel to Banco Macro waives any claim of privilege, and these emails (incomplete and suspect as they already are) must be produced in unredacted form. *See Latele TV, C.A. v. Telemundo Communs. Grp.*, 2014 U.S. Dist. LEXIS 155356, at *28 (S.D. Fla. Nov. 3, 2014) ("A party's intentional sharing of privileged documents and information with third parties waives the privilege 'to all attorney-client communications relating to the same subject matter.'").

26. To be clear, no emails have been produced between Proios and BCRA/any foreign exchange authority demonstrating any effort to comply with the Court's Order.

27. In addition, in the Affidavit of Eva Proios submitted together with these emails, Proios discloses, for the first time, that it has two additional accounts in its name or under its control in the United States containing thousands of dollars. Proios has identified an account at Banco de la Nación Argentina, Miami Branch, with "a balance of less than USD 4,000." (Dkt. 52-1 ¶ 10). That phrasing suggests the account has funds approaching $4,000, or at least more than $3,000, otherwise different language would likely have been used. In any event, those appear to be funds in the United States (indeed in this District) which could and should be used to satisfy Proios's obligation under the Court's Order.

28. Proios has also identified funds in the United States in "a bank account with less than USD 6,000 held through Mercury," and the phrasing here again suggests that the account has funds approaching $6,000, or at least more than $5,000. Again, insofar as these are funds ultimately

belonging to Proios, they can and should be deposited in the Court's Registry to satisfy the Court's Order.

29. Next, the Eva Proios Affidavit seeks to portray Proios as an essentially penniless business. (*See* Dkt. 52-1 ¶ 7). But that claim rings hollow. To begin with, Proios is employing attorneys on three continents – in London, in Argentina, and in Maryland/Florida. With respect to counsel in London and in the United States, are we to believe that Proios is not paying its counsel or else is subjecting them to indefinite payment delays?

30. Moreover, evidence suggest that Proios's business has not been affected in the way it is suggesting. While we understand that the Interaudi Bank account held in the name of Proios's U.S. paying agent, Axion, was closed following Interaudi's deposit of funds into the Court's registry, we are aware that Proios had previously caused to be created an entity based in Belize with a slightly different, albeit highly similar, name. Specifically, Proios's new business entity is called "AXIO Ship Management LLC," as opposed to Axion Management Ship LLC (*i.e.*, the "n" has been dropped and the order of "ship" and "management" have been reversed).

31. As the Court can see, Proios has subtly changed its website to reflect this change, indicating that the business is now being carried on in the name of the new Belize entity. (*Compare* Axion's current website at https://axionmanagement.us/acerca.php, referring to the company as "AXIO Ship Management LLC" and saying it has its head office in Belize, with Adler Decl. Ex. B, a printout of Axion's prior website taken from the internet archive The Wayback Machine, which identified the company as "Axión Management Ship LLC head office is based in Dover, Delaware, USA."[2]

---

[2] Despite these subtle changes, it is worth mentioning that the Axion website URL still uses the name "Axion" with an N and the business logo still uses the name "Axion" with an N as well, which appears designed to give the impression that the identical business is being carried on, despite the name change.

32. We do not know – and Proios has not said – where "Axio" maintains its bank account(s), into which we believe funds are flowing to Proios in the same manner as has been done through the former Axion account held at Interaudi, but we suspect that they are *not* in Argentina. And we have good reason to believe those account(s), wherever located, have substantial funds flowing into them from Proios's ongoing business activities. Indeed, when Proios tried to skirt the Rule B attachment and open a new account in the name of the new Belize entity at Interaudi Bank, it stated – in forms it filled out with Interaudi in November 2024 – that it had business assets of $1-$5M, a net worth of $1-5M, gross annual income of $500,000 to $3M, projected annual income of $500,000 to $3M, expected monthly transactions (up to 5) reflecting credits of more than $10,000 and less than $100,000 and debits of more than $10,000 and less than $100,000. (Adler Decl. Ex. C, Documents Produced by Interaudi Bank on February 23, 2025).

33. In other words, Proios was expecting to conduct substantial business via the new Belize entity.[3]

34. Yet Proios's response to the Court ignores all this and seeks to portray the business as effectively shuttered and unable to meet its obligation to deposit the funds into the Court's Registry.

## The Present Dispute

35. In light of all the above, En May's counsel wrote to Proios's counsel on July 31, requesting additional information to answer the questions raised above. (Adler Decl. Ex. D, emails exchanged between counsel for En May and counsel for Proios).

---

[3] Indeed, at the time the parties were negotiating the stipulation, counsel for Proios had advised, in an email on March 4, 2025, that a payment of "$1.3 million incoming today" which were referred to as "Belize entity funds" were "funds belonging to Proios" and that these would be funds used to satisfy Proios's obligations under the Order. We do not know what became of these funds.

36. In response, Proios's counsel has refused to provide any additional information, insisting it has complied with the Court's Order and cryptically suggesting that there is something En May's counsel is overlooking with respect to its follow-up requests.

37. When asked to specify what was meant by that statement, Proios's counsel stopped responding.

38. This Motion followed.

**Request to Order Proios to Produce Responses to the Following**

39. As outlined in En May's counsel's email to Proios's counsel, En May seeks the following additional information from Proios to determine whether Proios is truly incapable of complying with the Court's Order due to foreign exchange controls and whether it is actually seeking release of funds from Argentina:

   a. Complete, unredacted copies of the email chains included within Exhibit B (both appear to be excerpted from longer email chains) and production of any and all attachments contained therein (the emails refer to attachments that have not been produced).

   b. Copies of any correspondence between Proios or anyone acting on its behalf and the Argentine foreign exchange authorities / BCRA in relation to compliance with the Court's Order or confirmation that no such communications were made. En May is specifically requesting that Proios be ordered to produce a complete copy of any submission made to BCRA in relation to this matter, the file number associated with that request, any follow-up requests made by or to BCRA, and the results of the application.

   c. All bank statements and any transfer records for transfers into or out of the BNA bank account in Miami from January 1, 2024 to the present.

   d. All bank statements and any transfer records for transfers into or out of the Mercury bank account from January 1, 2024 to the present.

   e. Identification of all bank accounts presently held by or on behalf (or for the receipt of funds designated for the benefit of) the following entities: Proios, S.A., Axion Management Ship LLC, Axion Ship Management LLC, or AXIO Ship Management LLC, and bank statements for each such account for the last five (5) months.

 f. Identification of the bank account from which the deposit into the Court's registry on 5/2/2025 in the amount of $ 25,000.00 originated (we understand that the funds were transferred from Proios's counsel's account to the Court's Registry and would like to know the account from which they originated prior to that transfer) and the instructions issued to the bank for that transfer and all transfer records associated with that transfer.

 g. All documents concerning any receivables, expected payments, or other inflows of funds to Proios or any person or entity for the benefit of Proios (including Jorge Proios, his wife Andrea Alejandra Guedella, or Eva Proios)[4] that are anticipated within the next 180 days, including:

  i. Monies due under contracts;
  ii. Charter hire or freight payments;
  iii. Insurance proceeds;
  iv. Tax refunds;
  v. Intercompany transfers or loan repayments; and
  vi. Disbursements from trust or escrow accounts.

 h. Any intercompany loan agreements, capital contributions, or records of cash or asset transfers between Proios, S.A., Axion Management Ship LLC, Axion Ship Management LLC, or AXIO Ship Management LLC, any affiliated company or under common ownership or control, and any individual(s), including without limitation Jorge Proios or his wife Andrea Alejandra Guedella, and/or Eva Proios for the period from January 1, 2024 to present.

 i. All records of outbound wire transfer requests or foreign currency exchange requests submitted to Banco Macro, BNA, or any other financial institution by or on behalf of Proios, S.A. from January 1, 2024 to present.

 j. Confirmation of whether Proios, S.A., Axion Management Ship LLC, Axion Ship Management LLC, or AXIO Ship Management LLC, any affiliated company or under common ownership or control, and any individual(s), including without limitation Jorge Proios or his wife Andrea Alejandra Guedella, and/or Eva Proios, has or had access to credit lines, factoring facilities, or invoice financing arrangements since January 1, 2024, and produce documents sufficient to show the same.

40. En May respectfully requests that Proios be Ordered to comply with these requests within ten (10) days.

---

[4] Proios appears to be run by members of the Proios family, including those named above. As the Court knows, Jorge and Eva Proios have given affidavits in this matter concerning Proios's business operations. Ms. Guedella, who we believe is involved in the business as well, has been identified as an account holder and authorized user on Proios bank accounts. *See* Adler Decl. Ex. A, at p. 2 ¶ 1.

## CONCLUSION

For the reasons outlined herein, En May respectfully requests that the within Motion be granted, together with such other and further relief that the Court deems just and proper in the premises.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)

Pursuant to Local Rule 7.1(a), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and been unable to do so.

Dated: New York, New York
      August 12, 2025

/s Adam B. Cooke
Adam B. Cooke
Fla. Bar No. 634182
Email: acooke@fowler-white.com

Allan R. Kelley
Fla. Bar No. 309893
Email: akelley@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

Yaakov U. Adler
NY Bar No. 5297668
Email: adler@freehill.com

FREEHILL HOGAN & MAHAR LLP
80 Pine Street, 25th Floor
New York, NY 10005-1759
Telephone:   (212) 425-1900
Facsimile:   (212) 425-1901

*Counsel for En May*
*Admitted Pro Hac Vice*